Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua Paul Davis (State Bar No. 193254)
Nicomedes Sy Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:     jsaveri@saverilawfirm.com
               swilliams@saverilawfirm.com
               jdavis@saverilawfirm.com
               nherrera@saverilawfirm.com
               dlambrinos@saverilawfirm.com
               jdallal@saverilawfirm.com
               vprentice@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD |
| | Case No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH DEFENDANTS HITACHI CHEMICAL AND SOSHIN** |
| | Date:          June 7, 2018 |
| | Time:          10:00 a.m. |
| | Courtroom:  11, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on June 7, 2018, at the U.S. District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco California 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("DPPs" or the "Class") will and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of an order granting final approval of the DPPs' class action settlements with Defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Soshin Electric Co., Ltd., and Soshin Electronics of America Inc. (collectively, "Soshin") (all Hitachi Chemical and Soshin entities together, the "Settling Defendants"). Specifically, DPPs request that the Court:

1.     Find the settlements DPPs have reached respectively with Settling Defendants are fair, reasonable, and adequate under Fed. R. Civ. P. 23(e) and thereby direct the parties' consummation of each settlement agreement pursuant to their respective terms;

2.     Find the Court-approved Long Form, Postcard, and Summary Notices to Direct Purchaser Class members, as disseminated by Interim Class Counsel and claims administrator Rust Consulting, Inc. ("Rust") pursuant to the Court-approved notice program, to constitute due notice meeting the requirements of due process and Rule 23(c)(2)(B);

3.     Finally find DPPs have satisfied the prerequisites for a class action under Fed. R. Civ. P. 23(a) and (b)(3) and certify the Settlement Class as that term is defined in the Court's Preliminary Approval Order (Dkt. 2075);

4.     Finally approve DPPs' plan for allocating the Settling Defendants' all-cash settlement consideration among the Settlement Class members on a *pro rata* basis; and

5.     Direct that this action be dismissed with prejudice as against the Settling Defendants.

DPPs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri dated June 7, 2018 (the "Saveri Decl."), the Declaration of Kendall S. Zylstra dated June 6, 2018 (the "Zylstra Decl."), the Court's files and records in this matter, and such other matters as the Court may consider.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ 3

    A.    DPPs' Factual Allegations and Claims ................................................. 3

    B.    Procedural History ................................................................................. 3

III.   TERMS OF THE SETTLEMENTS .................................................................. 5

    A.    Settlement Amounts and Additional Consideration Unique to Each Settling Defendants ................................................................................................ 6

        1.    Hitachi Chemical Settlement ..................................................... 6

        2.    Soshin Settlement ....................................................................... 6

    B.    Terms Common to Both Settlements ..................................................... 7

        1.    Release of All Claims ................................................................. 7

        2.    Option to Rescind Settlement Agreements ................................ 7

        3.    Attorneys' Fees and Expenses ................................................... 8

IV.   DPPS' SETTLEMENTS WITH HITACHI CHEMICAL AND SOSHIN ARE FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL ...................................................................................................... 8

    A.    The Significant Monetary and Other Benefits to the Settlement Class Favor Approval ................................................................................................ 9

    B.    Although DPPs' Claims are Strong, the Court Should Approve the Settlements Because They Eliminate Certain Litigation Risks to the Settlement Class .......... 10

    C.    The Settlements Resulted from Informed, Arm's-Length Negotiations Between the Parties and DPPs' Experienced Counsel ......................................... 11

    D.    The Case's Procedural Posture, Along With the Significant Discovery Conducted to Date, Has Informed Settlement Negotiations and Supports Final Approval ................................................................................................ 12

    E.    Class Members' Positive Reaction to the Settlements Favors Final Approval .... 13

V.   THE COURT-APPROVED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND HAS BEEN FULLY IMPLEMENTED ............................................... 13

    A.    The Court Approved DPPs' Notice and Notice Program ................................ 14

    B.    DPPs Fully Implemented the Court-Approved Notice Program ..................... 15

        1.    DPPs' Direct Mailing Plan Targeted Notice at Defendants' Customers 15

**TABLE OF CONTENTS (cont.)**

2.    DPPs' Publication Notice Was Distributed Broadly ................................15

3.    DPPs' Online Notice Strategy Targeted Class Members and Persons in the Electronics Industry ...........................................................................15

C.    DPPs Have Taken Steps Over and Above Their Due Process and Rule 23 Obligations to Ensure That as Many Direct Purchaser Class Members as Possible Receive Mailed Notice and Claim Forms .........................................................16

VI.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS..........17

VII.   THE COURT SHOULD FINALLY APPROVE DPPS' ALLOCATION PLAN .........19

VIII.  CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 17, 18

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...................................... 17

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......................... 8, 9, 10, 11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................... 8, 10, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ............................................... 8

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................................................................. 11

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 10, 2004) ...................................................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015) .............................................................................. 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 U.S. Dist. LEXIS 24951 (N.D. Cal. Jan. 28, 2016) .................................................................... 17

*In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................... 19

*In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313 (D.N.J. 1998) ................... 19

*In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH (N.D. Cal. Nov. 1, 2006) ........................................................................................... 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ...................................................................................... 19

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) ........................... 9

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ......................................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..................................... 12

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) ................... 10

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................ 11

*In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515 (N.D. Cal. Dec. 19, 2016) ................................................................. 10

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) .......................... 20

## TABLE OF AUTHORITIES (cont.)

*In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) ................................................................................................................ 19

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ...................................................................................................... 12

*Linney v. Cellular Alaska P'ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) ................................... 11

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) ............................. 11

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ................................................. 12

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................................ 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................................ 8, 9, 13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ......................................................... 13

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ............................................................ 14, 17

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ................................................................ 17

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ........................................................ 8

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................................. 9

### Other Authorities

4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014) ................................................................................... 8

### Rules

Fed. R. Civ. P. 23(a) ................................................................................................... 18

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 18

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The settlements that Direct Purchaser Plaintiffs reached with Defendants Hitachi Chemical and Soshin (together, the "Settlements," and the agreements, the "Settlement Agreements") are an excellent result for the Class. The Settling Defendants' cash payments total $66,900,000. This is an extraordinary amount for the settlements with the Settling Defendants, especially given that the Settling Defendants together account for less than 1% of the total volume of United States commerce at issue during the Class Period. Dkt. Nos. 1989, at 11; 1989-1, at ¶¶ 37-38 The Settling Defendants' combined payments represent approximately 400% of their net U.S. capacitors sales during the relevant time period. *Id.* In addition, each of the Settling Defendants also agreed to cooperate with DPPs in their continued prosecution of price-fixing claims against the non-settling Defendants.[1]

The Settling Defendants agreed to these terms in exchange for DPPs' release of their claims against them and their dismissal from the litigation with prejudice. The DPPs are led by Interim Lead Class Counsel ("Lead Class Counsel"), who are well experienced and have prosecuted DPPs' claims almost four years to secure these and prior Settlements (the "First Round Settlements").[2]

The Court preliminarily approved the Settlements. Dkt. 2075. Final approval under Federal Rule of Civil Procedure 23(e) is warranted because each of the Settlements is fair, adequate and reasonable. During the last four years of hard-fought litigation, DPPs have made substantial progress in

---

[1] The Defendants who have not settled with DPPs are Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Nichicon Corporation; Nichicon (America) Corporation; AVX Corporation; Rubycon Corporation; Rubycon America Inc.; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nissei Electric Co., Ltd.; and Shizuki Electric Co., Ltd. (together the "Non- Settling Defendants," and with the Settling Defendants, the "Defendants").

[2] The Court previously approved DPPs' First Round Settlements with Fujitsu Ltd. ("Fujitsu"); NEC TOKIN Corp. and NEC TOKIN America, Inc. ("NEC TOKIN"); Nitsuko Electronics Corp.("Nitsuko"); Okaya Electric Industries Co., Ltd., and Okaya Electric America, Inc. (the "Okaya Defendants"); and ROHM Co., Ltd., and ROHM Semiconductor U.S.A., LLC ("ROHM"). *See* Dkt. 1713.

prosecuting the litigation and developing the factual record to prove their claims. The law favors compromise and the settlement of complex class actions. Here, the parties reached these Settlements after difficult, arm's-length negotiations between experienced and informed counsel.

The benefits of the Settlements are substantial. The Direct Purchaser Class comprises approximately 2,300 members. Members of the class will receive near-term monetary benefits together with cooperation that will promote the ultimate success of DPPs' case against the Non-Settling Defendants. Most of the largest direct purchasers have elected to participate in the Settlements. Such interest reflects the considered judgment of sophisticated businesses making rational decisions based on their bottom line. These considerations weigh in favor of final approval.

DPPs have complied with the Court-approved notice program and disseminated notice through direct mailings, publication notice, online advertising, and social media. Mindful of the Court's expressed interest in ensuring that as many Class members as possible receive direct notice of the Settlements and their potential claims, DPPs have taken additional steps well beyond the minimum requirements of due process and Rule 23(c)(2)(B). To facilitate the settlement process, DPPs have mailed Class members claim forms pre-populated with each's annual capacitor purchases derived from Defendants' sales transaction data (the "Claim Forms"). DPPs also have responded to multiple inquiries from class members regarding the claims process and participation in the Settlements.

DPPs' efforts are demonstrated by the results. Of the 282 Settlement Class members that submitted valid claim forms for the First Round Settlements ("First Round Submitters"), 251 First Round Submitters representing 98% of the total commerce of the group submitted claim forms for these Settlements. Only one company, representing only 1% of the total commerce of the First Round Submitters, has decided to request exclusion from these Settlements. (Saveri Decl. ¶ 51)

In addition, 142 additional Settlement Class members that did not submit claim forms for the First Round Settlement have chosen to submit claim forms for these Settlements. (*Id*. at ¶ 52) One Settlement Class member that had originally requested exclusion and filed an individual opt-out action has rescinded its request for exclusion, dismissed its individual action, and submitted a claim form to participate in the Settlements. Indeed, there are three (3) fewer corporate families that have requested exclusion for these Settlements than in the First Round. (*Id*. at ¶ 53)

Together, the Settlement Class Members that have submitted claim forms for these Settlements constitute 77.5% of the Settlement Class's total commerce, which is an increase of 11.4% over the First Round Settlements. (*Id.* at 54) Counsel has received no objections to the Settlements. (*Id.* at 55)]

\*       \*       \*

For the Settlements to be effectuated and the Settlement Funds distributed, the Court must also: (1) certify the Settlement Class after finding Rule 23(a) and (b)(3)'s class action prerequisites have been satisfied; and (2) finally approve DPPs' *pro rata* allocation plan. The Court granted preliminary approval as to both issues and should now grant final approval as well.

## II.       FACTUAL AND PROCEDURAL BACKGROUND

### A.       DPPs' Factual Allegations and Claims

At least as early as January 1, 2002, Defendants entered into a price-fixing conspiracy with the purpose and effect of fixing, raising and stabilizing the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide. The Defendants in this action, including those that have previously settled with DPPs, are 22 different corporate families that manufacture and sell capacitors in the United States and around the world. Defendants agreed, as part of their illegal cartel, to combine and perform the various acts necessary to achieve the anticompetitive purposes of this scheme, as well as to conceal their concerted activities from public view and regulatory oversight.

DPPs claim that Defendants' unlawful actions are in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and they seek treble damages against all Defendants, who each are jointly and severally liable for the injury caused by their illicit cartel.

### B.       Procedural History and Discovery

DPPs have substantially advanced this case during the more than three years since Plaintiff Chip-Tech filed the first capacitors price-fixing complaint in July 2014. Dkt. 1. *See also* Dkt. 1989-1 ¶¶ 4-43. After facing three rounds of Defendants' motions to dismiss, DPPs' claims largely emerged intact. *See* Dkts. 710, 1003, 1546. DPPs' Third Amended Complaint, filed on September 6, 2017, is the operative pleading. *See* Dkt. 1831; Saveri Decl. ¶ 5.

DPPs have twice faced summary judgment motions from Defendants seeking to narrow DPPs' claims based on the Foreign Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA"). *See* Dkt. 1458-1 ¶¶ 28-37. The Court's September 30, 2016 Order effectively excluded sales of capacitors outside the United States to purchasers outside of the United States, but preserved claims with respect to capacitors billed or shipped to purchasers in the United States. Dkt. 1302. On March 23, 2017, the Court also denied Soshin's motion for summary judgment based on the FTAIA. Dkt. 1424.

DPPs have vigorously pursued discovery against the Defendants, including the Settling Defendants, since January 2015, when the Court partially lifted the discovery stay requested by the Department of Justice. *See* Dkt. 514; Saveri Decl. ¶ 7. DPPs have propounded 80 Requests for Production to all Defendants, 187 more Requests for Production to individual Defendants or groups of Defendant companies, over 45 interrogatories to all Defendants, and 60 Interrogatories on jurisdictional and other issues to individual Defendants or groups of Defendant companies. DPPs have also deposed approximately 100 witnesses, either in their individual capacity or as designated corporate representatives. *Id*.

DPPs have also coordinated voluminous discovery of electronically stored information ("ESI") and other documents. DPPs reached agreement with Defendants for them to search over 100 document custodians' files. *Id*. at ¶ 8. Defendants also agreed to search for documents about former employee custodians whose data had been purged upon or after their separation from the company. *Id*. DPPs further negotiated and eventually reached agreement with Defendants regarding an ESI collection protocol: Defendants agreed to batch and produce the results from searches of their centralized files and the agreed custodians' personal files using several hundred search terms and phrases—each one optimized and translated by DPPs' counsel to identify relevant files in both English and Japanese. *Id*.

To date, Defendants have delivered documents to Plaintiffs in over 500 separate productions, each of which DPPs have logged, processed, and reviewed. *Id*. at ¶ 9. In total, DPPs have received from Defendants nearly 16 million files spanning over 40 million unique Bates-numbered pages and amounting to over eight terabytes of ESI. *Id*. The vast majority of the Defendants' productions are in Japanese, though Defendants also produced significant amounts of material in English, Chinese, Korean, and other languages. *Id*. DPPs' translations and strategic analyses of the productions have

yielded a large amount of material that supports DPPs' allegations of price fixing. *See id.* at ¶ 11. To date, DPPs and IPPs have amassed several thousand conspiracy-related and other relevant documents for use in making their cases against Defendants. *See id.*

DPPs also devoted substantial work to discovery negotiations with Defendants regarding their production of transaction-level sales data. *Id.* at ¶ 10. Defendants produced more than 500 gigabytes of sales data comprising over seven million transactions, which collectively represent tens of billions of capacitor units sold and billions of dollars of commerce. *Id.* This compilation of transactional data has been crucial to DPPs' analysis of Defendants' alleged price-fixing, DPPs' success with respect to Defendants' motions for summary judgment under FTAIA, and, most relevant here, their ability to provide direct notice to the Settlement Class.

### C.    Prior Settlement History and Class Certification

By 2016, DPPs had amassed enough evidence through discovery to prompt settlements with five Defendant families. *See generally* Dkts. 1298-2 through 1298-10. The Court granted preliminary approval of those First Round Settlements and approved DPPs' notice plan on January 27, 2017. Dkt. 1455; Saveri Decl. ¶¶ 18-19. After holding a fairness hearing, the Court granted final approval of the First Round Settlements in April. *See* Dkts. 1607, 1647, 1713; Saveri Decl. ¶ 19. In total, the First Round Settlements established a common fund of $32,600,000 for the benefit of the First Round Settlement class. *Id.*

DPPs moved for class certification on June 15, 2017. Dkts. 1693 & 1766; Saveri Decl. ¶ 15. The moving papers included supporting declarations by James McClave, an expert econometrician, and Douglas Zona, an expert economist. Dkts. 1693-2 through 1693-6. DPPs filed reply briefs and additional supporting materials on August 3, 2017. Dkt. 1776-3. The Court held a hearing on September 7, 2017. Dkt. 1834. The motion is pending before the Court. Saveri Decl. ¶ 17.

## III.    TERMS OF THE PROPOSED SETTLEMENTS

Taken together, the Settlements each resolve all of the Direct Purchaser Class' claims in the Action against the respective Settling Defendants. The Settlements constitute an outstanding result for the benefit of the Class. *See* Saveri Decl. ¶ 40. Details are contained in the agreements themselves,

which are attached as Exhibits A and B to the Saveri Declaration. The terms of the Settlements most pertinent to the Court's final approval consideration are set forth below.

The settlement payments for each of the Settling Defendants represent more than their net U.S. sales during the relevant time period. *See* Saveri Decl. ¶¶ 27-35. Together, the overpayments that the Settlements will restore to Class members constitute more than 400% of the total net U.S. sales of the Settling Defendants during the relevant time period. *See id*.

**A.    Settlement Amounts and Additional Consideration Unique to Each Settling Defendants**

**1.    Hitachi Chemical Settlement**

Hitachi Chemical has agreed to pay $63,000,000 to resolve the claims of the Direct Purchaser Plaintiff class into the Settlement Fund by December 1, 2017. *See* Saveri Decl., Ex. A ¶ 27. Hitachi made this payment on or before December 7, 2017. *See* Saveri Decl. ¶ 28.

As additional consideration, Hitachi Chemical has agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. Hitachi Chemical has agreed to provide an initial attorney proffer, during which Hitachi Chemical shall describe the facts developed during its investigation of its conduct. *See id.*, Ex. A ¶ 22. Additionally, Hitachi Chemical has agreed to provide up to a total of four current or former employees as witnesses, to provide up to two declarations as to the relevant facts as requested by DPPs, and to provide assistance reasonably necessary to establish the foundation for and admissibility of documents Hitachi Chemical has produced in this action or pursuant to this Settlement Agreement. *See id.*, Ex. A ¶ 22. In connection with its criminal guilty plea, Hitachi Chemical has represented that its volume of affected commerce is $16.5 million. *See* Dkt. 1989-7 at 8. Thus, Hitachi Chemical's settlement payment represents over 380% of its sales during the relevant time period. *See* Saveri Decl. ¶ 30. Hitachi Chemical paid the full amount of $63,000,000 into the Settlement Fund on or about December 7, 2017. *Id.* at 28

**2.    Soshin Settlement**

Soshin has agreed to pay $3,900,000 into the Settlement Fund within fourteen calendar days of the Court's order granting the Preliminary Approval Motion. *See* Saveri Decl., Ex. B ¶ 19. Soshin paid the full amount on March 14, 2018. *See* Saveri Decl. ¶ 33.

Soshin also has agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. Soshin has agreed to produce to DPPs an initial attorney proffer, during which Soshin shall describe the facts developed through its investigation of its conduct. *See id.*, Ex. B ¶ 35. Additionally, Soshin agreed to make available one former Soshin employee for deposition, and to provide assistance reasonably necessary to establish the foundation for and admissibility of documents Soshin has produced in this Action or pursuant to this Settlement Agreement. *See id.*

Soshin's worldwide capacitors sales between 2002 and 2014 were limited, and Soshin did not heavily target the U.S. market during that period. DPPs therefore believe that the settlement consideration is several times greater than Soshin's relevant U.S. sales. *See* Saveri Decl. ¶ 34.

## B.   Terms Common to Both Settlements

### 1.   Release of All Claims

In exchange for the Settling Defendants' monetary and cooperation consideration, upon entry of a final judgment approving the proposed Settlements, DPPs will release the Settling Defendants of all claims related to any of the alleged conduct giving rise to this litigation. *See* Saveri Decl. Exs. A ¶ 14; B ¶ 12.

The Settlements do not, however, resolve or compromise any claims against the Non-Settling Defendants. *See* Saveri Decl. ¶ 37. Further, the Settling Defendants' sales are not excluded for purposes of asserting joint and several (or derivative) liability against any Non-Settling Defendant. *See id.*

### 2.   Option to Rescind Settlement Agreements

The Settling Defendants each have the option to rescind their settlement agreements for certain specified reasons, *e.g.*, if the level of opt-outs exceeds certain dollar amounts of direct purchases set forth in the confidential supplemental agreements, which can be made available to the Court for *in camera* inspection. *See* Saveri Decl. Exs. A ¶ 8; B ¶¶ 38-39. The dollar amount triggering rescission rights is different for each Settling Defendant. *See* Saveri Decl. ¶ 36.

### 3. Attorneys' Fees and Expenses

The Settlement Agreements provide that Interim Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this litigation. *See* Saveri Decl. Exs. A ¶¶ 34-38; B ¶¶ 31-35.

## IV. DPPS' SETTLEMENTS WITH HITACHI CHEMICAL AND SOSHIN ARE FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL

A class action may be dismissed, compromised, or settled only with the approval of the Court. The Rule 23(e) settlement approval procedure includes: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected class members; and (3) a fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *Id.*

The law favors the compromise and settlement of class action suits. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) ("*Churchill*"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice*, 688 F.2d at 626). In exercising such discretion, courts should give

> proper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.* at 1027 (citation and quotations omitted).

When parties reach settlement before a class is certified, courts "must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v.*

*Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Pre-class certification settlements "must with-stand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1026). In evaluating a proposed class action settlement, the Ninth Circuit requires the Court to balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575 (citing *Hanlon*, 150 F.3d at 1026); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Officers for Justice*, 688 F.2d at 625.

The balance of these factors decidedly weighs in favor of final approval of the Settlements.

## A.    The Significant Monetary and Other Benefits to the Settlement Class Favor Approval

The Settlements provide important relief for Settlement Class members. The relief afforded is fair, adequate and reasonable, particularly given the potential risks of litigation.

Damages in a price-fixing antitrust conspiracy case generally correspond to the amount of the overcharge resulting from anticompetitive activity, usually measured as a percentage of total sales. The $66.9 million in total settlement in this case represents over 400% of the total net U.S. sales of all Settling Defendants during the relevant time period. *See* Saveri Decl. ¶ 40.

The percentage recovered from Settling Defendants far exceeds the percentage recovered in many other antitrust class action settlements. *See, e.g.*, *In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *5 (E.D. Pa. May 10, 2004) (recovery represented approximately 2% of sales); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (recovery represented 1.62% of sales).

The amount of the total settlement payments is particularly significant considering the relatively minor commerce of the Settling Defendants compared with the Non-Settling Defendants. The Settling Defendants' net sales to U.S. purchasers constitute less than 1% of the total commerce at issue in this litigation. *See* Saveri Decl. ¶ 41. The Settlements do not reduce the total damages the Class can recover as each of the Non-Settling Defendants remains jointly and severally liable for all the harm caused by the cartel. See Saveri Decl. at *See* Exs. A ¶ 19; B ¶ 18. The Settlements do not limit DPPs' continued prosecution of their claims against the Non-Settling Defendants. Indeed, the Settlements materially advance it. *See* Saveri Decl. ¶ 25.

Finally, each of the Settling Defendants has agreed to provide valuable assistance to DPPs in their continuing case against the remaining Non-Settling Defendants. *See* Saveri Decl. ¶¶ 27-35.

**B.   Although DPPs' Claims are Strong, the Court Should Approve the Settlements Because They Eliminate Certain Litigation Risks to the Settlement Class**

The "strength of the plaintiffs' case," the "risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial" favor approval of the Settlements. *See Churchill*, 361 F.3d at 575.

An antitrust class action is "arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515, at *45 (N.D. Cal. Dec. 19, 2016) (citation and internal quotation marks omitted). Indeed, the "history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998).

In this case, Defendants continue to stand on their defenses despite three rounds of motions to dismiss and two rounds of summary judgment motions. Defendants are represented by some of the most experienced antitrust attorneys in the United States, who have vigorously defended their clients at every stage of this litigation. The Settlements are in the best interests of the Settlement Class because they eliminate the risks of continued litigation while at the same time providing substantial cash recovery and other benefits to the Class. The Settlements also provide the Class substantial strategic

advantages. The Settling Defendants have agreed to cooperate with DPPs in the continuing suit against the Non-Settling Defendants for a much larger potential recovery. *See* Saveri Decl. ¶¶ 27-35. Moreover, the greater the number of Defendants, the more complicated the case becomes, presenting challenges at trial. Partial settlements such as this one streamline the case and allow plaintiffs to focus their.

### C.   The Settlements Resulted from Informed, Arm's-Length Negotiations Between the Parties and DPPs' Experienced Counsel

In determining whether to approve a class action settlement, "'the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties'. . . ." *City of Seattle*, 955 F.2d at 1290 (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)). Where a proposed class settlement "has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

The judgment of experienced counsel regarding a settlement reached by arm's-length negotiations should be given significant weight and a presumption of reasonableness. *See Linney v. Cellular Alaska P'ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007). Here, to the extent the Settlements might be viewed as "early resolution[s]" because the class certification issues have not yet been litigated, the Settlements nonetheless "demonstrate that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end to the case." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011) (citations and internal quotation mark omitted).

Lead Class Counsel have extensive experience handling antitrust class actions and other complex litigation from inception through trials and appeals. *See* Saveri Decl. ¶ 2. Lead Class Counsel have represented DPPs since the commencement of this litigation, conducted an in-depth investigation into the factual and legal issues raised in this action both before and after filing the case, and litigated the case assiduously for over three years. *See id.* Counsel for the Settlement Class have also conducted

arm's-length negotiations on a well-informed basis against experienced defense counsel. *See id.* ¶¶ 23-24.

Counsel for the Settlement Class and for the Settling Defendants endorse the Settlements as fair, adequate and reasonable. *See* Saveri Decl. ¶ 38. The "experience and views of counsel" thus favor approval of the Settlements. *Churchill*, 361 F.3d at 575.

### D. The Case's Procedural Posture, Along With the Significant Discovery Conducted to Date, Has Informed Settlement Negotiations and Supports Final Approval

The "extent of discovery completed and the stage of the proceedings" in this case also favor final approval. *Churchill*, 361 F.3d at 575.

The discovery conducted to date and the procedural posture of the case demonstrate the factual basis for the Settlements and the knowledge of counsel for the Settlement Class with respect to the facts and legal issues in the case. *See* Dkt. 1458-1 ¶¶ 18-55. The settlement negotiations and the ultimate decision to settle were informed by a detailed and sufficient analysis. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) (citation omitted). This case was commenced by the Lead Class Counsel on July 18, 2014. Since then, counsel for the Settlement Class have received from Defendants over eight terabytes of ESI and more than 500 gigabytes of transactional data during discovery, the great majority of which are in Japanese. *See* Saveri Decl. ¶ 9. The docket contains over 2,100 filed documents. Counsel have protected DPPs' claims against three rounds of motions to dismiss and two rounds of summary judgment motions filed by dozens of experienced, well-respected attorneys on behalf of the corporate Defendant families. *See id.* ¶ 5. Based on this work and analysis, counsel have gained a thorough understanding of each Settling Defendants' role in the alleged capacitors price-fixing conspiracy; the strengths and weaknesses of DPPs' claims; the financial condition of certain of the Settling Defendants; and their liability exposure. *See id.* ¶ 12. Counsel therefore possess the expertise and information to make an informed judgment as to the fairness and adequacy of the Settlements for the Settlement Class.

**E.      Class Members' Positive Reaction to the Settlements Favors Final Approval**

A court may appropriately infer that a class settlement is fair, adequate, and reasonable when few Class members object to it. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Indeed, a court can approve a class action settlement over the objections of a significant percentage of Class members. *See City of Seattle*, 955 F.2d at 1291-96.

Starting March 9, 2018, DPPs' Court-approved notice program reached out directly to 2,279 potential Class members. *See* Zylstra Decl. ¶ 4-5. Publication notice was also provided to tens of thousands of others through *The Wall Street Journal*, Twitter, the claims website that DPPs' counsel supervised at www.capacitorsantitrustsettlement.com (the "Claims Website"), and online and social media advertising. *See* Zylstra Decl. ¶¶ 14-16. As of the date of this Motion, DPPs have received no objections. *See* Saveri Decl. ¶ 55.

The number of claims submitted has risen steadily during the claims period. *See id.* Both Interim Class Counsel and the claims administrator fielded numerous calls daily from Class members interested in discussing the Settlements, this litigation, and how to submit their claims. *See id.*, ¶ 49. Virtually all of the Settlement Class members who participated in the First Round settlements have submitted Claim Forms for these Settlements, and an additional [ ] Settlement Class members have submitted Claim Forms for the first time. The support and engagement of members of the Settlement Class— including some of the largest direct purchases of capacitors—demonstrates Settlement Class members' positive reaction to the Settlements. *See id.*

**V.      THE COURT-APPROVED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND HAS BEEN FULLY IMPLEMENTED**

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members to be bound by a proposed settlement. When a proposed Rule 23(b)(3) class settlement is presented for court approval, the Federal Rules require class members to receive:

1  the best notice that is practicable under the circumstances, including
2  individual notice to all members who can be identified through reasonable
   effort. The notice must clearly and concisely state in plain, easily
3  understood language: (i) the nature of the action; (ii) the definition of the
   class certified; (iii) the class claims, issues, or defenses; (iv) that a class
4  member may enter an appearance through an attorney if the member so
   desires; (v) that the court will exclude from the class any member who
5  requests exclusion; (vi) the time and manner for requesting exclusion; and
   (vii) the binding effect of a class judgment on members under Rule
6  23(c)(3).

7  Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same)

8  (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). "[T]he class must be

9  notified of a proposed settlement in a manner that does not systematically leave any group without

10  notice." *Officers for Justice*, 688 F.2d at 624 (citations omitted). These requirements ensure that class

11  notice procedures comply with the demands of due process. *Rannis v. Recchia*, 380 F. App'x 646, 650

12  (9th Cir. 2010) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). The notice provided to

13  class members in this case comports with due process and satisfies all applicable requirements.

14  **A.     DPPs' Notice and Notice Program Satisfy Rule 23 and Due Process Requirements**

15  The notice provided to class members in this case comports with due process and satisfies all

16  applicable requirements. As the Court's Preliminary Approval Order finds,

17  taken together, (a) mailing of the Long Form Notice with the Summary
    Notice (by U.S. Mail or electronic mail) to Settlement Class Members that
18  did not timely submit valid claim forms for the first round of DPP
    settlements approved by the Court in its Order dated June 27, 2017, Dkt.
19  1713 (the "First-Round Settlements"); (b) mailing of the Postcard Notice
    to Settlement Class Members that timely submitted valid claim forms for
20  the First-Round Settlements; (c) publication of the Summary Notice; and
    (d) Internet posting of the Long Form Notice: (i) are the best notice
21  practicable; (ii) are reasonably calculated to, under the circumstances, to
    apprise the Settlement Class Members of the proposed Settlements and of
22  their right to object or to exclude themselves as provided in the Settlement
    Agreements; (iii) are reasonable and constitute due, adequate, and
23  sufficient notice to all persons entitled to receive notice; and (iv) meet all
    applicable requirements of due process and any other applicable
24  requirements under federal law.

25  Dkt. 2075 ¶ 12. *See also* Dkt. 2075-1 (Long Form Notice); Dkt. 2075-2 (Summary Notice); Dkt. 2075-3

26  (Postcard Notice).

27

28

**B.      DPPs Fully Implemented the Court-Approved Notice Program**

**1.      DPPs' Direct Mailing Plan Targeted Notice at Defendants' Customers**

In accordance with the Court-approved notice program, Interim Class Counsel employed the lists of direct purchasers taken from all of the transactional sales databases to date. *See* Zylstra Decl. ¶ 9. The transactional data contained Class member names, their mailing addresses, and their annual capacitors purchase amounts from each Defendant during the relevant period. *See id.* This information was then used to generate and populate Claim Forms for potential Class members identified from Defendants' transactional data.[3] *See id.* Each Claim Form contains pre-populated information regarding the recipient's annual capacitors purchases from each Defendant between 2002 and 2015, as well as an estimate of the recipient's estimated total award from the Settlements. DPPs mailed 3,041 Claim Forms and the Notice to Class members on March 9-10, 2018. *See* Zylstra Decl. ¶¶ 4-5. Class members receiving the pre-populated Claim Forms have the opportunity to submit additional information to the claims administrator if they believe the capacitors purchase information on their respective forms is incorrect or requires modification. *See id.*, ¶ 10.

**2.      DPPs' Publication Notice Was Distributed Broadly**

At Interim Class Counsel's direction, the Summary Notice was published in the national edition of *The Wall Street Journal* on March 23, 2018. The paper's circulation at that time was 1,321,827. *See* Zylstra Decl. ¶ 8.

**3.      DPPs' Online Notice Strategy Targeted Class Members and Persons in the Electronics Industry**

Interim Class Counsel directed Rust to launch the Claims Website (www.capacitorsantitrustsettlement.com) to provide Class members and the public information about the claims process. *See* Zylstra Decl. ¶ 16. The Long Form Notice is posted on the Claims Website. *See id.*

Interim Class Counsel also directed Rust to run banner advertisements that linked to the Claims Website on 13 different electronics industry-focused web sites (www.Passivecomponentmagazine.com;

---

[3] DPPs continue to update the class member list with information received from Defendants as well and direct contact from class members.

www.Electronicproducts.com; www.TechOnline.com; www.ECNmag.com; www.EDN.com; www.Eetimes.com; www.How2Power.com; www.Powerelectronics.com; www.NetComponents.com; www.Motherboard.vice.com; www.Tomshardware.com; www.Capacitorindustry.com; and www.CapacitorsNews.com). *See* Zylstra Decl. ¶ 15. The banner advertisements ran for a three-week period (March 23, 2018 through April 12, 2018) during which the websites on which the banners ran had a total of 7,080,943 gross impressions.[4] *See id.* ¶¶ 14-15.

### C. DPPs Have Taken Steps Over and Above Their Due Process and Rule 23 Obligations to Ensure That as Many Direct Purchaser Class Members as Possible Receive Mailed Notice and Claim Forms

In total, 471 Claim Forms were returned to Rust as undeliverable with no forwarding address received. *See* Zylstra Decl. ¶ 13. Rust conducted a skip trace on each of these returned Claim Forms using standard methods. *See id.* This yielded 78 new addresses to which the Claim Forms were then sent.

Starting on April 4, 2018, Interim Class Counsel's personnel—both attorneys and staff—began to reach out to these Class members by telephone to tell them to expect these claim forms and to return them before the opt-out/objection deadline. *See* Saveri Decl. ¶¶ 47-49. Lead Class Counsel and their staff called or otherwise attempted to contact approximately 450 Settlement Class members who purchased the most capacitors during the Class Period well before the deadline for filing Claim Forms. *See id.*

Interim Class Counsel learned that a number of Class members identified through Defendants' transactional data may have either gone out of business, filed for bankruptcy or been sold to businesses that invest in remnant assets. *See id.* To date, Interim Class Counsel have communicated with two firms having large remnant asset portfolios. Interim Class Counsel have also communicated with a bankruptcy trustee. *See id.* The claims held by the foregoing entities may explain the high return rate for the initial claim form mailing. Interim Class Counsel is now working with these firms to identify any claims to which they may be entitled.

---

[4] Gross impressions are the total number of times a media vehicle (here, the banner advertisements) is seen. This figure does not represent the total number of unique viewers who saw the banners, but the figure informs how frequently the banners appeared on these industry-specific websites. Zylstra Decl. ¶ 14.

Interim Class Counsel's efforts satisfy or exceed the requirements of Rule 23(c)(2)(B) and due process. Mindful of the Court's statements during the preliminary approval hearing for the previous round of settlements, Interim Class Counsel made diligent efforts beyond what is normally undertaken to ensure that as many Class members as possible received Claim Forms.[5]

Interim Class Counsel will report fully to the Court about their efforts to disseminate notice and claims forms to Class members in their further briefing on this Motion in advance of the June 7, 2018 final approval hearing.

## VI.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

It is well-established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Certification of the Settlement Class is necessary to effectuate the Settlements. A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the manageability criteria of Rule 23(b)(3)(D) do not apply, while the "specifications of the rule . . . designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention[.]" *Amchem*, 521 U.S. at 620.

---

[5] Actual notice is not required. While Interim Class Counsel and the claims administrator have made every effort to give individual notice to all identifiable Class members, those Class members need not actually receive such notice to be bound by the Settlements if the Court finally approves them. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (holding that "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member"); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) ("We do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice."); *see also Rannis*, 380 F. App'x at 650 ("[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 U.S. Dist. LEXIS 24951, at *262 (N.D. Cal. Jan. 28, 2016) (following *Silber*).

In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

All requirements under Fed. R. Civ. P. 23 have been satisfied.

First, the Settlement Class should be finally certified. The definition of the Settlement Class that DPPs proposed in their preliminary approval motion was provisionally certified by the Court in its Preliminary Approval Order. *See* Dkts. 1989 at 5; 2075 ¶ 3. No potential Class member has objected to the Settlement Class Definition. *See* Saveri Decl. ¶ 55.

Second, the proposed Settlement Class satisfies each of Rule 23(a)'s four prerequisites. DPPs' motion for preliminary approval set forth in detail how Rule 23(a)'s numerosity, commonality, typicality and adequacy prerequisites are met here. *See* Dkt. 1989 at 13-15. The Court's Preliminary Approval Order provisionally found that the Settlement Class fulfills each of these requirements. *See* Dkt. 2075 at 2. No potential Settlement Class member has objected to the Court's findings, and there have been no intervening events that would affect them.[6] *See* Saveri Decl. ¶ 55.

Third, DPPs' claims satisfy Rule 23(b)(3)'s predominance and superiority requirements. DPPs' motion for preliminary approval set forth in detail how common issues predominate over individualized issues in the Settlement Class' prosecution of claims alleging a years-long capacitors price-fixing conspiracy among the Defendants. *See* Dkt. 1989 at 15-16. DPPs also explained why prosecuting DPPs' claims as a class action is superior to any individualized adjudication of these claims. *See id.* The Court's Preliminary Approval Order provisionally found that DPPs satisfied Rules 23(b)'s predominance and superiority requirements for settlement purposes. *See* Dkt. 2075 ¶ 4. As with Rule 23(a)'s prerequisites, no potential Settlement Class member has objected to the Court's findings, and

---

[6] If anything, the process of disseminating notice to the approximately 2,300 potential Direct Purchaser Class members located throughout the United States has confirmed that the individual claims are too numerous to be joined. *See* Fed. R. Civ. P. 23(a)(1).

1  there have been no material intervening events. Thus, the DPPs request that the Court now make final

2  its preliminary and provisional findings to certify the Settlement Class.

## VII.   THE COURT SHOULD FINALLY APPROVE DPPS' ALLOCATION PLAN

A plan of allocation of class settlement funds is subject to the fair, reasonable and adequate

standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d

1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the type and

extent of their injuries is generally considered reasonable. *Id; see also In re Computron Software, Inc. Sec.*

*Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998).

DPPs propose that the Court approve the same plan of allocation that the Court approved for

the First Round Settlements. *See* Dkt. 1713 ¶ 12. DPPs' preliminary approval motion sets forth a plan

for pro rata distribution of the Settlement Fund to the Settlement Class, after payment of the attorney's

fees and expenses. *See* Dkt. 1989 at 23-24. The plan is impartial; no Class member is favored over

others. *See* Dkt. 1461 at 20; 1989 at 24.

Such pro rata distribution has frequently been determined by Courts to be fair, adequate, and

reasonable. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2015 U.S. Dist. LEXIS

170525, at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon

proportional value of price-fixed component in finished product); *In re Dynamic Random Access Memory*

*(DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010) (Order Approving

Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931, at

*32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds

according to the relative amount of damages suffered by class members have repeatedly been deemed

fair and reasonable.") (citations omitted); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS,

2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y. Nov. 26, 2002) ("Pro rata allocations provided in the

Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the

settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 135 (S.D.N.Y. 1997), aff'd

117 F.3d 721 (2d Cir. 1997) ("[A] pro rata distribution of the Settlement on the basis of Recognized Loss

will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and

bootless comparison of the merits of the Class Members' claims.").

The Court's Preliminary Approval Order provisionally found DPPs' pro rata allocation plan to be "sufficiently fair, reasonable, and adequate" and approved it. *See* Dkt. 2075 ¶ 6. No Class member has objected to DPPs' proposed allocation plan. *See* Saveri Decl. ¶ 55. In consideration of the foregoing, DPPs respectfully ask the Court to grant final approval of the *pro rata* allocation plan.

## VIII.   CONCLUSION

For the reasons set forth above, DPPs respectfully request that the Court: (1) grant final approval to the Settlement; (2) find DPPs' dissemination of notice to be in accordance with the Court-approved notice program and with Rule 23 and due process requirements; (3) finally certify the Settlement Class; and (4) grant final approval of DPPs' *pro rata* allocation plan.


Dated: May 3, 2018                     JOSEPH SAVERI LAW FIRM, INC.


                                       By:          /s/ *Joseph R. Saveri*
                                       Joseph R. Saveri (State Bar No. 130064)
                                       Steven N. Williams (State Bar No. 175489)
                                       Joshua Paul Davis (State Bar No. 193254)
                                       Nicomedes Sy Herrera (State Bar No. 275332)
                                       Demetrius X. Lambrinos (State Bar No. 246027)
                                       James G. Dallal (State Bar No. 277826)
                                       V Chai Oliver Prentice (State Bar No. 309807)
                                       JOSEPH SAVERI LAW FIRM, INC.
                                       601 California Street, Suite 1000
                                       San Francisco, California 94108
                                       Telephone: (415) 500-6800
                                       Facsimile: (415) 395-9940

                                       *Interim Class Counsel for Direct Purchaser Plaintiffs*