1  Adam J. Zapala (245748)
   Elizabeth T. Castillo (280502)
2  Mark F. Ram (294050)
   **COTCHETT, PITRE & McCARTHY, LLP**
3  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
4  Burlingame, CA  94010
   Telephone:  (650) 697-6000
5  Facsimile:   (650) 697-0577
   azapala@cpmlegal.com
6  etran@cpmlegal.com
   mram@cpmlegal.com
7
   *Interim Lead Counsel for the Putative Indirect Purchaser Class*
8

9

10

11                **UNITED STATES DISTRICT COURT**

12               **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 14  IN RE: CAPACITORS ANTITRUST LITIGATION | **MASTER FILE NO. 14-cv-03264-JD** |
| 15 | **MDL No. 17-md-02801-JD** |
| 16  **THIS DOCUMENT RELATES TO:** | **INDIRECT PURCHASERS' NOTICE OF MOTION AND MOTION FOR FINAL** |
| 17  **ALL INDIRECT PURCHASER ACTIONS** | **APPROVAL OF SETTLEMENTS WITH DEFENDANTS HITACHI CHEMICAL,** |
| 18 | **SOSHIN, HOLYSTONE, NCC/UCC, AND RUBYCON AND APPROVAL OF** |
| 19 | **PLAN OF ALLOCATION** |
| 20 | Date:   October 18, 2018 |
| 21 | Time:  10:00 A.M.<br>Judge:  Hon. James Donato |
| 22 | Courtroom:    11, 19th Floor |

23

24

25

26

27

28

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT**, on October 18, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move, under Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"), for entry of an Order:

1.     Granting final approval of five settlements with Defendants (1) Hitachi Chemical Co., Ltd, Hitachi AIC Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "**Hitachi Chemical**"); (2) Soshin Electric Co., Ltd and Soshin Electronics of America, Inc. (together, "**Soshin**"); (3) Holystone Enterprise Co., Ltd, Holy Stone Holdings Co., Ltd, Holy Stone Polytech Co., Ltd, and Milestone Global Technology, Inc. (collectively, "**Holy Stone**"); (4) Nippon Chemi-Con Corp. and United Chemi-Con Corp. (together, "**NCC/UCC**"); and (5) Rubycon Corp. and Rubycon America Inc. (together, "**Rubycon**").

2.     Dismissing, with prejudice, IPPs' claims against Hitachi Chemical, Soshin, Holy Stone, NCC/UCC, and Rubycon from the IPPs' actions; and

3.     Finally Approving IPPs' Plan of Allocation.

The grounds for the motion are as follows: (a) the proposed settlements with Hitachi Chemical, Soshin, Holy Stone, NCC/UCC, and Rubycon (the "Settlements") are fair, reasonable, and adequate and satisfy Federal Rule of Civil Procedure 23(e); (b) the Settlements are the product of arm's-length negotiations; (c) the Court-approved notice program satisfies due process and Rule 23; and (d) the Plan of Allocation is fair, reasonable and adequate.

IPPs' Motion is based upon this Notice; the following Memorandum of Points and Authorities in support; the accompanying Declarations of Adam J. Zapala and Eric Schachter and the exhibits attached thereto; the Class Settlements with Defendants Hitachi Chemical, Soshin, Holy Stone, NCC/UCC, and Rubycon; the Court's January 10, 2018 and May 25, 2018 Orders granting Plaintiffs' Motions for Preliminary Approval of Settlements and Approval of Class

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**

1

Notice Program (*see* Dkts. 2009, 2151, 2152); any further papers filed in support of this motion as well as arguments of counsel and all records on file in this matter.

Dated: September 12, 2018

By: /s/ *Adam J. Zapala*

Adam J. Zapala
Elizabeth T. Castillo
Mark F. Ram
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Lead Class Counsel for Indirect Purchaser Plaintiffs*

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**

1

## TABLE OF CONTENTS

2

**Page**

3    I.     STATEMENT OF ISSUES TO BE DECIDED ...................................................1

4    II.    INTRODUCTION ................................................................................................1

5    III.   FACTUAL AND PROCEDURAL HISTORY ....................................................2

6           A.     Factual History..........................................................................................2

7           B.     The Settlement Agreements ......................................................................3

8    IV.    ARGUMENT .......................................................................................................4

9           A.     Legal Standard for Final Approval of Class Settlements..........................4

10          B.     The Class Settlements Are Fair, Reasonable, and Adequate, and Should be
                   Approved....................................................................................................5

11
                   1.     The Class Settlements Provide Considerable Relief For The Class ...........5
12
                   2.     Class Members' Overwhelmingly Positive Reaction Favors Final
13                         Approval ........................................................................................6

14                 3.     The Settlements Eliminate Significant Risk to the Classes ........................7

15                 4.     The Stage of the Proceedings and Extent of Discovery Favors
                          Approval ........................................................................................7
16
                   5.     The Settlements Are the Product of Arm's Length Negotiations Between
17                         the Parties and Are Based on the Recommendations of Experienced
                          Counsel ..........................................................................................8
18
            C.     The Court-Approved Notice Program Satisfies Due Process and Adequately
19                 Provided Notice to the Class .....................................................................9

20                 1.     This Court Approved IPPs' Notice Plan......................................10

21                 2.     IPPs Implemented the Court-Approved Notice Program ...........10

22                 3.     The Notice Program Was Successful in Reaching Class Members..........11

23                 4.     The Notice Program Satisfies Due Process ................................12

24          D.     The Proposed Plan of Allocation is Fair, Reasonable and Adequate and
                   Should be Approved .................................................................................12
25
     V.     CONCLUSION...................................................................................................14
26

27

28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone,
NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**                    i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.,*
  982 F.2d 242 (7th Cir. 1992) ........................................................................... 6

*Briseno v. ConAgra Foods, Inc.,*
  844 F.3d 1121 (9th Cir. 2017) ........................................................................ 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015) ............................ 13

*Churchill Vill., LLC v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) ........................................................................... 6

*In re Citric Acid Antitrust Litig.,*
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................................... 12, 14

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ..................................................................... 5, 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ..................................... 13

*Fisher Bros. v. Mueller Brass Co.,*
  630 F. Supp. 493 (E.D. Pa. 1985) ..................................................................... 6

*In re Fleet/Norstar Sec. Litig.,*
  935 F. Supp. 99 (D.R.I. 1996) ........................................................................... 6

*Four in One Co. v. S.K. Foods, L.P.,*
  2:08-CV-3017 KJM EFC, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ............................ 12

*Garner v. State Farm Mut. Auto. Ins. Co.,*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................... 5, 9

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ..................................................................... 5, 6

*Jaffe v. Morgan Stanley & Co.,*
  No. C 06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............................ 7

*In re Linerboard Antitrust Litig.,*
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................... 6

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) ......................................................................... 10

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD          ii

*In re Lloyds' Am. Trust Fund Litig.*,
No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26,
2002) ........................................................................................................................ 13

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ................................................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 6, 9

*Officers for Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................... 9

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................................................................. 1, 5, 6

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ...................... 13

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .............................................................................................. 9, 12

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................................ 7, 8, 10

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................... 7

*Vasquez v. Coast Valley Roofing*,
670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..................................................................... 4

*In re Vitamins Antitrust Litig.*,
No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) ................ 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................................ 7

**Rules**

Federal Rules of CivilProcedure
Rule 23 ................................................................................................................. 4, 12
Rule 23(b)(3) ............................................................................................................. 9
Rule 23(c)(2)(B) ................................................................................................... 4, 10
Rule 23(e) .......................................................................................................... 1, 4, 5
Rule 23(e)(1) ............................................................................................................. 9
Rule 45 .................................................................................................................... 10

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone,
NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          iii

**Other Authorities**

Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004)
    § 23.63.................................................................................................................4

Albert Conte & Herbert Newberg, 4 Newberg on Class Actions (5th ed. 2014)
    §§ 13:39–40 .........................................................................................................4

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**     iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

Whether this Court should finally approve the proposed Class Settlements and the Plan of Allocation, given that they are fair, reasonable, and adequate, satisfy all applicable requirements, and after proper notice to the Classes in accordance with Due Process and Rule 23, no class member has objected.

### II.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Orders granting settlement class certification, preliminary approval of the proposed settlements, and the plan for providing class notice to potential Settlement Class Members, the Indirect Purchaser Plaintiffs ("IPPs") submit this memorandum in support of final approval of the Class Settlements with Defendants Hitachi Chemical, Soshin, Holy Stone, NCC/UCC, and Rubycon ("Settling Defendants").

The Class Settlements are "fair, reasonable, and adequate," *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir. 2015), and represent an excellent recovery for the IPP Classes given the Defendants' commerce involved and the overall commerce at issue in the litigation. The settlements provide for a cumulative Settlement Fund of $34,590,000.  For the entire litigation, in combination with the Round 1 settlements, IPPs have recovered $49,540,000. Each settlement also includes requirements for substantial cooperation that will assist (and has assisted) IPPs in the continued prosecution of their claims against the non-settling Defendants. The Class Settlements provide considerable relief for the Settlement Classes, whose members would otherwise face great uncertainty and potentially additional waiting for a successful result in this litigation. Despite the strength of IPPs' claims, the Classes continue to face significant litigation risk in the form of class certification, motions for summary judgment, expert discovery, trial, and potential appeals.

The reaction of the Classes to these settlements has been overwhelmingly and uniformly positive.  Despite the extraordinarily large size of the Classes, and a class notice program that is both constitutionally sufficient and approved by this Court, not a single class member has

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          1

objected.   Moreover, an extremely small number of opt-outs have been received.   *See* IPPs' Notice of Requests for Exclusion, Ex. A (listing opt-outs), ECF No. 2185-1.   Taken together, the combined purchases of the entities requesting to opt-out represent less than 1.4% of the total sales to IPPs, as reflected in the distributor data.   *See* Declaration of Adam J. Zapala in Support of Final Approval, ¶ 32 ("Zapala Decl.").

## III.   FACTUAL AND PROCEDURAL HISTORY

### A.   Factual History

For a more thorough and complete Statement of Facts regarding the litigation history of this case, refer to IPPs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, ECF No. 2176 at pgs. 1-9 (detailing IPPs' efforts in this litigation), also submitted in connection with these final approval proceedings.   This consolidated case arises from alleged conspiracies by Defendants to fix, raise, maintain, and/or stabilize the price of capacitors sold in the United States. This case has been heavily litigated by counsel for all parties, including motions to dismiss, motions for summary judgment, and many discovery challenges. Despite the complexity and length of the case thus far—evidenced by the thousands of docket entries —IPPs still have much work to complete in order to hold the non-Settling Defendants accountable for their illegal price-fixing conspiracies. There is no question, therefore, that the preliminarily-approved Settlements are the result of a fair evaluation of the merits of the case after years of extensive litigation *and* discovery.

Cotchett, Pitre & McCarthy, LLP ("CPM" or "Class Counsel") was appointed interim lead counsel for the IPP class by this Court on October 31, 2014. Dkt. 319. After numerous amended complaints and motions to dismiss, Class Counsel filed the operative Fifth Consolidated Complaint on April 3, 2017. Dkt. 1589.

In order to achieve the settlements subject to this Motion, Class Counsel and counsel for each Settling Defendant engaged in extensive arm's-length negotiations.   *See* Zapala Decl. ¶¶ 2, 4, 11, 15, 19, 23, 26.   This Court preliminarily approved the settlements and IPPs' Class Notice Program with respect to the Settling Defendants.   Dkts. 2009, 2151, 2152.   The Court also certified settlement classes for each Settling Defendant and set deadlines by which Class

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          2

Members could opt-out or object. *Id.*

IPPs have complied with the Court's Orders, including issuance and distribution of notice in various forms in accord with the order. *See* Declaration of Eric Schachter Regarding Dissemination of Notice of Settlements ("Schachter Decl."). Despite the breadth of the notice plan's coverage, only an extremely limited number of settlement Class Members have opted out. *see* Dkt. 2185, and no putative class member has objected.

## B.    The Settlement Agreements

The terms of the proposed settlements are described in detail in previous filings with the Court and the Court's prior Orders preliminarily approving the Settlements, and are incorporated herein by reference. *See* Dkts. 1844 & 2099. In exchange for $14,000,000 from Hitachi Chemical, $590,000 from Soshin, $2,000,000 from Holystone, $13,500,000 from NCC/UCC, and $4,500,000 from Rubycon (collectively $34,590,000), and substantial cooperation from all Settling Defendants in further prosecution against non-settling Defendants,[1] the proposed Class Settlements release claims against the Settling Defendants for their participation in alleged conspiracies to fix, raise, or stabilize prices for capacitors and sold to IPPs through distributors.[2] *See* Zapala Decl. ¶¶ 8-28, Exs. A-E.

In preliminarily approving the Settlement Agreements, the Court certified the Settlement Classes for settlement purposes and directed that class notice be issued (collectively, "Settlement Classes").  Dkts. 2009, 2151, 2152.

---

[1] In general, substantial cooperation includes providing an oral proffer of facts regarding the alleged price-fixing conspiracies, producing documents related to communications and meetings utilized by Defendants to conspire, fix, raise, maintain and/or stabilize the price of capacitors, and making current employees available for interviews, depositions, and trial testimony. *See* Zapala Decl., Exs. A-E.

[2] IPPs' potential claims of product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions of restraint of competition or unfair competition with respect to Capacitors against Settling Defendants, however, are not released. *See* Zapala Decl., Exs. A-E.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**            3

IV.   **ARGUMENT**

     A.   **Legal Standard for Final Approval of Class Settlements**

     A class action may not be dismissed, compromised, or settled without approval of the Court. Fed. R. Civ. P. 23(e). The settlement approval procedure includes three steps: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice to affected class members; and (3) a formal fairness hearing, also known as a final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may present argument concerning the fairness, adequacy, and reasonableness of the settlements. *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1124–25 (E.D. Cal. 2009); *see also* Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004) § 23.63. This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* William B. Rubenstein, Albert Conte & Herbert Newberg, 4 Newberg on Class Actions §§ 13:39–40 (5th ed. 2014).

     The Court completed the first two steps when it granted preliminary approval of the Class Settlements, certified the Settlement Classes, and approved IPPs' Class Notice Program. Dkts. 2009, 2151, 2152. The Notice Program was extensive, thorough, and supported by class action notice experts. Class Counsel worked with notice experts to provide the "best notice that [was] practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also* Schachter Decl. ¶¶ 25-26. In particular, the Notice Program mailed notice to Class Members using addresses available to IPP counsel, posted notice online, published notice in various publications, emailed notice, created banner ads on websites advertising notice of class settlement, and published notice in various e-newsletters. Schachter Decl. ¶¶ 3-21. The Notice Program succeeded. It reached more than 400,000 people via direct mail, nearly 100,000 people via e-mail "blast," and notice experts recorded more than 20 million views of the online "banner" ads. *Id.* ¶¶ 9, 12, 15. As expected, the Notice Program, therefore, fully complied with Rule 23 and due process. Schachter Decl. ¶¶ 25-26.

---

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**    4

**B.      The Class Settlements Are Fair, Reasonable, and Adequate, and Should be Approved**

FRCP 23(e) requires the district court to determine whether a proposed settlement is "fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944. To assess the fairness of a class settlement, the Ninth Circuit requires district courts to consider a number of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Online DVD-Rental*, 779 F.3d at 944 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The law favors settlements of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). If the proposed settlement is "the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with the presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010). Nonetheless, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted).

**1.      The Class Settlements Provide Considerable Relief For The Class**

The Class Settlements are substantial and provide considerable relief to the Settlement Classes. They provide for a cash payment of nearly $35 million that accurately reflects the percentages of total sales of the Settling Defendants in the United States.  *See* Zapala Decl., Exs. A-E.  The settlement with Soshin, for example, represents more than 100% of Soshin's total sales in the United States during the Class Period; the settlement with Hitachi Chemical represents at least 29% of Hitachi's total capacitor sales in the United States during the Class Period; the settlement with Holystone represents 67% of Holystone's total capacitors sales in the United

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD      5

States during the Class Period; the settlement with NCC/UCC represents more than 11% of NCC/UCC's relevant sales to distributors during the Class Period; and the settlement with Rubycon represents 14% of Rubycon's sales to distributors during the Class Period.  *See* Dkt. 1844 at 7, Dkt. 2099 at 12-13. These percentages, indeed, compare favorably with other antitrust class settlements.  The settlement value compares favorably with recent price-fixing cases in the Ninth Circuit. *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 941 (approving $27.25 million settlement); *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%, .3%, .65%, .88%, 2%, and 2.4% of defendants' total sales).

Additional value to the Classes comes from the promised substantial cooperation of the Settling Defendants. "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)). The Court should recognize cooperation as a valuable benefit to the class. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.").

### 2. Class Members' Overwhelmingly Positive Reaction Favors Final Approval

The Court should consider the reaction of class members to the proposed settlement when determining the settlement's fairness. *Churchill Vill.*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996). Following notice, through which the Classes were presented with the material financial terms of the proposed settlement, no objections were received.   Schacter Decl. ¶ 24. These Classes include large, sophisticated companies that purchase standalone capacitors.  These entities can (and, often, do) assert objections in this kind of litigation.  Their approval of the settlements demonstrates their value to the Classes.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD          6

The small number of opt-outs also demonstrates the Classes' overall positive reaction to the proposed settlements.  As noted, the opt-outs represent a small fraction of the Classes as a whole. A total of 73 persons or entities submitted requests to opt-out of the Settlement Classes. Plexus Corporation, and its subsidiaries, and Microsoft Corporation, and its subsidiaries, account for 65 of the 73 opted out entities (approximately 89%).   In total, only 7 distinct request for exclusion were received: 3 from individuals and 4 from collective entities.  *See* ECF No. 2185; Schachter Decl. ¶ 23.  Collectively, the excluded parties make up less than 1.4% of total sales by distributors.  Zapala Decl. ¶ 32.  Given the extremely small number of overall opt-outs and no objections, this Court should recognize the Classes' overwhelmingly favorable reaction to the proposed settlements.

### 3.   The Settlements Eliminate Significant Risk to the Classes

IPPs believe their case is strong, but the Class Settlements eliminate substantial risks if the action were to proceed. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal'" (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282–283 (S.D.N.Y. 1999). The Class Settlements are in the best interest of the Settlement Classes. They eliminate risks of continued litigation, while at the same time creating a substantial cash recovery and requiring the Settling Defendants to cooperate with IPPs during the pendency of the ongoing litigation. Thus, the Class Settlements both eliminate the potential for unfavorable verdicts against Settling Defendants and increase the likelihood of favorable verdicts against non-settling Defendants.

### 4.   The Stage of the Proceedings and Extent of Discovery Favors Approval

Class settlements are more likely fair if negotiated and agreed to following extensive discovery. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see also Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008). When parties have "a good grasp on the merits of [the] case before settlement talks beg[i]n," negotiations are more likely to achieve fair results. *Rodriguez*, 563 F.3d at 967.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          7

As recounted in the Motion for Attorneys' Fees (ECF No. 2176), after many amendments to the complaint and several motions to dismiss, IPPs have received and processed over 500 gigabytes worth of discovery from all defendants, which includes over 26 million Bates-numbered pages of documents. IPPs have also taken more than 130 depositions of Defendants' employees, former employees, and expert witnesses, providing Class Counsel with the information needed to reach a fair and reasonable settlement.  *See* IPPs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses at pp. 1-9 (ECF No. 2176); *see also* Declaration of Adam J. Zapala in Support of Motion for Attorneys' Fees ¶¶ 7-61 (ECF No. 2176-2.)

As the foregoing demonstrates, the status of the proceedings and the substantial discovery that has taken place militate in favor of approving the Settlements.  The Settlements were achieved well into discovery, and thus, Class Counsel was well-informed about the liability evidence, the transactional data and commerce at issue and the attendant risks to the Classes should litigation proceed.  Class Counsel's well-informed approach and the stage of the litigation lead to reaching fair, adequate, and reasonable agreements with Settling Defendants. *Rodriguez*, 563 F.3d at 967.

### 5. The Settlements Are the Product of Arm's Length Negotiations Between the Parties and Are Based on the Recommendations of Experienced Counsel

When evaluating class action settlements, "the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties. . . ." *City of Seattle*, 955 F.2d 1290 (internal quotation marks omitted).

As noted, this Action has been vigorously litigated. IPPs and Defendants have constantly disputed pleadings, motions, and discovery requests. That same zealous advocacy was applied in reaching the Settlements with the Settling Defendants. Negotiations over the settlements took place over many months and involved numerous exchanges of confidential information and settlement proposals, meetings with several top executives and corporate counsel.  *See* Zapala Decl. ¶¶ 11, 15, 19, 23, 26. The long process IPPs and the Settling Defendants endured in

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD          8

reaching these agreements shows that they are the product of arms-length negotiations and not collusion.  There is little doubt that the settlements were contested, fair, and conducted in utmost good faith.

Counsel's judgment on the fairness of settlements is entitled to "great weight." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. This Court has recognized CPM's extensive experience in handling complex, antitrust class actions by appointing it as interim lead counsel for the IPP Classes. Moreover, this Court has seen the work of CPM throughout this case as Defendants have vigorously fought discovery requests and filed multiple motions to dismiss and for summary judgment. CPM's extensive experience litigating large, antitrust IPP classes shows that it has the relevant experience to fairly evaluate the Classes' claims, the defenses, and the fairness and adequacy of settlements.

While IPPs believe that they have strong and meritorious claims, Settling Defendants all assert that they have strong defenses that would serve to eliminate their liability or damage exposure to Settlement Classes. Entering into Class Settlements, then, eliminates the burden, expense, and risks of further litigation to both IPPs and Settling Defendants.

Because these settlements are the products of arms-length negotiations, and conducted by experienced counsel, who reached terms both sides find beneficial to their respective parties, the Court should find the proposed settlements to be fair, adequate, and reasonable. *See Garner*, 2010 WL 1687832, at *13.

### C.   The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to the Class

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1). When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice program cannot "systematically leave any group without notice." *Officers for Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Settlement notice must describe "the terms of the settlement in sufficient

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD            9

detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). The notice plan must ultimately comport with due process requirements. *Rodriguez*, 563 F.3d at 963.

Here, the court-approved notice plan implemented by IPPs comports with due process and is the best practicable under the circumstances. *See generally,* Schachter Decl. *et seq.*

### 1.      This Court Approved IPPs' Notice Plan

IPPs offered a robust and multifaceted Notice Program. The Program provided both short and long form notices. IPPs worked with notice experts to send out notice forms by mail, e-mail, print publication, online publication, and online banner advertisements. The notice forms clearly describe who qualifies as members of the Settlement Classes, and provides Class Members with information about opting-out of or objecting to the Class Settlements. IPPs additionally provided the Classes with a settlement website, www.capacitorsindirectcase.com, at which Class Members could learn more about the settlement terms, important dates, and even register as members of the Settlement Classes. As evidenced by the types of e-newsletters and websites targeted by the notice program, the program was specifically designed to reach persons making purchases from the electronics industry.  Schachter Decl. ¶¶ 4-15.

The Court's Order approving the Notice Program found that IPPs' plan was the best notice practicable under the circumstances, *see* Fed. R. Civ. P. 23(c)(2)(B), and met all due process requirements. *See* Dkt. 2152.

### 2.      IPPs Implemented the Court-Approved Notice Program

Following this Court's order approving the proposed Notice Program, IPPs fully implemented it.  *See* Schachter Decl.  IPPs obtained substantial distributor transactional data through Rule 45 subpoenas.  The distributors' sales data included customer information (*e.g.,* those customers purchasing standalone capacitors indirectly through distributors).  IPPs provided this data to A.B. Data, IPPs' notice provider, to disseminate direct mail notice for those class members where contact information was available.  In connection with providing the notice in April 2017 of the first round of Settlements, A.B. Data created a mailing list of 402,414 potential class members. Schachter Decl. at ¶ 5.  On June 25, 2015, A.B. Data mailed the Short-Form

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone,
NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          10

Notice to these potential Class Members in the form of a postcard. *Id.* at ¶ 6, Ex. A.  Pursuant to the notice program, A.B. Data sent email blasts of "opt-in" subscribers of Penton Publications and EE Times.  *Id.* ¶ 11.  Email blasts were sent to approximately 91,000 subscribers.  *Id.* ¶ 12.

Potential Class Members were also notified via IPPs' publication plan with print publication notice in *The Wall Street Journal* in July 2018. Schachter Decl. at ¶ 9, Ex. B.  On July 9, 2018, notice was disseminated through Business Wire, a nationwide news release, announcing the proposed Settlements. *Id.* at ¶ 16, Ex. E.

Internet "banner" advertisements notifying potential Class Members about the settlements appeared on websites for a month, and other websites through a targeted advertising program. *Id.* at ¶¶ 13-14, Exs. C, D.  More than 20 million banner views or digital impressions were generated during the banner ads campaign.  *Id.* at ¶ 15.  A.B. Data also established and continues to maintain a website, www.capacitorsindirectcase.com, where potential Class Members can view and download the Settlement Agreements, the Motion and Order preliminarily approving the settlements and Notice Program, and Class Counsel's motion for attorneys' fees. *Id.* at ¶¶ 17-19. A.B. Data established a toll-free number with an interactive voice response system and live-operators potential Class Members can call with any questions. *Id.* at ¶¶ 20-21.

### 3.    The Notice Program Was Successful in Reaching Class Members

The Notice Program worked and was implemented in accord with the proposal. The court-approved Notice Program was successful in reaching the Settlement Class members. According to notice experts, direct mail was sent to more than 400,000 potential Class Members notifying them of the settlements. Schacter Decl. at ¶ 9. The email "blasts" reached more than 90,000 potential class members. *Id.* at ¶ 12. The banner ads alone registered more than 20 *million* views. *Id.* at ¶ 15. More potential Class Members were reached through other elements of the Notice Program, including print publication, calls to the telephone hotline, and dissemination of notice in the Business Wire news release. *Id.* at ¶¶ 10, 16, 20-21. Through the website established by A.B. Data, over 4,300 additional people have registered for continued updates about the settlements. *Id.* at ¶ 19. The court-approved Notice Program was successful in reaching Class Members.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**                      11

### 4.      The Notice Program Satisfies Due Process

Due process requires the best notice that is practicable under the circumstances. *See Shutts*, 472 U.S. at 812. It does not require actual notice to each and every class member. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member"). Courts recognize that "it might be *impossible* to identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (emphasis in original).

IPPs and their notice experts satisfied due process by providing the best notice practicable under the circumstances. The multifaceted and layered Notice Program was crafted with the idea of reaching a wide array of Class Members and specifically targeting the electronics industry to increase the Program's reach. As this Court found in approving the Plan, notice in this case was consistent with the requirements of Rule 23, Ninth Circuit precedent, and due process.   *See* Schachter Decl. ¶¶ 25-26. Therefore, this Court should grant final approval to the Class Settlements at issue.

### D.      The Proposed Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement; the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (internal citations omitted). When allocating funds, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement allocation on a "per-share basis"); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFC, 2014 WL 4078232, at * (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          12

1     Pro rata distribution has frequently been determined by courts to be fair, adequate, and

2   reasonable. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525, at

3   *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon

4   proportional value of price-fixed component in finished product); *In re Dynamic Random Access*

5   *Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010)

6   (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000

7   U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this

8   one, that apportions funds according to the relative amount of damages suffered by class members

9   have repeatedly been deemed fair and reasonable.") (citations omitted); *In re Lloyds' Am. Trust*

10  *Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y. Nov. 26,

11  2002) ("Pro rata allocations provided in the Stipulation are not only reasonable and rational, but

12  appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd.*

13  *P'ships Litig.,* 171 F.R.D. 104, 135 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ("[A] pro

14  rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward

15  and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of

16  the merits of the Class Members' claims.")

17     Here, as with the Round 1 settlements, allocation of the settlement funds will be on a *pro*

18  *rata* basis based on the type and extent of injury suffered by each class member in those states

19  which permit indirect purchaser claims. Specifically, $12,892,500.00 from the NCC/UCC

20  settlement will be allocated to the electrolytic settlement pot, while $607,500 will be allocated to

21  the film pot. With respect to the Rubycon settlement, $4,297,500 will be allocated to the

22  electrolytic settlement point, while $202,500 will be allocated to the film settlement point. This

23  division or allocation of the settlement proceeds is based on the fact that overall film commerce in

24  the case is 4.5% of overall electrolytic commerce in the case as a proportion.

25     With respect to the *pro rata* distribution, the plan of allocation contemplates a *pro rata*

26  distribution to each class member with damages claims from the indirect purchaser states based

27  upon the number of approved purchases of film or electrolytic capacitor purchases during the

28  respective settlement class periods as against the respective settlement pots for either film or

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone,
NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**          13

electrolytic capacitors. This is a reasonable and fair way to compensate classes. Thus, the recovery to individual class member is tied to the volume of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund. This plan of allocation is thus "fair, adequate, and reasonable" and merits approval by the Court. *See Citric Acid*, 145 F. Supp. at 1154.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant final approval of the Hitachi Chemical, Soshin, Holystone, NCC/UCC, and Rubycon Settlements, and enter final judgment dismissing IPPs' claims against Defendants Hitachi Chemical, Soshin, Holystone, NCC/UCC, and Rubycon with prejudice, and approve IPPs' plan of allocation.

Dated: September 12, 2018           Respectfully Submitted:

By: /s/ *Adam J. Zapala*

Adam J. Zapala
Elizabeth T. Castillo
Mark F. Ram
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants Hitachi, Soshin, Holystone, NCC/UCC, and Rubycon and Approval of Plan of Allocation; Case No. 14-cv-03264-JD          14