Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            jdsavis@saverilawfirm.com
            nherrera@saverilawfirm.com
            jdallal@saverilawfirm.com
            vprentice@saverilawfirm.com

*Lead Class Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | Master File No.  3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS NICHICON AND RUBYCON**<br><br>Date:          May 16, 2019<br>Time:          3:00 p.m.<br>Courtroom:   11, 19th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 3:00 p.m. on May 16, 2019, at the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("DPPs") will and hereby do move the Court for an order granting final approval of DPPs' class action settlements with defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"); and Rubycon Corporation and Rubycon America Inc. (together, "Rubycon") (Nichicon and Rubycon collectively, the "Settling Defendants") in partial settlement of this class action lawsuit.

Specifically, DPPs request that the Court:

1.      Find the settlements DPPs have reached respectively with Settling Defendants are fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e) and thereby direct the parties' consummation of each settlement agreement pursuant to their respective terms;

2.      Find the Court-approved Long Form and Summary Notices to Direct Purchaser Class members, as disseminated and published by Class Counsel and the claims administrator, Rust Consulting, Inc. ("Rust") pursuant to the Court-approved notice program, to constitute due notice meeting the requirements of due process and Rule 23(c)(2)(B);

3.      Finally find DPPs have satisfied the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) and certify the Settlement Class as that term is defined in the Court's Preliminary Approval Order (MDL Dkt. 492);

4.      Finally approve DPPs' plan for allocating the Settling Defendants' all-cash settlement consideration among the Settlement Class members on a *pro rata* basis; and

5.      Direct that this action be dismissed with prejudice as against the Settling Defendants.

DPPs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri dated March 1, 2019 (the "Saveri Decl."), the Declaration of Kendall S. Zylstra dated February 27, 2019 (the "Zylstra Decl."), the Court's files and records in this matter, and such other matters as the Court may consider.

1    Dated:  March 1, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:    */s/ Joseph R. Saveri*
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940

*Lead Class Counsel for Direct Purchaser Plaintiffs*

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ..................................................................................................1

II.   CASE HISTORY AND SETTLING DEFENDANTS ..........................................2

    A.    Direct Purchaser Plaintiffs' Factual Allegations and Claims ...........................2

    B.    Procedural History and Discovery ....................................................................3

    C.    Prior Settlement History ...................................................................................3

    D.    The Settling Defendants ...................................................................................3

        1.    Nichicon ...............................................................................................3

        2.    Rubycon ...............................................................................................4

III.  SUMMARY OF PROPOSED SETTLEMENTS ..................................................5

    A.    Settlement Consideration—$108 million cash, plus up to an additional $12 million in contingent payments based on Rubycon's financial results through FY 2019. .................5

        1.    Nichicon's Settlement Consideration ...................................................5

        2.    Rubycon's Settlement Consideration ...................................................5

    B.    The Settlement Class.........................................................................................6

    C.    Release of Claims against Settling Defendants.................................................7

IV.   DPPS' SETTLEMENTS WITH NICHICON AND RUBYCON ARE FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL ............................7

    A.    The Proposed Settlements Are Procedurally Sound and Presumptively Fair...................8

    B.    The Monetary and Other Benefits to the Settlement Class Favor Approval ....................8

    C.    Although DPPs' Claims are Strong, the Court Should Approve the Settlements Because They Eliminate Certain Litigation Risks to the Settlement Class ...................................11

    D.    The Settlements Resulted from Informed, Arm's-Length Negotiations Between the Parties and DPPs' Experienced Counsel ........................................................11

    E.    The Case's Procedural Posture, Along With the Significant Discovery Conducted to Date, Has Informed Settlement Negotiations and Supports Final Approval .................12

V.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND HAS BEEN FULLY IMPLEMENTED ...........................................12

    A.    DPPs' Notice and Notice Program Satisfy Rule 23 and Due Process Requirements.......13

    B.    DPPs Fully Implemented the Court-Approved Notice Program ....................................13

**TABLE OF CONTENTS (cont.)**

1. DPPs' Direct Mailing Plan Targeted Notice at Defendants' Customers ...........13

2. DPPs' Publication Notice Was Distributed Broadly ............................................13

3. DPPs' Online Notice Strategy Targeted Class Members and Persons in the Electronics Industry ..................................................................................................14

C. DPPs Have Taken Steps Over and Above Their Due Process and Rule 23 Obligations to Ensure That as Many Direct Purchaser Class Members as Possible Receive Mailed Notice and Claim Forms..................................................................................................14

VI.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS....................14

VII.   THE COURT SHOULD FINALLY APPROVE DPPS' ALLOCATION PLAN ...................15

VIII.  DPPS WILL PROVIDE CLASS MEMBERS' RESPONSE ....................................................15

IX.    CONCLUSION .........................................................................................................................15

1

<u>**TABLE OF AUTHORITIES**</u>

2
**Page(s)**

3
**Cases**

4
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................... 14

5
*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .................................................. 14

6
*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................................... 8, 11, 12

7
*Class Plaintiffs v Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) ..................................................11

8
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)......................................................................13

9
*Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995 (9th Cir. 1985).......................................................11

10
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 8

11
*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2012 U.S. Dist. LEXIS
12
   108299 (E.D.N.Y. Aug. 2, 2012) ............................................................................................ 6

13
*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS
14
   29163 (E.D. Pa. May 10, 2004)............................................................................................. 9

15
*In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152 (N.D. Cal. 2001) ..................................15

16
*In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313 (D.N.J. 1998)..............................15

17
*In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH,
18
   slip. op. (N.D. Cal. Nov. 1, 2006) .....................................................................................9, 15

19
*In re Heritage Bond Litig.,* No. 02-ml-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal.
20
   2005) ....................................................................................................................................... 8

21
*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)............................................... 12

22
*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) .....................11

23
*In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist.
24
   LEXIS 175515 (N.D. Cal. Dec. 19, 2016) ............................................................................11

25
*In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C.
   Mar. 31, 2000)........................................................................................................................15

26
*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D.
27
   Cal. Feb. 2, 2009) ................................................................................................................. 12

28

**TABLE OF AUTHORITIES (cont.)**

*Linney v. Cellular Alaska P'ship*, Nos. 96-3008, 0203, 0425, 045, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) ..................................................................................10, 12

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) ............11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .........................................13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................8, 13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................................................13

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ............................................................13

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ...............................................8

*United States v. Nichicon Corp.*, 4:17-cr-00368-JD-1 (N.D. Cal. July 11, 2017).....................2, 4

*United States v. Rubycon Corp.,* No. 4:16-cr-00367-JD-1 (N.D. Cal. Aug. 22, 2016) .................4

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ..........................................................................2

Sherman Act, 15 U.S.C. § 1 .....................................................................................................4

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................14, 15

Fed. R. Civ. P. 23(a) ................................................................................................................2

Fed. R. Civ. P. 23(b)(3) .......................................................................................................2, 12

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................2, 13, 14

Fed. R. Civ. P. 23(e) .............................................................................................................2, 7

Federal Rule of Civil Procedure 23(e)(1) ................................................................................12

Federal Rule of Civil Procedure 23(e)(3) ..................................................................................5

**Other Authorities**

4 William B. Rubenstein, *Newberg on Class Actions* §§ 13:39 (5th ed. 2014) .............................7

## I.      INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") submit this memorandum in support of their motion for final approval of the proposed settlement agreements (the "Settlement Agreements") between DPPs and defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"); and Rubycon Corporation and Rubycon America Inc. (together, "Rubycon") (Nichicon and Rubycon collectively, the "Settling Defendants").

The Settlement Agreements represent an excellent result for the Class. They create a non-contingent, all-cash fund of $108,000,000, plus an additional $12,000,000 in contingent payments based on Rubycon's financial performance (the "Settlement Fund"). The settlement amounts are as follows: (1) Nichicon has agreed to pay $90 million (which funds have already been paid into an escrow account pending the Court's final approval); (2) Rubycon has agreed to pay a total of $18 million (which funds have already been paid into an escrow account pending the Court's final approval), plus up to $12 million in contingent payments based on Rubycon's net profits through its fiscal year ending September 30, 2019. Rubycon has agreed to cooperate with DPPs in their continued prosecution of their price-fixing claims against the non-settling Defendants.[1]

The parties reached these agreements through extensive arm's-length negotiations between experienced and informed counsel after years of litigation and discovery. Both settlements were reached with the assistance of neutral mediators. The settlements represent an excellent recovery for the Settlement Class and are well within the range of recoveries warranting final approval.

---

[1] The defendants who have not settled with DPPs are Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; AVX Corporation; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nissei Electric Co., Ltd.; and Shizuki Electric Co., Ltd.

The Court has previously approved two rounds of DPP settlements with defendants Fujitsu Ltd., Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., Hitachi Chemical Co. America, Ltd., NEC Tokin Corporation, NEC Tokin America, Inc., Nitsuko Electronics Corporation, Okaya Electric Industries Co., Ltd., Okaya Electric America, Inc., ROHM Co., Ltd., ROHM Semiconductor U.S.A., LLC, Soshin Electric Co., Ltd., and Soshin Electronics of America Inc.

The Court preliminarily approved the Settlements. (MDL Dkt. 492) Final approval under Federal Rule of Civil Procedure 23(e) is now warranted because each of the Settlements is fair, adequate and reasonable. During the last four years of hard-fought litigation, DPPs have made substantial progress in prosecuting the litigation and developing the factual record to prove their claims. The law favors compromise and the settlement of complex class actions. Here, the parties reached these Settlements after difficult, arm's-length negotiations between experienced and informed counsel.

Rubycon and Nichicon have satisfied their obligations to provide notice under the Class Action Fairness Act, 28 U.S.C. § 1715. (Saveri Decl. ¶ 24)

DPPs have complied with the Court-approved notice program and disseminated notice through direct mailings, publication notice, and online advertising. Mindful of the Court's expressed interest in ensuring that as many Class members as possible receive direct notice of the Settlements and their potential claims, DPPs have taken additional steps well beyond the minimum requirements of due process and Rule 23(c)(2)(B). To facilitate the settlement process, DPPs have mailed Class members claim forms pre-populated with each's annual capacitor purchases derived from Defendants' sales transaction data (the "Claim Forms"). (Declaration of Kendall Zylstra dated February 27, 2019 ("Zylstra Decl.") ¶ 7) DPPs also have responded to many inquiries from class members regarding the claims process and participation in the Settlements. (Saveri Decl. ¶ 20)

For the Settlements to be effectuated and the Settlement Funds distributed, the Court must also: (1) certify the Settlement Class after finding Rule 23(a) and (b)(3)'s class action prerequisites have been satisfied; and (2) finally approve DPPs' *pro rata* allocation plan. The Court granted preliminary approval as to both issues and should now grant final approval as well.

## II.  CASE HISTORY AND SETTLING DEFENDANTS

### A.  Direct Purchaser Plaintiffs' Factual Allegations and Claims

The Defendants in this action are 22 different corporate families that manufacture and sell capacitors in the United States and around the world. DPPs allege that at least as early as January 1, 2002, Defendants entered into a price-fixing conspiracy with the purpose and effect of fixing, raising, and stabilizing the prices of their aluminum, tantalum, and film capacitors sold to United States purchasers. (Saveri Decl. ¶ 3)

### B.    Procedural History and Discovery

DPPs have substantially advanced this case during the four and a half years since Plaintiff Chip-Tech filed the first capacitors price-fixing complaint in July 2014. (Dkt. 1; *see also* Saveri Decl. ¶¶ 4-10) DPPs overcame three rounds of Defendants' motions to dismiss. (Dkts. 710, 1003, 1546 of No. 14-cv-3264) DPPs' Third Amended Complaint ("3AC"), is the operative pleading. (Dkt. 1831)

In the two prior rounds of DPP settlements (Dkt. 1713; MDL Dkt. 249), counsel for DPPs ("Class Counsel") informed the Court of its and class representatives' efforts prosecuting this action. (Dkt. 172, at 3-5) Such efforts included analyzing 39 million Bates-numbered pages (mostly in Japanese) from over 100 document custodians and deposing over 85 individuals. (*Id.*) Since the time DPPs filed in May 2018 their approval papers for a prior round of settlements (MDL Dkt. 172), DPPs have submitted four opening merits expert reports, conducted 18 additional depositions, negotiated with several third-parties concerning document subpoenas, engaged in mediations with defendants, and continued preparing the case for trial. (Saveri Decl. ¶ 11)

On November 14, 2018, the Court certified the direct purchaser class. (MDL Dkt. 385)

### C.    Prior Settlement History

On June 27, 2017, the Court granted final approval of DPPs' first round of settlements with the NEC Tokin, Fujitsu, Nitsuko, Okaya, and ROHM defendants totaling $32.6 million. (Dkt. 1713; *see* n.1, *supra*) On June 28, 2018, the Court granted final approval of DPPs' second round of settlements with the Hitachi Chemical and Soshin defendants totaling $66.9 million. (MDL Dkt. 249) These settlements demonstrate Class Counsel and the named class representatives have diligently and successfully represented the Class. A summary of the distributions for those settlements are set forth in Attachment A.

Class Counsel estimates that the number and percentage of class members expected to participate in this third round of settlements are likely to be similar to those in the prior settlements.

### D.    The Settling Defendants

#### 1.    Nichicon

Nichicon manufactured or sold aluminum, tantalum, and film capacitors at various times during the class period. (3AC, Dkt. 1831 ¶¶ 55, 56, & 58) Nichicon (America) Corporation, an Illinois

corporation, is a wholly owned subsidiary of Nichicon Corp., a Japanese corporation. (*Id.*) During all relevant times, Nichicon manufactured, sold, and distributed aluminum and film capacitors, either directly or through its business units, subsidiaries, or agents, to United States purchasers. (*Id.* ¶ 55)

On July 11, 2017, the DOJ filed a criminal information against Nichicon Corporation in the Northern District of California alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. *United States v. Nichicon Corp.*, 4:17-cr-00368-JD-1 (N.D. Cal. July 11, 2017) (Dkt. 1). (*Id.* ¶ 2) On April 24, 2018, the Court entered judgment against Nichicon Corporation and sentenced it to a $54.6 million criminal fine and certain probation terms. (*Id.* Dkt. 41)

## 2.   Rubycon

Rubycon manufactured, sold, and distributed aluminum and film capacitors either directly or through its affiliates to United States purchasers. (3AC, Dkt. 1831 ¶¶ 62-64) Rubycon Corporation is a Japanese corporation. Rubycon America Inc. is an Illinois corporation and is a wholly-owned subsidiary of Rubycon Corporation. (*Id.*) On August 22, 2016, the DOJ filed a criminal information against Rubycon Corporation in the Northern District of California alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. *United States v. Rubycon Corp.,* No. 4:16-cr-00367-JD-1 (N.D. Cal. Aug. 22, 2016) (Dkt. 1).

On March 3, 2017, the Court entered judgment and sentenced Rubycon Corporation to a $12 million fine, plus certain probation terms. (*Id.* Dkt. 40) The DOJ retained a forensic accounting expert who initially concluded that Rubycon could pay a maximum criminal fine of $15 million in a series of installments over five years, without interest. (*Id.*, at 14) Thus, the DOJ agreed with Rubycon that Rubycon did not have an ability to pay a fine within the guidelines. (*Id.*)

III.    **SUMMARY OF PROPOSED SETTLEMENTS**

    A.    **Settlement Consideration—$108 million cash, plus up to an additional $12 million in contingent payments based on Rubycon's financial results through FY 2019.**

        Pursuant to their Settlement Agreements,[2] Nichicon and Rubycon have already paid all non-contingent amounts into appropriate escrow accounts at Citibank, N.A. (the "Settlement Fund"). *See* Saveri Decl., ¶¶ 12-13; Ex. B ¶ 19; *id.*, Ex. A ¶ 21.

        **1.    Nichicon's Settlement Consideration**

        DPPs and Nichicon executed an agreement effective November 7, 2018 resolving the claims of the DPPs and the Settlement Class against the Nichicon defendants. (Saveri Decl. ¶ 13; *id.*, Ex. B) DPPs agreed to release their claims against Nichicon in exchange for $90,000,000, which has been paid in full into an escrow account. (Saveri Decl., Ex. B ¶ 20) In light of the settlement amount and the extensive discovery from Nichicon, Nichicon has no cooperation obligations under its settlement agreement, and Nichicon does not have the right to terminate the agreement based on the amount of Settlement Class members that request exclusion or opt-out.

        **2.    Rubycon's Settlement Consideration**

        On September 14, 2018, DPPs and Rubycon executed their Settlement Agreement. (Saveri Decl. ¶ 12; *id.*, Ex. A) DPPs agreed to the release in the Settlement Agreement in exchange for cash payments totaling $18,000,000, which has been paid in full into an escrow account. In addition, Rubycon agreed to pay contingent payments up to $12,000,000 based on Rubycon's net profits through fiscal year 2019. (*Id.*, Ex. A ¶ 21) As described in more detail in the settlement agreement, Rubycon will pay 50% of its total annual net profits up to $6 million for each of its 2018 and 2019 fiscal years. (*Id.*) In this regard, DPPs negotiated with Rubycon to permit Class Counsel to obtain documents that Rubycon provides to its lenders (including tax forms, financial statements, and auditor reports) to ensure appropriate transparency and appropriate review of Rubycon's financial results to determine the amounts due under the settlement. (*Id*, Ex. A ¶ 23) Rubycon also agreed to cooperate with DPPs in the further prosecution

---

[2] The Settlement Agreements are attached to the Saveri Declaration. There are no other agreements relating to the settlements that are required to be identified under Federal Rule of Civil Procedure 23(e)(3).

of DPPs' claims against Non-Settling Defendants, including by providing up to six witnesses for interviews, depositions, and testimony at trial.

Rubycon has the option to rescind its settlement agreement if the total qualifying purchases of opt-outs exceed 20% of qualifying purchases by all Settlement Class members, excluding the purchases by known opt-outs that requested exclusion in past settlements. (Saveri Decl., Ex. A ¶ 8)[3]

**B.    The Settlement Class**

DPPs seek to certify a Settlement Class consisting of:

> All persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January 1, 2002 through July 22, 2015. Excluded from the Settlement Class are: (i) Defendants (and their subsidiaries, agents and affiliates); (ii) shareholders holding more than 10% equity interest in a Settling Defendant as of the date that the Settlement Agreement with the Settling Defendant is fully executed; (iii) each member of the Settlement Class that timely requests exclusion by 'opting out'; (iv) governmental entities; and (v) the judges and chambers staff in this case, including their immediate families.

This is essentially the same settlement class definition set forth in the Settlement Agreements. (Saveri Decl., Ex. B at 8, ¶ y (Nichicon settlement); *id.*, Ex. A at 7, ¶ bb (Rubycon settlement)).[4] This is virtually the same class definition in the operative complaint. (3AC, Dkt. 1831 ¶ 107)[5] It is also nearly identical to the class definition used in the prior settlements. (Dkt. 1713 ¶ 4; Dkt. 249 ¶ 4)[6]

The Settlement Class definition varies slightly from the Class certified by the Court, which defines the Class Period from January 1, 2002 to December 31, 2013. Class Counsel does not believe the variance in class period end dates (*i.e.,* December 31, 2013 *versus* July 22, 2015) is a material difference

---

[3] Courts commonly allow the percentage of opt-outs to trigger rescission. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2012 U.S. Dist. LEXIS 108299, at *60-61 n.3 (E.D.N.Y. Aug. 2, 2012).

[4] The Rubycon settlement agreement does not contain the exclusion of judges and chambers staff that is found in the Nichicon settlement agreement and in the proposed Settlement Class definition. (Saveri Decl. Ex. A ¶ bb. There are no other substantial differences.

[5] The class period in the 3AC is from "January 1, 2002 through the present . . . ." The class period for the Settlement Class is through July 22, 2015, which is the identical period used in the previous two rounds of settlements. In addition, the 3AC does not set forth the specific exclusions.

[6] The settlement class definition used in the prior round of settlements and in the Rubycon Settlement Agreement do not specifically exclude the judges and chambers staff or shareholders holding more than 10% equity in a Settling Defendant, but they do include co-conspirators. (Dkt. 1713 ¶ 4; Dkt. 249 ¶ 4) There are no other substantive differences.

that should call into question the adequacy of the Settlement Agreements, which were negotiated, and the material terms agreed to, by the parties before the Court's class certification order. (Saveri Decl. ¶ 14) The Settlement Class definition is consistent with the definition used in the first two rounds of settlements, and any difference is likely to result only in minor but calculable variations in the *pro rata* share of each settlement class member's settlement fund allocation. (*Id.*)

### C.     Release of Claims against Settling Defendants

In exchange for the Settling Defendants' monetary and other consideration, DPPs will release the Settling Defendants of all claims related to any of the alleged conduct giving rise to this litigation concerning the direct purchase of Capacitors in the United States or for delivery in the United States. (Saveri Decl., Ex. B ¶ 13 (Nichicon settlement); *id.*, Ex. A ¶ 15 (Rubycon settlement)). The releases in the Settlement Agreements match the scope of the claims included in the Settlement Class definition.[7] (*Id.* ¶ 14) DPPs continue to prosecute their claims against the Non-Settling Defendants, who remain jointly and severally liable. (Saveri Decl. ¶ 15)

### IV.    DPPS' SETTLEMENTS WITH NICHICON AND RUBYCON ARE FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL

A class action may be dismissed, compromised, or settled only with the approval of the Court. The Rule 23(e) settlement approval procedure includes: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected class members; and (3) a fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *Id.*

---

[7] The Settlement Class definition refers to all "persons in the United States" without specifically mentioning purchases in the United States or shipped to the United States. Nevertheless, to be clear, no foreign purchases (*i.e.*, purchases that are not shipped to or invoiced to the United States) are released under the Settlement Agreements, so the releases match the scope of, or are arguably narrower than, the claims included in the Settlement Class definition.

The law favors the compromise and settlement of class action suits. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). In exercising such discretion, courts should give

> proper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.* at 1027 (citation and quotations omitted).

In evaluating a proposed class action settlement, the Ninth Circuit requires courts to balance:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575 (*citing Hanlon*, 150 F.3d at 1026); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Officers for Justice*, 688 F.2d at 625. The balance of these factors decidedly weighs in favor of final approval of the Settlements.

## A.     The Proposed Settlements Are Procedurally Sound and Presumptively Fair

The proposed Settlement Agreements here are the product of arm's-length, mediated negotiations between attorneys who are highly experienced in complex antitrust class actions and well-informed about the facts and legal issues of this case. (Saveri Decl. ¶ 11) As here, settlement agreements reached after meaningful discovery and after arms-length negotiations that were conducted by capable counsel are presumptively fair. *In re Heritage Bond Litig.,* No. 02-ml-1475, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. 2005) (internal citations omitted). Class Counsel's substantial advancement of the litigation to date and familiarity with the evidence also indicate that the Settlement Agreements are fair and reasonable. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## B.     The Monetary and Other Benefits to the Settlement Class Favor Approval

The Settlement Agreements, which provide for significant cash payments, afford important relief to Settlement Class members, and the consideration offered by each of the Settling Defendants is

well within reasonable range. The percentage recovered from the Settling Defendants far exceeds the percentage recovered in many other antitrust class action settlements. *See, e.g.*, *In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *5 (E.D. Pa. May 10, 2004) (recovery represented approximately 2% of sales).

Nichicon agreed to pay $90,000,000 in cash payable by January 31, 2019. (Saveri Decl., Ex. B) This amount is 1.65 times the amount of its criminal fine. It is the largest settlement to date and represents a significant recovery for the Settlement Class.

Rubycon agreed to pay $18,000,000 into the Settlement Fund in two installments by January 23, 2019, pay up to $12 million in additional contingent payments, and provide certain cooperation. (Saveri Decl., Ex. A) The non-contingent amount is 1.5 times Rubycon's $12 million criminal fine. If Rubycon's financial condition improves, Rubycon agrees to pay an additional $12 million based on Rubycon's net profits through its 2019 fiscal year. Rubycon also agreed to provide cooperation, including making available up to six witnesses for interview, deposition, and trial testimony.

DPPs believe Nichicon's $90 million settlement represents approximately 132% of Nichicon's overcharges during the class period (based on DPPs' calculation of $68,043,372 in overcharges attributable to Nichicon) and 17.5% of the total overcharges of $513,394,721 for all Defendants calculated by DPPs' experts. DPPs further believe that the $18 million non-contingent portion of Rubycon's settlement represents approximately 61% of Rubycon's overcharges during relevant time period (based on DPPs' calculation of $29,382,943 in overcharges attributable to Rubycon) and 3.5% of the total overcharges for all Defendants calculated by DPPs' experts. With the contingent portion, DPPs believe that Rubycon's $30 million settlement would represent 102% of Rubycon's total overcharges during the relevant time period. (Saveri Decl. ¶ 16)

An important benefit to the Settlement Class is that the settlements provide members with significant cash compensation payable immediately, avoiding the uncertainty and delay of trial and likely appeals. These settlements were reached before the Court certified the Class. The amount of non-contingent cash payments represents an excellent result given the uncertainty of litigation. Although

Class Counsel is confident that DPPs would have prevailed at trial against Nichicon and Rubycon, the Settling Defendants maintained and intended to assert numerous defenses. Rubycon also faces substantial financial constraints as the DOJ and the Court have recognized, and there remains uncertainty about Rubycon's future financial viability.[8] DPPs' settlement with Rubycon is appropriately crafted to address Rubycon's uncertain financial future by allowing the Settlement Class to recover additional funds should Rubycon's financial condition improve. (Saveri Decl. ¶ 12)

Moreover, DPPs give up no amount of their class claims against the Non-Settling Defendants, who remain jointly and severally liable for the full extent of overcharges. (Saveri Decl. ¶ 15; *id.*, Ex. B ¶ 18; *id.*, Ex. A ¶ 20) Resolving claims against the Settling Defendants will permit Class Counsel to focus its resources on the Non-Settling Defendants, and Rubycon's cooperation consideration will assist DPPs in those efforts. (Saveri Decl. ¶ 15)

Also weighing in favor of final approval is Class Counsel's experience and success in similar class actions. Class Counsel have worked on large, complex cases for decades, including antitrust and consumer protection class action cases. (Saveri Decl. ¶ 6) The judgment of experienced counsel regarding a settlement reached by arm's-length negotiations with the assistance of mediators should be given significant weight and a presumption of reasonableness. *See Linney v. Cellular Alaska P'ship*, Nos. 96-3008, 0203, 0425, 045, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997).

Finally, the $108 million in non-contingent payments alone is 17.5% of the single damages estimate calculated by DPPs' expert. Thus, the nine settling defendants to date including Nichicon and Rubycon (out of 22 corporate defendant families) will have provided nearly 40% of the damages estimated by DPPs' experts—with some of the most culpable parties not having yet settled.

---

[8] DPPs retained their own forensic accountant who analyzed Rubycon's financial statements and auditor reports. Based on this analysis, DPPs concluded that the settlement represented a significant recovery based on Rubycon's financial condition and that delaying settlement posed a significant risk that Rubycon's ability to pay would be diminished in the future. DPPs also negotiated in the settlement agreement that Rubycon would provide Class Counsel with documents the company provides to its lenders, to ensure transparency and allow for appropriate review of Rubycon's reported results in connection with the contingent future payments reflected in the settlement. (Saveri Decl., Ex. A ¶ 22)

**C.      Although DPPs' Claims are Strong, the Court Should Approve the Settlements Because They Eliminate Certain Litigation Risks to the Settlement Class**

The "strength of the plaintiffs' case," the "risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial" favor approval of the Settlements. *See Churchill*, 361 F.3d at 575. An antitrust class action is "arguably the most complex action to prosecute." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515, at *45 (N.D. Cal. Dec. 19, 2016). Indeed, the "history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998).

In this case, Defendants continue to stand on their defenses despite three rounds of motions to dismiss and two rounds of summary judgment motions. Defendants are represented by some of the most experienced antitrust attorneys in the United States, who have vigorously defended their clients at every stage of this litigation. The Settlements are in the best interests of the Settlement Class because they eliminate the risks of continued litigation while at the same time providing substantial cash recovery and other benefits to the Class. The Settlement with Rubycon also provides the Class substantial strategic advantages. Rubycon has agreed to cooperate with DPPs in the continuing suit against the Non-Settling Defendants for a much larger potential recovery.

**D.      The Settlements Resulted from Informed, Arm's-Length Negotiations Between the Parties and DPPs' Experienced Counsel**

In determining whether to approve a class action settlement, "'the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties'. . . ." *Class Plaintiffs v Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (*quoting Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)). Where a proposed class settlement "has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). Indeed, the judgment of experienced counsel regarding a settlement reached

by arm's-length negotiations should be given significant weight and a presumption of reasonableness. *See Linney*, 1997 U.S. Dist. LEXIS 24300, at \*16.

### E.   The Case's Procedural Posture, Along with the Significant Discovery Conducted to Date, Has Informed Settlement Negotiations and Supports Final Approval

The "extent of discovery completed and the stage of the proceedings" in this case also favor final approval. *Churchill*, 361 F.3d at 575. The discovery conducted to date and the procedural posture of the case demonstrate the factual basis for the Settlements and the knowledge of counsel for the Settlement Class with respect to the facts and legal issues in the case. *See* Dkt. 1458-1 ¶¶ 18-55; *see, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at \*10 (N.D. Cal. Feb. 2, 2009) (citation omitted). This case was commenced by the Lead Class Counsel on July 18, 2014. Since then, counsel for the Settlement Class have received from Defendants over eight terabytes of ESI and more than 500 gigabytes of transactional data during discovery, the great majority of which are in Japanese. *See* Saveri Decl. ¶ 6. The docket contains over 2,100 filed documents. Counsel have protected DPPs' claims against three rounds of motions to dismiss and two rounds of summary judgment motions filed by dozens of experienced, well-respected attorneys on behalf of the corporate Defendant families. *See id*. Based on this work and analysis, counsel have gained a thorough understanding of each Settling Defendants' role in the alleged capacitors price-fixing conspiracy; the strengths and weaknesses of DPPs' claims; the financial condition of certain of the Settling Defendants; and their liability exposure. *See id*. Counsel therefore possess the expertise and information to make an informed judgment as to the fairness and adequacy of the Settlements for the Settlement Class.

## V.   THE COURT-APPROVED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND HAS BEEN FULLY IMPLEMENTED

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to class members to be bound by a proposed settlement. When a proposed Rule 23(b)(3) class settlement is presented for court approval, the Federal Rules require class members to receive the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624 (citations omitted). These requirements ensure that class notice procedures comply with the demands of due process. *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). The notice provided to class members in this case comports with due process.

**A.       DPPs' Notice and Notice Program Satisfy Rule 23 and Due Process Requirements**

The notice provided to class members in this case comports with due process and satisfies all applicable requirements, as preliminarily determined by the Court. (MDL Dkt. 492 ¶ 11)

**B.       DPPs Fully Implemented the Court-Approved Notice Program**

**1.       DPPs' Direct Mailing Plan Targeted Notice at Defendants' Customers**

In accordance with the Court-approved notice program, Class Counsel used the lists of direct purchasers taken from Defendants' transactional sales databases. *See* Zylstra Decl. ¶ 7. The transactional data contained Class member names, their mailing addresses, and their Capacitors purchase amounts from each Defendant during the relevant period. *See id.* This information was then used to generate and populate Claim Forms for potential Class members identified from Defendants' transactional data.[9] *See id.* Each Claim Form contains pre-populated information regarding the recipient's annual capacitors purchases from each Defendant between 2002 and 2015. DPPs mailed 3,041 Claim Forms and the Notice to Class members on February 5, 2019. *See* Zylstra Decl. ¶ 4. Class members receiving the pre-populated Claim Forms have the opportunity to submit additional information to the claims administrator if they believe the purchase information is incorrect. *See id.*, ¶ 7.

**2.       DPPs' Publication Notice Was Distributed Broadly**

The Summary Notice was published in the national edition of *The Wall Street Journal* on February 19, 2019. The paper's circulation at that time was 1,011,200. *See* Zylstra Decl. ¶ 6.

---

[9] DPPs continue to update the class member list with information received from Defendants and from direct contact from class members.

### 3. DPPs' Online Notice Strategy Targeted Class Members and Persons in the Electronics Industry

Class Counsel directed Rust to launch the Claims Website to provide Class members and the public information about the claims process. *See* Zylstra Decl. ¶ 13. The Long Form Notice is posted on the settlement website. (www.capacitorsantitrustsettlement.com).

Class Counsel also directed Rust to run banner advertisements that linked to the Claims Website on seven different electronics industry-focused websites. The banner advertisements ran from February 5, 2019 to February 22, 2019, during which the websites on which the banners ran had a total of 4,530,019 gross impressions. *See id.* ¶ 12.

### C. DPPs Have Taken Steps Over and Above Their Due Process and Rule 23 Obligations to Ensure That as Many Direct Purchaser Class Members as Possible Receive Mailed Notice and Claim Forms

In total, 145 Claim Forms were returned to Rust as undeliverable. *See* Zylstra Decl. ¶ 11. Rust conducted research and skip tracing on each of these returned Claim Forms using standard methods. *See id.* This yielded seven new addresses to which the Claim Forms were then sent. Class Counsel's efforts satisfy or exceed the requirements of Rule 23(c)(2)(B) and due process. Mindful of the Court's statements during the preliminary approval hearing for the previous round of settlements, Class Counsel made diligent efforts beyond what is normally undertaken to ensure that as many Class members as possible received Claim Forms.[10]

## VI. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

It is well-established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Certification of the Settlement Class is necessary to effectuate the Settlements. All requirements under Federal Rule of Civil Procedure 23 have been satisfied for the same reasons that the Court certified all prior settlement classes for DPPs and certified the litigation Class. (MDL Dkt. 385)

---

[10] Actual notice is not required. While Class Counsel and the claims administrator have made every effort to give individual notice to all identifiable Class members, those Class members need not actually receive such notice to be bound by the Settlements if the Court finally approves them. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017).

## VII.  THE COURT SHOULD FINALLY APPROVE DPPS' ALLOCATION PLAN

A plan of allocation of class settlement funds is subject to the fair, reasonable, and adequate standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the type and extent of their injuries is generally considered reasonable. *Id.; see also In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998).

DPPs propose that the Court approve the same plan of allocation that the Court approved for the First Round and Second Round Settlements. *See, e.g.,* Dkt. 1713 ¶ 12. DPPs' preliminary approval motion sets forth a plan for *pro rata* distribution of the Settlement Fund to the Settlement Class after payment of the attorneys' fees and expenses. *See* MDL Dkt. 414 at 23-24. The plan is impartial, and no Class member is favored over others. Such *pro rata* distribution has frequently been determined by Courts to be fair, adequate, and reasonable. *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010) (Order Approving *pro rata* distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000). Moreover, the Court's Preliminary Approval Order provisionally found DPPs' *pro rata* allocation plan to be "sufficiently fair, reasonable, and adequate" and approved it. *See* Dkt. 492 ¶ 6. Accordingly, the Court should grant final approval of the *pro rata* allocation plan.

## VIII.  DPPS WILL PROVIDE CLASS MEMBERS' RESPONSE

Pursuant to the Procedural Guidance for Class Action Settlements, DPPs will file with the Court information about class members' responses. The Court has directed the parties in this action to allow class members 45 days to object or opt-out after the filing date of instant motions for final approval and for attorneys' fees and reimbursement of costs and expenses. (MDL Dkt. 419) Accordingly, DPPs will provide this information in a supplemental filing. (Saveri Decl. ¶ 23)

## IX.  CONCLUSION

For the reasons set forth above, DPPs respectfully request that the Court: (1) grant final approval to the Settlement; (2) find DPPs' dissemination of notice to be in accordance with the Court-approved notice program and with Rule 23 and due process requirements; (3) finally certify the Settlement Class; and (4) grant final approval of DPPs' *pro rata* allocation plan.

Dated: March 1, 2019

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:   _/s/ Joseph R. Saveri_
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940

_Lead Class Counsel for Direct Purchaser Plaintiffs_

# ATTACHMENT A: Prior Settlement History

**In re Capacitors Antitrust Litig.,**
Case No. 3:17-md-02801-JD
ROUND 1: Approved June 27, 2017
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $32,600,000 | 100.0% |
| **Distribution to Class** | $21,287,673* | 65.3% |
| **Claims** | | |
| Participation rate | 66.2% of commerce | |
| Class members | 2,279 (known) | |
| Notices mailed | 2,279 | |
| Claims submitted | 719 | |
| Approved claims | 282 | |
| Average distribution | $47,582* | |
| **Cy Pres** | $0 | 0.0% |
| **Residual (uncashed)** | $447 | |
| **Attorney fees awarded** | $8,150,000 | 25.0% |
| Lodestar | $44,444,689 | |
| Hours | 105,345.8 | |
| Multiplier | 0.18 | |
| **Costs and Expenses** | $3,260,000 | 10.0% |
| **Claims Administration** | $185,308 | 0.6% |
| **Publication Costs** | $75,872 | 0.2% |

*Projected number as not all payments and distributions have been made

**In re Capacitors Antitrust Litig.,**
Case No. 3:17-md-02801-JD
ROUND 2: Approved June 28, 2018
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $66,900,000 | 100% |
| **Distribution to Class** | $43,652,604 | 65.3% |
| **Claims** | | |
| Participation rate | 78.5% of commerce | |
| Class members | 3,041 (known) | |
| Notices mailed | 3,041 | |
| Claims submitted | 681 | |
| Approved claims | 425 | |
| Average distribution | $102,712* | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $16,725,000 | 25.0% |
| Lodestar | $70,764,474** | |
| Hours | 165,390.4** | |
| Multiplier | 0.35** | |
| **Costs and Expenses** | $6,690,000 | 10.0% |
| **Claims Administration** | $158,415 | 0.2% |
| **Publication Costs** | $71,472 | 0.1% |

* Projected number as distributions have not yet been made.
** Cumulative amounts inclusive of round 1

**In re High-Tech Employee Antitrust Litig.,**
Case No. 11-cv-2509 (N.D. Cal.)
Final Approval granted September 2, 2015

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $435,000,000* | 100.0% |
| **Distribution to Class** | $384,300,156 | 88.3% |
| **Claims** | | |
| Participation rate | 99.9% of commerce | |
| Class members | 64,466 | |
| Notices mailed | 64,466 | |
| Claims submitted | 64,410 | |
| Approved claims | 64,410 | |
| Average distribution | $5,966 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $45,822,312 | 10.5% |
| Lodestar | $18,720,707 | |
| Hours | 37,131 | |
| Multiplier | 2.45 | |
| **Costs and Expenses** | $4,539,844 | 1.0% |
| **Claims Administration** | $360,000 | less than 0.1% |

* Resolution of the case proceeded in two rounds. The first round distributed $20 million to class members who filed claims. The second round distributed $415 million to the full list of class members, without a claims process.

**In Re Titanium Dioxide Antitrust Litigation**
Case No. 1:10-cv-00318-RDB (D. Md.)
Final Approval granted December 13, 2013

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $163,500,000 | 100% |
| **Distribution to Class** | $104,014,824 | 63.6% |
| **Claims** | | |
| Participation rate | 53.1% of class members* | |
| Class members | 650 (known)* | |
| Notices mailed | 5,877** | |
| Claims submitted | 643 | |
| Approved claims | 345*** | |
| Average distribution | $301,497 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $54,500,000 | 33.3% |
| Lodestar | $22,812,576 | |
| Hours | 45,585.33 | |
| Multiplier | 2.39 | |
| **Costs and Expenses** | $4,555,205 | 4.4% |
| **Claims Administration** | $112,010 | less than 0.1% |
| **Publication Costs** | $75,872 | less than 0.1% |

* Estimate created by Plaintiffs' expert based on Defendants' transactional data.
** Containing all unique addresses obtained from Defendants.
*** Claimants were required to provide proofs of claim, which were verified by the claims administrator.

| *In re Cipro Cases I & II*, JCCP Case Nos. 4154 & 4220 (San Diego Sup. Ct.) **IPP Settlement with Bayer approved November 18, 2013** *All figures are best estimates* | | |
|---|---|---|
| | | % Total Settlement |
| **Settlement** | $74,000,000 | 100.0% |
| **Distribution to Class** | $45,902,769 | 62.0% |
| **Class Representative Incentive Awards** | $40,000 | |
| **Claims** | | |
| Participation rate | 20.2% of commerce | |
| Class members | unknown | |
| Notices mailed | N/A*/44,929**[1] | |
| Claims submitted | 7,907*/463** | |
| Approved claims | 2,951*/295** | |
| Average distribution | $14,150[2] | |
| | $124* | |
| | $154,651** | |
| **Cy Pres** | $0 | 0.0% |
| **Residual** | $262,155[3] | |
| **Attorney fees awarded** | $24,642,000 | 33.3% |
| Lodestar | $9,856,800 (curr. rates) | |
| | $8,214,000 (hist. rates) | |
| Hours | 20,344 | |
| Multiplier | 2.5 (curr. rates) | |
| | 3.0 (hist. rates) | |
| **Costs and Expenses** | $2,501,241 | 3.4% |
| **Claims Administration** | $383,118 | 0.5% |
| **Publication Costs** | $459,136 | 0.6% |

\* Consumer
\*\* Third-party Payor
[1] The claims administrator sent notices to 44,929 potential class member third-party payors.
[2] Average distribution amount, including consumer and third-party payors.
[3] Residual funds from uncashed checks. Court ordered to be transferred to litigation fund.