Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua Paul Davis (State Bar No. 193254)
Nicomedes Sy Herrera (State Bar No. 275332)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        jdavis@saverilawfirm.com
        nherrera@saverilawfirm.com
        jdallal@saverilawfirm.com
        vprentice@saverilawfirm.com

*Lead Counsel for Direct Purchaser Plaintiff Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD |
| | Case No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| | Date:        May 16, 2019 |
| | Time:        3:00 p.m. |
| | Courtroom:   11, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 3:00 p.m. on May 16, 2019, at the U.S. District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco California 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("Direct Purchaser Plaintiffs" or "DPPs") will and hereby do move, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, to grant Class Counsel (1) attorneys' fees representing 25% of the cash settlements, according to the Northern District of California benchmark; and (2) reimbursement for incurred expenses with a reserve for anticipated expenses for trial.

Specifically, DPPs request that the Court:

1.      Grant Counsel's request for a payment of $27,000,000 (25% of the non-contingent portion of the settlement) for attorneys' fees from the settlement fund ("Settlement Fund") established in connection with DPPs' class action settlements with Defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"); and Rubycon Corporation and Rubycon America Inc. (together, "Rubycon") (Nichicon and Rubycon collectively, the "Settling Defendants"), now pending before the Court for final approval. Class Counsel will also seek 25% of any contingent payments that Rubycon pays into the Settlement Fund.

2.      Grant Counsel's request for a payment of $3,000,000 (2.8% of the non-contingent portion of the Settlement Fund) to reimburse incurred litigation costs and expenses, and to create a reserve for anticipated expense for trial.

DPPs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits thereto, the Court's files and records in this matter, argument of counsel, and such other and further matters as the Court may consider.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................... 4

    A.    Attorneys' Fees ............................................................................................ 4

    B.    Costs Reimbursement .................................................................................. 5

III.  THE COURT SHOULD AWARD DPPS' COUNSEL $16,725,000—25 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DECEMBER 31, 2017 ....................................................................................................................... 5

    A.    The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here ............ 5

    B.    The *Vizcaino* Factors Warrant Granting Counsel's Fee Request ...................... 7

        1.   Counsel Obtained an Exceptional Result for the Direct Purchaser Class with The Settlements. .......................................................................................... 7

        2.   Counsel Have Taken Significant Risks Prosecuting This Litigation. ................... 9

        3.   Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill. ................................................................. 9

        4.   Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award. ............................................................ 10

        5.   Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Plaintiffs' Claims. .................................................. 10

        6.   A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable. .................................................................................... 12

        7.   The Court Should Grant Attorneys' Fees Based on Work Counsel Has Performed on the Case as a Whole. ........................................................ 13

IV.   THE COURT SHOULD GRANT CLASS COUNSEL $3,000,000 FOR THEIR COSTS ADVANCED THROUGH DECEMBER 1, 2018 AND TO CREATE A RESERVE FOR ANTICIPATED EXPENSES AT TRIAL ................................................................. 13

V.    COUNSEL ANTICIPATE SEEKING ADDITIONAL ATTORNEYS' FEES AND COSTS FROM FUTURE JUDGMENTS OR SETTLEMENTS ........................................... 14

VI.   CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)................................. 10

*Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2015 U.S. Dist. LEXIS 35266
    (N.D. Cal. Mar. 19, 2015) ............................................................................................. 6

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ......................................................................... 4

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ...................................................... 4

*Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997 (9th Cir. 2002) ..................................... 5, 15

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2002)................................................15

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ...................................................................... 14

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2012 U.S. Dist. LEXIS
    108299 (E.D.N.Y. Aug. 2, 2012) ...............................................................................13

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS
    140137 (N.D. Cal. Aug. 17, 2018) ........................................................................... 6, 7

*In re Auto. Parts Antitrust Litig.*, No. 12-md-0231112, 2016 U.S. Dist. LEXIS 98446, at
    *560-61 (E.D. Mich June 20, 2016) .........................................................................1, 13

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................. 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist.
    LEXIS 102408 (N.D. Cal. Aug. 3, 2016)...................................................................... 7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist.
    LEXIS 24951 (N.D. Cal Jan. 28, 2016) ....................................................................... 1

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist.
    LEXIS 5383 (N.D. Cal. Jan. 14, 2016).......................................................................... 7

*In re CV Therapeutics, Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244 (N.D.
    Cal. Apr. 4, 2007)......................................................................................................... 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007
    U.S. Dist. LEXIS 103027 (N.D. Cal. Aug. 16, 2007) ................................................ 6, 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH,
    2013 U.S. Dist. LEXIS 190974 (N.D. Cal. Oct. 30, 2013) ........................................ 7, 8

**TABLE OF AUTHORITIES (cont.)**

*In re Korean Air Lines Co. Antitrust Litig.*, No. CV 07-05107 SJO, 2013 U.S. Dist. LEXIS 186262 (C.D. Cal. Dec. 23, 2013) ............................................................................ 6

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1995) ...............................5, 14

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ................................ 2

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................7, 14

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................................ 6

*In re Packaged Ice Antitrust Litig.*, No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011) ............................................................................................... 1

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................... 1

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ............................. 4

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ......................................... 12

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468 (N.D. Cal. Nov. 15, 2002) ................................................................. 6, 10

*In re Southeastern Milk Antitrust Litigation,* No. 2:07-CV 208, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. 2013) ...................................................................... 13, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2013 U.S. Dist. LEXIS 6607 (N.D. Cal. Jan. 14, 2013) ................................................................. 6, 10, 13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 U.S. Dist. LEXIS 67904 (N.D. Cal May 26, 2015) ................................................. 1

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL No. 2672, 2017 U.S. Dist. LEXIS 114353 (N.D. Cal 2017) ............................................. 1

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ................................... 5

*Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000) ................................. 13, 14

*Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) ................................................ 6, 10

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ..................................................... 4, 5

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) ...................................................... 1

*Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268 (9th Cir. 1989) ......................................... 6, 10

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ...................................................... 5

**TABLE OF AUTHORITIES (cont.)**

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833
(N.D. Cal. Dec. 28, 2017) .......................................................................................... 6, 7

*Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept.
29, 2010) ......................................................................................................................... 6

*Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) ........................................ 14

*Stanger v. China Elec. Motor, Inc.,* 812 F.3d 734 (9th Cir. 2016) ................................................ 6

*Thornberry v. Delta Air Lines*, 676 F.2d 1240 (9th Cir. 1982) .................................................. 14

*Tumampos v. Cathay Pac. Airways Ltd.,* No. 16-cv-06208, 2018 U.S. Dist. LEXIS 221481
(N.D. Cal. Sep. 21, 2018).............................................................................................. 6

*United States v. Elna Co., Ltd.*, 4:16-cr-00365-JD (N.D. Cal. filed on Aug. 22, 2016) ............. 9

*United States v. Matsuo Elec. Co. Ltd.*, 4:17-cr-00073-JD (N.D. Cal. filed on Feb. 8, 2017) .... 9

*Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) ......................................... 6, 10, 11

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977)................................................ 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............................................ 7, 10, 12

*Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS
19341 (N.D. Cal. Feb. 12, 2015) ..................................................................................... 5

*Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal.
Oct. 21, 2013) ................................................................................................................ 5

**Statutes**

Crime Victims' Rights Act, 18 U.S.C. § 3771 ......................................................................... 9, 11

Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.......................................... 8, 9

**Rules**

Fed. R. Civ. P. 23 .........................................................................................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Counsel for the class of Direct Purchaser Plaintiffs ("Settlement Class") submit this motion for attorneys' fees seeking an award in the amounts of $27,000,000 for fees accrued as of December 31, 2018 (25% of the non-contingent portion of the Settlement Fund), and $3,000,000 (2.8% of the non-contingent portion of the Settlement Fund) to reimburse incurred litigation costs and expenses, and to create a reserve for anticipated expense for trial (the "Motion").[1]

This application for attorneys' fees and reimbursement of expenses is made in connection with DPPs' Motion for Final Approval of Settlements with Nichicon and Rubycon.

Pursuant to the Procedural Guidance for Class Action Settlements, the background history and facts are set forth in DPPs' motion for final approval being filed at the same time as this motion and will not be repeated here, except to summarize the amount of past settlements and their related awards for attorneys' fees and reimbursement of expenses for the convenience of the Court.

**The Pending Third-Round Settlements**

The settlements with Nichicon and Rubycon (the "Settlements") provide for cash payments totaling $108,000,000 and secure agreements by Rubycon to cooperate in the DPPs' continued prosecution of their claims against the non-settling Defendants. Along with the $99,500,000 in settlements for the First and Second Round Settlements, Class Counsel has obtained a total of

---

[1] Allowing a portion of partial settlement funds to be used for future expenses is well-accepted. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL No. 2672, 2017 U.S. Dist. LEXIS 114353, at * 730 (N.D. Cal 2017) (court finds $0.06 million future litigation expenses reasonable; *In re Auto. Parts Antitrust Litig.*, No. 12-md-0231112, 2016 U.S. Dist. LEXIS 98446, at *560-61 (E.D. Mich June 20, 2016) (approving 5% of the settlement proceeds or $11.25 million to be set aside for future litigation expenses); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 24951, at *314 (N.D. Cal Jan. 28, 2016) (court approves for $4,500,000 from settlement for "Future Expense Fund"); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 U.S. Dist. LEXIS 67904, at *20 (N.D. Cal May 26, 2015) (court approved $3,000,000 for future expenses); *In re Packaged Ice Antitrust Litig.*, No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255, at *63-64 (E.D. Mich. Feb. 22, 2011); *Newby v. Enron Corp.*, 394 F.3d 296, 302-03 (5th Cir. 2004) (affirming establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).

$207,500,000 from seven of 22 corporate defendant families sued by DPPs. (Declaration of Joseph R. Saveri dated March 1, 2019 in Support of DPPs' Motion for Attorneys' Fees ("Saveri Decl."), ¶ 9)

Class Counsel—all of whom work on a contingency basis—have devoted substantial time without compensation and have advanced costs on behalf of the Settlement Class. The Settlements, if finally approved, provide Class Counsel the opportunity to be compensated in part for their hard work to date for the benefit of the Class, and to receive reimbursement for costs incurred in the ongoing litigation. The Motion is being publicly filed at least forty-five (45) days before the deadline for objecting to the proposed settlements described below (the "Settlements"), as required by the Court. (MDL Dkt. 419). This exceeds the 35-day requirement set forth in the Court's *Procedural Guidance for Class Action Settlements* and satisfies the requirements of *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 n.2 (9th Cir. 2010). (Saveri Decl. ¶ 3)

**The Prior Round One and Round Two Settlements**

On June 27, 2017, the Court granted final approval of DPPs' first round of settlements with the NEC Tokin, Fujitsu, Nitsuko, Okaya, and ROHM defendants totaling $32.6 million (the "First Round Settlements"). (Dkt. 1713; *see* n.1, *supra*) On June 28, 2018, the Court granted final approval of DPPs' second round of settlements with the Hitachi Chemical and Soshin defendants totaling $66.9 million (the "Second Round Settlements"). (MDL Dkt. 249) These settlements demonstrate Class Counsel and the named class representatives have diligently and successfully represented the Class. A summary of the distributions for those settlements are set forth in Exhibit A to DPPs' motion for final approval being filed at the same time as this motion.

On June 27, 2017, the Court awarded Counsel $8,150,000 (25% of the settlement fund) as partial payment of their fees accrued as of September 30, 2016 in connection with the First Round Settlements. (Dkt. No. 1714, at 3) As of the time of the fee application, the amount of fees awarded was less than the lodestar of counsel. The Court also approved $3 million for partial reimbursement of Counsel's costs and expenses. (Dkt. No. 1714, at 9-10)

For the Second Round Settlements, the Court granted $16,725,000 in attorneys' fees (25% of the settlement fund) as partial payment of their fees accrued as of December 31, 2017. As of the time of

the application, the amount of fees awarded was less than the lodestar of counsel. The Court also approved $6,690,000 in expenses (10% of the settlement fund). (MDL Dkt. 332, at 10)

**The Pending Requests for Attorneys' Fees and Reimbursement of Expenses**

Counsel's requested attorneys' fees of $27 million for the pending Settlements is equal to the 25% percentage benchmark for common fund cases. Counsel have taken a significant risk, invested substantial amounts of their time and money on a contingent basis, and forgone other work opportunities to dedicate their professional efforts to this case.

For the Court's consideration, Lead Class Counsel submits declarations for its time and expenses (Saveri Decl. Exs. 1-2) and Counsel that have worked under Lead Class Counsel's direction in the prosecution of this case. (Saveri Decl., Exs. 3-17) Attached to each of these declarations from Class Counsel are documents that summarize the time these respective firms have billed from January 1, 2018 to December 31, 2018, as reported by timekeeper.[2] (Ex. 1; Ex. A to each Counsel's declaration) Class Counsel have also attached a summary of the expenses they incurred on this case during the same period. (Ex. 2; Ex. B to each Counsel's declaration) Lead Class Counsel has reviewed each of Class Counsel's daily time records. Duplicative, unnecessary, or unauthorized work has been removed and will not be compensated. *See id.*, ¶ 121. Lead Class Counsel has also reviewed all costs submitted by Class Counsel for reimbursement to ensure their compliance with the instructions set forth in the Court's October 31, 2014 Order Appointing Interim Lead Class Counsel (Dkt. 319 at 4-5). *See id.* Expenses that were unauthorized or in excess of the Court's guidelines will not be compensated. *See id.*

DPPs' request for $3,000,000 (2.8% of the non-contingent portion of the Settlement Fund) to reimburse incurred litigation costs and expenses that have not yet been reimbursed ($2,077,141.20), and

---

[2] Counsel had previously submitted their time from November 1, 2014 through September 30, 2016 in connection with their motion for attorneys' fees for the First Round Settlements. *See* Dkts. 1458-1 through 1458-18. Counsel also previously submitted their time from October 1, 2016 through December 31, 2017 in connection with their motion for attorneys' fees for the Second Round Settlements.

to create a reserve for anticipated expense for trial ($922,858.80)[3]. (Saveri Decl. ¶ 15) Allowing a portion of partial settlement funds to be used for future expenses is well-accepted. *See* n.1, *supra*.

On a cumulative basis, the total amount of attorneys' fees—the requested $27 million added to the fee awards for the First and Second Round Settlements—is $51,875,000. (Saveri Decl. ¶ 14) This amount is less than the total lodestar in this case through December 31, 2018 of $82,639,299.70. (Saveri Decl. ¶ 36) The requested expenses of $3 million added to the expenses and costs reimbursements for the First and Second Settlements brings the cumulative total expenses and costs to $12,690,000. (Saveri Decl. ¶ 15) This amount fully reimburses DPPs' Counsel for their expenses incurred but unreimbursed to date ($2,077,141.20) and creates a reserve fund for trial of $922,858.80 (*Id.*) The request is well within the range of acceptable fee and expense awards.

## II.    LEGAL STANDARD

### A.    Attorneys' Fees

Attorneys may recover reasonable attorneys' fees from a common fund settlement they secure on behalf of a class. The Supreme Court has explained that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885) ("[W]here one or more of many parties having a common interest in a trust fund takes, at his own expense, proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by a proportional contribution from those who accept the benefit of his efforts"). "The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general. . . . The underlying premise is the existence of **risk**—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original). In addition, attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those

---

[3] Previously, DPPs have sought partial reimbursement of incurred costs and expenses that were unreimbursed as of the time of the prior settlements. With respect to this settlement, Plaintiffs seek a payment of $2,077,141.20 for all unreimbursed expenses incurred as of December 31, 2018, plus a fund of $922,858.80 to create a reserve for anticipated expenses at trial.

whose labors created the fund. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (*"WPPSS"*) ("[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.").

### B.     Costs Reimbursement

Counsel may also obtain reimbursement for costs from a common fund settlement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.") (citing, *inter alia*, *Mills,* 396 U.S. at 391-92; *see also Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180, at *18 (N.D. Cal. Oct. 21, 2013) ("Counsel are entitled to reimbursement of their reasonable out-of-pocket expenses."). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS 19341, at *6 (N.D. Cal. Feb. 12, 2015) (citations omitted).

### III.    THE COURT SHOULD AWARD DPPS' COUNSEL $16,725,000—25 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DECEMBER 31, 2017

### A.     The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here

District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar" method in calculating fees in common fund settlements. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002) ("In a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award."). Using either method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Where there is an easily quantifiable benefit to the class—namely, the cash recovery achieved through the settlement—the percentage of the fund approach is appropriate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."). Indeed, the percentage-of-the-fund method is *preferred* when counsel's efforts have created a common fund for the

benefit of the class. *See In re Korean Air Lines Co. Antitrust Litig.*, No. CV 07-05107 SJO (AGRx), 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *see also Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2015 U.S. Dist. LEXIS 35266, at *33 (N.D. Cal. Mar. 19, 2015) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.").

Courts supervising antitrust cases in this District regularly apply the percentage of the fund approach. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *88 (N.D. Cal. Aug. 17, 2018); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 861 (N.D. Cal. Dec. 28, 2017); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2013 U.S. Dist. LEXIS 6607, at *43 (N.D. Cal. Jan. 14, 2013); *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011); *Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857, at *4-5 (N.D. Cal. Sept. 29, 2010); *In re CV Therapeutics, Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. Apr. 4, 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16, 2007); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468, at *9-10 (N.D. Cal. Nov. 15, 2002); *Van Vranken v. ARCO*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). The Court should do so as well here.

Courts in the Ninth Circuit applying the "percentage of the fund" approach use a twenty-five percent benchmark. *See, e.g., Stanger v. China Elec. Motor, Inc.,* 812 F.3d 734, 738-39 (9th Cir. 2016); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%"); *Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989). *See also*, *e.g., Tumampos v. Cathay Pac. Airways Ltd.,* No. 16-cv-06208, 2018 U.S. Dist.

LEXIS 221481, at *24 (N.D. Cal. Sep. 21, 2018) (citing 25% benchmark but awarding 30%); *In re Anthem, Inc. Data Breach Litig.,* 2018 U.S. Dist. LEXIS 140137, at *81; *Reyes,* 281 F. Supp. 3d 833 at 859.

Selection of the benchmark or any other rate, however, must be supported by findings that take into account all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The benchmark is subject to adjustment—upward or downward—based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. *See id.* at 1048-50. *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 102408, at *62-69 (N.D. Cal. Aug. 3, 2016) (applying the *Vizcaino* factors on indirect purchaser class counsel's fee motion, awarding a 27.5% fee); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 5383, at *171-74 (N.D. Cal. Jan. 14, 2016) (same, awarding a 30% fee) (direct purchaser class counsel's fee motion); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974, at *116-24 (N.D. Cal. Oct. 30, 2013) ("DRAM") (same, awarding a 25% fee).

### B.   The *Vizcaino* Factors Warrant Granting Counsel's Fee Request

Here, each of the *Vizcaino* factors weighs in favor of awarding the requested $27,000,000, which is twenty-five percent of the total non-contingent portion of the Settlement Fund ($108,000,000), and equal to the Ninth Circuit's benchmark. Counsel's Motion requests the benchmark amount from these Settlements. For the same reason, the Court should also grant Class Counsel 25% of any contingent payments that Rubycon pays into the Settlement Fund in the future.

#### 1.   Counsel Obtained an Exceptional Result for the Direct Purchaser Class with The Settlements.

The most important factor is the result achieved for the class. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 102408, at *63 (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)). The pending Settlements—the third round in the consolidated Direct Purchaser Action—provide the Class with valuable monetary and non-monetary benefits.

The Settling Defendants' all-cash payments for the benefit of the Class together will total $108,000,000. This is a large amount of money relative to the Settling Defendants' individual and collective capacitor sales to U.S. purchasers between 2002 and 2014.[4]

DPPs believe Nichicon's $90 million settlement represents approximately 132% of Nichicon's overcharges during the class period (based on DPPs' calculation of $68,043,372 in overcharges attributable to Nichicon) and 17.5% of the total overcharges of $513,394,721 for all Defendants calculated by DPPs' experts. DPPs further believe that the $18 million non-contingent portion of Rubycon's settlement represents approximately 61% of Rubycon's overcharges during the relevant time period (based on DPPs' calculation of $29,382,943 in overcharges attributable to Rubycon) and 3.5% of the total overcharges for all Defendants calculated by DPPs' experts. With the contingent portion, DPPs believe that Rubycon's $30 million settlement would represent 102% of Rubycon's total overcharges during the relevant time period. The Settlements' monetary component—all cash—greatly benefits the Direct Purchaser Class by providing and, in fact, accelerating the Class' chances for monetary recovery in this case through the claims administration process. (Saveri Decl. ¶ 10) Here, a substantial amount of money stands to be distributed to a relatively small Direct Purchaser Class. (*Id.*) There is a real value to Class members of receiving a cash distribution from the Settlements in the near term. In addition, given the number of Defendants in this action and the risk of treble damages at trial, these Settlements likely will encourage additional favorable settlements. (*Id.*)

In addition to the cash component, Rubycon has agreed to provide substantial assistance to the class. (*Id.* ¶ 9) This assistance is a substantial class benefit because it will assist DPPs to prepare for trial and to maximize their monetary recovery against the Non-Settling Defendants. (*Id.* ¶ 10) *See DRAM*, 2013 U.S. Dist. LEXIS 190974, at *143 (cooperation "was valuable in maximizing the monetary recovery against the other Defendants.").

---

[4] "U.S. purchasers" are defined as purchasers of capacitors located in the United States or located abroad but requesting delivery in the United States. This is consistent with the Court's ruling on the impact of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA") on the commerce at issue in this case. *See generally* Dkt. at 1302. The term "U.S. sales" is defined as sales billed to or shipped to U.S. purchasers.

### 2. Counsel Have Taken Significant Risks Prosecuting This Litigation.

Counsel have assumed a significant risk in undertaking this litigation. *See* Saveri Decl. ¶¶ 14, 24-25. All understood the risk of contingency litigation and the fact that recovery is never guaranteed. (Saveri Decl. ¶ 35) They committed their time, money and energy to the prosecution of a multi-year, international price-fixing cartel case against 22 sprawling Defendant corporate families based almost entirely in Japan. *See id.* ¶ 25. This cartel case is complex, and complex antitrust cases like this one often take years to resolve through settlement, trial, or appeal. *See id.* As the case has advanced, certain Defendants have claimed poor financial health that could ultimately impede or diminish recovery for the Class.[5] As set forth in Lead Class Counsel's declaration, Direct Purchaser Plaintiffs' Counsel have expended millions of dollars of their time and incurred millions of dollars in expenses, all on a purely contingent basis. Counsel have stated that they had to turn away case opportunities over the last four years to ensure that they could keep dedicated to this case the resources needed to prosecute the Class' claims. This entails substantial risk. (*Id.* ¶¶ 14, 24-25)

Counsel also incurred risk associated with having a parallel criminal proceeding, addressing the impact of the FTAIA, and evaluating massive amounts of electronic transactional data necessary to prove their case. Each of these risks weigh in favor of granting Counsel the requested fee award.

### 3. Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill.

The docket and the procedural history in this this case demonstrate Counsel's expertise and the Direct Purchaser Plaintiffs' successes to date. *See, e.g.,* Dkt. 332, at pp. 5-8. Counsel have done much to

---

[5] DPPs have worked diligently to maximize compensation and restitution for those injured by Defendants' cartel. For example, Lead Class Counsel retained experts and filed submissions under the Crime Victims' Rights Act, 18 U.S.C. § 3771, in connection with the Court's sentencing of Matsuo in *United States v. Matsuo Elec. Co. Ltd.*, 4:17-cr-00073-JD (N.D. Cal. filed on Feb. 8, 2017) In particular, Lead Class Counsel submitted briefing and a declaration from DPPs' expert, Monica Ip, analyzing Matsuo's claimed inability to pay its criminal fine and suggesting appropriate and restitution for those injured by Defendants' anticompetitive conduct. *See id.*, at Dkt. 58 & 58-1. Similarly, in *United States v. Elna Co., Ltd.*, 4:16-cr-00365-JD (N.D. Cal. filed on Aug. 22, 2016), Lead Class Counsel filed briefs and a declaration from DPPs' expert, Dr. John M. Connor, concerning the amount of appropriate restitution for the victims of Elna's crimes. Lead Class Counsel and DPPs' expert provided analysis and projections concerning the amount of appropriate restitution resulting from Elna's overcharges. *See id.*, at Dkts. 67, 67-1 & 71.

effectively prosecute the Class' claims, and to do so efficiently. Counsel have not come by their successes in this litigation easily. Defendants—including the Settling Defendants—have hired the best antitrust counsel money can buy to defend them against the Direct Purchaser Plaintiffs' Sherman Act claims. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."). Indeed, despite guilty pleas, Defendants still contest liability.

**4.    Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award.**

The requested award of $27,000,000 matches and is in keeping with the Ninth Circuit benchmark. *See Paul,* 886 F.2d at 272. Class Counsel's request is modest when compared to percentages awarded plaintiffs' counsel in other, arguably less complex and challenging antitrust cases in this District. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 6607, at *44 (30%); *Meijer v. Abbott Labs*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 U.S. Dist. LEXIS 103027, at *1-2 (25%); *In re Sorbates Direct Purchaser Antitrust Litig.*, 2002 U.S. Dist. LEXIS 23468, at *9-10 (25%); *Van Vranken,* 901 F. Supp. at 298 (25%). As these precedents demonstrate, twenty-five percent is easily consistent with recognized "market rates," *i.e.*, rates typically awarded in similar contingency fee cases in this District. *See Vizcaino*, 290 F.3d at 1050 ("market rates" are a question of "lawyers' reasonable expectations [for recovery of contingent fees], which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").

**5.    Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Plaintiffs' Claims.**

Class Counsel have invested significant amounts of time, money, and resources in this case for over four years, as shown in their time and expense records. Lead Class Counsel's time submissions— $6,913,207 for 2018 and $27,414,489.50 total lodestar billed to date—illustrate the point. (Saveri Decl. ¶ 18). This litigation has required a significant devotion of Lead Class Counsel's resources for the last

four and a half years. Specifically, and by way of example, Lead Class Counsel performed the following tasks:

- Supervising all work performed.
- Preparing and editing court filings, including documents related to motion practice.
- Briefing and arguing the motion for class certification.
- Submitting expert reports on the merits.
- Interfacing, communicating and negotiating with the United States Department of Justice.
- Interfacing, communicating and coordinating with counsel for the indirect purchaser plaintiffs.
- Interfacing, communicating, coordinating with, and providing assistance to counsel for the opt-out plaintiffs.
- Practicing before the Judicial Panel on Multidistrict Litigation with respect to late-filed cases.
- Managing discovery, including drafting discovery responses.
- Evaluating and analyzing defendants' discovery responses, including document productions.
- Managing document reviews.
- Selecting and preparing DPPs' expert witnesses and reports.
- Supervising all depositions.
- Preparing for and taking key depositions.
- Identifying and interviewing cooperating witnesses.
- Overseeing and coordinating the work of retained experts.
- Communicating with Settlement Class members and responding to inquiries concerning the status of the case and settlement.
- Reviewing financial information, hiring forensic accountants, and filing submissions pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771 in connection with the criminal cases against certain Defendants.
- Conducting settlement negotiations.
- Coordinating notice and claims management issues.

- Preparing the case for trial.

(Saveri Decl. ¶ 19)

Lead Class Counsel have relied on Class Counsel to assist the prosecution of this case for the benefit of the class. Several firms have been called to provide assistance for the benefit of the Class. Each of the firms has wide and deep experience in the field and has successfully resolved numerous cases, and the Class has benefitted from that experience. (Saveri Decl. ¶ 35) The Court has seen the quality of legal work on behalf of the Direct Purchaser Plaintiffs. Under the active supervision of Lead Class Counsel, the firms have worked closely together as an efficient team. *See id.* ¶ 34. Assignments have been given based on the particular expertise and skill of individual lawyers. *See id.* Duplication of effort has been minimized, and as noted above, duplicative or unnecessary work has been excluded as a basis for the attorney fee award sought here. (*Id.*) Class Counsel have set forth for the Court the details regarding their contributions to this litigation in their declarations attached to the Saveri Declaration. (Saveri Decl., Exs. 3-16 ¶ 3 in each exhibit declaration)

### 6. A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.

A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citation omitted).

Counsel's cumulative lodestar as of December 31, 2018 is $82,639,299.70. (Saveri Decl., ¶ 36, and Exs. 1-16) Consistent with the Court's instructions, time was reported on a monthly basis and those historical rates are used as the basis for the fee request here. (*Id.* ¶ 28, and Exs. 1-16)

Using the lodestar cross-check, the fees sought here amount to less than 63% of the lodestar submitted by Counsel. In the Ninth Circuit, a lodestar multiplier of around four times has frequently been awarded in common fund cases such as this. *See Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held "within the range of multipliers applied in common fund cases"); *see also Van Vranken*, 901 F. Supp. 294 at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class

action litigation.") (citations omitted). The lodestar cross-check thus confirms that Counsel's $16,725,000 fee request is reasonable and should be awarded as requested.

### 7. The Court Should Grant Attorneys' Fees Based on Work Counsel Has Performed on the Case as a Whole.

Antitrust cases with multiple defendants routinely have several settlements subject to separate approval procedures. Because the total work performed by counsel from inception of the case makes each settlement possible, courts typically base fee awards in subsequent settlements on all work performed in the case. *In re Southeastern Milk Antitrust Litigation,* No. 2:07-CV 208, 2013 U.S. Dist. LEXIS 70167, at *26-27 (E.D. Tenn. 2013); *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000). Indeed, when considering fee awards for subsequent settlements, courts typically calculate the lodestar multiplier by dividing (1) all past and requested fee awards by (2) all of counsel's time from inception of the case. *See, e.g.*, *In re Southeastern Milk Antitrust. Litig.*, *supra*, 2013 U.S. Dist. LEXIS 70167, at *20; *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-MD-1775, 2012 U.S. Dist. LEXIS 108299, at *63-65 (E.D.N.Y. Aug. 2, 2012).

Courts routinely award counsel benchmark or greater percentages to calculate attorneys' fees in cases like this one involving large partial payments. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 6607, at *47-48 (awarding counsel for direct purchaser plaintiffs 30% of $76 million partial settlement, 30% of subsequent $405 million settlement, and 30% of subsequent $68 million settlement); *Lobatz,* 222 F.3d 1142 at 1149-1150 (affirming that counsel should be awarded fees based on work on entire litigation, not time since the first settlement).

## IV. THE COURT SHOULD GRANT CLASS COUNSEL $3,000,000 FOR THEIR COSTS ADVANCED THROUGH DECEMBER 1, 2018 AND TO CREATE A RESERVE FOR ANTICIPATED EXPENSES AT TRIAL

Counsel requests for reimbursement of expenses in the amount of $3,000,000 (2.8% of the non-contingent portion of the Settlement Fund) to reimburse incurred litigation costs and expenses that have not yet been reimbursed ($2,077,141.20), and to create a reserve of $922,858.80 for anticipated expense for trial. (Saveri Decl. ¶ 15) Allowing a portion of partial settlement funds to be used for future expenses is well-accepted. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 2016 U.S. Dist. LEXIS 98446,

at *560-61 (approving 5% of the settlement proceeds or $11.25 million to be set aside for future litigation expenses); *see generally* n.1, *supra*.

It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," *i.e.*, costs "incidental and necessary to the effective representation of the Class." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048; *See also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs. *See Media Vision*, 913 F. Supp. 1362 at 1366 (court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage, telephone/fax); *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), *remanded on other grounds*, 461 U.S. 952(1983). Under the common fund doctrine, plaintiffs' counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977).

Aside from the typical litigation-related costs necessarily incurred in a complex antitrust litigation like this one (*e.g.*, travel and lodging, legal research, court reporters), Counsel have incurred many other expenses that warrant reimbursement. In the two prior rounds of DPP settlements, Class Counsel had informed the Court of the extraordinary expenses entailed by this complex litigation, including the substantial costs in reviewing, translating, and analyzing 39 million Bates-numbered pages, mostly in Japanese, from over 100 document custodians. (Dkt. 1713; MDL Dkt. 249) Additionally, since the last round of settlements, Class Counsel have incurred significant expert fees and related expenses in connection with submitting expert reports. (Saveri Decl. ¶¶ 23, 53, 56)

## V.    COUNSEL ANTICIPATE SEEKING ADDITIONAL ATTORNEYS' FEES AND COSTS FROM FUTURE JUDGMENTS OR SETTLEMENTS

When considering a partial fee request, it is sound policy for the Court to recognize the risk counsel faced from the outset and evaluate counsel's contributions over the entire course of litigation (*see In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at *26-27; *Lobatz*, 222 F.3d 1142 at 1149-50) and the risks taken at the outset of the case (see, e.g., *Silverman v. Motorola Solutions,*

*Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (risk assessed at outset of the case); *Fischel,* 307 F.3d at 1009 (same); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2002) (same)).

Therefore, the Court should evaluate risks and achievements taken during the entire course of the litigation when considering Counsel's fee request, as well as any future requests which may arise. As is reflected in Class Counsel's submission, their cumulative lodestar and costs exceed the compensation they seek in this Motion. Counsel's lodestar and costs will continue to accrue during their ongoing prosecution of this action. While Counsel believe that the review of the Defendants' documents is largely complete, Counsel intend to devote substantial additional resources to prepare for trial. Should DPPs ultimately prevail at trial, for the benefit of the Direct Purchaser Class, it is fair for Counsel to seek from future settlements additional fees and costs based on their work after December 31, 2018. Any such future requests will be sought out of additional recoveries, subject to notice to the class and Rule 23 procedures.

## VI.    CONCLUSION

For the reasons set forth above, Counsel requests payment of $27,000,000 in attorneys' fees and $3,000,000 in costs and for the creation of a reserve for anticipated expenses at trial. The Court should also grant Class Counsel 25% of any contingent payments that Rubycon pays into the Settlement Fund.

Dated: March 1, 2019

JOSEPH SAVERI LAW FIRM, INC.


By:   */s/ Joseph R. Saveri*
              Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Nicomedes Sy Herrera (State Bar No. 275332)
Joshua Paul Davis (State Bar No. 193254)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*Lead Class Counsel for Direct Purchaser Plaintiffs*