1   Jeffrey A. LeVee (State Bar No. 125863)
    jlevee@JonesDay.com
2   Eric P. Enson (State Bar No. 204447)
    epenson@JonesDay.com
3   Kelly M. Ozurovich (State Bar No. 307563)
    kozurovich@JonesDay.com
4   JONES DAY
    555 South Flower Street
5   Fiftieth Floor
    Los Angeles, CA  90071.2300
6   Telephone:   +1.213.489.3939
    Facsimile:   +1.213.243.2539
7
    Attorneys for Defendants
8   HOLY STONE ENTERPRISE CO., LTD.,
    MILESTONE GLOBAL TECHNOLOGY, INC.
9   (D/B/A HOLYSTONE INTERNATIONAL),
    VISHAY POLYTECH CO., LTD.
10
    [ADDITIONAL COUNSEL LISTED ON
11  SIGNATURE PAGE]

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15  *IN RE CAPACITORS ANTITRUST*        Master File No. 17-md-02801-JD
16  *LITIGATION*
                                        **CERTAIN DEFENDANTS' MOTION FOR**
17  **THIS DOCUMENT RELATES TO:**       **SUMMARY JUDGMENT AND, IN THE**
                                        **ALTERNATIVE, PARTIAL SUMMARY**
18  *Avnet, Inc., v. Hitachi Chemical Co., Ltd.*, et   **JUDGMENT ON DIRECT ACTION**
    al., Case No. 17-cv-7046-JD;        **PLAINTIFFS' CLAIMS**
19
    *The AASI Beneficiaries' Trust, by and*
20  *through Kenneth A. Welt, Liquidating*
    *Trustee, v. AVX Corp. et al.*,     Date:       August 29, 2019
21  Case No. 3:17-cv-03472-JD;          Time:       10:00 a.m.
                                        Judge:      Hon. James Donato
22  *Benchmark Electronics Incorporated, et al.*,   Courtroom:  11, 19th Floor
    *v. AVX Corporation, et al.*,
23  Case No. 17-cv-7047-JD; and         **PUBLIC REDACTED VERSION**

24  *Arrow Electronics, Inc. v. ELNA Co., Ltd.,*
    *et al.*, Case No. 3:18-cv-02657-JD

25

26

27

28
                                        Certain Defendants' Motion for Summary
                                        Judgment On DAPs' Claims
                                        Master File No. 17-md-02801-JD

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2019, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable James Donato, U.S. District Court Judge, U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, 19th Floor, Courtroom 11, San Francisco, California 94102, certain Defendants[1] will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment and, in the alternative, partial summary judgment as to the claims of Direct Action Plaintiffs Avnet, Inc., The AASI Beneficiaries' Trust, by and through Kenneth A. Welt, Liquidating Trustee, Benchmark Electronics, Inc., and Arrow Electronics, Inc. (collectively, "DAPs").  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed declaration of Eric P. Enson and its attached exhibits, any other matters found in the record, argument of counsel, and such other and further matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether DAPs have come forward with evidence capable of raising a genuine issue of material fact to satisfy their burden of proving that they suffered a cognizable injury as a result of the alleged conspiracy.

2.      In the alternative, whether DAPs have come forward with evidence capable of raising a genuine issue of material fact to satisfy their burden of proving that certain United States-based Defendants, in particular KEMET Corporation, KEMET Electronics Corporation and AVX Corporation, and suppliers of film capacitors participated in the alleged conspiracy.

---

[1] The following Defendants join in this Motion: Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (doing business as HolyStone International); Vishay Polytech Co., Ltd.; ELNA Co., Ltd.; ELNA America, Inc.; Matsuo Electric Co., Ltd.; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Hitachi Chemical Co., Ltd.; Hitachi AIC Inc.; Hitachi Chemical Co. America, Ltd.; Nichicon Corporation; Nichicon (America) Corporation; Rubycon Corporation; and Rubycon America Inc.  The Holy Stone, Hitachi Chemical, Nichicon and Rubycon Defendants join this motion only as to the Avnet, AASI and Benchmark actions.

1

2    Dated: June 14, 2019                          RESPECTFULLY SUBMITTED

3                                                  JONES DAY

4

5                                                  By: */s/ Eric P. Enson*
                                                       Eric P. Enson

6
                                                   Attorneys for Defendants
7                                                  HOLY STONE ENTERPRISE CO., LTD.,
                                                   MILESTONE GLOBAL TECHNOLOGY,
8                                                  INC. (D/B/A HOLYSTONE
                                                   INTERNATIONAL), VISHAY
9                                                  POLYTECH CO., LTD

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

INTRODUCTION ........................................................................................................ 1

UNDISPUTED MATERIAL FACTS .......................................................................... 3

ARGUMENT ............................................................................................................... 9

I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL OF
      DAPS' CLAIMS BECAUSE DAPS CANNOT RAISE A GENUINE ISSUE OF
      MATERIAL FACT AS TO THE EXISTENCE OF A CONSPIRACY RESULTING
      IN HARM TO THEM.......................................................................................... 10

      A.   There Is No Evidence Causally Connecting Defendants' Conduct And DAPs'
           Alleged Injury. ......................................................................................... 10

      B.   The Evidence Establishes That DAPs, With Their Purchasing Power And
           Unique Procurement Processes, Avoided Any Overcharges On Capacitors. ............... 13

      C.   Dr. Marx's Opinions Cannot Establish Causation Or Injury......................... 15

II.   IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT SHOULD BE
      GRANTED ON DAPS' CLAIMS BASED ON PURCHASES FROM KEMET
      AND AVX AS WELL AS PURCHASES OF FILM CAPACITORS. ............................... 19

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

CASES

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ....................................................................................................16, 18

*Catlin v. Wa. Energy Co.*,
791 F.2d 1343 (9th Cir. 1986) ...............................................................................3, 10, 11, 13

*Concord Boat Corp. v. Brunswick Corp.*,
207 F (8th Cir. 2000) ........................................................................................................18

*Gerlinger v. Amazon.com, Inc.*,
526 F.3d 1253 (9th Cir. 2008) ......................................................................................14

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999) .......................................................................................12, 17

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
632 F. Supp. 2d 42 (D. Me. 2009) .............................................................................19

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 914 (9th Cir. 2015) .....................................................................................3, 14, 16

*In re Optical Disk Drive Antitrust Litig.*,
2017 U.S. Dist. LEXIS 209281 (N.D. Cal. Dec. 18, 2017) ................................13, 19

*In re Optical Disk Drive Antitrust Litig.*,
2017 U.S. Dist. LEXIS 209282 (N.D. Cal. 2017) ....................................................13

*In re Optical Disk Drive Antitrust Litig.*,
2017 U.S. Dist. LEXIS 222996 (N.D. Cal. Dec. 18, 2017) ........................11, 13, 19

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
107 F.3d 1026 (3d Cir. 1997) .....................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ...................................................................................................10, 16

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir. 1988) .....................................................................................13

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ................................................................................10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ................................................................11

*Northwest Publ'ns, Inc. v. Cumb*,
  752 F.2d 473 (9th Cir. 1985) ...........................................................2, 10

*Oregon Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
  185 F.3d 957 (9th Cir. 1999) ...........................................................10, 13

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
  537 F.2d 1307 (5th Cir. 1976) ................................................................10

*Sound Ship Bldg. Corp. v. Bethlehem Steel Co.*,
  533 F.2d 96 (3d Cir. 1976) ......................................................................10

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ..................................................................16

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
  796 F. Supp. 2d 1025 (N.D. Cal. 2011) ..................................................18

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969) ................................................................................10

**STATUTES**

15 U.S.C. § 15(a) .........................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a).....................................................................................11

Certain Defendants' Motion for Summary
Judgment On DAPs' Claims
Master File No. 17-md-02801-JD

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

3      Direct Action Plaintiffs Avnet, Inc., The AASI Beneficiaries' Trust, by and through

4  Kenneth A. Welt, Liquidating Trustee, Benchmark Electronics, Inc., and Arrow Electronics, Inc.

5  (collectively, "DAPs"), allege a seventeen-year, overarching conspiracy among twenty-plus

6  capacitor manufacturers to fix prices on aluminum, tantalum and film capacitors sold in the

7  United States.  Even more sweeping than their claim of conspiracy is DAPs' allegation that ***each***

8  ***and every*** aluminum, tantalum and film capacitor they purchased from Defendants[2] was at an

9  inflated price due to the alleged conspiracy.  Allegations aside, it is now incumbent on DAPs to

10  produce evidence supporting the elements of the claims they intend to present to the jury.  But as

11  to at least one element – causal antitrust injury – DAPs cannot.  *See Northwest Publ'ns, Inc. v.*

12  *Cumb*, 752 F.2d 473, 476 (9th Cir. 1985) ("Causal antitrust injury is an essential element of any

13  remedy under the Sherman Act.").

14      Based on the evidentiary record, a reasonable jury could not conclude that DAPs

15  suffered an overcharge on each and every one of their capacitor purchases from Defendants due

16  to the alleged conspiracy.  There is no evidence that Defendants targeted sales to DAPs and then

17  followed through on a collusive agreement to fix prices charged to DAPs.  Indeed, in the millions

18  of documents produced, and the scores of depositions taken, in this litigation, ***not a single one***

19  evidences communications, much less an agreement, among Defendants regarding DAPs, as

20  DAPs' own expert has conceded.  Nor is there evidence that DAPs were among the types of

21  purchasers contemplated by Defendants' allegedly-collusive conduct, or evidence of a market

22  mechanism that caused DAPs to suffer harm from such conduct.  In fact, the evidence DAPs rely

23  upon, such as meetings among Japanese manufacturers in Asia about Asian customers and plea

24  agreements regarding "certain" capacitors, says nothing about how DAPs could have been

25  overcharged on all of their capacitor purchases from Defendants.  There is, instead, substantial

26

27      [2] In their separate actions, DAPs filed claims against different sets of Defendants, likely
because of existing supply relationships, but also identified sets of alleged co-conspirators in their
complaints.  Thus, in this Motion, "Defendants" refers to the entities named as defendants in the
28  individual DAP cases as well as alleged co-conspirators in those cases.

1   evidence that DAPs – with their purchasing power, procurement processes designed to maximize

2   competition among suppliers and their mix of Defendant and non-Defendant suppliers – avoided

3   overcharges by regularly minimizing the capacitor prices they paid.  And while DAPs will

4   certainly rely on expert testimony, they will offer no expert testimony based on record evidence

5   or "market facts" that makes a causal link between Defendants' alleged conduct overseas and an

6   overcharge on all of DAPs purchases from Defendants in the United States.  *See In re Online*

7   *DVD-Rental Antitrust Litig.*, 779 F.3d 914, 923-24 (9th Cir. 2015) ("the mere proffering of

8   unsupported expert testimony does not create a triable issue as to antitrust injury-in-fact.").

9        To be clear, this is not a motion about damages or amount of harm.  It is, instead, a motion

10  challenging whether DAPs, after years of discovery, can establish "with reasonable probability"

11  that "the alleged anticompetitive activity was a material cause of the injury" alleged in the case

12  DAPs plan to present at trial.  *Catlin v. Wa. Energy Co.*, 791 F.2d 1343, 1347 (9th Cir. 1986)

13  (internal quotation marks omitted).  DAPs, however, cannot answer this challenge because they

14  have no factually-supported theory, or evidence, linking Defendants' alleged conduct to an

15  overcharge on all of their capacitor purchases from Defendants.  Summary judgment for

16  Defendants is, therefore, appropriate.

17       In the alternative, partial summary judgment on DAPs' claims regarding their purchases

18  from American capacitor manufacturers KEMET Corporation and KEMET Electronics

19  Corporation (together "KEMET") and AVX Corporation ("AVX") should be granted.  As DAPs

20  own expert has acknowledged, there is no evidence that KEMET or AVX participated in

21  meetings with Japanese suppliers in Japan or otherwise joined the alleged conspiracy.  To the

22  contrary, there is direct evidence and sworn testimony that KEMET and AVX were not part of the

23  alleged conspiracy, which has been corroborated by antitrust regulators' uniform decision to not

24  seek charges against them.

25       Partial summary judgment should also be granted on DAPs' claims regarding purchases of

26  film capacitors.  A reasonable jury simply could not conclude, based on all of the evidence, that

27  film capacitors were ever a subject of the conspiracy alleged by DAPs.

28

# UNDISPUTED MATERIAL FACTS

***Industry Background.*** Capacitors are components that are fundamental to all electronic devices.[3] "Capacitors store electrical energy and help regulate the flow of the electrical current as it moves through a circuit."[4] The most common types of capacitors are aluminum, tantalum, film and ceramic capacitors. DAPs bring claims as to aluminum, tantalum and film capacitors only.[5]

***Avnet and its Capacitor Purchases.*** Avnet is a New York corporation with its principal place of business in Phoenix, Arizona.[6] Avnet is "a major U.S. distributor of electronic components, including capacitors."[7] In fact, Avnet is ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ .[8] ██████████████████████████████████████████████████████████████████████ .[9] ████████████████████████████████████████████████████████████████████████████████ .[10]

As a major capacitors distributor, Avnet exerted its purchasing power over capacitor suppliers. For instance, Avnet regularly ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[3] Case No. 17-cv-7046-JD, Avnet Amended Complaint ("Avnet Compl.") (ECF No. 76), ¶ 2.

[4] *Id.*

[5] *Id.* at ¶ 90.

[6] Avnet Compl. at ¶ 29.

[7] *Id.*

[8] Ex. 1 (Deposition of Vincent Arena ("Arena Dep.")) at 49:19-50:4, 149:3-13; Ex. 2 (Deposition of Gerald Fay ("Fay Dep.")) at 88:14-89:14. All exhibits referenced herein are attached to the accompanying declaration of Eric P. Enson.

[9] Ex. 1 (Arena Dep.) at 77:14-25.

[10] *Id.* Dep. at 159:20-24; Ex. 2 (Fay Dep.) at 95:14-96:24; Ex. 3 (Deposition of Michael Ulch ("Ulch Dep.")) at 65:23-67:16; Ex. 4 (Expert Report of Leslie Marx, Ph.D ("Marx Report") at p. 69, Figure 28.

1  [redacted].[11]  In addition, [redacted]

2  [redacted]

3  [redacted].[12]

4  ***AASI and its Capacitor Purchases.***  AASI was a Delaware corporation with its principal

5  place of business in Miami, Florida.[13]  In April 2007, AASI [redacted]

6  [redacted].[14]  While it was in business, AASI was "a major U.S.

7  distributor of electronic components, such as capacitors."[15]  AASI [redacted]

8  [redacted],[16] but of the

9  [redacted].[17]

10  Like Avnet, AASI [redacted]

11  [redacted].[18]

12  [redacted]

13  [redacted].[19]  [redacted]

14  [redacted]

15  [redacted].[20]

16  [redacted]

17  [redacted],[21]

---

[11] Ex. 1 (Arena Dep.) 140:4-142:17; Ex. 2 (Fay Dep.) at 99:10-23 (testifying that [redacted]); Ex. 4 (Ulch Dep.) at 82:3-84:5 (testifying that [redacted]).

[12] Ex. 1 (Arena Dep.) at 155:3-17; Ex. 3 (Ulch Dep.) at 84:10-85:24.

[13] Case No. 3:17-cv-03472-JD, AASI Complaint (ECF No. 1) at ¶ 26.

[14] *Id*.; Ex. 5 (Deposition of John Jablansky ("Jablansky Dep.")) at 190:5-8.

[15] AASI Compl. at ¶ 26.

[16] Ex. 5 (Jablansky Dep.) at 363:13-365:5.

[17] *Id*. at 217:18-23, 223:21-225:19, 191:12-199:6; Ex. 6 (Deposition of Shell Johnson ("Johnson Dep.")) at 83:6-87:19, 102:19-103:22, 150:14-154:22.

[18] Ex. 5 (Jablansky Dep.) at 154:1-157:17; Ex. 6 (Johnson Dep.) at 136:3-142:3 (testifying that [redacted]), 150:1-12, 273:6-274:1, 376:3-378:18.

[19] Ex. 5 (Jablansky Dep.) at 148:17-153:25, 161:15-163:13; Ex. 6 (Johnson Dep.) at 173:14-178:5.

[20] Ex. 5 (Jablansky Dep.) at 303:20-307:13, 319:8-321:12, 324:3-325:5.

[21] *Id*. at 170:11-171:2.

1     ████.[22]  And like Avnet, AASI ████████████████████

2 ████████████████.[23]

3     ***Arrow and its Capacitor Purchases.***  Arrow is a New York corporation with its principal

4 place of business in Centennial, Colorado.[24]  Arrow is "a leading U.S. seller of electrical

5 components and a provider of products, services and solutions to industrial and commercial users

6 of electronic components and enterprise computing solutions around the world."[25]  Arrow

7 ████████████████████████████.[26]

8     As a major capacitors distributor, Arrow, like Avnet and AASI, exerted its purchasing

9 power over its capacitors suppliers.  For instance, Arrow ████████████

10 ████████████████████████████

11 ████████████████████████,

12 ██████.[27]  In addition, ████████████████

13 ████████████████."[28]

14     ***Benchmark and its Capacitor Purchases.***  Benchmark is a Texas corporation with its

15 principal place of business in Tempe, Arizona.[29]  Benchmark "is a full-service electronic

16 manufacturing services company and is a major purchaser of electronic components, including

17 capacitors, in the U.S."[30]  Benchmark ████████████████

18 ████████████████████████.[31]

---

[22] *Id.* at 338:10-344:17; Ex. 6 (Johnson Dep.) at 160:17-167:1, 256:11-256:25.

[23] Ex. 5 (Jablansky Dep.) at 367:7-369:3, 382:2-383:18 ("████████████████████"),
171:17-173:16, 154:12-155:8.

[24] Case No. 3:18-cv-02657-JD, Arrow Complaint ("Arrow Compl.") (ECF No. 1) ¶ 29.

[25] *Id.*

[26] Ex. 7 (Deposition of Vince Pastor ("Pastor Dep.")) at 122:8-12.

[27] *Id.* at 137:7-138:16, 141:16-142:18.

[28] *Id.* at 157:2-22.

[29] Case No. 17-cv-7047-JD, Benchmark Complaint ("Benchmark Compl.") (ECF No. 1) at
¶ 28.

[30] *Id.*

[31] Ex. 8 (Deposition of Shabnam Shaghafi ("Shaghafi Dep.")) at 148:9-13, 275:5-25
(testifying that ████████████████████

1   But Benchmark ███████████████████████████████████████

2   ████████████████████[32]

3        As a major electronic manufacturing services ("EMS") company, Benchmark ████

4   ██████████████████████████████████████[33]██████

5   ██████████████████████████████████████████████████

6   ████████████████████████████████████████[34]  As is

7   common in the EMS industry, ████████████████████████

8   ██████████████████████████████████████████████████

9   ████████████████████[35]  Benchmark also ███████████

10  ██████████████████████████████████████████████████

11  ████████████████████[36]  When negotiating with distributors, ███████████████

12  ████████████████████████████████████████████[37]

13        ***The Alleged Conspiracy and DAPs' Theory of Harm.***  DAPs allege a broad, overarching

14  conspiracy between about twenty-two capacitor manufacturers to fix the prices of all the

15  aluminum, tantalum and film capacitors they sold between September 1997 and March 2014.[38]

16  _____

17        [32] *Id.* at 131:25-143:2.

        [33] *Id.* at 26:20-25, 94:11-95:12 (████████████████████████████████████

18  ███████████████████████████████████████████"), 126:24-
    127:3, 241:4-244:11 (testifying that ████████████████████

19  ██████████████; *Id.* at 321:24-325:1, 99:6-18, 101:21-102:1, 303:9-304:21,
    383:11-385:18 (testifying that ████████████████████████

20  ████████████████████████████████).

        [34] *Id.* at 118:19-123:13, 162:10-165:2.

21        [35] *Id.*  at 149:11-154:18, 157:14-158:17, 160:1-161:20 (testifying that █████████████

22  ████████████████████████████), 168:7-23 (testifying that prices
    ████████████████████████; Ex. 9 (Deposition of Matthew

23  Cross ("Cross Dep.")) at 58:16-59:7 (testifying that ████████████████████████
    ██████████████████████████").

24        [36] Ex. 8 (Shaghafi Dep.) at 199:18-200:20, 210:18-25, 211:15-217:20, 237:20-240:15; Ex.
    9 (Cross Dep.) at 141:9-146:17.

25        [37] Ex. 9 (Cross Dep.) at 143:22-146:17 (██████████████████████████████

26  ██████████████████████████████████████████████);
    Ex. 8 (Shaghafi Dep.) at 252:1-253:24.

27        [38] AASI Compl. at ¶ 1; Benchmark Compl. at ¶ 1.  Avnet alleges a different "Conspiracy
    Period" of November 2001 through January 2014, Avnet Compl. at ¶ 1, which is the period that

28  DAPs' expert chose to use in her regression model.

1    DAPs allege that this conspiracy was carried out through "regular and ad hoc group and bilateral

2    meetings and communications during which [Defendants] discussed and coordinated strategy for

3    achieving their desired anti-competitive ends."[39]  DAPs' allegations and evidence relate, almost

4    exclusively, to meetings and communications between Japanese capacitor manufacturers in

5    Japan.[40]  DAPs also rely upon the investigation of the Antitrust Division of the United States

6    Department of Justice ("DOJ"), which resulted in several Japanese capacitor manufacturers

7    entering into plea agreements regarding meetings and communications in Japan about sales of

8    "certain" aluminum and tantalum capacitors, as described below.[41]

9        DAPs each allege that they purchased aluminum, tantalum and/or film capacitors in the

10   United States directly from Defendants at supracompetitive prices.[42]  In discovery, DAPs asserted

11   that *each and every* aluminum, tantalum and film capacitor they purchased from Defendants

12   during the relevant time period was at an inflated price due to the alleged conspiracy.[43]  DAPs'

13   economist, Leslie M. Marx, PhD, assumed this allegation to be true and opined that

14

15

16                                                                                  [44]

17       ***DOJ's Investigation and Resulting Evidence.***  In early-2014, DOJ launched its

18   investigation of alleged collusion among Japanese capacitor manufacturers.  As a result, eight

19   capacitor manufacturers entered into plea agreements with DOJ regarding the sale of "certain"

20   aluminum and/or tantalum capacitors sold in the "United States and elsewhere" during varying

21

22       [39] Avnet Compl. at ¶ 7; AASI Compl. at ¶ 7; Benchmark Compl. at ¶ 7.

23       [40] Avnet Compl. at ¶¶ 133-185; AASI Compl. at ¶¶ 148-196; Benchmark Compl. at ¶¶ 157-205.

24       [41] Avnet Compl. at ¶¶ 13-22; AASI Compl. at ¶¶ 13-19; Benchmark Compl. at ¶¶ 13-21.

25       [42] Avnet Compl. at ¶ 23; AASI Compl. at ¶ 20; Benchmark Compl. at ¶ 22.

26       [43] When asked in discovery to identify the capacitor purchases on which Plaintiffs were asserting claims for damages, Plaintiffs directed Defendants to their "transactional data reflecting [their] purchases of Capacitors during the Relevant Time Period," meaning all of their purchases

27   of aluminum, tantalum and film capacitors.  *See e.g.*, Ex. 10, Avnet's Objections and Responses to Defendants' First Set of Interrogatories, Response to Interrogatory Nos. 1, 2, 4, 5.

28       [44] Ex. 11 (Deposition of Leslie M. Marx, Ph.D. ("Marx Depo.")) at 203:22-204:3.

1  time periods.[45]  In addition, Panasonic / Sanyo applied for, and received on a conditional basis,

2  leniency from DOJ under the Antitrust Criminal Penalty Enforcement and Reform Act.[46]  DOJ,

3  however, has explained to this Court that the charges supporting, and the factual bases

4  underlying, the plea agreements relate only to "certain" sales and customers – "[n]ot all [] U.S.

5  customers were necessarily victims."[47]

6       In January 2016, DOJ closed its investigation of the film capacitors industry without

7  taking any action, and none of the plea agreements refer to film capacitors at all.[48]  In addition,

8  evidence gathered during the civil litigation indicates that the factual bases underlying certain of

9  the plea agreements were not nearly as broad or all-encompassing as the conspiracy alleged by

10  DAPs.  The conduct did not extend beyond Japanese aluminum and tantalum capacitor

11  manufacturers, and the conduct related primarily to customers in Asia, not DAPs.[49]

12      [45] *See* NEC Tokin Corporation (Case No. 15-cr-426), Hitachi Chemical Co., Ltd. (Case
No. 16-cr-180), ELNA Co., Ltd. (Case No. 16-cr-365), Holy Stone Holdings Co., Ltd. (Case No.

13  16-cr-366), Rubycon Corporation (Case No. 16-cr-367), Nichicon Corporation (Case No. 17-cr-
368), Matsuo Electric Co. Ltd. (Case No. 17-cr-73), and Nippon Chemi-Con Corporation (Case

14  No. 17-cr-540); *see also* Order Re Direct Purchaser Plaintiffs Class Certification Motion ("Class
Cert. Order") (ECF No. 385) at 8.

15      [46] Class Cert. Order at 8.

16      [47] *United States v. Elna Co., Ltd.*, 4:16-cr-00365-JD, United States Memorandum Re
Restitution (ECF No. 65) at 3 (noting that "the affected volume of commerce was not as broad as

17  all U.S. sales. . . ."); *see also United States v. Holy Stone Holdings Co., Ltd.*, 4:16-cr-0366-JD,
United States' Supplemental Sentencing Memorandum (ECF No. 16) at 4 ("Defendant Holy

18  Stone's volume of affected commerce is based entirely on sales to the one United States customer
for which Holy Stone Japan was responsible for negotiating prices."); *United States v. Nippon*

19  *Chemi-Con*, 4:17-cr-00540-JD, Plea Agreement (ECF No. 54) at ¶4(b) (explaining that the DOJ
specifically carved out of NCC's plea any capacitors manufactured by its American subsidiary,

20  describing the conspiracy as an agreement "to fix the price and/or rig bids of certain electrolytic
capacitors manufactured outside of the United States," and not those manufactured inside the

21  United States).

      [48] *See* Ex. 12 (composite of letters from the Department of Justice, previously marked in

22  this litigation as Deposition Exhibits 9018-9021).

      [49] *See* Ex. 13 (Depositions of Kent Sterrett ("Sterrett Dep.")) at 95:24-96:14, 133:11-25

23  (testifying that ▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        Ex. 14 (Deposition of Kevin Sheldon ("Sheldon Dep.")) at 714:21-715:15 (testifying

25  that ▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 15 (Deposition of Shuji Takada ("Takada
Dep.")) at 70:10-72:22, 67:16-69:21, 56:11-57:3, 75:23-78:10, 137:2-8, 288:24-292:19 (testifying

27  that the factual basis underlying the Holy Stone's plea agreement were discussions in the Summer
of 2010 between Holy Stone Polytech Co., Ltd. employees and the employee of a single Japanese

28  tantalum capacitor manufacturer, Matsuo, regarding several customers located in Asia); Ex. 16
(Deposition of Hiroyuki Koga ("Koga Dep.")) at 85:2-14, 90:8-91:16, 96:16-97:9 (testifying that

1

## ARGUMENT

2     "Causal antitrust injury is an essential element of any remedy under the Sherman Act."

3 *Northwest Publ'ns*, 752 F.2d at 476. This is because private plaintiffs can only recover for

4 injuries suffered "by reason of" a violation of the antitrust laws. 15 U.S.C. § 15(a). "Even if a

5 defendant's acts are shown to be violative of the statute, therefore, a plaintiff may not recover

6 unless a nexus of its own injury is also demonstrated." *Sound Ship Bldg. Corp. v. Bethlehem*

7 *Steel Co.*, 533 F.2d 96, 98 (3d Cir. 1976); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395

8 U.S. 100, 114 n.9 (1969). Thus, the question presented in this Motion is whether a reasonable

9 trier of fact could conclude, on the record as a whole, that Defendants "entered into an illegal

10 conspiracy that caused [the DAPs] to suffer a cognizable injury." *Matsushita Elec. Indus. Co. v.*

11 *Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

12     To establish a "causal antitrust injury," DAPs must show "with reasonable probability"

13 that "the alleged anticompetitive activity was a material cause of the injury" alleged. *Catlin*, 791

14 F.2d at 1347 (internal quotation marks omitted); *Oregon Laborers-Emp'rs Health & Welfare Tr.*

15 *Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963 (9th Cir. 1999) (a direct relationship between

16 injury and alleged wrongdoing is a central element of an antitrust claim). To satisfy this burden,

17 DAPs must "develop a theory or … set out … facts … which would show a causal link between

18 [Defendants'] acts and [the DAPs'] losses." *Sound Ship*, 533 F.2d at 98. This showing "may not

19 be based on speculation. The required causal link must be proved as a matter of fact and with a

20 fair degree of certainty." *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307,

21 1321 (5th Cir. 1976) (internal quotation marks omitted); Catlin, 791 F.2d at 1347.

22     Because DAPs bear the burden of proof on each element of their antitrust claims, *see*

23 *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984), Defendants may carry their

24

25 (continued…)

26 ████████████████████████████████████████████

27 ███████████████████████: Ex. 17 (Deposition of Hiroshi Fujisaku ("Fujisaku Dep.")) at

    36:5-24 (testifying that █████████

28 ████████████████████████████

initial burden under Rule 56 by simply "showing—that is, pointing out to the district court—that there is an absence of evidence to support" Plaintiffs' claims of injury.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105 (9th Cir. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); Fed. R. Civ. P. 56(a) (summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Alternatively, Defendants may present evidence "negating" DAPs' claim.  *Nissan Fire*, 210 F.3d at 1106.  Defendants have met their burden under both *Nissan Fire* standards, as set forth below.

# I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL OF DAPS' CLAIMS BECAUSE DAPS CANNOT RAISE A GENUINE ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF A CONSPIRACY RESULTING IN HARM TO THEM.

DAPs seek to present claims at trial that they suffered an overcharge on all of their capacitor purchases from Defendants.  No reasonable jury, however, could reach this conclusion based on the evidence that exists.  There is no evidence that Defendants targeted sales to DAPs and then followed through on a collusive agreement to fix prices charged to DAPs.  Nor is there evidence that DAPs were among the types of purchasers contemplated by Defendants' allegedly-collusive conduct, or evidence of some mechanism that caused DAPs to suffer harm from such conduct.  There is, instead, significant evidence that DAPs regularly minimized the capacitor prices they paid through a number of negotiating tactics.  Finally, DAPs have no expert testimony based on record evidence or "market facts" that causally links Defendants' alleged conduct overseas to an overcharge on each and every one of DAPs' purchases from Defendants in the United States.  Summary judgment for Defendants is, therefore, appropriate.

## A.   There Is No Evidence Causally Connecting Defendants' Conduct And DAPs' Alleged Injury.

Again, to succeed on their claims, DAPs must "show with ***reasonable probability*** some causal connection between the antitrust violation and a loss of income."  *Catlin*, 791 F.2d at 1347 (citation omitted, emphasis in original).  One way DAPs could potentially establish that they suffered injury as a result of the alleged conspiracy would be to present evidence that Defendants took some collusive action aimed at DAPs. *In re Optical Disk Drive Antitrust Litig.*, 2017 U.S.

Dist. LEXIS 222996, at *37 (N.D. Cal. Dec. 18, 2017) (explaining that evidence of injury may include "anti-competitive behavior directed explicitly at [the plaintiff].")  There is, however, no direct or circumstantial evidence that Defendants colluded regarding sales to DAPs.

Indeed, in the millions of documents that have been produced in this litigation, *not a single one* evidences communications, much less an agreement, among Defendants regarding sales to DAPs.  Likewise, the scores of depositions taken in this case do not provide any evidence that Defendants targeted, conspired regarding or even discussed DAPs.  DAPs' own expert, Dr. Marx █████████████████████████████████████████████████████████████████ ████████████████████████████[50]  This lack of evidence is not particularly surprising given the fact that DAPs, along with Flextronics, █████████████████████████████████ ██████████████████████[51] ██████████████████████████████████████████ ██████████████████[52]

Perhaps another way that DAPs could attempt to establish causation would be to come forward with evidence that they were among the type of capacitor purchasers that were the subject of Defendants' allegedly-collusive conduct, or evidence of some market mechanism that caused them harm from such conduct.  This, DAPs cannot do either.

Virtually all of the evidence about meetings and communications among capacitor suppliers relates to meetings and communications in Japan among Japanese manufacturers focused on capacitors sold to customers in Japan and other Asian countries.  What is missing – for purposes of DAPs being able to establish injury – is evidence of collusion regarding capacitor sales to distributors or EMS companies located in the United States, or evidence of an agreement on across-the-board prices for all types of capacitors sold to United States companies, or evidence that the Defendants' capacitor prices in the United States were benchmarked off of or otherwise influenced by those charged in Asia.  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir.

[50] Ex. 11 (Marx Dep.) at 89:17-90:22.
[51] *Id.* at 21:22-22:9, 45:11-25.
[52] Ex. 1 (Arena Dep.) at 77:14-25 (██████████████████████████████████ █████ Ex. 5 (Jablansky Dep.) at 221:4-223:5 ███████████████████████████ ██████████ Ex. 9 (Cross Dep.) at 66:18-67:10

1  1999) ("to survive summary judgment, there must be evidence that the exchanges of information

2  had an impact on pricing decisions").

3        Without evidence that Defendants' allegedly-collusive conduct was aimed at DAPs or

4  evidence that DAPs were among the types of purchasers contemplated by Defendants' allegedly-

5  collusive conduct, DAPs have no evidentiary basis to support their allegations of harm.  Put

6  another way, DAPs cannot establish "with reasonable probability" that they paid inflated prices

7  on all of their capacitor purchases in the United States because of Defendants' conduct in Asia.

8  *Catlin*, 791 F.2d at 1347 (affirming District Court's rejection of the plaintiff's antitrust claims

9  because "[n]o causal connection to [the defendant's] conduct was demonstrated"); *Oregon*

10  *Laborers-Emp'rs Health & Welfare Tr. Fund*, 185 F.3d at 963 ("A direct relationship between the

11  injury and the alleged wrongdoing, although not the sole requirement of RICO and antitrust

12  proximate causation, has been one of its central elements.") (internal quotation marks and citation

13  omitted); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (affirming grant of

14  summary judgment based on the plaintiffs' failure to "make a showing sufficient to establish the

15  amount, causation, or fact of damages").

16        DAPs' inability to establish causal antitrust injury is extremely similar to that evaluated by

17  Judge Seeborg in *In re Optical Disk Drive Antitrust Litigation*.  In that case, retailers Circuit City

18  and RadioShack brought antitrust actions claiming they paid inflated prices on optical disk drives

19  as a result of price fixing and bid rigging aimed at computer OEMs, such as Dell and HP.  *In re*

20  *Optical Disk Drive Antitrust Litig.*, 2017 U.S. Dist. LEXIS 209282, *26-27 (N.D. Cal. 2017).

21  Judge Seeborg, however, granted summary judgment because Circuit City and RadioShack could

22  not "explain any theory as to how the conspiracy would have affected customers other than those

23  specifically targeted, let alone present any evidence that this actually occurred."  *Id.* at *33.  In a

24  related case brought by computer OEM Acer, Judge Seeborg likewise granted summary judgment

25  because "Acer failed to produce evidence that it was a target of the alleged conspiracy and failed

26  to show that the prices it paid for optical disk drives were related to those charged to other OEMs

27  that were allegedly targeted."  *In re Optical Disk Drive Antitrust Litig.*, 2017 U.S. Dist. LEXIS

28  222996, at *37.

The same is true here.  DAPs have no factually-supported theory or evidence explaining how the prices they paid in the United States on all of their capacitor purchases from Defendants could have been inflated by Defendants' alleged conduct in Asia regarding Asian customers.

**B.      The Evidence Establishes That DAPs, With Their Purchasing Power And Unique Procurement Processes, Avoided Any Overcharges On Capacitors.**

Another reason DAPs cannot link their alleged injury to the alleged conspiracy is because the evidence establishes that DAPs' purchasing power, unique procurement processes and mix of capacitor suppliers allowed DAPs to minimize the prices they paid for capacitors and avoid any overcharges.  The Ninth Circuit has found this type of evidence persuasive in evaluating whether antitrust plaintiffs can satisfy the injury-in-fact element on summary judgment.  In *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008), for example, the plaintiff alleged that he had paid supra-competitive prices for books due to an anticompetitive agreement between booksellers, Amazon.com and Borders.  But the Ninth Circuit affirmed summary judgment on the plaintiff's antitrust claims for failure to establish an injury-in-fact based on evidence that prices the plaintiff paid were the same or even lower than what he had paid before the alleged violation. *Id.* at 1255-56; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 922-24 (affirming summary judgment on antitrust claims where there was evidence that the plaintiffs did not pay supracompetitive prices and therefore did not suffer an injury-in-fact).

Here, there is significant evidence that DAPs were able to negotiate price discounts from its capacitor suppliers through a number of different mechanisms.  As an initial matter, each of the DAPs ██████████████████████████████████████████████[53]███████████████████████
████████████████████████████████████████████████████████████████████████████████

██████████████████.[54]  In addition to their purchasing power, DAPs used a number of other techniques

[53] Avnet Compl. at ¶ 29; AASI Compl. at ¶ 26; Benchmark Compl. at ¶ 28; Ex. 1 (Arena Dep.) at 49:19-50:4, 149:3-13; Ex. 2 (Fay Dep.) at 88:14-89:17 (testifying that ████████████████████████████████████████████████████████████████████████; Arrow Complaint at ¶ 29.

[54] Ex. 8 (Shaghafi Depo.) at 241:4-244:11 (testifying that ██████████████████████████████████████████████████████████; Ex. 5 (Jablansky Depo.) at 148:17-153:25, 161:15-163:13 (testifying that ██████████████████████████████████████████████████████████████████; Ex. 1 (Arena Depo.) at 127:4-25 (testifying that █████████████████████████████████).

1  to further reduce the capacitor prices they ultimately paid.  For instance, Avnet "▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[55]  AASI ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[56]

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[57]  As is

6  common in the EMS industry, Benchmark ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮[58]  And as is also common in the purchase of electronic components, DAPs ▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[59]

11         In addition, the mix of capacitor suppliers engaged by DAPs also suggests that Defendants

12  could not have been able to saddle DAPs with the types of overcharges they allege.  For example,

13  AASI ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[60]

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮[61]  Likewise, Avnet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  [55] Ex. 2 (Fay Depo.) at 99:10-23 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 1 (Arena Depo.) at 140:4-142:17; Ex. 3

17  (Ulch Dep.) at 82:3-84:5 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 7 (Pastor Dep.) at 137:7-138:16,

18  141:16-142:18.

19  [56] Ex. 5 (Jablansky Depo.) at 303:20-307:13, 319:8-321:12, 324:3-325:5.

   [57] *Id.* at 338:10-344:17; Ex. 6 (Johnson Dep.) at 160:17-167:1, 256:11-256:25.

20  [58] Ex. 8 (Shaghafi Dep.) at 149:11-154:18, 157:14-158:17, 160:1-161:20 (testifying that

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), 168:7-23 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 9 (Cross

   Depo.) at 58:16-59:7 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮"); Ex. 8 (Shaghafi Dep.) at 321:24-325:1, 99:6-18, 101:21-

   102:1, 303:9-304:21, 383:11-385:18 (testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

24  [59] Ex. 1 (Arena Dep.) at 155:3-17 (as to Avnet); Ex. 3 (Ulch Dep.) at 84:10-85:24 (as to

   Avnet); Ex. 5 (Jablansky Dep.) at 367:7-369:3 (as to AASI), 382:2-383:18 ("▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), 171:17-173:16, 154:12-155:8; Ex. 9 (Cross Dep.) at 143:22-146:17 (as to

26  Benchmark) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 8 (Shaghafi Dep.) at

27  252:1-253:24 (as to Benchmark); Ex. 7 (Pastor Dep.) at 157:2-22 (as to Arrow).

   [60] Ex. 5 (Jablansky Dep.) at 363:13-365:5.

28  [61] Ex. 5 (Jablansky Dep.) at 217:18-23, 223: 21-225:19, 191:12-199:6; Ex. 6 (Johnson

1  ███████████████████████████████████████ [62] ██████

2  ██████████████████████████████████████████████████

3  ████████████████ [63]  Benchmark ████████████████████████

4  ██████████████████████████████████████████████

5  ██████████████████████████████████████████ [64]

6       All of this evidence makes clear that – even if DAPs were an object of the alleged

7  conspiracy, which is not supported by the record – Defendants would have been unable to extract

8  the overcharges that DAPs allege.  More importantly, all of this evidence establishes that a

9  reasonable jury could not find that DAPs were overcharged on each and every one of their

10  capacitor purchases from Defendants, which is the case DAPs plan to present to the jury.

11  *Matsushita*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of

12  fact to find for the non-moving party, there is no 'genuine issue for trial.'" (citation omitted));

13  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (on

14  summary judgment the Court must "determine whether the 'specific facts' set forth by the

15  nonmoving party, coupled with undisputed background or contextual facts, are such that a

16  rational or reasonable jury might return a verdict in its favor based on that evidence.")

17       **C.      Dr. Marx's Opinions Cannot Establish Causation Or Injury.**

18       Critical to this Motion is the legal principle that "the mere proffering of unsupported

19  expert testimony does not create a triable issue as to antitrust injury-in-fact."  *In re Online DVD-

20  Rental Antitrust Litig.*, 779 F.3d at 923.  Indeed, "[e]xpert testimony is useful as a guide to

21  interpreting market facts, but it is not a substitute for them," *Brooke Grp. Ltd. v. Brown &

22  Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993), and it is well-settled that expert opinions

23

24  (continued…)

25  Dep.) at 83:6-87:19, 102:19-103:22; 150:14-154:22.

         [62] Ex. 1 (Arena Dep.) at 77:14-25.

26       [63] *Id.* at 159:20-24; Ex. 2 (Fay Dep.) at 95:14-96:24; Ex. 3 (Ulch Dep.) at 65:23-67:16;

27  Ex. 4 (Marx Report) at p. 69, Figure 28.

         [64] Ex. 8 (Shaghafi Dep.) at 199:18-200:20, 210:18-25, 211:15-217:20, 237:20-240:15; Ex.

28  9 (Cross Dep.) at 141:9-146:17.

1  lacking record support cannot defeat summary judgment. *See, e.g., Baby Food*, 166 F.3d at 135

2  (rejecting at summary judgment expert's economic theory and assumptions that were not

3  supported by actual record evidence); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107

4  F.3d 1026, 1040 (3d Cir. 1997) (disregarding expert's report that was based on general and

5  theoretical observations and not tied to evidence in the record, and affirming summary judgment).

6       Yet this is precisely what DAPs will attempt to do with Dr. Marx. At deposition, Dr.

7  Marx █████████████████████████████████████████████████████████████████

8  ████████████:

9

10

11

12

13

14

15

16  Dr. Marx, however, ███████████████████████████████████████████████████████

17  ██████████. As set forth above, there is no evidence that Defendants targeted sales to DAPs and

18  then followed through on a collusive agreement to fix prices charged to DAPs. Indeed, there is

19  not a single document, or line of deposition testimony, that evidences Defendants ever discussing

20  sales to the DAPs, which Dr. Marx concedes.[66] Likewise, there is no evidence that DAPs were

21  _____

22  [65] Ex. 11 (Marx Dep.) at 133:1-16, 150:13-15 ("██████████████████████████████████

23  ████████████████████"); *id.* at 203:22-204:3 ("██████████████████████████

24  ████"); *id.* at 206:18-21 (███████████████████████████); *id.* at 297:6-8 ("█████████

25  ████████████").

26  [66] *Id.* at 89:17-90:22 (████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████").

1  among the types of purchasers contemplated by Defendants' allegedly-collusive conduct or

2  victims of that conduct.  And Dr. Marx offers no record evidence or "market facts" to causally

3  link the Defendants' alleged conduct overseas and the alleged overcharge on each and every one

4  of DAPs purchases from Defendants in the United States, as necessary for Dr. Marx to offer the

5  causation opinion DAPs want her to offer.  *Brooke Grp.*, 509 U.S. at 242.  In fact, Dr. Marx

6  testified ███████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████[67]

8          Moreover, the Court should decline to consider Dr. Marx's opinion on causation because

9  it is unreliable and not "grounded in the economic reality of the [capacitors] market."  *Concord*

10  *Boat Corp. v. Brunswick Corp.*, 207 F,3d 1039, 1056 (8th Cir. 2000) (directing a verdict for the

11  defendant where the jury verdict was only supported by expert opinion that "ignored inconvenient

12  evidence"); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1045-46

13  (N.D. Cal. 2011) (the District Court may "decline to consider expert testimony on summary

14  judgment [] where it is unreliable or misleading.").  For example, Dr. Marx ██████████████

15  ████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████[68]  Nor did Dr. Marx evaluate the

17  manner in which Defendants priced their capacitors.[69]  In fact, Dr. Marx does not even analyze, or

18  consider, the actual prices charged by Defendants to the individual DAPs, despite having all of

19  the data available to her.  Instead, she █████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████[70]  In other words, Dr. Marx does not look to see

22  what DAPs actually paid for capacitors in relation to other purchasers, she just lumps them all

23  [67] *Id.* at 205:13-17 ███████████████████████████████

    ███████").

24  [68] *Id.* at 83:8-12 ("████████████████████████████████████████████

25  ████████████████████████████.").

26  [69] For example, Dr. Marx testified ████████████████████████████████████████

27  ████████████████████████████████████████████  *Id.* at 364:6-372:15.

28  [70] *Id.* at 24:22-25:1.

1  together to calculate an overcharge.  And there certainly are other flaws in Dr. Marx's analysis

2  that render her model unreliable, as set forth in the concurrently-filed Motion to Exclude Dr.

3  Marx's opinion.

4        Again, Judge Seeborg addressed similar situations in *In re Optical Disk Drive Litigation*.

5  There, because "Acer point[ed] to no direct evidence supporting its theory of harm," Acer offered

6  "the expert report of Dr. Macartney, who present[ed] six theories as to how the conspiracy

7  increased the prices of ODDs purchased by Acer."  *In re Optical Disk Drive Antitrust Litig.*, 2017

8  U.S. Dist. LEXIS 222996 at *37.  But Judge Seeborg found that Dr. Macartney's opinion could

9  not create a genuine issue of material fact as to causation because "Dr. Macartney's opinion is

10  just that--an opinion--which fails to highlight the necessary facts and supporting evidence that

11  such a genuine issue exists . . . Moreover, the facts that do exist in the record undermine his

12  theories."  *Id*. at 42.  Thus, "Acer fail[ed] to show specific evidence creating a genuine issue of

13  material fact as to causation of a cognizable injury," and summary judgment was granted.  *Id*. at

14  *43.

15        Likewise, in the same case, the indirect purchaser plaintiffs were "unable to meet their

16  burden of showing a genuine issue of material fact as to pass-through, which underlie[d] their

17  theory of causation, injury, and damages," so they offered the testimony of their expert, Dr.

18  Flamm, on these elements.  *In re Optical Disk Drive Antitrust Litig.*, 2017 U.S. Dist. LEXIS

19  209281, at *53 (N.D. Cal. Dec. 18, 2017).  Judge Seeborg, however, declined to accept this expert

20  testimony:  "While Dr. Flamm's report conveniently theorizes 100% pass-through at every stage

21  in the distribution chain, his opinion does not point to, and cannot substitute for, evidence

22  showing the disputed facts required to survive summary judgment."  *Id*. at *53-54; *In re New*

23  *Motor Vehicles Canadian Exp. Antitrust Litig.*, 632 F. Supp. 2d 42, 56, 62-63 (D. Me. 2009)

24  (granting summary judgment where plaintiffs' expert simply "infer[red]" impact).

25        Like those plaintiffs, DAPs cannot rely on Dr. Marx to bridge the gap in evidence and

26  market facts as to causation.  Without proof of concrete injury, DAPs' claims cannot proceed to a

27  jury.

28

II.   **IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED ON DAPS' CLAIMS BASED ON PURCHASES FROM KEMET AND AVX AS WELL AS PURCHASES OF FILM CAPACITORS.**

If the Court is not inclined to grant Defendants' Motion based on a lack of evidence of a causal injury, DAPs' claims should nevertheless be tailored to reflect the evidence of conspiracy. As set forth in the individual Motions for Summary Judgment brought by KEMET and AVX, there is insufficient evidence of them joining or participating in a conspiracy to fix the prices of capacitors sold to DAPs, or anyone else. Thus, partial summary judgment should be granted to exclude KEMET and AVX sales from DAPs' claims.[71]

DAPs' complaints are undeniably premised on evidence of group meetings among Japanese manufacturers in Asia and government investigations of those meetings. But a rational jury could not conclude that AVX and KEMET attended any of those meetings. The discussions at those meetings and the identities of the meeting participants are recorded in detailed meeting reports covering the entire relevant time period.[72] Yet in the ***hundreds*** of meeting minutes, summaries, and notes of those communications there is no record of KEMET or AVX ever attending. Indeed, DAPs' own expert readily acknowledged at deposition ██████████████

████████████████████████████████████████████████████████████

████ [73] This dearth of evidence is corroborated by the fact that neither KEMET nor AVX were prosecuted by DOJ or any other antitrust enforcement agency that investigated the capacitors industry, including those in Japan, Korea, Taiwan, Singapore, Brazil, and Europe.

An additional reason why a reasonable jury could not conclude that KEMET and AVX joined the alleged conspiracy is because there is direct evidence that they did not. For instance

---

[71] Partial summary judgment may also be entered on claims relating to DAPs' purchases from Nichicon (America) Corporation, United Chemi-Con, Milestone Global Technology (d/b/a HolyStone International), and Hitachi Chemical Co. America, Ltd., all of which have filed their own Motions for Summary Judgment due to a lack of evidence that they participated in the alleged conspiracy.

[72] Rubycon alone produced detailed reports from more than 300 of these meetings.

[73] Ex. 11 (Marx Dep.) at 192:23-193:20 ████████████████████████ ██████████████████████████████████████████████████████████ "); *id.* at 175:1-22 ██████████████████████████ ; *id.* at 223:8-225:21 ████████████████████████████████████████████████████████████████████████ ; *id.* at 225:23-226:6 ████████████████████████████████████████████ ████████████████████████

1  there are documents authored by individuals who attended the group meetings in Japan stating

2  that: "██████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████"[74]  Likewise, individuals who attended the Japanese group meetings

5  uniformly testified ████████████████████████████████████████████████████

6  ████████[75]  In addition, corporate representatives for Defendants that were prosecuted by

7  DOJ or fined by foreign regulators have unequivocally asserted ██████████████████████

8  ████████████[76]  All of this justifies a grant of partial summary judgment on DAPs'

9  claims based on purchases from KEMET and AVX.

10        Likewise, partial summary judgment of DAPs' claims based on their purchases of film

11  capacitors should also be granted in Defendants' favor.  As set forth in the Film-Only

12  Defendants' Motion for Summary Judgment, there is insufficient evidence of a conspiracy

13  involving film capacitors, and DAPs's claims against other Defendants should reflect that reality.

14

15

16

---

17    [74] Ex. 18 (RUB_003354745 at 746-747, previously marked in this litigation as Deposition
Exhibit 8253).

18    [75] For example, Mr. Kazuhiko Mitsuhori, a senior Rubycon sales representative who
attended multiple "group" meetings, testified that ████████████████████████████████
19  ████████████████████████████████████████████████████ Ex. 19
(Deposition of Kazuhiko Mitsuhori ("Mitsuhori Dep.")) at 289:13-290:3.  Mr. Mitsuhori also
20  testified ████████████████████████████████████████████████████████
████████████████████████████████████████████████████ *Id.* at 292:2-
21  8.  Similarly, when Mr. Akira Nakayama, another senior Rubycon attendee at group meetings,
22  ████████████he testified, ████████████████████████████████████████████
████████████████████████" Ex. 20 (Deposition Transcript of Akira Nakayama ("Nakayama Dep.")) at
23  281:22-282:16.

24    [76] The corporate 30(b)(6) witnesses of Panasonic, NCC, Nichicon, Hitachi, Matsuo, and
Elna consistently testified ████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████ Ex. 21 (Deposition
Satoshi (Leo) Komoda) at 288:1-21; Ex. 14, (Sheldon Dep.) at 739-747; Ex. 17 (Fujisaku Dep.) at
27  225-228; Ex. 16 (Koga Dep.) at 277-279; Ex. 13 (Sterret Dep.) at 411-423; Ex. 22 (Deposition of
28  ████████████████████████████████ Ex. 23 (Deposition of Shinichi Torii) at 29:24-30:1.

1

**CONCLUSION**

2

For the foregoing reasons, Defendants respectfully request that the Court grant this Court

3

grant this Motion because DAPs have no factually-supported theory or evidence demonstrating

4

that the prices they paid in the United States on all of their capacitor purchases from Defendants

5

were inflated by the alleged conspiracy.  Alternatively, Defendants' respectfully request that the

6

Court grant partial summary judgment on DAPs' claims based on sales from KEMET, AVX, and

7

other United States-based Defendants, as well as DAPs' purchases of film capacitors.

8

9

DATED:   June 14, 2019                      RESPECTFULLY SUBMITTED

10

JONES DAY

11

12

By:  */s/ Eric P. Enson*
      Eric P. Enson

13

Attorneys for Defendants

14

HOLY STONE ENTERPRISE CO., LTD.,
MILESTONE GLOBAL TECHNOLOGY, INC.
(D/B/A HOLYSTONE INTERNATIONAL),

15

VISHAY POLYTECH CO., LTD

16

DATED:   June 14, 2019                      WILMER CUTLER PICKERING
HALE AND DORR LLP

17

18

19

By:  */s/ Heather S. Nyong'o*
      Heather S. Nyong'o

20

Heather S. Nyong'o (CA SBN 222202)

21

heather.nyongo@wilmerhale.com
WILMER CUTLER PICKERING

22

HALE AND DORR LLP
1 Front Street, Suite 3500

23

San Francisco, CA 94111
Telephone: (628) 235-1000

24

Facsimile: (628) 235-1001

25

Thomas Mueller (*pro hac vice*)

26

thomas.mueller@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP

27

1875 Pennsylvania Avenue, NW
Washington, DC 20006

28

Telephone: (202) 663-6000

Certain Defendants' Motion for Summary
Judgment On DAPs' Claims
Master File No. 17-md-02801-JD

- 21 -

1   Facsimile: (202) 663-6363

2   Chris Johnstone (CA SBN 242152)
    WILMER CUTLER PICKERING
3   HALE AND DORR LLP
    950 Page Mill Road
4   Palo Alto, CA 94304
    chris.johnstone@wilmerhale.com
5   Telephone: (650) 858-6000
    Facsimile: (650) 858-6100
6
    *Counsel for Defendants Elna Co., Ltd. and Elna*
7   *America, Inc.*

8   DATED:   June 14, 2019        DENTONS US LLP
9

10                               By:  */s/ Bonnie Lau*
11                                    Bonnie Lau

12                               Bonnie Lau
                                 bonnie.lau@dentons.com
13                               DENTONS US LLP
                                 One Market Plaza
14                               Spear Tower, 24th Floor
                                 San Francisco, CA 94105
15                               Telephone:  (415) 882-5083
                                 Facsimile:   (415) 267-4198
16
                                 *Counsel for Matsuo Electric Co., Ltd.*
17

18  DATED:   June 14, 2019        PAUL, WEISS, RIFKIND, WHARTON &
19                               GARRISON LLP

20

21                               By:  */s/ Joseph J. Bial*
22                                    Joseph J. Bial

23                               Charles "Rick" Rule (admitted *pro hac vice*)
                                 Joseph J. Bial (admitted *pro hac vice*)
24                               2001 K Street, NW
                                 Washington, DC 20006
25                               Telephone:  (202) 223-7300
                                 Facsimile:  (202) 223-7430
26                               rrule@paulweiss.com
                                 jbial@paulweiss.com
27

28                               PAUL, WEISS, RIFKIND, WHARTON &

GARRISON LLP
Johan E. Tatoy (admitted *pro hac vice*)
Sara Hershman (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10128
Telephone:  (212) 373-3830
Facsimile:  (212) 757-3990
jtatoy@paulweiss.com
shershman@paulweiss.com

KAUFHOLD GASKIN LLP
Steven Kaufhold (SBN 157195)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 445-4621
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com
*Counsel for Defendants Nippon Chemi-Con Corp. and United Chemi-Con, Inc.*

DATED:   June 14, 2019                    WILSON SONSINI GOODRICH & ROSATI


                                         By: */s/ Jonathan M. Jacobson*
                                             Jonathan M. Jacobson

                                         WILSON SONSINI GOODRICH & ROSATI
                                         Professional Corporation
                                         Jonathan M. Jacobson
                                         Chul Pak (admitted *pro hac vice*)
                                         Jeffrey C. Bank (admitted *pro hac vice*)
                                         Justin A. Cohen (admitted *pro hac vice*)
                                         1301 Avenue of the Americas, 40th Floor
                                         New York, New York 10019
                                         Telephone:  (212) 497-7758
                                         Facsimile:  (212) 999-5899
                                         jjacobson@wsgr.com
                                         cpak@wsgr.com
                                         jbank@wsgr.com
                                         jcohen@wsgr.com


                                         Jeff VanHooreweghe (Bar No. 313371)
                                         One Market Plaza
                                         Spear Tower, Suite 3300
                                         San Francisco, California 94105
                                         Telephone:  (415) 947-2046
                                         Facsimile:  (415) 947-2099

jvanhooreweghe@wsgr.com

*Counsel for Defendants Hitachi Chemical Co., Ltd.,
Hitachi AIC Inc., and Hitachi Chemical Co. America,
Ltd.*

DATED:   June 14, 2019                    K&L GATES LLP


                                          By: */s/ Michael E. Martinez*
                                              Michael E. Martinez

                                          Michael E. Martinez (admitted pro hac vice)
                                          Scott M. Mendel (admitted pro hac vice)
                                          Steven M. Kowal (admitted pro hac vice)
                                          Lauren N. Donahue (admitted pro hac vice)
                                          Brian J. Smith (admitted pro hac vice)
                                          K&L GATES LLP
                                          70 West Madison Street, Suite 3300
                                          Chicago, IL  60602
                                          Telephone:  (312) 372-1121
                                          Facsimile:  (312) 827-8000
                                          michael.martinez@klgates.com
                                          scott.mendel@klgates.com
                                          steven.kowal@klgates.com
                                          lauren.donahue@klgates.com
                                          brian.j.smith@klgates.com

                                          Daniel W. Fox (SBN 268757)
                                          K&L GATES LLP
                                          4 Embarcadero Center, Suite 1200
                                          San Francisco, CA  94111
                                          Telephone:  (415) 882-8200
                                          Facsimile:  (415) 882-8220
                                          daniel.fox@klgates.com

                                          Philip Van Der Weele (admitted pro hac vice)
                                          K&L GATES LLP
                                          One SW Columbia Street, Suite 1900
                                          Portland, OR 97258
                                          Telephone: (503) 228-3200
                                          Facsimile: (503) 553-6227
                                          phil.vanderweele@klgates.com

                                          *Counsel for Defendants
                                          Nichicon Corporation and
                                          Nichicon (America) Corporation*

1

2

               By: */s/ Djordje Petkoski*
                    Djordje Petkoski

3

4

5

Djordje Petkoski (admitted pro hac vice)
David A. Higbee (admitted pro hac vice)
Ryan Shores (admitted pro hac vice)
Todd M. Stenerson (admitted pro hac vice)
Mark G. Weiss (admitted pro hac vice)
Deke Shearon (admitted pro hac vice)

6

7

8

9

10

11

401 9th St., NW
Washington, D.C.  20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
djordje.petkoski@shearman.com
david.higbee@shearman.com
ryan.shores@shearman.com
todd.stenerson@shearman.com
mark.weiss@shearman.com
deke.shearon@Shearman.com

12

13

14

John Cove (SBN 212213)
535 Mission Street, 25th Floor
San Francisco, California 94105
Telephone: (415) 616-1139
Facsimile: (415) 616-1199
john.cove@shearman.com

15

16

*Counsel for Defendants Rubycon Corporation and Rubycon America Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I, Eric P. Enson, declare:

3      I am a citizen of the United States and employed in Los Angeles County, California.  I am

4  over the age of eighteen years and not a party to the within-entitled action.  My business address

5  is 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300.  On June 14,

6  2019, I served a copy of:  **CERTAIN DEFENDANTS' MOTION FOR SUMMARY**

7  **JUDGMENT AND, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT ON**

8  **DIRECT ACTION PLAINTIFFS' CLAIMS** by electronic transmission.

9      I am familiar with the United States District Court, Northern District Of California San

10  Francisco Division's practice for collecting and processing electronic filings.  Under that practice,

11  documents are electronically filed with the court.  The court's CM/ECF system will generate a

12  Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users

13  in the case.  The NEF will constitute service of the document.  Registration as a CM/ECF user

14  constitutes consent to electronic service through the court's transmission facilities.

15

16      Executed on June 14, 2019, at Los Angeles, California.

17

18                                                      */s/ Eric P. Enson*
                                                        Eric P. Enson
19

20

21

22

23

24

25

26

27

28