Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Kyle P. Quackenbush (State Bar No. 322401)
Anupama K. Reddy (State Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
jdallal@saverilawfirm.com
kquackbush@saverilawfim.com
areddy@saverilawfirm.com

*Lead Counsel for Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO THE DIRECT PURCHASER CLASS ACTION | Master File No. 3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**REPLY IN SUPPORT OF DIRECT PURCHASER CLASS'S MOTION TO PARTIALLY EXCLUDE PROPOSED EXPERT TESTIMONY OF JANUSZ A. ORDOVER**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................2

    A. Defendants Cannot Repudiate Facts Admitted In NCC's Guilty Plea .........................2

    B. Defendants' Assumed Facts Are Not The Type Of Evidence On Which Economists Ordinarily Rely ...................................................................................4

    C. The Risk of Misleading The Jury Outweighs Any Probative Value Of The Challenged Opinion ......................................................................................................6

III. CONCLUSION ......................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avid Budget Group, Inc.,* 738 F.3d 960 (9th Cir. 2013) ................................5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ...............................................................1

*Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ....................................5

*In re NJOY, Inc. Consumer Class Action Litig.,* 120 F. Supp. 3d 1050 (C.D. Cal. 2015) ....................5

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ......................................................... 4, 5

*Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063 (N.D. Cal. May 11, 2017) .............................................................................................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055 (N.D. Cal. 2011) .........................6

*Therasense, Inc. v. Becton, Dickinson and Co.*, No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008) .................................................................................................. 1, 4

*United States v. De la Fuente*, 8 F.3d 1333 (9th Cir. 1993)..................................................................3

*United States v. Keller*, 902 F.2d 1391 (9th Cir. 1990) .......................................................................4

**Rules**

Fed. R. Evid. 104(a) ............................................................................................................................4

Fed. R. Evid. 403 .................................................................................................................................5

Fed. R. Evid. 703 .................................................................................................................................4

## I. INTRODUCTION

Defendants Nippon Chemi-Con Corporation ("NCC") and United Chemi-Con, Inc. ("UCC") (jointly, "Defendants") devote several pages of their opposition brief to repeating the opinions proffered by Dr. Janusz A. Ordover (Opp. at pp. 2-4) and the general standards governing expert testimony (Opp. at pp. 4-6). But they give limited attention to the very specific dispute raised by the Direct Purchaser Class ("DPC"). The problem with Dr. Ordover's challenged opinion is not that he relied on assumptions or hypothetical information, which would be permissible if that reliance were reasonable.[1] The issue is that the challenged opinion is based on a false assumption that is contrary to established facts. That is not permitted under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) or the Federal Rules of Evidence.

In this case, some unnamed attorney for Defendants instructed Dr. Ordover to assume facts that the Department of Justice ("DOJ") and this Court rejected in agreeing to accept NCC's guilty plea and sentencing NCC. Despite this, and for reasons unrelated to this motion, NCC still received a windfall in having its guilty plea accepted by the Court. Seeking to be the embodiment of the expression "don't look a gift horse in the mouth," Defendants now contradict the facts that NCC admitted before this Court claiming that NCC did not participate in a single conspiracy that lasted for at least eleven years (as it pled guilty to), but rather a few limited, sporadic instances of anticompetitive conduct. Dr. Ordover was asked to use that faulty premise in forming the challenged opinion that "[t]he episodes of price fixing to which NCC has pled guilty are unlikely to have had broad impacts given features of the marketplace." (Ordover Report, Section V, at pp. 20-27.) Economists ordinarily would not rely on untrue facts manufactured by counsel, presumably to advance a litigation objective. *See, e.g., Therasense, Inc. v. Becton, Dickinson and Co.*, No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008), at *1 ("One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an

---

[1] The DPC seeks exclusion of one opinion of Dr. Ordover, specifically his opinion that "[t]he episodes of price fixing to which NCC has pled guilty are unlikely to have had broad impacts given features of the marketplace." (Ordover Report, Section V, at pp. 20-27.)

opinion."). Accordingly, the challenged opinion lacks foundation and the DPC's motion to exclude should be granted.

## II. ARGUMENT

### A. Defendants Cannot Repudiate Facts Admitted In NCC's Guilty Plea

Defendants' attempt to characterize NCC's guilty plea as relating "only to narrow episodes of price fixing" (Opp. at p. 1:8-9) is not plausible. The only reasonable interpretation of the plea agreement is that NCC acknowledged participating in a continuous, long-running cartel impacting more than "a narrow set of products or customers."

NCC is one of eight co-conspirator Defendants that have entered guilty pleas in the United States. *See* Declaration of Anupama K. Reddy in Support of Direct Purchaser Class's Motion to Partially Exclude Proposed Expert Testimony of Janusz A. Ordover ("Reddy Decl."), Dkt. No. 669, at Exhibit B. In addition, four NCC executives — Takuro Isawa, Takeshi Matsuzaka, Yasutoshi Ohno, and Kaname Takahashi — remain under indictment and currently are international fugitives. RJN Nos. 1, 18, Dkt No. 813-1 (Indictments).[2] NCC's participation in the cartel was extensive and particularly reprehensible. It served as the enforcer for the conspiracy, going so far as threatening bodily harm to those who considered reneging on their agreement to participate. (*See* Reddy Decl., Ex. C, at 5:3-6:2.) As this Court recognized at NCC's sentencing hearing:

> I have accepted and am persuaded that of all the defendants that I have seen so far -- and I believe this will hold true through the end of the case -- Nippon Chemi-Con has been by far the most sizable defendant both in terms of the dollar value of the products involved, as well as in its role as we've heard about this morning in the papers that have been filed. Its role as the enforcer policing the conspiracy, driving it to fruition, and keeping its members in line to make sure that the conspiracy is a success from the co-conspirators' point of view. I have no questions about any of those facts and they weigh heavily in my mind with respect to the possible sentence here.

(*Id.* at 31:11-22.) NCC was sentenced to pay a $60 million criminal fine, sentenced to five years of probation, and required to implement a compliance program. (*Id.* at 33:8-9, 33:17-20.)

---

[2] All "RJN No. ___" references are to the Exhibits to the Request For Judicial Notice In Support Of Direct Purchaser Class's Oppositions to Defendant's Motions For Summary Judgement and Daubert Motions, Dkt. No. 813.

When the Court accepted NCC's plea agreement, NCC acknowledged that it engaged in price fixing from "at least as early as November, 2001, until in or about January 2014." RJN No. 63, Dkt. No. 813-5 (Transcript of Proceedings, May 30, 2018) at 52:23-25. NCC's representative, Mr. Takashi Nakamura, confirmed that the company understood the factual basis underlying the plea agreement:

> THE COURT: All right. Mr. Nakamura, you have heard the charge against Nippon Chemi-Con, and the facts that the United States believes supports that charge.
>
> Did you understand all of that?
>
> MR. NAKAMURA: Yes, I did.
>
> * * *
>
> THE COURT: Are you fully satisfied that you had enough time to read? review, and think about the plea agreement before you signed it?
>
> MR. NAKAKURA: Yes. I'm satisfied.
>
> THE COURT: Do you believe that you understood all of the terms of the plea agreement before you signed it?
>
> MR. NAKAKURA: Yes. I believe so.
>
> THE COURT: Did your lawyers answer all of your questions about the plea agreement to your full satisfaction before you signed it?
>
> MR. NAKAMURA: Yes, that's right.

(*Id*. at 54:15-55:14.)

At no point during the plea allocution did NCC suggest that those facts were wrong, and that its plea extended only to "episodes" of price fixing. Nor did NCC suggest that its conduct was limited to "a narrow set of products or customers." The only fair reading of the guilty plea is to understand it as reflecting a conspiracy that lasted from "at least as early as November, 2001, until in or about January 2014" and that it applied to more than "a narrow set of products or customers."[3]

When interpreting a plea agreement, "the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *United States v. De la Fuente*, 8

---

[3] NCC's Rule 30(b)(6) witness regarding the scope of the guilty plea, Tomohiro Inoue, was deposed by the DPCs. When asked specific questions about NCC's understanding of the plea agreement, Mr. Inoue avoided any meaningful response or was not sure of the answers.

F.3d 1333, 1337 (9th Cir. 1993); *see also United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990) (contract standards apply to plea agreements).[4] An assumption that NCC's plea agreement "related only to narrow episodes of price fixing" (Opp. at p. 1:8-9) is completely at odds with reality. It does not provide an appropriate foundation for Dr. Ordover to proffer the challenged opinion. Accordingly, the challenged opinion should be excluded.

### B. Defendants' Assumed Facts Are Not The Type Of Evidence On Which Economists Ordinarily Rely

It is undisputed that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." (*See* Opp. at p. 7:8-9, quoting Fed. R. Evid. 703.) However, an expert does not have free rein to use demonstrably false facts or the wishful thinking of counsel as the foundation for an opinion. Rule 703 requires that opinions be based on the kinds of facts or data on which experts in the field would reasonably rely. Fed. R. Evid. 703. "Facts" created by counsel are not the type of evidence on which economists would ordinarily rely. *See, e.g.*, *Therasense*, 2008 WL 2323856, at *1-2.

Defendants' attempt to distinguish *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994) is puzzling. Defendants claim *Paoli* is "inapposite," citing an eight-page portion of the case which

---

[4] Defendants argue that statements made by the prosecution during NCC's sentencing hearing are inadmissible hearsay for purposes of this motion. (Opp. at pp. 11:20-12:2.) They are incorrect. In deciding preliminary questions about whether an expert is qualified, the analysis is **not** limited to admissible evidence. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . In so doing, the court is not bound by evidence rules[.]") At the sentencing hearing, the DOJ opposed – and this Court rejected – a sentence based on the theory that NCC only engaged in isolated, sporadic conduct. RJN No. 69, Dkt. No. 813-5, Dkt. 73 (United States Reply Sentencing Memorandum) at 1:9-11 ("NCC's proposal that its VOC be limited to a small number of episodes, resulting in a VOC of $83 million, vastly understates the harm caused by the conspiracy to which NCC pled guilty, as well as NCC's extensive participation in that conspiracy."); *id.* at p. 2:13-15 ("For each of the seven corporate defendants, the government has used one consistent [VOC] methodology: sales of all standalone capacitors to the United States."); Reddy Decl., Ex. C, at p. 33:2-7 (Court noting that NCC's $60,000,000 fine is "harmonious with the prior sentences that I've imposed for other co-conspirators…").

supposedly provides "the full context." (Opp. at p. 8:3-8.) But they fail to address the relevant part of the discussion, in which the court explains:

> We now make clear that it is the judge who makes the determination of reasonable reliance, and that for the judge to make the factual determination under Rule 104(a) that an expert is basing his or her opinion on a type of data reasonably relied upon by experts, the judge must conduct an independent evaluation into reasonableness.

*Paoli*, 35 F.3d at 748; *see also, Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063 (N.D. Cal. May 11, 2017), at *3 ("The trial judge has discretion to determine reasonable measures of reliability."). As applied here, whether Dr. Ordover reasonably relied on counsel's representations about the scope of the criminal plea is appropriately decided by the Court at this time. It is part of the Court's function as a gatekeeper, not an issue for which the jury can or should weigh competing versions of the facts.

Defendants' reliance on *In re NJOY, Inc. Consumer Class Action Litig.,* 120 F. Supp. 3d 1050 (C.D. Cal. 2015) is misplaced because the assumed fact was not inconsistent with the established facts. The plaintiffs sued an electronic cigarette manufacturer alleging that the company engaged in false advertising and labeling omissions regarding the safety of its products. The "fact" at issue concerned the period during which the company spread the alleged misinformation and the scope of its advertising efforts. Recognizing that the parties had competing – and unresolved – versions of the facts, the court permitted an expert to proffer an opinion based on the plaintiffs' version of the facts. That is not the situation here. NCC has already pled guilty to participating in a criminal conspiracy from at least November 2001 through January 2014.[5]

---

[5] Other cases cited by Defendants are distinguishable because there were sufficient indicia of reliability for the assumed or hypothetical facts. *See Alaska Rent-A-Car, Inc. v. Avid Budget Group, Inc.,* 738 F.3d 960, 968-69 (9th Cir. 2013) (hypothetical facts did not lack a reasonable basis and, therefore, provided a sufficient foundation for the expert's opinion); *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14-1018 (9th Cir. 2004) (expert's "experience, training, and education" that provided a sufficient foundation of reliability for his testimony).

### C. The Risk of Misleading The Jury Outweighs Any Probative Value Of The Challenged Opinion

An additional reason for excluding the challenged opinion is to avoid confusing or misleading the jury. Fed. R. Evid. 403. Defendants argue that the challenged opinion may (somehow) help jurors, contending that "If Plaintiffs fail in demonstrating the scope of the alleged conspiracy and the jury accepts that the NCC Plea related only to narrow episodes of price fixing, Dr. Ordover's testimony regarding the impact if such narrow episodes would be relevant and helpful to the trier of fact…" (Opp. at p. 10 n.10.) However, the opposite is true. "It is well-established that once a defendant joins a conspiracy it is jointly and severally liable for any actions taken in furtherance of the conspiracy." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011). Allowing the challenged opinion would suggest to jurors that they should parse evidence, rather than considering it holistically. If an expert is allowed to selectively consider evidence – and outright disregard clearly contrary facts – the jury would likely be confused or misled to believe it can or should do the same. Here, Dr. Ordover has no basis for the challenged opinion other than statements spoon-fed by counsel to manufacture their desired opinion.

### III. CONCLUSION

For all of the foregoing reasons, DPC's motion to partially exclude the opinion of Dr. Ordover should be granted.

//

| | | |
|---|---|---|
| 1 | Dated: August 15, 2019 | Respectfully Submitted, |
| 2 | | JOSEPH SAVERI LAW FIRM, INC. |
| 3 | | |
| 4 | | By: /s/ *Steven N. Williams* |
| 5 | | Steven N. Williams |
| 6 | | Joseph R. Saveri (State Bar No. 130064) |
| | | Steven N. Williams (State Bar No. 175489) |
| 7 | | James G. Dallal (State Bar No. 277826) |
| | | Kyle P. Quackenbush (State Bar No. 322401) |
| 8 | | Anupama K. Reddy (State Bar No. 324873) |
| | | **JOSEPH SAVERI LAW FIRM, INC.** |
| 9 | | 601 California Street, Suite 1000 |
| | | San Francisco, California 94108 |
| 10 | | Telephone: (415) 500-6800 |
| | | Facsimile: (415) 395-9940 |
| 11 | | *Lead Counsel for Direct Purchaser Class* |