1   Heather S. Nyong'o (CA SBN 222202)
    heather.nyongo@wilmerhale.com
2   WILMER CUTLER PICKERING
3   HALE AND DORR LLP
    1 Front Street, Suite 3500
4   San Francisco, California 94111
    Telephone: (650) 858-6000
5   Facsimile: (650) 858-6100

6
    Thomas Mueller (*pro hac vice*)
7   thomas.mueller@wilmerhale.com
8   WILMER CUTLER PICKERING
    HALE AND DORR LLP
9   1875 Pennsylvania Avenue, NW
    Washington, DC 20006
10  Telephone: (202) 663-6000
    Facsimile: (202) 663-6363
11

12  *Counsel for Defendants ELNA Co., Ltd. and*
    *ELNA America, Inc.*

13
14  [Additional Counsel Listed on Signature Page]

15               **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
16                  **SAN FRANCISCO DIVISION**

17   | IN RE CAPACITORS ANTITRUST | Case No. 14-cv-03264-JD |
     | LITIGATION | MDL No. 2801 |
18   | | |
     | This Document Relates to: | **DEFENDANTS ELNA AND MATSUO'S** |
19   | | **MOTION TO (1) ADMIT TRIAL** |
     | ALL DIRECT PURCHASER ACTIONS | **TESTIMONY AND (2) PRECLUDE** |
20   | | **EVIDENCE OF PRIOR INVOCATIONS** |
     | | **OF THE FIFTH AMENDMENT OF** |
21   | | **MESSRS. INOUE, KINOSHITA, IMAI,** |
     | | **AND OKUBO** |
22   | | |
23   | | Date:   January 9, 2020 |
     | | Time:  10:00 am |
24   | | Judge: Honorable James Donato |
     | | Courtroom 11 – 19th Floor |
25

26
27
28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on January 9, 2020, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move this Court, pursuant to Rules 401 and 403 of the Federal Rules of Evidence and the relevant caselaw, to admit the trial testimony and preclude evidence of prior invocations of the Fifth Amendment of Messrs. Inoue, Kinoshita, Imai, and Okubo.

Dated: December 6, 2019

*/s/ Heather S. Nyong'o*

Heather S. Nyong'o
WILMER CUTLER PICKERING
HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, California 94111
heather.nyongo@wilmerhale.com

*Counsel for Defendants Elna Co., Ltd. and Elna America, Inc.*

i

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL No. 2801/ CASE No. 14-CV-03264-JD)

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ...................................................................................... 2

    A.  Plaintiffs Had a Full Opportunity to Substantively Depose Tomohiro Inoue and Shin Kinoshita (ELNA) During Discovery ..................................... 2

    B.  Plaintiffs Substantively Deposed Hiroyuki Imai (ELNA) During Discovery.................. 3

    C.  Plaintiffs Had a Full Opportunity to Substantively Depose Satoshi Okubo (Matsuo) Following the Resolution of NCC's Criminal Case ....................................... 4

    D.  ELNA and Matsuo Provided Plaintiffs Early Notice That Inoue, Kinoshita, Imai, and Okubo Would Testify at Trial ........................................................................... 6

III.  LEGAL STANDARD.................................................................................................. 7

IV.  ARGUMENT............................................................................................................. 10

    A.  Inoue, Kinoshita, Imai, and Okubo Should Be Permitted to Testify At Trial Because Their Testimony Would Be Highly Relevant ................................................. 10

    B.  Permitting The Witnesses To Withdraw Their Fifth Amendment Invocations Would Not Result In "Unfair and Unnecessary Prejudice" to DPPs.......................................... 11

    C.  The Probative Value of the Withdrawn Fifth Amendment Invocations Is Substantially Outweighed By a Danger of Unfair Prejudice to Defendants........................................ 13

V.  CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allstate Ins. Co. v. James*,
  845 F.2d 315, 320 (11th Cir. 1988) ................................................................ 13

*Davis-Lynch, Inc. v. Moreno*,
  667 F.3d 539 (5th Cir. 2012) ........................................................................... 8

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
  232 F.3d 1258  (9th Cir. 2000) ......................................................... 1, 8, 10, 11, 13

*Evans v. City of Chicago*
  513 F.3d 735 (7th Cir. 2008) ........................................................... 8, 10, 14

*Harrell v. DCS Equip. Leasing Corp.*,
  951 F.2d 1453, 1465 (5th Cir. 1992) ............................................... 9, 10, 14

*In re 650 Fifth Ave. & Related Properties*,
  934 F.3d 147 (2d Cir. 2019)........................................................................ passim

*In re Capacitors Antitrust Litig. (No. III)*,
  3:17-md-02701 (N.D. Cal.)........................................................................... 7

*In re Capacitors Antitrust Litig.*,
  14-cv-3264 (N.D. Cal.) ................................................................................. 5

*In re TFT-LCD Antitrust Litig.*,
  07-md-1827 (N.D. Cal.).................................................................... 9, 10, 14, 15

*MicroTechnologies, LLC v. Autonomy, Inc.*,
  2018 WL 5013567 (N.D. Cal. Oct. 16, 2018)................................................ 10

*Nationwide Life Ins. Co. v. Richards*
  541 F.3d 903 (9th Cir. 2008) ......................................................................... 9

*Ohio v. Reiner*, 532 U.S. 17, 18 (2001) ............................................................ 14

*SEC v. Graystone Nash, Inc.*,
  25 F.3d 187, 192 (3rd Cir. 1994) ................................................................... 8

*Serafino v. Hasbro, Inc.*,
  82 F.3d 515, 518 (1st Cir. 1996)..................................................................... 8

*United States v. $133,420.00 in U.S. Currency*,
    672 F.3d 629, 643 (9th Cir. 2012) ............................................................................. 8

*United States v. ELNA Co., Ltd.*,
    No. 16-cr-365 (N.D. Cal.) ...................................................................................... 2, 3

*United States v. Matsuo Elec. Co.*,
    17-cr-73 (N.D. Cal.) .................................................................................................. 5

*United States v. Nippon Chemi-Con Corp.*,
    17-cr-00540 (N.D. Cal.) ............................................................................................ 5

*United States v. Okubo*,
    17-cr-74 (ND. Cal.) ................................................................................................... 5

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1979) ........................ 8

**Rules**

Fed. R. Evid. 403 .......................................................................................................... 10, 13

## **ISSUE TO BE DECIDED**

Whether, pursuant to Rules 401 and 403 of the Federal Rules of Evidence and the relevant caselaw, the Court should admit the trial testimony and preclude evidence of prior invocations of the Fifth Amendment of Messrs. Inoue, Kinoshita, Imai, and Okubo.

## I.      INTRODUCTION

The fair resolution of this case requires that the key percipient witnesses be permitted to testify to the facts at issue.  Yet the Direct Purchaser Plaintiffs ("DPPs") have gone to extraordinary lengths to avoid substantive testimony from four critical witnesses in order to capitalize on these witnesses' earlier invocations of the Fifth Amendment.  This gamesmanship began years ago when they refused to postpone by mere weeks the depositions of two ELNA witnesses who were prepared to testify substantively, forcing these witnesses to attend and invoke the Fifth Amendment at depositions just *two weeks* prior to their immunization under ELNA's plea agreement.  And the gamesmanship has continued through 2019, when they asked for and then ignored reasonable offers to make these witnesses available for depositions this December.  Now, DPPs have indicated that they will oppose these witnesses' efforts to withdraw their Fifth Amendment invocations—that is, DPPs seek to prevent them from telling the jury what they heard and saw at the time of the events at issue, and instead let the jury draw adverse inferences from their Fifth Amendment deposition testimony.

But the law is clear that these witnesses should be permitted to testify at trial and that references to their prior invocation of the Fifth Amendment should be excluded.  First, the witnesses' testimony is highly relevant to the claims and defenses in this case because they attended many of the multilateral competitor meetings that DPPs allege were used to effectuate the alleged price-fixing conspiracy.  Second, the witnesses should be permitted to withdraw their Fifth Amendment invocations because doing so would not result in "unfair and unnecessary prejudice" to DPPs given the numerous opportunities DPPs have had to take substantive depositions.  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265-67 (9th Cir. 2000).  And third, the minimal probative value of their withdrawn Fifth Amendment invocations is substantially outweighed by the dangers of unfair prejudice to Defendants, confusing or misleading the jury, and wasting time, and therefore inadmissible under Rule 403.

ELNA and Matsuo believe DPPs have forfeited their opportunity to obtain substantive depositions from these witnesses.  Nevertheless, ELNA and Matsuo are filing this motion well in

1

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH
AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL No. 2801/ CASE No. 14-CV-03264-JD)

advance of trial so that if the Court believes it is necessary to grant DPPs another chance to depose the witnesses, there is plenty of time to do so.  Because the integrity of the verdict depends on the testimony of these witnesses, ELNA and Matsuo respectfully request the Court's guidance on these issues.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Had a Full Opportunity to Substantively Depose Tomohiro Inoue and Shin Kinoshita (ELNA) During Discovery

Two years ago, Plaintiffs had a full opportunity to take the substantive depositions of ELNA employees Tomohiro Inoue and Shin Kinoshita, but consciously chose to avoid these depositions.  Plaintiffs requested the depositions in mid-2017, and ELNA scheduled them for the week of September 25, 2017, after ELNA was expected to enter a guilty plea at a September 14, 2017 hearing in its criminal case.  *See United States v. ELNA Co., Ltd.*, No. 16-cr-365 (N.D. Cal.).  This sequencing would permit Inoue and Kinoshita to testify substantively rather than invoke the Fifth Amendment because they would be immunized from criminal prosecution under ELNA's plea agreement.

When ELNA's change of plea was delayed by a few weeks, Plaintiffs refused to reschedule the depositions, apparently hoping to capitalize on an opportunity to secure Fifth Amendment invocations untainted by actual testimony on the disputed issues in the case.  At ELNA's September 14, 2017 change-of-plea hearing, this Court declined a plea agreement proposed by ELNA and DOJ, but gave the parties an opportunity to submit a new proposal in October in advance of trial.  *See United States v. ELNA Co., Ltd,* 16-cr-365, Dkt. 35, Tr. 6:4-7:25, 10:1-8.  The day after the hearing, ELNA notified Plaintiffs of these developments and sought to postpone the depositions of Inoue and Kinoshita by a few weeks so that ELNA could submit a new plea agreement that, once accepted by the Court, would permit the witnesses to testify substantively.  As memorialized in a follow-up letter from ELNA, Plaintiffs refused to postpone the depositions, passing up the opportunity to obtain the witnesses' substantive testimony:

> ***Mssrs. Inoue and Kinoshita can be available for depositions in mid- or late-October and we believe that they would be prepared to testify substantively at that time***. If Plaintiffs demanded that the depositions occur earlier, however, Mssrs. Inoue and Kinoshita would assert their Fifth Amendment rights.  Per Mr. Zapala's email to us immediately following the joint call, Plaintiffs elected to take Fifth Amendment depositions on September 26 and 27, 2017.
>
> The Ninth Circuit has repeatedly stated that courts should not draw adverse inferences from assertions of the Fifth Amendment "unless there is a substantial need for the information and ***there is not another less burdensome way of obtaining that information***."  By demanding that Mssrs. Inoue and Kinoshita appear for depositions next week, Plaintiffs are forgoing an obvious opportunity to receive substantive testimony just a few weeks later and should therefore not benefit from any adverse inferences from any assertions of the Fifth Amendment in those depositions.

Exhibit 1 (September 21, 2017 Letter) (citations omitted) (emphasis altered).  Simply put, despite having the option of taking the depositions of Inoue and Kinoshita just two weeks later, Plaintiffs chose to take Inoue and Kinoshita's depositions on September 26 and 27, 2017, during which the witnesses were forced to assert their Fifth Amendment privilege.

ELNA and DOJ entered into a new plea pursuant to Fed. R. Crim. P. 11(c)(1)(B) (a type "B" agreement) on October 10, 2017, which the Court accepted on October 11, 2017.  *See United States v. ELNA Co., Ltd.*, 16-cr-365, Dkt. 40 (plea agreement), 44 (transcript of hearing). Like the earlier proposal, this plea agreement immunized Inoue and Kinoshita from criminal prosecution, making them free to provide substantive testimony in the instant litigation.  Despite the more than two years that have passed since this guilty plea, DPPs have chosen not to seek Inoue and Kinoshita's substantive testimony.

### B.    Plaintiffs Substantively Deposed Hiroyuki Imai (ELNA) During Discovery

Plaintiffs have taken substantive deposition testimony from ELNA employee Hiroyuki Imai.  Plaintiffs noticed his first deposition for August 30, 2016, before the October 2017 ELNA plea agreement that would immunize him from criminal prosecution, and he invoked his Fifth Amendment privilege against self-incrimination at the deposition.  However, Plaintiffs obtained his substantive testimony later in discovery by insisting that he serve as ELNA's corporate

representative for a Rule 30(b)(6) deposition.  After ELNA designated employee Kent Sterrett as its representative, Plaintiffs told ELNA that either Imai or Kenichiro Murata (who verified ELNA's interrogatory responses) would be "more knowledgeable than Mr. Sterrett about the noticed topics, and that one of these individuals should be designated as your corporate representative on these topics instead of Mr. Sterrett."  Exhibit 2 (Nov. 6, 2017 email from Lambrinos to Mueller).  By this point, Imai had received immunity under ELNA's October 2017 plea agreement, so Imai agreed to travel from Japan to the United States to testify.

Imai's daylong deposition took place in February 2019.  At the deposition, Plaintiffs asked numerous questions that specifically called for his personal knowledge.  *See, e.g.*, Exhibit 3 (Feb. 13, 2019 Imai Depo. Tr.) at 21:12-14 ("Q. Okay. And you don't remember any of the other companies that participated in that meeting. Is that correct?"), 22:9-11 ("Q. … Do you know how many times you participated, you personally participated, in meetings with employees of other companies that made capacitors?"), 30:18 ("Q. When was the last time you spoke to [Mr. Matsuzaka from Nippon Chemical]?"), 50:9-10 ("Q. Do you have any personal knowledge of this meeting?"), 83:4-5 ("Q. And do you have a recollection, did the Godo meeting happen once a year?"), 114:11-12 ("Q. Do you have any recollection of why Mr. Harima sent this to you?").  Imai provided substantive answers to Plaintiffs' questions.  Indeed, at the end of the deposition, counsel for ELNA made a record that Imai was not only ELNA's second Rule 30(b)(6) deponent in this case, but he also "provided his own personal knowledge about a lot of the topics that were discussed here today."  *Id.* at 260:14-20.  Thus, Plaintiffs obtained the substantive testimony that Imai was unable to provide at the earlier deposition.

### C.    Plaintiffs Had a Full Opportunity to Substantively Depose Satoshi Okubo (Matsuo) Following the Resolution of NCC's Criminal Case

Plaintiffs have had more than a year and a half to take the substantive deposition of Matsuo employee Satoshi Okubo following the resolution of DOJ's criminal case against NCC in May 2018—in fact, the parties stipulated that Matsuo would make Okubo available in the United States for such a deposition—but Plaintiffs elected not to obtain this discovery.

4

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL No. 2801/ Case No. 14-CV-03264-JD)

Plaintiffs first took the deposition of Matsuo employee Satoshi Okubo on May 26, 2016. Because Okubo was at risk of (and indeed, would eventually be subject to) criminal prosecution, he asserted his Fifth Amendment privilege against self-incrimination at the deposition.

On February 8, 2017, both Matsuo and Okubo pleaded guilty to charges brought by DOJ. *See United States v. Matsuo Elec. Co.*, No. 17-cr-73 (N.D. Cal), Dkt. 12-2 (Matsuo plea agreement); *United States v. Okubo,* No. 17-cr-74 (ND. Cal.), Dkt. 19 (Okubo plea agreement). A few months later, while Okubo was in federal custody serving the prison sentence under his plea agreement, Plaintiffs sought the Court's permission to re-depose Okubo in order to obtain his substantive testimony. *In re Capacitors Antitrust Litig.,* No. 14-cv-3264 (N.D. Cal), Dkt. 1925, Tr. 9:6-10. Because Okubo had pleaded guilty, he no longer had a Fifth Amendment privilege in the instant case. However, DOJ opposed Plaintiffs' request and sought a stay of the deposition to preserve its ability to call Okubo as a witness at a potential trial in its criminal case against NCC. *Id.* at Dkt. 1981.

At a hearing on January 25, 2018, the Court ordered the parties to meet-and-confer on the issue of whether and when Okubo could be deposed. *In re Capacitors Antitrust Litig.,* No. 14-cv-3264, Dkt. 2054, Tr. 29:7-16. On February 8, 2018, the parties, including DPPs, Matsuo, and DOJ, entered into a stipulation that Plaintiffs could depose Okubo at the conclusion of the criminal case against NCC. The stipulation provided the following:

> The parties to the stipulation agree that, if Nippon Chemi-Con pleads guilty, or the case is dismissed or otherwise resolved without trial in *United States v. Nippon Chemi-Con*, or if Mr. Okubo does not testify in the criminal trial, ***Matsuo will produce Mr. Okubo to be deposed in the United States if the Court grants leave for an additional deposition of Mr. Okubo***.

Exhibit 4 (14-cv-3264, Dkt. 2064), para. 6 (emphasis added). Thus, the Court had no immediate need to rule on Plaintiffs' request to re-depose Okubo.

NCC pleaded guilty to criminal charges in May 2018. *See United States v. Nippon Chemi-Con Corp.,* No. 17-cr-00540 (N.D. Cal), Dkt. 54. Despite the 18 months that have passed since this guilty plea, and the stipulation that Matsuo would make Okubo available for a

5

Defs. Elna and Matsuo's Motion to Admit Trial Testimony and Preclude Evidence of Fifth
Amendment Invocations of Inoue, Kinoshita, Imai, and Okubo (MDL No. 2801/ Case No. 14-CV-03264-JD)

1    substantive deposition upon request, DPPs have chosen not to seek Okubo's substantive

2    testimony.

3           **D.    ELNA and Matsuo Provided Plaintiffs Early Notice That Inoue, Kinoshita,**
            **Imai, and Okubo Would Testify at Trial**
4

5           In October 2019, ELNA and Matsuo voluntarily provided DPPs advance notice that they

6    intended to call Inoue, Kinoshita, Imai, and Okubo as trial witnesses, that they would oppose any

7    attempt to introduce or seek adverse inferences from these witnesses' Fifth Amendment

8    depositions, and that they would make these witnesses available for substantive depositions—

9    again—to the extent DPPs wanted to take them.  On October 18, 2019, ELNA wrote the

10   following in a letter to DPPs:

11          We write to inform you that ***we intend to call, among others, ELNA employees
            Tomohiro Inoue, Shin Kinoshita, and Hiroyuki Imai as witnesses at trial***. While
12          these three individuals invoked their Fifth Amendment privilege against self-
            incrimination at depositions in 2016 and 2017, ***we believe that their live***
13          ***testimony at trial will be permitted, that their Fifth Amendment deposition***
            ***testimony is inadmissible, and that you are not entitled to an adverse inference***
14          ***instruction as a result of their now-withdrawn invocations***.…  With respect to
            Messrs. Inoue and Kinoshita, you have had ample opportunities to take their
15          substantive deposition testimony-but you elected not to.…  With respect to Mr.
            Imai, you have already secured his substantive deposition testimony.…
16          Nevertheless, and even though fact discovery is long over, ***to the extent you***
            ***would like to take substantive depositions … between now and trial, we would***
17          ***be willing to accommodate you***.

18
19   Exhibit 5 (October 18, 2019 ELNA letter) (emphasis added).  Matsuo sent a similar letter

20   regarding Okubo.  *See* Exhibit 6 (October 28, 2019 Matsuo letter).

21          Counsel for DPPs responded that they disagreed with Defendants' position and would

22   oppose any efforts to revoke Fifth Amendment invocations. Nyong'o Decl. ¶ 9.  In a meet-and-

23   confer on October 28, 2019, counsel for DPPs asked whether ELNA planned to move the Court

24   on the issue and whether it would provide details for when the witnesses would be made

25   available for substantive depositions.  Nyong'o Decl. ¶ 10.  Following the meet-and-confer,

26   ELNA offered a specific time and place for depositions of its employees:

27

28

We write to follow up on our October 28, 2019 telephonic meet-and-confer regarding ELNA's intention to call, among others, its employees Hiroyuki Imai, Tomohiro Inoue, and Shin Kinoshita as witnesses at trial. Your colleague James Dallal asked whether we planned on providing "details of when or where" ELNA would make these witnesses available for substantive depositions. We have consulted with our client, and ***these witnesses are available the second week of December (between the 9th and 13th) in the offices of WilmerHale, One Front Street, San Francisco, California, should you wish to take their depositions***.

Exhibit 7 (November 4, 2019 ELNA letter) (emphasis added).  Notwithstanding ELNA and Matsuo having bent over backwards to make these witnesses available, DPPs have chosen yet again to forgo the opportunity to take these witnesses' substantive depositions.

On November 7, 2019, the Court notified the parties that it needed to postpone the trial scheduled to begin February 3, 2020, and asked the parties to propose alternative trial dates in June or July 2020. *See In re Capacitors Antitrust Litig (No. III).,* No. 3:17-md-02701, Dkt. 999.

On December 3, 2019, because DPPs never responded to ELNA's November 4th letter offering to make its employees available for substantive depositions the second week of December, ELNA notified DPPs that it planned to move the Court on the issue, and asked for another meet-and-confer.  Nyong'o Decl. ¶ 12.  The parties held a telephonic meet-and-confer on December 5, 2019, during which DPPs reconfirmed that they disagreed with Defendants' position and would oppose any efforts to revoke Fifth Amendment invocations.  Nyong'o Decl. ¶ 13.  DPPs also stated that if the Court grants this motion, they intend to take these witnesses' substantive depositions, *id.*, demonstrating that DPPs have plenty of time to take depositions before trial but that they would prefer to capitalize on adverse inferences from Fifth Amendment testimony over the actual substantive testimony about the facts of this case.

## III.    LEGAL STANDARD

"Because the privilege [against self-incrimination] is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.  In that light, no negative inference can be drawn against a civil litigant's assertion of his privilege … unless there is a ***substantial need*** for the information and

7

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL No. 2801/ Case No. 14-CV-03264-JD)

there is **not a less burdensome way of obtaining** that information." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (emphasis added) (citations and quotation marks omitted); *see also Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996) (articulating similar standard); *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3rd Cir. 1994) (same); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1979) (same).

"[A] district court should take a liberal view toward applications by civil litigants to withdraw their previously invoked Fifth Amendment privilege.  [I]f there is a timely request made to the court, the court should explore **all possible measures** in order to select [a] means [that] strikes a fair balance and accommodates both parties." *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 169-70 (2d Cir. 2019) (emphasis added) (citations and quotation marks omitted); *see also United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643 (9th Cir. 2012) ("courts must seek to accommodate the defendant's right against self-incrimination" in parallel civil proceedings).  "The court should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice." *In re 650 Fifth Ave.*, 934 F.3d at 170; *see also Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012) ("The Supreme Court has cautioned that the Constitution limits 'the imposition of any sanction which makes assertion of the Fifth Amendment privilege costly.' Given this consideration — and because all parties should have a reasonable opportunity to litigate a civil case fully — **courts should seek out ways to permit 'as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege**.'") (emphasis added) (citations omitted).

Accordingly, if a witness offers to withdraw his Fifth Amendment invocation and sit for a second, substantive deposition before trial—and in the absence of gamesmanship or an eleventh-hour request—that witness is permitted to testify at trial.  For example, in *Evans v. City of Chicago*, the Seventh Circuit affirmed a trial court's order allowing several defense witnesses to withdraw their Fifth Amendment invocations and testify at trial.  513 F.3d 735, 742-43 (7th Cir. 2008).  The court found that "the [witnesses] were not 'gaming' the system" and that plaintiffs

suffered no prejudice because they were given the opportunity to re-depose the witnesses a full five weeks before trial.  *Id.*

In fact, precluding such witnesses from testifying at trial is reversible error.  In *In re 650 Fifth Ave.*, the Second Circuit found that a district court abused its discretion by precluding trial testimony of witnesses who withdrew their Fifth Amendment invocations and offered to sit for substantive depositions several months before trial, noting that the district court "made no attempt to 'explore all possible measures' for accommodating both parties, even when the [proponents of the trial testimony] notified [the court] more than six months prior to trial— hardly the 'eleventh hour'—that they intended to call [the] witnesses."  934 F.3d at 170-71.

By contrast, in *Nationwide Life Ins. Co. v. Richards*, the Ninth Circuit affirmed a district court's preclusion of a witness who had invoked the Fifth Amendment on a discrete topic at deposition—but then attempted to reverse course at the last minute and testify on the same subject at trial.  541 F.3d 903, 910-11 (9th Cir. 2008).  The district court struck the testimony from the trial record because her attorney provided no advance warning of her intention to testify on this topic.  *Id.* at 910, n.5.  In that scenario, her adversary had no way of obtaining her deposition testimony on this topic before trial, leading the district court to conclude that the other party had been prejudiced, justifying the limitation on the witness's trial testimony.  *Id.* at 910-11.

Finally, courts uniformly prohibit any reference at trial to the Fifth Amendment testimony of a witness who thereafter withdraws his invocation because any minimal probative value of the supplanted Fifth Amendment testimony is substantially outweighed by the danger of unfair prejudice to the party opposing its introduction.  *See In re TFT-LCD Antitrust Litig.*, No. 07-md-1827 (N.D. Cal.) (Illston, J.), Dkt. 8298 (ruling that the court "will not allow reference to the Fifth Amendment invocation of witnesses who thereafter withdrew the invocation"); *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465 (5th Cir. 1992) (excluding evidence of withdrawn invocation of Fifth Amendment because "invocation of the privilege, particularly on the advice of counsel, is an ambiguous response" and "the possible prejudice [caused by its

9

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH
AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL NO. 2801/ CASE NO. 14-CV-03264-JD)

introduction] greatly outweighed any probative value"); *Evans*, 513 F.3d at 735 (affirming order

barring evidence of trial witnesses' prior Fifth Amendment invocations where the other party

was given the chance to take depositions five weeks before trial); *MicroTechnologies, LLC v.*

*Autonomy, Inc.*, 2018 WL 5013567, at *5 (N.D. Cal. Oct. 16, 2018) (Spero, M.J.) (observing that

the moving party had cited no precedent "allowing reference to an earlier invocation of the Fifth

Amendment where a witness subsequently provided a complete deposition").

## IV.    ARGUMENT

The Court should permit Inoue, Kinoshita, Imai, and Okubo to testify at trial and exclude

evidence of their earlier Fifth Amendment invocations.  First, these witnesses have highly

relevant testimony that they are willing and able to provide at trial.  Second, ELNA and Matsuo

have repeatedly made these witnesses available for depositions, and therefore DPPs would not

suffer "unfair and unnecessary prejudice" as a result of the trial testimony and exclusion of Fifth

Amendment evidence.  *Glanzer*, 232 F.3d at 1265; *see In re 650 Fifth Ave.*, 934 F.3d at 170-71.

And third, any probative value of the Fifth Amendment evidence "is substantially outweighed by

a danger of … unfair prejudice [to Defendants], confusing the issues, misleading the jury, undue

delay, [and] wasting time."  Fed. R. Evid. 403; *see TFT-LCD Antitrust Litig.*, No. 07-md-1827,

Dkt. 8298; *Evans*, 513 F.3d at 735; *Harrell*, 951 F.2d at 1465.

### A.    Inoue, Kinoshita, Imai, and Okubo Should Be Permitted to Testify At Trial Because Their Testimony Would Be Highly Relevant

The Court should permit Inoue, Kinoshita, Imai, and Okubo to testify at trial.  Each

witness would offer highly relevant testimony on core issues in this case, including the purpose

and effect of the multilateral competitor meetings at the heart of DPPs' lawsuit:

- *Inoue*, who has worked in various sales capacities at ELNA since 1985 and is now the Head of Overseas Sales, can testify about his attendance at certain multilateral competitor meetings held in Japan and Singapore between 2000 and 2014.

- *Kinoshita*, who has worked at ELNA since 1986 and is now the Deputy General Manager of Sales for ELNA, can testify about his attendance at certain multilateral competitor meetings held in Japan and Singapore between 2000 and 2014.

10

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH
AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL NO. 2801/ CASE NO. 14-CV-03264-JD)

- ***Imai***, the General Manager of Sales for ELNA and the President of ELNA America, can testify about his attendance at certain multilateral competitor meetings held in Japan and Singapore between 2000 and 2014, his bilateral communications with representatives of NCC regarding the sale of capacitors to customer Bosch, and the factual basis for ELNA's guilty plea to criminal charges in October 2017.

- ***Okubo***, Matsuo's Overseas Sales Manager and the former General Manager of Sales for ELNA, can testify about attendance at certain multilateral competitor meetings held in Japan and Singapore between 2000 and 2014, as well as the factual basis for his and Matsuo's guilty pleas to criminal charges in February 2017.

In other words, these witnesses will help the jury determine one of the central questions at trial: whether ELNA, Matsuo, and others "conspired by directly and indirectly communicating with each other to implement and effectuate an ***overarching scheme to control and set the prices of their aluminum, tantalum and film capacitors*** sold to United States purchasers and purchasers worldwide." Third Consolidated Class Action Complaint, *In re Capacitors Antitrust Litig.,* No. 14-cv-3264, Dkt. 1831, ¶ 13 (emphasis added). As a result, this testimony is clearly relevant to the claims and defenses in this case, and admissible under Rule 401. Because these witnesses are willing and able to testify at trial, and they would offer highly probative testimony, the Court should permit their trial testimony notwithstanding their earlier invocations of the Fifth Amendment.

### B.   Permitting The Witnesses To Withdraw Their Fifth Amendment Invocations Would Not Result In "Unfair and Unnecessary Prejudice" to DPPs.

The Court should also permit Inoue, Kinoshita, Imai, and Okubo to testify at trial and exclude their Fifth Amendment testimony from evidence because DPPs have not been disadvantaged at all by the withdrawal of the Fifth Amendment invocations, much less suffered "unfair and unnecessary prejudice" as a result. *Glanzer,* 232 F.3d at 1265. Indeed, three of these witnesses were made available for substantive depositions years ago, but DPPs knowingly declined those opportunities. *See* Exhibit 1 (ELNA made Inoue and Kinohsita available for substantive depositions in "mid- or late-October" 2017); Exhibit 4, para. 6 (Matsuo stipulated that it would produce Okubo for deposition after NCC resolved its criminal case, which occurred

11

DEFS. ELNA AND MATSUO'S MOTION TO ADMIT TRIAL TESTIMONY AND PRECLUDE EVIDENCE OF FIFTH AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, IMAI, AND OKUBO (MDL No. 2801/ CASE No. 14-CV-03264-JD)

in May 2018).  DPPs cannot complain now, years later, that they will be prejudiced by the lack of substantive deposition testimony from these witnesses because it is DPPs themselves who are responsible for the current situation.

Nor have DPPs suffered prejudice with respect to the fourth witness, Imai, because he has already provided substantive deposition testimony.  While he did so during what was ostensibly a Rule 30(b)(6) deposition, it was DPPs who insisted that Imai serve as ELNA's corporate representative because of his personal knowledge of the facts at issue, and who DPPs repeatedly questioned throughout the day about that **personal** knowledge.  *See* Exhibit 2; Exhibit 3.  Thus, because DPPs already took Imai's substantive testimony, they can point to no conceivable prejudice caused by his planned trial testimony and the exclusion of his earlier Fifth Amendment testimony.

And DPPs have not been prejudiced because ELNA and Matsuo offered to make these four witnesses available for depositions **again** in 2019, more than seven months before trial, but DPPs declined this opportunity. There is simply no plausible argument that DPPs will have suffered prejudice going into the trial of this case.[1]

The Second Circuit recently decided a case directly on point.  In *In re 650 Fifth Ave.*, the Government brought a civil forfeiture action seeking the forfeiture of property allegedly traceable to violations of the federal sanctions and money laundering statutes.  934 F.3d at 147. There, like here, numerous percipient witnesses invoked their Fifth Amendment right against self-incrimination at their depositions.  *Id.* at 167-68.  A small group of these witnesses subsequently decided that they would be willing to testify, and the Claimants, who wanted this testimony, notified the district court and their opposing party (the Government) of this fact "more than six months" before trial.  *Id.* at 168, 171.  Then, "over two and a half months before trial," the Claimants notified the Government that they intended to call two of these witnesses at

---

[1] Furthermore, if the Court believes it is necessary to afford DPPs yet another chance to depose the witnesses, there is plenty of time for them to do so before trial.  DPPs do not lack the time or resources to take a mere four depositions in seven months—indeed, they have indicated that they will seek such depositions if they lose this motion.  Nyong'o Decl. ¶ 13.

trial and "offered the Government the opportunity to depose both witnesses prior to trial." *Id.* at 168. The Government "chose not to." *Id.* at 171.

On these facts, the Second Circuit held that the district court had abused its discretion by precluding the testimony of the two witnesses, noting that it "made no attempt to 'explore all possible measures' for accommodating both parties, even when the Claimants notified it more than six months prior to trial—hardly the 'eleventh hour'—that they intended to call witnesses who had previously invoked the privilege." *Id.* at 170. The Court of Appeals concluded that not only had the Government suffered no prejudice given its opportunity two and a half months before trial to take depositions, but the district court's preclusion of trial testimony had prejudiced the Claimants given these two witnesses' ability to testify to "[o]ne of the key issues at trial," explaining that "[w]ithout their testimony, the jury was left to draw adverse inferences" from their absence and videotaped Fifth Amendment depositions. *Id.* at 170-71.

Here, permitting Inoue, Kinoshita, Imai, and Okubo to testify at trial and excluding their Fifth Amendment testimony from evidence would not cause DPPs "unfair and unnecessary prejudice" because they were given the opportunity to take substantive depositions a long time ago, and again in 2019. *Glanzer*, 232 F.3d at 1265. Indeed, as the Second Circuit made clear, precluding such important testimony from trial would be reversible error.

### C.    The Probative Value of the Withdrawn Fifth Amendment Invocations Is Substantially Outweighed By a Danger of Unfair Prejudice to Defendants

The Court should also exclude these witnesses' Fifth Amendment testimony from evidence at trial because "its probative value is substantially outweighed by a danger of … unfair prejudice [to Defendants], confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403. The invocation of the Fifth Amendment has little probative value to begin with. *See Allstate Ins. Co. v. James*, 845 F.2d 315, 320 (11th Cir. 1988) ("The fact that [defendants] chose to exercise their Constitutional rights as explained to them upon advice of their attorney provides little probative evidence …"); *Harrell*, 951 F.2d at 1465 ("The invocation of the privilege, particularly on the advice of counsel, is an ambiguous response."); *Ohio v.*

1   *Reiner*, 532 U.S. 17, 18 (2001) (the Fifth Amendment "protects the innocent as well as the

2   guilty").

3          Furthermore, any "potential probative value … is further reduced" where, as here, the

4   witness withdraws the invocation and agrees to provide substantive testimony.  *Harrell*, 951 F.2d

5   at 1465.  At the same time, the "potential prejudice in revealing the invocation of the Fifth

6   Amendment is high, because the jury may attach undue weight to it, or may misunderstand [the

7   witness's] decision to invoke his constitutional privilege." *Id.* (affirming exclusion of trial

8   witnesses' prior Fifth Amendment invocations); *see also Evans*, 513 F.3d at 735 (same).

9          In the *In re TFT-LCD* antitrust litigation, Judge Illston excluded withdrawn Fifth

10  Amendment invocations from two trials.  *See In re TFT-LCD Antitrust Litig.*, No. 07-md-1827.

11  Before the first trial, between defendant Toshiba and the DPP class, Toshiba moved to exclude

12  withdrawn invocations of five of its employees and two of its former employees.  *Id.* at Dkt.

13  5136, 5141.  Meanwhile, DPPs moved to admit invocations (apparently not withdrawn) of a

14  Toshiba employee and six employees of a defendant that had settled with DPPs.  *Id.* at Dkt.

15  5130.  Judge Illston granted the defense motions and denied the DPP motion, thus excluding the

16  Fifth Amendment evidence across the board.  *See* Exhibit 8 (ECF No. 5597) at *6.  She also

17  denied at trial a renewed motion brought by DPPs regarding one of the former Toshiba

18  employees.  *In re TFT-LCD Antitrust Litig.*, No. 07-md-1827, Dkt. 5949 (Trial Tr. 2383:4-7) ("I

19  still find, on 403, that it's not appropriate to allow [you] to do that.").

20         These Fifth Amendment issues recurred at a subsequent trial between several defendants

21  and opt-out plaintiff Best Buy.  Before trial, the defendants moved to exclude withdrawn

22  invocations of three employees of one of the defendants, and to exclude invocations by three

23  others who maintained their invocations and were subsequently criminally convicted for

24  violations of the Sherman Act.  *Id.* at Dkt. 8122.  The defendants also asked the court to adopt

25  the Fifth Amendment rulings it made before the first trial, while Best Buy asked the court to

26  reconsider its denial of DPPs' motion.  *Id.* at Dkt. 8127, 8144 at *34.  Ruling on these motions,

27  Judge Illston again broadly excluded Fifth Amendment evidence: "The Court will not allow

28

reference to the Fifth Amendment invocations of witnesses who thereafter withdrew the invocation and testified …. Reference to the invocation, and application of any adverse inferences therefrom, as to any other witnesses will be considered on a case by cases basis [at trial]." *See* Exhibit 9 (Dkt. 8298) at *5.

Accordingly, the Court should adopt the approach taken in *In re TFT-LCD* and exclude evidence of these witnesses' prior invocations of the Fifth Amendment under Rule 403 because the prejudicial value is overwhelmingly outweighed by the danger of unfair prejudice, undue delay, and juror confusion.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court admit the substantive trial testimony and preclude the prior Fifth Amendment invocations of Inoue, Kinoshita, Imai, and Okubo.


Dated: December 6, 2019                  */s/ Heather S. Nyong'o*

Heather S. Nyong'o (CA SBN 222202)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, California 94111
heather.nyongo@wilmerhale.com

Thomas Mueller (*pro hac vice*)
thomas.mueller@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Chris Johnstone (CA SBN 242152)
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
chris.johnstone@wilmerhale.com
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Counsel for Defendants Elna Co., Ltd. and Elna America, Inc.*

*/s/ Bonnie Lau*

MORRISON & FORRESTER LLP
Bonnie Lau
425 Market Street
San Francisco, CA 94105-2482
Telephone:  (415) 268-7000
Fascimile:  (425) 268-7522
blau@mofo.com

## ATTESTATION

I, Heather Nyong'o, attest that all other signatures listed, and on whose behalf the filing is submitted, concur in the filing's contents and have authorized the filing.

*/s/ Heather S. Nyong'o*
Heather S. Nyong'o