Robert W. Turken (*pro hac vice*)
Scott N. Wagner (*pro hac vice*)
Lori P. Lustrin (*pro hac vice*)
Shalia M. Sakona (*pro hac vice*)
Jerry R. Goldsmith (*pro hac vice*)
Ilana A. Drescher (*pro hac vice*)
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue
Suite 2300
Miami, FL 33131-3456
Telephone: (305) 374-7580

*Attorneys for Plaintiffs AASI, Avnet,
Benchmark Electronics, and Jaco*

Stuart H. Singer (*pro hac vice*)
Meredith Schultz (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011

William A. Isaacson (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave., NW
Washington, DC 20005
Telephone: (202) 237-2727

*Attorneys for Plaintiff Arrow Electronics, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Capacitors Antitrust Litigation* | **Case No. 17-md-02801-JD** |
| *This document relates to:* | |
| *The AASI Beneficiaries' Trust, by and Through Kenneth A. Welt, Liquidating Trustee, v. AVX Corp. et al.,* Case No. 3:17-cv-03472-JD | **CERTAIN DIRECT ACTION PLAINTIFFS' OPPOSITION TO DEFENDANTS ELNA AND MATSUO'S MOTION TO (1) ADMIT TRIAL TESTIMONY AND (2) PRECLUDE EVIDENCE OF PRIOR INVOCATIONS OF THE FIFTH AMENDMENT OF MESSRS. INOUE, KINOSHITA, IMAI, AND OKUBO** |
| *Avnet, Inc. v. Hitachi Chemical Co., Ltd., et al.,* 17-cv-07046-JD | |
| *Benchmark Electronics, Inc. et al. v. AVX Corp. et al.,* Case No. 17-cv-07047-JD | |
| *Arrow Electronics, Inc. v. ELNA Co., Ltd., et al.,* Case No. 3:18-cv-02657-JD | Date:  January 9, 2020 |
| *Jaco Electronics, Inc. et al. v. Nippon Chemi-Con Co. et al.,* Case No. 19-cv-01902-JD | Time:  10:00 am
Place:  Courtroom 11, 19th Floor
Judge:  Hon. James Donato |

# <u>TABLE OF CONTENTS</u>

**<u>PAGE</u>**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD............................................................................................................ 2

ARGUMENT ......................................................................................................................... 3

     I.     Inoue, Kinoshita, and Okubo Should Not be Permitted to Withdraw Their
          Fifth Amendment Invocations at This Stage .......................................................... 3

          A.     All Three Witnesses Failed to Timely Revoke Their Fifth
                  Amendment Invocation.................................................................................. 3

          B.     ELNA's Different Treatment of Imai ......................................................... 5

     II.    Defendants Cannot Now Withdraw the Fifth Amendment Invocations of
          Inoue, Kinoshita, and Okubo .................................................................................. 6

CONCLUSION....................................................................................................................... 7

CERTIFICATE OF SERVICE ............................................................................................. 8

i

Case No. 17-md-02801-JD
CERTAIN DIRECT ACTION PLAINTIFFS' OPPOSITION TO ELNA AND MATSUO'S MOTION TO ADMIT TRIAL
TESTIMONY AND PRECLUDE EVIDENCE OF CERTAIN PRIOR FIFTH AMENDMENT INVOCATIONS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Davis-Lynch, Inc. v. Moreno*,
    667 F.3d 539 (5th Cir. 2012) ...................................................................................7

*Evans v. City of Chicago*,
    513 F.3d 735 (7th Cir. 2008) ...................................................................................6

*In re 650 Fifth Ave. & Related Properties*,
    934 F.3d 147 (2d Cir. 2019)...................................................................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M07-1827SI, 2009 WL 4016124 (N.D. Cal. Nov. 9, 2009) ..............................3

*Nationwide Life Ins. Co. v. Richards*,
    541 F.3d 903 (9th Cir. 2008) ...........................................................................2, 3, 6

*United States v. $133,420.00 in U.S. Currency*,
    672 F.3d 629 (9th Cir. 2012) ...............................................................................2, 7

ii

Case No. 17-md-02801-JD
CERTAIN DIRECT ACTION PLAINTIFFS' OPPOSITION TO ELNA AND MATSUO'S MOTION TO ADMIT TRIAL
TESTIMONY AND PRECLUDE EVIDENCE OF CERTAIN PRIOR FIFTH AMENDMENT INVOCATIONS

**PRELIMINARY STATEMENT**

In October 2019, Defendants ELNA and Matsuo ("Defendants") apparently initiated discussions with the class plaintiffs ("DPPs") to allow four of Defendants' employees—Shin Kinoshita, Tomohiro Inoue, Hiroyuki Imai, and Satoshi Okubo—to withdraw the Fifth Amendment privileges they each invoked during their depositions and testify substantively at trial regarding their participation in the capacitors price-fixing conspiracy. Direct Action Plaintiffs ("DAPs")[1] qualify this information as "apparent" because Defendants did not see fit to include any of DAPs in their discussions with DPPs. Indeed, the first time DAPs learned of Defendants' request was on December 6, 2019, when they filed their "Motion To (1) Admit Trial Testimony And (2) Preclude Evidence Of Prior Invocations Of The Fifth Amendment Of Messrs. Inoue, Kinoshita, Imai, And Okubo" (the "Motion").

This, of course, was more than eight months after fact discovery concluded, six months after the close of expert discovery, and four months after summary judgment and *Daubert* briefing was completed.

With the exception of Imai, the Motion is without merit and should be denied in all respects. Defendants insist that the "fair resolution of this case requires that the key percipient witnesses be permitted to testify to the facts at issue" and that the "integrity of the verdict depends on the testimony of these witnesses." Motion at 1-2. But, it is precisely for these reasons that the Motion is so ill-founded.

According to the Motion, Defendants were aware as early as October 2017 that Kinoshita and Inoue were free from the risk of criminal prosecution. Even earlier—in May 2017—Defendants knew that Okubo had pleaded guilty to the charges he faced. Yet, Defendants waited for two years until October 2019 to even mention that these supposedly "key percipient witnesses" wanted to revoke their Fifth Amendment privileges. And it was ***two more months*** before DAPs learned that Defendants were seeking to offer substantive testimony of these witnesses which they now claim is critical to the "integrity of the verdict."

---

[1] "DAPs" refers to Direct Action Plaintiffs Avnet, Inc., The AASI Beneficiaries' Trust, by and through Kenneth A. Welt, Liquidating Trustee, the Benchmark Electronics entities, Jaco Electronics, Inc., Vermont Street Acquisition LLC, and Arrow Electronics, Inc.

What makes Defendants' current plea of fairness ring so hollow is that their own actions in this litigation demonstrate their conscious intent to use their employees' Fifth Amendment invocations as part of their litigation strategy.  The clearest proof is Imai.

In October 2018, DAPs and DPPs engaged in discussions with ELNA to produce a knowledgeable Rule 30(b)(6) witness.  ELNA agreed to produce Imai, who testified both in his corporate as well as personal capacities.  Because Imai's deposition occurred well within the fact discovery period, DAPs had the opportunity to pursue information he provided in further discovery.  DAPs also were able to incorporate Imai's testimony in their litigation strategy.

By contrast, with Inoue, Kinoshita, and Okubo, Defendants made the strategic determination not to offer the Fifth Amendment revocations of these "key percipient witnesses." Instead they waited until the eve of trial—again, eight months after the close of fact discovery and four months after summary judgment and *Daubert* briefing—to decide that ***the time is now right*** to play their Fifth Amendment withdrawal cards.

Defendants' eleventh-hour attempt to withdraw their employees' Fifth Amendment testimony has been uniformly rejected by the Ninth Circuit as improper gamesmanship and unfairly prejudicial and should not be countenanced here.

Accordingly, DAPs request that this Court deny Defendants' Motion as to Inoue, Kinoshita, and Okubo.  Because Imai substantively testified in his personal capacity at his February 2019 deposition, DAPs do not object to his testifying at trial.

## LEGAL STANDARD

The Ninth Circuit has long cautioned against a civil litigant's "improper use of the Fifth Amendment privilege against self-incrimination as a sword as well as a shield."  *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640-41 (9th Cir. 2012) (citations omitted).  "Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008).

"Because the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is

apparent.  The rights of the other litigant must be taken into consideration when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege.  At that stage, the adverse party—having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter—would be placed at a disadvantage."  *Id.* at 910 (internal citations and quotation marks omitted).  Specifically, "[t]he opportunity to combat the newly available testimony might no longer exist, a new investigation could be required, and orderly trial preparation could be disrupted."  *Id.*

To prevent the potential for such gamesmanship and prejudice, courts have set forth bright-line deadlines wherein a party can no longer withdraw the Fifth Amendment privilege.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07-1827SI, 2009 WL 4016124, at *1 (N.D. Cal. Nov. 9, 2009) ("Any person who at deposition asserts his or her right under the Fifth Amendment of the United States Constitution not to testify will be bound by that assertion of the privilege and shall not be permitted to testify otherwise at trial unless, not later than 60 days prior to the date set for the close of fact discovery, notice is provided in writing of the intent to revoke the assertion of privilege and the willingness of the person to testify.").

## ARGUMENT

## I.   INOUE, KINOSHITA, AND OKUBO SHOULD NOT BE PERMITTED TO WITHDRAW THEIR FIFTH AMENDMENT INVOCATIONS AT THIS STAGE

### A.   All Three Witnesses Failed to Timely Revoke their Fifth Amendment Invocation

In December 2017, this Court entered an order transferring the DAP cases to the Northern District of California and consolidating the DAP cases with the already-existing class actions into an MDL for pretrial purposes.  MDL ECF No. 1 (Transfer Order).  As part of the transfer, DAPs agreed that they would not propound discovery that was duplicative to the discovery in the class actions.  *See, e.g.* Case No. 2:16-2808-ROS (D. Ariz.), ECF. 67 (Avnet Order); Case No. 3:17-2058 (D. Az.), ECF No. 15 (Benchmark Order); MDL ECF No. 224 (Arrow Order).

In September 2017, ELNA advised DPPs that Inoue and Kinoshita would likely be able to provide substantive testimony after ELNA's plea hearing in October 2017.  Mot. at Ex. 1.

DAPs never received this correspondence or at any time were made aware of its contents.  The Fifth Amendment depositions of Inoue and Kinoshita went forward in September 2017.

On October 11, 2017, this Court accepted ELNA's guilty plea, which according to Defendants' Motion "immunized Inoue and Kinoshita from criminal prosecution, making them free to provide substantive testimony in the instant litigation."  *See United States v. ELNA Co., Ltd.*, No. 16-cr-365, ECF 40 (Partially Sealed Plea Agreement), 44 (Hearing Tr.); Mot. at 3.

However, it was not until October 2019 that ELNA sought to revoke Inoue and Kinoshita's Fifth Amendment invocations and allow them to testify substantively.

Okubo was originally deposed in May 2016, and invoked his Fifth Amendment privilege.  In October 2017, after both of his employers (ELNA and Matsuo) and Okubo himself had pleaded guilty, DPPs requested a second, substantive deposition of Okubo.  N.D. Cal. Dkt. 14-cv-3264, ECF No. 1885 ("Class Action ECF").

At an October 26, 2017 hearing, the Court questioned DPPs regarding the value of a second deposition of Okubo: "He's asserted the Fifth. You can now stand up to the jury and you can say, *Please produce on the assertion that they're guilty*…. What more do you need? All he's going to do is backtrack…. You are now able to write a brief saying I can assume – or the trier of fact can assume that all of these things happened.  And the defendants cannot get up and say, No that's not true. I mean, that is a gold ticket[.]"  Class Action ECF No. 1925 (10/26/17 Hearing Tr.) (emphasis in original).

In their supplemental briefing on the issue, Matsuo and ELNA did not agree to—let alone, propose—a second deposition of Okubo or any other Fifth Amendment witness.  Instead, they simply asked the Court to defer decision on whether an adverse inference would apply to Okubo's prior Fifth Amendment deposition.  Class Action ECF No. 1971.  Okubo's personal counsel also opposed Plaintiffs' request, arguing that "Plaintiffs fail to demonstrate that Mr. Okubo somehow uniquely possesses information that necessitates a second deposition[.]"  Class Action ECF No. 1967.

Ultimately, in February 2018, Matsuo agreed to produce Okubo for a second deposition "if the Court grants leave for an additional deposition of Mr. Okubo," but also reserved its right

to "oppose any additional deposition of Mr. Okubo." MDL ECF No. 77. But, Matsuo never sought to withdraw Okubo's Fifth Amendment invocation during the fact discovery period.

Instead, more than a year and a half later, on October 18, 2019, ELNA and Matsuo reached out to **DPPs only** to "inform" them that they now intend to call Inoue, Kinoshita and Okubo as trial witnesses. Defendants stated in their letter—which DAPs read for the first time when it was filed in conjunction with the pending Motion—that they "believe[d] that [these witnesses'] live testimony at trial will be permitted, that their Fifth Amendment deposition testimony is inadmissible, and that [DPPs] are not entitled to an adverse inference instruction as a result of their now-withdrawn invocations." Mot. at Ex. 5.

ELNA's Declaration in support of its Motion states that DPPs and Defendants met and conferred on the issue of whether the witnesses could revoke their Fifth Amendment invocations at this stage. DAPs were not privy to these communications, but apparently, on November 4, 2019, ELNA proposed depositions of their employees for some time between December 9th and December 13th, 2019—again without any consultation with DAPs. Mot. Ex. 7. According to ELNA, DPPs rejected this proposal, which led to the filing of the present Motion. Mot. at 7.

### B.   ELNA's Different Treatment of Imai

In August 2016, DPPs took the deposition of Imai. Like Inoue, Kinoshita, and Okubo, Mr. Imai pleaded the Fifth Amendment to every substantive question. And also like Inoue and Kinoshita, Mr. Imai was immunized from criminal prosecution as a result of ELNA's guilty plea and plea agreement. In October 2018, DAPs and DPPs engaged in discussions with ELNA to produce a knowledgeable Rule 30(b)(6) witness. After multiple communications, the witness ELNA agreed to produce was Imai. *See* Turken Decl., Ex. A (Nov. 3, 2018 Email).

During Imai's deposition, which occurred in February 2019, ELNA's counsel stated that Imai was testifying both as the corporate representative of ELNA as well as in his personal capacity. *See* Def. Exhibit 3 (Feb. 13, 2019 Imai Depo. Tr.) at 260:5-20. Imai testified in English and covered a wide array of subjects. *Id*.

In stark contrast to the eleventh-hour attempt to withdraw the Fifth Amendment depositions of Inoue, Kinoshita, and Okubo, Mr. Imai's deposition was taken well within the fact

discovery period, before the close of expert discovery, and months in advance of summary judgment and *Daubert* briefing.  DAPs therefore were able to pursue the information he provided in their subsequent discovery and incorporate his testimony into their litigation strategy. Consequently, DAPs do not object to the withdrawal of his prior Fifth Amendment invocation or his appearance as a live witness at trial.

## II.   DEFENDANTS CANNOT NOW WITHDRAW THE FIFTH AMENDMENT INVOCATIONS OF INOUE, KINOSHITA, AND OKUBO

Accepting Defendants' own representations, ELNA and Matsuo made a conscious choice not to withdraw the Fifth Amendment invocations of Inoue, Kinoshita, and Okubo even after any reasonable risk of prosecution had long passed.

Now, on the eve of trial, DPPs and DAPs, after "having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter—would be placed at a disadvantage" by ELNA and Matsuo withdrawing these witnesses' privileges *Nationwide*, 541 F.3d at 910.  "The opportunity to combat the newly available testimony might no longer exist, a new investigation could be required, and orderly trial preparation could be disrupted."  *Id*.  Specifically, because of Defendants' tactical delay, Plaintiffs will be deprived of the opportunity to take any follow up discovery.

It is for these reasons that the cases Defendants cite in their Motion are inapplicable.  In each of the cases where the revocation of the Fifth Amendment privilege was permitted, the courts found an "absence of gamesmanship." *See, e.g., Evans v. City of Chicago*, 513 F.3d 735, 743 (7th Cir. 2008) (finding that the district court "reasonably could have concluded that the [witnesses who revoked] were not 'gaming' the system but rather were concerned about the special prosecutor's investigation, which was only recently completed when they decided to testify.").  Moreover, in the cases cited by Defendants where revocation was allowed, the courts explicitly considered whether there was ample opportunity for any potential prejudice to the other side to be avoided.  *See, e.g., In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 170 (2d Cir. 2019) (finding that district court should have "explore[d] all possible measures for accommodating both parties," when party provided notice "more than six months prior to trial—

hardly the 'eleventh hour'—that they intended to call witnesses who had previously invoked the privilege").

In fact, in some cases cited by Defendants, the court actually **denied** a party's request to revoke the privilege because of unfair gamesmanship and potential prejudice. *See, e.g., Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012) (affirming the district court's denial of Defendant's "eleventh-hour withdrawal of his Fifth Amendment privilege," when Defendant "withdrew his assertion of the Fifth Amendment privilege within the time allowed to respond to [Plaintiff's] motion for summary judgment" and with "five days left in the discovery period" because Defendant's "withdrawal of his Fifth Amendment privilege in response to [Plaintiff's] motion for summary judgement appears more likely to be an attempt to abuse the system or gain an unfair advantage" and "[i]n withdrawing the privilege at such a late stage, [Defendant] withheld information that [Plaintiff] could have used in its investigation, only to provide information at the last moment, leaving [Plaintiff] at a disadvantage.").

Here, Defendants' attempt to withdraw their Fifth Amendment depositions at the eleventh-hour is the quintessential case of the "improper use of the Fifth Amendment privilege against self-incrimination as a sword as well as a shield" that the Ninth Circuit forbids.  *US v. $133,420.00*, 672 F.3d at 640-41.  It should not be permitted.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' Motion should be denied as to Inoue, Kinoshita, and Okubo, but granted as to Imai.

DATED: December 20, 2019          */s/ Robert W. Turken*
                                  Robert W. Turken (*pro hac vice*)
                                  Scott N. Wagner (*pro hac vice*)
                                  Lori P. Lustrin (*pro hac vice*)
                                  Shalia M. Sakona (*pro hac vice*)
                                  Jerry R. Goldsmith (*pro hac vice*)
                                  Ilana A. Drescher (*pro hac vice*)
                                  **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
                                  1450 Brickell Ave., Suite 2300
                                  Miami, Florida 33131-3456
                                  Telephone:  305-374-7580

Facsimile:  305-374-7593

*Attorneys for Plaintiffs AASI, Avnet,
Benchmark Electronics, and Jaco*

*/s/Meredith Schultz*
Stuart H. Singer (*pro hac vice*)
Meredith Schultz (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com
Email: mschultz@bsfllp.com

Philip J. Iovieno (*pro hac vice*)
Anne M. Nardacci (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665

William A. Isaacson (*pro hac vice*)
Kyle Smith (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave., NW
Washington, DC 20005
Telephone: (202) 237-2727

*Attorneys for Plaintiff Arrow
Electronics, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was electronically served upon the parties and counsel of record system on December 20, 2019.

*/s/ Robert W. Turken*
Robert W. Turken