Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:        jsaveri@saverilawfirm.com
                    swilliams@saverilawfirm.com
                    jdallal@saverilawfirm.com
                    areddy@saverilawfirm.com
                    cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL DIRECT PURCHASER ACTIONS | Master File No. 3:17-md-02801-JD<br><br>Case No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER CLASS'S OPPOSITION TO THE MOTION TO (1) ADMIT TRIAL TESTIMONY AND (2) PRECLUDE EVIDENCE OF PRIOR INVOCATIONS OF THE FIFTH AMENDMENT**<br><br>Date:         January 9, 2020<br>Time:        10:00 a.m.<br>Judge:       Honorable James Donato<br>Courtroom: 11, 19th Floor |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................................... 1

II. BACKGROUND ....................................................................................................................... 4

    A. Tomohiro Inoue and Shin Kinoshita ........................................................................... 4

    B. Hiroyuki Imai ............................................................................................................. 5

    C. Satoshi Okubo ........................................................................................................... 6

    D. Defendants announce they intend to call Inoue, Kinoshita, Imai and Okubo at trial. ........................................................................................................................ 7

III. DEFENDANTS' MOTION SHOULD BE DENIED ............................................................... 8

    A. The witnesses' Fifth Amendment testimony should not be excluded. ...................... 9

    B. Inoue, Kinoshita, Imai and Okubo's trial testimony should be precluded ............... 14

IV. CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147 (2d. Cir. 2019) .................................. 9, 12, 13, 15

*Aragonez v. Huff*, Case No. EDVC 07-992-VAP, 2008 WL 11342742 (C.D. Cal. Dec. 16, 2008) ........................................................................................................................................ 2, 13, 14

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) (Brennan, J., dissenting) .............................................. 12

*Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983) ......................................................... 12

*In re Edmond*, 934 F.2d 1304 (4th Cir. 1991) .................................................................................. 14

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989) ..................................................... 14

*Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903 (9th Cir. 2008) ......................................... *passim*

*Planned Parenthood Fed'n of Am. v. Ctr. For Med. Progress*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019) ......................................................................................................... 2, 10, 13

*S.E.C. v. Graystone Nash*, 25 F.3d 187 (3d Cir. 1994) ....................................................................... 9

*S.E.C. v. Jasper*, 678 F.3d 1116 (9th Cir. 2012) ........................................................................... 13, 14

*In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007) ..................................................................................................................................... 13

*In re TFT-LCD Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal. Jul. 11, 2013) ............................... 13

*U.S. v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn*, 55 F.3d 78 (2d Cir. 1995) ............................................................................................................................. 9, 11, 15

*United States v. ELNA Co., Ltd.*, No. 16-cr-00365-JD (N.D. Cal. 2017) ........................................... 4

*United States v. Nippon Chemi-Con Corp.*, No. 17-cr-0054- JD (N.D. Cal. May 31, 2018) ............. 7

*United States v. Okubo*, Case No. 17-cr-00074-JD  (N.D. Cal. 2017) ............................................... 6

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979) ..................................... 9

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................................ 4

Fed. R. Civ. P. 26(a) ........................................................................................................................... 7

Fed. R. Civ. P. 30 ...........................................................................................................................3

Fed. R. Civ. P. 30(b)(1) ............................................................................................................. 11

Fed. R. Civ. P. 30(b)(6) ..........................................................................................................5, 11

Fed. R. of Evid. 403................................................................................................... 2, 8, 9, 12

**Other Authorities**

2 WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 278 (James H.
    Chadbourn ed., rev. ed. 1979) ........................................................................................ 10

I.      INTRODUCTION

On the eve of trial, Defendants ELNA and Matsuo ("Defendants") filed a Motion to (1) Admit Trial Testimony and (2) Preclude Evidence of Prior Invocations of the Fifth Amendment of Messrs. Inoue, Kinoshita, Imai and Okubo[1] (the "Motion"). The Motion tries to undo the consequences of the foreclosure of discovery when Defendants' witnesses refused to answer questions under oath, invoking the Fifth Amendment. Defendants raise this matter now, long after discovery was closed and the parties have prepared expert reports, briefed summary judgment and *Daubert* motions and advanced trial preparation. The Motion relies on an incomplete and inaccurate rendition of the factual record and a misstatement of applicable law, including that of the Ninth Circuit. It also depends on the Court countenancing at this date efforts to evade a number of the core discovery and procedural rules upon which the parties have relied for years, since the inception of this litigation.

During the discovery period, Defendants' executives made intentional strategic decisions to invoke the Fifth Amendment and refused to answer any substantive questions at their duly-noticed depositions. This choice denied the Direct Purchaser Class (the "Class") important discovery on key issues from knowledgeable witnesses, direct participants in the price-fixing that gives rise to the Class's claims. It also foreclosed and limited other discovery during the discovery period from other witnesses. It denied the Class the use of such materials by their experts, in opposing summary judgment and preparing for trial, now less than ninety days away. Now, 16 months after the close of discovery and shortly before trial, Defendants want to reverse the harm they caused and now reopen discovery to present the witnesses for deposition, while precluding evidence of their Fifth Amendment testimony. Allowing them to do so will result in the unwinding of discovery and much of the work done in this case to date, as well as distracting and diverting trial preparation. It will cause unfair and unnecessary prejudice to the Class.

Defendants claim that the Class should have sought second depositions for all the witnesses at issue, outside of the Court ordered discovery period. This is insufficient to reverse the effects of the witness's refusal to testify. Further, in addition to ignoring the substantial prejudice this would cause,

---

[1] Tomohiro Inoue, Shin Kinoshita and Hiroyuki Imai are employees of ELNA. Satoshi Okubo is an employee of Matsuo and had formerly been an employee of ELNA until 2009.

this suggestion flies in the face of the Court's repeated instruction that witnesses in this litigation would be deposed only once and renders the deadline for discovery an empty letter. *See*, *e.g.*, MDL Dkt.[2] 211 at 14:22-33 ("we're not going to do a second deposition of anybody already done"). The Class had no obligation to proceed with a second deposition, especially when contrary to the instructions of the Court.

Defendants' efforts to lay at the feet of the Class the witnesses' decision to refuse to testify substantively are illogical, unfair, and incorrect. Defendants ignore that the Class repeatedly accommodated Defendants' requests to reschedule and delay depositions. In fact, the depositions were substantially delayed and repeatedly postponed at the request of Defendants, the witnesses, or the DOJ—not the Class. Eventually, the depositions went forward during the Court ordered period for discovery. Each witness voluntarily refused to provide substantive testimony under the Fifth Amendment, as was their choice. Defendants did not seek a protective order at any time. Discovery closed in May 2018. It was not until shortly before trial—long after discovery was closed—that Defendants indicated they intended to offer substantive testimony from witnesses that had previously refused on Fifth Amendment grounds. In fact, Defendants' position is one of their own making, even as they now seek to benefit from their decisions to foreclose the Class from the substantive discovery.

Defendants' effort to preclude the evidence as unfairly prejudicial under Federal Rule of Evidence 403 fails. The witnesses' on-the-record refusals to answer substantive questions is plainly probative and admissible. *See Planned Parenthood Fed'n of Am. v. Ctr. For Med. Progress*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006 at 31-32 (Fifth Amendment adverse inference instructions in case where witnesses invoked privilege at depositions); *Aragonez v. Huff*, Case No. EDVC 07-992-VAP (JCRx), 2008 WL 11342742 (C.D. Cal. Dec. 16, 2008) (same). Each of the witnesses directly participated in the illegal price fixing giving rise to the Class's claims and has direct firsthand knowledge of key facts and documents. The exclusion of such testimony would therefore cause substantial prejudice—to the Class. As the Ninth Circuit has recognized, there is substantial unfairness "when one party invokes the Fifth Amendment during discovery, but on the eve of trial

---

[2] "MDL Dkt. ___" citations to Case No. 3:17-md-02801-JD.

changes his mind and decides to waive the privilege. At that stage, the adverse party—having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter—would be placed at a disadvantage." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008). Here, the Court should admit the testimony and provide an instruction to the jury. *See* AM. BAR. ASS'N, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES 348, 350 (2016).

   Any prejudice is neither undue nor unfair. Indeed, given the late date of this motion, years after discovery was completed and less than 90 days before trial, the prejudice to the Class would be extreme. The effect of the invocations cannot be reversed, and they will almost certainly have a significant and substantive effect on the litigation and the rights of the parties. As the record shows, the parties have litigated for five years knowing full well the ramifications of invoking the Fifth Amendment and sitting out the civil discovery process as criminal guilty pleas unfolded—alongside all the other major evolutions in the civil action, including not just discovery but class certification, summary judgment briefing, and the exchange of expert reports. The balance of burdens does not favor Defendants' position here. Merely because Fifth Amendment testimony may be harmful to the invoking party does not mean that it gives rise to prejudice at a level that would outweigh the prejudice to the Class. Under Rule 30, Defendants were required to provide and disclose nonprivileged information and to submit to a deposition. The witnesses failed to do so, thus frustrating the Class's right to evidence supporting their claims.

   Defendants seek to use their Fifth Amendment invocations as a shield and—now—a sword. In the Ninth Circuit, witnesses who invoke the Fifth Amendment are not permitted to offer substantive testimony at trial. *Nationwide*, 541 F. 3d at 910 ("[t]rial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial."). The tardiness of Defendants' Motion is clear. Fact discovery closed on May 8, 2018. Now, 90 days from trial, Defendants seek permission to offer that substantive testimony from those same witnesses at trial. They should not be permitted to do so.

## II. BACKGROUND

### A. Tomohiro Inoue and Shin Kinoshita

ELNA did not identify Tomohiro Inoue or Shin Kinoshita in its Rule 26 disclosures. After discovery was well underway, the Class was able to identify Inoue and Kinoshita as knowledgeable witnesses and sought their depositions. The Class attempted to schedule depositions of Inoue and Kinoshita in March 2017.[3] ELNA proposed the depositions take place in July of 2017, specifically representing they would give substantive testimony, after acceptance of ELNA's guilty plea. Declaration of Christopher K.L. Young ("Young Decl."), Ex. A at 26.[4] The parties agreed—even though the Class was under no obligation to do so—to set deposition dates in July 2017 to allow the criminal action to run its course. Then, ELNA requested the depositions be postponed until late September 2017 because ELNA had failed to present its guilty plea in acceptable form, and therefore the witnesses believed themselves still in criminal jeopardy. *United States v. ELNA Co., Ltd.*, No. 16-cr-00365 (N.D. Cal.) Dkt. 21 at 22:3-23:18. The Class accommodated ELNA's request.[5] After many discussions, ELNA and the Class settled on the week of September 25, 2017 for the depositions. On September 13, 2017, ELNA again appeared in the criminal case. Again, the Court rejected ELNA's plea on the basis that "[n]othing has changed" between ELNA's second plea attempt and the previously rejected one. *United States v. ELNA Co., Ltd.*, No. 16-cr-00365 (N.D. Cal.) Dkt. 35 at 6:4-8. The discovery cutoff then in place was November 6, 2017. Dkt.[6] 1405. After negotiations, with the viability

---

[3] As the parties in this case have followed the protocol for noticing depositions laid out in paragraph 8 of the Court's Standing Order on Discovery in Civil Cases Before Judge Donato, which requires a discussion among counsel before a party unilaterally issues a deposition notice, the original request date and not the first formal notice date is the most relevant event here.

[4] Subsequent references herein to "Ex. ___" are to the exhibits to the Young Decl.

[5] Given this history, it is astonishing that ELNA and Matsuo now claim to have "bent over backwards" to cooperate, while leveling an accusation that "it is the DPPs themselves who are responsible for the current situation." Mot. 7, 12.

[6] "Dkt. ___" citations to Case No. 3:14-cv-03264-JD.

of ELNA's third attempt to plead guilty in doubt and with the discovery cutoff approaching, the parties scheduled the depositions for September 26 and 27, 2017, respectively.[7] Ex. A at 3.

At their depositions, both Inoue and Kinoshita refused to provide substantive testimony based on their invocations of the Fifth Amendment. Young Decl., ¶¶ 4-5.

### B. Hiroyuki Imai

Hiroyuki Imai was deposed on August 30, 2016. Imai had also refused to provide substantive testimony based on his invocation of the Fifth Amendment. Young Decl., ¶ 3.

In July 2017, ELNA indicated it would designate Imai as its corporate designee for ELNA's Rule 30(b)(6) deposition, to take place in October of 2017. Ex. A at 15. Counsel for the Class was concerned by this proposal, first because these dates were close to the November 2017 discovery cutoff, and second due to the likelihood that ELNA's criminal case would not be resolved by that date. Nonetheless, given the deadline, the Class agreed to the dates proposed. *Id*. at 13.

On October 12, 2017, the day after the Court accepted ELNA's guilty plea, the Class reached out to ELNA to confirm that ELNA would designate Imai as its 30(b)(6) corporate representative. Ex. B at 4. ELNA responded that Imai was no longer the designee, ostensibly at the Government's request, and that ELNA would designate Kent Sterrett, an employee of ELNA in the United States. *Id*. at 3 (Oct. 12, 2017, Mueller Email). This choice was puzzling given Sterrett's earlier testimony in the case. In two prior depositions, Sterrett had essentially professed complete ignorance of ELNA Japan's operations and activities. The Class expressed these concerns to ELNA. ELNA nonetheless stood by their 30(b)(6) designation and Sterrett was deposed as ELNA's 30(b)(6) designee on January 9, 2018.[8] Consistent with the Class's concerns, Sterrett's bandying testimony proved he was an ill-prepared and inadequate witness. When the Class protested, ELNA essentially conceded that Sterrett was not

---

[7] It was counsel for the Indirect Purchaser Plaintiffs who determined to proceed with the depositions at that time. *See* Motion at 3 ("Mr. Zapala's email to us."). The Class was under no obligation—and had no power—to foreclose the deposition. Indeed, the deposition was scheduled to avoid further delay and to complete the depositions in a timely manner, within the deadlines set by the Court.

[8] ELNA had resisted presenting any 30(b)(6) designee at all on most of the topics on which the Class sought testimony. After motion practice, the Court resolved this dispute in the Class's favor and ordered ELNA to present a witness on substantially all of the contested topics. Ex. C at 5:13-15:11 (Transcript of November 16, 2017 Hearing).

adequately prepared and agreed to a do-over 30(b)(6) in lieu of arguing that point. ELNA proffered Imai as its designee. Ex. D at 2. By this time, the DOJ had designated Imai as one of the witnesses not to be deposed in the civil case until the end of criminal proceedings. Imai was deposed as ELNA's corporate representative a year later, on February 13, 2019.

### C. Satoshi Okubo

Satoshi Okubo has pled guilty to criminal price fixing in May of 2017 and was incarcerated at the Federal Correction Institution at Lompoc ("Lompoc").[9] The Class had deposed Okubo on May 26, 2016. Okubo refused to provide substantive testimony based on his invocation of the Fifth Amendment. Young Decl., ¶ 2. At a hearing two months later over another Matsuo witness's non-appearance at his duly-noticed deposition, counsel for Matsuo sought leniency on the basis that, based on Okubo's testimony, "Plaintiffs will be entitled to adverse inferences on, potentially, Matsuo's alleged involvement in the conspiracy during the entire alleged time period." Dkt. 1250 at 28:23-29:4 (July 20, 2016, Hearing Transcript).

While Okubo was serving his prison sentence at Lompoc, the Class again sought his deposition. The parties addressed this issue at a hearing on January 25, 2018. Dkt. 2054. The DOJ intervened and sought a stay as to Okubo, because of its intent to call him as a trial witness in the criminal proceeding against NCC. *Id.* at 7:10-17. Both counsel for the Class and the Court expressed concern that, because Okubo intended to return to Japan immediately after serving his sentence, the opportunity to obtain his substantive testimony after his release might be lost as a result. *See id.* at 12:8-11, 17:6-9 ("THE COURT: . . . . I don't want the unintended collateral consequence of this discovery stay to be that a vital witness is lost in the civil case"), 19:4-6.

On February 2, 2018, the parties entered into a stipulation that at the conclusion of the criminal case against NCC, "Matsuo will produce Okubo to be deposed in the United States if the Court grants leave for an additional deposition of Mr. Okubo." Case No. 3:14-cv-03264-JD, Dkt. 2064. The qualification of "if the Court grants leave" reflected the fact that Okubo himself had not agreed to testify. The stipulation also provided "Matsuo, Mr. Okubo, and DOJ Antitrust agree to promptly notify

---

[9] *United States v. Okubo*, Case No. 17-cr-00074 (N.D. Cal.), Dkt. 19. Okubo surrendered on August 28, 2017, to begin a sentence of one year plus a day. *Id.*, Dkt. 34.

Plaintiffs if Mr. Okubo's situation changes in any way that reasonably may affect Plaintiffs' request for an additional deposition of Mr. Okubo in the United States." *Id*. On May 10, 2018, after the close of formal discovery, the NCC Board approved, and NCC subsequently entered into, a plea agreement with the DOJ. *United States v. Nippon Chemi-Con Corp.*, No. 17-cr-0054 (N.D. Cal.), Dkt. 54. The criminal case took several more months to conclude. Okubo returned to Japan upon completion of his sentence. Matsuo did not offer to make Okubo available for a deposition at the time.

### D.  Defendants announce they intend to call Inoue, Kinoshita, Imai and Okubo at trial.

Fact discovery closed on May 8, 2018. *See* MDL Dkt. 283, Ex. A. Over 16 months later, on October 18, 2019, the Class received a letter from ELNA indicating ELNA's intent to call Inoue, Kinoshita and Imai as witnesses at trial and asserting that they intend to withdraw their invocations of the Fifth Amendment and offer substantive testimony. Motion, Ex. 5.[10] The letter also stated ELNA's position that the prior Fifth Amendment testimony would be inadmissible and that the Class would not be entitled to an adverse inference instruction at trial. *Id*. On October 28, 2019, the Class received a virtually identical letter with respect to Okubo. Trial was set to begin on February 3, 2020. *Id*., Ex. 6.

On October 28, 2019, counsel for the Class and for ELNA met and conferred. Young Decl., ¶ 12. ELNA largely repeated the contents of their October 18, 2019, letter. As trial was fast approaching, the Class inquired, should ELNA pursue this course of action, when and under what circumstances ELNA would present the witnesses to offer substantive testimony at deposition? ELNA had no answer. *Id*. Class Counsel also inquired if ELNA had searched for and produced the custodial email files for Inoue and Kinoshita, as ELNA had not identified either witness in its Rule 26(a) disclosures.[11] ELNA refused to do so.[12] *Id*. On November 4, 2019, the Class received a letter from

---

[10] Indeed, the letter went farther than that and purported to itself constitute revocation of the Fifth Amendment invocations by Inoue, Kinoshita, and Imai—as though a party could change its witnesses' sworn deposition testimony simply by authoring a letter saying so. *See id*. at 2 (referring to the witnesses' "now-withdrawn invocations").

[11] To date, ELNA has not supplemented its initial disclosures. As to Matsuo, Matsuo did not identify Okubo in its disclosures, nor did it ever supplement its disclosures. ELNA has also been unable to verify that it properly searched for and produced Inoue and Kinoshita's custodial emails.

[12] ELNA's position has continued to evolve. On a December 4, 2019, meet and confer call, ELNA pointed to language in the disclosures referring to any witness who was deposed. Young Decl., ¶ 15.

ELNA identifying a week in December as a potential time for the new depositions. Motion, Ex. 7. Three days later, on November 7, 2019, the Court held a hearing, notified the parties that the trial date would be postponed, and instructed the parties to propose alternate dates in June or July of 2020. MDL Dkt. No. 999.

At that hearing, the Court emphasized to the parties that "[n]othing is going to be reopened" and that it was only moving the starting date and attendant pretrial conference without "new rounds of anything." Ex. E at 6:16, 12:24-13:4. ELNA appeared through counsel and raised no objection. *See id.* The Class submits the record is clear that there would be no more discovery and the parties are neither invited nor permitted to reopen the record, redo expert testimony, rebrief submitted matters, or otherwise start again, long after the discovery cutoff and on the verge of trial.[13] Yet even after the hearing, ELNA has continued its effort to revoke the invocations, and in addition has added Okubo[14] to its list of percipient Fifth Amendment witnesses it now wishes to call at trial. Declaration of Heather Nyong'o, ¶ 12. The parties met and conferred again on December 4, 2019. Young Decl., ¶ 15.

On December 17, 2019, the Court notified the parties that trial would begin on March 2, 2020. MDL. Dkt. 1037.

### III.   DEFENDANTS' MOTION SHOULD BE DENIED

Defendants seek to prevent the Class from offering testimony that the witnesses invoked the Fifth Amendment at their depositions under Federal Rule of Evidence 403. This fails because the testimony is highly relevant and not unfairly prejudicial. Indeed, it would be prejudicial and unfair were the testimony not admitted. The Ninth Circuit has recognized the unfairness that results "when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege. At that stage, the adverse party—having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter—would be placed at a disadvantage." *Nationwide*, 541 F.3d at 910 (quoting *S.E.C. v. Graystone Nash*, 25 F.3d 187, 191 (3d

---

[13] ELNA has yet to provide any explanation for the absence of the production of the witnesses' custodial email files.

[14] To date, the Class and Matsuo have not met and conferred regarding the possibility of Okubo appearing at trial.

Cir. 1994). While there is authority for the proposition that litigants can be permitted to withdraw their previously invoked Fifth Amendment privilege, "[t]his does not mean that withdrawal of the claim of privilege should be permitted carelessly." *U.S. v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn*, 55 F.3d 78, 84 (2d Cir. 1995). Doing so should not cause unfair prejudice to the parties. "[B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent." *Graystone Nash*, 25 F.3d at 190. Moreover, late efforts to do so indicate strategic behavior to deny due process as well as procedural and substantive fairness to the other side. "[P]articularly if the litigant's request to waive comes only at the eleventh hour and appears to be part of a manipulative, cat-and-mouse approach to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." *In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147, 170 (2d. Cir. 2019) (internal citations and quotation marks omitted); *see also Nationwide*, 541 F.3d at 910-11 (party precluded from testifying at trial about a discrete issue she previously refused to answer at deposition on basis of privilege); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979) (trial court "would be free to fashion whatever remedy is required to prevent unfairness"). After all, it is not the opposing party's fault or choice that the witness seeks to change its testimony.

The balance of interests weighs heavily in favor of admitting the testimony and giving the jury adverse inference instructions. Indeed, the Court has already addressed this issue indicated there will be adverse inference instructions at trial. Dkt. 1330 at 21:20-24. Moreover, Defendants should not be allowed to prevent discovery of evidence during the discovery period and later—at trial—present that evidence in their defense.

### A. The witnesses' Fifth Amendment testimony should not be excluded.

#### 1. The exclusion of the testimony would cause the Class substantial prejudice.

Defendants should not be permitted to exclude the Fifth Amendment testimony under Rule 403. The testimony was given voluntarily and offered to avoid providing substantive testimony on the merits. They foreclosed discovery of their own personal knowledge and cut off avenues to discovery from others. *Nationwide*, 541 F.3d at 911. ("A decision not to draw the inference poses substantial

problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for truth.") (citation and internal quotation marks omitted).[15] As the Ninth Circuit recognizes, the remedy is well-established. "When a party asserts the privilege against self-incrimination in a civil case, the district court has discretion to draw an adverse inference from such assertion." *Id.* Trial courts therefore regularly permit admission of evidence of the Fifth Amendment and adverse inference instructions as a remedy. *E.g.*, *Planned Parenthood Fed'n of Am. v. Ctr. For Med. Progress*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006 at 31-32 (Fifth Amendment adverse inference instructions in case where witnesses invoked privilege at depositions).

Compounding their refusal to provide evidence, Defendants were dilatory, failing to inform the Class of their intent to change their witnesses' testimony until the eleventh hour. Defendants now assert that their conduct was justified and excusable because they made the witnesses available for deposition "more than seven months before trial" in 2019. Motion at 12. This is inaccurate and misses the point. Fact discovery closed in May 2018. Defendants provide no legitimate reason for failing to raise this issue promptly. In fact, it was only in October of 2019, sixty days ago, that Defendants indicated they intended to call the witnesses at trial—by way of letters delivered on October 18 and 28, 2019. Motion, Exs. 5 & 6. At that time, trial was less than four months away. On November 4, 2019, less than three months before trial, ELNA indicated its witnesses would only be available for a deposition a mere two months before trial. *Id.*, Ex. 7. The trial date was not moved until November 7, 2019. MDL Dkt. 999. The fact that the trial was delayed does not explain why the Defendants waited until after

---

[15] As Wigmore states,

> It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or **suppression of evidence** by bribery or spoliation, **and all similar conduct** is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.

2 WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 278, at 133 (James H. Chadbourn ed., rev. ed. 1979). This basic principle undergirds the justifications for permitting adverse inferences when witnesses refuse to provide testimony on Fifth Amendment grounds.

discovery was closed, expert reports were submitted, summary judgment briefed and trial preparation was well underway even to attempt to reverse the prejudice caused by the witnesses' refusal testify. And it does nothing to address the substantial disadvantage and prejudice that permitting these tactics would cause. When a party seeks to withdraw the claim of Fifth Amendment privilege, "[c]ourts need to pay particular attention to how and when the privilege was originally invoked, . . .[in] particular if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation." *Certain Real Prop.*, 55 F.3d at 84-85. Given the March 2, 2020 trial, Defendants' claim of timeliness has become even weaker and the prejudice to the Class even greater.

This is the latest cat-and-mouse behavior. The Class originally sought to depose Inoue and Kinoshita in March 2017 but, at ELNA's request, delayed the depositions (despite being under no obligation to demonstrate such forbearance) until June 2017, when ELNA promised that they would provide substantive testimony. This was incorrect. After ELNA's plea failed, ELNA asked—and the Class agreed—to postpone until September 2017 after ELNA's second scheduled attempt to plea. ELNA failed in its efforts to enter a plea again. With the then-looming November 2017 discovery cutoff, it was reasonable and indeed imperative that the Class take the depositions of Inoue and Kinoshita without further delay. It was the witnesses' choice not to provide substantive testimony and invoke the Fifth Amendment. There was no further mention of these witnesses for years, until October 2019, and the only time ELNA expressed a willingness to present the witnesses for substantive depositions came in November 2019—and then only in response to the Class's expressed unwillingness to accede to ELNA's efforts to exclude the Fifth Amendment invocations.

With regard to Imai, Defendants confuse Imai's testimony as a witness deposed pursuant to Rule 30(b)(1) and his testimony as a designee pursuant to Rule 30(b)(6). As a 30(b)(1) witness, Imai refused to provide testimony under the Fifth Amendment. Later, Imai was designated as the 30(b)(6) designee when Sterrett, ELNA's first 30(b)(6) designee, proved inadequate. Imai's testimony was only as to the limited 30(b)(6) topics agreed to by the parties and only to compensate for Sterrett's inadequacy. Further, Imai's 30(b)(6) deposition was conducted in a single day; ELNA did not offer additional time to complete a full substantive 30(b)(1) deposition. To the extent Defendants complain

Imai testified as to topics within his personal knowledge, Defendants forget that questions calling for such testimony are within bounds for a 30(b)(6) deposition in this Court. *See* Standing Order for Discovery in Civil Cases Before Judge Donato ¶ 16(b).

The Class did indeed seek to re-depose Okubo while incarcerated at Lompoc, but Defendants omit other key facts. At the time, the DOJ had requested that the Class not take Okubo's deposition due to the DOJ's intention to call Okubo in its parallel criminal case against NCC. The Class cannot control when and how the DOJ conducts its criminal proceedings. *See Baxter v. Palmigiano*, 425 U.S. 308, 335 (1976) (Brennan, J., dissenting) (no concern with allowing adverse inferences in civil suits involving only private parties because "no party brings to the battle the awesome powers of the government"). NCC only pled guilty after the close of fact discovery and, by the time judgment against NCC was entered, Okubo had returned to Japan.[16]

### 2. The probative value of the testimony is high

The high probative value of the testimony far outweighs the danger of unfair prejudice to the Defendants. *See Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (finding admission of Fifth Amendment testimony not unduly prejudicial under Rule 403); *see also In re 650 Fifth Ave.*, 934 F.3d at 171-72 (finding "no error in the court's decision to allow the Government to introduce the fact that witnesses had invoked the Fifth Amendment" and on retrial, "the Government may introduce the fact of the Fifth Amendment invocations into evidence").

Defendants do not—and cannot—dispute the probative value of the testimony. Indeed, they concede as much. The witnesses were key participants in the illegal price-fixing conspiracy. Indeed, they were central figures in the DOJ criminal cases. Young Decl., ¶ 6. They are knowledgeable witnesses possessing firsthand direct knowledge of the illegal activity. *Id.* They appear on many of documents evidencing the conspiracy, including notes of meetings and emails with others. *Id.* Rather than providing the Class their substantive testimony on these key topics under oath, they refused to testify.

---

[16] Notwithstanding Matsuo's lack of overtures towards making Okubo available for a second deposition as the parties had stipulated prior to their October 28, 2019, letter.

There is no unfair prejudice here. Plainly, "the mere fact that a Fifth Amendment invocation is 'damning' to a party's position does not preclude its introduction." *In re 650 Fifth Ave.*, 934 F.3d at 172. Courts routinely admit the testimony because of its high probative value. *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 781960 at *4-5 (N.D. Cal. Mar. 13, 2007) (denying defendants' motion *in limine* to exclude reference to witness's deposition testimony invoking the Fifth Amendment). In fact, courts ordinarily conduct "a balancing test which weighs the need for the information being sought . . . against the afforded constitutional protections . . . .'" *Id.* at *4 (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer* 232 F.3d 1258, 1268 (9th Cir. 2000)); *see Planned Parenthood*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006 at 31-32; *Aragonez*, 2008 WL 11342742 at *2. Defendants fail to address the balancing required, instead offering the *ipse dixit* assertion that any evidence of a Fifth Amendment invocation is unfairly prejudicial.[17] Here, the possibility the testimony may in fact be "damning" is not sufficient. Indeed, any such prejudice is not unfair because it is easily outweighed by the prejudice to the Class resulting from the foreclosure of discovery during the discovery period and the tardiness of the efforts to recant that testimony on the eve of trial.

Indeed, the admissibility of evidence of invocations of the Fifth Amendment is well recognized. The ABA has published two model jury instructions for use in civil antitrust cases when witnesses invoke the Fifth Amendment—clearly contemplating the admission of the underlying invocations to justify such instructions regardless of its prejudicial effect. AM. BAR. ASS'N, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES 348, 350 (2016). The Ninth Circuit has also approved admission into evidence of (1) a videotaped deposition in which the defendant invoked the Fifth Amendment and (2) written discovery responses in which the defendant invoked the Fifth Amendment "an additional 150 times." *S.E.C. v. Jasper*, 678 F.3d 1116, 1125-26 (9th Cir. 2012). The Court noted "[a]s properly instructed, the jury could have concluded that the sum total of [defendant's] Fifth

---

[17] Defendants misconstrue *In re TFT-LCD Antitrust Litigation*. There, while the court denied Best Buy's motion *in limine* "as framed," it did so "subject to offers of proof at trial" while noting references to invocations of the Fifth Amendment and applications of adverse inferences therefrom "will be considered on a case by case basis." *In re TFT-LCD Antitrust Litig.*, No. 07-md-1827, Dkt. 8298 at *5. Judge Illston did not "broadly exclude[ ] Fifth Amendment evidence" as Defendants claim, Motion at 14, but indicated she would consider such evidence.

Amendment invocations supported the adverse inference against him." *Id*. at 1125. Here, compared the voluminous amount of invocations admitted into evidence in *Jasper*, any prejudice that may result from the invocations here can hardly be considered unfair or sufficient to preclude its admissibility.[18]

### B.  Inoue, Kinoshita, Imai and Okubo's trial testimony should be precluded

The Ninth Circuit has recognized that "[t]rial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial." *Nationwide*, 541 F.3d at 910. "'[B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent.'" *Id.* (quoting *Graystone Nash*, 25 F.3d at 190). The key consideration is the balance between the party seeking to waive prior invocation of the privilege with the "'unfair and unnecessary prejudice to the other side.'" *Id*.

Defendants should not be permitted to shield their testimony at duly-noticed depositions, only to revoke the privilege at a time of their liking. *See In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) ("[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion"); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 577 (1st Cir. 1989) ("A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial") Here, the prejudice to the Class by permitting witnesses' trial testimony is extreme because, among other reasons, discovery has long closed, expert reports have been submitted, summary judgment motions have been filed and trial preparation is well underway. *See supra* at 11. When the witnesses refused to provide the Class the testimony to which they were entitled, they forfeited their rights to rely on that evidence in these proceedings. Defendants' motion seeks to

---

[18] At a minimum, even were the court to permit the witnesses to present substantive testimony despite prior invocations of the Fifth Amendment, the adverse inference instruction is warranted. For example, in *Aragonez v. Huff*, Case No. EDVC 07-992-VAP (JCRx), 2008 WL 11342742 (C.D. Cal. Dec. 16, 2008), the defendant sought to present substantive testimony following a prior deposition in which he invoked the Fifth Amendment. The court permitted the testimony at trial following a second deposition. *Id*. at *1. The *Aragonez* court recognized the prejudice to plaintiffs from defendant's earlier refusal to answer questions "while discovery was open and further investigation into certain critical areas could have been more easily conducted." *Id*. at *2. The court concluded that the prejudice and unfairness to plaintiffs caused by the prior invocation justified an adverse inference instruction. *Id*.

turn this on its head, to the detriment of the Class. Permitting this testimony would give Defendants multiple opportunities to offer counter-narratives after all other discovery is closed, and no tools to test the counter-narratives will be available. Defendants attempted to withdraw their prior invocations on the eve of trial, less than sixty days before trial was to begin. That trial was postponed another month does not make their efforts any more timely, nor does it undo the prejudice it would cause to permit this new testimony at this late date.

*In re 650 Fifth Ave.* does not help Defendants. Defendants assert the court's decision there that the Government suffered no prejudice was not rooted in the fact "the Government suffered no prejudice given its opportunity two and a half months before trial to take depositions." Not so. In fact, the absence of prejudice derived from the fact—unlike here—that "the proceedings had been paused for years" and the Government had over six months to depose only two witnesses. *In re 650 Fifth Ave.*, 934 F.3d at 170; *see also id.* at 170-71 ("We find it hard to see how the Government in 2017 would be unfairly prejudiced because it did not have the benefit of depositions before a 2013 trial that never occurred").[19] Four years between attempted revocation and trial is a far cry from the situation here.

By springing this request to revoke their prior invocations on the Class at this late hour, Defendants place the Class at precisely the disadvantage courts warn against. *See Nationwide*, 541 F.3d at 910 ("'[t]he opportunity to combat the newly available testimony might no longer exist, a new investigation could be required, and the orderly preparation of trial preparation could be disrupted.'") (quoting *Graystone Nash*, 25 F.3d at 191); *Certain Real Prop.*, 55 F.3d at 86 ("opposing parties will frequently suffer prejudice (at the very least from increased costs and delays) when a litigant relies on the Fifth Amendment during discovery and then decides to waive the privilege much later in the proceeding").

**IV. CONCLUSION**

For the foregoing reasons, the Class respectfully requests the Court deny the Motion.

---

[19] After ELNA and Matsuo filed the Motion, NCC announced its intention to file a similar motion with respect to its Fifth Amendment witness Noriaki Kakizaki. The parties met and conferred today, December 20, 2019. Counsel for NCC advised Plaintiffs that in addition to calling Kakizaki, if at any later point, any of NCC's many other Fifth Amendment witnesses agrees to testify at trial, NCC will seek the Court's permission to present that testimony as well. Young Decl, ¶ 16.

| | |
|---|---|
| Dated: December 20, 2019 | Respectfully Submitted,<br>JOSEPH SAVERI LAW FIRM, INC.<br><br>By:  *Joseph R. Saveri*<br>         Joseph R. Saveri<br><br>Joseph R. Saveri (State Bar No. 130064)<br>Steven N. Williams (State Bar No. 175489)<br>James G. Dallal (State Bar No. 277826)<br>Anupama K. Reddy (State Bar No. 324873)<br>Christopher K.L. Young (State Bar No. 318371)<br>JOSEPH SAVERI LAW FIRM, INC.<br>601 California Street, Suite 1000<br>San Francisco, California 94108<br>Telephone:  (415) 500-6800<br>Facsimile:   (415) 395-9940<br>Email:        jsaveri@saverilawfirm.com<br>                    swilliams@saverilawfirm.com<br>                    jdallal@saverilawfirm.com<br>                    areddy@saverilawfirm.com<br>                    cyoung@saverilawfirm.com<br><br>*Lead Counsel for the Direct Purchaser Class* |