Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

Steven Kaufhold (SBN 157195)
KAUFHOLD GASKIN LLP
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone:  (415) 445-4621
Facsimile:  (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con
Corp. and United Chemi-Con, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IN RE CAPACITORS ANTITRUST
LITIGATION

All Direct Purchaser Actions,
Case No. 3:14-cv-03264-JD

*The AASI Beneficiaries' Trust, by and Through
Kenneth A. Welt, Liquidating Trustee* v. *AVX Corp.
et al.*, Case No. 3:17-cv-03472-JD

*Avnet, Inc.* v. *Hitachi Chemical Co., Ltd., et al.*,
Case No. 3:17-cv-07046-JD

*Benchmark Electronics, Inc., et al.* v. *AVX Corp. et
al.*, Case No. 3:17-cv-07047-JD

*Arrow Electronics, Inc.* v. *ELNA Co., Ltd. et al.*,
Case No. 3:18-cv-02657-JD

*Flextronics International USA, Inc.'s Individual
Action*, Case No. 3:14-cv-03264-JD

*Jaco Electronics, Inc., et al.* v. *Nippon Chemi-Con
Co. et al.*, Case No. 19-cv-01902-JD

**DEFENDANTS NIPPON CHEMI-CON
CORP.'S AND UNITED CHEMI-CON,
INC.'S MOTION FOR AN ORDER (I)
ALLOWING NORIAKI KAKIZAKI TO
TESTIFY SUBSTANTIVELY AT TRIAL
AND (II) PRECLUDING PLAINTIFFS
FROM OFFERING EVIDENCE OF
MR. KAKIZAKI'S PRIOR
INVOCATION OF HIS FIFTH
AMENDMENT RIGHTS AT AN
EARLIER DEPOSITION**

Master Docket No.: 3:17-md-2801-JD

Date:  January 30, 2020
Time:  10:00 a.m.
Courtroom 11
Hon. James Donato

Case No.: 3:14-cv-3264-JD

**Oral Argument Requested**

1

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF

RECORD:

PLEASE TAKE NOTICE that Defendants Nippon Chemi-Con Corporation ("NCC") and

United Chemi-Con, Inc. ("UCC" and, collectively with NCC, "Defendants") will and do move

the Court for an Order allowing Mr. Noriaki Kakizaki to testify substantively at trial and

precluding evidence that Mr. Kakizaki had previously invoked his Fifth Amendment rights at an

earlier deposition, to be heard before the Honorable James Donato in the San Francisco

Courthouse, Courtroom 11, 450 Golden Gate Avenue, San Francisco, CA 94102 on January 30,

2020 at 10:00 a.m.  This Motion is based on this Notice of Motion, Rule 403 of the Federal Rules

of Evidence, relevant caselaw, the papers and pleadings on file in this matter and all related

matters, and on the subsequent papers and arguments that may be presented on this matter.

Defendants request oral argument on this Motion.

1

## <u>TABLE OF CONTENTS</u>

2

ISSUES TO BE DECIDED ................................................................................................. 1

3

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

4

BACKGROUND ................................................................................................................. 3

5

LEGAL FRAMEWORK .................................................................................................... 5

6

ARGUMENT ...................................................................................................................... 6

7

I.        MR. KAKIZAKI SHOULD BE ALLOWED TO TESTIFY
8                         SUBSTANTIVELY AND WITHDRAW HIS FIFTH AMENDMENT
                         INVOCATION BECAUSE HIS TESTIMONY IS CRITICAL TO THE
9                         CASE AND PLAINTIFFS WILL SUFFER NO PREJUDICE. .......................................... 7

10        A.      Mr. Kakizaki's Substantive Testimony Is Critical to the
                         Adjudication of This Case. ...................................................................... 7

11

        B.      Permitting Mr. Kakizaki to Testify Substantively Would Not
12                       Result in Unfair or Unnecessary Prejudice to Plaintiffs. .......................................... 9

13   II.       THE COURT SHOULD EXCLUDE REFERENCES TO MR.
                        KAKIZAKI'S FIFTH AMENDMENT INVOCATION BECAUSE THE
14                       DANGER OF UNFAIR PREJUDICE TO DEFENDANTS
                       SUBSTANTIALLY OUTWEIGHS THE PROBATIVE VALUE OF THE
15                       WITHDRAWN FIFTH AMENDMENT INVOCATION. ................................................. 10

16   CONCLUSION .................................................................................................................. 12

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

CASES

3

*Allstate Ins. Co.* v. *James*,
4        845 F.2d 315 (11th Cir. 1988) ...........................................................................6, 11

5
*Davis-Lynch, Inc.* v. *Moreno*,
6        667 F.3d 539 (5th Cir. 2012) .....................................................................................5

7
*Evans* v. *City of Chicago*,
        513 F.3d 735 (7th Cir. 2008) ................................................................................6, 9
8

*SEC* v. *Graystone Nash, Inc.*,
9        25 F.3d 187 (3d Cir. 1994).....................................................................................6, 10

10
*Harrell* v. *DCS Equip. Leasing Corp.*,
11       951 F.2d 1453 (5th Cir. 1992) ..................................................................................11

12
*Martinez* v. *City of Fresno*,
        No. 06-CV-00233-OWW-GSA, 2010 WL 761109 (E.D. Cal. Mar. 3, 2010) ..........................6
13

*Nationwide Life Ins. Co.* v. *Richards*,
14       541 F.3d 903 (9th Cir. 2008) ....................................................................................6

15
*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
16       No. 07-md-1827-SI (N.D. Cal. May 4, 2012), ECF No. 5597 ................................12

17
*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
        No. 07-md-1827-SI (N.D. Cal. July 11, 2013), ECF No. 8298.......................6, 12
18

RULES
19

Fed. R. Evid. 403 ........................................................................................................11
20

21

22

23

24

25

26

27

28

1

## <u>ISSUES TO BE DECIDED</u>

2       (1) Whether the Court should enter an order allowing Mr. Noriaki Kakizaki to present

3   substantive testimony at trial.

4       (2) Whether the Court should preclude evidence of Mr. Kakizaki's invocation of his Fifth

5   Amendment rights at an earlier deposition.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      In August 2017, Noriaki Kakizaki, a long-time employee of NCC, was deposed.

3   Plaintiffs[1] were informed in advance that, in light of the pending and likely imminent criminal

4   charges relating to the alleged conspiracy, Mr. Kakizaki would invoke his Fifth Amendment

5   rights, as is his constitutional right, and refuse to provide substantive testimony at that time.

6   Plaintiffs nonetheless decided to proceed with the deposition.  In May 2018, NCC resolved the

7   criminal charges against it by entering into a plea agreement and NCC was sentenced in October

8   2018.  In that plea agreement, the Department of Justice ("DOJ") represented that that it did "not

9   contemplate the filing of any additional criminal charges against [NCC's] current or former

10  officers or employees based on the charge in the Indictment."  Plea Agreement, *United States* v.

11  *Nippon Chemi-Con Corp.*, No. 4:17-CR-00540-JD (N.D. Cal. May 31, 2018), ECF No. 54.

12     This fall, as the parties were preparing for trial, NCC and UCC approached Mr. Kakizaki

13  and asked if, in light of the changed circumstances, he would be willing to withdraw his prior

14  invocation of his Fifth Amendment rights and testify substantively at the upcoming trial.

15  Mr. Kakizaki agreed.  Accordingly, in October 2019, Defendants provided notice of this

16  development to DPPs and offered to make Mr. Kakizaki available for a pretrial deposition in the

17  United States should Plaintiffs desire to depose him.  Defendants repeated this offer to DPPs and

18  DAPs at a meet and confer in December 2019.  Neither DPPs nor DAPs have accepted NCC's

19  offer and have made clear that they intend to oppose Mr. Kakizaki's substantive testimony at

20  trial and try to rely, instead, on Fifth Amendment invocations.

21     Trials, of course, are intended to allow the factfinder to make determinations based upon

22  the full extent of admissible evidence available.  It is, therefore, no surprise that courts routinely

23

24  [1]  Plaintiffs for purposes of this Motion are the class of Direct Purchaser Plaintiffs ("DPPs") and
    certain opt-out plaintiffs:  Flextronics International USA, Inc.; AASI Beneficiaries' Trust, by and
    through Kenneth A. Welt, Liquidating Trustee; Arrow Electronics, Inc.; Avnet, Inc.; Benchmark

25  Electronics, Inc., Benchmark Electronics Huntsville, Inc., Benchmark Electronics Manufacturing
    Solutions, Inc., Benchmark Electronics Phoenix, Inc., Benchmark Electronics Tijuana, S. de R.L.

26  de C.V., and Benchmark Electronics De Mexico S. de R.L. de C.V.; and Jaco Electronics and
    Vermont Street Acquisition (collectively, the "Direct Action Plaintiffs" or "DAPs").

27

28

1    allow witnesses to revoke their Fifth Amendment invocations and to testify substantively where

2    the opposing party suffers no prejudice.  This is particularly true when the witness in question

3    can provide testimony central to the claims and defenses in the case, as here.  Along the same

4    lines, where a witness ultimately testifies at trial and is available for cross-examination, courts

5    also routinely exclude evidence of prior Fifth Amendment invocations, finding that the prior

6    invocations have limited probative value, which would be substantially outweighed by the risk of

7    unfair prejudice.

8         That analysis applies here.  Mr. Kakizaki has significant knowledge and information

9    about NCC and UCC and their relationships with customers and competitors, and also about the

10   meetings and documents which Plaintiffs hold up as evidence of an overarching, global, twelve-

11   year conspiracy.  Because Mr. Kakizaki's testimony is central to the case, and because Plaintiffs

12   will suffer no prejudice (particularly given the opportunity they have, and have had, to take a

13   pretrial deposition), Defendants respectfully request that the Court reject Plaintiffs' attempt to

14   prevent Mr. Kakizaki from testifying substantively at trial and preclude evidence of his prior

15   invocation of his Fifth Amendment rights.

16                            **BACKGROUND**[2]

17        Plaintiffs noticed Mr. Kakizaki's deposition on July 19, 2017.  *See* Ex. 1, Dep. Notice of

18   Noriaki Kakizaki.  At that time, Plaintiffs knew that NCC and other defendants had either

19   already been criminally charged by the DOJ, or expected to be charged imminently,[3] and that the

20

21

22   [2] "Ex. ___" shall refer to the exhibits attached to the Declaration of Farrah R. Berse in Support of
     Defendants NCC's and UCC's Motion for an Order (I) Allowing Noriaki Kakizaki to Testify at
23   Trial and (II) Precluding Plaintiffs from Offering Evidence of Mr. Kakizaki's Prior Invocation of
     His Fifth Amendment Right at an Earlier Deposition, dated December 23, 2019 ("Berse Decl.").

24   [3] *See, e.g.,* Information against Elna Co., Ltd., *United States* v. *Elna Co., Ltd.,* No. 3:16-cr-
     00365-EMC (N.D. Cal. Aug. 22, 2016), ECF No. 1; Information against Holy Stone Holdings
25   Co., Ltd., *United States* v. *Holy Stone Holdings Co., Ltd.,* No. 16-CR-00366-EMC (N.D. Cal.
     Aug. 22, 2016), ECF No. 1.  Indeed, NCC received its indictment on October 18, 2017.
26   Indictment of Nippon Chemi-Con Corp., *United States* v. *Nippon Chemi-Con Corp.,* No. 3:17-cr-
     00540-MMC (N.D. Cal. Oct. 18, 2017), ECF No. 1.

27

28

DOJ had also indicted several employees of these companies.[4]  Nevertheless, and despite being

informed that Mr. Kakizaki would invoke his Fifth Amendment rights, Plaintiffs elected to

proceed with his deposition on August 3, 2017.  Berse Decl. ¶ 3.  Mr. Kakizaki chose to lawfully

invoke his Fifth Amendment rights at that time, as did numerous witnesses in this matter—most

of whom were not subsequently charged with a crime.  Mr. Kakizaki (with input and advice from

his independent legal counsel) decided to invoke his rights under the Fifth Amendment.  This

was not a decision made by, or in the control of, NCC or UCC.

On May 31, 2018, NCC pled guilty and was sentenced on October 3, 2018.  In the plea

agreement, the DOJ represented that it did "not contemplate the filing of any additional criminal

charges against [NCC's] current or former officers or employees based on the charge in the

Indictment."  Plea Agreement, *United States* v. *Nippon Chemi-Con Corp.*, No. 4:17-cr-00540-JD

(N.D. Cal. May 31, 2018), ECF No. 54.  Despite these developments, to date, Plaintiffs have

never requested to reopen Mr. Kakizaki's deposition.[5]  *See* Berse Decl. ¶ 4.

As Defendants began preparing for trial, and in light of the DOJ's representation—and no

new charges since then—Defendants asked if Mr. Kakizaki would be willing to testify

substantively at trial and withdraw his invocation of the Fifth Amendment.  Mr. Kakizaki agreed.

Berse Decl. ¶ 5.  Defendants communicated this development to DPPs.[6]  Specifically, on

October 22 and 23, 2019, in a series of communications, Defendants informed DPPs that

---

[4]  *See, e.g.*, Indictments of Tomohide Date, Satoru Miyashita, Yasutoshi Ohno, Masanobu Shiozaki, Kiyoaki Shirotori, and Takuro Isawa, *United States* v. *Tomohide Date et al.*, No. 4:15-cr-00163-JD (N.D. Cal. Nov. 2, 2016), ECF No. 14 (Takuro Isawa was an NCC employee).

[5]  Notably, and even though fact discovery was closed, the parties allowed for multiple non-expert depositions stretching into early 2019, including NCC's 30(b)(6) witness, Mr. Tomohiro Inoue.

[6]  Defendants initially reached out only to DPPs, assuming that DPPs would relay such communications to all DAPs, given that this Court has repeatedly ordered that Plaintiffs coordinate amongst themselves regarding such issues.  *See, e.g.*, Minute Order, Case No. 14-cv-03264-JD (Oct. 2, 2015), ECF No. 917 at 2 (ordering DPPs and Flextronics to "work together to the fullest extent possible" and noting that "the Court expects maximum efficiency and non-duplication on the DPP side, and will hold counsel responsible for that"); Minute Order, Case No. 14-cv-03264-JD (Apr. 18, 2016), ECF No. No. 1191 at 3 ("Direct purchaser plaintiffs, Flextronics and indirect purchaser plaintiffs are ordered to coordinate on deposition notices and topics.").

1    Defendants intended to call Mr. Kakizaki at trial.  Ex. 2, Oct. 23 Email from E. Sega re: In re

2    Capacitors: Witness Notification.  Over the next several days, there were communications among

3    the parties regarding whether there would be a meet and confer on this issue and, if so, who

4    could participate.  *Id.*; *see also* Berse Decl. ¶ 6.  Eventually, Defendants reiterated their intention

5    to call Mr. Kakizaki and offered to make him available in the United States for a substantive

6    deposition, if DPPs were interested.  *Id.* ¶ 7.  Defendants explained that Plaintiffs would not

7    suffer prejudice because they would have an ample opportunity to depose Mr. Kakizaki prior to

8    trial.  *See* Ex. 3, Oct. 30, 2019 Email from J. Tatoy re: In re Capacitors: Notice of Intent to Call

9    Witness; Ex. 4, Oct. 30, 2019 Letter Regarding Witness Testimony.  On December 11, 2019,

10   Defendants again contacted DPPs to confirm whether Plaintiffs objected to Mr. Kakizaki's

11   withdrawal of his Fifth Amendment invocation and to Defendants calling Mr. Kakizaki at trial.

12   Ex. 5, Dec. 11, 2019 Email from F. Berse; *see also* Berse Decl. ¶ 8.  After exchanging several

13   additional emails, on December 20, 2019, Defendants, DPPs, and DAPs met and conferred

14   regarding the issues raised by this Motion.  Berse Decl. ¶ 9.  The parties were unable to reach

15   agreement.  *Id.*

16                                   **LEGAL FRAMEWORK**

17          In order for Defendants to present their full case to the jury, they require the testimony of

18   the most relevant witnesses.  Although witnesses may, of course, invoke their Fifth Amendment

19   rights, there is no reason to deny the jury the substantive testimony of witnesses who no longer

20   intend to invoke those rights, particularly where there exists no prejudice to the opposing party.

21   *Davis-Lynch, Inc.* v. *Moreno*, 667 F.3d 539, 547 (5th Cir. 2012) ("Generally, '[t]he court should

22   be especially inclined to permit withdrawal of the privilege if there are no grounds for believing

23   that opposing parties suffered undue prejudice from the litigant's later-regretted decision to

24   invoke the Fifth Amendment.'" (quoting *United States* v. *Certain Real Prop. & Premises Known*

25   *as 4003–4005 5th Ave.*, 55 F.3d 78, 84 (2d Cir. 1995))).

26

27

28

1        In fact, courts are most apt—as is the case here—to permit such testimony where the

2   opposing party has an opportunity to cure any prejudice by taking a substantive deposition. *See*

3   *Evans* v. *City of Chicago*, 513 F.3d 735, 745 (7th Cir. 2008) (holding that trial court cured the

4   prejudice by allowing redepositions of certain witnesses who revoked Fifth Amendment

5   invocations); *see also Martinez* v. *City of Fresno*, No. 06-CV-00233-OWW-GSA, 2010 WL

6   761109, at *4 (E.D. Cal. Mar. 3, 2010) (finding no prejudice where plaintiffs will have "full

7   opportunity to take [witness's] deposition"); *cf. Nationwide Life Ins. Co.* v. *Richards*, 541 F.3d

8   903, 910 (9th Cir. 2008) (rejecting witness's attempt to revoke Fifth Amendment invocation "at a

9   time when an adverse party can no longer secure the benefits of discovery") (quoting *SEC* v.

10  *Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994)).  That Plaintiffs have chosen not to take

11  advantage of Defendants' offer to make Mr. Kakizaki available for a pretrial deposition does not

12  change this calculus.

13       In addition, courts repeatedly hold that Fifth Amendment invocations have little probative

14  value compared to substantive testimony, and, thus, routinely exclude evidence of such

15  invocations, particularly where live testimony is available.  *See, e.g.*, Final Pretrial Sched. Order,

16  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal. July 11, 2013)

17  ("*TFT-LCD*"), ECF No. 8298 at 5 (excluding references to the "Fifth Amendment invocation of

18  witnesses who thereafter withdrew the invocation"); *Allstate Ins. Co.* v. *James*, 845 F.2d 315,

19  320 (11th Cir. 1988) (finding prior invocation had little probative value when defendants "chose

20  to exercise their Constitutional rights as explained to them upon advice of their attorney").

21  **<u>ARGUMENT</u>**

22       Mr. Kakizaki is a long-time employee of NCC and will testify substantively as to issues

23  central to this litigation—testimony that will no doubt be helpful to the trier of fact.  In

24  particular, Mr. Kakizaki attended meetings relevant to the allegations in this case and received

25  documents that Plaintiffs have consistently alleged provide evidence of NCC's and UCC's

26  participation in the alleged conspiracy.  Mr. Kakizaki's testimony is, therefore, critical to the

27

28

adjudication of this case.  Moreover, there is no prejudice to Plaintiffs in allowing Mr. Kakizaki

to testify substantively at trial and to withdraw his prior invocation of the Fifth Amendment.

There has already been substantial discovery that allowed Plaintiffs to develop their case, and

Plaintiffs have had several months since Defendants first gave notice of their intent to call

Mr. Kakizaki at trial to take the deposition Defendants have offered.

Finally, where, as here, live testimony is available, courts routinely find that reference to

previous invocations of the Fifth Amendment is more prejudicial than probative, and have,

therefore, excluded them.  This Court should do the same.

**I.      MR. KAKIZAKI SHOULD BE ALLOWED TO TESTIFY SUBSTANTIVELY
        AND WITHDRAW HIS FIFTH AMENDMENT INVOCATION BECAUSE HIS
        TESTIMONY IS CRITICAL TO THE CASE AND PLAINTIFFS WILL SUFFER
        NO PREJUDICE.**

**A.      MR. KAKIZAKI'S SUBSTANTIVE TESTIMONY IS CRITICAL TO THE
        ADJUDICATION OF THIS CASE.**

The Court should allow Mr. Kakizaki to withdraw his Fifth Amendment invocation and

testify substantively at trial because permitting substantive testimony from Mr. Kakizaki will

assist the Court in adjudicating this case based on consideration of all the material facts.

Mr. Kakizaki first started working for NCC in 1982, and held various sales positions at NCC and

its subsidiaries.  From 2004 through 2008, Mr. Kakizaki was the President of UCC, and,

following his return to Japan in 2008, Mr. Kakizaki became a director of sales with NCC, rising

over the next five years to become a Senior Executive Managing Director of sales, as well as a

board member.  Throughout his tenure at NCC, Mr. Kakizaki attended and received materials

from many of the meetings Plaintiffs allege to be unlawful.  *See, e.g.*, Ex. 6, UCC-CAP-

01259850 (email dated Feb. 23, 2005, from Mr. Kakizaki to NCC personnel, reporting on a

Feb. 17, 2005 "North American JEITA" meeting); Ex. 7, UCC-CAP-00830812 (minutes from an

April 26, 2005 meeting with AVX in which various Chemi-Con entities discuss a potential joint

venture with AVX); Ex. 8, NCC-CAP-00231237 (email dated July 17, 2008 from Mr. Kakizaki

to UCC employees conveying information that Nichicon would begin a price increase shortly).

As such, Mr. Kakizaki is well-positioned to provide testimony that will aid the jury in determining whether NCC, UCC, and the other defendants entered into an overarching scheme to fix prices for aluminum, tantalum, and film capacitors throughout the class period.

Plaintiffs themselves recognize Mr. Kakizaki's significance.  As a starting point, Plaintiffs insisted that Defendants produce Mr. Kakizaki's documents.  Berse Decl. ¶ 10.  Indeed, Defendants ultimately produced thousands of Mr. Kakizaki's documents to Plaintiffs on January 27, 2016, and supplemented that production on July 21, 2017, July 26, 2017, and July 28, 2017, in advance of Mr. Kakizaki's deposition.  *Id.*  Moreover, at Mr. Kakizaki's deposition, Plaintiffs spent significant time asking Mr. Kakizaki questions about NCC's and UCC's sales practices and about contacts between competitors.  *See, e.g.*, Ex. 9, Kakizaki Dep. Tr. 17:19–23 ("Q:  Isn't it also true that from at least 2004 to 2014, you had sales, marketing, and pricing responsibility as part of your job at NCC on behalf of NCC with respect to sales of capacitors made in the United States?"); Tr. 27:23–28:2 ("Q:  And NCC's purpose in participating in the ATC, MK, CUP, and five-party meetings was to coordinate with their competitors so as to raise prices in the industry and earn greater profits isn't that correct?"); Tr. 36:5–7 ("Q:  And in fact, during this period you had authority to determine pricing for UCC's sales of capacitors to purchasers in the United States; correct?"); Tr. 81:11–15 ("Q:  So in fact, this communication, Exhibit 1810, with the attachment of Exhibit 1811, reflects an attempt by Nippon Chemi-Con to harmonize its communications with its customers with pricing so as to conceal Nippon Chemi-Con's cartel activity; correct?").

Additionally, Plaintiffs used thirty-eight total exhibits during Mr. Kakizaki's deposition, many of which Plaintiffs have consistently cited in their expert reports and their submissions to this Court as evidence of NCC's and UCC's involvement in the alleged conspiracy.  For example, Plaintiffs rely on a set of meeting minutes between AVX and NCC personnel, listing Mr. Kakizaki as an attendee, which Plaintiffs argue is evidence of a conspiratorial agreement. *See, e.g.*, Direct Purchaser Class Plaintiffs' Opposition to United Chemi-Con, Inc.'s Motion for

1   Summary Judgment at 4–5, *In re Capacitors Antitrust Litigation*, No. 3:14-cv-3264 (N.D. Cal.

2   July 27, 2019), ECF No. 2395 ("DPP Opp'n") (citing Opp'n Ex. 28).[7]   And DPPs frequently cite

3   an email chain, which includes an email from Mr. Kakizaki regarding a potential meeting

4   between Mr. Kakizaki and the "President of Company N," and suggest that this document

5   demonstrates that NCC used information that was allegedly improperly obtained from

6   competitors. *Id.* at 13 (citing Opp'n Ex. 74).  Mr. Kakizaki's testimony is necessary to explain

7   these documents and the related meetings and associated communications to the jury.  His

8   testimony is undeniably relevant—indeed critical—to this case, and the Court should therefore

9   allow the jury to hear it.

10          It is not enough for the Plaintiffs to stick their heads in the sand to evade testimony that is

11  critical to the outcome of this action—particularly where the decision to invoke Fifth

12  Amendment rights was not within Defendants' control.  The fact that a witness previously

13  invoked his Fifth Amendment rights at the advice of counsel is neither unusual or noteworthy.

14  Mr. Kakizaki should be permitted to testify to the facts before the jury in this matter.

15          **B.      PERMITTING MR. KAKIZAKI TO TESTIFY SUBSTANTIVELY**
16                  **WOULD NOT RESULT IN UNFAIR OR UNNECESSARY PREJUDICE**
                    **TO PLAINTIFFS.**

17          The Court should also permit Mr. Kakizaki to testify substantively at trial because doing

18  so will not create any unfair or unnecessary prejudice to Plaintiffs.  As a starting point, Plaintiffs

19  have had several months to take Mr. Kakizaki's pretrial deposition and still have time to do so,

20  should they desire. *See Evans*, 513 F.3d at 742 (deciding just five weeks prior to trial that

21  several key witnesses be permitted to testify so long as they submit to depositions and answer

22  interrogatories).  Moreover, the preparatory burden of taking this deposition should be minimal:

23

24
_____

25  [7]  DPPs have also used this document, as well as others, in the deposition of other witnesses and
    in their expert reports.  "Opp'n Ex. __" refers to the exhibits accompanying the Request for
26  Judicial Notice in Support of Direct Purchaser Class's Oppositions to Defendants' Motions for
    Summary Judgment and *Daubert* Motions, *In re Capacitors Antitrust Litigation*, No. 3:14-MD-
    3264 (N.D. Cal. July 27, 2019), ECF No. 2399.
27

28

1   Plaintiffs have already identified relevant documentary evidence and developed substantive

2   questions to ask Mr. Kakizaki.  *See generally* Ex. 9, Kakizaki Dep.[8]

3          Furthermore, the discovery record in this case has been robust: NCC and UCC alone have

4   produced hundreds of thousands of documents—thousands of which came from Mr. Kakizaki's

5   files—totaling millions of pages.  Berse Decl. ¶¶ 10–11.  Additionally, Plaintiffs have taken

6   dozens of depositions, including of NCC's 30(b)(6) witness.  Berse Decl. ¶ 12.  In other words,

7   there will be no prejudicial effect from an additional deposition, where Plaintiffs have had the

8   opportunity to review the substantial document discovery here, as well as the deposition

9   testimony from dozens of other witnesses.  *Cf. Graystone Nash, Inc.*, 25 F.3d at 190 (explaining

10  that invocation of the Fifth Amendment can mask the underlying facts and deprive litigation "of

11  a source of information that might conceivably be determinative in a search for the truth").

12         Given Plaintiffs' opportunity to depose Mr. Kakizaki and the already robust discovery

13  record, the interests of developing a fulsome factual record far outweigh what little harm, if any,

14  Plaintiffs will face at trial should Mr. Kakizaki provide substantive testimony.

15  **II.    THE COURT SHOULD EXCLUDE REFERENCES TO MR. KAKIZAKI'S
        FIFTH AMENDMENT INVOCATION BECAUSE THE DANGER OF UNFAIR
16      PREJUDICE TO DEFENDANTS SUBSTANTIALLY OUTWEIGHS THE
        PROBATIVE VALUE OF THE WITHDRAWN FIFTH AMENDMENT
17      INVOCATION.**

18         The Court should also exclude evidence of Mr. Kakizaki's Fifth Amendment invocation

19  from trial because the danger of unfair prejudice to Defendants that would arise from telling the

20  jury of his prior invocation substantially outweighs any probative value to be gained.  *See* Fed.

21

22  [8]  In Direct Purchaser Class's Opposition to the Motion to (1) Admit Trial Testimony and (2)
    Preclude Evidence of Prior Invocations of the Fifth Amendment, ECF No. 1043, filed in
23  response to Elna's and Matsuo's motion, DPPs cite to Defendants' statement at the December
    20, 2019 meet and confer that Defendants might identify other trial witnesses at a later time to
24  testify at trial, if and when those witnesses decide to revoke their previous Fifth Amendment
    invocations.  ECF No. 1043 at 15 n.19.  Those potential witnesses are not at issue at this time,
25  and have no bearing on whether Mr. Kakizaki's revocation of his Fifth Amendment invocation
    will unduly and unfairly prejudice Plaintiffs.  Whether such witnesses' revocations will be
26  accepted and whether they will be allowed to provide substantive testimony at trial will depend
    on circumstances at the time notice of their intended testimony is given.
27

28

1   R. Evid. 403.  This is particularly true as Mr. Kakizaki is now willing to present his live,

2   substantive testimony.[9]

3        The danger to Defendants is high that a jury "may attach undue weight" or misunderstand

4   Mr. Kakizaki's decision to invoke his constitutional privilege.  *See Harrell* v. *DCS Equip.*

5   *Leasing Corp.*, 951 F.2d 1453, 1464–65 (5th Cir. 1992) (finding that prejudicial effect of

6   admission of prior invocation evidence—even when that invocation was improper—outweighs

7   probative value in light of later substantive deposition).  It bears emphasizing that it was

8   *Mr. Kakizaki*'s decision (not NCC's or UCC's) to invoke the Fifth Amendment in the first

9   instance.  To risk such harm to *NCC and UCC* now, after Mr. Kakizaki has agreed to revoke his

10  invocation of the privilege and to provide live, substantive testimony, would be highly

11  prejudicial to Defendants.  Furthermore, courts have held that evidence of Fifth Amendment

12  invocations in a civil case have minimal probative value.  *See, e.g.*, *Allstate Ins. Co.*, 845 F.2d at

13  320 (finding little probative value when defendants chose to exercise their constitutional rights

14  against self-incrimination while reasonably believing they were under criminal investigation);

15  *Harrell*, 951 F.2d at 1465 (explaining that invoking the privilege is "an ambiguous response" and

16  that probative value is further reduced when a witness subsequently answers the questions).

17       The *TFT-LCD* antitrust litigation provides a good example of the Northern District of

18  California's approach to withdrawn invocations of privilege.  There, Judge Illston twice excluded

19  evidence of withdrawn Fifth Amendment invocations.  In the first of two relevant trials, the

20  defendant, Toshiba, moved to exclude withdrawn invocations of Fifth Amendment privilege

21  made by several of its current and former employees who later sat for substantive depositions.

22  Ex. 10, *TFT-LCD* (Mar. 13, 2012), ECF No. 5136.  Judge Illston granted Toshiba's motion to

23  exclude without prejudice to reconsideration based on a showing of good cause and also denied

24

25  [9] Should the Court deny NCC's and UCC's Motion, Defendants reserve their rights to challenge
    any specific adverse inferences against Defendants that Plaintiffs argue should be drawn from
26  Mr. Kakizaki's testimony, or the testimony of any other witnesses who invoked their Fifth
    Amendment privileges.
27

28

1  the plaintiffs' concurrent motion regarding Fifth Amendment testimony made by other witnesses.

2  Ex. 11, *TFT-LCD* (May 4, 2012), ECF No. 5597 at 6.  The following year, in the lead-up to the

3  trial with opt-out plaintiff Best Buy, similar questions regarding the admissibility of Fifth

4  Amendment invocations came before Judge Illston.  Again, Judge Illston broadly excluded Fifth

5  Amendment evidence.  Ex. 12, *TFT-LCD* (July 11, 2013), ECF No. 8298 at 5.  This Court should

6  do the same and exclude evidence of Mr. Kakizaki's prior Fifth Amendment invocation.

7  <u>**CONCLUSION**</u>

8  For the foregoing reasons, NCC's and UCC's Motion should be granted.

9

10  Dated:  December 23, 2019

11  **PAUL, WEISS, RIFKIND, WHARTON &**

12  **GARRISON LLP**

13  By:  /s/ Joseph J. Bial

14  PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP

15  Charles F. Rule (admitted *pro hac vice*)

16  Joseph J. Bial (admitted *pro hac vice*)
   Eric R. Sega (admitted *pro hac vice*)

17  2001 K Street, NW
   Washington, DC 20006

18  Telephone:  (202) 223-7300

19  Facsimile:  (202) 223-7420
   rrule@paulweiss.com

20  jbial@paulweiss.com
   esega@paulweiss.com

21

22  PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP

23  Roberto Finzi (admitted *pro hac vice*)
   Farrah R. Berse (admitted *pro hac vice*)

24  Johan E. Tatoy (admitted *pro hac vice*)
   1285 Avenue of the Americas

25  New York, NY 10019

26  Telephone:  (212) 373-3000
   Facsimile:  (212) 757-3990

27  rfinzi@paulweiss.com

28

fberse@paulweiss.com
jtatoy@paulweiss.com

KAUFHOLD GASKIN LLP
Steven Kaufhold (SBN 157195)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone:  (415) 445-4621
Facsimile:  (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con Corp.
and United Chemi-Con, Inc.*