Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:  jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com
          jdallal@saverilawfirm.com
          areddy@saverilawfirm.com
          cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD |
| | Case No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO:<br>THE DIRECT PURCHASER CLASS ACTION | **DIRECT PURCHASER CLASS'S OPPOSITION TO DEFENDANTS NIPPON CHEMI-CON CORP.'S AND UNITED CHEMI-CON, INC.'S MOTION FOR AN ORDER (I) ALLOWING NORIAKI KAKIZAKI TO TESTIFY SUBSTANTIVELY AT TRIAL AND (II) PRECLUDING PLAINTIFFS FROM OFFERING EVIDENCE OF MR. KAKIZAKI'S PRIOR INVOCATION OF HIS FIFTH AMENDMENT RIGHTS AT AN EARLIER DEPOSITION** |
| | Date:          January 23, 2020<br>Time:         1:30 p.m.<br>Judge         Honorable James Donato<br>Courtroom:  11, 19th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND .............................................................................................. 3

III.  DEFENDANTS' MOTION SHOULD BE DENIED.................................... 6

      A.    Kakizaki's Fifth Amendment testimony should not be excluded ....................... 8

            1.    The exclusion of the testimony would cause the Class substantial prejudice.......... 8

            2.    The probative value of Kakizaki's Fifth Amendment testimony is high ............... 12

      B.    Kakizaki's trial testimony should be precluded.................................... 14

IV.   CONCLUSION ............................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 650 Fifth Ave. and Related Properties*,
934 F.3d 147 (2d Cir. 2019) ........................................................................... 7, 13

*Allstate Ins. Co. v. James*,
845 F.2d 315 (11th Cir. 1988) ............................................................................. 14

*Aragonez v. Huff*,
Case No. EDVC 07-992-VAP, 2008 WL 11342742 (C.D. Cal. Dec. 16, 2008) .............. 2, 8, 13

*Brink's Inc. v. City of New York*,
717 F.2d 700 (2d Cir. 1983) ............................................................................... 12

*Cadent Ltd. V. 3M Unitek Corp.*,
232 F.R.D. 625 (C.D. Cal. 2005) ......................................................................... 11

*Cerro Gordo Charity v. Fireman's Fund Am. Life Ins.*,
819 F.2d 1471 (8th Cir. 1987) ............................................................................. 14

*Coquina Inv. v. TD Bank, N.A.*,
760 F.3d 1300 (11th Cir. 2014) ........................................................................... 14

*Curtis. v. M&S Petroleum, Inc.*,
174 F.3d 661 (5th Cir. 1999) .......................................................................... 11, 13

*Davis-Lynch v. Moreno*,
667 F.3d 539 (5th Cir. 2012) ............................................................................. 3, 9

*In re Edmond*,
934 F.2d 1304 (4th Cir. 1991) ............................................................................. 15

*Gutierrez-Rodriguez v. Cartegena*,
882 F.2d 553 (1st Cir. 1989) ............................................................................... 15

*Iantosca v. Benistar Admin. Services, Inc.*,
567 Fed.App'x 1 (1st Cir. 2014) ...................................................................... 11, 13

*Martinez v. City of Fresno*,
Case Nos. 1:06-cv-00233 OWW GSA, 1:06-cv-01851, 2010 WL 761109 (E.D. Cal.
Mar. 3, 2010) ............................................................................................... 14

*Nationwide Life Ins. Co. v. Richards,*
  541 F.3d 903 (9th Cir. 2008) ...................................................................................*passim*

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,*
  Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006......................2, 8, 13

*In re Polyurethane Foam Antitrust Litig.,*
  152 F.Supp.3d 968 (N.D. Ohio 2015) ...................................................................... 14

*S.E.C. v. Graystone Nash,*
  25 F.3d 187 (3d Cir. 1994) ...........................................................................7, 8, 14

*Stitching Ter Behartiging Van de Belangen v. Schreiber,*
  407 F.3d 34 (2d Cir. 2005) .............................................................................. 12

*In re Tableware Antitrust Litig.,*
  Case No. C-04-3514 VRW, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007) ...............................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  Case No. M07-1827 SI, 2009 WL 4016124 (N.D. Cal. Nov. 9, 2009) ............................. 13, 15

*United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn,*
  55 F.3d 78 (2d Cir. 1995) ................................................................... 7, 8, 10, 14

*United States v. Isawa et al.,*
  Case No. 4:15-cr-00163-JD (N.D. Cal. Dec. 4, 2016). Dkt. 15 ............................................ 2, 5

*United States v. Nippon Chemi-Con Corp.,*
  No. 17-cr-00540 (N.D. Cal. May 31, 2018), Dkt. 54 ........................................................5, 12

**Other Authorities**

Federal Rule of Civil Procedure 32 (a)(3) .........................................................................11

Federal Rule of Civil Procedure 37(d) .........................................................................11

Federal Rule of Evidence 403...............................................................................6, 8, 12

AM. BAR. ASS'N, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES 348 (2016)...............13

## I.        INTRODUCTION

Defendants Nippon Chemi-Con Corp. and United Chemi-Con (collectively, "NCC") have filed a motion to avoid the consequences of their witnesses' refusal to give deposition testimony under oath by invoking the Fifth Amendment.[1] In particular, NCC moves for an order (1) allowing Noriaki Kakizaki to testify substantively at trial and (2) precluding Plaintiffs from offering evidence of Mr. Kakizaki's prior invocation of his Fifth Amendment rights at an earlier deposition (the "Motion"). Long ago, the Court set the basic rules for discovery in this case, including a defined finite period of discovery and one deposition per witness. Plaintiffs organized their prosecution of the case in reliance on those rules and followed them. Now, like their co-conspirators ELNA and Matsuo, NCC seeks to spring on the eve of trial—a time long past when discovery has closed, after the parties have prepared expert reports, briefed summary judgment motions, briefed *Daubert* motions, and are in advanced stages of trial preparation— one witness, Noriaki Kakizaki, who refused to testify at his deposition invoking the Fifth Amendment. The Motion should be denied for similar reasons. The refusal to testify during the court-ordered discovery period was strategic, exploitative and unfair. NCC not only denied Plaintiffs discovery regarding highly probative facts in a timely manner, but now seek to surprise Plaintiffs with this notice weeks before trial that the witness will provide new undisclosed testimony. When the witness refused to testify, the witness forfeited the right to provide testimony to controvert Plaintiff's claims. Indeed, the cumulative effect of these eleventh-hour invocations is multiplied.

The facts in this instance present an even more compelling case to admit the evidence of the refusal to testify and an accompanying adverse inference instruction. Kakizaki was—and is—a high level corporate executive. He has served as an officer of both defendant NCC and defendant UCC, exercising management and supervisory authority. He has served on the NCC Board of Directors. His refusal to testify is properly attributable to both NCC and UCC. There is no support in the law—or logic—to

---

[1] The Court has set this motion for hearing together with those brought by ELNA and Matsuo.

1   support the argument that previously undisclosed trial testimony will not cause prejudice and

2   unfairness.[2]

3          Like their co-conspirators ELNA and Matsuo, NCC now ascribes blame to the Class for not

4   attempting to reopen discovery after the Department of Justice ("DOJ") indicated it would no longer

5   pursue criminal charges against NCC's employees. The DOJ did so only long after discovery had closed

6   in this case, expert opinions were disclosed and trial preparation was well underway. Meanwhile,

7   multiple NCC employees have been indicted, some of whom fugitives,[3] and NCC itself has pled guilty to

8   criminal price-fixing. At heart, the Motion attempts to place fault squarely on Plaintiffs for not doing

9   something they had no obligation to do and against the Court's own instructions in this case. Plaintiffs

10  followed and relied on the Court's discovery rules. It was NCC's obligation to advise Plaintiffs. Whatever

11  prejudice which could have been ameliorated by disclosure vanished when NCC failed to provide notice

12  to Plaintiffs.

13         The law provides clear remedies for the witnesses' refusal to testify. By refusing to testify, these

14  witnesses forfeited the right to present evidence controverting Plaintiffs' claims and in support of NCC's

15  defenses. In addition to the bar on providing new or different testimony at trial, the jury is entitled to hear

16  evidence of the Fifth Amendment testimony. Kakizaki's testimony is plainly highly probative and

17  admissible, and courts have regularly given instructions to allow juries to consider such evidence. *See*,

18  *e.g.*, *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, Case No. 16-cv-00236-WHO (N.D. Cal.

19  Nov. 12, 2019), Dkt. 1006 at 31-32 (Fifth Amendment adverse inference instructions given); *Aragonez v.*

20  *Huff*, Case No. EDVC 07-992-VAP ( JCRx), 2008 WL 11342742 (C.D. Cal. Dec. 16, 2008) (same)*, see*

21

22  [2] In addition to Kakizaki, eight of the NCC's executives refused to answer questions at their
    properly noticed depositions on assertions of the Fifth Amendment. These witnesses are
23  Kazutoshi Suzuki, Takeshi Matsuzaka, Tsuneo Ohta, Takeo Tsubata, Ikuo Uchiyama, Kaname
    Takahashi, Hitoshi Arima and Tony Olita. Other than Suzuki, who gave substantive testimony on
24  some topics, these NCC and UCC executives invoked the Fifth Amendment with respect to each
    and every question.

25  [3] Defendants only identified Takuro Isawa in a parenthetical as an indicted NCC employee.
    Motion at 4, n. 4. Three other NCC employees were indicted: Yasutoshi Ohno, Takeshi
26  Matsuzaka and Kaname Takahashi. *See United States v. Isawa et al.*, Case No. 4:15-cr-00163-JD
    (N.D. Cal. Dec. 4, 2016). Dkt. 15 at 4 ¶¶ 6-7, 5 ¶¶11, 14. To date, none have appeared for criminal
27  proceedings.

28  Master File No. 3:17-md-02801-JD
    Case No. 3:14-cv-03264-JD                                   2
    ────────────────────────────────────────────────────────────────

*also* AM. BAR. ASS'N, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES 348, 350 (2016) (adverse inference instruction where witness refuses to testify invoking Fifth Amendment). The Court should admit such testimony and give instructions here.

Prejudice has indeed occurred here—to the Direct Purchaser Class (the "Class"). The Motion to provide new testimony at trial came a year and a half after discovery has closed, and only mere months before trial is to commence. This litigation has been proceeding for five years, and the parties—and witnesses—were well aware of the consequences of invoking the Fifth Amendment. Not only was the Class denied substantive testimony from Kakizaki, an individual who directly participated in and exercised control over others who directly participated in the price-fixing, during discovery; the denial of testimony had further repercussions in the litigation including in class certification, summary judgment briefing, preparation of expert reports, and trial preparation.

NCC now seeks to pop Kakizaki out from behind the curtain to offer new substantive testimony at trial. The Ninth Circuit has recognized that witnesses who have invoked the Fifth Amendment are not permitted to offer substantive testimony at trial. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008). Fact discovery closed on May 8, 2018, nearly a year-and-a-half ago. *See Davis-Lynch v. Moreno*, 667 F.3d 539, 548-49 (5th Cir. 2012) (witness could not withdraw invocation of Fifth Amendment in response to motion for summary judgment after discovery had closed). Now, with trial less than three months away, NCC seeks permission to offer Kakizaki for his substantive testimony when that testimony had been denied to the Class two years ago. They should not be permitted to do so. The witness should be precluded from testifying at trial and the Class is entitled to an adverse inference instruction.

## II.    BACKGROUND

NCC failed to identify Noriaki Kakizaki in its Rule 26 Disclosures.[4] During the relevant time period, Kakizaki was a senior NCC executive, holding the title of President of UCC, director of sales for NCC, Senior Executive Managing Director of Sales for NCC and NCC board member. Motion at 7.

---

[4] Neither Defendant supplemented their disclosures throughout the course of the litigation.

Among other things, he attended group meetings with other cartel members during the period from 1997 to 2010 and participated in a number of other communications with competitors. Declaration of Christopher K.L. Young ("Young Decl.") ¶ 3. At these meetings and in these communications, NCC, through Kakizaki and others, participated in a conspiracy to raise, fix and stabilize capacitor prices in the United States and throughout the world. *Id.* NCC chose not to identify Kakizaki as a witness it may call to support its defense when it served its initial Rule 26(a) disclosures, and thereafter it never amended those disclosures to identify Kakizaki as a witness it would rely on for its defense.

This is not the first instance of a dispute over Kakizaki, and NCC omits important context from their charge that the Class "insisted" that NCC produce his documents. On May 18, 2015, the Class proposed a list of custodians and supplemented that list on June 29. The parties met and conferred and NCC revealed that it had not completed its investigation of the status of emails and other electronically stored information ("ESI"), despite the fact NCC's preservation obligations had begun not later than 2014.[5] Dkt.[6] 945; *see also* Dkt. 932. By July 17, 2015, NCC and the Class had agreed on nine custodians and the parties agreed that NCC would produce ESI from each of the agreed-upon custodians. Dkt. 945. It is unclear whether at the time NCC knew or had reason to believe ESI for those custodians existed or not. On August 3, 2015, NCC confirmed that there were some custodians whose ESI had been destroyed but did not confirm the identities of any of the affected custodians. On August 21, 2015, nearly two months after NCC had first stated it was investigating whether it had destroyed any custodial emails, and under two months before the Court-ordered deadline for substantial completion for production of custodial files, NCC disclosed it possessed no emails or ESI for five of the agreed upon custodians. *See* Dkt. 945. After protracted negotiations, on September 18, 2015 the Class identified seven substitute NCC custodians, Kakizaki among them. Dkt. 932. On September 29, 2015, NCC confirmed four, including Kakizaki, were current employees for whom it maintained ESI. Dkt. 932. After further motion

---

[5] This litigation began on July 16, 2014. Dkt. 1. The raids in Japan occurred on or about June 24, 2014. *See id.*, ¶ 181.

[6] "Dkt. ___" citations to Case No. 3-14-cv-03264-JD.

practice requiring the Court's intervention, NCC finally began producing Kakizaki's documents on January 27, 2016. Berse Decl., ¶ 10.

The Class noticed Kakizaki for deposition on July 19, 2017. Kakizaki was subsequently deposed on August 3, 2017, where he refused to answer questions invoking the Fifth Amendment. Young Decl. ¶ 4. At that time, the close of fact discovery was November 6, 2017. Dkt. 1405. Kakizaki was one of nine of NCC's employees who refused to answer questions at their depositions by invoking the privilege against self-incrimination. *Supra* at 2, n. 2; Young Decl. ¶ 5.

NCC was indicted by the DOJ on October 18, 2017. *United States v. Nippon Chemi-Con Corp.*, No. 3:17-cr-00540 (N.D. Cal. Oct. 18, 2017) Dkt. 1. Four other NCC executives were themselves indicted and remain fugitives. *See United States v. Isawa et al.*, Case No. 4:15-cr-00163-JD (N.D. Cal. Dec. 4, 2016). Dkt. 15 at 4 ¶¶ 6-7, 5 ¶¶11, 14.

After applying to the Court for extension, fact discovery closed on May 8, 2018. *See* MDL Dkt.[7] 283, Ex. A. After the close of fact discovery, NCC pleaded guilty on May 31, 2018, *United States v. Nippon Chemi-Con Corp.*, No. 17-cr-00540 (N.D. Cal. May 31, 2018), Dkt. 54, and judgment was imposed on October 3, 2018. *Id.*, (Oct. 24, 2018), Dkt. 85.

On October 23, 2019, nearly a year and a half after the close of discovery, NCC notified the Class that they intended to call Kakizaki at trial, seeking to withdraw his invocations of the Fifth Amendment. Motion, Ex. 2 at 6-7. NCC further took the position that Kakizaki's prior Fifth Amendment testimony would be inadmissible and the Class would not be entitled to an adverse inference instruction at trial. *Id*. On October 30, 2019, Counsel for NCC sent a letter articulating the same position. *Id.*, Ex. 4. At this time, trial was set to begin on February 3, 2020. MDL Dkt. 999.

On November 7, 2019, the Court held a hearing and notified the parties that the trial date would be postponed and instructed the parties to propose alternate dates in June or July of 2020. MDL Dkt. 999. At that hearing, the Court emphasized that "[n]othing is going to be reopened," there would not be "new rounds of anything," and that it was only moving the starting date and attendant pretrial

---

[7] "MDL Dkt. ___" citations to Case No. 3:17-md-02801-JD.

1    conference. Young Decl., Ex. A, 6:16; 12:24-13:4 (Transcript of Nov. 7, 2019 Hearing). NCC appeared

2    through counsel and raised no objection. *See id.*

3        Despite having heard from the Court that "[n]othing is going to be reopened," NCC again

4    notified the Class of their intent to call Kakizaki indicating the intent to offer new substantive testimony

5    at trial. Ex. 5. On December 17, 2019, the Court notified the parties that trial would begin on March 2,

6    2020. MDL Dkt., 1037. The parties met and conferred on December 20, 2019. Berse Decl. ¶ 9. The

7    Class requested that NCC withhold filing its Motion until the resolution of co-conspirators ELNA and

8    Matsuo's motion seeking to admit the trial testimony and to exclude the Fifth Amendment testimony of

9    their own percipient witnesses they now purport to have withdrawn their prior Fifth Amendment

10   invocations. *Id.* NCC refused and filed this Motion on December 23, 2019.

11   **III.    NCC'S MOTION SHOULD BE DENIED**

12       Just as ELNA and Matsuo did before them, NCC seeks to offer new testimony and preclude

13   reference to Kakizaki's prior invocations of the Fifth Amendment on the grounds that it would be more

14   unduly prejudicial than probative under Federal Rule of Evidence 403. The Motion suffers from the same

15   deficiencies as ELNA and Matsuo's motion. Indeed, the facts that weigh against NCC's position present

16   an even stronger case for denying the motion with respect to NCC. Kakizaki's testimony is highly

17   relevant and not unfairly prejudicial to NCC. Kakizaki is one of nine of NCC's employees who refused to

18   answer questions on the basis of the Fifth Amendment privilege at properly noticed depositions, the only

19   such executive they now say wishes to withdraw his prior invocations and to now testify at trial. NCC

20   gives short shrift to the Court's orders in this case, the discovery rules, and principles of basic fairness.

21   They dismiss the significance of a witness refusing to answer questions under oath, saying "[t]he fact that

22   a witness previously invoked his Fifth Amendment rights at the advice of counsel is neither unusual or

23   noteworthy. . . ." Motion at 9. But plucking just one witness out of the multitude of executives who

24   refused to answer questions on the basis of the privilege is unusual such that to *not* admit his prior

25   invocations would be prejudicial—*to the Class*.

26

27

28   Master File No. 3:17-md-02801-JD
     Case No. 3:14-cv-03264-JD                                    6

The Ninth Circuit has recognized the unfairness that results "when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege." *Nationwide*, 541 F.3d at 910 (quoting *S.E.C. v. Graystone Nash*, 25 F.3d 187, 191 (3d Cir. 1994)). As in this case, "[a]t that stage, the adverse party—having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter—would be placed at a disadvantage." *Id.* While there is authority for the proposition that litigants can be permitted to change their testimony at trial and waive their previously invoked Fifth Amendment privilege, "[t]his does not mean that withdrawal of the claim of privilege should be permitted carelessly." *United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn*, 55 F.3d 78, 84 (2d Cir. 1995). "[B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent." *Graystone Nash*, 25 F.3d at 190. "[P]articularly if the litigant's request to waive comes only at the eleventh hour and appears to be part of a manipulative, cat-and-mouse approach to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." *In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147, 170 (2d Cir. 2019) (internal citations and quotation marks omitted); *see also Nationwide*, 541 F.3d at 910-11 (party precluded from testifying at trial regarding issue she previously refused to answer at deposition on basis of privilege).

The balance weighs heavily in favor of precluding Kakizaki's new testimony, admitting Kakizaki's prior Fifth Amendment testimony and giving an adverse jury instruction. NCC should not be allowed to offer new testimony. As previously indicated, the Court has already indicated there would be such adverse inference instructions. Dkt. 1330 at 21:20-24. The jury should be able to consider Kakizaki's refusal to answer questions on the basis of the privilege against self-incrimination, particularly when

Kakizaki is only one of nine of NCC's executives who refused to provide substantive answers to questions at duly-noticed depositions.[8]

### A. Kakizaki's Fifth Amendment testimony should not be excluded

#### 1. The exclusion of the testimony would cause the Class substantial prejudice

NCC should not be permitted to exclude Kakizaki's Fifth Amendment testimony under Rule 403. Kakizaki chose to refuse to testify under the Fifth Amendment rather than provide substantive answers at his properly noticed depositions. His decision foreclosed the Class from obtaining highly probative evidence to which it was entitled in order to prosecute its case. *Nationwide*, 541 F.3d at 911 ("A decision not to draw the inference poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for truth.") (citation and internal quotation marks omitted); *see also id.* ("'[B]ecause the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent.'") (quoting *Graystone Nash.*, 25 F.3d at 190). As the Ninth Circuit recognized, "[w]hen a party asserts the privilege against self-incrimination in a civil case, the district court has discretion to draw an adverse inference from such assertion." *Nationwide*, 541 F.3d at 911. Trial courts, including those in this district regularly admit evidence of Fifth Amendment invocations and give adverse inference instructions. *See*, *e.g.*, *Planned Parenthood*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006 at 31-32; *Aragonez*, 2008 WL 11342742 at *2 (same).

When a party seeks to withdraw the claim of Fifth Amendment privilege, "[c]ourts need to pay particular attention to how and when the privilege was originally invoked, . . . particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a 'cat-and-mouse approach' to the litigation." *Certain Real Prop.*, 55 F.3d at 84-85.

The circumstances show that NCC strung Plaintiffs along negotiating the timing of the deposition until the end of the court-ordered discovery period when the witness was produced for

---

[8] While not the subject of this motion, NCC has indicated that it intends to ask the court to exclude the Fifth Amendment testimony of eight other NCC participants in the price-fixing conspiracy.

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD                                                8

**DPC'S OPP TO NCC'S AND UCC'S MOT. TO (I) ALLOW KAKIZAKI TO TESTIFY AT TRIAL AND (II)
PRECLUDE HIS FIFTH AMENDMENT TESTIMONY**

deposition, where he refused to testify. *See Davis-Lynch*, 667 F.3d at 548-49 (permitting witness to withdraw invocation a month before discovery closed but denying another witness from withdrawing after close of discovery). After discovery closed, the litigation and trial preparation proceeded. Then, with their co-defendants, ELNA and Matsuo, NCC did not inform the Class that Kakizaki purported to withdraw his prior invocation of the Fifth Amendment and NCC intended to call him to testify substantively at trial. NCC says they made Kakizaki available for deposition on October 30, 2019, and like ELNA and Matsuo before, they ignore a salient fact: Discovery had closed on May 8, 2018. To allow Kakizaki to change his testimony now a year and a half after the close of discovery would deny plaintiffs their discovery rights and cause them harm for following the applicable rules up until now.

The prejudice and unfairness is substantial because discovery was closed long ago. *Davis-Lynch*, 667 F.3d at 549. The Court established a schedule for the orderly process of discovery. The Class was obliged to prepare its case and conduct discovery efficiently and with alacrity. Depositions were to occur once within the times set by the Federal Rules. The Court stated clearly that witnesses in this litigation would be deposed only once. *See, e.g.*, MDL Dkt. 87 at 14:22-23 ("we're not going to do a second deposition of anybody already done"). Kakizaki was deposed on August 3, 2017. It was Kakizaki's choice—and the choice of eight of his NCC affiliated colleagues—to refuse to testify by invoking the Fifth Amendment.

NCC attempts to justify their efforts by pointing to the exceptional instances in this case where depositions were taken outside the discovery period. This falls short. Those depositions were requested well before the close of discovery. They were then delayed because of the intervention of and at the request of the DOJ. *See* Dkt. 2054 at 9:25-10:4 (granting DOJ's request to stay discovery).[9] In fact, had NCC in the interests of transparency and full disclosure sought to extend discovery to permit its

---

[9] Hiroyuki Imai, as explained in the Class's opposition to ELNA and Matsuo's Motion, was produced as co-defendant ELNA's 30(b)(6) designee after their first designee, Kent Sterrett, provided ill-prepared and inadequate testimony. MDL Dkt. 1043 at 6-7. Further, by the time ELNA proffered Imai as its designee, Imai was identified by the DOJ as one of the witnesses not to be deposed until the conclusion of criminal proceedings, further delaying the deposition. *Id.*

witnesses to give multiple depositions, the Court would have likely rejected that request. Waiting until the eve of trial makes the request even more unfair and prejudicial.

NCC's efforts to minimize the unfairness and prejudice as compared to ELNA and Matsuo fall flat. Indeed, the reverse is true. Evidence of NCC's gamesmanship is even more strong. First, Kakizaki was not identified in either NCC or UCC's Rule 26 disclosures. It was only after NCC revealed its failures to maintain ESI for other custodians that Kakizaki was added to the list of document custodians. Second, he is only one of nine of the NCC's executives who chose to invoke the Fifth Amendment to refuse to answer any substantive questions at their duly-noticed depositions, and now the one who seeks to waive his Fifth Amendment invocations to testify on behalf of NCC.

NCC suggests that it was the Class that was engaging in gamesmanship by taking Kakizaki's deposition even though he would likely refuse to testify. This is backwards. The Class had the right to pursue discovery from knowledgeable witnesses and to do within the time limits set by the Court. The refusal to testify denied the Class their discovery rights. Moreover, this issue was in fact addressed by the Court. The Court indicated it would submit to the jury an adverse instruction based on Fifth Amendment witnesses' denial to the Class of their substantive testimony. Dkt. 1130 at 20:16-22:1. Second, the Class did not choose to refuse to testify—it was Kakizaki's decision.

NCC now says the Class is "stick[ing] their heads in the sand to evade testimony." Motion at 9. Not so. Again, this ignores the prejudice and unfairness to the Class resulting from permitting this testimony—as well as others—on the eve of trial. And, Class Counsel went to Hong Kong three times to take the depositions of NCC's employees, who had directly participated in the illegal price fixing meetings, including Kakizaki. The Class travelled literally around the world to obtain evidence from knowledgeable witnesses. At the depositions, all of NCC's witnesses took the Fifth Amendment. *See Certain Real Prop.*, 55 F.3d at 86 ("opposing parties will frequently suffer prejudice (at the very least from increased cost and delays) when a litigant relies on the Fifth Amendment during discovery and then decides to waive the privilege much later in the proceeding"). NCC now says the Class cannot be prejudiced because they deposed NCC's 30(b)(6) witness, Motion at 10. That is not a substitute. NCC is

1   not offering the testimony of the 30(b)(6) witness. It was Kakizaki, not a 30(b)(6) deponent with little

2   knowledge of the at-large issues in this case, who attended illicit meetings and is knowledgeable regarding

3   the illicit agreements at issue.

4        NCC incorrectly asserts that they should not bear the consequences of Kakizaki's earlier

5   invocations because his decision to invoke his Fifth Amendment rights was beyond their control. This is

6   not the law. Kakizaki was—and is—a senior executive at both NCC and UCC with management

7   authority. Under the Federal Rules, NCC was obliged to produce the witness pursuant to a Rule 30

8   deposition notice. *See Cadent Ltd. V. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005) ("When an

9   employee named in a deposition notice 'is a director, officer, or managing agent [of a corporate party],

10   such employee will be regarded as a representative of the corporation,'" and "under Rule 32(a),

11   depositions of corporate officers under Rule 30(b)(1), as well as Rule 30(b)(6) depositions, may be used at

12   trial against the corporate party") (internal citations omitted). Under Rule 32(a)(3), the deposition

13   testimony is admissible against NCC (and UCC). *See* Fed. R. Civ. Pro. 32(a)(3) ("An adverse party may

14   use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer,

15   director, managing agent . . . .") The witness was sufficiently under NCC's control. *See Iantosca v.*

16   *Benistar Admin. Services, Inc.*, 567 Fed.App'x 1, 6-7 (1st Cir. 2014) (approving adverse inference

17   instructions where two corporate officers invoked the Fifth Amendment); *see also Curtis. v. M&S*

18   *Petroleum, Inc.*, 174 F.3d 661, 673-74 (5th Cir. 1999) (approving adverse inference instruction appropriate

19   30(b)(6) deponent invoked Fifth Amendment); Fed. R. Civ. P. 37(d) advisory committee notes to 1970

20   amendment ("The failure of an officer or managing agent of a party to make discovery as required by

21   present Rule 37(d) is treated as the failure of the party"). NCC admits that Kakizaki had high level

22   authority in NCC's organizational hierarchy during the time of the price fixing conspiracy. Motion at 7.

23   He served as President of UCC before returning to Japan and ascending through the ranks of NCC. He

24   was a member of NCC's Board of Directors. Indeed, his position of authority within NCC's hierarchy

25   means his testimony was of great import, and his failure—and the failure of eight other high-level

26   executives—to provide that testimony should be held to bear against NCC, as the law so provides. To

27

28   Master File No. 3:17-md-02801-JD
     Case No. 3:14-cv-03264-JD                                        11

1    present new substantive testimony from one of the witnesses who previously invoked the Fifth

2    Amendment would clearly be prejudicial; not to NCC, but to the Class.[10]

3        NCC seeks to distract attention away from their cat and mouse play. The efforts to obtain and

4    schedule the deposition are described above. The Class faced similar misdirection with respect to

5    Kakizaki's custodial documents. The Class originally sought the custodial files of the witnesses disclosed

6    by NCC in its Rule 26 disclosures—from which Kakizaki was omitted. Then, NCC revealed they had not

7    maintained the files for five custodians—custodians mutually agreed upon by the parties—because NCC

8    claimed it did not retain the files for former employees. Dkts. 932 & 941, n. 4. When the Class sought

9    four replacements, NCC refused on the grounds that the production of the custodial files of *any* other of

10   their employees would be unduly costly and burdensome to them, *see* Dkt. 941, even though the ESI of

11   the previously agreed upon custodians had been destroyed. Now NCC criticizes the Class for insisting on

12   Kakizaki's documents. This is nonsense. The Class sought Kakizaki's ESI after it learned that NCC had

13   not maintained the ESI for other witnesses—designated on the parties' agreement. Springing Kakizaki

14   on the eve of trial is only the latest episode in NCC's evasiveness during the discovery process.

15              **2.   The probative value of Kakizaki's Fifth Amendment testimony is high**

16       Kakizaki's Fifth Amendment testimony far outweighs the danger of unfair prejudice to the NCC.

17   *See Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (Fifth Amendment testimony not

18   unduly prejudicial under Rule 403); *see also Stitchting Ter Behartiging Van de Belangen v. Schreiber*, 407

19   F.3d 34, 55 (2d Cir. 2005) ("to the extent that his deposition is offered into evidence at trial, the [party

20   offering the testimony] may be entitled to an instruction that the jury may draw adverse inferences

21   against [the witness] on each question as to which he asserted his Fifth Amendment privilege during the

22   deposition").

23

24   _____

     [10] NCC says that Kakizaki would be willing to withdraw his prior invocation of the Fifth
25   Amendment and to testify "in light of changed circumstances," Motion at 2. Apparently, the
     change in situation is that he is no longer under threat of criminal liability. NCC pled guilty on
26   May 31, 2018. *United States v. Nippon Chemi-Con*, No. 4:17-CR-0054-JD (May 31, 2018) Dkt. 54.
     Even if this is a sufficient change—and it is not—Defendants provide no explanation for the
27   delay.

28

NCC itself recognizes the probative value of Kakizaki's testimony. He held various leadership positions within NCC's corporate hierarchy, including as President of UCC and a position on NCC's board. *See Iantosca*, 567 Fed.App'x at 6-7; *see also Curtis.*, 174 F.3d at 673-74 (5th Cir. 1999). He was a key participant in the illegal price-fixing, and directed employees who were participants in the conspiracy, some of whom themselves invoked the Fifth Amendment and now remain hidden behind the privilege. Kakizaki, along with the eight other NCC employees who invoked the privilege, has direct knowledge of the illegal activity, personally participated in illegal meetings, and appears on many of the documents evidencing the conspiracy, including notes of meetings and emails with others. Instead of providing the Class with substantive testimony, he refused to testify on the basis that his honest testimony would tend to subject him to criminal liability.

"[T]he mere fact that a Fifth Amendment invocation is 'damning' to a party's position does not preclude its introduction." *In re 650 Fifth Ave.*, 934 F.3d at 171. Contrary to NCC's claim, courts regularly admit Fifth Amendment testimony because of its highly probative value, including a court in this very district less than two months ago.[11] *See Planned Parenthood*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006 at 31-32; *see also In re Tableware Antitrust Litig.*, Case No. C-04-3514 VRW, 2007 WL 781960, at *4-5 (N.D. Cal. Mar. 13, 2007) (denying defendants' motion *in limine* to exclude reference to witness' Fifth Amendment deposition testimony) *Aragonez*, 2008 WL 11342742, at *2. In fact, the American Bar Association has published two jury instructions for use in civil antitrust cases when witnesses have invoked the Fifth Amendment. AM. BAR. ASS'N, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES 348, 350 (2016).

NCC claims that evidence of the witnesses' refusal to testify and an adverse inference would be unfairly prejudicial. This is incorrect. Kakizaki was a high-level executive and corporate officer with

---

[11] NCC misconstrues *In re TFT-LCD Antitrust Litigation*. While the court denied Best Buy's motion *in limine* "as framed," it did so "subject to offers of proof at trial" and noted that references to Fifth Amendment invocations and adverse inferences therefrom "will be considered on a case by case basis." *In re TRT-LCD Antitrust Litig.*, Case No. 07-md-1827 (N.D. Cal. July 11, 2013) Dkt. 8298 at *5. The *TFT-LCD* court did not "broadly exclude[ ] Fifth Amendment evidence," but instead indicated it would consider such evidence.

managing authority. The evidence is admissible against the company, and the instruction is appropriate. *See In re Polyurethane Foam Antitrust Litig.*, 152 F.Supp.3d 968, 993 (N.D. Ohio 2015) ("The same negative inference can, in certain circumstances, be offered against an invoking witness's current or former employer") (citing *Coquina Inv. v. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir. 2014); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins.*, 819 F.2d 1471, 1481 (8th Cir. 1987)).

NCC compounds their error further by plucking sentences from caselaw and ignoring the facts of the cases. NCC fails to note that in *Allstate Ins. Co. v. James*, 845 F.2d 315 (11th Cir. 1988), the court determined that the invocation was of little probative value after "[e]xamining the evidence as tendered and as finally admitted," namely facts such as the witness having twice cooperated with investigators prior to invocation, and the jury being presented with only his refusal to be cooperative without any of the surrounding context. *Id*. at 320. In *Martinez v. City of Fresno*, Case Nos. 1:06-cv-00233 OWW GSA, 1:06-cv-01851, 2010 WL 761109 (E.D. Cal. Mar. 3, 2010), the court did not rest its conclusion on a further opportunity to depose the witness as NCC says, but also because the plaintiffs would depose the witness "armed with five prior testimonial records of [the witness's] description of the circumstances of his interactions with Plaintiffs under higher burdens of proof in the criminal case"—including the witness's criminal trial testimony. *Id*. at *4. No such record of Kakizaki's testimony is present here. In both *Allstate* and *Martinez*, the courts simply looked "to how and when the privilege was originally invoked." *Certain Real Prop.*, 55 F.3d at 84-85. Here, the circumstances surrounding Kakizaki's invocation, *i.e.*, his position of high authority in NCC, the eight other witnesses who invoked the Fifth Amendment, and discovery having long been closed—weighs in favor of admitting Kakizaki's Fifth Amendment testimony and not permitting new testimony.

**B.   Kakizaki's trial testimony should be precluded**

The Ninth Circuit has recognized that "[t]rial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial." *Nationwide*, 541 F.3d at 910; *see Graystone Nash*, 25 F.3d at 190. Indeed, other Courts in this District have precluded such testimony, unless witnesses both revoked their earlier

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD

14

DPC'S OPP TO NCC'S AND UCC'S MOT. TO (I) ALLOW KAKIZAKI TO TESTIFY AT TRIAL AND (II)
PRECLUDE HIS FIFTH AMENDMENT TESTIMONY

1   invocations and provided the adverse party an opportunity to take substantive testimony well before the

2   formal close of discovery. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M07-1827 SI,

3   2009 WL 4016124, at *1 (N.D. Cal. Nov. 9, 2009) (precluding trial testimony of any deponent who

4   invokes the Fifth Amendment unless they provide 60 days before the closing of fact discovery their intent

5   to revoke and making themselves available for deposition at their own expense). The key consideration is

6   the balance between the party seeking to waive the prior invocation of the privilege with the "'unfair and

7   unnecessary prejudice to the other side.'" *Nationwide*, 541 F.3d at 910.

8           Discovery has long closed and the litigation is now in its final stages. Trial is imminent. What is

9   more, the Class has proceeded without the testimony of witnesses—Kakizaki among them—who

10  invoked the Fifth Amendment at their duly-noticed depositions, testimony the Class was entitled to in

11  order to develop and present its case. NCC now seeks to not only capitalize on using the Fifth

12  Amendment to shield testimony during discovery, but also seeks to offensively use the privilege to

13  ambush the Class with testimony from witnesses—and in this case, testimony from just their favored

14  witness out of nine—who now purport to revoke their prior invocations on the eve of trial. The prejudice

15  the Class would suffer should Kakizaki be allowed to testify at trial is just the prejudice courts have

16  warned about when a party seeks to waive an earlier invocation of the Fifth Amendment at a late hour.

17  *See Nationwide*, 541 F.3d at 910 ("'[t]he opportunity to combat the newly available testimony might no

18  longer exist, a new investigation could be required, and orderly preparation of trial preparation could be

19  disrupted'"); *see also In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) ("[T]he Fifth Amendment

20  privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose

21  of making statements to support a summary judgment motion"); *Gutierrez-Rodriguez v. Cartegena*, 882

22  F.2d 553, 577 (1st Cir. 1989) ("A defendant may not use the fifth amendment to shield herself from the

23  opposition's inquiries during discovery only to impale her accusers with surprised testimony at trial").

24  ## IV.    CONCLUSION

25          For the foregoing reasons, the Class respectfully requests the Court deny the motion.

26

27

28  Master File No. 3:17-md-02801-JD
    Case No. 3:14-cv-03264-JD

**DPC'S OPP TO NCC'S AND UCC'S MOT. TO (I) ALLOW KAKIZAKI TO TESTIFY AT TRIAL AND (II)
PRECLUDE HIS FIFTH AMENDMENT TESTIMONY**

Dated:  January 6, 2020

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.


By:  _____*/s/ Joseph R. Saveri*_____
                   Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            jdallal@saverilawfirm.com
            areddy@saverilawfirm.com
            cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*