Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

Steven Kaufhold (SBN 157195)
KAUFHOLD GASKIN LLP
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone:  (415) 445-4621
Facsimile:  (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con
Corp. and United Chemi-Con, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION**<br><br>All Direct Purchaser Actions, Case No. 3:14-cv-03264-JD<br><br>*The AASI Beneficiaries' Trust, by and Through Kenneth A. Welt, Liquidating Trustee* v. *AVX Corp. et al.*, Case No. 3:17-cv-03472-JD<br><br>*Avnet, Inc.* v. *Hitachi Chemical Co., Ltd., et al.*, Case No. 3:17-cv-07046-JD<br><br>*Benchmark Electronics, Inc., et al.* v. *AVX Corp. et al.*, Case No. 3:17-cv-07047-JD<br><br>*Arrow Electronics, Inc.* v. *ELNA Co., Ltd. et al.*, Case No. 3:18-cv-02657-JD<br><br>*Flextronics International USA, Inc.'s Individual Action*, Case No. 3:14-cv-03264-JD<br><br>*Jaco Electronics, Inc., et al.* v. *Nippon Chemi-Con Co. et al.*, Case No. 19-cv-01902-JD | **DEFENDANTS NIPPON CHEMI-CON CORP.'S AND UNITED CHEMI-CON, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER (I) ALLOWING NORIAKI KAKIZAKI TO TESTIFY SUBSTANTIVELY AT TRIAL AND (II) PRECLUDING PLAINTIFFS FROM OFFERING EVIDENCE OF MR. KAKIZAKI'S PRIOR INVOCATION OF HIS FIFTH AMENDMENT RIGHTS AT AN EARLIER DEPOSITION**<br><br>Master Docket No.: 3:17-md-2801-JD<br><br>Date:  January 23, 2020<br>Time:  10:00 a.m.<br>Courtroom 11<br>Hon. James Donato<br><br>Case No.: 3:14-cv-3264-JD<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................1

I.      THE COURT SHOULD ALLOW MR. KAKIZAKI TO TESTIFY AT
        TRIAL. ...................................................................................................................1

        A.      Mr. Kakizaki's Substantive Testimony Is Vital to the Adjudication
                of this Case and Plaintiffs Will Suffer No Undue Prejudice from
                the Court Allowing Mr. Kakizaki to Testify Substantively at Trial. .......................2

        B.      Plaintiffs' Claims of Gamesmanship Are Unfounded and Based on
                a Mischaracterization of the Record. ........................................................6

II.     THE COURT SHOULD EXCLUDE ALL REFERENCES TO
        MR. KAKIZAKI'S WITHDRAWN FIFTH AMENDMENT
        TESTIMONY GIVEN THAT THE UNFAIR PREJUDICE OF
        REFERENCING LAWFUL INVOCATIONS OF FIFTH AMENDMENT
        RIGHTS SUBSTANTIALLY OUTWEIGHS ANY PROBATIVE
        VALUE. ...................................................................................................................8

CONCLUSION .....................................................................................................................10

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*In re 650 Fifth Ave. & Related Properties*,
 934 F.3d 147 (2d Cir. 2019)..................................................................................3

5

6

*Allstate Ins. Co.* v. *James*,
 845 F.2d 315 (11th Cir. 1988) ..............................................................................9

7

*Brink's Inc.* v. *City of New York*,
 717 F.2d 700 (2d Cir. 1983).................................................................................9

8

9

*Davis-Lynch, Inc.* v. *Moreno*,
 667 F.3d 539 (5th Cir. 2012) ............................................................................2, 5

10

*Gutierrez-Rodriguez* v. *Cartagena*,
 882 F.2d 553, 577 (1st Cir. 1989) ........................................................................2

11

12

*In re Edmond*,
 934 F.2d 1304 (4th Cir. 1991) ...........................................................................1, 2

13

14

*Evans* v. *City of Chicago*,
 513 F.3d 735 (7th Cir. 2008) .............................................................................2, 3

15

*Harrell* v. *DCS Equip. Leasing Corp.*,
 951 F.2d 1453 (5th Cir. 1982) ..........................................................................9, 10

16

17

*Martinez* v. *City of Fresno*,
 No. 06-cv-00233, 2010 WL 761109 (E.D. Cal. Mar. 3, 2010)............................2, 9

18

19

*Nationwide Life Ins. Co.* v. *Richards*,
 541 F.3d 903 (9th Cir. 2008) ...........................................................................1, 10

20

*Planned Parenthood Fed'n of Am.* v. *Ctr. for Med. Progress*,
 No. 16-cv-0236 (N.D. Cal. Nov. 12, 2019), ECF No. 1006 ....................................9

21

22

*In re Polyurethane Foam MDL Antitrust Litig.*,
 No. 10-md-2196, 2014 WL 627356 (N.D. Ohio Feb. 13, 2014) .............................7

23

24

*Stitchting Ter Behartiging Van de Belangen* v. *Schreiber*,
 407 F.3d 34 (2d Cir. 2005).....................................................................................9

25

26

*In re Tableware Antitrust Litig.*,
 No. 04-cv-3514, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007) ...............................9

27

28

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-md-1827, (N.D. Cal. May 4, 2012) ECF No. 5597 ..................................................5, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ...............................................................................................................6, 7

Fed. R. Civ. P. 30 .............................................................................................................7, 10

Fed. R. Civ. P. 37 .............................................................................................................7, 10

Fed. R. Evid. 401 ....................................................................................................................8

Fed. R. Evid. 403 ...........................................................................................................1, 8, 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION[1]

Lacking any substantive argument as to why Mr. Kakizaki should not be allowed to testify at trial, DPPs and DAPs (collectively, "Plaintiffs") rely primarily on unfounded allegations of gamesmanship, many of which are unrelated to the instant question and many of which are almost a half-decade old.  As Plaintiffs acknowledge, Mr. Kakizaki is an important witness to the underlying facts in this case, and his substantive testimony is critical to the full and fair adjudication of the merits.  Despite their attempts to do so, Plaintiffs cannot demonstrate any undue prejudice that would result from Mr. Kakizaki being allowed to withdraw his previously asserted Fifth Amendment rights and provide substantive testimony.  Furthermore, and because the prejudicial effect of his Fifth Amendment invocation outweighs its probative value, Plaintiffs (as proponents of the evidence) cannot establish the admissibility of the withdrawn invocation under Federal Rule of Evidence 403.  For all of these reasons, and as further set forth below and in our opening brief, this Court should (i) allow Mr. Kakizaki to testify substantively at trial and (ii) preclude any evidence of his prior Fifth Amendment invocation.

## ARGUMENT

## I.     THE COURT SHOULD ALLOW MR. KAKIZAKI TO TESTIFY AT TRIAL.

Plaintiffs assert that because Mr. Kakizaki invoked the Fifth Amendment at a prior deposition, and because discovery is now closed, he should be precluded from testifying live at trial.  But they base this conclusion primarily on cases in which the witness either revoked their invocations at trial (or literally days before trial), or did so strategically to oppose motions for summary judgment.  *See, e.g.*, DPP Opp'n 14–15 (citing *Nationwide Life Ins. Co.* v. *Richards*,

---

[1]  All capitalized terms have the same definitions as in Defendants Nippon Chemi-Con Corp.'s and United Chemi-Con, Inc.'s Motion for an Order (I) Allowing Noriaki Kakizaki to Testify Substantively at Trial and (II) Precluding Plaintiffs from Offering Evidence of Mr. Kakizaki's Prior Invocation of His Fifth Amendment Rights at an Earlier Deposition, ECF No. 1045 (the "Motion" or Mot.").  "DPP Opp'n" refers to DPPs' opposition to the Motion, ECF No. 1069, and "DAP Opp'n" to DAPs' opposition to the Motion, ECF No. 1062.  References to "ECF No. _" are to *In re Capacitors Antitrust Litigation*, No. 17-md-2801 (N.D. Cal.), unless otherwise specified.

1    541 F.3d 903, 910 (9th Cir. 2008) (witness attempted to testify *on the day of trial* after

2    previously invoking the Fifth Amendment); *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991)

3    (witness who previously invoked the Fifth Amendment submitted a declaration in opposition to

4    *summary judgment*); *Gutierrez-Rodriguez* v. *Cartagena*, 882 F.2d 553, 577 (1st Cir. 1989)

5    (witness did not revoke invocation until *four days* before trial)).  Neither is true here.

6          In situations like this one, where there is no reason to believe that opposing parties would

7    suffer any undue prejudice from a witness's revocation of his prior Fifth Amendment invocation,

8    courts—recognizing the importance of live, relevant testimony—almost always allow such

9    witnesses to provide substantive testimony at trial.  *See Davis-Lynch, Inc.* v. *Moreno*, 667 F.3d

10   539, 547 (5th Cir. 2012).  And in any event, as many courts have found, prejudice to the opposing

11   party can be cured by allowing them to take a subsequent, substantive deposition.  *See, e.g.*,

12   *Evans* v. *City of Chicago*, 513 F.3d 735, 745 (7th Cir. 2008) (prejudice cured by allowing

13   subsequent depositions of certain witnesses who had revoked their Fifth Amendment

14   invocations); *Martinez* v. *City of Fresno*, No. 06-cv-00233, 2010 WL 761109, at *4 (E.D. Cal.

15   Mar. 3, 2010) (same); *contra In re Edmond*, 934 F.2d at 1309 (refusal to consent to a deposition

16   prevented withdrawal of invocation).  This is particularly true "when circumstances indicate that

17   there is no intent to abuse the process or gain an unfair advantage, and there is no unnecessary

18   prejudice to the other side."  *Davis-Lynch*, 667 F.3d at 548.  In this case, the importance of

19   Mr. Kakizaki's testimony (and the lack of prejudice to Plaintiffs), coupled with the lack of any

20   evidence of "gamesmanship" on the part of Defendants, all weigh in favor of allowing

21   Mr. Kakizaki to withdraw his invocation and provide substantive testimony at trial.

22          A.    **MR. KAKIZAKI'S SUBSTANTIVE TESTIMONY IS VITAL TO THE**

23          **ADJUDICATION OF THIS CASE AND PLAINTIFFS WILL SUFFER NO**
            **UNDUE PREJUDICE FROM THE COURT ALLOWING MR. KAKIZAKI**

24          **TO TESTIFY SUBSTANTIVELY AT TRIAL.**

25          Plaintiffs do not dispute that Mr. Kakizaki's testimony would be highly relevant and

26   critical to the adjudication of this case.  *See* DPP Opp'n 11; *see also* Mot. 7–9.  Instead, Plaintiffs

27

28

argue that providing Mr. Kakizaki the opportunity to testify substantively would be prejudicial to them, because notice of Mr. Kakizaki's revocation of the Fifth Amendment invocation was given on the "eve of trial." *See* DPP Opp'n 7; DAP Opp'n Section II.  That is not the case.[2]

As set forth in the Motion, Defendants first provided the DPPs notice of their intention to call Mr. Kakizaki in October 2019, months before the original trial date of February 3, 2020.[3] *See* Declaration of Farrah R. Berse in Support of Defs' Motion, ECF No. 1045-2 ("Berse Decl."), ¶ 6.  At that time, Defendants offered to make Mr. Kakizaki available for a substantive deposition at Plaintiffs' convenience—Plaintiffs refused.  Berse Decl. ¶ 9.[4]  They now claim that it would be overly burdensome to depose Mr. Kakizaki in the middle of preparing for trial and because they were forced to prepare their case without the benefit of Mr. Kakizaki's testimony.  DPP Opp'n 7.[5]

Neither claim is credible.[6]  First, as set forth in the Motion, Plaintiffs' burden to prepare

---

[2]  The cases cited by DAPs in support of their argument that notice occurred on the "eve of trial" actually establish the opposite.  *See In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 170 (2d Cir. 2019) (holding that six months prior to trial is "hardly the eleventh hour"); *Evans*, 513 F.3d at 742 (affirming a trial court's decision to allow key witnesses to revoke and substantively testify five weeks before trial).

[3] As set forth in the Motion, Defendants believed in good faith that DPPs were coordinating with DAPs, and only learned later that they failed to do so.  Even so, Defendants directly provided notice to DAPs in December 2020.  Regardless of the two-month difference, DAPs' claim to prejudice here is even less persuasive, given that no trial date has been set in any of their cases.

[4]  Plaintiffs argue that there is no explanation why Mr. Kakizaki waited until October 2019 to withdraw his Fifth Amendment invocation when NCC pled guilty on May 31, 2018 thereby ending the threat of criminal liability.  But as noted in our Motion, at the time of the plea the DOJ represented only that it did not "contemplate the filing of any additional criminal charges," not that it would never do so, and it makes sense that Mr. Kakizaki, represented by his own counsel, would allow some time to pass before deciding to give substantive testimony.  Mot. 4 (citing plea agreement).  Further, discovery closed *before* the plea was entered, leaving no occasion to raise the issue of a substantive deposition with Mr. Kakizaki until Defendants contemplated trial.  At that point, Mr. Kakizaki was approached, revealed that he would be willing to testify substantively, and Defendants promptly notified Plaintiffs.  Berse Decl. ¶¶ 5–6.

[5] DPPs make the additional argument that they would be further prejudiced because Mr. Kakizaki is only one of Defendants' nine witnesses who invoked his Fifth Amendment right.  DPP Opp'n 6.  Defendants fail to understand how that creates any prejudice for Plaintiffs whatsoever.

[6] DPPs also argue that they are particularly prejudiced by Mr. Kakizaki's withdrawal of his prior invocations because ELNA and Matsuo employees (or former employees) are doing the same.  DPP Opp'n 1.  That improperly conflates the issues.  The separate motion submitted by ELNA

1   for Mr. Kakizaki's deposition is not heavy:  they have already prepared for and taken

2   Mr. Kakizaki's deposition once before, utilizing thirty-eight deposition exhibits (roughly a third

3   of which DPPs have listed on their exhibit list), taking the better part of a day to ask him

4   questions, on a wide range of subjects, including UCC pricing practices, interactions between

5   NCC and UCC, customer contacts, communications with competitors, and more.  Mot. 8.

6   Presumably they could ask him the same questions (and more) if they depose him now.  Indeed,

7   DPPs listed over two hundred documents produced by Defendants on their exhibit list, many of

8   which involve Mr. Kakizaki.  Clearly, Plaintiffs could depose Mr. Kakizaki with little additional

9   preparation.  As for timing, Plaintiffs have had almost four months to re-depose Mr. Kakizaki

10  since Defendants first offered him up.  And after the Court vacated the original trial date,

11  Plaintiffs could have accepted Defendants' offer to depose Mr. Kakizaki during the hiatus before

12  trial, but they chose not to.[7]

13          Second, Plaintiffs were not deprived of any significant sources of discovery as a result of

14  Mr. Kakizaki's Fifth Amendment invocation.  Discovery in this case has been voluminous—both

15  with respect to documents and depositions—and has included thousands of documents from

16  Mr. Kakizaki's files and documents involving Mr. Kakizaki specifically which Plaintiffs have

17  had for years (and have used throughout this litigation).  Mot. 8; Berse Decl. ¶ 10.[8]

18  _____

19  and Matsuo must be assessed separately and apart from this Motion, as each company is a
    separate party in this litigation.  The alleged "cumulative effect" of multiple revocations should
20  have no bearing on the Court's analysis of Mr. Kakizaki's revocation.  Similarly, the fact that the
    ELNA and Matsuo motion involves multiple witnesses should have no bearing on this Motion.

21  [7] DPPs rely on this Court's comment at the November 7, 2019, conference that "nothing is
    going to be reopened" and that vacating the trial date would not open "new rounds of anything."
22  DPP Opp'n 5–6.  Defendants do not believe that in making this comment the Court contemplated
    precluding a witness from revoking his Fifth Amendment invocation and deciding to testify
23  substantively or barring the parties from agreeing to a deposition after the close of discovery in
    order to cure any prejudice to Plaintiffs.  Similarly, DPPs argue that the Court has already ruled
24  that "we're not going to do a second deposition of anybody already done."  DPP Opp'n 9 (citing
    ECF No. 87).  In doing so, DPPs ignore the context of that hearing—on DPPs' motion for leave
25  to amend their complaint—which, respectfully, Defendants do not believe the Court intended to
    apply to the entire litigation, as numerous individuals in this case have been deposed more than
26  once.

27  [8] DPPs' claim that Defendants argued that DPPs cannot be prejudiced "because they deposed
    NCC's 30(b)(6) witness."  DPP Opp'n 10.  That misstates Defendants' point.  The point is that,

28

1       Failing to establish a credible claim that Plaintiffs would be prejudiced by Mr. Kakizaki's

2 revocation of his Fifth Amendment rights, Plaintiffs urge a bright-line rule after which witnesses

3 are forever foreclosed from revoking a Fifth Amendment invocation.  DPP Opp'n 3, 9, 13–15

4 (relying on *Davis-Lynch* and *TFT-LCD*); DAP Opp'n 6–7 (relying on *TFT-LCD*).  That is not the

5 law.  In *Davis-Lynch*, a case cited by Plaintiffs, the court's rejection of one of the witness's

6 withdrawal of his Fifth Amendment invocation had nothing to do with the fact that the

7 withdrawal occurred at the end of discovery.  Rather, the court rejected the withdrawal because it

8 was done so that the witness could file an affidavit in opposition to a motion for summary

9 judgment that the opposing party had already filed.  *See Davis-Lynch*, 667 F.3d at 549.  In that

10 situation, the withdrawal would have prejudiced the opposing party and was a clear "attempt to

11 abuse the system or gain an unfair advantage."  *Id.*  Thus, *Davis-Lynch* clearly undermines a

12 central (mistaken) principle of DPPs' Opposition; that "[w]hen the witness refused to testify, the

13 witness forfeited the right to provide testimony to controvert Plaintiff's claims."  DPP Opp'n 1.

14       DPPs further cite *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 (N.D.

15 Cal.), and in particular a November 9, 2009, Order requiring that any Fifth Amendment

16 invocations be revoked sixty days prior to the close of fact discovery, to support their mistaken

17 bright-line, "close of discovery" rule.[9]  DPP Opp'n 14–15.  But the parties were not held to that

18 Order by the Court.  Instead, the *TFT-LCD* Court permitted the parties to extend that deadline

19 after the DOJ confirmed that the statute of limitations, and thus, the threat of criminal exposure

20 for the witnesses, had passed.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-

21 1827 (N.D. Cal. Mar. 13, 2012), ECF No. 5136 (noting that the court allowed an extension of the

22 revocation period, and merits discovery, once "the DOJ confirmed the expiration of the statute of

23 

given the millions of pages of documents produced in this case and the dozens, if not hundreds, of depositions, *including* of NCC's 30(b)(6) witness, DPPs' claim that they were deprived of a substantial source of evidence simply has no legs on which to stand.

[9] Even if "close of discovery" were a bright-line deadline by which invocations must be revoked, that rule would make no sense in a situation like this one where the circumstances leading to the invocation—DOJ's representation that it did not contemplate filing criminal charges against additional individuals—took place *after* the close of discovery.

1   limitations"); *see also id.* (N.D. Cal. May 4, 2012), ECF No. 5597 (Order granting Toshiba's

2   Motion *in Limine*).[10]  Again, the case cited by Plaintiffs to support their argument for a bright-

3   line rule prove the opposite—that no such rule exists.

4          **B.     PLAINTIFFS' CLAIMS OF GAMESMANSHIP ARE UNFOUNDED AND
                    BASED ON A MISCHARACTERIZATION OF THE RECORD.**
5

6          Lacking any real argument that Mr. Kakizaki should be precluded from testifying

7   substantively, Plaintiffs paint Defendants as obstructionists engaged in gamesmanship.  The

8   merits of these arguments aside, it is undisputed that Mr. Kakizaki, represented by his own

9   counsel, made a decision to invoke his Fifth Amendment rights at a time that he was subject to

10  criminal prosecution.  It is likewise undisputed that in preparing for trial, Defendants asked

11  Mr. Kakizaki whether, with the passage of time, he would be willing to appear and offer

12  testimony at trial.  Berse Decl. ¶¶ 5–6.  In doing so, Defendants had no intention of gaining (and

13  have not gained) any unfair advantages, and have not caused Plaintiffs any prejudice that cannot

14  be cured with the deposition being offered.  *See supra* Section I.A.  For these reasons alone,

15  Plaintiffs' attempts to prevent Mr. Kakizaki from testifying should be rejected.[11]

16         In any event, the argument that Defendants have engaged in gamesmanship is false.  For

17  example, DPPs complain that Defendants did not include Mr. Kakizaki in their Rule 26(a) initial

18  disclosures and failed to supplement the same, suggesting this amounted to a "cat-and-mouse

19  approach."  *See* DPP Opp'n 7.  But Defendants had no obligation to list Mr. Kakizaki because

20  until he agreed to withdraw his invocation, Defendants had no intention of relying on him at trial.

21

22  [10]  As the Toshiba defendants in that case explained, "[a]ny procedure that did not afford the
    witnesses with an opportunity to withdraw their invocations would have untenably pitted the
23  witnesses' exercise of their Constitutional rights against their employers' desire to avoid
    potential adverse inferences at trial."  Toshiba Entities' Motion *in Limine* 5, *TFT-LCD*, No. 07-
24  md-1827, ECF No. 5136.

25  [11]  DAPs complain that Defendants noted in an October 2019 letter that it was theoretically
    possible that other employees of Defendants could revoke their invocations.  DAP Opp'n
26  2.  Only Mr. Kakizaki is at issue in this brief, that statement notwithstanding.  At this time, NCC
    does not intend to call any additional witnesses who previously invoked their Fifth Amendment
27  rights.

28

1    *See* Fed. R. Civ. P. 26(a) (requiring the disclosure of witnesses that the "disclosing party may use

2    to support its claims or defenses").  As soon as Defendants made the decision that they might

3    rely on him, Defendants disclosed this fact to Plaintiffs, making any prior failure to list him

4    harmless.  *See* Fed. R. Civ. P. 26(e) (requiring a party to supplement its disclosure "*if the*

5    *additional or corrective information has not otherwise been made known to the other parties*

6    *during the discovery process or in writing*") (emphasis added); Fed. R. Civ. P. 37(c)(1) (excusing

7    failure to list a witness in initial disclosures if the failure was "substantially justified or is

8    harmless"); *see also* Berse Decl. ¶¶ 5–6.

9        Another example of DPPs' futile claims is found in their argument that the circumstances

10   leading to Mr. Kakizaki being named as a supplemental custodian also constitute gamesmanship.

11   DPP Opp'n 4.  But this dispute—which is now four years old and which has long since been

12   resolved—has no bearing on the issue now before the Court.  *See* No. 14-cv-3264 (N.D Cal.

13   Nov. 9, 2015), ECF No. 946.

14       In addition, DAPs argue that Tomohiro Inoue, NCC's 30(b)(6) witness, should have

15   spoken to Mr. Kakizaki prior to his deposition, and that his failure to do so evidences NCC

16   gamesmanship.  DAP Opp'n 5.  Case law imposes no such obligations on 30(b)(6) witnesses.

17   *See In re Polyurethane Foam MDL Antitrust Litig.*, No. 10-md-2196, 2014 WL 627356 (N.D.

18   Ohio Feb. 13, 2014).  Perhaps more importantly, the Court has already rejected this exact

19   argument.  *See* Minute Entry, ECF No. 210 (denying Plaintiffs' request, premised on claims that

20   corporate representatives must conduct independent investigations prior to their 30(b)(6)

21   depositions, for further depositions of Panasonic's, and others, 30(b)(6) witness).

22       Finally, it is worth noting that in similar circumstances ELNA did exactly what Plaintiffs

23   claim NCC should have done here, offering Plaintiffs an opportunity to depose an ELNA witness

24   shortly after they entered a plea.  DPPs refused.  *See* ECF No. 1030, at 2–3.

25

26

27

28

II.   **THE COURT SHOULD EXCLUDE ALL REFERENCES TO MR. KAKIZAKI'S WITHDRAWN FIFTH AMENDMENT TESTIMONY GIVEN THAT THE UNFAIR PREJUDICE OF REFERENCING LAWFUL INVOCATIONS OF FIFTH AMENDMENT RIGHTS SUBSTANTIALLY OUTWEIGHS ANY PROBATIVE VALUE.**

In arguing that *they* would be prejudiced by the exclusion of evidence that Mr. Kakizaki invoked his Fifth Amendment rights at an earlier deposition, DPPs appear to misunderstand (or at least misapply) the balancing test contemplated by Federal Rule of Evidence 403. DPP Opp'n 14–15.[12]   Under the Rule, courts weigh whether the probative value of evidence offered by its proponent is outweighed by the danger of unfair prejudice to the party seeking to exclude it. *See* Fed. R. Evid. 403. Plaintiffs cannot meet that burden with respect to Mr. Kakizaki's Fifth Amendment invocations, particularly where he has offered to provide substantive testimony at trial.[13]

With respect to the probative value of Mr. Kakizaki's lawful invocations of his Fifth Amendment rights, Plaintiffs simply ignore, or worse, misconstrue, the cases cited in Defendants' Motion to the effect that a witness's Fifth Amendment invocation generally has minimal probative value. For example, Defendants cite *Allstate* to highlight that courts focus the probative value inquiry on the context and circumstances surrounding the invocation. Mot. 6, 11. DPPs seemingly concede this point. DPP Opp'n 14 ("In both *Allstate* and *Martinez*, the courts simply looked to how and when the privilege was originally invoked."). Yet, DPPs try to

---

[12] DPPs correctly note that Defendants intend to file a motion *in limine* to preclude adverse inferences relating to other non-party witnesses' Fifth Amendment invocations. While that intended motion *in limine* argues more broadly that adverse inferences should not be permitted under Federal Rules of Evidence 401 and 403, this motion addresses the additional considerations that apply with respect to Mr. Kakizaki, who is now willing to provide substantive testimony.

[13] Similarly unpersuasive, DPPs cite to ABA Model Jury Instructions to make the unremarkable point that instructions particular to civil antitrust cases discussing Fifth Amendment invocations exist. DPP Opp'n 13. But, as is the case with all model instructions, the decision whether to utilize them is based on whether the instructions fit the facts. Despite Plaintiffs' reliance on this Court's comment that there "will be an adverse inference instruction"—made at an October 2016 hearing dealing with, *inter alia*, an adverse inference motion, which Defendants believe to be No. 14-cv-3264, (N.D. Cal. Oct. 12, 2016), ECF No. 1330, despite DPPs' citation to 14-cv-3264, (N.D. Cal. March 31, 2016), ECF No. 1130 (*pro hac vice* Order)—Plaintiffs fail to note that, as the law requires, such analysis must still be done on a case-by-case basis.

1     muddy the precedential value of *Allstate* by noting an additional fact in that case—the witnesses'

2     cooperation and statements made prior to their invocations—supporting the court's holding that

3     the Fifth Amendment invocation had minimal probative value.[14]  That the witness in that case

4     had an additional fact in their favor in no way detracts from the court's broader holding that

5     invocations of the Fifth Amendment, when made on advice of counsel during a pending criminal

6     investigation, have "little probative value."  *Allstate Ins. Co.* v. *James*, 845 F.2d 315, 320 (11th

7     Cir. 1988).

8           In addition to the negligible probative value of attorney-advised invocations, a witness's

9     invocation in such circumstances becomes even less relevant and less probative once that witness

10    provides substantive testimony.  *See Harrell* v. *DCS Equip. Leasing Corp*., 951 F.2d 1453, 1465

11    (5th Cir. 1982) (holding that when a witness "subsequently answer[s] all of the questions" the

12    probative value of a Fifth Amendment invocation is "further reduced").  Instead of citing cases

13    that address the probative value of Fifth Amendment invocations, DPPs instead cite cases for the

14    unremarkable proposition that invocations of Fifth Amendment rights may, under certain

15    circumstances, be admissible at trial.  But none of their cited cases involve a witness who was

16    subsequently willing to provide substantive testimony.[15]

17

---

18    [14] DPPs also incorrectly argue that Defendants misunderstand the court's holding in *Martinez*, arguing that Defendants failed to note the premise on which the court ruled that a deposition

19    would cure any prejudice: because of the available discovery material attributable to the witness that could be utilized at a substantive deposition.  *See* DPP Opp'n at 14 (citing *Martinez*); *see*

20    *also* Mot. 6 (discussing *Martinez*).  DPPs actually emphasize Defendants' point—the robust discovery in this case, provided years ago, for which Mr. Kakizaki was a custodian, enables

21    Plaintiffs to take a substantive deposition, "armed with" substantial materials attributable to the witness, as envisioned in *Martinez*.  *Martinez*, 2010 WL 761109, at *4.

22    [15] For example, DPPs cite to two cases for the proposition that courts regularly admit Fifth Amendment testimony "because of its highly probative value."  *See* DPP Opp'n 13 (citing

23    *Planned Parenthood Fed'n of Am.* v. *Ctr. for Med. Progress*, No. 16-cv-0236 (N.D. Cal. Nov. 12, 2019), ECF No. 1006 & *In re Tableware Antitrust Litig*., No. 04-cv-3514, 2007 WL 781960

24    (N.D. Cal. Mar. 13, 2007)).  Neither case involved witnesses who withdrew their invocations prior to trial.  DPPs also cite to *Brink's Inc.* v. *City of New York*, 717 F.2d 700 (2d Cir. 1983), for

25    the proposition that "Fifth Amendment testimony [is] not unduly prejudicial under Rule 403." *See* DPP Opp'n 12.  Again, DPPs ignore the surrounding language from the opinion stating that

26    under Rule 403, the analysis of prejudice is "left largely to the discretion of the trial judge," and thus, necessarily, fact specific.  *See Brink's Inc.*, 717 F.2d at 710.  Finally, DPPs cite *Stitching*

27    *Ter Behartiging Van de Belangen* v. *Schreiber*, 407 F.3d 34 (2d Cir. 2005).  But again, the court

28

1    In any event the prejudice of allowing the jury to hear Mr. Kakizaki's withdrawn

2    invocations of his Fifth Amendment rights is significant, and outweighs the minimal probative

3    value that this evidence might arguably have.  This is particularly true in a jury trial, where jurors

4    are especially susceptible to according undue weight, or being confused, by reference to a

5    witness's Fifth Amendment invocation.  *See Harrell*, 951 F.2d at 1465; *cf. Nationwide Life Ins.*,

6    541 F.3d at 913 (noting that in a bench trial, "there was no danger that the adverse inference

7    would be given undue weight").

8    Finally, DPPs also argue that Defendants should "bear the consequences of

9    [Mr.] Kakizaki's earlier invocations" because Defendants exercised sufficient control over

10   Mr. Kakizaki.  DPP Opp'n 11.  In particular, DPPs argue that "NCC was obliged to produce the

11   witness pursuant to a Rule 30 deposition notice" and that depositions of corporate officers under

12   Rule 30(b)(1) as well as Rule 30(b)(6) can be used against the corporate party.  *Id.*  Similarly,

13   DPPs cite to Rule 37(d), see *id.*, which allows courts to impose sanctions on a party if a "party or

14   a party's officer, director, or managing agent" fails to appear for a deposition or otherwise

15   respond to discovery.  Fed. R. Civ. P. 37(d).  Both of these arguments are equally irrelevant

16   because Mr. Kakizaki did appear for his deposition.  What the Defendants do not control is

17   whether Mr. Kakizaki, advised by his personal counsel, would decide to invoke his constitutional

18   rights at such deposition.  That fact has particular relevance here:  given that Mr. Kakizaki is

19   now willing to withdraw his invocation of the Fifth Amendment and testify at trial, there is no

20   reason to impose on Defendants an adverse inference flowing from Mr. Kakizaki's personal

21   decision to exercise his constitutional rights.

22   ## CONCLUSION

23   For the foregoing reasons, Defendants' Motion should be granted.

24

25

26   said nothing about the probative value of Fifth Amendment invocations, noting only that courts
     may instruct jurors to draw negative inferences from the same.  *Id.* at 55.

27

28

Dated:  January 13, 2020

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  /s/ Charles F. Rule

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

KAUFHOLD GASKIN LLP
Steven Kaufhold (SBN 157195)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone:  (415) 445-4621
Facsimile:  (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con Corp.
and United Chemi-Con, Inc.*