1 | Jeffrey A. LeVee (State Bar No. 125863)
jlevee@JonesDay.com
2 | Eric P. Enson (State Bar No. 204447)
epenson@JonesDay.com
3 | Kelly M. Ozurovich (State Bar No. 307563)
kozurovich@JonesDay.com
4 | JONES DAY
555 South Flower Street
5 | Fiftieth Floor
Los Angeles, CA 90071.2300
6 | Telephone:   +1.213.489.3939
Facsimile:   +1.213.243.2539
7 |
John M. Majoras (Admitted *Pro Hac Vice*)
8 | jmmajoras@jonesday.com
JONES DAY
9 | 51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
10 | Telephone:   +1.202.879.3939
Facsimile:   +1.202.626.1700
11 |
Attorneys for Defendants
12 | HOLY STONE ENTERPRISE CO., LTD.,
MILESTONE GLOBAL TECHNOLOGY, INC.
13 | (D/B/A HOLYSTONE INTERNATIONAL),
VISHAY POLYTECH CO., LTD.
14 |
[COUNSEL FOR OTHER DEFENDANTS LISTED
15 | ON SIGNATURE PAGE]

16 | UNITED STATES DISTRICT COURT

17 | NORTHERN DISTRICT OF CALIFORNIA

18 |

19 | ***IN RE CAPACITORS ANTITRUST LITIGATION*** | Master File No. 17-md-02801-JD

20 | | **DEFENDANTS' OMNIBUS MOTIONS IN LIMINE AND DPPS' RESPONSES THERETO**

21 | **THIS DOCUMENT RELATES TO:** |

22 | *Direct Purchaser Plaintiffs Action*, 14-cv-03264-JD | The Honorable James Donato

23 | | Date:          February 13, 2020
Time:          10:00 a.m.

24 |

25 |

26 |

27 |

28 |

1

## TABLE OF CONTENTS

2

3
Defendants Motion in Limine No. 1 to Exclude Criminal
    Documents and Transcripts...................................................................... 1

4
DPPs' Response to Defendants' Motion No. 1 ............................................ 9

5
Defendants Motion in Limine No. 2 to Admit Rebuttal Evidence
    If Guilty Pleas Are Introduced At Trial ............................................... 12

6

7
DPPs' Response to Defendants' Motion No. 2 ......................................... 18

8
Defendants Motion in Limine No. 3 to Preclude Introduction Of And Adverse
    Inference Instructions From Non-Party Fifth Amendment Depositions.................................. 22

9
DPPs' Response to Defendants' Motion No. 3 ......................................... 28

10
Defendants Motion in Limine No. 4 to Exclude Improper Characterizations
    Of or References To Defendants.......................................................... 31

11

12
DPPs' Response to Defendants' Motion No. 4 ......................................... 37

13
Defendants Motion in Limine No. 5 to Exclude Evidence of
    Subsequent Remedial Measures.......................................................... 40

14

15
DPPs' Response to Defendants' Motion No. 5 ......................................... 48

16
Defendants Motion in Limine No. 6 to Exclude
    All Evidence Relating To European Conduct........................................... 51

17

18
DPPs' Response to Defendants' Motion No. 6 ......................................... 57

19
Defendants Motion in Limine No. 7 to Exclude Out of Court Statements
    Relating to AVX Corporation and Kement Corporation Declarants ......................... 60

20
DPPs' Response to Defendants' Motion No. 7 ......................................... 66

21
Defendants Motion in Limine No. 8 to Exclude Evidence of
    Kemet Corporation's Sales ............................................................. 70

22

23
DPPs' Response to Defendants' Motion No. 8 ......................................... 76

24
Defendants Motion in Limine No. 9 to Exclude Evidence Of and
    Reference To the AVX and Chemi-Con Potential Joint Venture ............................ 78

25
DPPs' Response to Defendants' Motion No. 9 ......................................... 85

26

27
Defendants Taitsu Corporation, Taitsu America, Inc. and Nippon
    Chemi-Con Corp.'s Motion in Limine No. 10 to Exclude Evidence of
    Supplier-Customer Communications and to Provide a Limiting Instruction ................. 88

28

1

DPPs' Response to Defendants' Motion No. 10 ........................................................... 95

2

Defendants Motion in Limine No. 11 to Exclude
    Evidence of Foreign Investigations ...................................................................... 98

3

4

DPPs' Response to Defendants' Motion No. 11 ...................................................... 104

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

Steven Shea Kaufhold (SBN 157195)
KAUFHOLD GASKIN LLP
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 445-4621
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com

Roberto Finzi (admitted *pro hac vice*)
Farrah Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

*Counsel for Defendants*
*Nippon Chemi-Con, Corp. and*
*United Chemi-Con, Inc.*

[COUNSEL FOR OTHER DEFENDANTS
LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE CAPACITORS ANTITRUST LITIGATION*<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Direct Purchaser Plaintiffs Action*, 14-cv-03264-JD | Master File No. 17-md-02801-JD<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE CRIMINAL DOCUMENTS AND TRANSCRIPTS**<br><br>The Honorable James Donato<br><br>Date:      February 13, 2020<br>Time:      10:00 a.m. |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on February 13, 2020, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move this Court, pursuant to Rules 401, 402, 403 and 802 of the Federal Rules of Evidence, to preclude DPPs' introduction or use at trial of documents or transcripts created as part of the United States' criminal investigations and prosecutions of the undersigned Defendants or their alleged co-conspirators, including indictments, plea agreements, sentencing memoranda, or any other document or transcript referencing the same.

Date:  January 6, 2020

PAUL, WEISS, RIFKIND, WHARTON &GARRISON LLP
Charles F. Rule
Joseph J. Bial
Eric R. Sega
2001 K Street, NW
Washington, DC 20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

Roberto Finzi
Farrah R. Berse
Johan E. Tatoy
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

KAUFHOLD GASKIN LLP
Steven Shea Kaufhold
388 Market St, Suite 1300
San Francisco, CA 94111
Telephone:  (415) 445-4621
Facsimile:  (415) 874-1071
skaufhold@kaufholdgaskin.com

By: */s/ Joseph J. Bial*

Attorneys for Defendants
NIPPON CHEMI-CON CORPORATION and
UNITED CHEMI-CON, INC.

1

## **ISSUES TO BE DECIDED**

2       1.      Whether the DPPs should be allowed to introduce into evidence material—

3  including indictments, plea agreements, sentencing memoranda, and other such documents—

4  created as part of the United States' criminal investigations or prosecutions of the undersigned

5  Defendants and their alleged co-conspirators.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion In Limine To Exclude
Criminal Documents & Transcripts
Master File No. 17-md-02801-JD

The exhibit list provided by DPPs in connection with the scheduled trial of this case includes all manner of irrelevant hearsay documents generated as part of the Department of Justice's investigation and prosecution of the Defendants and their alleged co-conspirators. Specifically, and by way of example, DPPs' exhibit list includes entries for grand jury indictments, for plea agreements, and for memoranda submitted in connection with sentencings.

None of this material is relevant and, to the extent that it is, its probative value is dramatically outweighed by its potential to prejudice the Defendants, confuse the jury, and complicate these proceedings. Furthermore, these documents are hearsay, admissible at most against a single admitting party in this action, but not against that party's co-defendants.

# I. ARGUMENT

As the Court is aware, DPPs have alleged a broad, more than decade-long conspiracy "to fix and inflate the prices of aluminum, film, and tantalum capacitors from January 2002 through December 2013." DPPs' Mot. for Class Cert., *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, ECF No. 1693 (N.D. Cal. June 15, 2017). As the Court is likewise aware, certain defendants have pled guilty to conspiring to fix prices of certain electrolytic capacitors over certain periods of time. Significantly, the conspiracy alleged by the DPPs is different from and vastly broader than the conspiracies to which the different defendants pled. For this reason, the materials generated in the criminal cases are not relevant to this case. Furthermore, the use of these materials would require "trials within trials" to provide the necessary explanation and context to the jury.[1]

DPPs' exhibit list contains plea agreements entered into by certain defendants and their alleged co-conspirators. But those agreements have limited relevance to this action in that they describe conduct different from (and significantly narrower than) the broad conspiracy alleged in

---

[1] Defendants recognize that under 15 U.S.C. § 16(a), a final judgment in a criminal proceeding may be adduced by a civil plaintiff as *prima facie* evidence, but only against the pleading defendant and only for matters necessarily decided in the judgment. *See In re Capacitors Antitrust Litig. (No. III)*, No. 14-CV-03264-JD, 2018 WL 5980139, at *8 (N.D. Cal. Nov. 14, 2018). But that section does not require the introduction of other materials from criminal proceedings. Moreover, given the prejudicial effect of the plea agreements as to unspecified "certain electrolytic capacitors" coupled with the necessity of "trial[s] within a trial" to prevent juror confusion, Defendants believe that Rule 403 requires exclusion of these documents. *See Duran* v. *City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000) (excluding evidence of subsequent similar act in police shooting case under Rule 403 where there was high potential for juror confusion). If the Court denies this Motion and allows these materials as evidence here, Defendants seek the relief requested in Defendants' Motion *in Limine* No. 2 to Admit Rebuttal Evidence If Guilty Pleas Are Introduced at Trial, filed concurrently herewith.

Defendants' Motion In Limine To Exclude
Criminal Documents & Transcripts
Master File No. 17-md-02801-JD

the Complaint.  It is well-settled that evidence of guilty pleas can be used only to establish facts "necessarily decided" in a criminal action.  *United States* v. *Real Prop. Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992).  Here, the guilty pleas only "necessarily decided" that certain Defendants engaged in conspiracies regarding "certain" electrolytic capacitors during differing periods of time.  Those pleas do not even purport to describe the specific electrolytic capacitors affected or whether any specific customers (let alone any or all DPPs) were harmed.[2]  The existence of a price-fixing conspiracy as to certain electrolytic capacitors does not tend to prove a conspiracy as to others, even when those products are related.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010) (rejecting argument that involvement in a conspiracy relating to cathode ray tubes rendered more plausible a conspiracy claim relating to LCD panels).

Moreover, and importantly, not all of the defendants pled guilty to criminal charges, and the pleas of others are plainly irrelevant and inadmissible as to the non-pleading defendants.  *See Halbert*, 640 F.2d at 1004 ("[A] guilty plea or conviction of a codefendant may not be offered . . . as substantive evidence of the guilt of those on trial.").  *Id.* at 1005–06; *United States* v. *Maliszewski*, 161 F.3d 992, 1004 (6th Cir. 1998) ("[E]vidence of a co-conspirator's guilty plea is extremely prejudicial").  Nor are the pleas of pleading defendants admissible against other pleading defendants.  By definition, a guilty plea is not a co-conspirator statement made in furtherance of a conspiracy.  Indeed, the time periods to which certain defendants pled, as well as the capacitors at issue, differed even among the pleading defendants.  *Compare, e.g.*, Plea Agreement ¶ 4(a), *United States* v. *Hitachi Chem. Co.*, 16-cr-0180-JD, ECF No. 12-2 (N.D. Cal. May 13, 2016) (pleading to conduct occurring between at least Aug. 2002 and Mar. 2010), *with* Plea Agreement ¶ 4(a), *United States* v. *Nichicon Corp.*, 17-cr-00368-JD, ECF No. 19 (N.D. Cal.

---

[2] The conspiracies described in the various plea agreements all refer to a conspiracy concerning "certain electrolytic capacitors."  *E.g.*, Plea Agreement ¶ 4, *United States* v. *Matsuo Elec. Co. Ltd.*, 17-cr-00073-JD, ECF No. 12-2 (N.D. Cal. Mar. 24, 2017) (defendant pled guilty to conduct relating to "certain electrolytic capacitors"); Plea Agreement ¶ 4(b), *United States* v. *ELNA Co., Ltd.*, 16-cr-00365-JD, ECF No. 16-2 (N.D. Cal. June 6, 2017) (same); Plea Agreement ¶ 4(b), *United States* v. *Nippon Chemi-Con Corp.*, 17-cr-00540-JD, ECF No. 54 (N.D. Cal. May 31, 2018) (defendant pled guilty to conduct relating to "certain electrolytic capacitors manufactured outside of the United States").  Notably, two defendants remaining in the civil case—Shinyei and Taitsu—only produced *film* capacitors, which are not mentioned in any plea agreements.

Defendants' Motion In Limine To Exclude
Criminal Documents & Transcripts
Master File No. 17-md-02801-JD

1    Nov. 09, 2017) (pleading to conduct occurring between at least Nov. 2001 and Dec. 2011).[3]

2         Above and beyond the plea agreements themselves—which are inadmissible—DPPs

3    propose to offer other documents, including indictments, sentencing memoranda, and others that

4    are inadmissible under the Federal Rules of Evidence.  Indictments and informations, for example,

5    are out of court statements—allegations, in fact—of the grand jury and the government.  Those

6    allegations are irrelevant to DPPs' case, and are inadmissible hearsay.  Government sentencing

7    memoranda are likewise inadmissible out of court statements offered by DPPs for the truth of the

8    matters asserted therein, irrelevant to the question of whether DPPs' have met their burden of

9    establishing their allegations.  And while a sentencing memorandum might arguably be admissible

10   against the defendant who submitted it, it would be inadmissible as to any other defendant.[4]

11        Moreover, the danger of undue prejudice and delay from the jury misunderstanding the

12   proper use of any of these criminal documents is high, far outweighing any probative value.  There

13   is real danger that a juror would give undue weight to statements made in a different proceeding

14   than the instant civil case, rather than focusing on the allegations and facts properly presented by

15   DPPs as they attempt to prove their much broader case.  And even to the extent offered against

16   single defendants, the admission of documents that tell only one part of the story would clearly

17   require that the particular defendant be allowed to contextualize their statement by permitting an

18   explanation of the circumstances in which it was made, thereby creating a series of mini trials

19   regarding the scope and reasons for each pleading party's plea.

20                                        **CONCLUSION**

21        The Court should grant Defendants' Motion and exclude documents and testimony created

22   in the criminal proceedings pursuant to Federal Rules of Evidence 401, 402, 403, and 802.

---

23   [3] If the Court permits the plea agreements to be introduced into evidence, the Court should provide the
     jury with limiting instructions specifying the particular defendants against whom each plea can be used
24   as well as for what purposes.  *See* Defendants Proposed Jury Instruction No. 7.  *See United States* v.
     *Halbert*, 640 F.2d 1000, 1006–07 (9th Cir. 1981) (court erred in failing to tell the jury "in unequivocal
25   language that the plea may not be considered as evidence of a defendant's guilt"); *see also New York* v.
     *Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (approving instruction that conviction of
26   one defendant "could not be used against any other defendant for any purpose"); Fed. R. Evid. 105.

27   [4] To the extent DPPs seek to introduce evidence of criminal conduct from unrelated cases, such
     evidence is also irrelevant and unduly prejudicial hearsay which should be excluded.  For instance,
28   DPPs' exhibit list includes non-parties' plea agreements, such as Panasonic's plea in *United States* v.
     *Panasonic Corp.*, No. 2:10-cr-20576-JAC-MAR (E.D. Mich. Sept. 30, 2010).

**INDEX OF EXHIBITS TO DEFENDANTS' MOTION IN LIMINE NO. 1**

The table below contains a non-exclusive list of exemplary documents listed on DPPs' initial exhibit list that are affected by this motion.  Defendants' motion is not limited to the documents on this list, but includes any documents covered by the substance of this motion that DPPs have already identified or may identify in its list of rebuttal exhibits, and any testimony regarding defendants' pleas, sentencing, or the ultimate result of the criminal *Capacitors* case. Copies of the exhibits listed below are attached to this motion.

| Exhibit No. | Description |
|---|---|
| 12065 | 2018-09-19 DECLARATION of Mikal J. Condon ISO United States' Sentencing Memorandum - USA v. Nippon Chemi-Con Corp. N.D. Case No. 4:17-cr-00540-JD |
| 12066 | 2018-09-25 UNITED STATES' SENTENCING MEMORANDUM and Motion for Departure - USA v. Tokuo Tatai, N.D. Case No. 4:15-cr-00163-JD |
| 12067 | 2018-09-26 UNITED STATES' REPLY SENTENCING MEMORANDUM - USA v. Nippon Chemi-Con Corp., N.D. Case No. 4:17-cr-00540-JD |
| 12068 | 2018-10-03 TRANSCRIPT PROCEEDINGS - USA v. Nippon Chemi-Con Corp., N.D. Case No. 4:17-cr-00540-JD |
| 12069 | 2018-10-10 TRANSCRIPT PROCEEDINGS - USA v. Tokuo Tatai, N.D. Case No. 4:15-cr-00163-JD-9 |
| 12070 | 2013-07-18 PLEA AGREEMENT - USA v. Panasonic Corp., E.D. Mich. Case No. 2:10-cr-20540-GCS-PJK |
| 12071 | 2010-09-30 PLEA AGREEMENT - USA v. Panasonic Corp., E.D. Mich. Case No. 2:10-cr-20576-JAC-MAR |
| 12072 | 2013-07-18 PLEA AGREEMENT - USA v. Sanyo Electric Co., Ltd., N.D. Cal Case No. 4:13-cr-00472-YGR |
| 12073 | 2013-07-18 PUBLIC AFFAIRS RELEASE - United States Department of Justice, Office of Public Affairs |
| 12077 | 2018-10-03 PUBLIC AFFAIRS RELEASE - United States Department of Justice, Office of Public Affairs |
| 12079 | 2017-10-11 TRANSCRIPT PROCEEDINGS - USA v. Holy Stone Holdings Co., Ltd., N.D. Cal. Case No. 4:16-cr-00366-JD |

Certificate of Service
Master File No17-md-02801-JD

| 12080 | 2016-08-18 PLEA AGREEMENT - USA v. Holy Stone Holdings Co., Ltd., N.D. Cal. Case No. 4:16-cr-00366-JD |
|---|---|

**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE CRIMINAL DOCUMENTS AND TRANSCRIPTS**

**A.    The Guilty Pleas and Related Documents Are Admissible.**

Guilty pleas by certain defendants and their co-conspirators, as well as certain other documents related to those pleas, are relevant and admissible as substantive evidence against all Defendants.

Guilty pleas and plea agreements are presumptively admissible, as expressly contemplated by Federal Rule of Evidence 803(22), which provides an exception to the rule against hearsay for "a final judgment of conviction . . . entered after a trial or guilty plea." The plea agreements are relevant because in them, Defendants admit to unlawful conduct at issue in this case. They describe a conspiracy where Defendants, through their employees, including high-level personnel, conspired with each other to fix prices and rig bids of capacitors. *See*, *e.g.*, NCC Plea Agreement ¶ 4(b). They describe that Defendants, through their officers and employees, engaged in discussions and attended meetings where they agreed to fix the price and rig bids of capacitors to be sold in the United States. *Id.* "[T]he facts contained in th[e] plea agreement[s] are probative and relevant to the determination of the outcome here." *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL (CWx), 2011 WL 291176, at *9 (C.D. Cal. Jan. 25, 2011).

Defendants' argument that the guilty pleas are admissible only against the pleading Defendants is faulty because it improperly relies on law applicable to criminal cases rather than civil cases. Defs.' MIL No. 1 at 2. Defendants cite no civil cases applying such a rule and, in fact, courts in civil cases have admitted guilty pleas against persons *other* than the confessor. *See United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 892 (D.C. Cir. 2010); *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995); *Strauss v. Credit Lyonnaise, S.A.*, 925 F. Supp. 2d 414, 447 (E.D.N.Y. 2013). In an antitrust case, a judgment of conviction relating to the conspiracy should be admissible against co-conspirators.

Moreover, other documents related to the guilty pleas, such as indictments, are also admissible. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 412 (6th Cir. 2006) ("Several courts have held that an indictment from a previous conviction is properly included

1   within the scope of Rule 803(22) and is thus admissible . . . .") (citing *Maynard v. Dixon*, 943

2   F.2d 407, 414 (4th Cir.1991)).

3       Guilty pleas are highly probative evidence of the central disputed fact in this litigation: the

4   existence of a conspiracy. Other courts, including in this district, have denied motions *in limine* to

5   exclude co-conspirator criminal convictions and guilty pleas for this purpose. *See Costco*

6   *Wholesale Corp. v. AU Optronics Corp.*, No. C13-1207, 2014 WL 4674390, at *8-10 (W.D.

7   Wash. Sept. 17, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal.

8   May 4, 2012) (Dkt. No. 5597) (Final Pretrial Order at 6); *In re Static Random Access Memory*

9   *(SRAM) Antitrust Litig.*, No. 07-md-1819, 2010 WL 10086747, at *3 (N.D. Cal. Dec. 16, 2010);

10  *S.E.C. v. Hilsenrath*, Case No. C 03-03252, 2008 WL 2225709, at *4 (N.D. Cal. May 29, 2008)

11  ("the plea agreement is still extremely probative as a party admission and evidence of [crime]").

12      In *Costco Wholesale Corp.*, the court addressed a similar motion *in limine*. The defendant,

13  a Taiwanese manufacturer of TFT-LCD screens, sought to exclude evidence of price-fixing

14  convictions of various Japanese TFT-LCD manufacturers. The court denied the motion because

15  the Japanese convictions were relevant and probative evidence of the conspiracy alleged by the

16  plaintiff. 2014 WL 4674390 at *10 ("Costco can use those convictions as part of its effort to show

17  that the conspiracy that those convictions establish is part of the conspiracy it hopes to prove at

18  trial."). The court explicitly rejected the argument that the guilty pleas were not relevant because

19  they were narrower than the conspiracy alleged. *See id.* at *8-9 (rejecting defendants' argument

20  that guilty pleas were not admissible because they related to narrower conspiracy than the one

21  alleged by Costco). The Class in this action has the burden to show that there was a conspiracy

22  and that each of the Defendants joined it. The guilty pleas speak to the first issue: the existence of

23  a conspiracy. That is relevant to the Class's claims against each of the Defendants, whether or not

24  a particular Defendant plead guilty.

25      Contrary to Defendants' argument, the probative value of the guilty pleas is not

26  substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403; *Costco*

27  *Wholesale Corp.*, 2014 WL 4674390, at *10 ("[T]he court finds no danger of undue prejudice

28  flowing from the admission of the criminal convictions of the Japanese manufacturers.");

1    *Harbert*, 608 F.3d at 892 ("[P]roperly admitted but potentially incriminating evidence does not

2    equate to unfairly prejudicial evidence that must be excluded.").

3    **B.      In All Other Respects, Defendants' Motion Should Be Denied as Premature.**

4           Defendants' request to exclude *all* documents relating to criminal investigations or

5    prosecutions of Defendants and their alleged co-conspirators is premature and overbroad.

6    "[M]otions in limine should rarely seek to exclude broad categories of evidence, as the court is

7    almost always better situated to rule on evidentiary issues in their factual context during trial."

8    *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525, 2010 WL 2035800,

9    at *1 (C.D. Cal. May 19, 2010). That any documents related to criminal matters are inadmissible

10   cannot be determined without appropriate understanding of the context for which they would be

11   offered, and that context cannot be known until trial. Another example of potentially admissible

12   documents are charging documents, which may be admissible under Rule 803(22), or because the

13   plea agreements incorporate them by reference. *See* NCC Plea ¶ 5(a) (listing as an element of the

14   charged offense, "the conspiracy described in the Indictment existed at or about the time

15   alleged"). For example, charging documents may also be admissible where, after the indictment,

16   the charged party has avoided apprehension. *See F.D.I.C. v. Bakkebo*, 506 F.3d 286, 295-96 (4th

17   Cir. 2007) (evidence of principal's unrelated indictment relevant and admissible in civil fraud and

18   conspiracy case).

19          The Court should deny Defendants' motion *in limine* to exclude criminal documents and

20   transcripts.

21

22

23

24

25

26

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

Heather S. Nyong'o (CA SBN 222202)
heather.nyongo@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, California 94111
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Thomas Mueller (*pro hac vice*)
thomas.mueller@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Counsel for Defendants ELNA Co., Ltd. and
ELNA America, Inc.*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Direct Purchaser Plaintiffs Action*, 14-cv-03264-JD | Case No. 14-cv-03264-JD<br>MDL No. 2801<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 2 TO ADMIT REBUTTAL EVIDENCE IF GUILTY PLEAS ARE INTRODUCED AT TRIAL**<br><br>Date:   February 13, 2020<br>Time:  10:00 am<br>Judge: Honorable James Donato<br>        Courtroom 11 – 19th Floor |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2      Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3  heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4  Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5  this Court to permit the introduction of rebuttal evidence related to the pleading Defendants' plea

6  agreements if those plea agreements are introduced into evidence at trial.

7

8  Dated: January 6, 2020          */s/ Heather S. Nyong'o*_____

9                                  Heather S. Nyong'o
10                                 WILMER CUTLER PICKERING
                                   HALE AND DORR LLP
11                                 1 Front Street, Suite 3500
                                   San Francisco, California 94111
12                                 heather.nyongo@wilmerhale.com

13                                 Attorneys for Defendants
                                   ELNA CO., LTD. and ELNA AMERICA, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MOTION TO ADMIT REBUTTAL EVIDENCE IF GUILTY PLEAS ARE INTRODUCED AT TRIAL (MDL NO. 2801)

1

**ISSUE TO BE DECIDED**

2          Whether, pursuant to the rule of completeness, the "opening the door" doctrine, and

3    Rules 106, 401, and 403 of the Federal Rules of Evidence, the Court should permit the

4    introduction of rebuttal evidence related to the pleading Defendants' plea agreements if those

5    plea agreements are introduced into evidence at trial.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

2      It has become clear that Plaintiffs intend to mislead the jury about the scope of the

3  criminal plea agreements of Defendants NCC, Matsuo, Holy Stone Holdings, and ELNA, and

4  numerous non-party individuals and entities ("Plea Agreements").  As evidence of Plaintiffs'

5  intent to argue that the scope of the Plea Agreements is broader than what is written on their

6  face, Plaintiffs hired a former U.S. Attorney with no role in the underlying criminal

7  proceedings—and no experience prosecuting criminal antitrust cases in general—to stand in the

8  shoes of the Department of Justice ("DOJ") and offer "expert opinions" on the agreements and

9  instruct the jury on what they mean.  Plaintiffs confirmed this strategy during a recent meet-and-

10  confer, saying the Plea Agreements were "vague" and "negotiated … with lack of specificity,"

11  and "you don't get to specify" their meaning even though "that's what we're going to do."

12  Nyong'o Decl. ¶ 3.[1]  In other words, Plaintiffs are planning to argue that the Plea Agreements

13  prove the "global," "overarching" conspiracy they have alleged in this civil case—but hide from

14  the jury that DOJ and the pleading parties did not intend the agreements to be anywhere near this

15  broad.[2]  This would paint a highly misleading picture of the conduct described in the agreements.

16  *See, e.g.,* Ex. 1 (comparing ELNA Plea Agreement and Plaintiffs' allegations).

17      In Motion in Limine # 1, Defendants moved to exclude the Plea Agreements and all

18  related criminal documents.  But if the Plea Agreements are admitted, and Plaintiffs are allowed

19  to introduce misleading "evidence" and argument about their scope, then as a matter of fairness

20  Defendants must be given the opportunity to offer other evidence, including what the DOJ said

21  about the scope of the agreements.  For example, Defendants must be permitted to introduce

22  DOJ's memoranda opposing Plaintiffs' request for restitution from ELNA, and DOJ's sentencing

23  memoranda in the Holy Stone Holdings matter, among others ("Rebuttal Evidence").  In other

24  words, if Plaintiffs introduce the Plea Agreements, then Defendants should also be permitted to

25  inform the jury that DOJ told this Court that "***[n]ot all of ELNA's U.S. customers were***

26

27  ---

[1] The Plea Agreements are not ambiguous.  They precisely and intentionally state that the defendant only fixed the price of "certain" electrolytic capacitors.  *See, e.g., U.S. v. Elna,* 16-cr-365, ECF No. 40 (N.D. Cal. Mar. 15, 2018).

28  [2] *See* Third Am. Compl., 14-cv-3264, ECF No. 1831, at ¶¶ 7, 13 (alleging "overarching agreement" to fix the prices of all aluminum, tantalum, *and* film capacitors "worldwide"); Plaintiffs' Opp. to MSJ, 17-md-2801, ECF No. 803, at 10 (claiming their expert opines that the alleged conspiracy "inflated prices to all or nearly all Class members").

1   *necessarily victims*," and the "*affected volume of commerce was not as broad as all U.S.*

2   *sales*";[3] and that DOJ stated that "*Holy Stone's volume of affected commerce is based entirely*

3   *on sales to the one United States customer for which Holy Stone Japan was responsible for*

4   *negotiating prices,*"[4] and "*the government's investigation did not uncover any evidence that*

5   *Holy Stone Enterprise participated in or was aware of the capacitors conspiracy*."[5]

6        To be clear, Defendants are not arguing that *if* the Court admits Plea Agreements, then *all*

7   other documents from the criminal cases that are listed on Plaintiffs' exhibit list should or can be

8   admitted into evidence.  Defendants' argument is that if Plaintiffs are permitted to introduce Plea

9   Agreements and make misleading arguments about their scope, then Defendants must be given

10  the opportunity to present other evidence demonstrating why Plaintiffs' arguments about their

11  scope are incorrect.  Specifically, Defendants should be permitted to introduce certain evidence

12  that reflects a mutual understanding between DOJ and the pleading Defendant, where such

13  mutual understandings exist, as to the scope of the pled-to conspiracy.[6]  Furthermore, Defendants

14  would not be introducing these statements to prove the truth of the matters asserted therein (e.g.,

15  that not all of ELNA's customers were necessarily victims).  *See* Fed. R. Evid. 801(c)(2).

16  Rather, Defendants would be introducing them to correct the false impression Plaintiffs hope to

17  create—that the Plea Agreements are admissions by Defendants that they fixed the prices of *all*

18  capacitors they sold into the U.S. for more than a decade.  This non-hearsay Rebuttal Evidence is

19  admissible under both the rule of completeness and the "opening the door" doctrine.

20  **II.    ARGUMENT**

21       **A.    The Rebuttal Evidence Is Admissible Under the Rule of Completeness**

22       "When a writing or recorded statement or part thereof is introduced by a party, an adverse

23  party may require the introduction [of] ... any other writing or recorded statement which ought in

24  fairness to be considered contemporaneously with it."  Fed. R. Evid. 106.  The Rebuttal Evidence

25  is necessary to provide the jury with a complete and accurate understanding of the Plea

---

[3] *U.S. v. Elna*, 16-cr-365, ECF No. 65 (N.D. Cal. Mar. 15, 2018) ("U.S. Restitution Memo"), at 3 (emphasis added).
[4] *U.S. v. Holy Stone Holdings Co., Ltd.*, 16-cr-366, ECF No. 16 (N.D. Cal. Aug. 8, 2017), at 4 (emphasis added).
[5] *Id.*, ECF No. 45 at 4 (emphasis added).
[6] DOJ and NCC had no such mutual understandings.

Agreements in light of Plaintiffs' telegraphed strategy of using the Plea Agreements as evidence of a sprawling, global conspiracy—while obscuring what they actually say. Without the Rebuttal Evidence, Plaintiffs will seek to leave the jury with the false impression that ELNA, Matsuo, Holy Stone, and NCC admit that they participated in a global, overarching conspiracy to fix the prices of all aluminum, tantalum, and film capacitors, and that this conspiracy caused all or nearly all of their U.S. customers to pay supra-competitive prices. The pleading Defendants have *not* admitted this—they entered into Plea Agreements with DOJ on far narrower grounds, of which Plaintiffs have had extensive discovery—and the only way to prevent Plaintiffs from misleading the jury is to allow Defendants to introduce Rebuttal Evidence which "ought in fairness to be considered contemporaneously." Fed. R. Evid. 106.

**B.     The Rebuttal Evidence Is Admissible Under the "Opening the Door" Doctrine and In No Way Prejudicial to Plaintiffs**

"[T]he 'opening the door' principle allows parties to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Tirado,* 290 F. App'x 28, 31 (9th Cir. 2008). This doctrine permits the introduction of even "otherwise inadmissible evidence" like hearsay when the other party "'opens the door' by introducing potentially misleading testimony." *United States v. Mendoza-Prado*, 314 F.3d 1099, 1105 (9th Cir. 2002).

It is essential that Defendants be given the opportunity to use Rebuttal Evidence to correct Plaintiffs' misleading arguments and "evidence" on DOJ's supposed intent and the purported vagueness in the Plea Agreements. And the Rebuttal Evidence would in no way unfairly prejudice Plaintiffs, who have had access to DOJ's public statements all along, as well as extensive discovery on the factual basis of the Plea Agreements—indeed, Plaintiffs obtained testimony on this precise topic in Rule 30(b)(6) depositions. As such, the Court should allow Defendants to offer the Rebuttal Evidence under the "opening the door" doctrine.

**III.     CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to permit Defendants to introduce the Rebuttal Evidence if necessary to clarify the scope of the Plea Agreements.

1

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO ADMIT REBUTTAL EVIDENCE IF GUILTY PLEAS ARE INTRODUCED AT TRIAL**

2

3

**A.      Defendants' Proposed "Rebuttal Evidence" Is Not Admissible Under Rule 106.**

4

Defendants argue that if the Class introduces guilty pleas by certain defendants and co-

5

conspirators, Defendants should be permitted to offer "Rebuttal Evidence"—apparently

6

consisting of selected documents—all hearsay—that purport to support Defendants'

characterizations and re-interpretation of the plea agreements.[1] The plea agreements are

7

integrated written agreements, signed by the parties to be bound. Corporate representatives stood

8

before a federal judge, took an oath against perjury, and admitted to criminal price fixing on

9

behalf of the corporation. No plea was accepted without a formal plea allocution. Defendants now

10

improperly attempt to admit extrinsic parol evidence or other evidence to try to explain away the

11

plain words of the plea agreements. As Defendants concede, the plea agreements are not

12

incomplete or misleading, Def. MIL 2 at 1 n.1, and Rule 106 is inapplicable. Moreover, the

13

documents Defendants seek to admit are inadmissible hearsay.

14

The plea agreements are formal written agreements. The parties to the agreements, the

15

Department of Justice and certain Defendants here, reduced their understandings to a final written

16

document. Consistent with the parol evidence rule, parties to the agreement should not be allowed

17

to introduce extrinsic evidence to explain, vary or modify the written agreements. For example,

18

oral discussions from the negotiation process, or expressions of the parties' subjective intent,

19

should not be admissible to supply additional terms or provide evidence of a different intent as to

20

the terms of the agreement. In addition, provisions or terms that are not found in the agreement

21

were omitted for a reason. Simply stated, extrinsic evidence is inadmissible to vary a written

22

contract. And, as Defendants admit, the plea agreements are not ambiguous. Def. MIL 2 at 1, n.1.

23

Defendants cite the rule of completeness embodied in Federal Rule of Evidence 106. Rule

24

106 does not apply here. Rule 106 provides: "If a party introduces all or part of a writing or

25

recorded statement, an adverse party may require the introduction, at that time, of any other

26

27

---

[1] Defendants inconsistently argue that the documents they seek to admit clarify the plea agreements, while any documents related to the criminal case that the Class would introduce would necessarily be misleading.

28

1   part—or any other writing or recorded statement—that in fairness ought to be considered at the

2   same time." The rule "exists to avert misunderstanding or distortion caused by introduction of

3   only part of a document." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (internal

4   quotation marks and citation omitted); *see United States v. Collicott*, 92 F.3d 973, 983 (9th Cir.

5   1996) (noting purpose of Rule 106 would not be served by admitting additional evidence because

6   "there was no concern in this case that [a party] introduced a misleadingly-tailored snippet").

7          The plea agreements are not incomplete. The Class intends to rely on the entire plea

8   agreement as executed by the parties thereto and as filed in the Court's docket. Defendants'

9   rebuttal evidence would not serve the purpose of Rule 106 because the Class is seeking to admit

10  the entire plea agreements, not "misleadingly tailored snippet[s]" of them. *Collicott*, 92 F.3d at

11  983. Further, the plea agreements are not misleading. Indeed, Defendants admit, "[t]he Plea

12  agreements are not ambiguous." Def. MIL No. 2 n.1. That should end the inquiry.

13         Finally, the Rebuttal Evidence is inadmissible hearsay. Defendants seek to admit DOJ

14  sentencing memoranda although they concede, "Government sentencing memoranda are. . .

15  inadmissible out of court statements offered. . . for the truth of the matter asserted therein." Def.

16  MIL No. 1 at 3. Rule 106 does not provide an exception to the hearsay rule. The case law is clear

17  that "the rule of completeness does not trump the rule that '[a] defendant does not have the right

18  to present self-serving hearsay statements.'" *United States v. Perez*, No. ED CR 13-00087, 2014

19  WL 12689229, at *5 (C.D. Cal. May 15, 2014). "Rule 106 does not compel admission of

20  otherwise inadmissible hearsay evidence." *Collicott*, 92 F.3d at 983 (internal quotation marks

21  omitted).

22  **B.      Defendants' "Opening the Door" Arguments Are Incorrect and Premature.**

23         Defendants claim, "It has become clear that Plaintiffs intend to mislead the jury about the

24  scope of the criminal plea agreements" in this case, Def. MIL 2 at 1, and thus assert that their so-

25  called "Rebuttal Evidence" is admissible under the "opening the door" doctrine. *Id*. at 3. The

26  Class has no intention of misleading the jury about anything, including the plea agreements.

27         Defendants' arguments regarding "opening the door" are misplaced. To the extent they are

28  referring to the doctrine of curative admissibility, there is no basis for their argument. A party

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1    may only invoke curative admissibility when earlier in the same trial the opponent succeeded in

2    introducing inadmissible evidence. *See United States v. Nardi,* 633 F. 2d 9072 (1st Cir. 1980).

3    First  because the guilty pleas and plea agreements are admissible, the doctrine does not apply.

4    Second, as the Ninth Circuit holds, the doctrine only applies if the inadmissible evidence created

5    a *false* impression. *United States v. Sine*, 493 F.3d 1021,1037 (9th Cir. 2007) ("[T]he 'opening the

6    door' principle allows parties 'to introduce evidence on the same issue to rebut any ***false***

7    impression that might have resulted from the earlier admission.'" (emphasis in original)).

8    "Presenting a theory of the case that can be effectively rebutted by otherwise-inadmissible

9    evidence . . . does not by itself open the door to using such evidence; only partial, misleading use

10   of the evidence itself can do so." *Id*. at 1038. The Class intends to offer the guilty pleas and plea

11   agreements in their entirety. There is no falsity or inaccuracy. *See Sine*, 493 U.S. at 1037

12   (doctrine does not apply because party "did not introduce an inaccurate portrait of the order

13   itself."). Third, even if the doctrine did apply, Defendants would not be free without limit to offer

14   evidence in response. The principle "is not so capacious as to allow the admission of any

15   evidence made relevant by the opposing party's strategy, without regard to the Federal Rules of

16   Evidence." *Id.*

17        Even if the presentation of evidence were false—and it is not—Defendants may not offer

18   inadmissible evidence, including hearsay without limit. *Id*. ("a party cannot appeal to the truth of

19   the matter asserted by hearsay evidence even when its opponent has opened the door to the use of

20   otherwise inadmissible hearsay. Instead, the adversary is limited to using the hearsay evidence for

21   matters not concerning the truth of the statement." (citations omitted)); *see Collicott*, 92 F.3d at

22   981 n. 8, 982 & n. 11.The Class intends to offer the guilty pleas, plea agreements, and other

23   related documents to establish the existence of a price-fixing conspiracy based on evidence that

24   some of the Defendants admitted they participated in it. That is all true.

25        Defendants' arguments are also premature. "[U]nless a false impression has been created

26   by a party or inadmissible evidence has been presented, the door is not open, and there is no need

27   for curing." *IGT v. Alliance Gaming Corp.,* No. 04-cv-1676, 2008 WL 11450858, at *3 (D. Nev.

28   Oct. 21, 2008). Defendants are free to identify any improper use of these materials at trial.

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1    The Court should deny Defendants' motion *in limine* to admit rebuttal evidence if guilty

2  pleas are introduced at trial.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Heather S. Nyong'o (CA SBN 222202)
    heather.nyongo@wilmerhale.com
2   WILMER CUTLER PICKERING
    HALE AND DORR LLP
3   1 Front Street, Suite 3500
4   San Francisco, California 94111
    Telephone: (650) 858-6000
5   Facsimile: (650) 858-6100

6
    Thomas Mueller (*pro hac vice*)
7   thomas.mueller@wilmerhale.com
    WILMER CUTLER PICKERING
8   HALE AND DORR LLP
    1875 Pennsylvania Avenue, NW
9   Washington, DC 20006
    Telephone: (202) 663-6000
10  Facsimile: (202) 663-6363

11
    *Counsel for Defendants ELNA Co., Ltd. and*
12  *ELNA America, Inc.*

13
    [Additional Counsel Listed on Signature Page]
14
                **UNITED STATES DISTRICT COURT**
15              **NORTHERN DISTRICT OF CALIFORNIA**
                **SAN FRANCISCO DIVISION**
16

17  | IN RE CAPACITORS ANTITRUST | Case No. 14-cv-03264-JD |
    | LITIGATION | MDL No. 2801 |
18

19  This Document Relates to:        **DEFENDANTS' MOTION IN LIMINE**
                                     **NO. 3 TO PRECLUDE INTRODUCTION**
20  *Direct Purchaser Plaintiffs Action*, 14-cv-   **OF AND ADVERSE INFERENCE**
    03264-JD                         **INSTRUCTIONS FROM NON-PARTY**
21                                   **FIFTH AMENDMENT DEPOSITIONS**

22                                   Date:   February 13, 2020
                                     Time:  10:00 am
23                                   Judge: Honorable James Donato
24                                            Courtroom 11 – 19th Floor

25

26

27

28

DEFS.' MOTION TO PRECLUDE INTRODUCTION OF AND ADVERSE INFERENCE INSTRUCTIONS FROM
NON-PARTY FIFTH AMENDMENT DEPOSITIONS (MDL NO. 2801/CASE NO. 14-CV-03264-JD)

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on February 13, 2020, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move this Court, pursuant to Rules 401 and 403 of the Federal Rules of Evidence and the relevant caselaw, to preclude the introduction of, and the instruction of the jury to draw adverse inferences from, Fifth Amendment depositions taken in this litigation.

Dated: January 6, 2020                    */s/ Heather S. Nyong'o*

Heather S. Nyong'o
WILMER CUTLER PICKERING
HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, California 94111
heather.nyongo@wilmerhale.com

Attorneys for Defendants
ELNA CO., LTD. and ELNA AMERICA, INC.

DEFS.' MOTION TO PRECLUDE INTRODUCTION OF AND ADVERSE INFERENCE INSTRUCTIONS FROM
NON-PARTY FIFTH AMENDMENT DEPOSITIONS (MDL NO. 2801/ CASE NO. 14-CV-03264-JD)

1

## **ISSUE TO BE DECIDED**

Whether, pursuant to Rules 401 and 403 of the Federal Rules of Evidence and the relevant caselaw, the Court should preclude the introduction of, and the instruction of the jury to draw adverse inferences from, non-party Fifth Amendment depositions taken in this litigation.

DEFS.' MOTION TO PRECLUDE INTRODUCTION OF AND ADVERSE INFERENCE INSTRUCTIONS FROM
NON-PARTY FIFTH AMENDMENT DEPOSITIONS (MDL NO. 2801/ CASE NO. 14-CV-03264-JD)

## I.   INTRODUCTION

Multiple non-party witnesses invoked their Fifth Amendment privilege against self-incrimination at depositions in this litigation—including employees or former employees of Defendants (NCC, Matsuo, ELNA) and non-Defendants (Hitachi, Rubycon)—and DPPs have signaled their intent to present excerpts of these depositions at trial and to ask the Court to instruct the jury that it may draw adverse inferences from the invocations.  Because this testimony is not probative and needlessly cumulative of other evidence, is highly prejudicial given the overbroad deposition questions posed by DPPs, and cannot be imputed to most or all of the Defendants under the caselaw, the Court should exclude all such evidence from trial.[1]

## II.   ARGUMENT

### A.   The Fifth Amendment Testimony and Adverse Inferences Should Be Excluded as Irrelevant, Unfairly Prejudicial, Misleading, And Cumulative.

The admissibility of Fifth Amendment testimony and adverse inference instructions "begins with the relevance threshold, and with the consideration of whether the value of presenting such evidence was substantially outweighed by the danger of unfair prejudice."  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000).  The probative value of such testimony is low.  *See Allstate Ins. Co. v. James*, 845 F.2d 315, 320 (11th Cir. 1988) ("The fact that [defendants] chose to exercise their Constitutional rights as explained to them upon the advice of their attorney provides little probative evidence of their involvement.").  And the "potential prejudice in revealing the invocation of the Fifth Amendment is high, because the jury may attach undue weight to it, or may misunderstand [the witness's] decision to invoke his constitutional privilege."  *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465 (5th Cir. 1982) (an invocation "is an ambiguous response").

---

[1] There are currently two motions pending before the Court concerning ELNA, Matsuo, and NCC employees who have withdrawn their Fifth Amendment invocations.  *See* MDL ECF Nos. 1030, 1045.  The Court will hear arguments on those motions on January 23, 2020.  The instant motion seeks relief on different grounds with respect to a broader set of witnesses, and therefore must be decided regardless of the Court's rulings on the earlier motions.  Additionally, the parties' initial deadline to exchange deposition designations is January 21, 2020, which Defendants believe will substantiate the scope of DPPs' desire to rely on Fifth Amendment witnesses.

1    DPPs should not be permitted to introduce the Fifth Amendment testimony because the

2    witnesses' ambiguous invocations of the privilege, on the advice of counsel, have little probative

3    value, and any such value is reduced by and needlessly cumulative of the abundant substantive

4    testimony and documentary evidence in this case.  Far from there being a "substantial need for

5    the information," *Glanzer*, 232 F.3d at 1265, DPPs have taken more than *two hundred*

6    substantive depositions, including numerous depositions from each of the companies that employ

7    or employed the witnesses who invoked the privilege, and list more than 3,200 documents on

8    their exhibit list.  Unlike a small case where the sole witness's invocation might be the only

9    evidence of a fact in dispute, no witnesses in this sprawling ten-party multi-district litigation

10   have unique, essential knowledge necessitating the introduction of their verbalizing their intent

11   to follow the advice of their lawyers at deposition not to answer questions.

12   Further, misleading the jury and unfair prejudice are nearly guaranteed because DPPs

13   asked exceedingly overbroad questions at the depositions—knowing the witnesses would not

14   answer them—in an attempt to secure favorable adverse inferences, and now they seek to present

15   repetitive videotape excerpts of these depositions to inflame the jury.  Courts routinely exclude

16   such gamesmanship-driven "evidence" as not probative and unduly prejudicial.  *See Ullman-*

17   *Briggs, Inc. v. Salton/Maxim Housewares, Inc.*, 1996 WL 535083, at *17 (N.D. Ill. Sept. 17,

18   1996) (precluding adverse inferences where counsel asked "questions in such a way as to be able

19   to create the most damaging testimony through negative inference, safe from any contradiction

20   by the witness no matter what the actual facts"); *In re 650 Fifth Ave. & Related Properties,* 2019

21   WL 3756033, at *16 (2d Cir. Aug. 9, 2019) (finding district court erred by admitting "parade of

22   videotapes … strategically spread out across multiple days of trial" that were "substantially more

23   prejudicial and redundant than probative").  This Court should do the same.

**B.     The Fifth Amendment Testimony and Adverse Inferences Should Be
         Excluded Because They Cannot Be Imputed to Most or All Defendants.**

26   The testimony at issue is of individuals who are not parties to this action.  Courts

27   consider four factors to determine "whether to permit an adverse inference against a party based

28

1    on a non-party's invocation" of the Fifth Amendment privilege:  "'1. The Nature of the Relevant

2    Relationships … 2. The Degree of Control of the Party Over the Non-Party Witness … 3. The

3    Compatibility of the Interests of the Party and Non–Party Witness in the Outcome of the

4    Litigation … 4. The Role of the Non–Party Witness in the Litigation ….'"  *Cotton v. Eureka*,

5    2010 WL 2889498 (N.D. Cal. 2010) (quoting *LiButti v. U.S.*, 107 F.3d 110 (2d Cir. 1997)).

6           Testimony by employees and former employees of non-parties like Hitachi and Rubycon

7    cannot be imputed to any Defendant and should therefore be excluded.  The "nature" of their

8    relationships to Defendants—the "most significant" factor—is that they have no relationship,

9    employment or otherwise.  *LiButti*, 107 F.3d at 123.  Nor do Defendants have any "degree of

10   control" over these witnesses, who have independent counsel, or any commonality of interests—

11   to the contrary, Rubycon and Hitachi are obligated to cooperate with DPPs *against* Defendants

12   under settlement agreements, further differentiating the interests of these witnesses from those of

13   Defendants.  *Id.*  Finally, none of the witnesses will be a "key figure" at trial because their

14   employers are not parties and there is abundant substantive testimony to utilize.  *Id.*

15          Likewise, testimony by employees and former employees of Defendants (NCC, Matsuo,

16   and ELNA) cannot be imputed to any Defendant—including NCC, Matsuo, and ELNA—and

17   should therefore be excluded.  Former employees, in particular, do not pass muster under *LiButti*.

18   *See In re TFT-LCD Antitrust Litig.*, No. 07-md-1827 (N.D. Cal.) (Illston, J.), Dkt. 5597 (granting

19   Toshiba's motion to exclude adverse inferences from Fifth Amendment deposition of its former

20   employee).  And most current employees, while a closer call, simply do not play important

21   enough roles in this lawsuit (factor 4) to warrant imputation.  But even for those who do play

22   important roles, adverse inferences are inappropriate because there is no "substantial need for the

23   information" or "less burdensome way of obtaining" it, *Glanzer*, 232 F.3d at 1265, where DPPs

24   have hundreds of substantive depositions to choose from instead.

25   **III.    CONCLUSION**

26          The Court should preclude the introduction of, and the instruction of the jury to draw

27   adverse inferences from, non-party Fifth Amendment depositions taken in this litigation.

28

1
2
**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE INTRODUCTION OF AND ADVERSE INFERENCE INSTRUCTIONS FROM NON-PARTY FIFTH AMENDMENT DEPOSITIONS**

3
4
5
6
7
8
This Court already placed the Defendants on notice that it may allow the introduction of Fifth Amendment testimony with an adverse inference instruction to the jury. Defendants were aware of that when they instructed certain witnesses to invoke the Fifth Amendment. Indeed, Courts regularly permit the introduction of Fifth Amendment testimony because it is highly probative and is not unduly prejudicial, and Defendants fail to demonstrate that drawing such adverse inferences is inappropriate here.

9
**A.      Fifth Amendment Testimony Has Probative Value and Is Admissible Evidence.**

10
11
12
13
14
15
16
17
18
19
20
The Ninth Circuit recognizes, "When a party asserts the privilege against self-incrimination in a civil case, the district court has discretion to draw an adverse inference from such assertion." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008). Trial courts, including those in this district, regularly admit evidence of Fifth Amendment invocations and give adverse inference instructions. *See, e.g.*, *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, Case No. 16-cv-00236-WHO (N.D. Cal. Nov. 12, 2019), Dkt. 1006 at 31-32 (Fifth Amendment adverse inference instructions given); *Aragonez v. Huff*, Case No. EDVC 07-992-VAP (JCRx), 2008 WL 11342742 (C.D. Cal. Dec. 16, 2008) (same). Courts ordinarily apply "a balancing test which weighs the need for the information being sought . . . against the afforded constitutional protections." *In re Tableware Antitrust Litig.*, No. C 04 3514 VRW, 2007 WL 781960, at *4 (N.D. Cal. Mar. 13, 2007).

21
22
23
24
25
26
27
28
Such Fifth Amendment testimony has probative value because the refusal to respond to questions about collusive conduct makes it probable that had the witnesses responded, their testimony would have harmed Defendants' interests. *See Tableware*, 2007 WL 781960, at *4. The witnesses' choice to invoke the Fifth Amendment rather than to provide substantive testimony denied the Class information from individuals who were direct participants in the illegal price-fixing meetings, supervised others who engaged in illicit conduct, and appeared in numerous documents and correspondence. Many of these witnesses were high-level executives who had supervisory and managerial authority. *See Iantosca v. Benistar Admin. Services, Inc.*, 567

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

Fed.App'x 1, 6-7 (1st Cir. 2014) (approving adverse inference instructions where two corporate officers invoked the Fifth Amendment). That the Class took depositions of other witnesses, and may use at trial various documents, does not obviate the probative value of the testimony denied to the Class through invocations of the Fifth Amendment. A "decision not to draw the inference 'poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth.'" *Nationwide*, 541 F.3d at 911 (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)). The jury should be free to draw an adverse inference from the refusal to answer questions by witnesses central to the meetings, information exchanges, and pricing decisions at the heart of this case.

Moreover, "the mere fact that a Fifth Amendment invocation is 'damning' to a party's position does not preclude its introduction." *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 171 (2d Cir. 2019). The risk for potential prejudice is part of the balancing noted above. Nor is there any risk of so-called "gamesmanship" as the Court can manage how this testimony is introduced to the jury. In fact, the American Bar Association has published two jury instructions regarding Fifth Amendment invocations for use in civil antitrust cases—the precise situation here. AM. BAR. ASS'N, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES 348, 350 (2016). Defendants' mere speculation about potential prejudice or jury confusion does not support exclusion of this relevant evidence.

**B.    Defendants Fail to Demonstrate Adverse Inferences Must Be Excluded Here.**

Defendants point to a four-factor test articulated in *LiButti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997) to say that adverse inferences from the invocation of the Fifth Amendment cannot be imputed to Defendants. *See* Defs' MIL No. 3 at 3 (citing *Cotton v. City of Eureka*, No. C-08-04386 SBA (EDL), 2010 WL 2889498, at *4 (N.D. Cal. July 22, 2010)). Not so. In fact, the very case on which they rely notes, "It is not clear whether *LiButti* applies in the Ninth Circuit*." Cotton*, 2010 WL 2889498, at *4*. At least one court in this District has found that an adverse inference may be drawn from a former employee's invocation of the Fifth Amendment without conducting the *LiButti* test favored by Defendants, *see Tableware*, 2007 WL 781960, at *4-5, and another court permitted such inferences for current employees without discussion of *LiButti*. *See*

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1    *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 907-08 (N.D. Cal.

2    2009).

3         Defendants also omit that *LiButti* cautions that "the overarching concern is fundamentally

4    whether the adverse inference is trustworthy under all of the circumstances and will advance the

5    search for the truth." 107 F.3d at 124. Defendants ignore this careful consideration of the

6    circumstances surrounding each Fifth Amendment witness's invocation, and instead rely on

7    overly generalized and conclusory misinterpretations of *LiButti*. For example, Defendants argue

8    that an employee's invocation of the Fifth Amendment cannot permit an adverse inference to be

9    imputed to its employer on nothing more than an *ipse dixit* assertion such employee did not play

10   an important enough role. *See* Def. MIL No. 3 at 3; *cf. In re Gulf Oil/Cities Serv. Tender Offer*

11   *Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991) ("[Employer's] argument that [former employee] is

12   not in its control rings hollow" as interests in absenting testimony in case in chief but testifying in

13   defense are "indistinguishable one from the other."). As to Fifth Amendment witnesses from

14   settled Defendants Hitachi and Rubycon, courts will permit an adverse inference from a co-

15   conspirator's invocation of the privilege where, as here, there is sufficient proof they participated

16   in the conspiracy, *see, e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,

17   681 F. Supp. 2d 141, 153 (D. Conn. 2009), an issue Defendants do not even address. Further, for

18   the four witnesses who the Court allowed to withdraw their privilege assertions subject to the

19   conditions set forth in its Order, the Court has not foreclosed an adverse inference. MDL Dkt.

20   1076. As to the others who refused to provide testimony, the Court should give the jury an

21   adverse inference instruction. *See In re Polyurethane Antitrust Litig.*, No. 1:10 MD 2196, 2015

22   WL 12747961, at *7 (N.D. Ohio Mar. 6, 2015) (permitting adverse inferences for executives who

23   invoked the privilege).

24        This Court should deny Defendants' motion *in limine* to preclude introduction of Fifth

25   Amendment testimony and adverse inference instructions from non-party Fifth Amendment

26   deposition.

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1  Bonnie Lau (State Bar No. 246188)
   blau@mofo.com
2  Stephen Kam (State Bar No. 327576)
   stephenkam@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
5  Facsimile:  (415) 268-7522

6  David Cross (*pro hac vice pending*)
   dcross@mofo.com
7  MORRISON & FOERSTER LLP
   2000 Pennsylvania Avenue
8  Suite 6000
   Washington, D.C. 20006-1888
9  Telephone:  (202) 887-1500
   Facsimile:   (202) 887-0763
10
   Attorneys for Defendants
11 MATSUO ELECTRIC CO., LTD.

12 [COUNSEL FOR OTHER DEFENDANTS LISTED
   ON SIGNATURE PAGE]
13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15

16
17 *IN RE CAPACITORS ANTITRUST LITIGATION*          Master File No. 3:17-md-02801-JD

18 **THIS DOCUMENT RELATES TO:**     **DEFENDANTS' MOTION IN LIMINE NO. 4 TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS**
19 *Direct Purchaser Plaintiffs Action*, 3:14-cv-03264-JD
                                       The Honorable James Donato
20
                                       Date:      February 13, 2020
21                                     Time:      10:00 a.m.
22
23
24
25
26
27
28

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3    heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4    Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5    this Court for an order prohibiting the following improper characterizations of Defendants:

6    (1) use of inflammatory rhetoric to refer to Defendants; and (2) references to certain Defendants

7    by generic references to corporate entities which improperly group together multiple, separate

8    entities.

9

10   Dated: January 6, 2020                          Respectfully submitted,

11                                                    MORRISON & FOERSTER LLP

12

13                                                    /s/ Stephen Kam
                                                      Bonnie Lau
14                                                    Stephen Kam
                                                      MORRISON & FOERSTER LLP
15                                                    425 Market Street
                                                      San Francisco, California 94105-2482
16                                                    Telephone: (415) 268-7000
                                                      Facsimile:  (415) 268-7522
17

18                                                    David Cross
                                                      MORRISON & FOERSTER LLP
19                                                    2000 Pennsylvania Avenue
                                                      Suite 6000
20                                                    Washington, D.C. 20006-1888
                                                      Telephone:  (202) 887-1500
21                                                    Facsimile:   (202) 887-0763

22                                                    Attorneys for Defendants
                                                      MATSUO ELECTRIC CO., LTD.
23

24

25

26

27

28

Defendants' Motion In Limine To Exclude Improper
Characterizations of or Reference to Defendants
Master File No. 17-md-02801-JD

- 32 -

1

## ISSUES TO BE DECIDED

2      1.    Whether the Court should prohibit Plaintiffs and their witnesses from using

3 inflammatory rhetoric at trial, including but not limited to referring to Defendants as "criminals,"

4 "felons," "price-fixers," or "cartelists?"

5      2.    Whether the Court should compel Plaintiffs and their witnesses to refer to certain

6 Defendants by specific individual corporate entity names?

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion In Limine To Exclude Improper
Characterizations of or Reference to Defendants
- 33 -    Master File No. 17-md-02801-JD

1    The Court should preclude Plaintiffs and their witnesses from making the following

2    improper characterizations of or references to Defendants.  *First*, Plaintiffs should be prohibited

3    from using inflammatory rhetoric to refer to Defendants, including but not limited to referring to

4    them as "criminals," "felons," "price-fixers," or "cartelists."  *Second*, Plaintiffs should be

5    compelled to refer to certain Defendants by their specific corporate entity names.

6    **A.    The Court Should Prohibit Plaintiffs' Use Of Inflammatory Rhetoric At Trial**

7    The Court should prohibit Plaintiffs and their witnesses from using inflammatory rhetoric

8    that presumes DPPs have proven the ultimate issue when referencing their claims and Defendants

9    at trial, including but not limited to the following terms:  "criminals," "felons," "defrauders,"

10   "fraudsters," "the cartel," "the capacitors cartel," "the cartel meetings," "cartelists," "price-fixers,"

11   "thieves," "guilty defendants," "guilty plea defendants," "the conspiracy," "the capacitors

12   conspiracy," "the conspiratorial meetings," and/or "the conspirators."  Defendants, however,

13   do not object to use of the phrases "alleged conspiracy" or "alleged conspirators."

14   These references serve no legitimate purpose except to inflame the jury and unfairly

15   prejudice Defendants.  Fed. R. Evid. 402, 403, 404.  References to "Cartel" and "Cartelists" are

16   particularly prejudicial as jurors have likely heard these terms in the context of violent drug cartels.

17   Inflammatory rhetoric such as "criminal" or "felon" has no place in any trial, and its use

18   would be particularly inappropriate here given that not all Defendants have entered into a plea

19   agreement.  The "convicted felon" epithet is by its nature inflammatory because causation of

20   consumer harm is not an element of a criminal Sherman Act Section 1 violation.  *See In re Ready-*

21   *Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 169 (S.D. Ind. 2009).  Thus, the only purpose

22   would be to smear Defendants and prejudge their civil liability on grounds other than the merits of

23   the case.  *See, e.g., U.S. v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009) (unfair prejudice occurs

24   when evidence lures "the factfinder into declaring guilt on a ground different from proof specific

25   to the offense charged"); *see also Bird v. Glacier Elec. Coop., Inc.,* 255 F.3d 1136, 1150 (9th Cir.

26   2001) (finding use of "inflammatory comments made during closing arguments" went "well

27   beyond the limits of legitimate advocacy" because such appeals to historical prejudices had

28   "no proper place in a civil trial" where the basis of liability should be defendant's conduct).

Defendants' Motion In Limine To Exclude Improper
Characterizations of or Reference to Defendants
Master File No. 17-md-02801-JD

1    Moreover, any suggestion that Defendants are "criminals" is improper evidence of

2  purported wrongful acts, which is inadmissible to prove that on this particular occasion,

3  Defendants acted in accordance with that character.  Fed. R. Evid. 404.  This issue was addressed

4  in the *LCD* case when Judge Illston granted LG's motion to exclude "inflammatory rhetoric" such

5  as counsel's assertions that LG or others were "confessed felons" and "price fixers."  *See In re:*

6  *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 1827, 2012 WL 12300696, at *2 (N.D. Cal. May 4,

7  2012); *see also* LG motion at ECF No. 5101; *Oracle Int'l Corp. v. SAP AG*, 2012 U.S. Dist.

8  LEXIS 74157, at *11-12 (N.D. Cal. May 29, 2012) (granting motion *in limine* to preclude

9  reference to "theft" or "stealing" of software because such words "would be inflammatory" and

10  "could potentially confuse the jury" because such words are "associated with criminal conduct").

**B.    The Court Should Compel Plaintiffs To Refer To Certain Defendants By Their Individual Corporate Entity Names**

13    The Court should compel Plaintiffs and their witnesses to refer to each of the Defendants

14  below only by the specified name(s) listed below, and preclude generic references which

15  improperly group together these entities:

- Holy Stone Enterprise Co., Ltd. shall be referred to as "Holy Stone Enterprise Co., Ltd."
- Holy Stone Polytech Co., Ltd. shall be referred to as "Holy Stone Polytech Co., Ltd."
- Milestone Global Technology, Inc. shall be referred to as "Milestone Global Technology, Inc."
- Nippon Chemi-Con Corp. shall be referred to as "NCC" or "Nippon Chemi-Con Corp."
- United Chemi-Con Inc. shall be referred to as "UCC" or "United Chemi-Con Inc."

19    Plaintiffs' apparent goal in applying generic references to a family of Defendants is not

20  difficult to discern: they hope the jury will impute the bad acts of one corporate actor to other

21  corporate actors within the same group, regardless of the law and actual facts.  Such generic

22  references disregard each Defendant's separate corporate existence, and as a result, effectively

23  eliminate Plaintiffs' burden to prove liability as to each Defendant.  Because Defendants are

24  separately incorporated, their independence must be presumed.  *See E. & J. Gallo Winery v.*

25  *EnCana Energy Servs., Inc.*, Civ. No. 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal.

26  May 27, 2008).[1]

_____

[1]  DPPs have taken the position that the Ninth Circuit's decision in *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623 (9th Cir. 2018), somehow obviates their need to distinguish between corporate forms. *Arandell* does not, however, stand for the proposition that different corporate entities can be treated

Defendants' Motion In Limine To Exclude Improper
Characterizations of or Reference to Defendants
Master File No. 17-md-02801-
JD

The risk that the jury will apply a "guilt by name association" standard is particularly high in this case because Defendants, even within a corporate group, are not similarly situated. These entities are separately incorporated, are managed and operated in different regions and countries throughout the world, and are serving different roles within the corporate group.  Moreover, certain of the Defendants are not Japanese companies and did not attend any of the conspiratorial group meetings.  Thus, to allow Plaintiffs to refer to groups of Defendants by generic names will only confuse and mislead the jury. *See* Fed. R. Evid. 403.

This is already an extremely complex case that will present challenges for any jury. That complexity will only be compounded if the jury hears Plaintiffs continually using generic corporate terms to refer to groups of Defendants for weeks, but then is instructed to make individualized findings as to each of the above Defendants on a verdict form.  *See United States v. Coward*, 630 F.2d 229, 231 (4th Cir. 1980) (reversing and remanding for separate trials because the trial "was often confusing for both attorneys and the jury" and the jury expressed confusion as to what evidence related to each defendant).

## CONCLUSION

For these reasons, the Court should grant this motion *in limine* and preclude the use of inflammatory rhetoric and improper characterizations of or references to Defendants.  The Court should also compel Plaintiffs to refer to certain Defendants by their specified individual corporate entity names.

---

as one.  Rather, *Arandell* held that, in the context of the highly regulated industry at issue in that case which necessitated the creation of subsidiaries to operate in certain states, the knowledge and intent of a parent can be imputed to its wholly-owned subsidiary when the subsidiary engages in "coordinated activity in furtherance of the anticompetitive scheme."  900 F.3d at 632.  And even if *Arandell* applied here—which it does not—DPPs would still be required to make a showing that each subsidiary participated in "coordinated activity" with its parent. *See, e.g., In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 11-MDL-2262, 2019 WL 1331830, at \*38 & n.103 (S.D.N.Y. Mar. 25, 2018) (analyzing *Arandell*'s "specific factual allegations" and noting *Arandell* does not apply when plaintiffs fail to show coordinated activity).  DPPs must, at a minimum, still be held to that burden here. *Cf.* Order Den. Def. NCC's Mot. Dismiss for Lack of Pers. J. at 4, *In re Capacitors Antitrust Litig.*, No. 14-CV-3264-JD (N.D. Cal. June 11, 2015), ECF No. 738 ("The Court agrees with NCC that jurisdiction over it cannot be traced through UCC under an agency or alter ego theory, and the Court declines plaintiffs' arguments to the contrary.").

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS**

**A.      It Is Not Unfair to Refer to Defendants Who Pleaded Guilty to Participation in a Price-Fixing Conspiracy as Conspirators or Price-Fixers.**

Defendants seek to exclude "inflammatory" references under Rule 403. This request is extraordinary. It is also unnecessary. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (courts should grant such relief in a "cautious and sparing" manner).

The pretrial order on which Defendants rely provides the relief they seek. It expressly precludes "inflammatory rhetoric." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 12300696, at *4 (N.D. Cal. May 4, 2012). The Class will not engage in *ad hominem* attacks. The Class will not refer to Defendants as "thieves" or "fraudsters." Def. MIL No. 4 at 1:10-11.

However, other terms are appropriate and denying the Class the ability to use them would be prejudicial. Referring to an admitted participant in a price-fixing conspiracy as a "conspirator" or "price-fixer" is not inflammatory. It is accurate. And it is what the Class is obliged to prove. Indeed, the moving Defendants have admitted to price-fixing under oath, as reflected in the guilty pleas. An accurate description is not misleading. *See, e.g.*, *United States v. Sheakley*, 145 F. App'x 205, 206-7 (9th Cir. 2005) (photograph of cocaine was not misleading because it "was an accurate depiction."); *Wright v. Watkins & Shepard Trucking, Inc.*, No. 2:11-CV-01575-LRH-GWF, 2016 WL 10749220, at *9 (D. Nev. Jan. 19, 2016) (refusing to prohibit use of the word "emergency" where it may have accurately described the situation).

It is likewise fair to describe a Defendant that pleaded guilty as guilty. *See* Def. MIL 4 at 1:11. While Defendants express concern about lumping them together as "convicted" or "guilty" (Mot. at 1:17-19), the Class will not use those terms to describe a Defendant that did not plead guilty. Further, while Defendants would prefer to keep the word "cartel" from the jury (Def. MIL 4 at 1:15-16), they cite no case disallowing that word. And their stated concern about imputing liability from a different crime also is misplaced because their admitted unlawful offenses are part of the activity giving rise to civil liability. *Compare* Def. MIL 4 at 2:1-3, *with United States v. Navarrete*, 585 F. App'x 422, 423 (9th Cir. 2014) (noting that "Rule 404(b) does not apply to other 'offenses committed as part of [the same] criminal episode'") (quoting *United States v.*

*Lillard*, 354 F.3d 850, 854 (9th Cir. 2003)). Defendants' additional argument that the Class must show causation (Def. MIL 4 at 1:19-20) ignores not only the higher criminal standard of proof but also their admissions in plea agreements that their criminal acts substantially affected U.S. commerce and took place in the Northern District of California. Particularly because their criminal admissions are *prima facie* evidence in this case under 15 U.S.C. § 16a, Defendants should not be allowed to preclude accurate descriptions of conspirator admissions.

**B.   It Is Not Unfair to Refer to Defendants by the Name of Their Corporate Family.**

In addition to Defendants' claim that the Class should be required to pull its punches by saying "alleged" conspiracy (Def. MIL 4 at 1:12-13), they also take the puzzling position that DPPs should not be allowed to refer to certain Defendants by their simple corporate family names. This is absurd. The Class should not be hamstrung as to the use of simple language. They should not be forced to make simple things complicated and confusing.

Under Defendants' proposal, for example, the Class could not say "Holy Stone" in front of the jury but would have to use highly technical formal corporate designations. The Holy Stone defendants want the Class to say, "Holy Stone Enterprise Company Limited," "Holy Stone Polytech Co., Ltd.," or "Milestone Global Technology Inc"—even when all three are wholly controlled by the same parent and, indeed, even when referring *to* the corporate parent. Def. MIL No. 4 at 2:16. According to Defendants, "complexity will only be compounded if" the Class uses their simple names, Def. MIL No. 4 at 3:9. To the contrary, the jury will benefit from the use of common-sense shorthand. Defendants' position defies common sense and should be rejected.

Defendants insist on strict recognition of the "separate . . . existence" of corporate divisions (Def's MIL 4 at 2:22) yet there is no prejudice to them from using their ordinary names. First, under settled antitrust principles, divisions of a commonly owned corporation are treated as a single unit. As the Supreme Court explained long ago and as the Ninth Circuit recently reminded, a corporate parent and subsidiary "share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771-72 (1984). In *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, the Ninth Circuit recognized "the *Copperweld* doctrine establishes that '[w]here there is substantial common

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

ownership, . . . individual firms function as an economic unit and are generally treated as a single entity'" for purposes of liability. 900 F.3d 623, 630 (9th Cir. 2018) (quoting *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-48 (9th Cir. 2003)).

Defendants argue that *Arandell* applies only to a "highly regulated industry." Def's MIL No. 4 at 3:22. Not so. The presence of regulation in the natural gas industry had nothing to do with the decision in *Arandell.* It would be illogical and incongruous—and inconsistent with *Copperweld* and *Arandell*—to mandate that the Class describe entities in Defendants' corporate structures using the technical names found on articles of incorporation or in secretary of state filings when antitrust law treats the corporate family as the relevant unit. Indeed, such requirements would be inconsistent with the real-world practice of the Defendants who also—unsurprisingly—used shorthand to refer to themselves and others in their business operations, including notes of meetings, emails and other business records. Indeed, using different names than the Defendants themselves used would confuse the jury. It would require constant translation.

Except in an unusual case, use of a simple shorthand corporate name is not unfairly prejudicial. *See Hankey*, 203 F.3d at 1172 ("[U]nfair prejudice means 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'") (citation omitted). If Defendants are concerned about "guilt by association" (Def. MIL 4 at 3:1), they are free to distinguish among entities.

Defendants cite *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CVF03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008), which discusses and applies agency law principles. Neither it, nor any other case cited by Defendants, bars a party from referring to another party by its ordinary name at trial. The Court should not permit the Defendants to hamstring the Class's presentation by requiring the use of lengthy, confusing, and cumbersome corporate division names.

The Court should deny Defendants' motion *in limine* to exclude improper characterizations of or references to Defendants.

1   Jeffrey A. LeVee (State Bar No. 125863)
    jlevee@JonesDay.com
2   Eric P. Enson (State Bar No. 204447)
    epenson@JonesDay.com
3   Kelly M. Ozurovich (State Bar No. 307563)
    kozurovich@JonesDay.com
4   JONES DAY
    555 South Flower Street
5   Fiftieth Floor
    Los Angeles, CA 90071.2300
6   Telephone:   +1.213.489.3939
    Facsimile:   +1.213.243.2539
7
    John M. Majoras (Admitted Pro Hac Vice)
8   jmmajoras@jonesday.com
    JONES DAY
9   51 Louisiana Avenue, N.W.
    Washington, D.C.  20001-2113
10  Telephone:   +1.202.879.3939
    Facsimile:   +1.202.626.1700
11
    Attorneys for Defendants
12  HOLY STONE ENTERPRISE CO., LTD.,
    MILESTONE GLOBAL TECHNOLOGY, INC.
13  (D/B/A HOLYSTONE INTERNATIONAL),
    VISHAY POLYTECH CO., LTD.
14
    [COUNSEL FOR OTHER DEFENDANTS LISTED
15  ON SIGNATURE PAGE]

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18

| 19 | *IN RE CAPACITORS ANTITRUST LITIGATION* | Master File No. 17-md-02801-JD |
|---|---|---|
| 20 | | **DEFENDANTS' MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES** |
| 21 | **THIS DOCUMENT RELATES TO:** | |
| 22 | *Direct Purchaser Plaintiffs Action*, 14-cv-03264-JD | The Honorable James Donato |
| 23 | | Date:        February 13, 2020 |
| 24 | | Time:        10:00 a.m. |

25

26

27

28

Defendants' Motion In Limine To Exclude
Evidence Of Subsequent Remedial Measures
Master File No. 17-md-02801-JD

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3    heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4    Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5    this Court, pursuant to Rules 403 and 407 of the Federal Rules of Evidence, to preclude the

6    introduction of evidence of any subsequent remedial measure (such as evidence of internal

7    investigations, disciplinary actions imposed and compliance policy changes) by any Defendant in

8    response to reports of possible antitrust violations, or any argument or reference to the same.

9    Dated: January 6, 2020                    RESPECTFULLY SUBMITTED

10                                              JONES DAY

11

12                                             */s/ Eric P. Enson*
                                               Eric P. Enson
13                                             JONES DAY
                                               555 South Flower Street
14                                             Fiftieth Floor
                                               Los Angeles, CA 90071.2300
15                                             Telephone:   +1.213.489.3939
                                               Facsimile:   +1.213.243.2539
16
                                               Attorneys for Defendants
17                                             HOLY STONE ENTERPRISE CO., LTD.,
                                               MILESTONE GLOBAL TECHNOLOGY,
18                                             INC. (D/B/A HOLYSTONE
                                               INTERNATIONAL), VISHAY
19                                             POLYTECH CO., LTD

20

21

22

23

24

25

26

27

28

Defendants' Motion In Limine To Exclude
Evidence Of Subsequent Remedial Measures
Master File No. 17-md-02801-JD

1

## **ISSUES TO BE DECIDED**

2          1.          Whether the Court should exclude, under Federal Rule of Evidence 407, evidence

3     of internal investigations (including employee statements made during the investigations),

4     disciplinary actions and changes to compliance policies taken as subsequent remedial measures

5     intended to avoid or deter future antitrust violations?

6          2.          Whether the Court should exclude that same evidence pursuant to Fed. R. Evid.

7     403 on the grounds that the evidence is cumulative of superior evidence available to DPPs and its

8     probative value substantially outweighed by the high risk that the evidence will confuse the jury

9     and unduly prejudice Defendants?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion In Limine To Exclude
Evidence Of Subsequent Remedial Measures
Master File No. 17-md-02801-JD

1   **I.     Investigations And Disciplinary Actions Should Be Excluded Under Rule 407.**

2          "[W]hen measures are taken that would have made an earlier injury or harm less likely to

3   occur, evidence of the subsequent measures is not admissible to prove … culpable conduct." Fed.

4   R. Evid. 407.  "It would be perverse indeed if attempts to reverse [a harm] could be used to

5   condemn a defendant," as "such use of evidence would only serve to discourage reform." *Alvarez*

6   *v. King Cty.*, 2017 WL 3189025, at *6 (W.D. Wash. July 27, 2017) (excluding fact of internal

7   investigation).  Rule 407 thus "is not limited to 'repair' in the literal sense;" it operates to exclude

8   evidence of post-incident investigations and disciplinary proceedings even where the evidence

9   does not mention the discipline dispensed or a change in policy.  *Meippen v. Spokane County*,

10  2009 WL 10704523, at *2 (E.D. Wash. May 18, 2009) (excluding statements to investigators).

11         Courts have thus excluded evidence of internal investigations and disciplinary actions—

12  including employee admissions—because the investigations were remedial in nature.  For

13  example, the Ninth Circuit affirmed the exclusion of evidence of a disciplinary proceeding in

14  which a police officer admitted violating policy, finding "the Internal Affairs investigation and

15  measures taken by the defendant City were remedial measures taken after the incident." *Maddox*

16  *v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986).  Following *Maddox*, the Tenth Circuit

17  upheld the exclusion of a summary of an internal investigation and disciplinary action taken

18  because these measures were intended to "prevent the recurrence of the poor judgment" that led

19  to the defendant officers' illegal search.  *Specht v. Jensen*, 863 F.2d 700 (10th Cir. 1988).[1]

20         Defendants took a number of remedial actions that should also be excluded.  For instance,

21  in response to government investigations, Holy Stone Japan President, Shunpei Ma, sent

22  "Antitrust/Unfair Competition Investigation" questionnaires to employees seeking information

23  regarding communications with competitors.  (*See* Exs. 4646, 4649-4651, 4646; Ma Dep. 214:1-

24  16 (questionnaires "were part of our internal investigation of HPC's employees"), 172:24-173:14

25  (same).)  As part of that investigation, Ma asked three Holy Stone Japan employees to draft

26  statements describing their involvement in competitor meetings.  (Exs. 4665, 4666, 5380.)  Ma

27  ─────────────────
         [1] Other courts in this Circuit have concurred. *Branch v. Umphenour*, 2017 WL 220129, at *8-
28  9 (E.D. Cal. Jan. 18, 2017) (evidence of internal investigation excluded under Rule 407, as irrelevant,
    and as unduly prejudicial); *Alvarez*, 2017 WL 3189025 at *6; *Meippen*, 2009 WL 10704523 at *2.

Defendants' Motion In Limine To Exclude
Evidence Of Subsequent Remedial Measures
Master File No. 17-md-02801-JD

asked employees to write statements "to reflect upon their behavior and make corrections," (Ma Dep. at 244:5-11, 234:17-22 ("I ask him to send me his explanation regarding the details about his participation in the meeting as well as his reflection upon this matter.")), noting, in reference to one employee's statement, the purpose "was not for him to offer his apologies but rather to reflect upon what he did and – as a precaution so that future violations could be avoided." (*Id*. at 249:16-250:6.)[2]  The remedial nature of the letters also is apparent on their face.  (*See* Ex. 4665 ("[I]n the future, so that this type of thing doesn't occur again, I pledge not only to improve my own awareness, but also to thoroughly implement CSR training again for all employees.").  These measures were intended to "avoid future violations" and are therefore not admissible.[3]

For the same reasons, reprimands should be excluded under Rule 407.  AVX issued a written reprimand to an employee for "inappropriate contacts with employees of a competitor against AVX policies and procedures."  (Ex. 1097.)  The letter goes on to list "Corrective Actions to be Taken," including "Mandatory review of and immediate compliance to all AVX Policies and Procedures and US Antitrust and European Competition Regulations."  (*Id*.)  Likewise, Taitsu disciplined an employee due to his supposed involvement in the conduct at issue in this case.  (Taniguchi Dep. 249:14-250:16.)  Holy Stone Japan also considered punishments.  (Exs. 4656, 4664.)  As in *Maddox* and *Specht*, these actions constitute remedial measures taken "to prevent the recurrence of" any possible violation and should be excluded.

## II.   Investigations and Disciplinary Actions Should Be Excluded Under Rule 403.

Evidence of these remedial actions also should be excluded under Rule 403 as cumulative, unduly prejudicial, and likely to confuse the jury.  DPPs appear intent on offering these materials

---

[2] *See also* Ma Dep. at 244:14-21 ("This is not -- I think this is a translation issue.  This is not an apology letter.  It's more like a letter that details what happened in the past."); 252:4-15 ("Let me explain one more time that this is not an apology letter but rather this is a letter that details the process or the process of participating in meetings with competitors."); 253:3-20 ("I did not intend for anyone to offer apologies . . . I just wanted detailed records about the participation of such meetings.").

[3] The court also should exclude evidence that any Defendant created or revised any policy or required employees to commit to complying with any policy after learning of the conduct at issue in this case.  *Grimes v. United Parcel Serv., Inc.*, 2008 WL 217153, at *1 (N.D. Cal. Jan. 24, 2008) (excluding under Rule 407 evidence that defendant changed its employment policy following suit for wrongful termination), *aff'd* 365 F. App'x 71 (9th Cir. 2010). (*See, e.g.*, Exs. 4647 and 4648; Ma Dep. at 174:23-175:15 (testifying that he had CSR forms submitted to "personnel who might be involved in the legal risk associated with anticompetitive behavior to sign documents that demonstrate their fulfillment of good faith obligation to the company."); 255:5-16 (CSR created after investigation).

1  as admissions of participation in the alleged conspiracy, but these materials are cumulative of

2  superior evidence available to DPPs.  *United States v. Elksnis*, 528 F.2d 236, 239 (9th Cir. 1975)

3  (trial court has discretion to exclude cumulative evidence); *Old Chief v. U.S.*, 519 U.S. 172, 182-

4  83 ("sound judicial discretion" counsels excluding evidence "[i]f an alternative [means of proof]

5  were found to have substantially the same or greater probative value but a lower danger of unfair

6  prejudice").  For instance, DPPs have evidence from the DOJ proceedings as well as testimony

7  and documents regarding competitor meetings and competitor communications.  The remedial

8  action evidence therefore is cumulative of superior evidence that does not risk undue prejudice or

9  misleading the jury.  *U.S. v. Johnson*, 2015 WL 4747309, at *3 (N.D. Cal. Aug. 11, 2015)

10  (excluding evidence as "unnecessary" because government had less prejudicial means of proof).

11          And these remedial measure materials do present a great risk of undue prejudice and

12  confusion.  The jury must determine if Defendants participated in the alleged overarching

13  conspiracy.  But the Holy Stone Japan investigative documents do not provide details of the

14  employees' conduct, and contain only inflammatory and legal conclusions of perceived

15  wrongdoing under an unspecified set of laws.  (*E.g.*, Ex. 4666 (saying employees "should have

16  complied with competition laws and antitrust laws"); Ex. 5380 ("my participation in the meetings

17  has unfortunately become the commission of a serious crime deemed to be a wrongful restraint of

18  trade").)[4]  Similarly, the AVX reprimand refers to violations of "AVX policies and procedures,"

19  not U.S. antitrust law, and notes that "the complete facts and circumstances have not yet been

20  fully determined."  (Ex. 1097.)  Admitting these materials creates a risk that the jury will reach its

21  verdict based on conclusions by lay employees who had no knowledge of the conspiracy alleged

22  by DPPs, effectively substituting the opinions of those employees for the jury's own judgment.

23                                    **CONCLUSION**

24          Evidence of internal investigations, disciplinary actions and changes to compliance

25  policies should be excluded.  Affected exhibits are attached hereto.

26          [4] Moreover, these employees are lay witnesses, not lawyers, meaning they are not qualified to
render an opinion on a legal issue.  These statements are opinions that are inadmissible on the ultimate
27  legal question in this case.  *See Bensen v. Am. Ultramar Ltd.*, 1996 WL 422262, at *12 (S.D.N.Y. July
29, 1996) (excluding opinion of defendant's former counsel under Rule 701 as an expression of the
28  "ultimate legal opinion" that was "calculated to instruct the jury as to their verdict").

## INDEX OF EXHIBITS TO DEFENDANTS' MOTION IN LIMINE NO. 5

The table below lists exemplary documents (including documents that Defendants have thus far identified on DPPs' initial exhibit list) that are affected by this motion. Defendants' motion is not limited to the documents on this list, but includes documents covered by the substance of this motion that DPPs may identify in its list of rebuttal exhibits, as well as testimony regarding internal investigations, disciplinary actions (e.g., a reprimand of a Taitsu employee), and antitrust policies. Copies of the exhibits listed below are attached to the Declaration of Eric P. Enson filed in support of this motion, with translations where available.

| Decl. Ex. | Trial Ex. | Description | Bates Range |
|-----------|-----------|-------------|-------------|
| A | 934 | 2014-05-26 letter (H. Ochiai) (draft) | HS00117203 |
| B | 1097 | Written Reprimand | AVX_F_0020190 to 91 |
| C | 4646 | 2014-03-28 Email re internal investigation | HS00346396 to -99 |
| D | 4647 | 2010-04-03 Email attaching pledges to comply with company policy | HS00328655 |
| E | 4648 | 2010-04-01 Written pledges to comply with company policy | HS00328656 to -62 |
| F | 4649 | 2014-03-28 Email attaching questionnaires | HS00130690 |
| G | 4650 | 2014-03-28 Antitrust/Unfair Competition Questionnaire (Katsunori Sato) | HS00130691 |
| H | 4651 | 2014-03-28 Antitrust/Unfair Competition Questionnaire (H. Ochiai) | HS00117199 |
| I | 4656 | 2014-04-25 email regarding disciplinary measures | HS00328577 to -79 |
| J | 4664 | Draft disciplinary letter | HS00309317 |
| K | 4665 | 2014-05-23 Letter (Ken Sato) | HS00309315 |

| L | 4666 | 2014-05-26 Letter (H. Ochiai) | HS00122369 |
| M | 5380 | 2014-05-26 Letter (Katsunori Sato) | HS00349265 |

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES**

Defendants ask this Court for a blanket *in limine* ruling that would preclude the Class from offering as evidence any materials related to Defendants' investigation of their involvement in alleged capacitor price-fixing pursuant to Federal Rules of Evidence 407 and 403. First, Defendants broadly assert that all such "investigation" materials—including findings, percipient witness statements, determinations, recommendations and remedial actions—qualify as inadmissible "remedial measures" under Rule 407. Second, Defendants claim that this entire, vague category of evidence should be excluded now, arguing that since it is "cumulative of superior evidence," its probative value is outweighed by risk that it will confuse the jury and "unduly prejudice Defendants." Def. MIL 5 at 3. Defendants' arguments misstate the applicable law regarding *in limine* motions and the reach of Rules 407 and 403.

Defendants argue that Rule 407 applies to all evidence related to their capacitor price-fixing investigation "including employee admissions." Def. MIL 5, at 1. More particularly, Defendants ask the Court to apply Rule 407 to employee "questionnaires" that include "information regarding [their] communications with competitors" and to employee written statements "describing their involvement in competitor meetings." Def. MIL 5, at 1-2.[2]

The evidence that Defendants seek to exclude is not evidence of a subsequent remedial measure. Defendants do not identify any remedial measure they took (*e.g.*, firing the price-fixer) nor do they seek to exclude evidence of it. Instead, Defendants seek to exclude a host of evidence they developed, including a number of percipient witness admissions and the reports containing them. Such evidence is otherwise admissible. Statements of witnesses are admissible for non-hearsay purposes, including witnesses' statements, Fed. R. Evid. 801(d)(1), party or co-

---

[2] The deposition excerpts cited by Defendants also demonstrate that the bulk of the information they seek to exclude is percipient witness statements, not subsequent remedial measures they actually implemented. "[T]his is not an apology letter. It's more like a letter that details what happened in the past," "this is a letter that details the process … of participating in meetings with competitors," "I just wanted detailed records about the participation of such meetings." Def. MIL 5, at 2 n.2 (quoting Ma Dep at 244:14-21; 252:4-15; and 253:3-20). Moreover, it is doubtful that employee "self reflection" and employee pledges to "improve" their behavior constitute "remedial measures" implemented by the corporate Defendants.

conspirator statements, Fed. R. Evid. 801(d)(2), present sense impressions, Fed. R. Evid. 803(1),

recorded recollections, Fed. R. Evid. 803 (5), records of a regularly recorded activity, Fed. R.

Evid. 803 (6), and statements against interest. Fed. R. Evid. 804(b)(3).

Courts have considered the admissibility of post-incident investigations and reports. They

have concluded that Rule 407 does not apply. *See Hansen v. Werner Enters. Inc.,* EDCV 14-

2090-JGB-SPx, 2016 WL 7479349, *4 (C.D. Cal. May 18, 2016). As the *Hansen* court said:

> Although the Ninth Circuit has not directly addressed whether Rule 407 bars
> evidence of internal investigations in *In re Aircrash*, the Ninth Circuit cited two
> cases holding that subsequent remedial measures include "only the actual remedial
> measures themselves and not the initial steps toward ascertaining whether any
> remedial measures are called for." *In re Aircrash in Bali, Indonesia,* 871 F.2d 812,
> 817 n.2 (9th Cir. 1989). *See also Gray v. Golden Gate Nat. Recreational Area,* 866
> F.Supp.2d 1129, 1141 (N.D. Cal. 2011) . . . . The Court agrees with the reasoning
> and result of these cases and holds that Rule 407 applies only to remedial measures
> actually taken by Defendants; it does not apply to Defendants' internal
> investigations **or reports created in the process of determining the appropriate
> remedial actions**.

*Id.* at *4 (emphasis added).

Defendants cite no antitrust cases holding that evidence of internal investigations of a

price-fixing conspiracy is inadmissible under Rule 407. To the contrary, the holding of *Hansen* is

consistent with many other courts: a post-incident analysis is admissible, even if a subsequent

remedial measure was in fact taken. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 430

(5th Cir. 2006) (post-incident analysis is admissible evidence); *Wilson v. Beebe,* 770 F.2d 578,

590 (6th Cir. 1985) (police officer's report following shooting admissible); *Rocky Mountain*

*Helicopters v. Bell Helicopters,* 805 F.2d 907, 918 (10th Cir. 1986) ("It would strain the spirit

of . . . Rule 407 to extend its shield to evidence contained in post-event tests or reports");

*Thornton v. Diamond Offshore Drilling, Inc.,* 76 Fed. R. Evid Serv. 745, 2008 WL 2315845, *2-4

(E.D. La. May 19, 2008) (admitting post-accident investigative report except for section

regarding follow-up actions actually implemented); *Westmoreland v. CBS Inc.,* 601 F. Supp. 66,

67 (S.D.N.Y. 1984) ("The fact that subsequent remedial measures are excluded as admissions of

fault does not mean that competent evidence resulting from an internal investigation of a mishap

must also be excluded."). Defendants have not identified any measure they took to remedy the price-fixing at issue here. Even if they did, investigatory materials and reports they prepared should not be excluded. In addition, even if Rule 407 applied, the evidence may still be admissible for other permissible purposes. *See*, *e.g.*, Fed. R. Evid. 407 advisory committee notes to 1972 proposed rule ("Other purposes are, however, allowable, including ownership or control, existence of duty, and feasibility of precautionary measures, if controverted, and impeachment.").

Defendants also incorrectly assert that the evidence should not be admitted because it is "cumulative of superior evidence." Not so. Defendants fail to specify how the evidence is cumulative or to identify the other evidence of which it would be cumulative. Nor do Defendants explain how that other unspecified evidence is cumulative of the investigatory reports and other materials. Indeed, investigatory reports—prepared when the underlying matters were fresh in the witnesses' minds and without the incentives to shade the truth present in the litigation process—are particularly probative and reliable. *Cf. Brazos,* 469 F.3d at 430 (noting internal investigative findings are often the best source of information); *Engman v. City of Ontario,* No. CV 10-0284 CAS (PLAx), 2011 WL 2463178, *9 (C.D. Cal. June 20, 2011) ("Motions in limine are an inappropriate means to . . . weigh evidence.").

The Court should deny Defendants' motion *in limine* to exclude evidence of subsequent remedial measures.

1  Bruce D. Sokler *(admitted pro hac vice)*
   Robert G. Kidwell *(admitted pro hac vice)*
2  bdsokler@mintz.com
   rgkidwell@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   701 Pennsylvania Avenue NW, Suite 900
4  Washington, DC 20004
   Telephone: (202) 434-7300
5  Facsimile: (202) 434-7400
6
7  Evan S. Nadel (SBN 213230)
   enadel@mintz.com
8  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   44 Montgomery Street, 36th Floor
9  San Francisco, CA  94104
   Telephone: 415-432-6000
10 Facsimile: 415-432-6001
11
   Attorneys for Defendant
12 AVX CORPORATION

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16

17 | IN RE CAPACITORS ANTITRUST | Lead Case No. 3:17-md-02801-JD |
   LITIGATION

18                                *Including Consolidated Case:*
                                   Case No. 14-cv-03264-JD
19

20 This Document Relates to:        **DEFENDANTS' MOTION *IN LIMINE* NO. 6
                                     TO EXCLUDE ALL EVIDENCE
21 *Direct Purchaser Plaintiffs Action*, 14-cv-   **RELATING TO EUROPEAN CONDUCT**
   03264-JD
22                                  Trial:  March 2, 2020
23                                  Judge: Hon. James Donato
                                    Location: Courtroom 11
24

25

26

27

28

1

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2

Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3

heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4

Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5

this Court, pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence, to hold a

6

pretrial hearing for a proffer of evidence and ruling on the admissibility of alleged European

7

conduct by Defendants.

8

9

Dated:  January 6, 2020

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.

10

11

By:  */s/ Bruce D. Sokler*
Bruce D. Sokler
Robert G. Kidwell
701 Pennsylvania Avenue NW, Suite 900
Washington, DC 20004
bdsokler@mintz.com
RGKidwell@mintz.com

12

13

14

15

Evan S. Nadel
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
enadel@mintz.com

16

17

18

*Attorneys for Defendant AVX Corporation*

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE ALL EVIDENCE RELATING TO EUROPEAN
CONDUCT
Case No. 3:17-MD-02801-JD

1

## ISSUES TO BE DECIDED

2

  1.  Whether the Court should exclude under Fed. R. Evid. 401, 402, 403, and 404(b)

3

the use of any evidence regarding conduct that occurred entirely within Europe, and with no

4

connection to the United States?

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE ALL EVIDENCE RELATING TO EUROPEAN
CONDUCT
Case No. 3:17-MD-02801-JD

1    Defendants anticipate that DPPs will attempt to introduce evidence or arguments

2    regarding conduct that occurred entirely within Europe, most often by non-US-based employees,

3    and with no connection to the United States, by claiming it is relevant evidence to proving the

4    alleged conspiracy.  But the conspiracy pleaded by DPPs in this case—a conspiracy centered in

5    Asia that allegedly affected the United States—is the only conspiracy at issue, and any admissible

6    evidence must relate to *that* purported conspiracy affecting the United States.   Documents

7    concerning a European salesperson discussing a European customer in Europe are irrelevant.

8    Accordingly, evidence relating to European conduct is inadmissible pursuant to Federal Rules of

9    Evidence 401 and 402 absent evidence connecting that particular conduct to the United States.

10   Moreover, any value of these documents to Plaintiffs would be solely as propensity evidence that

11   is inadmissible under Federal Rule of Evidence 404(b).  Finally, pursuant to Federal Rule of

12   Evidence 403, any theoretical probative value such evidence might have is substantially

13   outweighed by the danger of unfair prejudice, confusion of issues, and waste of time.

14       **A.  Evidence of European Conduct Is Irrelevant Under FRE 401 and 402.**

15    Evidence of conversations that European salespeople had in Europe concerning one or

16   more European customers is irrelevant and should be barred at trial absent evidence

17   demonstrating a link between that particular conversation and the United States.  There has been

18   no substantive assertion at any stage of this case that any of the alleged conspiratorial behavior

19   took place in Europe; this case is about meetings in Asia and the effect of those meetings on U.S.

20   commerce.

21    Other courts have rejected efforts to bolster a conspiracy claim involving one market by

22   relying on alleged conduct in another market.  For example, in *In re Elevator Antitrust Litigation*,

23   the plaintiffs asserted that their U.S. conspiracy claims were supported by defendants' allegedly

24   anticompetitive misconduct in Europe.  502 F.3d 47 (2d. Cir. 2007).  The Second Circuit swiftly

25   rejected this argument.  It held that "anticompetitive wrongdoing in Europe—absent any evidence

26   of linkage between such foreign conduct here" was inadmissible, because it simply suggests "that

27   'if it happens there, it could have happened here.'"  *Id.* at 52.  This is the same misguided and

28

1   inadmissible argument Defendants anticipate from DPPs here, and of the same type routinely

2   rejected by other district courts. *See In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No.

3   1827, 2010 U.S. Dist. LEXIS 64930, at *19-20 (N.D. Cal. June 29, 2010) (granting motion to

4   dismiss where plaintiffs relied upon allegations of a separate conspiracy to bolster their claim of

5   conspiracy regarding LCDs); *see also In re Apple iPod iTunes Antitrust Litig.*, No. 4:05-cv-

6   00037-YGR, 2014 U.S. Dist. LEXIS 162962, at *11 (N.D. Cal. Nov. 18, 2014) (excluding

7   "evidence regarding European regulations, investigations, or other actions" but allowing

8   plaintiffs opportunity to make specific showings at trial that the evidence is relevant).

9        Moreover, with respect to foreign transactions, this Court has certified a class of

10   purchasers of capacitors outside of the United States "where the capacitors were 'billed to'

11   persons outside the United States but 'shipped to' persons within the United States." Order Re

12   Direct Purchaser Plaintiffs' Class Certification Motion and Defendants' *Daubert* Motions to

13   Exclude Expert Opinions, ECF 385, at 18. Absent evidence that the conduct DPPs intend to offer

14   involved capacitors billed to persons outside the US and shipped to persons within the US, the

15   evidence is irrelevant as outside the scope of the class definition.

16   **B. Evidence Regarding European Conduct is Impermissible Character Evidence Under FRE 404(B).**

17        Evidence regarding Defendants' alleged European conduct is also propensity evidence

18   that is inadmissible in antitrust cases pursuant to Federal Rule of Evidence 404(b). *See Fed. R.*

19   *Evid.* 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's

20   character in order to show that on a particular occasion the person acted in accordance with the

21   character."). For example, the Seventh Circuit in *In re High Fructose Corn Syrup Antitrust*

22   *Litigation*, noted that "evidence of . . . other bad acts committed in the past, is inadmissible to

23   prove that the defendant probably is guilty of whatever he is being charged with, merely because

24   he has demonstrated a propensity to violate the law." 295 F.3d 651, 664 (7th Cir. 2002). The

25   court ultimately held that evidence of a corporate defendant's prior participation in price-fixing

26

27

28

DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE ALL EVIDENCE RELATING TO EUROPEAN
CONDUCT
Case No. 3:17-MD-02801-JD

could not be used as evidence in the present action. *Id.* Similarly, European conduct evidence unrelated to the conspiracy alleged is propensity evidence, barred by Rule 404(b).

### C.  Evidence Regarding the European Conduct is Inadmissible Pursuant to FRE 403.

Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Allowing evidence about European conduct would severely prejudice Defendants, and it would create additional complexity in an already complex trial. If DPPs are allowed to introduce evidence of European conduct at trial, the jury might erroneously consider the evidence when evaluating DPPs' evidence with respect to the conspiracy as actually alleged. The jury should not be burdened with parsing the evidence presented by DPPs to determine what may properly be considered in assessing DPPs' claims for damages and what may not. Moreover, parties would need to introduce evidence and argument of the scope and applicability of the European conduct. Such mini-trials regarding the significance and applicability of the European conduct would waste valuable trial time as well as overburden and confuse the jury. *See Tan v. City & Cnty. of San Francisco*, No. C 08-01564 MEJ, 2010 U.S. Dist. LEXIS 24668, at *5-6 (N.D. Cal. Feb. 26, 2010) (citing FRE 403 in granting defendants' motion *in limine* to exclude evidence and argument regarding investigations unrelated to the case at hand).

### <u>CONCLUSION</u>

For the foregoing reasons, evidence or testimony concerning European conduct by Defendants should be excluded from trial.

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE ALL EVIDENCE RELATING TO EUROPEAN CONDUCT**

The anticompetitive conduct in this case was not confined to Japanese group meetings. The Class alleges a global conspiracy by the world's largest capacitor manufacturers. The evidence shows that AVX and KEMET met with each other as well as with representatives and agents of Japanese cartel members in Europe and in other locations throughout the world. That evidence, constituting numerous overt acts in furtherance of the conspiracy, is relevant and admissible because it is probative of core issues in the case, including the nature, purpose, scope, and effect of the conspiracy.

Defendants assert the Class should not be permitted to present evidence relating to European conduct based on a crimped and inaccurate characterization of the claims at issue. Defendants assert in conclusory fashion that their European anticompetitive conduct has "no connection to the United States" because "the conspiracy pleaded by the Class in this case—a conspiracy centered in Asia that allegedly affected the United States—is the only conspiracy at issue here." Def. MIL, at 1. That is incorrect. From the outset of this case, the Class has argued the conspiracy was *global*, with conspiratorial conduct taking place outside the U.S. and elevating prices the conspirators charged to purchasers in the United States. That the Class is pursuing claims under United States antitrust law does not render any acts in furtherance of the conspiracy irrelevant or inadmissible. This includes the numerous overt acts taken in Europe. The illicit European activity was not separate from the conduct in Asia, but, instead, part and parcel of the global conspiracy to fix prices of capacitors. The capacitor market is a global commodity market, and restraints in one region—let alone many regions—of the world can be expected to—and indeed, did—affect market conditions in other regions, including the United States.

Given that the Class has alleged Defendants implemented a global price-fixing conspiracy, evidence of Defendants' European conduct is highly relevant to U.S. price-fixing. *See In re Chocolate Confectionary Antitrust Litig.,* 602 F.Supp.2d 538, 576-77 (M.D. Pa. 2009). More particularly, the Class may rely on Defendants' foreign conduct to substantiate their claim of price fixing in the United States notwithstanding that claims by *foreign claimants* based on

1    Defendants' foreign conduct may be beyond the reach of the Sherman Act. *See* Foreign Trade

2    Antitrust Improvement Act ("FTAIA"), 15 U.S.C. § 6(a). While the FTAIA may prohibit *foreign*

3    claimants from bringing suit based on foreign harm, it does not prohibit inquiry into foreign

4    conduct that is relevant to *domestic* harm. *See In re Intel Corp. Microprocessor Antitrust Litig.*,

5    No. Civ. A. 05-1717, 2007 WL 137152, at *11 (D. Del. Jan. 12, 2007). Accordingly, evidence of

6    Defendants' European conduct—an integral component of Defendants' global price-fixing

7    scheme—is relevant to, and probative of, the Class's claims.[3] Fed. R. Evid. 401 & 403.

8            Discovery has produced substantial evidence of Defendants' acts in furtherance of the

9    conspiracy in Europe, including bilateral meetings, exchanges of confidential non-public business

10   information, coordination on pricing, bid rigging, and other anticompetitive activity—evidence

11   that tends to make the existence of the conspiracy more likely. The Class has adduced evidence

12   that Defendants' and coconspirators' high-level executives met at trade associations where they

13   would discuss pricing and bids. These same high-level executives met in Europe met with high-

14   level executives from other coconspirators, including those from the Japanese Defendants, to

15   engage in anticompetitive activity. Such evidence is not barred by any rule.

16           There would be no undue prejudice to Defendants. These issues were fairly raised by the

17   pleadings and were the focus of written discovery as well as numerous depositions—including in

18   Europe—as well as briefing on summary judgment. Defendants' present claim that their "conduct

19   that occurred entirely within Europe" had "no connection to the United States" should be resolved

20   by the jury. It has no bearing now. Def's MIL 6 at 1. They are free to try to prove this claim at

21   trial. But the Class should be given the opportunity to prove their case as they frame it.

22           Further, Defendants' reliance on *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir.

23   2007), is misplaced. There, the court was asked to review a decision from a trial court dismissing

24   a complaint under Rule 12(b)(6). The issue was whether the plaintiffs plead facts plausibly

25   showing the existence of a global conspiracy. Plaintiffs there had failed to plead facts showing a

26   _____

27   [3] Because the Class has alleged and will prove a global conspiracy that includes Defendants' European conduct, Defendants' Federal Rule of Evidence 404(b) argument is accordingly irrelevant. Defendants' European conduct is not propensity evidence unrelated to the conspiracy as Defendant's

28   claim, but rather part and parcel of the global price-fixing conspiracy in this case.

1   conspiracy to fix prices in the United States, and instead relied wholly on allegations of unproven

2   anticompetitive conduct in Europe. *Id.* at 52. Plaintiffs failed to allege facts showing a link

3   between the conduct in Europe and the United States or the existence of a global conspiracy. *Id.*

4   (noting there was no allegation of "global marketing or fungible products . . . no indication that

5   participants monitored prices in other markets . . . and no allegations of the actual pricing . . . in

6   the United States or changes therein attributable to defendants' alleged misconduct."). The

7   pleading standards and the admissibility of evidence are separate issues.

8          The Court should deny Defendants' motion *in limine* to exclude evidence relating to

9   European conduct.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

Bruce D. Sokler *(admitted pro hac vice)*
Robert G. Kidwell *(admitted pro hac vice)*
bdsokler@mintz.com
rgkidwell@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
701 Pennsylvania Avenue NW, Suite 900
Washington, DC 20004
Telephone: (202) 434-7300
Facsimile: (202) 434-7400

Evan S. Nadel (SBN 213230)
enadel@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA  94104
Telephone: 415-432-6000
Facsimile: 415-432-6001

Attorneys for Defendant
AVX CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Lead Case No. 3:17-md-02801-JD |
| | *Including Consolidated Case:* Case No. 14-cv-03264-JD |
| This Document Relates to: | **DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE OUT OF COURT STATEMENTS RELATING TO AVX CORPORATION AND KEMET CORPORATION DECLARANTS** |
| *Direct Purchaser Plaintiffs Action*, 14-cv-03264-JD | Trial:  March 2, 2020 Judge: Hon. James Donato Location: Courtroom 11 |

- 60 -

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2   Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3   heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4   Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5   this Court, pursuant to Rules 801, 802, 803, and 805 of the Federal Rules of Evidence, to hold a

6   pretrial hearing on this motion to exclude the use of hearsay statements made by AVX or

7   KEMET employees against other Defendants, and to exclude the use of hearsay statements by

8   other Defendants against AVX and KEMET, under the co-conspirator exception.

9

10  Dated:  January 6, 2020                     MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
11                                              AND POPEO, P.C.

12                                              By: */s/ Bruce D. Sokler*
                                                Bruce D. Sokler
13                                              Robert G. Kidwell
14                                              701 Pennsylvania Avenue NW, Suite 900
                                                Washington, DC 20004
15                                              bdsokler@mintz.com
                                                RGKidwell@mintz.com
16
                                                Evan S. Nadel
17                                              44 Montgomery Street, 36th Floor
18                                              San Francisco, CA 94104
                                                enadel@mintz.com
19
                                                *Attorneys for Defendant AVX Corporation*
20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE OUT OF COURT STATEMENTS RELATING TO
AVX CORP. AND KEMET CORP. DECLARANTS Case No. 3:17-MD-02801-JD

1

**ISSUES TO BE DECIDED**

2
     1.     Whether the Court should exclude under Fed. R. Evid. 801, 802, 803, and 805 the

3
use of any hearsay statements either by or against AVX Corporation or KEMET Corporation that

4
DPPs may attempt to introduce via the co-conspirator exception in Rule 801(d)(2)(E)?

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE OUT OF COURT STATEMENTS RELATING TO
AVX CORP. AND KEMET CORP. DECLARANTS Case No. 3:17-MD-02801-JD

1    The Court should exclude the use of any hearsay statements either by or against AVX

2    Corporation ("AVX") or KEMET Corporation ("KEMET") (together, the "American

3    Companies") that DPPs may attempt to introduce via the co-conspirator exception in Rule

4    801(d)(2)(E). Unless the Court finds prior to trial that DPPs have proven by a preponderance of

5    the evidence that the American Companies participated in the conspiracy alleged in the

6    Complaint, no hearsay statements of any purported co-conspirators may be used against AVX or

7    KEMET under the co-conspirator exception, and no hearsay statements by AVX or KEMET can

8    be admitted under the co-conspirator exception against any Defendant.

9    The minutes of the competitor meetings themselves, as confirmed by the minute keeper

10    in his deposition, state unambiguously that AVX and KEMET were not members of the

11    conspiracy at least as late as 2003.[1] The co-conspirator exception therefore cannot be applied to

12    AVX or KEMET prior to the date of that statement. It also cannot be applied to AVX or KEMET

13    after that date unless the DPPs show that the American Company at issue had become a member

14    of the alleged conspiracy before the date of the proffered document. A document-by-document

15    analysis will therefore still be required for *each and every* statement DPPs intend to offer as a co-

16    conspirator statement by or against the American Companies.

17    DPPs' allegation that the American Companies were co-conspirators may not be

18    presumed true for these purposes. In order to utilize Rule 801(d)(2)(E), DPPs must first establish

19    by a preponderance of the evidence: (a) the existence of a conspiracy; (b) defendant's

20    participation in the conspiracy; (c) that the declarant made the statement while a member of the

21    conspiracy; and (d) that the statement was made "in furtherance of" the conspiracy. *United States*

22    *v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000).  DPPs must do so using evidence independent

23    from the alleged co-conspirator statements themselves.  *See United States v. Silverman*, 861 F.2d

24    571, 577 (9th Cir. 1988) (abandoning the independent evidence requirement would "eliminate

25

26    _____

27    [1] Declaration of Shawn N. Skolky in Support of AVX Corporation's Motion for Summary
Judgment Against All Plaintiffs ("Skolky Decl."), Ex. 5 (ECF 651-7); *See also* Skolky Decl., Ex.
6, at 287:8-14; 288:19-25; 289:3-290:3 (ECF 651-8).

28

DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE OUT OF COURT STATEMENTS RELATING TO
AVX CORP. AND KEMET CORP. DECLARANTS Case No. 3:17-MD-02801-JD

one of the few safeguards of reliability that this exemption from hearsay definition possesses"). These preliminary facts must be established before admitting extra-judicial statements as "co-conspirator" statements. *See e.g., Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, No. 4:06-cv-01665-PJH, ECF No. 710 (N.D. Cal. May 20, 2009) ("[A]n accused's knowledge of and participation in an alleged conspiracy are preliminary facts that must be established before extra-judicial statements of a co-conspirator can be introduced into evidence."); *In re Cathode Ray Tube Antitrust Litig.*, 4:07-cv-05944-JST, ECF No. 4982 (N.D. Cal. Oct. 26, 2016) (adopting procedural mechanism to rule on offered co-conspirator statements prior to calling a witness through which the party sought to offer such statements).

The American Companies have, at all times, denied participation in the conspiracy alleged by DPPs, and the evidence before the Court substantiates those denials. In their motions for summary judgment, the American Companies fully briefed their arguments, and the evidence before the Court shows that: (1) DPPs do not allege that KEMET or AVX attended the group meetings in Japan;[2] (2) the amnesty applicant, Panasonic/SANYO, has sworn under oath that it did not enter into any illegal agreements regarding capacitors with KEMET or AVX;[3] and (3) every pleading Defendant has sworn that KEMET and AVX were not part of the conspiracy alleged and for which they pleaded guilty.[4] Absent a finding that overcomes the strong evidence that the American Companies did not participate in the alleged conspiracy, statements of purported co-conspirators may not be used against AVX, nor may KEMET's statements be used against any Defendant as a co-conspirator statement.

---

[2] Direct Purchaser Class's Opposition to Defendants Kemet Corporation and Kemet Electronics Corporation's Motion for Summary Judgment, at 1 (DPPs "do not allege that KEMET went to the group meetings held in Japan . . . .")(ECF 804); Direct Purchaser Class's Opposition to Defendant AVX Corporation's Motion for Summary Judgment, at 8 ("it is unsurprising that AVX would not attend overseas meetings . . . .")(ECF 807)

[3] Ex. 3 to Decl. of Jake Sorenson in Support of KEMET's Motion for Summary Judgment ("Sorensen Decl."), at RFA Nos. 1, 2, 3, 4, 5 (ECF 679-2); Skolky Decl., Ex. 10 (ECF 651-10).

[4] Exhs. 7-9 to Skolky Decl. (ECF 651-9; 651-10; 651-11; 651-12; 651-13; 651-14); Exhs. 68-75 to Sorenson Decl. (ECF 679-3).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A ruling on this key issue is necessary as the parties prepare for trial and gain a greater understanding of the evidence to be used at trial, and courts regularly require pretrial disclosure of alleged co-conspirator statements to facilitate similar pretrial admissibility determinations. *See, e.g., United States v. AU Optronics Corp.*, No. CR 09-0110 SI, 2012 U.S. Dist. LEXIS 3967, at *3-7 (N.D. Cal. Jan. 11, 2012) (ruling on admissibility of alleged co-conspirator statements prior to a witness examination in which the government intended to use the documents).

For the foregoing reasons, Defendants respectfully request that the Court grant this motion, excluding extra-judicial statements of KEMET and AVX declarants as inadmissible hearsay, and excluding extra-judicial statements of any purported co-conspirators against AVX and KEMET.

DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE OUT OF COURT STATEMENTS RELATING TO AVX CORP. AND KEMET CORP. DECLARANTS Case No. 3:17-MD-02801-JD

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE OUT OF COURT STATEMENTS RELATING TO AVX CORPORATION AND KEMET CORPORATION DECLARANTS**

For statements to be admissible under the co-conspirator exception found in Rule 801(d)(2)(E), "a court must find by a preponderance of the evidence that (1) there was a conspiracy (2) involving the declarant and the nonoffering party, and (3) the statement was made 'during the course and in furtherance of the conspiracy.'" *United States v. Chaudhry,* No. C 03-40210, 2008 WL 2128197, at *15 (N.D. Cal. May 20, 2008). The court may consider "any evidence it wishes, unhindered by considerations of admissibility." *Bourjaily v. United* States, 483 U.S. 171, 176-79 (1987). The court may consider the co-conspirator statement itself, in addition to all other non-privileged evidence. *See id.* at 178. However, the party seeking to introduce the statement may not rely solely on the statement to prove "the preliminary facts of the conspiracy and defendant's involvement in it." *United States v. Tamez*, 941 F.2d 770, 774-75 (9th Cir. 1991).

An agreement can be inferred from the course of conduct of the participants. *See C-O Two Fire Equip. Co. v. United States*, 197 F.2d 489, 494 (9th Cir. 1952). The requisite concurrence and knowledge can be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances. The course of conduct of the alleged co-conspirators is most compelling where their acts are interdependent or tend to exclude the possibility that they were acting independently. *Monsanto Co. v. Spray Rite Serv. Corp*. 465 U. S. 752 (1984). "The character and effect of the conspiracy are not to be judged by dismembering it and viewing its separate parts, but only looking at it as a whole." *Cont'l Ore Co. v. Union Carbide & Carbon Corp*., 370 U.S. 690, 698-99 (1962); *see also United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993) ("Once there is proof of a conspiracy, 'evidence of only a slight connection to the conspiracy' is sufficient to convict for participation in the conspiracy"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 6174683, at *3 (N.D. Cal. Nov. 20, 2013) (quoting *Foster*).

Here, the evidence in the record satisfies this standard. As shown in the Class's Oppositions to the AVX and KEMET summary judgment motions, substantial evidence

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

establishes a conspiracy to fix prices of capacitors and that AVX and KEMET joined the

conspiracy and committed numerous overt acts in furtherance of the conspiracy. The guilty pleas

provide compelling evidence of the existence of a conspiracy. Other evidence establishes AVX's

and KEMET's requisite "slight connection" to the conspiracy, *Foster*, 985 F.2d at 469, and,

indeed, that the two companies were actively involved in the conspiracy. The evidence shows that

AVX (1) worked directly with its competitors to rig bids to specific customers; (2) agreed to work

with competitors to raise prices; (3) told Japanese competitors that it had previously worked with

KEMET to raise prices; (4) documented its agreement to raise prices, and (5) repeatedly met with

and shared confidential business information in Europe and elsewhere with its competitors,

including those headquartered in Japan. Similarly, the record evidence shows that KEMET

regularly met with competitors to reach illegal agreements, monitor them, rig bids, allocate

markets, and stabilize prices at anticompetitive levels. KEMET executives met with executives at

Sanyo, NEC Tokin, AVX and other Defendants and shared the same confidential information that

was shared by the Defendants at the Japanese meetings. Information including pricing strategy,

output levels, and capacity was sent to individuals with pricing responsibility at the respective

firms for implementation. This evidence is confirmed by expert testimony showing that AVX and

KEMET repeatedly communicated sensitive information in a way that was consistent with

participation in the conspiracy and inconsistent with competition, and that both companies

elevated their prices above competitive levels in a manner consistent with participation in the

conspiracy.

The argument that AVX and KEMET did not attend certain meetings and may have joined

the conspiracy after its inception does not diminish the evidence of the meetings and

communicated in which they did participate. It is hornbook law that there is no requirement for

admissibility that a conspirator attend every meeting of the conspiracy, participate from its

inception, or participate in each overt act in furtherance of the conspiracy. "A defendant need not

have been aware of particular transactions within the conspiracy for statements in furtherance of

those transactions to be admissible against him or her." 5 Weinstein & Berger, *Weinstein's*

*Federal Evidence §* 801.34[3][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2014).

1   "Statements by earlier-joined conspirators are usually admitted against members who joined later,

2   based on the theory that the newcomer assumes the risk for what has already happened." *Id.* at

3   801.34[4][a].

4        Defendants request an extraordinary and cumbersome "document-by-document analysis."

5   Def. MIL. 7 at 1. The Court should reject that suggestion. It is both unnecessary and inefficient.

6   Once the threshold requirements are established—as they are, as discussed above—the issue is

7   resolved and need not be revisited. Indeed, the idea that that Court must make the threshold

8   findings again and again runs entirely contrary to the notion of a threshold in the first place.

9        Further, many of the statements admissible under Rule 801(d)(2)(E) are also admissible

10  on other grounds. KEMET's and AVX's statements in furtherance of the conspiracy are not

11  hearsay, but rather "verbal acts." These statements are "not offered to prove that what the

12  conspirators said is true, but to prove their verbal acts in saying it. This does not violate the

13  hearsay rule." *United States v. Wolfson*, 634 F.2d 1217, 1219 (9th Cir. 1980). *See also United

14  States v. Lim*, 984 F.2d 331, 336 (9th Cir. 1993). ("These statements are not hearsay; they are

15  verbal acts admissible to show that a conspiratorial agreement existed . . ."). Deposition testimony

16  and statements made in emails and other business records are admissions of a party opponent

17  under Rule 801(d)(2)(A). Although KEMET recently settled, AVX remains a party. Many of the

18  statements of both AVX and KEMET are found in Defendants' contemporaneous business

19  documents that will qualify for admission pursuant to the business records exception. Fed. R.

20  Evid. 803(6).

21       In addition, the proper procedure is to "conditionally admit coconspirator statements

22  subject to a later motion to strike." *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1349 (9th

23  Cir. 1981); *United States v. Zemek*, 634 F.2d 1159, 1169 & n.13 (9th Cir. 1980) ("The procedure

24  of conditionally admitting co-conspirator statements subject to later motions to strike is well

25  within the court's discretion."); *United States v. Rodriguez-Landa*, No. 2:13-CR-00484CAS-1, 3,

26  5, 6, & 10, 2019 WL 653853, at *28 (C.D. Cal. Feb. 13, 2019) ("[T]he Court will allow the

27  government to provisionally offer the alleged co-conspirator statements and to establish the

28  foundation for the co-conspirator statements during the course of trial.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        This Court should deny Defendants' motion *in limine* to exclude out of court statements relating to AVX Corporation and KEMET Corporation declarants.

Bonnie Lau (State Bar No. 246188)
blau@mofo.com
Stephen Kam (State Bar No. 327576)
stephenkam@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

David Cross (*pro hac vice pending*)
dcross@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue
Suite 6000
Washington, D.C. 20006-1888
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

Attorneys for Defendants
MATSUO ELECTRIC CO., LTD.

[COUNSEL FOR OTHER DEFENDANTS LISTED
ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ***IN RE CAPACITORS ANTITRUST LITIGATION*** | Master File No. 3:17-md-02801-JD |
| **THIS DOCUMENT RELATES TO:** | **DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE OF KEMET CORPORATION'S SALES** |
| *Direct Purchaser Plaintiffs Action*, 3:14-cv-03264-JD | The Honorable James Donato |
| | Date:   February 13, 2020 |
| | Time:   10:00 a.m. |

Defendants' Motion In Limine To Exclude
Evidence of KEMET Sales
Master File No. 17-md-02801-JD

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3    heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4    Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5    this Court, pursuant to Rules 401 and 403 of the Federal Rules of Evidence, to exclude evidence

6    regarding KEMET Corporation's sales as constituting irrelevant and unduly prejudicial

7    information.

8

9    Dated:  January 6, 2020                        Respectfully submitted,

10                                                   MORRISON & FOERSTER LLP

11

12

13                                                   By:  /s/ Stephen Kam
                                                     Bonnie Lau
14                                                   Stephen Kam
                                                     MORRISON & FOERSTER LLP
15                                                   425 Market Street
                                                     San Francisco, California 94105-2482
16                                                   Telephone: (415) 268-7000
                                                     Facsimile:  (415) 268-7522
17
                                                     David Cross
18                                                   MORRISON & FOERSTER LLP
                                                     2000 Pennsylvania Avenue
19                                                   Suite 6000
                                                     Washington, D.C. 20006-1888
20                                                   Telephone:  (202) 887-1500
                                                     Facsimile:   (202) 887-0763
21
22                                                   Attorneys for Defendants
                                                     MATSUO ELECTRIC CO., LTD.
23

24

25

26

27

28

1

## ISSUES TO BE DECIDED

2          1.      Whether the Court should exclude under Fed. R. Evid. 401 and 403 the use of any

3   evidence related to KEMET's sales on the grounds that it is irrelevant, unduly prejudicial, and

4   presents a substantial risk of juror confusion of the issues?

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendants move to exclude evidence of KEMET Corporation's ("KEMET") sales at trial

2    as well as in DPP's damages calculations, unless and until DPPs have satisfied their threshold

3    burden to prove that KEMET was a member of the conspiracy alleged by DPPs.  *See Kassim v. City*

4    *of Schenectady*, 415 F.3d 246, 250 (2d Cir. 2005) (granting motion *in limine* to limit the introduction

5    of damages and exclude evidence of types of damages that were not available).  Allowing DPPs to

6    present KEMET's over $100 million in sales to the jury before first meeting their burden to prove

7    KEMET's participation in the alleged conspiracy—which they cannot do on the unrefuted facts in

8    this case—would risk confusing the jury about DPP's alleged damages and substantially prejudice

9    Defendants with a potential damages award based upon irrelevant and grossly inflated sales.

10    KEMET has maintained through its settlement and removal from this case in November

11    2019 that it did not participate in the conspiracy alleged by DPPs.  Unlike other defendants in this

12    action, KEMET (and AVX) was never charged—or even investigated—by the DOJ.  And DPPs

13    admit there is no evidence that KEMET attended any of the competitor meetings in Asia that form

14    the basis of the single overarching conspiracy alleged by DPPs.  Despite the fact that KEMET is

15    no longer a party to the case and that KEMET hotly disputed participating in the alleged conspiracy,

16    DPPs still seek to introduce over $100 million in sales from KEMET as a substantial portion of the

17    damages they seek from the remaining Defendants.  Without first requiring DPPs to prove

18    KEMET's participation in the alleged decade-long, worldwide conspiracy involving all tantalum,

19    aluminum, and film capacitors, introduction of KEMET's sales would be improper under both

20    Rules 401 and 403.

21    Considering KEMET is no longer a party to this case, the introduction of such evidence

22    regarding KEMET presents a substantial risk of juror confusion, waste of time, and extreme

23    prejudice to Defendants.  After jurors hear evidence regarding KEMET's over $100 million in sales

24    over the course of a five-week trial, Defendants will be unfairly prejudiced in refuting DPPs'

25    improper inclusion of those sales in their damages calculations, and a limiting instruction will be

26    insufficient to address the enormous prejudice Defendants may sustain with any damages award.

27    Given the particularly high amount DPPs seek in damages, there would be no way to determine

28

1    whether the jury followed such an instruction even if they were to award a fraction of the damages

2    sought.

3        Courts exclude evidence unless the proponent can first meet the evidentiary threshold of

4    relevance.  *See, e.g., Mims v. Fed. Express Corp.*, No. CV 13-03947-AB (SSX), 2015 WL

5    12711651, fn. 9 (C.D. Cal. Jan. 15, 2015) (observing that a party must "make a preliminary offer

6    of proof as to relevance before attempting to place such evidence before the jury"); *USA v. Cooper*,

7    No. 13-CR-00693-SI-1, 2015 WL 1870661, at *4 (N.D. Cal. Apr. 23, 2015) (excluding evidence

8    because movant "failed to make a threshold showing that the evidence is 'relevant or helpful'"); *St*

9    *John v. Toyota Motor Corp.*, No. 8:10ML02151 JVS FMOX, 2013 WL 5775081, at *5 (C.D. Cal.

10   Oct. 11, 2013) ("Before admitting evidence of other incidents, however, the proponent of the

11   evidence must prove, and the trial court must determine, that the other incidents are substantially

12   similar to the incident at issue in the trial . . . . Without such a showing, the evidence is irrelevant.").

13   Courts also refuse to admit evidence at trial relating to the role of an alleged co-conspirator unless

14   the plaintiff has first met its threshold burden establishing that the alleged co-conspirator actually

15   participated in the purported conspiracy.  *See* Trial Court Order on Government's Motion *in Limine*

16   to Admit Co-Conspirator Statements, *United States v. Kanagasabi*, No. 17-CR-00410-PSG (doc.

17   100) (C. D. Cal., June 25, 2018) ("The Court defers ruling on the [Government's Motion *in Limine*

18   to Admit Co-Conspirator Statements] until such time as government counsel presents evidence of

19   a conspiracy.")

20       To allow the Court to make a determination as to the relevance of KEMET's sales, the Court

21   should require DPPs to satisfy their threshold burden to prove that KEMET was a member of the

22   conspiracy alleged by DPPs. A threshold determination of relevance is particularly important here

23   given that KEMET is no longer a party to the case and has always disputed its alleged participation

24   in the conspiracy that DPPs imagine.  *See Madani v. Equilon Enters., LLC*, No. CV 04-10370 JVS

25   JTLX, 2009 WL 3789133, at *2 (C.D. Cal. July 2, 2009) (excluding evidence regarding previously

26   dismissed claims); *Jiles v. S. Cal. Gas Co.*, No. CV 99-520 TJH (RNBX), 2001 WL 36132471, at

27   *1 (C.D. Cal. Apr. 12, 2001) (same).  Separately, because DPPs have not proven (and cannot prove)

28

Defendants' Motion In Limine To Exclude
Evidence of KEMET Sales
Master File No. 17-md-02801-JD

1   that KEMET actually participated in the alleged conspiracy, this Court has a further independent

2   reason to exclude DPPs from presenting evidence of KEMET's sales at trial or including its sales

3   in their damages calculations, as such evidence is irrelevant and unduly prejudicial. *See Kassim*,

4   415 F.3d at 250 (granting motion *in limine* to exclude evidence offered to support unavailable

5   damages theory).

6          To allow DPPs to introduce evidence of the sales of a non-party non-co-conspirator without

7   first meeting their burden to prove KEMET's role in the alleged conspiracy would only confuse

8   and mislead the jury as to the participants in the vast conspiracy DPPs claim and the scope of their

9   alleged damages.    Jurors would be tasked—and distracted—with considering evidence of

10  voluminous sales that holds no relevance. This would only confuse and mislead the jury and waste

11  valuable time. It also would unfairly prejudice Defendants in a manner that a subsequent limiting

12  instruction could not cure. *See* Fed. R. Evid. 403; *Apple Inc. v. Samsung Elecs. Co.*, 2018 WL

13  2010621, at *1 (N.D. Cal. Apr. 30, 2018) (excluding evidence of sales because "[e]ven if this

14  evidence were somehow relevant, such relevance would be substantially outweighed by the risk of

15  confusing the issues, misleading the jury, wasting time, and unfair prejudice.").

16         If the Court were to allow DPPs to introduce any evidence or argument relating to KEMET's

17  sales (assuming it were to do so at all), it should require DPPs to first offer any such evidence

18  outside the presence of the jury for the Court to evaluate without unduly prejudicing Defendants.

19  *See Conti v. Corp. Servs. Grp., Inc.*, No. C12-245RAJ, 2013 WL 6095564, at *11 (W.D. Wash.

20  Nov. 20, 2013) ("Unless Defendants receive the court's explicit permission, they may not introduce

21  evidence of [defendant's salary]. That evidence is likely irrelevant to any issue before the jury . . .

22  The court will not preclude Defendants from making an offer of proof outside the presence of the

23  jury, but they will have to make a substantially better showing as to the relevance.").

24         For the foregoing reasons, Defendants respectfully request that the Court exclude evidence

25  of KEMET's sales, including in DPP's damages calculations, unless and until the Court finds that

26  DPPs have satisfied their threshold burden regarding KEMET's alleged participation in the

27  purported conspiracy.

28

Defendants' Motion In Limine To Exclude
Evidence of KEMET Sales
Master File No. 17-md-02801-JD

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE OF KEMET CORPORATION SALES**

The Court should reject Defendants' continued demands to prejudge or foreclose the evidence as it relates to KEMET. Defendants asked the Court to decide KEMET's summary judgment motion even after KEMET withdrew it. MDL Dkt. Nos. 1008, 1017, 1070. The Court refused to do so. Now Defendants similarly seek to limit the Class's ability to present relevant evidence of KEMET's conduct and sales during the Class Period. *See* Def. MIL 8 at 2:27-3:1 (arguing that "DPPs have not proven (and cannot prove) that KEMET actually participated" in the anticompetitive conspiracy); 3:6 (characterizing KEMET as a "non-co-conspirator"); *cf.* MDL Dkt. No. 799-7 (DPPs' Opposition to KEMET's Motion for Summary Judgment). But "motions in limine should not be used as disguised motions for summary judgment." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08–8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010); *see also* Standing Order for Civil Jury Trials Before Judge James Donato, ¶ 6 ("[Motions *in limine*] are not substitutes for summary judgment or other dispositive motions . . . ."). "Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose." *Mathis v. Milgard Mfg., Inc.*, No. 3:16-cv-02914-BEN-JLB, 2019 WL 482490, at *1 (S.D. Cal. Feb. 7, 2019). As demonstrated in the Class's oppositions to KEMET's motion for summary judgment, there is sufficient evidence of KEMET's participation in the conspiracy to raise an issue of fact for the jury.

The KEMET sales data that Defendants seek to exclude is admissible. The evidence comes directly from KEMET's sales transactions records. Indeed, the data, together with other data compiled by the Class's experts, has been relied on by Defendants and their experts. The motion concedes as much by acknowledging that the KEMET data *would* be relevant, given joint and several liability principles, upon proof that KEMET participated in the conspiracy. *See* Def. MIL 8 at 1:2-3, 17-18; 3:25-27.

Defendants also for the first time ask the Court to bifurcate the proceedings and sequence the proof relating to KEMET based on an artificial distinction between evidence of KEMET's conduct and sales. Defendants now make the novel suggestion that the Court conduct a minitrial with respect to KEMET's participation in the conspiracy. On its face, this violates *Continental*

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

*Ore*. 370 U.S. 690, 699 ("(T)he character and effect of the conspiracy are not to be judged by dismembering it and viewing its separate parts, but only looking at it as a whole."). It is also wholly unnecessary and would confuse the jury, which will already be asked to determine whether KEMET, together with the other Defendants, participated in the conspiracy. While Defendants complain of "enormous prejudice" in conclusory fashion (Def. Mil 8 at 1:26), they cite no case finding unfair prejudice or jury confusion from relevant sales data or evidence of a former party's conduct.

Defendants' miscite *Apple Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2018 WL 2010621, at *1 (N.D. Cal. Apr. 30, 2018). *See* Def. MIL 8 at 3:12-15. The court in that case did not consider the admissibility of a settled co-conspirator's sales. Instead, the issue was the admissibility of post-class period material consisting of "references to iPhone models," "marketing," and "news articles." Nor is this a situation like the one in *United States v. Kanagasabi*, No. 17-CR-00410-PSG (C.D. Cal. June 25, 2018), ECF No. 100, where the existence of a conspiracy was in doubt. *See* Mot. at 2:15-19. And *Kassim v. City of Schenectady*, 415 F.3d 246, 250 (2d Cir. 2005)—cited twice in Defendants' motion—is not an antitrust decision but, rather, a wrongful eviction decision under 42 U.S.C. § 1983 affirming limitation of the evicted proprietor's compensatory damages to lost property and thirty days of lost profits. *See* Def. MIL 8 at 1:3-5, 3:3-5.

The Defendants will be able to cross-examine the Class's witnesses, put on their own witnesses, and present arguments regarding KEMET's conduct. It is both efficient and fair for the jury to assess whether KEMET was a member of the conspiracy at the same time as determining whether to include its sales in any award of damages.

This Court should deny Defendants' motion *in limine* to exclude evidence of KEMET Corporation sales.

Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

Steven Shea Kaufhold (SBN 157195)
KAUFHOLD GASKIN LLP
388 Market St, Suite 1300
San Francisco, CA 94111
Telephone:  (415) 445-4621
Facsimile:  (415) 874-1071
skaufhold@kaufholdgaskin.com

Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

*Counsel for Defendants*
*Nippon Chemi-Con Corp. and*
*United Chemi-Con, Inc.*

[COUNSEL FOR OTHER DEFENDANT
LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE CAPACITORS ANTITRUST LITIGATION*<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Direct Purchaser Plaintiffs Action*, 14-cv-03264-JD | Master File No. 17-md-02801-JD<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE EVIDENCE OF AND REFERENCE TO THE AVX AND CHEMI-CON POTENTIAL JOINT VENTURE**<br><br>The Honorable James Donato<br><br>Date:          February 13, 2020<br>Time:         10:00 a.m. |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3    heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4    Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5    this Court, pursuant to Rules 104, 401, and 403 of the Federal Rules of Evidence, to preclude the

6    introduction of evidence of a potential joint venture among Nippon Chemi-Con ("NCC"), United

7    Chemi-Con ("UCC"), Europe Chemi-Con ("ECC," and, collectively with NCC and UCC,

8    "Chemi-Con") and AVX, or any argument or reference to the same before the jury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion In Limine To Exclude
Evidence of Potential Joint Venture
Master File No. 17-md-02801-JD

1

2
Dated: January 6, 2020                           RESPECTFULLY SUBMITTED

3
                                                 PAUL, WEISS, RIFKIND, WHARTON &
4                                                GARRISON LLP
                                                 Charles F. Rule
5                                                Joseph J. Bial
                                                 Eric R. Sega
6                                                2001 K Street, NW
                                                 Washington, DC 20006-1047
7                                                Telephone:  (202) 223-7300
                                                 Facsimile:  (202) 223-7420
8                                                rrule@paulweiss.com
                                                 jbial@paulweiss.com
9                                                esega@paulweiss.com

10
                                                 Roberto Finzi
11                                               Farrah R. Berse
                                                 Johan E. Tatoy
12                                               1285 Avenue of the Americas
                                                 New York, NY 10019
13                                               Telephone:  (212) 373-3000
                                                 Facsimile:  (212) 757-3990
14                                               rfinzi@paulweiss.com
                                                 fberse@paulweiss.com
15                                               jtatoy@paulweiss.com

16

17                                               KAUFHOLD GASKIN LLP
18                                               Steven Shea Kaufhold
                                                 388 Market St, Suite 1300
19                                               San Francisco, CA 94111
                                                 Telephone:  (415) 445-4621
20                                               Facsimile:  (415) 874-1071
                                                 skaufhold@kaufholdgaskin.com
21

22                                               By: _____ /s/ Joseph J. Bial _____

23

24                                               Attorneys for Defendants
                                                 NIPPON CHEMI-CON CORPORATION and
25                                               UNITED CHEMI-CON, INC.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ISSUES TO BE DECIDED

Whether, pursuant to Rules 104, 401, and 403 of the Federal Rules of Evidence and relevant caselaw, the Court should preclude irrelevant evidence of, and reference to, Chemi-Con and AVX's negotiations relating to a potential joint venture.

Defendants' Motion In Limine To Exclude
Evidence of Potential Joint Venture
Master File No. 17-md-02801-JD

1

## I.   **INTRODUCTION**

2

3        In 2005, Chemi-Con began negotiations with AVX for what would have been a joint

4   venture to enter into a private labeling agreement.  Direct Purchaser Plaintiffs ("DPPs") have

5   spent the past five years trying to establish that those discussions were the product of an illegal

6   effort to fix prices.  With discovery now complete, DPPs have produced no such evidence.

7   Undeterred, DPPs have nonetheless indicated that they intend to argue that these 2005 discussions

8   were part of the alleged conspiracy.  Having failed to establish *any* connection between these

9   communications and any unlawful purpose (let alone the price-fixing conspiracy they have

10  alleged), DPPs should be precluded from offering this evidence under Federal Rules of Evidence

Rules 104, 401, and 403.

11

## II.   **ARGUMENT**

12

### A.  **Evidence Regarding the Joint Venture Attempt Is Irrelevant Under FRE 104 and 401.**

13

14       Evidence of, and reference to, Chemi-Con and AVX's attempt at a joint venture would

15  only be relevant to this case if the attempted venture was both unlawful *and* part of the alleged

16  conspiracy.  It is neither.  Under Rule 104(b), when relevance of evidence depends on whether a

17  fact exists, the offering party bears the burden of establishing that a "jury could reasonably find"

18  that fact by a "preponderance of the evidence."  *Huddleston* v. *United States*, 485 U.S. 681, 690

19  (1988).  *See also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a

20  fact exists, proof must be introduced *sufficient to support a finding that the fact does exist*."

21  (emphasis added)); Fed. R. Evid. 401.  For purposes of this motion, that means that DPPs must

22  offer evidence sufficient to support the claim that the activities in question were both unlawful

23  and connected to the conspiracy alleged in the complaint.  *See Last Atlantis Capital LLC* v. *AGS

24  Specialist Partners*, 262 F. Supp. 3d 641, 673-74 (N.D. Ill. 2017) (excluding evidence as

25  irrelevant, where "no witness was ever able to say that the orders were *actually* mishandled")

26  (emphasis added); *Miller* v. *Lemhi Cty.*, 320 F.R.D. 226, 230 (D. Idaho 2017) (precluding

27  evidence because the proffering party "fail[ed] to establish a logical relationship between" that

28  evidence and the allegations at issue).

1        Plaintiffs here cannot meet their burden of establishing the relevance of evidence relating

2    to the potential joint venture between Chemi-Con and AVX.  As a starting point, the law is clear

3    that not all joint ventures are improper and, indeed, many are pro-competitive.  *See Copperweld*

4    *Corp.* v. *Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (stating that joint ventures "hold the

5    promise of increasing a firm's efficiency and enabling it to compete more effectively."); *Freeman*

6    v. *San Diego Ass'n of Realtors*, 322 F.3d 1133, 1157 (9th Cir. 2003) ("Antitrust law doesn't

7    frown on all joint ventures among competitors—far from it.").  But, perhaps more importantly,

8    the evidence actually elicited through discovery directly contradicts DPPs' claim about this

9    alleged joint venture.  For example, one document DPPs have frequently cited, and included on

10    their exhibit list, demonstrates that the communications between Chemi-Con and AVX relate to a

11    proper private labeling agreement, not any price fixing agreement.  Ex. 1, April 25, 2005 Meeting

12    Minutes.[1]  Specifically, AVX wanted to enter into a long-term private labeling arrangement with

13    Chemi-Con, in part, because the parties had complementary strengths.  *Id.*  DPPs have

14    misleadingly pointed to select excerpts in this document in which AVX expressed that it would

15    "stay away" and not "erode" Chemi-Con's market.  *See* DPP MSJ Opp'n at 4–5.  But, naturally,

16    parties to a joint venture are looking to cooperate, rather than compete, with respect to that

17    venture.

18        The only deposition testimony from witnesses involved in this potential joint venture

19    confirms that the purpose of these meetings was to establish a lawful private labeling agreement

20    between Chemi-Con and AVX.  For instance, when DPPs questioned William Millman (an AVX

21    employee) about the document, he explained that, at the time, AVX was looking to "fill its

22    portfolio" because it did not manufacture aluminum capacitors.  Ex. 2, Millman Dep. Tr. 167:22–

23    169:6.  As "many of [AVX's] customers were inquiring if [AVX] would move into the aluminum

24    capacitor business and, in particular, the latest technology," AVX reached out to NCC, "a well-

25    established, well-known good technology company [to see] if there was a way [it could enter the

26    business] through private labeling."  *Id.  See also id.* at 169:17–170:4 (explaining specifically that

27

28

---

[1] Ex. __ refer to the Declaration of Johan Tatoy, filed with this motion.  DPPs cite to this evidence in their opposition to summary judgment.  *See* DPPs' Opp'n to UCC's Mot. for Summ. J. ("DPP MSJ Opp'n"), ECF No. 808, at 4–5.

Defendants' Motion In Limine To Exclude
Evidence of Potential Joint Venture
Master File No. 17-md-02801-JD

by "stay away," NCC likely referred to a concern about AVX's resale group "inadvertently

sell[ing] against them and their original products in certain markets and certain applications");

Ex. 3, King Dep. Tr. 209:4–210:5 (confirming the meeting was regarding a private labeling

agreement).  Not a single witness has testified that evidence of this potential joint venture was

anything but legitimate, and the DPPs cannot meet their burden of establishing the relevance of

this evidence.  DPPs have only alleged a *per se* price fixing conspiracy and a joint venture would

be properly evaluated under the rule of reason.  *See Copperweld*, 467 U.S. at 768 (holding that

combinations like joint ventures may be procompetitive so "such combinations are judged under a

rule of reason . . . .").

### B. The Evidence Regarding the Joint Venture Should Also Be Excluded as Unfairly Prejudicial, Misleading, and Confusing.

Evidence of negotiations surrounding the private labeling agreement is not just irrelevant.

It is also prejudicial, and, when the proffered evidence has little (or no) probative value, Rule

403's balancing test requires minimal risk of prejudice to exclude that evidence.  *See Thompson*

v. *City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013) ("[L]ess probative evidence will be

received only if the risk of prejudice is more remote.").  Courts are especially hesitant to admit

evidence when it would "create[] a substantial risk of confusion" and "might [] cause[] the jury to

base its verdict on highly speculative evidence rather than [a defendant's] guilt or innocence."

*United States* v. *Espinoza-Baza*, 647 F.3d 1182, 1190 (9th Cir. 2011).  "[E]ven a small risk of

misleading the jury substantially outweighs the probative value of minimally probative evidence."

*Id*.  As Plaintiffs have not established any relevance, introducing this evidence would only serve

to confuse and mislead the jury.  Moreover, if DPPs are permitted to introduce this evidence, the

trial will be prolonged, as NCC, UCC, and AVX will need to spend time introducing additional

evidence to explain the joint venture efforts.

### CONCLUSION

For the foregoing reasons, the Court should exclude evidence of, and reference to, Chemi-

Con and AVX's discussions regarding a potential joint venture.

1
2

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE EVIDENCE OF AND REFERENCE TO THE AVX AND CHEMI-CON POTENTIAL JOINT VENTURE**

3      Defendants seek to exclude a broad, undefined category of evidence including any mere

4   "reference to" a potential joint venture between Defendants AVX and Nippon Chemi-Con, United

5   Chemi-Con and Europe Chemi-Con (Chemi-Con entities, collectively "NCC"). The imprecision

6   of the motion undermines it. Its lack of specificity regarding what evidence Defendants seek to

7   exclude is, on its own, sufficient reason for denial. Indeed, even the exemplar they cite evidences

8   an in-person meeting between AVX and NCC where customer allocation and a continuing

9   exchange of confidential information was discussed. That communication appears facially anti-

10  competitive. The Defendants may present—and the jury may believe—an innocent explanation

11  for this and similar evidence at trial. That may include their joint venture rationale. But that is for

12  the jury to assess.

13  **A.      Defendants' Motion Should Be Denied for Lack of Specificity.**

14      Defendants move this Court to exclude all "[e]vidence of, and reference to, NCC and

15  AVX's attempt at a joint venture" including evidence of any "negotiations surrounding the

16  private labeling agreement." Def. MIL 9 at pp. 1, 3. Defendants do not identify the documents,

17  exhibits, testimony, or other evidence they claim falls within this category. Although they cite one

18  document as an example, it is unclear whether they can identify other such documents or whether

19  they will instead more broadly contend at trial that all contacts between AVX and NCC were

20  made pursuant to this supposed potential joint venture. Categorically excluding any "reference" to

21  an "attempt" at a potential joint venture is too ambiguous and broad to be feasible.

22      A motion *in limine* may be denied as "too broad to grant" when it "does not specify

23  exactly which evidence it wants excluded, and seeks an overbroad order from the court." *TDN*

24  *Money Sys., Inc. v. Everi Payments, Inc.*, No. 2:15-CV-2197, 2017 WL 5148359, at *6 (D. Nev.

25  Nov. 6, 2017), (denying motion because "[i]t is not clear specifically which documents or exhibits

26  [movant] seeks to exclude"); *see also Randolph v. ADT Sec. Servs.*, No. CIV. DKC 09-1790,

27  2012 WL 4480259, at *1 (D. Md. July 23, 2012) (denying motion which did "not identif[y] any

28  specific evidentiary item for exclusion" and instead sought to exclude "broad categories of

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1   unspecified, potentially relevant evidence"). Defendants' attempt to exclude this vague category

2   of evidence should be denied on this basis alone.

3       Alternatively, consideration of whether to exclude evidence that arguably falls within this

4   category should be left for trial. "The court has the power to exclude evidence in limine only

5   when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high

6   standard, evidentiary rulings should be deferred until trial so that questions of foundation,

7   relevancy and potential prejudice may be resolved in proper context." *Cooper v. Nevada ex rel.*

8   *Dep't of Transportation*, No. 3:09-CV-640-RCJ-VPC, 2011 WL 13305449, at *1 (D. Nev. Nov.

9   4, 2011); *see also Mendoza v. Gaylord Container Corp.,* No. C 03-3225, 2005 WL 8162619, at

10  *2 (N.D. Cal. Mar. 9, 2005) ("Orders *in limine* excluding broad categories of evidence should

11  rarely be employed."). This Court should not exclude a broad, undefined category of evidence

12  without the further context that will come when the parties seek to admit specific evidence at trial.

13  **B.    The One Document Cited by Defendants Is Relevant and Not Prejudicial.**

14      Evidence should be excluded only if "its probative value is *substantially* outweighed by

15  the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403

16  (emphasis added). "Rules 401 and 402 establish the broad principle that relevant evidence—

17  evidence that makes the existence of any fact at issue more or less probable—is admissible unless

18  the Rules provide otherwise." *Huddleston v. United States*, 485 U.S. 681, 687 (1988).

19      The one document Defendants specifically cite is relevant. *See* Def. MIL 9 at p.2, n.1, and

20  Defendants' Exhibit 1. The document is a record of a face-to-face meeting between AVX and

21  NCC, which has admitted to price fixing in the related criminal action.[4] At that meeting, AVX

22  advised NCC that it would "respect UCC and ECC, customers if we recommended they stay

23  away from them," NCC asked "[w]e have similar marketing structures and distribution. How do

24  we avoid competing with each other?" and AVX responded that they "want to make money, and

25  don't want to erode the market. They expect to share information from time to time, perhaps on

26  monthly basis, about market and customer development so we do not intrude on each other." *Id*.

27

28      [4] *See* Request for Judicial Notice 61, ECF 813.

1    This evidence is relevant to the Class's antitrust claims. Defendants' assertion that this

2    conversation came as part of a discussion about a potential joint venture does not render it

3    inadmissible. Defendants admit that this discussion was not in the context of an actual joint

4    venture but in connection with a "proposed" joint venture. Any solicitude in the law for joint

5    venture activity does not extend to discussions or arrangements outside or unnecessary to an

6    actual joint venture. There is no such joint venture here. If the law were otherwise, it would

7    immunize anti-competitive conduct and communication without legitimate procompetitive

8    justification.

9    Defendants' reliance on *Freeman v. San Diego Ass'n of Realtors* is wholly misplaced. In

10   *Freeman*, the communications and agreements at issue were internal to a joint venture. Even

11   where a joint venture exists, it immunizes its members from antitrust liability only for

12   procompetitive conduct that serves its legitimate ends. As the Ninth Circuit held, "The further

13   decision to fix support fees does not." 322 F.3d 1133, 1157 (9th Cir. 2003); *see also Texaco Inc.

14   v. Dagher*, 547 U.S. 1, 6 (2006) (joint venture pricing not *per se* unlawful as it was "price setting

15   by a single entity" and not "pricing agreement between competing entities").

16   Evidence that competitors, under the guise of a potential joint venture, fixed prices and

17   committed other suspect acts is relevant to prove the conspiracy. There is no claim—nor could

18   there be—that price fixing was a legitimate purpose of the joint venture. *See Freeman*, 322 F.3d

19   at 1157 ("Stripped to its essentials, defendants' argument is that some of the firms they wanted to

20   include in the joint venture were so inefficient that they could survive only under cartel pricing.

21   Defendants' concern for the weakest among them has a quaint Rawlsian charm to it, but we find

22   it hard to square with the competitive philosophy of our antitrust laws."). The evidence of the

23   meeting is admissible as establishing an opportunity to conspire, as well as because AVX and

24   NCC—which has pleaded guilty to fixing capacitor prices—expressly discussed allocating

25   customers and exchanged confidential information consistent with price fixing.

26   This Court should deny Defendants' motion *in limine* to exclude evidence of and

27   reference to the AVX and NCC potential joint venture.

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1  Jarod Bona (State Bar No. 234327)
2  Alex Shear (Admitted *Pro Hac Vice*)
   David C. Codell (State Bar No. 200965)
3  Aaron Gott (State Bar No. 314264)
   Luke Hasskamp (State Bar No. 280872)
4  Luis Blanquez
   Bona Law PC
5  4275 Executive Square, Suite 200
   La Jolla, CA 92037
6  jarod.bona@bonalawpc.com
7  alex.shear@bonalawpc.com
   david.codell@bonalawpc.com
8  aaron.gott@bonalawpc.com
   luke.hasskamp@bonalawpc.com
9  luis.blanquez@bonalawpc.com
   *Counsel for*
10 *Defendants, Taitsu Corporation and Taitsu America,*
   *Inc.*
11
12 [Additional Counsel Listed on Signature Page]

13                    UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15

16

17 ***IN RE CAPACITORS ANTITRUST***          Master File No. 17-md-02801-JD
   ***LITIGATION***
                                            **DEFENDANTS TAITSU CORPORATION,**
18 **THIS DOCUMENT RELATES TO:**            **TAITSU AMERICA, INC. AND NIPPON-**
                                            **CHEMI-CON CORP.'S MOTION IN**
19 *Direct Purchaser Plaintiffs Action*, 14-cv-  **LIMINE NO. 10: TO EXCLUDE EVIDENCE**
   03264-JD                                 **OF SUPPLIER-CUSTOMER**
20                                          **COMMUNICATIONS AND TO PROVIDE A**
                                            **LIMITING INSTRUCTION**
21
                                            The Honorable James Donato
22
                                            Date:      February 13, 2020
23                                          Time:      10:00 a.m.

24

25

26

27

28
                                   - 88 -
   Defendants' Motion In Limine To Exclude Evidence of Supplier-Customer Communications and to Provide Limiting
                        Instruction (MDL NO. 2801/CASE NO. 14-CV-03264-JD)

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3  heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4  Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5  this Court, pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, to exclude the

6  introduction of documents, testimony, or other evidence reflecting communications between

7  Taitsu and NCC in their respective roles as supplier and customer of film capacitors for any

8  purpose other than to prove the existence of a legitimate vertical supplier-customer relationship

9  between two companies that have not been horizontal competitors in the market for film

10 capacitors since NCC exited that market in 2008.

11                                  RESPECTFULLY SUBMITTED,

12  DATED: January 6, 2020              *s/Alexandra Shear*

13                                      ALEXANDRA SHEAR
                                        Bona Law PC
14                                      Jarod Bona
                                        David C. Codell
15                                      Aaron Gott
                                        Luke Hasskamp
16                                      Luis Blanquez
                                        Alexandra Shear
17                                      4275 Executive Square, Suite 200
                                        La Jolla, CA 92037
18                                      858.964.4589
                                        858.964.2301 (fax)
19                                      jarod.bona@bonalawpc.com
                                        david.codell@bonalawpc.com
20                                      aaron.gott@bonalawpc.com
                                        luke.hasskamp@bonalawpc.com
21                                      luis.blanquez@bonalawpc.com
                                        alex.shear@bonalawpc.com
22
23
24                                      *Counsel for Defendants*
                                        *Taitsu Corporation and Taitsu America, Inc.*
25

26

27

28
Defendants' Motion In Limine To Exclude Evidence of Supplier-Customer Communications and to Provide Limiting Instruction (MDL No. 2801/Case No. 14-CV-03264-JD)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ISSUE TO BE DECIDED</u>**

1.      Whether the Court should exclude evidence of communications between Taitsu and NCC in their respective roles as supplier and customer of film capacitors, on the grounds that these documents demonstrate a legitimate vertical relationship between the companies and so are irrelevant to DPPs' claims, are unduly prejudicial, and present a substantial risk of juror confusion of the issues.

1    Defendants Taitsu Corporation, Taitsu America, Inc. (together, "Taitsu"), and Nippon

2    Chemi-Con Corp. ("NCC") move, pursuant to Rules 401, 402, and 403 of the Federal Rules of

3    Evidence, to exclude the introduction of documents, testimony, or other evidence reflecting

4    communications between Taitsu and NCC in their respective roles as supplier and customer of

5    film capacitors for any purpose other than to prove the existence of a legitimate vertical supplier-

6    customer relationship between two companies that have not been horizontal competitors in the

7    market for film capacitors since NCC exited that market in 2008. In addition, the Court should

8    give appropriate instructions that documents reflecting communications between Taitsu and NCC

9    after this time shall not be used to infer any conspiratorial conduct between those two companies.

10                                          **ARGUMENT**

11   I.    **Evidence of Legitimate Supplier-Customer Relationships among Defendants Are**
           **Irrelevant and Not Probative as to the Issues to be Decided**
12
13          The only type of capacitor that Taitsu has ever sold is film capacitors. Kobayashi Dep.

14   55:5-9.  While NCC once manufactured film capacitors, in 2008, NCC exited that market and

15   began to purchase film capacitors from Taitsu which it then resold to customers under the Chemi-

16   Con label. Kobayashi Dep. 507:13-24. Consequently, Taitsu and NCC ceased to be competitors in

17   2008 when they no longer sold any of the same products and, instead, began a vertical

18   relationship as supplier and customer. Accordingly, communications that occurred subsequent to

19   that time—including those that Direct Purchaser Plaintiffs ("DPPs") seek to introduce solely for

20   this purpose—are not among or between competitors.

21          Documents, testimony, and other evidence relating to lawful, legitimate, procompetitive

22   communications among Defendants are not relevant to the issues of liability or damages that are

23   before the jury. The jury is tasked with determining whether the DPPs have proven as to each

24   Defendant by a preponderance of the evidence, *inter alia*, (1) that a conspiracy among or between

25   competitors to fix the prices of aluminum, tantalum, and film capacitors existed; and (2) that each

26   Defendant knowingly—that is, voluntarily and intentionally—became part of that conspiracy.

27   Ostensibly to prove these elements, DPPs seek to introduce evidence purporting to reflect

28   Taitsu's sharing the prices of certain of its film capacitors with a competitor, NCC, and have

1    listed such evidence on their proposed trial exhibit list. *See, e.g.*, TAITSU-00083007; TAITSU-

2    00006031; TAITSU-00005524; TAITSU-00005528; TAITSU-00005611; TAITSU-00005659;

3    and NCC-CAP-00152328. These communications, however, between Taitsu and NCC are not

4    between competitors, but rather between supplier and customer.

5         After NCC stopped manufacturing its own film capacitors, it began to purchase film

6    capacitors from Taitsu. Kobayashi Dep. 507:13-24. In connection with this role as NCC's

7    supplier, Taitsu would quote prices of its film capacitors to its customer NCC. Of course, there

8    should be no anticompetitive concerns with a supplier communicating with a customer about

9    pricing. Yet, despite record evidence that such communications related only to the supplier-

10   customer relationship between Taitsu and NCC, *see* Kobayashi Dep. 560:255-561:19 ("This is

11   purely talk about, I said, OEM business, which means, we, Taitsu, produce the capacitors with

12   NCC brand on, which is, for us, we call OEM business to NCC."), and despite no evidence to the

13   contrary, DPPs have continued their efforts to introduce evidence that Taitsu shared pricing

14   information with NCC. *See, e.g.*, Expert Report of Dr. Hal J. Singer, *passim*, ECF No. 816-7

15   (cited throughout DPPs' summary judgment briefing).

16        That evidence, however, absent any connection to unlawful activity or to the alleged

17   price-fixing conspiracy, is not relevant to DPPs' claims that Taitsu and NCC participated in a

18   conspiracy to fix the prices of aluminum, tantalum, and film capacitors.[1] Notably, two of the

19   documents that DPPs designated, TAITSU-00083007 and NCC-CAP-00152328, were already

20   acknowledged by DPPs' own expert as being related to this vertical relationship between Taitsu

21   and NCC, rather than as evidence of a conspiracy. *See* Rebuttal Report of Dr. Hal J. Singer ¶ 122

22   n.635, ECF No. 816-8 (Apr. 19, 2019) ("NCC-CAP-00152328 and TAITSU-00083007 refer to

23   the vertical relationship between Taitsu and [NCC].").

24        Even under a broad definition of relevance, evidence concerning Taitsu and NCC's

25   _____

26   [1] Moreover, the exchange of competitively sensitive price information even among competitors can, in some cases, be procompetitive and is evaluated under the rule of reason. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive."). As such, it is not necessarily probative of the existence of a conspiracy.

- 92 -

1  supplier-customer relationship does not qualify. Such evidence does not make more probable than

2  not *any* fact that is of *any* consequence in determining DPPs' price-fixing claims. Such evidence

3  does not indicate that any Defendant competitors shared any sensitive price information because

4  the parties to the communications are not, at that time or any time thereafter, competitors.

5  Accordingly, DPPs' proposed evidence should be excluded as irrelevant. *See* Fed. R. Evid. 402.

6  **II.     Evidence of NCC-Taitsu Price Communications Are Likely to Confuse the Jury**

7          Similarly, the evidence of Taitsu and NCC's communications is likely to confuse the

8  issues and mislead the jury and should be precluded under Rule 403. It is likely that the jury

9  would misconstrue the evidence as reflecting price communications among competitors similar to

10 the sort of evidence of typical seen in a Section 1 case. Specifically, the jury would likely assume

11 that the documents reflected such communications because jurors would not be able to imagine

12 any other reason for the introduction of such evidence. Indeed, to create this misunderstanding is

13 the only reason that DPPs seek to introduce such evidence since, as discussed above, it has no

14 actual relevance to any issues to be decided.

15        Because there is a substantial likelihood that the jury would be misled by such evidence,

16 and it is not relevant and does not have any probative value, the balance favors exclusion. *Cf.*

17 *United States v. Gadsden*, No. WDQ-11-0302, 2012 U.S. Dist. LEXIS 144189, at *11-13 (D. Md.

18 Oct. 4, 2012) ("Admission of post-conspiracy evidence would risk significant confusion of the

19 issues. The jury has already expressed its confusion about directly relevant evidence. Post-

20 conspiracy evidence would exacerbate the confusion. Introduction of the post-

21 conspiracy evidence would 'pose[] the danger of confusion of the issues, which may tend

22 to mislead the jury and would otherwise cause delay and waste time.'") (citations omitted).

23                              **CONCLUSION**

24        Evidence of Taitsu and NCC's supplier-customer relationship should be excluded under

25 Rules 401, 402, and 403 because it is irrelevant and is likely to confuse and mislead the jury.

26 Further, to avoid any such confusion, the Court should instruct the jury that documents reflecting

27 communications between Taitsu and NCC after 2008—if they are admitted—shall not be used to

28 infer any conspiratorial conduct between those two companies.

Defendants' Motion In Limine To Exclude Evidence of Supplier-Customer Communications and to Provide Limiting
Instruction (MDL NO. 2801/CASE NO. 14-CV-03264-JD)

## INDEX OF EXHIBITS TO DEFENDANTS' MOTION IN LIMINE NO. 10

The table below lists exemplary documents (including documents that Defendants have thus far identified on DPPs' initial exhibit list) that are affected by this motion. Defendants' motion is not limited to the documents on this list, but includes documents covered by the substance of this motion, such as documents that DPPs may identify in their list of rebuttal exhibits. Copies of the exhibits listed below are attached to this motion, with translations where available.

| Exhibit No. | Description | Bates Number |
|---|---|---|
| 608 | 2013-08-06 Email | TAITSU-00083007 |
| 14334 | 2010-11-30 Email | TAITSU-00006031 |
| 13543 | 2010-10-25 Email | TAITSU-00005524 |
| 13544 | 2013-04-23 Email | TAITSU-00005528 |
| 13546 | 2012-12-06 Email | TAITSU-00005611 |
| 13549 | 2012-04-11 Email | TAITSU-00005659 |
| 12537 | 2012-02-22 Email | NCC-CAP-00152328 |
| 13567 | 2012-10-14 Email | TAITSU-00062078.00001 |
| 13568 | 2011-08-03 Email | TAITSU-00065697.00001 |
| 13547 | 2011-06-05 Email | TAITSU-00130760 |
| 13582 | 2012-06-21 Email | TAITSU-00281514.00001 |

1

2

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO EXCLUDE EVIDENCE OF SUPPLIER-CUSTOMER COMMUNICATIONS AND TO PROVIDE A LIMITING INSTRUCTION**

3

**A.     Communications Between Co-Conspirators Are Important Relevant Evidence.**

4

5

6

7

8

9

10

The "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). The Class "should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Id.* Taitsu and NCC violate this fundamental principle by asking the Court to bar evidence of price communications between them—two alleged co-conspirators— based solely on their supplier-customer relationship beginning in 2008.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Defendants' motion omits important context that shows communications between Taitsu and NCC relating to the pricing of Taitsu's film capacitors—in 2008 and later—are relevant to this litigation. The jury should be allowed to weigh those communications when deciding whether the Class has proved the existence of a conspiracy to fix the prices for capacitors. The Class alleges a global conspiracy involving both electrolytic and film capacitors. To effectuate this conspiracy, the conspirators exchanged sensitive business information concerning pricing, production volume, demand, capacity, sales and specific customers. In that context, Defendants here ignore that: (i) NCC plead guilty to conspiring to suppress competition for electrolytic capacitors; (ii) when NCC began to purchase Taitsu's film capacitors it was still manufacturing electrolytic capacitors; (iii) both Taitsu and NCC participated in the JFC meetings where the conspirators exchanged sensitive business information before NCC started to purchase Taitsu's film capacitors; (iv) both NCC and Taitsu continued to participate in JFC meetings after NCC began to purchase Taitsu's film capacitors in 2008; and (v) NCC continued to participate in meetings with electrolytic capacitor manufacturers where sensitive business information was exchanged.

26

27

28

Viewed as a whole, a jury could find that the 2008 and later price exchanges between Taitsu and NCC facilitated the continued efforts of the conspirators to artificially raise and maintain the prices for both film and electrolytic capacitors. The jury could find or infer, for

example, that through NCC's ongoing participation in the JFC meetings, it shared Taitsu's pricing information with other capacitor manufacturers to artificially raise the prices of capacitors. The communications at issue may also include other information relevant to the conspiracy, such as on future sales, production, demand or capacity, or about other capacitor manufacturers or customers. *See, e.g.,* TAITSU-00005524 at 24 (exchanging detailed confidential information on sales volumes, internal sales prices, and order trends); TAITSU-00005528 at 28-30, 32 (discussing Rubycon unit pricing and production plans of other film manufacturers).

Thus, evidence of communications between Taitsu and NCC concerning the price for Taitsu's film capacitors should be evaluated in the context of the other evidence concerning the conspiracy as a whole, and Taitsu's and NCC's participation in that conspiracy, before the Court can decide whether or not it is appropriate to exclude a specific document or communication simply because the participants happen to be in a buyer-seller relationship.

Moreover, Defendants are wrong when they contend that just because Taitsu and NCC occupied a supplier-customer relationship, their communications are inherently lawful and cannot be considered evidence of an illegal conspiracy. "Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); *see also Cont'l Ore*, 370 U.S. at 707 ("it is well settled that acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme") (citations omitted). As explained above, a jury may find or infer that the information exchange that is the target of Defendants' motion facilitated the overarching conspiracy to fix prices for both film and electrolytic capacitors.

Accordingly, there are no grounds for barring all 2008 and later Taitsu-NCC price communications or to provide an instruction to the jury it cannot infer a conspiracy from such communications. If the Court were to consider precluding any specific document, testimony or

1   other evidence relating to such communications, it should do so only at trial on a case-by-case

2   basis and after consideration of the context within which such evidence is offered.[5]

3   **B.      There Is No Risk of Jury Confusion.**

4          Defendants are wrong to suggest the jury will have trouble understanding that certain

5   communications between Taitsu and NCC were made between a supplier and a customer.

6   Defendants do not explain how such a straightforward issue would confuse a jury; instead,

7   Defendants make only a conclusory assertion that the jury would somehow misconstrue this

8   simple point. Further, Defendants' single citation in support of its assertion of jury confusion

9   involves a criminal action where the government sought to introduce post-conspiracy evidence,

10  *see United States v. Gadsden*, No. CRIM. WDQ-11-0302, 2012 WL 4757862, at *2, *4 (D. Md.

11  Oct. 4, 2012), which has no bearing on the present motion as the communications at issue took

12  place during an ongoing conspiracy. Defendants make no argument that the subject

13  communications occurred after the alleged conspiracy.

14         This Court should deny Defendants' motion *in limine* to exclude evidence of supplier-

15  customer communications and to provide a limiting instruction.

16

17

18

19

20

21

22

23

24

25

26

27         [5] While the Class was circumspect in adding as potential trial exhibits Taitsu-NCC price
    communications, it will, in the spirit of compromise, agree to remove NCC-CAP-00152328 and
28  TAITSU-83007 from its trial exhibits list.

1    Jeffrey A. LeVee (State Bar No. 125863)
     jlevee@JonesDay.com
2    Eric P. Enson (State Bar No. 204447)
     epenson@JonesDay.com
3    Kelly M. Ozurovich (State Bar No. 307563)
     kozurovich@JonesDay.com
4    JONES DAY
     555 South Flower Street
5    Fiftieth Floor
     Los Angeles, CA 90071.2300
6    Telephone:   +1.213.489.3939
     Facsimile:    +1.213.243.2539
7

8    John M. Majoras (Admitted *Pro Hac Vice*)
     jmmajoras@jonesday.com
     JONES DAY
9    51 Louisiana Avenue, N.W.
     Washington, D.C. 20001-2113
10    Telephone:   +1.202.879.3939
     Facsimile:    +1.202.626.1700
11

12    Attorneys for Defendants
     HOLY STONE ENTERPRISE CO., LTD.,
     MILESTONE GLOBAL TECHNOLOGY, INC.
13    (D/B/A HOLYSTONE INTERNATIONAL),
     VISHAY POLYTECH CO., LTD.
14

15    [COUNSEL FOR OTHER DEFENDANTS LISTED
     ON SIGNATURE PAGE]

16              UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18

19    ***IN RE CAPACITORS ANTITRUST***
     ***LITIGATION***

20

21    **THIS DOCUMENT RELATES TO:**

22    *Direct Purchaser Plaintiffs Action*, 14-cv-
     03264-JD

23

24

| | |
|---|---|
| Master File No. 17-md-02801-JD | |
| **DEFENDANTS' MOTION IN LIMINE NO. 11 TO EXCLUDE EVIDENCE OF FOREIGN INVESTIGATIONS** | |
| The Honorable James Donato | |
| Date:    February 13, 2020 Time:   10:00 a.m. | |

25

26

27

28

Defendants' Motion In Limine To Exclude
Evidence Of Foreign Investigations
Master File No. 17-md-02801-JD

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         Please take notice that on February 13, 2020, or as soon thereafter as the matter may be

3    heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden

4    Gate Avenue, San Francisco, CA 94102, the undersigned Defendants will, and hereby do, move

5    this Court, pursuant to Rules 402, 403, and 802 of the Federal Rules of Evidence, to preclude the

6    introduction of evidence of any investigation by any foreign regulator or of any penalty imposed

7    by any foreign regulator, or any argument or reference to the same before the jury.

8    Dated: January 6, 2020                    RESPECTFULLY SUBMITTED

9                                              JONES DAY

10

11                                             */s/ Eric P. Enson*
                                               Eric P. Enson
12                                             JONES DAY
                                               555 South Flower Street
13                                             Fiftieth Floor
                                               Los Angeles, CA 90071.2300
14                                             Telephone:    +1.213.489.3939
                                               Facsimile:    +1.213.243.2539
15
                                               Attorneys for Defendants
16                                             HOLY STONE ENTERPRISE CO., LTD.,
                                               MILESTONE GLOBAL TECHNOLOGY,
17                                             INC. (D/B/A HOLYSTONE
                                               INTERNATIONAL), VISHAY
18                                             POLYTECH CO., LTD

19

20

21

22

23

24

25

26

27

28

Defendants' Motion In Limine To Exclude
Evidence of Foreign Investigations
Master File No. 17-md-02801-JD

## ISSUES TO BE DECIDED

1.       Whether the Court should exclude evidence of or argument regarding the investigations of and penalties imposed by foreign antitrust regulators under Fed. R. Evid. 402 because those investigations are irrelevant to whether Defendants engaged in the conduct alleged in this case?

2.       Whether the Court should exclude evidence of or argument regarding the investigations of and penalties imposed by foreign antitrust regulators under Fed. R. Evid. 403 because any minimal probative value it might have is substantially outweighed by the high risk that the evidence will unduly prejudice Defendants, confuse the jury, and result in unnecessary delay and waste of judicial resources?

3.       Whether the Court should exclude evidence of or argument regarding the investigations of and penalties imposed by foreign antitrust regulators under Fed. R. Evid. 802 because all such evidence is hearsay that does not fit within the public records exception or any other exception?

Defendants' Motion In Limine To Exclude
Evidence of Foreign Investigations
Master File No. 17-md-02801-JD

1       Regulators in Japan, Korea, Taiwan, China, Singapore, Europe, and Brazil investigated

2   whether certain capacitor manufacturers violated foreign competition and anti-monopoly laws,

3   resulting in penalties against certain Defendants.  Evidence of these investigations and

4   penalties—via the introduction of cease and desist orders, judgments, press releases or testimony

5   regarding the same—is irrelevant to DPPs' claims under United States law, is unduly prejudicial,

6   is likely to confuse the jury and constitutes inadmissible hearsay.  Defendants therefore request an

7   Order excluding this evidence pursuant to Federal Rules of Evidence 402, 403 and 802.

8           **A.     Foreign Investigations And Resulting Penalties Are Irrelevant.**

9           Evidence of foreign investigations and their results are irrelevant and inadmissible under

10  Rule 402.  The fact of the investigations proves nothing about the truth of any allegation in this

11  case.  *Apple iPod iTunes Antitrust Litig.*, 2014 WL 12719192, *3 (N.D. Cal. Nov. 18, 2014)

12  (excluding evidence of foreign investigations absent "more specific showings at trial regarding

13  the relevance of such evidence for a permissible purpose").  And the findings of any foreign

14  regulator, including the fact and amount of any penalties, also are irrelevant because they are

15  premised on different laws and different standards than those applicable to DPPs' Sherman Act

16  claim.  For example, while information exchange among competitors is not *per se* unlawful under

17  the Sherman Act, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.16 (1978), competition

18  regulators in other jurisdictions, such as the EU, Japan and Singapore, frequently treat

19  information exchange as an infringement of their own competition laws.[1]  Likewise, foreign

20  competition regulators are generally limited to investigating conduct occurring in, or affecting,

21  their jurisdictions, rather than conduct occurring in, or affecting, the United States.[2]

22          Due to these differing laws and standards, several courts have excluded evidence of

23  foreign investigations in other cases for a lack of probative value.  *In re Apple iPod*, 2014 WL

24  12719192 at *3 (excluding evidence under Rule 402); *Sugar Ass'n v. McNeil-PPC, Inc.*, 2008

25          [1] *See* Exhibits A-C to the Declaration of Eric Enson, filed with this motion.

26          [2] *E.g.*, Article 101 of the Treaty on the Functioning of the European Union (prohibiting the
    "prevention, restriction or distortion of competition within the internal market" of the EU); Singapore
27  Competition Act (Cap 50B, 2006 Rev Ed) s 34 (prohibiting practices "which have as their object or
    effect the prevention, restriction or distortion of competition within Singapore"); Japan Sup. Ct., Dec.
28  12, 2017, 2016 (Gyo-hi) No. 233 (ruling the Japan Fair Trade Commission can impose surcharges on
    firms that join overseas cartels if the cartels impair competition in the Japanese market).

Defendants' Motion In Limine To Exclude
Evidence Of Foreign Investigations
Master File No. 17-md-02801-JD

1   WL 4755611 (C.D. Cal. Jan. 7, 2008) (excluding foreign judgments where proponent of evidence

2   could not demonstrate similarity between foreign law and American law); *In re Korean Ramen*

3   *Antitrust Litig.*, No. 13-cv-04115, ECF No. 695 (N.D. Cal. Feb. 2, 2018) (imposing a limiting

4   instruction that "[t]he conclusions of the KFTC and the conclusions of the Korean Supreme Court

5   are not relevant to the determinations that you must reach under federal and state antitrust and

6   unfair competition laws."); *see also U.S. v. Pac. Gas & Elec. Co.*, 178 F. Supp.3d 927, 947-48

7   (excluding conclusions of NTSB investigation because the "ultimate issue of the NTSB

8   investigation … is not at issue in this case"). The same is true here; evidence of foreign

9   investigations—and their results based on their own laws—should be excluded as irrelevant.

10          **B.      Foreign Investigations Are Unduly Prejudicial And Risk Confusing The Jury.**

11          Evidence of foreign investigations and fines also should be excluded under Rule 403.

12  Evidence that certain Defendants were investigated and fined by foreign regulators may cause the

13  jury to defer to the results of those investigations and decide this case based on laws and legal

14  standards not before it.  *See Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999)

15  (finding a risk of unfair prejudice "because a jury might find it difficult to evaluate independently

16  evidence . . . after being informed of the investigating agency's final results").  Moreover, much

17  of the evidence considered by the foreign regulators – such as industry meetings and competitor

18  communications – will be before the jury, making evidence of foreign regulators' findings

19  cumulative and leaving the only purpose of admitting this evidence the suggestion "to the jury

20  that it should reach the same conclusion" as the foreign regulators.  *Hall v. W. Prod. Co.*, 988

21  F.2d 1050, 1058 (10th Cir. 1993) (affirming exclusion of agency report under FRE 403).

22          Courts in this District have therefore excluded similar evidence, reasoning that "[i]f a jury

23  hears that some or all of the Defendants have been found liable by [a foreign regulator], it will be

24  very difficult for the jury not to find them liable as well."  *In re CRT Antitrust Litig.*, 2016 WL

25  7803893, *2-3 (N.D. Cal. Nov. 15, 2016) (excluding KFTC press release describing its findings

26  due to the "dispositive effect a jury is likely to give the document"); *see also 3Com Corp. v.*

27  *Realtek Semiconductor Corp.*, No. C 03-2177, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008)

28  (excluding evidence of Taiwan FTC proceeding as "highly prejudicial and not probative").

1          Likewise, evidence of the foreign investigations and fines will confuse the jury by forcing

2     Defendants to present evidence distinguishing the foreign proceedings from the instant action,

3     resulting in a series of trials-within-a-trial, each subject to a differing legal standard.  *In re CRT*

4     *Antitrust Litig.*, 2016 WL 780389 at *2-*3 (excluding evidence of foreign investigations in part to

5     avoid conducting "mini-trials"). For example, Defendants would need to introduce rebuttal

6     evidence regarding the JFTC decision *not* to bring charges against certain Defendants. Besides

7     unnecessarily prolonging trial, such evidence is likely to leave the jury hopelessly confused as to

8     the issues to be decided and the applicable legal standards.  *Shoppin' Bag of Pueblo, Inc. v. Dillon*

9     *Companies, Inc.*, 783 F.2d 159, 165 (10th Cir. 1986) (upholding exclusion of evidence of FTC

10    investigation due to risk of confusing and misleading the jury); *In re Baycol Prod. Litig.*, 532 F.

11    Supp. 2d 1029, 1054 (D. Minn. 2007) ("allowing the admission of evidence of foreign regulatory

12    actions, in a case that is governed by domestic law, would likely cause jury confusion").[3]

13          **C.     Evidence Of Foreign Investigations Is Inadmissible Hearsay.**

14          Evidence of foreign regulators' investigations and findings is hearsay.  *United States v.*

15    *Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay 'to the extent that it is

16    offered to prove the truth of the matters asserted in the judgment.'").  The Rule 803(8) exception

17    for public records does not apply because there is reason to doubt the trustworthiness of the

18    documents, including because Defendants "might be afforded procedural opportunities in this

19    action that were unavailable" in foreign jurisdictions.  *See In re CRT Antitrust Litig.*, 2016 WL

20    7803893 at *2 (noting the EC does not guarantee the right to cross-examine witnesses).  DPPs

21    also cannot meet their burden to authenticate such documents under Rule 902(3).

22                                    **CONCLUSION**

23          Evidence of and references to foreign investigations and fines should be excluded

24    pursuant to Rules 402, 403 and 802.

25          _____

[3] For these reasons, evidence that Taitsu submitted altered documents to a Chinese regulator
26    also should be excluded. That evidence has no bearing on the issues in this case and is almost certain
    to prejudice Taitsu and confuse the jury, which will not be able to distinguish the issues it must decide
27    from those involved in the Chinese inquiry. Admitting this evidence also will require a "mini-trial" on
    the issue, requiring Taitsu to explain why it may have submitted those documents (i.e., due to distrust
    of the notoriously arbitrary and capricious Chinese regulator) so that the jury does not assume,
28    wrongly, that Taitsu did so out of desire to conceal conduct that is the same as that alleged by DPPs.

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 11 TO EXCLUDE EVIDENCE OF FOREIGN INVESTIGATIONS**

**A.     The Scope of Defendants' Requested Exclusion Goes Too Far.**

While not everything involving the investigations of Defendants conducted by foreign regulators is admissible, Defendants motion is too broad in seeking the exclusion of all such evidence. The Class therefore proposes an alternative ruling that would exclude only a) the results, findings, orders, or conclusions from any foreign investigation of Defendants' conduct; b) the decisions, rulings, statements, or press releases by any foreign government in connection with an investigation into Defendants' conduct; and c) the fact or amount of any fine or other penalty imposed by a foreign government in connection with an investigation into Defendants' conduct.

Such an order would strike an appropriate balance by eliminating the risk that the members of the jury would substitute a foreign regulator's assessment of Defendants' conduct for their own while still permitting the jury to learn of the reasons why Defendants' conduct concluded when it did and to benefit from testimonial statements Defendants made to regulators, which are party admissions about the acts alleged in this case.

**B.     Evidence of Investigations by Foreign Regulators Is Relevant and Admissible to Prove Facts other than the Underlying Conduct by Defendants.**

The Court should permit the Class to put on evidence that dawn raids of their offices occurred in early 2014, which brought their conspiracy to an end. The holding in *Apple iPod iTunes Antitrust Litigation,* No. 05-CV-0037 YGR, 2014 WL 12719192 at *3 (N.D. Cal. Nov. 18, 2014), cited by Defendants, favors permitting such evidence "for a permissible purpose, such as to show intent or motive." That such an investigation opened is clearly relevant to issues including but not limited to Defendants' statute of limitations defense. It should be permitted. Broader language from *Apple iPod* excluding reference to "courts' decisions, factual findings, or credibility assessments" involved other decisions and cases that were not sufficiently related to the conduct at issue in the *Apple iPod* lawsuit. *Id*. Even then, the Court declined to limit "the parties' ability to impeach the opposing party's witnesses with inconsistent testimony given in other cases, provided the proper foundation has been laid." *Id*.

1    That last point supports permitting the Class to impeach Defendants' witnesses based on

2  inconsistent statements they made at deposition or in giving testimony to outside regulators.

3  Defendants' casual dismissal of a foreign government's antitrust authority as a "notoriously

4  arbitrary and capricious Chinese regulator" is not a sound basis for excluding evidence of

5  inconsistent or untrue statements by Defendants' witnesses, nor is it a basis for excluding

6  evidence of spoliation or altering of documents by Defendants' witnesses in response to foreign

7  investigations. The willingness of a Defendant's witness to lie—and the lies themselves—are

8  relevant and important evidence of that witness's overall credibility that the jury members should

9  hear and evaluate for themselves.

10   **C.    Evidence of Defendants' Own Testimonial Statements to Regulators Are Neither Unduly Prejudicial Nor Hearsay and Should Be Admitted.**

11   Defendants' argument premised on Rule 403 is misplaced because the Class is not seeking

12  to present evidence of any foreign regulator findings. Therefore, the concern that the Court

13  expressed in, for example, *In re Cathode Ray Tube (CRT) Antitrust Litigation,* No. C-07-5944,

14  2016 WL 7803893 at *2-3 (N.D. Cal. Nov. 15, 2016), would not be present here. A jury will not

15  give "dispositive effect" to a regulator judgment it has never seen. Indeed, the Class agrees with

16  Defendants about the applicability of *Beachy v. Boise Cascade,* 191 F.3d 1010, 1015 (9th Cir.

17  1999), where the Ninth Circuit held that there exists "a much greater risk of unfair prejudice

18  involved in introducing a final agency ruling" as compared with other non-final findings. The

19  agency finding at issue in *Beachy* was "a determination that insufficient facts exist to continue an

20  investigation," *id.,* and there, as here, regulator decisions finding no liability should be excluded,

21  along with decisions finding liability or imposing penalties, on Rule 403 grounds. But the same

22  prejudice will not attach merely from disclosure that an investigation was opened.

23   Similarly, there is no concern that the evidence the Class will seek to present regarding

24  foreign investigations would constitute hearsay. The Class agrees that the ultimate findings,

25  rulings, and penalties imposed by foreign regulators should not be admitted. But decisions

26  excluding judicial factfindings, such as *United States v. Sine,* 493 F.3d 1021, 1036 (9th Cir.

27  2007), emphasize that such findings are not "based on personal knowledge." That an investigation

28  was opened is within the personal knowledge of many competent witnesses who are available to

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1    offer testimony—and who have done so—in this case. Meanwhile, testimonial statements that

2    witnesses made to foreign regulators directly implicate those witnesses' personal knowledge, and

3    moreover constitute non-hearsay party admissions under Rule 801(d)(2). That aspect of

4    Defendants' witnesses' admissions in offering such testimony is unaffected by differing

5    "procedural opportunities" that may have applied to proceedings before foreign regulators. In

6    addition, the formal nature of regulatory investigations and the general expectation that

7    responsible individuals will not lie to legal authorities would create sufficient guarantees of the

8    trustworthiness of such statements under the totality of the circumstances under Rule 807(a)(1).

9         The Court should deny Defendants' motion *in limine* and issue a ruling that permits

10   evidence of foreign investigations other than evidence of a) the results, findings, orders, or

11   conclusions from any foreign investigation of Defendants' conduct; b) the decisions, rulings,

12   statements, or press releases by any foreign government in connection with an investigation into

13   Defendants' conduct; and c) the fact or amount of any fine or other penalty imposed by a foreign

14   government in connection with an investigation into Defendants' conduct.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: January 21, 2020

RESPECTFULLY SUBMITTED

JONES DAY


By: */s/ Eric P. Enson*
        Eric P. Enson

Attorneys for Defendants
HOLY STONE ENTERPRISE CO., LTD.,
MILESTONE GLOBAL TECHNOLOGY,
INC. (D/B/A HOLYSTONE
INTERNATIONAL), VISHAY
POLYTECH CO., LTD

Dated: January 21, 2020


MINTZ LEVIN COHN FERRIS
GLOVSKY AND
POPEO P.C.
Bruce D. Sokler
Robert G. Kidwell
701 Pennsylvania Avenue NW, Suite 900
Washington, DC 20004
bdsokler@mintz.com
RGKidwell@mintz.com

MINTZ LEVIN COHN FERRIS
GLOVSKY AND
POPEO P.C.
Evan S. Nadel
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
enadel@mintz.com

By:  _____*/s/ Bruce D. Sokler*_____


Attorneys for Defendant
AVX CORPORATION

1  Dated: January 21, 2020

2                                    WILMER CUTLER PICKERING HALE
                                     AND
3                                    DORR LLP
                                     Heather S. Nyong'o
4                                    1 Front Street, Suite 3500
                                     San Francisco, California 94111
5                                    Heather.Nyongo@wilmerhale.com

6                                    WILMER CUTLER PICKERING HALE
                                     AND DORR LLP
7                                    Thomas Mueller (*pro hac vice*)
8                                    1875 Pennsylvania Ave NW
                                     Washington, DC 20006
9                                    Thomas.Mueller@wilmerhale.com

10                                   WILMER CUTLER PICKERING HALE
                                     AND DORR LLP
11                                   Chris Johnstone
12                                   950 Page Mill Road
                                     Palo Alto, CA 94304
13                                   Chris.Johnstone@wilmerhale.com

14                                   By:  _____ */s/ Heather S. Nyong'o* _____

15

16                                   Attorneys for Defendants
                                     ELNA CO., LTD. and ELNA AMERICA,
17                                   INC.

18

19

20

21

22

23

24

25

26

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1    Dated: January 21, 2020

2                                        Bonnie Lau
                                         Stephen Kam
3                                        MORRISON & FOERSTER LLP
                                         425 Market Street
4                                        San Francisco, California 94105-2482
                                         Telephone: (415) 268-7000
5                                        Facsimile:  (415) 268-7522

6                                        David Cross
7                                        MORRISON & FOERSTER LLP
                                         2000 Pennsylvania Avenue
8                                        Suite 6000
                                         Washington, D.C. 20006-1888
9                                        Telephone:  (202) 887-1500
                                         Facsimile:   (202) 887-0763
10

11                                       By:  _____ /s/ Stephen Kam _____

12
                                         Attorneys for Defendants
13                                       MATSUO ELECTRIC CO., LTD.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     Dated: January 21, 2020

2                                 PAUL, WEISS, RIFKIND, WHARTON &
                                 GARRISON LLP

3                                 Charles F. Rule
                                Joseph J. Bial

4                                 Eric R. Sega
                                2001 K Street, NW

5                                 Washington, DC 20006-1047
                                Telephone: (202) 223-7300

6                                 Facsimile: (202) 223-7420
                                rrule@paulweiss.com

7                                 jbial@paulweiss.com

8                                 esega@paulweiss.com

9                                 Roberto Finzi

10                                Farrah R. Berse
                               Johan E. Tatoy

11                                1285 Avenue of the Americas
                               New York, NY 10019

12                                Telephone: (212) 445-4621
                               Facsimile: (212) 757-3990

13

14                                KAUFHOLD GASKIN LLP
                               Steven Shea Kaufhold

15                                388 Market St, Suite 1300
                               San Francisco, CA 94111

16                                Telephone: (415) 445-4621
                               Facsimile: (415) 874-1071

17                                skaufhold@kaufholdgaskin.com

18                                By: _____ */s/ Joseph J. Bial* _____

19

20                                Attorneys for Defendants
                               NIPPON CHEMI-CON CORPORATION

21                                and UNITED CHEMI-CON, INC.

22

23

24

25

26

27

28

1   Dated: January 21, 2020

2                                               DENTONS US LLP
                                                Gaspare J. Bono
3                                               Claire Maddox
                                                Leslie Barry
4                                               1900 K Street, NW
                                                Washington, DC 20006
5                                               Email: gap.bono@dentons.com
                                                claire.maddox@dentons.com
6                                               leslie.barry@dentons.com

7                                               DENTONS US LLP
8                                               Andrew S. Azarmi
                                                One Market Plaza, Spear Tower, 24th Floor
9                                               San Francisco, California 94105
                                                Email: andrew.azarmi@dentons.com
10

11                                              By:  _____ */s/ Gaspare J. Bono*_____

12

13                                              Attorneys for Defendants
                                                SHINYEI KAISHA, SHINYEI
14                                              TECHNOLOGY CO., LTD., SHINYEI
                                                CAPACITOR CO., LTD. and SHINYEI
15                                              CORPORATION OF AMERICA, INC.

16  Dated: January 21, 2020

17                                              BONA LAW PC
                                                Jarod M. Bona
18                                              Aaron R. Gott
                                                4275 Executive Square, Suite 200
19                                              La Jolla, CA 92037
                                                Email: jarod.bona@bonalawpc.com
20                                              aaron.gott@bonalawpc.com

21                                              By:  _____ */s/ Jarod M. Bona*_____

22

23                                              Attorneys for Defendants
                                                TAITSU CORPORATION and TAITSU
24                                              AMERICA, INC.

25

26

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No. 17-md-02801-JD

1

## <u>ATTESTATION</u>

2      I, Eric P. Enson, attest that all other signatures listed, and on whose behalf the filing is

3  submitted, concur in the filing's contents and have authorized the filing.

4                                          */s/ Eric P. Enson*
                                          Eric P. Enson
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Omnibus Motions In Limine
And DPPs' Responses Thereto
Master File No.17-md-02801-JD