Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Joshua P. Davis (State Bar No. 193254)
Anupama K. Reddy (State Bar No. 324873)
Gwendolyn R. Giblin (State Bar No. 181973)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:    jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com
          jdallal@saverilawfirm.com
          jdavis@saverilawfirm.com
          areddy@saverilawfirm.com
          ggiblin@saverilawfirm.com
          cyoung@saverilawfirm.com

*Lead Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 17-md-02801-JD<br>Case No. 14-cv-03264-JD |
| THIS DOCUMENT RELATES TO:<br>THE DIRECT PURCHASER CLASS ACTIONS | **DIRECT PURCHASER CLASS'S OMNIBUS NOTICE OF MOTION AND MOTIONS IN LIMINE WITH DEFENDANTS' OMNIBUS RESPONSES**<br><br>Date:          January 23, 2020<br>Time:         1:30 p.m.<br>Courtroom:  11, 19th Floor<br>Judge:        Honorable James Donato<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

Page(s)

MOTION IN LIMINE NO. 1 ...................................................................................................1

RESPONSE TO DPP MOTION NO. 1 ................................................................................... 2

MOTION IN LIMINE NO. 3 .................................................................................................10

RESPONSE TO DPP MOTION NO. 3 .................................................................................. 11

MOTION IN LIMINE NO. 4 .................................................................................................15

RESPONSE TO DPP MOTION NO. 4 ...................................................................................16

MOTION IN LIMINE NO. 5 .................................................................................................17

RESPONSE TO DPP MOTION NO. 5 ...................................................................................18

MOTION IN LIMINE NO. 6 ................................................................................................. 22

RESPONSE TO DPP MOTION NO. 6 .................................................................................. 24

MOTION IN LIMINE NO. 7 ................................................................................................. 27

RESPONSE TO DPP MOTION NO. 7 .................................................................................. 29

MOTION IN LIMINE NO. 8 .................................................................................................33

RESPONSE TO DPP MOTION NO. 8 ...................................................................................35

MOTION IN LIMINE NO. 9 ................................................................................................. 39

RESPONSE TO DPP MOTION NO. 9 .................................................................................. 42

MOTION IN LIMINE NO. 10 ............................................................................................... 46

RESPONSE TO DPP MOTION NO. 10 ................................................................................. 49

MOTION IN LIMINE NO. 11 ............................................................................................... 52

RESPONSE TO DPP MOTION NO. 11 .................................................................................53

MOTION IN LIMINE NO. 12 ...............................................................................................57

RESPONSE TO DPP MOTION NO. 12 ................................................................................. 58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l. Longshoreman's Union Local No. 10*, 966 F.2d 443 (9th Cir. 1992) ............................... 22

*In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1493 (D. Colo. 1989)............................................................................. 33

*In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283 (D. Minn. 1996) ............................... 17, 19

*Am. Column & Lumber, Co. v. United States*, 257 U.S. 377 (1921) .....................................28, 31

*Am. Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321 (3d Cir. 1985)........................52, 55

*Am. Tobacco Co. v. United States*, 328 U.S. 781 (1946) ............................................................ 28

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-01846, 2012 WL 3536797 (N.D. Cal. Aug. 13, 2012) ............................................................................................... 37

*In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) ............................................................ 8

*In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007) ............................................ 48

*In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. 05-01699, 2008 WL 8140112 (N.D. Cal. Apr. 30, 2008) ............................................................ 48

*Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988)........................................................52, 55

*Bowerman v. Field Asset Servs., Inc.*, No. 13-00057, 2018 WL 2293076 (N.D. Cal. May 18, 2018) ................................................................................................ 4

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006) .......................................... 4

*Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991) ............................................................................15

*California v. ARC Am. Corp.*, 490 U.S. 93 (1989) ...................................................................... 7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-05944, 2016 WL 5871243 (N.D. Cal. Oct. 7, 2016)................................................................................ 7, 8, 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-5944, 2016 WL 6216664 (N.D. Cal. Oct. 25, 2016)................................................................................ 17, 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2016 WL 7800819 (N.D. Cal. Nov. 15, 2016)................................................................................ 6, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 166396 (N.D. Cal. Oct. 25, 2016) ........................................................ 19, 20

*Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335 (1983) ............................................ 35

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ....................................................................... 30, 32

*Coach, Inc. v. Visitors Flea Mkt., LLC*, No. 11-1905, 2014 WL 2612036 (M.D. Fla. June 11, 2014) .................................................................................................................................... 4

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432 (9th Cir. 1990) .................................................................................................................. 29, 31

*Costco Wholesale Corp.* v. *AU Optronics Corp.*, No. 13-1207, 2014 WL 4674390 (W.D. Wash. Sept. 17, 2014) .................................................................................... 8, 10, 11, 13

*Cuc Dang v. Sutte's Place, Inc.*, No. 10-02181, 2012 WL 6203203 (N.D. Cal. Dec. 12, 2012) ........................................................................................................................................ 4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981 (9th Cir. 2008) ...................................................................................................................................... 58

*In re Exxon Valdez*, 229 F.3d 790 (9th Cir. 2000)........................................................................... 15

*F. Hoffmann-LaRoche Ltd. v. Empagran, S.A.*, 542 U.S. 155 (2004) ........................................... 58

*Finjan, Inc.* v. *Blue Coat Sys., Inc.*, No. 13-03999, 2015 WL 4129193 (N.D. Cal. Dec. 21, 2018) ........................................................................................................................................ 8

*Finjan, Inc. v. Sophos, Inc.*, No. 14-01197, 2016 WL 2988834 (N.D. Cal. May 24, 2016) ........................ 3

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................... 29

*Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130 (N.D.N.Y. 2010)........................................ 29

*In re Folding Carton Antitrust Litig.*, 88 F.R.D. 210 (E.D. Ill. 1980) ............................................. 9

*Ford Motor Credit Co. v. Hairston*, No. 06-0004, 2006 WL 2850615 (W.D. Va. Oct. 2, 2006) .................................................................................................................................... 18

*Garcia–Martinez v. City & Cty. of Denver*, 392 F.3d 1187 (10th Cir. 2004)........................................ 34, 36

*Glass v. Phila. Elec. Co.*, 34 F.3d 188 (3d Cir. 1994)...................................................................... 47

*Goldstein v. City of Long Beach*, 481 F.3d 1170 (9th Cir. 2007)................................................. 52, 55

*In re Google AdWords Litig.*, No. 08-03369, 2010 WL 4942516 (N.D. Cal. Nov. 12, 2010)....................... 1

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838 (S.D.N.Y. 1991) ........................ 34, 35, 36

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ............................................ 41, 44

*Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ........................................... 35

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) ................................................. 6, 7, 8

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993) ........................................................................ 58

*Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997) ............................................................................... 41, 44

*Henderson* v. *George Washington Univ.*, 449 F.3d 127 (D.C. Cir. 2006) ................................................... 9

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) ................................... 29, 31

*Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322 (9th Cir. 1995) ...................................... 18

*In re Homestore.com, Inc.*, No. 01-11115, 2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ........................... 11, 13

*Hudspeth v. Comm'r of Internal Revenue Serv.*, 914 F.2d 1207 (9th Cir. 1990) ................................ 10, 13

*Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977) ....................................................................................... 6, 8

*Int'l Union (UAW) v. N.L.R.B.,* 459 F.2d 1329 (D.C. Cir. 1972) ............................................................ 34, 35

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939) ............................................................... 34

*J.W. v. City of Oxnard,* No. 07-06191, 2008 WL 4810298 (C.D. Cal. Oct. 27, 2008) ........................ 52, 55

*King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147 (10th Cir. 1981) ................................... 29

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ..................................................................................... 19

*Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*, 593 F.3d 95 (1st Cir. 2010) ......................................................................................................................................... 37

*In re Lidoderm Antitrust Litig.*, No. 14-02521, 2018 WL 7814761 (N.D. Cal. Feb. 7, 2018) ............... 6, 15

*In re Lithium Ion Batteries Antitrust Litig.*, 2017 U.S. Dist. LEXIS 57340 (N.D. Ca. Apr. 12, 2017) ......................................................................................................................................... 24

*Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785 (2d Cir. 1983) ...................................................... 18

*In re Maggi*, 57 B.R. 446 (Bankr. D. Or. 1985) ...................................................................................... 41

*McHugh v. United Serv. Auto. Ass'n,* 164 F.3d 451 (9th Cir. 1999) ........................................................ 22

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) ....................................... 18, 19

*Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431 (N.D. Cal. 2008) ................................................................. 6

*Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971 (9th Cir. 2009) ............................................... 11, 13

*Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) ............................................................. 58

*In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016) ............................... 47

*Monroe v. Griffin*, No. 14-00795, 2015 WL 5258115 (N.D. Cal. Sept. 9, 2015) ........................... 48

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ...................................................... 28

*In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015) ................................. 30

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) ........................... 22

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ..................................................................... 41, 44

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. 09-3329, 2014 WL 12795479 (N.D. Cal. May 30, 2014) ......................................................................................................................... 4

*Pa. Tr. Co. v. Dorel Juvenile Grp., Inc.*, 851 F. Supp. 2d 831 (E.D. Pa. 2011) ............................ 47

*Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-01414, 2017 WL 8069609 (N.D. Cal. June 7, 2017) ....................................................................................................................................... 36

*Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135 (N.D. Iowa 2003) .............. 10, 11, 13

*Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464 (1962) ......................................................... 33

*In re Polypropoylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348 (N.D. Ga. 2000) ................................. 24

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001) ........................................... 40, 43

*In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp. 3d 412 (E.D. Pa. 2015) ........................... 22

*Procongps, Inc. v. Skypatrol, LLC*, No. 11-3975, 2013 WL 4551828 (N.D. Cal. Aug. 27, 2013) ......................................................................................................................................... 3

*Re/Max Int'l., Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999) ....................................... 22

*Sanderson v. Winner*, 507 F.2d 477 (10th Cir. 1974) ................................................................. 2

*Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500 (N.D. Ill. 2011) ............................................ 4

*In re Seroquel Prod. Liab. Litig.*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009) ........................... 47, 48

*Singh v. Holder*, 638 F.3d 1264 (9th Cir. 2011) ..................................................................... 34

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................................................................................. 28, 29

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07–01819, 2010 WL 10086747 (N.D. Cal. Dec. 16, 2010) ................................................................................. *passim*

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-01819, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) ................................................................. 54, 55, 59

*In re Tableware Antitrust Litig.*, No. 04-3514, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007)....................15

*In re Tenet Healthcare Corp. Sec. Litig.*, No. 02-8462, 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007) ........................................................................................................................... 10, 11, 13

*Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684 (9th Cir. 2001)...................................... 46

*In re TFT-LCD Antitrust Litig.*, No. 07-1827, 2012 U.S. Dist. LEXIS 172805 (N.D. Cal. Nov. 30, 2012)............................................................................................................... 19, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2012 WL 12300696 (N.D. Cal. May 4, 2012) ...................................................................................................................12, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2012 WL 6000154 (N.D. Cal. Nov. 30, 2012) ....................................................................................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. May 4, 2012), ECF No. 5597 ..............................................................................................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-4572, 2013 WL 10936486 (N.D. Cal. July 11, 2013) .........................................................................................................................15

*Thomas v. Cook Cty. Sheriff's Dept.,* 604 F.3d 293 (7th Cir. 2009) ........................................ 33

*In re Titanium Dioxide Antitrust Litig.*, 2013 U.S. Dist. LEXIS 62394 (D. Md. May 1, 2013) .........................................................................................................................24, 25, 26

*In re Titanium Dioxide Antitrust Litig.*, No. 10-0318, 2013 WL 1855980 (D. Md. May 1, 2013) ................................................................................................................................... 22

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001)........................................................28, 29, 31

*Toomey v. Nextel Communs., Inc.,* 2004 U.S. Dist. LEXIS 30793 (N.D. Cal. Sept. 23, 2004) ................................................................................................................................... 24

*U. S. Info. Sys. v. Int'l Bhd. of Elec. Workers Local Union No. 3,* 313 F. Supp. 2d 213 (S.D.N.Y. 2004) ..................................................................................................................... 22

*United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992) ..................... 27

*United States v. Am. Linseed Oil Co.*, 262 U.S. 371 (1923) ............................................... 28, 29

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ........................................................ 22

*United States v. Broce*, 488 U.S. 563 (1989) ...................................................................... 39, 43

*United States v. Container Corp. of Am.*, 393 U.S. 333 (1969)............................................28, 31

DIRECT PURCHASER CLASS'S OMNIBUS NOTICE OF MOTION AND MOTIONS IN LIMINE WITH
DEFENDANTS' OMNIBUS RESPONSES

*United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992) ................................................................. 1

*United States v. Hui Hsiung,* 778 F.3d 738 (9th Cir. 2015) ..............................................57, 59

*United States v. Joyce*, 895 F.3d 673 (9th Cir. 2018) ............................................................. 27

*United States v. Kahan & Lessin Co.*, 695 F.2d 1122 (9th Cir. 1982) ...................................... 27

*United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993) ........................................................... 38

*United States v. Lawrence*, 189 F.3d 838 (9th Cir. 1999) ......................................................... 1

*United States v. Marrero-Ortiz*, 160 F.3d 768 (1st Cir. 1998) ...........................................52, 55

*United States v. Morrison*, 113 F.3d 1020 (9th Cir. 1997) .................................................39, 43

*United States v. Ramirez*, 714 F.3d 1134 (9th Cir. 2012) ....................................................... 37

*United States v. Real Prop. Located at Section 18*, 976 F.2d 515 (9th Cir. 1992) ...............40, 44

*United States v. Schoneberg*, 396 F.3d 1036 (9th Cir. 2005)................................................... 12

*United States v. Serta Assocs., Inc.*, 296 F. Supp. 1121 (N.D. Ill. 1968)................................. 29

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940)............................................. 27

*United States v. Tisor*, 96 F.3d 370 (9th Cir. 1996) ............................................................... 37

*United States* v. *United States Gypsum Co.*, 438 U.S. 422 (1978) ......................................... 30

*In re Urethane Antitrust Litig.*, 2012 U.S. Dist. LEXIS 181506 (D. Kan. Dec. 21, 2012)...........24, 25

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014)............................................. 26

*In re Urethane Antitrust Litig.*, No. 04-1616, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) .......... 22

*VIIV Healthcare Co. v. Mylan Inc.,* No. 12-1065, 2014 WL 2195082 (D. Del. May 23, 2014) ...................................................................................................................... 33

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2nd Cir. 2001) ......................... 19

*In re Vitamin C Antitrust Litig.*, 904 F. Supp. 2d 310 (E.D.N.Y. 2012) .................................. 59

*Westman Comm'n Co. v. Hobart Corp.*, 541 F. Supp. 307 (D. Colo. 1982) ..........................17, 19

*Williams v. Cambridge Mutual Fire Ins. Co.,* 230 F.2d 293 (5th Cir. 1956)..........................52, 55

**Federal Statutes**

Clayton Act § 4 ..................................................................................................................... 6

Foreign Trade Antitrust Improvements Act of 1982 .............................................................57, 58

Sherman Act ................................................................................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 26 ........................................................................ 2, 3

Federal Rule of Civil Procedure 32 ......................................................................33, 34

Federal Rule of Civil Procedure 37(c)(1) ................................................................. 3

Federal Rule of Civil Procedure 69 ........................................................................... 2

Federal Rule of Civil Procedure 403 ...................................................................... 55

Federal Rule of Criminal Procedure 11(b)(3) ........................................................ 39

Federal Rule of Evidence 23 .................................................................................... 1

Federal Rule of Evidence 32 .......................................................................... *passim*

Federal Rule of Evidence 401 .......................................................... 6, 46, 47, 52

Federal Rule of Evidence 402 ........................................................................ *passim*

Federal Rule of Evidence 403 ........................................................................ *passim*

Federal Rule of Evidence 404(b) ............................................................................ 50

Federal Rule of Evidence 408 ....................................................................10, 11, 12

Federal Rule of Evidence 611(a) ............................................................................ 34

Federal Rule of Evidence 702 ................................................................................ 24

Federal Rule of Evidence 802 ................................................................................51

**Other Authorities**

ABA Section on Antitrust Law, Model Jury Instructions in Civil Antitrust Cases ........................... 19, 31

**MOTION IN LIMINE NO. 1:**[1]

**MOTION TO EXCLUDE REFERENCE TO REPRESENTATION AGREEMENTS BETWEEN NAMED PLAINTIFFS AND THEIR COUNSEL**

The Class submits this motion *in limine* to exclude evidence of or reference to the representation agreements between any of the Named Plaintiffs and their counsel.

The Court should exclude Defendants from presenting evidence or argument directly or indirectly referring to any representation agreement or arrangement between Named Plaintiffs and Class Counsel because the evidence is irrelevant to any issue the jury will have to decide. *See In re Google AdWords Litig.*, No. 08-03369, 2010 WL 4942516, at *3-5 (N.D. Cal. Nov. 12, 2010) (holding that "documents concerning the payment of any fees or costs or the funding of [the class] action" were irrelevant). This evidence is irrelevant because only the Court, after notice to the Class and opportunity to comment, can decide how Class Counsel shall be compensated. Even if such evidence could be construed as relevant (which it is not), whatever probative value it might have is substantially outweighed by the danger of unfair prejudice to the plaintiffs. Evidence concerning the Named Plaintiffs' representation arrangements with their lawyers, or that lawyers are advancing the costs of litigation, for example, would likely "infec[t] the jury's ability to make an unbiased assessment" of relevant evidence, *United States v. Lawrence*, 189 F.3d 838, 843 (9th Cir. 1999), and could arouse irrational prejudices, causing them to draw "perfectly logical—though mistaken—inferences," *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Because any representation agreements are superseded by the requirements of Federal Rule of Evidence 23, they have no relevance, but they do present a clear risk of confusion and prejudice.

Other courts have granted similar motions in similar cases. *See* Final Pretrial Scheduling Order, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. May 4, 2012), ECF No. 5597 (granting motion *in limine* to exclude reference to plaintiffs' relationships, including representation agreements, with class counsel); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07–

---

[1] The Direct Purchaser Class (the "Class"), at the direction of the Court, did not include a motion *in limine* to exclude undisclosed evidence. Transcript of Proceedings at 33-34, *In re Capacitors Antitrust Litig.,* No. 17-02801 (N.D. Cal. Jan. 6, 2020), ECF No. 1061.

01819, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010) (excluding reference to or evidence of representation arrangements). *See also Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974) (holding that the appropriate time for inquiry into fee arrangements is after judgment under Rule 69 of the Federal Rules of Civil Procedure).

For the reasons stated above, the Class respectfully requests that this Court grant their motion *in limine* to exclude evidence of or reference to representation agreements between any of the Named Plaintiffs and their counsel.

## RESPONSE TO DPP MOTION NO. 1, FN 1

Defendants do not oppose Plaintiffs' Motion *in Limine* No. 1 to exclude references to Plaintiffs' representation agreements with their counsel (unless Plaintiffs open the door to same). However, Defendants oppose Plaintiffs' footnote 1 that purports to exclude unidentified "undisclosed evidence."[2] Through the meet and confer process, Defendants understand that Plaintiffs seek to exclude several defense witnesses based on allegedly deficient or untimely disclosure as trial witnesses. Declaration of Bonnie Lau, ¶¶ 2-3. Exclusion should be denied.

**A.    There Is No Basis to Exclude Defendants' Witnesses From Testifying Live at Trial.**

First, Plaintiffs contend that witnesses who were not listed in Defendants' February 2015 initial disclosures should be barred from testifying at trial, even though these witnesses were disclosed early in discovery process, they were deposed, and they were timely disclosed on Defendants' trial witness list in accordance with Rule 26(a)(3)(B), which governs the timing of pretrial disclosures. There is no requirement that trial witnesses be identified in initial disclosures.[3] Rather, Rule 26(e) only requires a party to "supplement or correct" its initial disclosures if "the additional or corrective information has not

---

[2] Plaintiffs rely on an exchange with the Court involving a narrow production dispute. The Court stated that "any document not produced or disclosed cannot be used unless there's a very good explanation for why it's coming up now"; directed Plaintiffs and ELNA to meet and confer on the production dispute; and permitted Defendants to produce a reasonable number of alternative translations. Dkt. 1601 at 33:25-34:3, 35:25-36:2, 41:11-23. The Court did not address, nor did DPPs make any request regarding, the exclusion of trial witnesses. ELNA has since confirmed that it previously produced six of the nine disputed product catalogues to Plaintiffs prior to the close of fact discovery, and agreed not to seek to introduce the remaining three catalogs at trial.

[3] Notably, two named Plaintiffs appear on their trial witness list but not their initial disclosures.

otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *Procongps, Inc. v. Skypatrol, LLC*, No. C 11-3975 SI, 2013 WL 4551828, at *1 (N.D. Cal. Aug. 27, 2013) (holding that defendant sufficiently disclosed identity of witness through deposition testimony describing witness's identity). Specifically, there is no basis to exclude Shinyei witness Yoshiaki Danno, who was disclosed to DPPs in October 2015 when he signed Shinyei's FTAIA declaration, and was subsequently deposed twice by DPPs, including for two days as a Rule 30(b)(6) witness.

Second, Plaintiffs seek to bar two UCC witnesses, Derrick Fitzpatrick and Mitch Weaver, from providing testimony that Tony Olita, who passed away, otherwise would have provided. Mr. Olita, a senior UCC executive who led UCC's sales department for decades, was disclosed and deposed by DPPs. Mr. Olita was knowledgeable about the independence of UCC's sales from its parent company, NCC, and UCC's (North Carolina) Lansing facility, one of the few capacitor manufacturing facilities in the United States. In light of Mr. Olita's central and longstanding role at UCC, no single witness at UCC could fill his shoes, and Mr. Fitzpatrick and Mr. Weaver were therefore identified as replacement witnesses for UCC. Rule 37(c)(1) provides for the exclusion of evidence only when (i) "a party fails to provide information or identify a witness *as required by Rule 26(a) or (e)*" and (ii) the failure was not "*substantially justified or [] harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). Neither condition is met here. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 2988834, at *17 (N.D. Cal. May 24, 2016) (denying request to exclude trial testimony from late-disclosed where there was "no dispute that [the witness's] tardy disclosure was triggered by [a previously identified witness's] stroke"); *Procongps, Inc.*, 2013 WL 4551828, at *1 (denying plaintiff's request to exclude testimony from witnesses disclosed after the close of fact discovery because "plaintiff [would] not be prejudiced" and "defendants' late disclosure of these individuals [was] substantially justified"). In light of Mr. Olita's unfortunate, unexpected, and premature passing, UCC intends to call Mr. Fitzpatrick and Mr. Weaver to address UCC's sales functions and operations at the Lansing facility.[4]

Third, Plaintiffs seek to preclude Defendants from presenting 30(b)(6) testimony at trial,

---

[4] Counsel for UCC have also offered to make Mr. Fitzpatrick and Mr. Weaver available for depositions before trial, but have not yet heard back from DPPs.

including Matsuo's substitute Rule 30(b)(6) witness Tomohiko Miyata.[5]  The Court should allow live testimony from Defendants' corporate representatives at trial.  It is well established in the Ninth Circuit that corporate representatives may testify live at trial.  *See, e.g.*, *Bowerman v. Field Asset Servs., Inc.*, No. 3:13-CV-00057-WHO, 2018 WL 2293076, at *3 (N.D. Cal. May 18, 2018) (corporate designee testified at trial).[6]  And the advantages of live testimony from a Rule 30(b)(6) witness are significant.  As this Court recently confirmed, it is important to jurors to see and hear from the parties' corporate representatives at trial.  *See* Dkt. 1601 at 51:14-52:3.  Rule 30(b)(6) testimony also promotes judicial economy by eliminating the need for testimony from multiple employees, many of whom reside overseas, to establish basic facts about the corporation.  That is particularly true here, where the relevant time period began 18 years ago, and many of the individuals with personal knowledge have retired, passed away or left the company.  *See Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500 (N.D. Ill. 2011) (holding that preclusion of Rule 30(b)(6) testimony at trial would leave plaintiff "with the daunting task of identifying which individual employees and former employees will have to be called at trial to establish the same facts [established at the Rule 30(b)(6) deposition]").[7]  Defendants likewise should be permitted to designate the deposition testimony of Rule 30(b)(6) witnesses of Defendants that have settled.

---

[5]  Matsuo previously designated Hiroyuki Koga as its Rule 30(b)(6) corporate representative, and he was deposed twice as a 30(b)(6) witness and once in his individual capacity.  Mr. Koga recently left Matsuo's employ and is unavailable to attend the trial in this matter.  Mr. Miyata succeeded Mr. Koga as Matsuo's Sales Division manager, Director and Executive Officer.  *See Coach, Inc. v. Visitors Flea Mkt., LLC*, No. 6:11-CV-1905-ORL-22, 2014 WL 2612036, at *2 (M.D. Fla. June 11, 2014) ("[A] corporation should not be prohibited from calling a designated representative as a witness simply because the person it thought was going to testify leaves its employ.").

[6]  *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 09-3329 CW, 2014 WL 12795479, at *2 (N.D. Cal. May 30, 2014) (corporate designee testified at trial); *Cuc Dang v. Sutte's Place, Inc.*, No. C-10-02181 RMW, 2012 WL 6203203, at *1 (N.D. Cal. Dec. 12, 2012) (same); *see also Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434–435 (5th Cir. 2006) (holding that a Rule 30(b)(6) witness is obligated to testify at trial as to matters "within the corporate knowledge" to which he testified at his Rule 30(b)(6) deposition).

[7]  DPPs have suggested they might move to preclude testimony from Dr. Jerry Hausman, who has been noticed as a potential defense witness.  Dr. Hausman's testimony is being offered for the limited purpose of rebutting new testimony offered by Dr. McClave during the Concurrent Expert Witness proceeding last September.  The Court should deny any request to preclude Dr. Hausman's testimony, or, at a minimum, request full briefing on the issue so as to preserve Defendants' right to rebut newly-offered testimony.

Lastly, apart from the few documents that ELNA has already addressed, Plaintiffs have identified no specific documents that they seek to exclude as "undisclosed". *See*, *supra*, n.1.  Thus, there is no basis for the Court to exclude any defense exhibits as "undisclosed."  Any new arguments by Plaintiffs on reply obviously would be improper and should be rejected.

## CONCLUSION

Defendants do not oppose Plaintiffs' motion to exclude references to their representation agreements with their counsel (unless they open the door).  However, Defendants do oppose Plaintiffs' vague and improper footnote request to exclude "undisclosed evidence," including trial testimony of certain defense witnesses.

**MOTION IN LIMINE NO. 2:**

**MOTION TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING THE CLASS'S ABILITY, IF ANY, TO PASS ON DEFENDANTS' UNLAWFUL OVERCHARGES AND SUGGESTIONS OF MULTIPLE LIABILITY**

The Class submits this motion *in limine* to exclude evidence and argument regarding the class's ability, if any, to pass on defendants' unlawful overcharges and suggestions of multiple liability preclude reference to, or evidence regarding, the representation agreements between any of the Named Plaintiffs and their counsel.

### A.  Evidence of the Class's ability to pass on Defendants' unlawful overcharges should be excluded

Well-settled precedent precludes Defendants from asserting that the Class was not injured or suffered reduced damages because they "passed on" overcharges to their customers. A "direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the full amount of the overcharge paid by it," and "a pass-on theory may not be used defensively by an antitrust violator against a direct purchaser plaintiff." *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 724-26 (1977), reiterating *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968); *see also Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008) (whether buyer passed on defendant's overcharges "has no bearing on the issue of whether the buyer has suffered an injury;" buyer's damages are measured by overcharge, not lost profits). Accordingly, pass-on evidence is irrelevant under Federal Rule of Evidence 401 and inadmissible under Federal Rule of Evidence 402. Admission of such evidence for other purposes would unduly prejudice the Class and confuse and mislead the jury. *Cf.* Fed. R. Evid. 403. Therefore, the Court should preclude Defendants, their attorneys, and their witnesses from making any reference to the passing-on of overcharges. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-02521, 2018 WL 7814761, at *3 (N.D. Cal. Feb. 7, 2018) (barring introduction of evidence to show that "DPPs pass-on damages or that DPP damages should be reduced"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2016 WL 7800819, at *8-9 (N.D. Cal. Nov. 15, 2016) (excluding evidence and argument regarding downstream pass-on, including the effect of defendants' overcharges on plaintiffs' businesses, as irrelevant and unduly prejudicial).

**B.  Evidence of other actions in this MDL is irrelevant and unduly prejudicial**

Similarly, the Court should preclude Defendants from suggesting that because indirect purchasers and entities that opted out of the Class also are suing Defendants, Defendants are facing exposure to multiple damages for the same overcharges. Evidence about other suits will not assist the jury in resolving *the Class's* claims: The Class is entitled to recover its full damages, regardless of any remedies afforded to indirect purchasers under state law or actions brought by opt-outs. *See, e.g.*, *California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) (there is no "federal policy against States imposing liability *in addition to* that imposed by federal law") (emphasis added). But evidence and argument about other lawsuits are likely to confuse the jury and may cause it to improperly adjust the Class's damages to account for Defendants' exposure in other suits. Therefore, evidence about those suits should be excluded. *See, e.g.*, *Static Random Access Memory (SRAM)*, 2010 WL 10086747, at *2-3 (excluding evidence of other cases and of class members who opted out or settled separately).

For the foregoing reasons, the Class respectfully requests this Court to grant their motion *in limine* to exclude evidence and argument regarding the class's ability, if any, to pass on defendants' unlawful overcharges and suggestions of multiple liability preclude reference to, or evidence regarding, the representation agreements between any of the Named Plaintiffs and their counsel.

**RESPONSE TO DPP MOTION NO. 2**

Both portions of DPPs' Motion *in Limine* No. 2 should be denied as discussed below.

**I.    ARGUMENT**

**A.    DPPs' Motion Regarding "Pass On" Evidence Should Be Denied.**

Defendants do not dispute that *Hanover Shoe* v. *United Shoe Machinery Corp.* precludes a defendant from arguing that a plaintiff's damages should be reduced because the plaintiff "passed on" some or all of the alleged overcharge.  392 U.S. 481, 494 (1968).  But Defendants are not pursuing a "pass on" defense at trial.  To the extent DPPs' motion seeks to go further and preclude certain unspecified evidence before the Court can see the context in which that evidence is offered, the motion is hopelessly overbroad and should be denied for that reason alone, particularly if that would encompass evidence that is directly central to the defense.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-05944 JST, 2016 WL 5871243, at *7 (N.D. Cal. Oct. 7, 2016) (quoting *Colton Crane Co.* v. *Terex Cranes*

*Wilmington, Inc.*, No. CV 08-8525, 1010 WL 2035800, at *1 (C.D. Cal. May 19, 2010)) ("Motions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible."). While Defendants should not have to guess what evidence DPPs are seeking to exclude, non-exhaustive examples of evidence that *might* be encompassed within DPPs' motion show why the motion should be denied:

Defendants are entitled to elicit evidence describing background about each plaintiff, including what each plaintiff company does and where it sits in the distribution chain. *See Finjan, Inc.* v. *Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *2 (N.D. Cal. Dec. 21, 2018) (confirming right to provide relevant, factual background information about the parties). Furthermore, the Seventh Amendment requires that Defendants have a "meaningful opportunity" to contest whether any plaintiff would have been injured. *See, e.g.*, *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018). To do so, Defendants are entitled to argue that, due to particular characteristics of a plaintiff, Defendants did not or could not have overcharged that plaintiff at all. Such evidence does not contradict *Hanover Shoe* or *Illinois Brick* v. *Illinois*, 431 U.S. 720, 724–26 (1977). As the *Cathode Ray Tube* decision cited by DPPs states: "'*[w]hether* . . . [the] DAPs paid an overcharge" to [relevant] manufacturers *is* an issue in the case." No. C-07-5944 JST, 2016 WL 7800819, at *9 (N.D. Cal. Nov. 15, 2016) (emphasis and some alterations in original).

Additionally, should the Court grant DPPs' motion, the ruling must apply to all parties. Plaintiffs cannot be permitted to suggest that recovery would allow them to "pass on" that recovery to others without allowing Defendants to make similar arguments. *See Costco Wholesale Corp.* v. *AU Optronics Corp.*, No. C13-1207RAJ, 2014 WL 4674390, at *3 (W.D. Wash. Sept. 17, 2014) (prohibiting plaintiff "from offering evidence or argument that its customers will benefit from any damages the jury awards").

**B.      Defendants Must Be Permitted to Introduce Evidence that Relates to Other Litigation in this Matter.**

This portion of DPPs' motion is also overbroad and vague. Defendants have no intention of arguing that they are facing duplicative exposure. But if DPPs are suggesting that Defendants may never mention the fact of other litigations or use any evidence from those other litigations, that goes too

far: such evidence should not be excluded on a categorical basis.[8]  *See In re Folding Carton Antitrust Litig.*, 88 F.R.D. 210, 210 (E.D. Ill. 1980) (permitting evidence from class case as relevant for opt-outs' case); *see also Colton Crane Co.*, 2010 WL 2035800, at *1.  Indeed, even in the case that DPPs cite, evidence of cooperation clauses in settlement agreements of related cases was considered relevant and permissible for use in witness impeachment.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 10086747, at *3 (N.D. Cal. Dec. 16, 2010).  Here too, the Court should permit Defendants to use evidence arising from other actions in this litigation as is needed to defend their case and impeach witnesses.[9]

## CONCLUSION

DPPs' Motion in Limine No. 2 should be denied or substantially limited.

---

[8] For instance, deposition testimony from the DAP litigations are relevant to this case.  *See* Ex. 1 to the Declaration of Johan E. Tatoy, dated January 16, 2020 ("Ex."), Deposition of ███████████████ 40:21–41:8 (███████████████████████████████████████

███████████████); Ex. 2, Deposition of ███████████████████ 82:3–84:5 (█████████

██████████████████████████); *id.* at 84:10–85:24 (█████████████).

[9] Should the Court grant DPPs' Motion, the ruling should apply equally and Plaintiffs should be precluded from using the evidence offensively.  *See Henderson* v. *George Washington Univ.*, 449 F.3d 127, 140–41 (D.C. Cir. 2006).

Master File No. 17-md-02801-JD
Case No. 14-cv-03264-JD

DIRECT PURCHASER CLASS'S OMNIBUS NOTICE OF MOTION AND MOTIONS IN LIMINE WITH DEFENDANTS' OMNIBUS RESPONSES

**MOTION IN LIMINE NO. 3:**

**MOTION TO EXCLUDE REFERENCE TO THE TERMS AND AMOUNTS OF PRIOR SETTLEMENTS**

The Class submits this motion *in limine* the Court to exclude reference to the terms and amounts of prior settlements.

### A.  The Terms and Amounts of Prior Settlements Are Irrelevant under Rule 402.

The terms and amounts of the prior settlements are irrelevant and therefore inadmissible under Federal Rule of Evidence 402. The prior settlements are irrelevant "because numerous factors, apart from the value of the claim, go into the determination to settle, so that the [settlement] actually says little or nothing about the value of [the plaintiffs'] claim." *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144 (N.D. Iowa 2003); *see Hudspeth v. Comm'r of Internal Revenue Serv.*, 914 F.2d 1207, 1213 (9th Cir. 1990) (noting "the [settlement] offer may be motivated by desire for peace rather than from any concession of weakness of position." (citation omitted)).

### B.  The Terms and Amounts of the Prior Settlements Are Inadmissible Under Rule 408.

The terms and amounts of the prior settlements are inadmissible under Federal Rule of Evidence 408, which prohibits introduction of evidence of a party "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" for the purpose of proving or disproving the validity or amount of a claim. Fed. R. Evid. 408(a)(1). This rule applies even if the party seeking to introduce the settlement was not a party to it. *See Hudspeth*, 914 F.2d at 1213.

Federal Rule of Evidence 408 prevents litigants from wasting trial time to conduct an irrelevant side-show that would invite the jury to draw improper inferences. For example, a jury might conclude that the settling defendants were the parties primarily responsible for plaintiffs' injury. *See In re Tenet Healthcare Corp. Sec. Litig.*, No. 02-8462, 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007). A jury also might give weight to the amounts that the settling defendants paid in determining how much Defendants should pay. *See Costco Wholesale Corp. v. AU Optronics Corp.*, No. 13-1207, 2014 WL 4674390, at *5 (W.D. Wash. Sept. 17, 2014). None of these inferences would be proper. In sum, courts

DIRECT PURCHASER CLASS'S OMNIBUS NOTICE OF MOTION AND MOTIONS IN LIMINE WITH DEFENDANTS' OMNIBUS RESPONSES

have repeatedly held that Defendants may not use the fact, terms or amounts of any prior settlement to dispute the validity of the Class's claims.[10]

### C. Reference to the Terms and Amounts of Prior Settlements Would Be Unfairly Prejudicial, Confuse the Jury, and Cause Undue Delay under Rule 403.

The Court should also prohibit reference to the terms and amounts of prior settlements under Federal Rule of Evidence 403 (providing evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). *See Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 980 (9th Cir. 2009) (applying Rule 403 to evidence regarding settlement). Here, reference to the terms and amounts of settlements are irrelevant as explained above and would unfairly prejudice Plaintiffs because it could lead the jury to improperly adjust its analysis to account for irrelevant facts. *See Pioneer Hi-Bred*, 219 F.R.D. at 144-45. Such a detour would waste time and resources, as well as confuse a jury already working on a complex and lengthy trial. *See In re Homestore.com, Inc.*, No. 01-11115, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011).

For the foregoing reasons, the Class respectfully requests this Court to grant their motion *in limine* to exclude reference to the terms and amounts of prior settlements.

**RESPONSE TO DPP MOTION NO. 3**

Defendants will stipulate that the ***amounts*** of any settlements with DPPs be excluded from evidence, but oppose DPPs' motion to exclude the ***fact and terms*** of the settlements (an in particular, cooperation provisions in those settlements), which are admissible under Rule 408 to show the motive or bias of witnesses testifying pursuant to cooperation obligations. The Rule 403 concerns raised by DPPs are addressed by Defendants' proposed jury instruction, which mirrors that given in *In re TFT-LCD (Flat Panel) Antitrust Litig.* No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (ECF 8543).

---

[10] *See, e.g.*, *Costco Wholesale Corp. v. AU Optronics Corp.,* No. 13-1207, 2014 WL 4674390, at *6 (W.D. Wash. Sept. 17, 2014; *In re Homestore.com, Inc.*, No. 01-11115, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011); *In re Tenet Healthcare Corp. Sec. Litig.*, No. 02-8462, 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007); Final Pretrial Scheduling Order, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. May 4, 2012), ECF No. 5597; *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-1819, 2010 WL 10086747, at *3 (N.D. Cal. Dec. 16, 2010).

**A.      Defendants Agree That Settlement Amounts Should Be Excluded From Trial.**

Although Defendants disagree that the amounts of prior settlements are irrelevant—they can be admissible to show the motive or bias of a witness whose employer may have received a significant discount on its settlement in exchange for its agreement to cooperate at trial—Defendants will nonetheless stipulate that settlement amounts be excluded from evidence at trial.

**B.      Settlement Cooperation Provisions Must Be Permitted For Impeachment.**

The fact and terms of settlement agreements with DPPs, however, are admissible.  Rule 408 expressly permits the introduction of compromise offers and negotiations to "prov[e] a witness's bias or prejudice."  The rationale behind the rule in a case like this one involving an alleged conspiracy mirrors the rationale for permitting cross-examination regarding the plea agreement of a co-conspirator in a criminal case:  where the negotiated agreement "allows for some benefit or detriment to flow to a witness as a result of his testimony, the defendant must be permitted to cross examine the witness sufficiently to make clear to the jury what benefit or detriment will flow, and what will trigger the benefit or detriment, to show why the witness might testify falsely in order to gain the benefit or avoid the detriment."  *U.S. v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) (reversing verdict due to trial court's limitation of cross-examination regarding co-conspirator's plea agreement).

For this reason, the fact and terms of agreements between plaintiffs and settling defendants routinely are admitted in antitrust trials to permit the jury to evaluate the credibility of witnesses testifying pursuant to cooperation provisions.  DPP counsel knows this, as such evidence has been admitted in cases that they litigated.  For example, Judge Wilken denied in part a similar motion filed by plaintiffs in *In re SRAM Antitrust Litigation*, excluding the amounts of settlements but admitting "evidence of the cooperation clauses," which "may be relevant to impeach a witness's credibility."  No. 07-md-01819, 2010 WL 10086747, at *3 (N.D. Cal. Dec. 16, 2010).  And there are others.  *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2012 WL 12300696 (N.D. Cal. May 4, 2012) (J. Illston) (denying motion to exclude the fact of settlements by testifying witnesses or their corporate employers); *In re High-Tech Empl's Antitrust Litig.*, No. 11-cv-2509-LHK (N.D. Cal. May 23, 2014) (J. Koh) (ECF 929) (denying ECF 855, which included a motion to exclude settlements of former defendants).

Moreover, the cases relied upon by DPPs come to the same conclusion.  For example, in a case involving an alleged antitrust conspiracy, a trial court excluded the amount of settlements, but refused to preclude defendants "from asking the settling defendants' representatives about whether they settled their claims with Costco, whether they agreed to cooperate with Costco as part of the settlement, and whether those defendants agreed to pay an undisclosed sum of money to Costco," which the court ruled was "relevant to establish whether a witness has a bias." *Costco Wholesale Corp. v. AU Optronics Corp.*, 2014 WL 4674390, at *6 (W.D. Wash. Sept. 17, 2014); *see also Hudspeth v. Comm'r*, 914 F.2d 1207, 1214 (9th Cir. 1990) (trial court abused discretion by excluding evidence of valuations used in settlement negotiations because "the evidence was relevant to show bias on the part of the Commissioner's valuation expert").[11]

Evidence of the fact of settlements and cooperation provisions in those settlement agreements is similarly relevant here.  DPPs' initial witness list includes 25 witnesses affiliated with a company that has settled DPPs' claims.  DPPs claim that this testimony will prove essential elements of their case, including the "fact, nature, scope, and effect" of the alleged unlawful agreements among Defendants and the settling defendants.  It is therefore crucial that Defendants be permitted to introduce the fact of settlements and cooperation obligations so that the jury can evaluate whether the benefits conferred on the settling defendants by those agreements might have influenced the witness's testimony.

The Rule 403 concerns raised by DPPs do not warrant excluding the fact and terms of the settlements.  The risk that a jury might adjust its damages calculation to account for settlements, and any potential delay to address that issue, is minimized by the exclusion of the amounts of the settlements.  *See Costco*, 2014 WL 4674390 at *6.  Moreover, as the *Costco* court recognized, any

---

[11] The other cases cited by DPPs do not address whether settlement agreements are admissible to show the bias of a cooperating witness. *See The Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144 (N.D. Iowa 2003) (precluded settlements for purpose of proving amount of royalty in patent case); *In re Tenet Healthcare Corp. Securities Litig.*, 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007) (excluded defendant's settlement with DOJ; not offered to show bias); *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 980 (9th Cir. 2009) (court abused discretion by admitting settlement negotiation where offered to show seller's knowledge of buyer's intended use of the product, which was irrelevant); *In re Homestore.com, Inc.*, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (excluding amount of settlements and settlement communications; not offered to show bias).

potential confusion or prejudice can be cured via a limiting instruction:

> If necessary, the court will consider an instruction to the jury that it should not speculate about the amount of any settlement or consider the settlements for purposes of assessing Costco's damages, and that evidence that some defendants paid a settlement is relevant only to establish whether a witness has a bias. If necessary, the court will also consider an instruction that the jury need not concern itself with offsetting Costco's damages to account for payments from settling defendants.

Defendants propose a similar instruction, adapted from the *TFT-LCD* trial, which states that "the existence of these settlement agreements should not influence your consideration of this case, but you may consider the cooperation obligations in evaluating the bias and credibility of witnesses associated with the settling defendants." *See In re TFT-LCD*, No. 07-md-01827-SI (Aug. 28, 2013) (ECF 8543). For the same reasons, for any settlement that is introduced for purposes of showing bias, Defendants should be permitted to introduce any statement in the agreement that the settling defendant did not admit wrongdoing or liability, to ensure the jury does not view the settlement as an admission of participation in the alleged conspiracy.

## CONCLUSION

For these reasons, the court should exclude the amount of settlements between DPPs and former defendants, but should permit Defendants to cross-examine witnesses on the fact of and cooperation obligations in those settlements so that the jury may evaluate the witnesses' credibility.

**MOTION IN LIMINE NO. 4:**

**MOTION TO EXCLUDE REFERENCE OR EVIDENCE OF TREBLE DAMAGES, ATTORNEYS' FEES, AND COSTS**

The Class submits this motion *in limine* to exclude reference to or evidence of the Class's right to recover treble damages, attorneys' fees, and costs.

It is hornbook law that a plaintiff's entitlement to treble damages is inadmissible in a jury trial. *See, e.g.*, *In re Exxon Valdez*, 229 F.3d 790, 799 (9th Cir. 2000) ("Juries are also not to be told … in antitrust … cases, that damages will eventually be trebled.") (collecting cases); *In re Tableware Antitrust Litig.*, No. 04-3514, 2007 WL 781960, at *3 (N.D. Cal. Mar. 13, 2007) ("In antitrust actions, 'courts have uniformly concluded that mentioning treble damages and attorney[ ] fees to the jury is improper.'") (collecting cases).

The reasons for this are twofold. <u>*First*</u>, such evidence is irrelevant and therefore inadmissible under Federal Rule of Evidence 402. The function of the jury is to determine if the defendant is liable and then to assess damages accordingly – without being influenced by what the defendants will ultimately pay and what the plaintiffs will ultimately receive.  *See Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991) ("'[I]t is not for the jury to determine the amount of a *judgment.  Its function is to compute the amount of *damages.'*") (emphases in original); *see also Exxon Valdez*, 229 F.3d at 798. <u>*Second*</u>, reference to the availability of treble damages could confuse the jury or result in unfair prejudice and is therefore inadmissible under Federal Rule of Evidence 403.  *Brooks*, 938 F.2d at 1052 ("[T]he fear is that a jury, informed of plaintiff's right to additional funds, will view the money as a windfall and take steps to offset it."); *see also Exxon Valdez*, 229 F.3d at 798-99.

Likewise, the case law has established that the attorneys' fees determination is an issue outside the province of the jury. *See Brooks*, 938 F.2d at 1051; *In re Tableware Antitrust Litig.*, 2007 WL 781960, at *3-4.

Courts within this District have repeatedly granted similar motions *in limine* in recent antitrust litigation. *See In re Lidoderm Antitrust Litig.*, 2018 WL 7814761, at *6 (excluding reference to treble damages); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2012 WL 12300696, at *2 (N.D. Cal. May 4, 2012) (same); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-4572, 2013 WL 10936486,

at *2 (N.D. Cal. July 11, 2013) (excluding reference to treble damages and attorneys' fees and costs); *Static Random Access Memory (SRAM),* 2010 WL 10086747, at *2 (excluding reference to treble damages and attorneys' fees).

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in limine* to exclude reference to or evidence of the Class's right to recover treble damages or attorneys' fees and costs.

**RESPONSE TO DPP MOTION NO. 4**

Defendants do not oppose DPPs' motion to exclude references to or evidence of the Class's right to recover treble damages, attorneys' fees, or costs.

**MOTION IN LIMINE NO. 5:**

**MOTION TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE CLASS FAILED TO MITIGATE DAMAGES**

The Class submits this motion *in limine* to exclude evidence or argument that the Class failed to mitigate damages.

In Section 1 cases where a market-wide conspiracy causes the affected products to be sold at supracompetitive prices, mitigation defenses are not allowed. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-5944, 2016 WL 6216664, at *1 (N.D. Cal. Oct. 25, 2016) (granting motion *in limine* as to mitigation defense); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2012 WL 6000154, at *3 (N.D. Cal. Nov. 30, 2012) ("the Court declines to hold that defendants may assert mitigation as a defense to Dell's horizontal price-fixing claim"); *Static Random Access Memory (SRAM)*, No. 07-1819, 2010 WL 10086747, at *2 (granting unopposed motion in limine to exclude evidence plaintiff failed to mitigate its damages); *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("[i]n a horizontal price-fixing case, . . . mitigation and offset generally do not affect the ultimate measure of damages"); *Westman Comm'n Co. v. Hobart Corp.*, 541 F. Supp. 307, 314-15 (D. Colo. 1982) (refusal-to-deal case; the "argument that [plaintiff] failed to mitigate its damages . . . is ridiculous. This argument implicitly assumes that [defendant] was guilty of a continuing violation of the antitrust laws yet attempts to place the onus of stopping that violation on [plaintiff]. … [A] defendant [cannot] claim immunity from damages caused by its illegal actions because a plaintiff could have stopped them . . .").

This rule makes logical and practical sense. As Judge Illston explained: "[w]hile an antitrust plaintiff alleging a refusal to deal or vertical price-fixing could reasonably be expected to mitigate damages by finding another supplier, a victim of horizontal price-fixing does not have this option." *TFT-LCD (Flat Panel)*, 2012 WL 6000154, at *3. "[S]uccessful price-fixing conspiracies increase the market price for price-fixed goods. Defendants' suggestion, therefore, that Plaintiffs can mitigate their damages by purchasing from non-conspiring suppliers is nonsensical." *In re Cathode Ray Tube (CRT)*, 2016 WL 6216664, at *11.

Requiring some action in mitigation would be particularly inappropriate here, as no proof suggests the Class learned of the conspiracy until 2014 — *after* the damages period had ended in

December 2013. It is a fundamental principle of the law that "the duty to mitigate damages does not arise until the party upon whom the duty is impressed is aware of facts making the duty to mitigate necessary." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995); *see also Ford Motor Credit Co. v. Hairston*, No. 06-0004, 2006 WL 2850615, at *4 (W.D. Va. Oct. 2, 2006) ("it would be an absurd misapplication of the rule for mitigation of damages to expect the plaintiff to minimize injury before discovery of the breach."). Defendants — who bear the burden of proof on a mitigation defense — have not and cannot prove that Plaintiffs were aware of the conspiracy sooner.

Similarly, because the Class first learned of the conspiracy after Department of Justice proceedings had already begun, it would therefore be nonsensical to allow Defendants to reduce their damages by saying the Class should have reported the wrongdoing to law enforcement. Even had the Class known of the wrongdoing earlier, such a defense is inadmissible. *See In re Cathode Ray Tube (CRT)*, 2016 WL 6216664, at *11.

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in limine* to exclude evidence or argument that the Class failed to mitigate damages.

## RESPONSE TO DPP MOTION NO. 5

DPPs' motion *in limine* to exclude evidence or argument that the Class failed to mitigate damages should be denied. Evidence that a plaintiff has failed to take steps to mitigate its own damages is relevant and admissible, including in alleged horizontal price fixing cases. Moreover, even if the Court were to grant DPPs' motion *in limine*, such a ruling should not exclude evidence and argument that direct purchasers were able to, and did in fact, use various negotiations and procurement techniques to stoke competition, reduce capacitor prices and avoid overcharges.

Despite DPPs' statements otherwise, there is no broad rule precluding a mitigation defense in the antitrust context. To the contrary, courts have repeatedly recognized that "an antitrust plaintiff has a duty to mitigate damages." *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 820 n.47 (2d Cir. 1983); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1207 (7th Cir. 1983) ("If you find that MCI could have avoided some or all of its economic losses by complaining to the FCC and that MCI acted unreasonably in failing to complain to the FCC, you cannot award MCI the damages it could have avoided."). Indeed, the mitigation principle is such a fundamental rule of law in antitrust cases that the

ABA model rules include a model instruction specific to mitigation. *See* ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, (2005) at F-47 ("Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. Plaintiff is not entitled to increase any damages through inaction.").[12]

Moreover, some of the very cases cited by DPPs confirm that they have a duty to mitigate. *See In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("[I]n general, an antitrust plaintiff has a duty to mitigate or offset its damages."); *Westman Com. Co. v. Hobart Corp.*, 541 F. Supp. 307, 314 (D. Colo. 1982) ("Hobart correctly argues that an 'antitrust plaintiff has a duty to mitigate damages.'") (quoting *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 436 (5th Cir. 1977)).

This longstanding duty to mitigate is supported by sound policy, as it prevents a party from profiting, through treble damages, from its own inaction. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 149-50 (2nd Cir. 2001) (noting that a duty to mitigate in antitrust claims serves the important purpose of preventing plaintiffs from seeking treble damages and profiting by refusing to mitigate) (Jacobs, CJ., dissenting). "The law requires that a company faced with the possibility that damages may result from the business conduct of another may not merely sit back and do nothing to protect itself economically." *MCI*, 708 F.2d at 1207. This requirement makes sense, for without a mitigation duty, the potential for treble damages creates a perverse incentive for a party to wait and accumulate alleged damages for its own profit. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997).

It is true that two cases in this District have precluded mitigation evidence in horizontal price-fixing matters, though they acknowledged little authority supported this conclusion. *See In re TFT-LCD Antitrust Litig.*, Nos. M 07-1827 SI, 2012 U.S. Dist. LEXIS 172805, at *54 (N.D. Cal. Nov. 30, 2012) (noting "the absence of any on-point authority"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 166396, at *241-42 (N.D. Cal. Oct. 25, 2016). Those decisions

---

[12] The Ninth Circuit's model instructions also include a mitigation of damages instruction, *see* Ninth Circuit Model Civil Jury Instructions § 5.3 ("The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages."), and favorably cites the ABA Model Jury Instructions in Civil Antitrust Cases.

were also based on the unique facts presented in those cases.  For instance, in stating that "a victim of horizontal price-fixing does not have th[e] option" of "finding another supplier," the *LCD* court was examining a market involving only a handful of suppliers that manufactured highly specialized products. *See In re TFT-LCD*, 2012 U.S. Dist. LEXIS 172805, at *54-55. Likewise, the *CRT* case involved allegations that "virtually every major supplier" participated in the conspiracy. *See In re CRT*, 2016 U.S. Dist. LEXIS 166396, at *242. Here, by contrast, there were dozens of suppliers and countless substitutes outside the alleged conspiracy, and the market power of the alleged co-conspirators is far more limited. For example, with respect to manufacturers of film capacitors, DPPs' own experts opine the alleged conspirators account for as little as 20% of the global film capacitor market. (ECF No. 2402-7 ¶ 94) ("With respect to film Capacitors, the evidence indicates that the Cartel has collectively accounted for between 20 percent and 31 percent of global production."). And the share for Film-Only manufacturers is even smaller. (*See* ECF No. 687-21 ¶ 7.) Thus, by DPPs' experts' own estimates, up to 80% of the global market should have been unaffected by any conspiracy and should have been available to supply DPPs with capacitors. This distinguishes this matter from *In re CRT* and *In re TFT-LCD* and suggests the question of mitigation should be put to the jury.

Defendants agree with DPPs that "[i]t is a fundamental principle of the law that the duty to mitigate damages does not arise until the party upon whom the duty is impressed is aware of facts making the duty to mitigate necessary." (Omnibus Br. at 10) (internal quotations omitted). Defendants do not suggest otherwise. Yet, there is some evidence that certain DPPs had concerns about certain capacitor manufacturers practices prior to the end of the damages period in December 2013 but took no action to prevent the conduct or avoid it by switching providers. Accordingly, Defendants simply ask to not be precluded from arguing that evidence to the jury, which will be able to accurately assess whether Defendants have carried their burden.

In the event that the Court grants DPPs' motion *in limine*, it should be limited to the two topics articulated in DPPs' motion: (i) that class members should have purchased from "non-conspiring suppliers"; and (ii) that class members "should have reported the wrongdoing to law enforcement." Beyond these two topics, other evidence and argument unrelated to mitigation should not be excluded. For example, there is substantial evidence that certain direct purchasers – with their purchasing power,

procurement processes designed to maximize competition among suppliers, individualize negotiation tactics and their mix of Defendant and non-Defendant suppliers – avoided overcharges by regularly minimizing the capacitor prices they paid. This evidence is probative of the question of whether such class members suffered any injury—not whether they failed to mitigate damages—and, accordingly, such evidence would not fall within the scope of DPPs' motion *in limine*.

## CONCLUSION

The Court should not preclude Defendants from offering evidence and argument that the Class failed to mitigate their own damages.

**MOTION IN LIMINE NO. 6:**

**MOTION TO EXCLUDE EXPERT TESTIMONY THAT THERE WAS NO CONSPIRACY OR THAT THE DEFENDANTS DID NOT CONSPIRE**

The Class submits this motion *in limine* to exclude expert testimony that there was no conspiracy or that Defendants did not conspire because any such testimony would be irrelevant and prejudicial under Federal Rules of Evidence 402 and 403.

Expert witnesses may not offer opinions that embrace or constitute legal conclusions. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008); *McHugh v. United Serv. Auto. Ass'n.,* 164 F.3d 451, 454 (9th Cir. 1999); *Aguilar v. Int'l. Longshoreman's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992). In antitrust cases, like this one, an expert economist may opine that the conditions in a specific market are consistent with conspiratorial activity, or that the defendant's behavior was consistent with collusive activity. *Re/Max Int'l., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1003, 1010-11 (6th Cir. 1999); *In re Processed Egg Prod. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015) (economists can opine on "whether certain conduct is consistent with collusion or an entity or individual's self-interest, and, moreover, it is consistent with sound economic practice to review the factual record and formulate a hypothesis that can then be tested using economic theory"); *In re Titanium Dioxide Antitrust Litig.*, No. 10-0318, 2013 WL 1855980, at *4 (D. Md. May 1, 2013) (recognizing economists regularly testify about whether from an economic perspective conduct is consistent or inconsistent with collusion); *In re Urethane Antitrust Litig.*, No. 04-1616, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012), *aff'd*, 768 F.3d 1245 (10th Cir. 2014) (permitting economist to testify that conduct was consistent with price-fixing not competition because "it would be helpful to a jury for an expert to put events into an economic context"). However, economists are not permitted to testify that that evidence cannot support a finding of an illegal conspiracy. *U. S. Info. Sys. v. Int'l Bhd. of Elec. Workers Local Union No. 3,* 313 F. Supp. 2d 213, 239 (S.D.N.Y. 2004); *see also United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) ("Although testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice, testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of

industry practice.") (citation omitted).

Here, Defendants' expert economists impermissibly seek to offer legal opinions that there was no conspiracy, or defendants did not participate in the conspiracy, or the conspiracy was limited in various ways:

Dr. Lawrence Wu concludes that "the evidence is that Holy Stone Taiwan was not aware of involved in the alleged conduct." Expert Report of Lawrence Wu at ¶ 56. He then identifies the evidence that he claims support his legal conclusion that Holy Stone Taiwan did not participate in a conspiracy. *Id*. at ¶¶ 57-63.

Dr. Timothy S. Snail repeatedly asserts the improper legal conclusion that AVX did not participate in the conspiracy. *See* Expert Report of Timothy S. Snail, PH.D. at ¶ 49 (certain communications are not "individually collusive or part of a collusive pattern"); ¶ 52 ("support the conclusion that AVX did not participate in the capacitors 'cartel'"); there are too many other such references in Dr. Snail's report to include here.

Dr. Frederick R. Warren-Boulton also reviews the evidence piecemeal and repeatedly offers the legal conclusion there is no evidence of agreement on prices and that any agreement could not have survived Panasonic exiting the conspiracy. *See* Expert Report of Dr. Frederick R. Warrant-Boulton at ¶¶ 34, 40-42, 44-50.

Dr. Lauran J. Stiroh offers the legal conclusion that there is no direct evidence of KEMET's agreement to the conspiracy. Expert Report of Lauren J. Stiroh, PH.D., *e.g.* at ¶¶ 43-69.

Dr. Michael A. Williams concludes "[a]ny participation [by Hitatchi] in a conspiracy was limited in time and product scope" Expert Report of Michael A. Williams, PH.D. at ¶ 8.b.

Stephen D. Prowse also improperly opines that Nichicon did not participate in a market-wide conspiracy and its involvement was more limited. Rebuttal Expert Report of Stephen D. Prowse, PH.D., at ¶¶ 32, 40.

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in limine* to exclude expert testimony that there was no conspiracy or that Defendants did not conspire.

**RESPONSE TO DPP MOTION NO. 6**

Defendants oppose DPPs' motion *in limine* to exclude expert testimony that there was no conspiracy or that Defendants did not conspire (DPP MIL No. 6). DPPs mischaracterize the testimony of Defendants' experts, which simply rebuts the corresponding testimony of DPPs' experts. DPPs' motion is also an impermissible attempt to raise *Daubert* objections to Defendants' experts in violation of Your Honor's prohibition on raising such issues on motions *in limine*. DPPs' motion should be denied.

DPPs argue that Defendants' economists "impermissibly seek to offer legal opinions that there was no conspiracy, or defendants did not participate in the conspiracy, or the conspiracy was limited in various ways." MIL No. 6 at 22. But Defendants' experts do not opine on the ultimate issue; they simply analyze the data relied upon by DPPs' experts to determine whether the data are, or are not, consistent with DPPs' stated theory of the case. It is well established—and conceded in DPPs' motion (MIL No. 6 at 21)—that in antitrust cases, "courts regularly admit expert testimony regarding whether conduct is indicative of collusion." *In re Titanium Dioxide Antitrust Litig.*, 2013 U.S. Dist. LEXIS 62394, at *14 (D. Md. May 1, 2013); *see also In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1355 (N.D. Ga. 2000) (testimony regarding whether "the climate of the polypropylene market" "was consistent" with alleged conspiracy permissible); *In re Urethane Antitrust Litig.*, 2012 U.S. Dist. LEXIS 181506, at *32-33 (D. Kan. Dec. 21, 2012) (opinion on whether "factors make a conspiracy more likely and give a motive" permissible).

Economic experts "may testify as to certain indicia of collusion and cartel behavior," as such testimony "does not fit the category of 'legal conclusions.'" *Titanium Dioxide*, 2013 U.S. Dist. LEXIS 62394, at *16. For instance, opinions about whether "features of defendants' contacts that are indicative of collusion" is permissible expert testimony. *In re Lithium Ion Batteries Antitrust Litig.*, 2017 U.S. Dist. LEXIS 57340, *83 (N.D. Ca. Apr. 12, 2017). Further, "the rejection of expert testimony is the exception rather than the rule." See Fed. R. Evid. 702, Advisory Committee Note; *Toomey v. Nextel Communs.*, Inc., 2004 U.S. Dist. LEXIS 30793, *6, (N.D. Cal. Sept. 23, 2004).

When put in full context, it is clear that Defendants' expert testimony does not contain "legal conclusions," but rather rebuts DPPs' expert testimony about whether Defendants' conduct "is indicative of collusion." *Lithium Ion Batteries*, 2017 U.S. Dist. LEXIS 57340, at *83. Defendants are

entitled to submit economic testimony to rebut DPPs' experts' unscientific leaps of logic. *See, e.g.*, Expert Report of Lawrence Wu at ¶ 56 (criticizing plaintiffs' experts' "assum[ption] that the sales and pricing data of Holy Stone Taiwan were affected by Holy Stone Japan's employees' alleged actions" and noting plaintiffs' experts "do not identify any evidence that Holy Stone Taiwan was part of, or even aware of, the alleged conspiracy"); Expert Report of Timony S. Snail, Ph.D. at ¶ 49 (critiquing plaintiffs' experts' analysis and suggesting analysis should "explor[e] the context of individual alleged communications"); Expert Report of Michael A. Williams, Ph.D. at ¶ 8.b (citing DOJ's findings regarding the scope of Hitachi's involvement to critique plaintiffs' expert's scope of Hitachi's inclusion); Expert Report of Stephen D. Prowse, Ph.D. at ¶¶ 31-32 (taking issue with Dr. Marx's inclusion of Nichicon America in his price index when the DOJ made clear Nichicon "did not participate in a market-wide conspiracy lasting the entire Conduct Period"). Such consideration as to the evidence which forms the basis of a conclusion is permissible expert testimony, and the extent to which an expert "considered the entirety of the evidence in the case is a matter for cross-examination," not exclusion. *In re Urethane*, 2012 U.S. Dist. LEXIS 181506, at *34 (permitting opining on whether events "are consistent with a conspiracy").

Defendants are furthermore entitled to rebut DPPs' economic testimony about whether market conditions were conducive to a conspiracy, or whether it would be economically beneficial for certain Defendants to enter the alleged conspiracy. *See, e.g.,* Expert Report of Dr. Frederick R. Warren-Boulton at 34 (identifying "there is no economic incentive for all Film-Only Defendants to participate in a film capacitor cartel merely because other film producers participated in a cartel in aluminum or tantalum"); Expert Report of Lauren J. Stiroh, Ph.D. at ¶ 68 (concluding 'there would be little economic benefit for KEMET to enter into the conspiracy as alleged" as "the conspiracy alleged by plaintiffs includes numerous products that KEMET does not produce and with which its own products do not compete"). Again, such statements are commonly recognized as proper expert opinions. *In re Urethane*, 2012 U.S. Dist. LEXIS 181506, at *32-33 (opinion that "factors make a conspiracy more likely and give a motive" permissible expert testimony); *Titanium Dioxide*, 2013 U.S. Dist. LEXIS 62394, at *14 (evidence that behavior is "consistent with collusion and inconsistent with competition" is "admissible under Rule 704(a) because it does not state a 'legal standard or draw a legal conclusion'"); *id.* at *14-15 ("explain[ing] whether economic indicia of collusion were present during the class period" is not

"determinations of purely legal issues" but "admissible testimony concerning mixed questions of fact and law.").

It is notable that DPPs' expert reports are replete with the exact same kind of testimony that DPPs seek to exclude. *See, e.g.*, Expert Report of Hal J. Singer at ¶ 11 (evaluating whether the evidence consists of "plus-factors" as indicative of conspiracy); *id.* at ¶ 12 (concluding the evidence "is consistent with a single overarching conspiracy involving both electrolytic and film Capacitors"); Rebuttal Report of James T. McClave at ¶ 4.6 (opining as to whether data was "inconsistent with the presence of the alleged Conspiracy"). Defendants are entitled to rebut this testimony.

Finally, DPPs' motion ignores this Court's prohibition on inserting *Daubert* issues into motions *in limine*. Standing Order for Civil Jury Trials before Judge James Donation at ¶ 6. In fact, DPPs' motion cites several cases which were decided on *Daubert* motions. *See, e.g., Titanium Dioxide*, 2013 U.S. Dist. LEXIS 62394; *In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014).

For the foregoing reasons, Defendants respectfully request that the Court deny DPPs' motion *in limine* to exclude expert testimony that there was no conspiracy or that the Defendants did not conspire.

**MOTION IN LIMINE NO. 7:**

**MOTION TO EXCLUDE PROCOMPETITIVE JUSTIFICATIONS FOR PRICE FIXING**

The Class submits this motion *in limine* to exclude procompetitive justifications for price-fixing. It is beyond dispute that price-fixing is a per se violation of the antitrust laws, and therefore, the law does not permit any defense that such conduct tended to have or may have had procompetitive benefits. As the Supreme Court held: "Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224-25 n.59 (1940); *see also United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1208 (9th Cir. 1992) ("Price fixing is illegal regardless of pro-competitive justifications offered therefor: '[I]t is not our task to pass upon the social utility or political wisdom of price-fixing agreements… [e]very such horizontal arrangement among competitors poses some threat to the free market[.]") (quoting *F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 421-22, 434 (1990)) (first alteration in original). Because price-fixing is condemned per se, any evidence tending to prove defendants' conduct was justified or reasonable is irrelevant and inadmissible. *See*, *e.g.*, *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) ("Joyce's assertion that the district court erred by not allowing him to present evidence to the jury regarding the actual effect his conduct had on the market for foreclosed properties is misplaced. The per se rule eliminates the need to inquire into the specific effects of certain restraints of trade."); *United States v. Kahan & Lessin Co.*, 695 F.2d 1122, 1125 (9th Cir. 1982) (affirming district court's rejection of argument that "per se rule should not apply if the price fixing can be shown to have procompetitive justifications.").

Here, Defendants may try to offer evidence or argument at trial that their price-fixing conduct had procompetitive effects. For instance, Dr. Janusz Ordover speculates that by exchanging information regarding pricing (which the Class alleges was part of Defendants' agreements and concerted activity), Defendants somehow gained "visibility into market demand and supply trends" which *might* have "improved the efficiency of suppliers' investment and output decisions." Expert Report of Janusz Ordover ¶ 40 (Feb. 22, 2019) (report on behalf of NCC and UCC defendants). Dr. Lauren J. Stiroh similarly contends that information exchanges among members of the cartel were "procompetitive or

competitively benign transactions." Expert Report of Lauren J. Stiroh, Ph.D. at 21 (Feb. 22, 2019) (report on behalf of KEMET defendants).

The law requires a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). "The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealings or other circumstances as well as in any exchange of words. Where the circumstances are such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement, the conclusion that a [price-fixing] conspiracy is established is justified." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946) (citation omitted). As the Supreme Court has made clear, sharing of competitively sensitive information can form the basis of a conspiracy under the antitrust laws. *See, e.g., United States v. Am. Linseed Oil Co.*, 262 U.S. 371, 380-81 (1923); *Am. Column & Lumber, Co. v. United States*, 257 U.S. 377, 394 (1921); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 212 (2d Cir. 2001); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902 (N.D. Cal. 2008) ("[T]he exchange of price information alone can be 'sufficient to establish the combination or conspiracy, the initial ingredient of a violation of [Section 1].'"). Furthermore, the reciprocity inherent in such exchanges is sufficient to establish a defendant's willing participation in a conspiracy. *See United States v. Container Corp. of Am.*, 393 U.S. 333, 335 (1969) ("[W]hen a defendant requested and received price information, it was affirming its willingness to furnish such information").

The information sharing between and among defendants was organized and intended to facilitate coordination on pricing and included discussions of current or future pricing, as well as exchange of highly sensitive proprietary and confidential business information. The agreement and understanding to do so—and group meetings where these and other anticompetitive matters were discussed—lasted the entirety of the class period. *See* ECF No. 1831; Rebuttal Rep. of Hal J Singer, Ph.D. ¶¶ 119-25 & nn.401, 404, App. 3. Such exchanges of present and prospective pricing are particularly pernicious tools for price-fixing cartels and other coordination between and competitors. *See, e.g., Container Corp.*, 393 U.S. at 336-37 (informal agreement to exchange price information may under certain market conditions constitute evidence of agreement to stabilize prices); *Am. Column,* 257 U.S. at 398-99 (sharing of

"future prices and production" can lead to inference of conspiracy given tendency of "men to follow

their most intelligent competitors."); *Am. Linseed Oil Co.*, 262 U.S. at 389-90; *In re Coordinated Pretrial*

*Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445-50 (9th Cir. 1990) ("a jury could

conclude that the appellees implicitly agreed to engage in [exchanging price information] that they knew

and hoped would lead to greater price coordination); *id.* at 461-62 (exchange of future price and supply

information may provide "an attractive basis for cooperative, even if unexpressed, 'harmony' with

respect to future prices.") (quoting *Am. Column*, 257 U.S. at 398); *In re High Fructose Corn Syrup*

*Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) (documents discussing coordination of pricing with

competitors probative of price fixing); *Todd*, 275 F.3d at 211 (exchange of "present data" have "greatest

potential for generating anti-competitive effects" and "exchanges of future price information are

considered especially anticompetitive."); *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147,

1152 (10th Cir. 1981) (exchange of price information may serve as basis for inferring price-fixing where

effect of such exchange is to stabilize prices); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133,

1144 (N.D. Cal. 2009) ("defendants routinely exchanged highly sensitive competitive information,

including pricing and production data, to facilitate and monitor their alleged price fixing

conspiracy."); *Static Random Access Memory (SRAM),* 580 F. Supp. 2d at 902 (refusing to dismiss

conspiracy allegations where competitors discussed pricing via email); *Fleischman v. Albany Med. Ctr.*,

728 F. Supp. 2d 130, 153 (N.D.N.Y. 2010); *United States v. Serta Assocs., Inc.*, 296 F. Supp. 1121, 1127

(N.D. Ill. 1968), *aff'd.*, 393 U.S. 534 (1969).

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in*

*limine* to exclude procompetitive justifications for price-fixing.

## RESPONSE TO DPP MOTION NO. 7

Direct Purchaser Plaintiffs' ("DPPs") motion *in limine* presumes too much.  In essence, the

motion argues that *because* Defendants engaged in price fixing, the Court should preclude Defendants

from offering evidence tending to show their conduct was procompetitive.  In doing so, however, DPPs

miss a critical step in their analysis by *assuming* what is in dispute: that all of the challenged conduct

amounted to price fixing.  But Defendants do not intend to argue that price fixing is procompetitive.

Rather, Defendants intend to argue that much of their information sharing—which had procompetitive

justifications—did *not* constitute price fixing at all.  DPPs' motion should accordingly be denied.

## I.   ARGUMENT

### A. DPPs Incorrectly Assume That They Have Already Proven That Defendants Engaged in Price-Fixing.

DPPs' motion *in limine* presumes the truth of their allegations.  DPPs properly state that price-fixing is a per se violation of the antitrust laws and that Defendants cannot justify price-fixing by arguing it had procompetitive benefits.  DPP MIL No. 7 at 27.  However, DPPs then take the next step and incorrectly assume that they have already established the broad price-fixing conspiracy alleged in the complaint, arguing that Defendants organized and intended their information sharing "to facilitate coordination on pricing and include[] discussions of current or future pricing, as well as exchange of highly sensitive proprietary and confidential business information.  The agreement and understanding to do so—and group meetings where these and other anticompetitive matters were discussed—lasted the entirety of the class period."  *Id.* at 28.

Defendants contest the characterization of the evidence, and, in arguing that their conduct was procompetitive, do not seek to justify price fixing, but rather to demonstrate that much of the conduct cited as price-fixing was in fact not price fixing at all.  It is black letter law that not all information exchanges—even involving prices—are undesirable or *per se* illegal.  As the Supreme Court explained, "[t]he exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency . . . ."  *United States* v. *United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978).  As a result, these procompetitive "exchanges of information *do not constitute a per se violation* of the Sherman Act."  *Id.* (emphasis added); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (granting defendants summary judgment though they possessed competitor price lists); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement.").  Indeed, the ABA Model Jury Instruction on information sharing makes just this point:

Evidence has been introduced concerning the exchange of information among defendants . . . about their prices for [product X]. Plaintiff has alleged that such exchanges were made in furtherance of a conspiracy to fix prices.

The fact that defendants exchanged price information [*or publicly announced prices*] does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange price information [*or announce prices*], and the law recognizes that exchanges of price information [*or public announcements of prices*] may enhance competition and benefit consumers. On the other hand, if you find that price information was exchanged [*or announced*] and that defendants offer no reasonable explanation as to why they were exchanging [*or announcing*] that information, you may consider whether it was being exchanged [*or announced*] as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

ABA Section on Antitrust Law, Instruction 8, Model Jury Instructions in Civil Antitrust Cases, 2016 Ed. at B-34.

In other words, the procompetitive nature of information sharing is probative evidence that the jury might consider when deciding whether price-fixing occurred, and, if so, the scope of that conduct. In fact, the cases cited by DPPs, and DPPs' own characterizations of those cases, similarly recognize that price information exchanges can have proper purposes, and recognize the need for Defendants' evidence regarding procompetitive justifications in order to provide the jury with full context. For example, DPPs cite *United States* v. *Container Corp.*, 393 U.S. 333, 336–37 (1969) for the proposition that "[an] information agreement to exchange price information *may under certain market conditions* constitute evidence of agreement to stabilize prices." DPP MIL No. 7 at 28 (emphasis added). Defendants' evidence showing their conduct was procompetitive would demonstrate to the jury that Defendants' conduct did not involve those "certain market conditions" and therefore did not constitute improper agreements.[13]

---

[13] The same logic applies to DPPs' other cases and characterizations of those cases. *See, e.g.*, DPP MIL No. 7 at 28-29 (citing and characterizing DPP parentheticals; all emphasis added):

Moreover, the characterization of the evidence that DPPs cite as supposed proof that Defendants "may try to offer evidence or argument at trial that their price-fixing conduct had procompetitive effects," *id*. at 27, similarly assumes too much.  The portion of Dr. Ordover's report that DPPs cite makes very clear that he is opining on the procompetitive effects of sharing aggregated sales information, *not* opining that price-fixing is procompetitive as DPPs assert.  Dr. Ordover finds that even Plaintiffs' cited documents show that "Defendants routinely shared aggregate market demand and supply information that, even in the absence of a cartel, aided their understanding of changes in market conditions and therefore potentially could have created efficiencies in the industry and promoted pro-competitive effects."  Expert Report of Janusz A. Ordover, dated February 22, 2019  ¶ 39, ECF No. 669-2.

In rebutting Dr. Singer's conclusion that KEMET participated in a broad conspiracy to price fix, Dr. Stiroh makes a similar point to Dr. Ordover:



[14]

These opinions are consistent with the relevant law.  *See In re Citric Acid Litig.*, 191 F.3d at 1099 (concluding that participating in an industry meeting which distributed aggregate statistics could be "consistent with legitimate behavior").

## CONCLUSION

For the foregoing reasons, the Court should reject DPPs' motion *in limine*.

---

*Am. Column & Lumber Co.* v. *United States*, 257 U.S. 377, 398–99 (1921) (sharing of "future prices and production" *can* lead . . .); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445–50 (9th Cir. 1990) ("a jury *could* conclude . . ."); *id.* at 461–62 (exchange of future price and supply information *may* provide . . .); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) (documents discussing coordination of pricing with competitors *probative* of price fixing); *Todd* v. *Exxon Corp.*, 275 F.3d 191, 211 (2d Cir. 2001) (exchange of "present data" have "greatest *potential* for generating anti-competitive effects" . . . ).

[14] *See* Ex. 1 to the Declaration of Johan E. Tatoy, dated January 16, 2020, Excerpt of the Expert Report of Lauren J. Stiroh, dated February 22, 2019 § VI & ¶ 44 (emphasis added).

**MOTION IN LIMINE NO. 8:**

**MOTION TO EXCLUDE DEFENDANTS' WITNESS DEPOSITION TESTIMONY AT TRIAL FOR WITNESSES THEY CONTROL AND COULD PRODUCE, AND FOR "MISSING WITNESS" INSTRUCTION**

The Class submits this motion *in limine* to exclude Defendants' witness testimony at trial through deposition transcripts where they have control and could produce the witnesses, and for a "missing witness" instruction.

### A. Deposition Testimony of Defendants' Witnesses Should Be Precluded If They Do Not Testify Live

Defendants should be precluded from presenting deposition testimony of witnesses they control who do not testify live. The witnesses have direct knowledge about the facts and are reasonably available to testify live because many of them are high-level executives in Defendants' corporate organizations. Defendants will likely claim unavailability merely because the witnesses are in Japan. Fed. R. Civ. P. 32(a)(4)(B); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962) ("[I]n complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators."). To deny the jury the opportunity to observe them in-person unjustly strips from the jury their solemn duty as the finder of fact. *See In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1493, 1502 (D. Colo. 1989). "[O]nly when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised," *Poller*, 368 U.S. at 473, and "[d]eposition testimony is an imperfect substitute for personal testimony . . . ." *Air Crash*, 720 F. Supp. at 1501.

Federal Rule of Evidence 32 implies "an obligation to use reasonable diligence to secure the witness's presence." *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 308 (7th Cir. 2009). "Because of the judicial preference for personal testimony in court, the court must balance various factors towards the ends of fairness," including "actual unavailability of the witness, as distinguished from mere geographic distance from the courthouse." *Air Crash*, 720 F. Supp. at 1502; *see also, VIIV Healthcare Co. v. Mylan Inc.*, No. 12-1065, 2014 WL 2195082, at *1-2 (D. Del. May 23, 2014) (concluding two witnesses were not "unavailable" for Federal Rule of Evidence 32 purposes because "while the two witnesses both reside over 100 miles from the location of the courthouse, Plaintiffs have failed to show why they are

unable to procure them for trial, let alone that they have made any attempt at doing so"). Defendants have done little more here than assert that it would be burdensome to make their employees come to trial, a trial where their central participation in the price-fixing is at issue. *Cf. In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991) ("'[Employer's] argument that [former employee] is not within its control rings hollow" as interests in absenting testimony in case in chief but testifying in defense are "indistinguishable one from the other."). Such *ipse dixit* assertions are inadequate.

Federal Rule of Evidence 32(a)(4) is not an automatic mechanism for granting deposition testimony in lieu of live testimony. *See Garcia–Martinez v. City & Cty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) ("the mere fact a party is more than 100 miles from the courthouse does not require the district court to automatically admit a party's deposition"). As here, where witnesses have been under the Defendants' control, yet Defendants have made little effort to obtain their live testimony, the Court should exercise its discretion here to preclude deposition testimony of any of Defendants' witnesses who do not testify live. *See* Fed. R. Civ. P. 32(a)(4) ("[a] party *may* use" (emphasis added)); *see also* Fed. R. Evid. 611(a) (court has substantial discretion to control presentation of evidence at trial).

## B.   The Court Should Give a "Missing Witness" Instruction

Should Defendants' witnesses not testify live, the Court should give a "missing witness" jury instruction. "[Courts] ordinarily instruct juries that '[i]f a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not." *Singh v. Holder*, 638 F.3d 1264, 1272-73 (9th Cir. 2011).

"[W]hen a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *Int'l Union, (UAW) v. N.L.R.B.,* 459 F.2d 1329, 1336 (D.C. Cir. 1972). "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939). "[T]he applicability of the rule in no way depends on the existence of a

subpoena compelling production of the evidence in question." *UAW*, 459 F.2d at 1338. "If evidence within the party's control would in fact strengthen his case, he can be expected to introduce it even if it is not subpoenaed. Conversely, if such evidence is not introduced, it may be inferred that the evidence is unfavorable to the party suppressing it." *Id.* at 1338.

Defendants include Japanese and Taiwanese companies. Their witnesses are high level executives, imbued with formal or practical authority to oversee, manage and control day-to-day operations of their corporations. They were direct participants in the illegal meetings, as documented by written records of the unlawful meetings, and had illicit contacts with other co-conspirators. Defendants should not benefit from the mere fact that the witnesses in question are overseas yet still fully within their control or have conveniently retired once the conspiracy was brought to light and unraveled. *See Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1353 ("An employee-employer relationship is such that 'where an employee who could give important testimony relative to issues in litigation is not present and his absence is unaccounted for by his employer, who is a party to the action, the presumption arises that the testimony of such employee would be unfavorable to his employer.'") (internal quotation marks omitted); *see also Gulf Oil/Cities Serv.*, 776 F. Supp. at 839 ("If he elects to absent himself during plaintiffs' case, he will not testify at all, and plaintiffs will be free to comment upon his absence.").

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in limine* to exclude Defendants' witness testimony at trial through deposition transcripts where they have control and could produce the witnesses, and for a "missing witness" instruction.

## RESPONSE TO DPP MOTION NO. 8

### A.    Defendants May Introduce Deposition Testimony of Distant Witnesses.

DPPs' motion to broadly exclude the deposition testimony of any current or former employee who Defendants do not call live at trial must be denied.  By rule, Defendants "may use for any purpose the deposition of a witness, whether or not a party, if the court finds: … (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition."  Rule 32(a)(4)(B); *see also Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004) (admitting deposition of

former employee of defendant; witness's "residence in Alabama placed him outside of the court's subpoena power under Fed. R. Civ. P. 45, and he was thus unavailable pursuant to [Fed. R. Civ. P. 32(a)(4).]").

DPPs' argument that Defendants must "use reasonable diligence to secure the witness's presence" to invoke Rule 32(a)(4)(B) has been rejected in this District. *Phoenix Techs. Ltd. v. VMware, Inc.*, 2017 WL 8069609 (N.D. Cal. June 7, 2017). There, Judge Gilliam allowed a defendant to introduce the deposition of a witness who lived more than 100 miles from Oakland although the witness was in Oakland with defense counsel the day before trial. *Id.* at *1. Judge Gilliam found defense counsel did not procure the witness's absence by informing the witness that she would not be called to testify and could leave town, noting that "under the case law interpreting Rule 32 … procuring absence and doing nothing to facilitate presence are quite different things." *Id.* at *2 (quoting *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 (1st Cir. 1988). In so holding, the court distinguished two out-of-circuit cases relied on heavily by DPPs:

> [I]n the Court's view, *VIIV Healthcare Co. v. Mylan, Inc.*, No. 12-cv-1065-RGA, 2014 WL 2195082, at *1 (D. Del. May 23, 2014) inappropriately imported subsection (a)(4)(D)'s implicit obligation "to use reasonable diligence to secure [a] witness's presence" into subsection (a)(4)(B). Indeed, *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 308 (7th Cir. 2009), which *VIIV* cites for that proposition, discusses such an obligation only in the context of subsection (a)(4)(D).

*Id.* *2, n.2.[15]

In any event, DPPs' motion—which fails to identify or discuss any particular witness whose deposition testimony they seek to exclude—ignores many pragmatic and legal hurdles to Defendants procuring certain witnesses' attendance at trial. Many witnesses whose depositions Defendants might introduce at trial no longer work for Defendants and/or live overseas. Even if Defendants were required to incur the financial burden of bringing these witnesses to trial (and they are not), they have no

---

[15] The other cases relied on by DPPs also are distinguishable. Both cases involved a party that purposefully absented himself from trial; neither held that a party corporation is required to procure a non-party employee's attendance at trial. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991) ("former employee" also a defendant); *Garcia-Martinez v. City & Cty. Of Denver*, 392 F.3d 1187 (10th Cir. 2004) (party purposefully left country during trial).

1   mechanism, legal or otherwise, to compel these witnesses' attendance. Other witnesses, such as

2   Hiroaki Nakamura, who retired from Matsuo in 2008 and whose health bars him from traveling to the

3   U.S., are unavailable for different reasons.

4        The ability to introduce deposition testimony at trial is one of reasons that these depositions

5   were taken in the first place, often in a foreign country and at considerable expense to Defendants.

6   Plaintiffs' attempt to exclude those depositions—seemingly, to benefit from the missing witness

7   instruction also requested in DPPs' motion—contravenes not only Rule 32, but the interests of justice,

8   and should be denied.

9        **B.      A Missing Witness Instruction Is Improper.**

10       DPPs' request for a missing witness instruction also should be rejected. The Ninth Circuit's

11  Model Civil Jury Instructions do not include such an instruction, and DPPs identify no civil case in this

12  Circuit in which such an instruction was given. *See also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL

13  3536797, at *2 (N.D. Cal. Aug. 13, 2012) (noting "the parties have not cited, and the Court has not

14  found, any Ninth Circuit authority governing the applicability of the uncalled-witness rule in civil

15  trials."). Even in criminal cases, the Ninth Circuit Jury Instructions Committee "recommends against

16  giving instructions on matters such as … a missing witness," which "are generally better left to

17  argument of counsel as examples of circumstantial evidence from which the jury may find another fact."

18  Model Criminal Jury Instructions (2010 Ed.), at 63. The Committee "cautions that a missing witness

19  instruction will be appropriate only in limited circumstances, such as when the government deports an

20  alien witness knowing that the witness would testify favorably for the defense." *Id.* at 76 (citing *U.S. v.

21  Leal-Del Carmen*, 697 F.3d 964, 975 (9th Cir. 2013)). DPPs fail to explain why this case warrants such

22  unusual treatment.

23       Regardless, there is no basis for a missing witness instruction in this case. The Ninth Circuit

24  requires two things before giving such an instruction: "(1) the witness is peculiarly within the power of

25  the other party and (2) under the circumstances, an inference of unfavorable testimony against the non-

26  moving party from an absent witness is a natural and reasonable one." *U.S. v. Ramirez*, 714 F.3d 1134,

27  1137 (9th Cir. 2012). The instruction is improper "where the testimony of the witness would be merely

28  cumulative," *U.S. v. Tisor*, 96 F.3d 370, 377 n.3 (9th Cir. 1996), and unnecessary when deposition

testimony can be shown to the jury.  *Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*, 593 F.3d 95, 102 (1st Cir. 2010) (affirming refusal to give instruction where a videotaped deposition was shown to a jury).

DPPs cannot satisfy these requirements because they have not identified any witnesses impacted by their motion, let alone shown that any witness is "peculiarly within the power of" Defendants. Moreover, DPPs' claim that "Defendants have made little effort to obtain . . . live testimony" of certain witnesses is completely unsupported in that DPPs' have never requested live testimony from any defense witness.  To the extent Defendants' foreign, former employees can be compelled to testify, DPPs are as capable of pursuing that process as Defendants. There also is no reason to think that the live testimony of such a witness would be anything but cumulative of the witness's own deposition testimony or the testimony of other witnesses DPPs plan to call live at trial pursuant to cooperation provisions in their agreements with the settling defendants.[16] DPPs' request thus serves no purpose but to shift the burden of proof to Defendants and to interfere with Defendants' presentation of their case.

### CONCLUSION

The Court should not preclude Defendants from introducing the deposition testimony of their employees at trial, and should not give a missing witness instruction to the jury.

---

[16] In the event the Court gives a missing witness instruction, the jury must also be instructed to draw such an inference regarding the employees of settling defendants that DPPs fail to call at trial, who are under DPPs' control due to cooperation provisions in the settlement agreements. *United States v. Kojayan*, 8 F.3d 1315, 1322 (9th Cir. 1993) (finding *Brady* violation where prosecutor failed to disclose cooperation agreement with witness, which might have led to missing witness instruction).

**MOTION IN LIMINE NO. 9:**

**MOTION TO EXCLUDE EVIDENCE AND ARGUMENT OF INCONSISTENT WITH THE GUILTY PLEAS AND PLEA AGREEMENTS**

The Class submits this motion *in limine* to exclude evidence and argument inconsistent with the guilty pleas and plea agreements.

Defendants should be precluded from presenting evidence or arguing reasons for pleading guilty, or to argue any facts that are inconsistent with the plea agreements. The Class anticipates that Defendants may seek to offer evidence and argument that would supplement, change, or vary the terms of plea agreements entered into in this case. The guilty-pleading defendants in this case were successful in persuading the United States Department of Justice ("DOJ") to agree to plea agreements that are vague. They do not identify co-conspirators or even specific transactions that are the bases for the pleas. Rather, they broadly allege a conspiracy that lasted at least from November 2001 until in or about January 2014, during which acts in furtherance of the conspiracy were taken in the Northern District of California and capacitors that were the subject of the conspiracy were sold to customers in the Northern District of California. *See, e.g.*, *United States v. NCC*, No. 17-00540 (N.D. Cal.), ECF No. 54-1. The plea agreements otherwise have few details about the conduct that supports the admission that the guilty pleader violated the Sherman Act.

No defendant should now be permitted to offer evidence characterizing or supplementing the terms of their plea agreements with DOJ. The admissions in the plea agreements are a baseline to which defendants are bound, and from which Plaintiffs may build. Defendants, however, may not undercut or walk away from their admissions. This is because these are binding factual admissions; no new contrary evidence is permitted, and any such evidence would necessarily violate Federal Rule of Evidence 403 and confuse the jury. The prejudice would be severe, as only Defendants and DOJ know what their discussions and decision-making processes were. It would be unfair to permit any defendant to offer evidence seeking to characterize what the plea agreements mean. *See United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail").

Every plea taken in this case was made upon the Court's determination —and the Guilty Party's admission—that there was a factual basis for the plea. Fed. R. Crim. P. 11(b)(3); *see United States v.*

*Broce*, 488 U.S. 563 (1989). Guilty Parties and their coconspirators should be precluded from claiming facts that contradict that factual bases *e.g.*, the twelve-plus year conspiracy was just "isolated incidents" that only affected a "few customers." They should also be estopped from providing new interpretations of their negotiations with DOJ, as those negotiations were sealed from civil discovery and the prejudice to the Class from being deprived of any ability to respond is overwhelming. Fed. R. Evid. 403.

"'Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties.'" *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001). "[I]t is settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit . . . ." *United States v. Real Prop. Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992). Collateral estoppel requires that (1) the conviction be a serious offense; (2) there was a full and fair hearing; (3) the issue must have been necessarily decided at the criminal proceeding; and (4) the party against whom estoppel is asserted is a party in that prior hearing. *Id*. at 518.

Here, it is undisputed that three of the elements are met. Guilty Parties pleaded guilty to a violation of Section 1 of the Sherman Act. The Guilty Parties were motivated to fully litigate the criminal charge. The Guilty Parties were present at the criminal proceeding. The pleas state as an element of a violation of Section 1 of the Sherman Act, that "the conspiracy described in the Information existed at or about the time alleged." *See, e.g.*, Plea Agreement, *United States v. ELNA Co., Ltd. (ELNA Plea)*, No. 16-00365 (N.D. Cal. Oct. 12, 2017) ECF No. 40. In all cases, the charging documents describe a knowing and continuing conspiracy directed at fixing the prices and rigging bids of capacitors sold in the United States and elsewhere, where the Guilty Parties—and coconspirators— met around the world to fix prices and took steps to conceal the conspiracy. *See, e.g.*, Indictment, *United States v. Nippon Chemi-Con*, No. 17-00540 (N.D. Cal Oct. 18, 2017), ECF No. 1. The plea agreements, signed by the Guilty Parties, stated the facts upon which the plea was based clearly and succinctly. Guilty Parties also admitted to participating in the unlawful price-fixing conspiracy at the heart of the Class's claims as stated in the agreements and from time periods as early as November 2001, *NCC Plea*, ECF No. 54-1; *United States v. Matsuo*, No. 17-00073 (N.D. Cal.), ECF No. 12-2, to December 2014. *Id*.; *ELNA Plea*, ECF No. 40; Sentencing Memorandum, *United States v. Holy Stone Plea,* No. 16-00366 (N.D. Cal.), ECF No. 9-2. These issues and others described in the record of the criminal proceedings

were necessarily decided and Guilty Parties should now not have an opportunity to relitigate.

Judicial estoppel "'precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.'" *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997). The doctrine is not limited to the same litigation and can "bar litigants from making incompatible statements in two different cases." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001); *see also id.* ("estoppel is even more appropriate where the incompatible statements are made in two different cases, since inconsistent positions in different suits are much harder to justify") (internal quotation marks omitted).

Courts consider three factors when determining whether judicial estoppel would apply: (1) whether the "party's later position is clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position" such that the acceptance of the later inconsistent position "'would create the perception that either the first or second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). Guilty convinced the Court to accept their plea. Permitting argument to the contrary would clearly be inconsistent. Indeed, if Guilty Parties—or coconspirators—present argument contradictory to the basis on which they pled, it would clearly create a perception it misled this very Court, either at the criminal proceeding or at trial.

Guilty Parties have derived the benefit of a guilty plea—including evading restitution based on the "availability of civil cases" including this very case, *see, e.g.*, *ELNA Plea*, ECF No. 40; *NCC Plea*, ECF No. 54-1; to allow them to recant the reasons why now may deny the victims of the conspiracy civil recourse. The victims of their criminality should not be subject to such unfair detriment. *Cf. In re Maggi*, 57 B.R. 446, 447 (Bankr. D. Or. 1985) ("Where the civil plaintiff was a victim of the crime for which the civil defendant was previously convicted, this circuit and six other circuits apply collateral estoppel where the prior conviction was based upon a plea of guilty" because "the defendant in fairness should not be permitted to litigate entitlement to the proceeds of his crime").

For the reasons stated above, the Class respectfully requests that this Court grant their motion *in limine* to exclude evidence and argument inconsistent with the guilty pleas and plea agreements.

# RESPONSE TO DPP MOTION NO. 9

## I.      INTRODUCTION

Plaintiffs' motion to exclude evidence and argument "inconsistent with the guilty pleas and plea agreements" perfectly illustrates how they intend to mislead the jury about the scope of the pleas ("Plea Agreements").  As explained in Defendants' second motion in limine to admit Plea Agreement rebuttal evidence ("Rebuttal Evidence"), Plaintiffs plan to equate the broad conspiracy alleged in their complaint with the more limited ones outlined in the Plea Agreements.  The instant motion confirms this, incorrectly asserting that the pleading Defendants "admitted to participating in the unlawful price-fixing conspiracy at the heart of the Class's claims as stated in the [plea] agreements."  Mot. at 20.  The Plea Agreements state no such thing.  Each Plea Agreement describes a conspiracy with **narrower** objectives, membership, effects, and timeframes than the conspiracy alleged by Plaintiffs.  *See, e.g.,* Def. MIL 2, Ex. 1.  For example, while Plaintiffs allege a conspiracy involving electrolytic **and film** capacitors, each Plea Agreement describes a conspiracy involving only electrolytic capacitors (indeed, DOJ closed its film-capacitor investigation without taking any action).  *Id.*  And while Plaintiffs allege a conspiracy to set prices for "**all**" capacitors, each Plea Agreement describes a conspiracy to set prices for only "**certain**" electrolytic capacitors.  *Id.*

The instant motion seeks to kneecap Defendants by excluding appropriate Rebuttal Evidence necessary to respond to Plaintiffs' misleading arguments.  It should be denied for three reasons.  First, Defendants do not intend to introduce evidence and argument that "contradict," "undercut," "walk away from," "recant," are "inconsistent with," or "vary the terms of" the Plea Agreements.  Mot. at 19-21.  Second, Plaintiffs' estoppel arguments are unavailing because Defendants will not take "clearly inconsistent" positions or relitigate issues "necessarily decided" in the criminal cases.  And third, the Rebuttal Evidence—the Plea Agreements and related sentencing documents—would not unfairly prejudice Plaintiffs or confuse the jury.

## II.     ARGUMENT

### A.      Defendants Do Not Seek to Introduce Inconsistent Evidence or Argument

The pleading Defendants do not intend to "contradict" their Plea Agreements at trial.  Each Plea Agreement clearly states that the pleading party participated in a conspiracy to fix the price of

"certain electrolytic capacitors."[17]  No pleading Defendant has any intention of denying this, and none of the Rebuttal Evidence contradicts it in any way.  *See* Def. MIL 2.

Plaintiffs ask the Court to preclude Defendants from "claiming" that the pleaded-to conspiracy "'only affected a 'few customers.'"  Mot. at 20.  But this "claim" is true, consistent with the Plea Agreements, and provable with the Rebuttal Evidence.  For example, DOJ told this Court that "Holy Stone's volume of affected commerce is based entirely on sales to the **one United States customer** for which Holy Stone Japan was responsible for negotiating prices."[18]  Likewise, DOJ stated that ELNA's "affected volume of commerce was **not as broad as all U.S. sales**" and "**not all** of ELNA's U.S. customers were necessarily victims."[19]  DOJ's statements are perfectly consistent with how—and the reason why—the Plea Agreements describe a conspiracy to fix the price of "**certain** electrolytic capacitors," rather than **all** electrolytic capacitors.  If the Court intends to allow Plaintiffs to offer evidence of the Plea Agreements, fairness requires that it likewise allow Defendants to establish the contours of those pleas.  To hold otherwise would be deeply unfair and misleading to the jury.

The cases cited by Plaintiffs are easily distinguishable.  In *U.S. v. Broce*, 488 U.S. 563 (1989), the defendants pleaded guilty to two counts of conspiracy but later contended that only one conspiracy existed.  In *U.S. v. Morrison*, 113 F.3d 1020 (9th Cir. 1997), the defendant pleaded guilty to "firearm use" but later contended that he did not "use a gun."  Each of these cases involves a clear inconsistency.  Here, no such contradiction or discrepancy exists.

### B.    Plaintiffs Cannot Establish the Elements of Collateral or Judicial Estoppel

Plaintiffs' estoppel arguments are unpersuasive *ipse dixit*.  Collateral estoppel does not apply because Defendants do not wish to relitigate any issue "actually litigated and necessarily decided" in the criminal cases.  *Cf. Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001) (FTC proceeding had no preclusive effect on private action because although "both contend that [an acquisition] is illegal under the antitrust laws," "plaintiffs here must show they were actually injured"

---

[17]  *See U.S. v. Elna*, 16-cr-365-JD (N.D. Cal.), Dkt. 40; *U.S. v. Holy Stone Holdings*, 16-cr-366-JD (N.D. Cal.), Dkt. 34; *U.S. v. Matsuo*, 17-cr-73-JD (N.D. Cal.), Dkt. 12-2; *U.S. v. NCC*, 17-cr-540-JD (N.D. Cal.), Dkt. 54.

[18]  *U.S. v. Holy Stone Holdings*, 16-cr-366-JD (N.D. Cal.), Dkt. 45, at 4 (emphasis added).

[19]  *U.S. v. Elna*, 16-cr-365 (N.D. Cal.), Dkt. 65 (DOJ Restitution Memo), at 3 (emphasis added).

and the "'markets,' as defined by plaintiffs, are different from the markets in the FTC proceeding.").[20]

Plaintiffs allege a broad conspiracy among manufacturers of "aluminum, tantalum, *and film*" capacitors

to "set prices for *all* the capacitors they produce."[21]  No Plea Agreement describes a conspiracy that

involves *film* or set prices for *all* (as opposed to *certain electrolytic*) capacitors, and DOJ has been clear

that the pleaded-to conduct's effect "was not as broad as all U.S. customers."[22]  Thus, no Defendant

admitted to Plaintiffs' broadly-alleged conspiracy, and its existence has not been "actually litigated" or

"necessarily decided."

Judicial estoppel does not apply either.  As explained in Section A, Defendants will not introduce

evidence or argument "clearly inconsistent" with the Plea Agreements.  *Cf. New Hampshire v. Maine*,

532 U.S. 742, 750-51 (2001) (argument that river boundary runs "along the Maine shore" is "clearly

inconsistent" with prior claim that it runs in the "middle of the river").[23]  To the contrary, as evidenced

by Defendants' exhibit and witness lists, which include inculpatory evidence and individuals who

pleaded guilty and went to jail, the pleading Defendants intend to acknowledge and accept full

responsibility for their guilty pleas at trial.

**C.    The Rebuttal Evidence Would Not Prejudice Plaintiffs or Confuse Jurors**

Finally, Plaintiffs' prejudice argument—that Defendants and DOJ's private "discussions and

decision-making processes" were "sealed off from discovery"—is a straw man in that Defendants do

not intend to rely on or "provid[e] new interpretations of" any private discussions.  Instead, the

Rebuttal Evidence consists of public documents related to the factual basis of the Plea Agreements, *see*

Def. MIL 2, as well as 30(b)(6) testimony taken by DPPs on the issue of the factual bases of the pleas.  If

Plaintiffs are allowed to offer the Plea Agreements, the Rebuttal Evidence would not confuse the jury,

---

[20] *See also U.S. v. Real Property Loc. at Section 18*, 976 F. 2d 515, 518-19 (9th Cir. 1992) ("Findings concerning the status or character of the property were not necessary or essential to Carlson's guilty plea" to a drug charge).

[21] Third Am. Compl., 14-cv-3264, ECF No. 1831, at ¶¶ 7, 12-13.

[22] *U.S. v. Elna*, 16-cr-365 (N.D. Cal.), Dkt. 65 (DOJ Restitution Memo), at 3.

[23] *See also Hamilton v. State Farm*, 270 F. 3d 778, 784 (9th Cir. 2001) (failure to disclose claims on bankruptcy schedule despite "express [statutory] duties of disclosure" is clearly inconsistent with later lawsuit on those claims); *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (position that widow was "injured by retention of the residence in the trust" is "directly contrary" to her earlier position that "the trust retain the residence").

1    but would rather mitigate any confusion by addressing Plaintiffs' efforts to conflate the criminal and civil

2    cases.  The motion should be denied.

**MOTION IN LIMINE NO. 10:**

**MOTION TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING FOREIGN REGULATORY ACTIONS OR INACTIONS**

The Class submits this motion *in limine* to exclude evidence or argument concerning foreign regulatory actions or inactions.

The Class anticipates that some or all Defendants will seek to introduce evidence of, and/or make argument concerning, the actions or inactions of foreign regulatory agencies—including those of Japan, Taiwan, and the European Union—with regards to some of the conduct at issue in this lawsuit. These foreign regulatory agencies apply laws that are different from the law which the jury will be instructed to apply. The foreign regulatory agencies and bodies operate under different regimes with different rules and procedures. They did so, in most or all situations, with respect to a narrower set of facts than that which will be before the jury. Thus, what foreign regulatory agencies did or did not do is irrelevant under Federal Rule of Evidence 402. Evidence of such actions or inactions should be excluded, as should arguments referencing such actions or inactions.

Moreover, even if such foreign regulatory actions or inactions had any marginal relevance, introducing evidence or argument concerning foreign regulatory actions or inactions would likely lead to jury confusion and unfair prejudice under Federal Rule of Evidence 403. To address such confusion and prejudice, a series of mini-trials, *for each Defendant*, would be required on the law applied by each foreign regulatory agency, the difference between such law and that applicable here, the facts to which such law was applied, the differences between those facts and those presented here, and the implications of all those differences. Not only would such mini-trials constitute a massive waste of time, they would very likely confuse the jury further, rather than cure the original confusion and prejudice.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Even if a specific piece of evidence qualifies as relevant under Federal Rule of Evidence 401, it will be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision by the jury on an improper basis. *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684,

690 (9th Cir. 2001). The Court has the discretion to exclude any evidence upon its determination that the evidence is irrelevant, unduly prejudicial, confusing or misleading. *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994).

## A. Evidence of Actions or Inactions by Foreign Regulatory Agencies Are Not Relevant and Such Evidence Should Be Excluded and Reference to It Barred

The jury will be called on to determine whether Defendants' conduct violated Section 1 of the Sherman Act, 15 U.S.C. § 1, based on extensive evidence gathered by the Class over the last five years. In contrast, the antitrust laws of Japan, Taiwan, and Europe govern the decisions of their respective foreign regulatory agencies—not the Sherman Act; and, in most or all cases, those foreign agencies based their decisions regarding Defendants' conduct on a subset of the facts that will be presented to the jury, here. Accordingly, what actions these foreign regulatory agencies did or did not take with respect to Defendants' conduct, based on the legal standards of those foreign laws and the different facts before them, is not relevant to the jury's decision whether, based on the facts that will before it, Defendants violated Section 1 of the Sherman Act. Thus, evidence of such actions or inactions, as well as references thereto by Defendants, should be excluded under Federal Rules of Evidence 401 and 402. *Cf. In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 477 (S.D.N.Y. 2016) (excluding expert testimony concerning foreign regulatory agency actions on *inter alia* the ground that "[t]here is no reason to believe that the regulatory framework of Canada or Germany is similar to the FDA's system"); *Pa. Tr. Co. v. Dorel Juvenile Grp., Inc.*, 851 F. Supp. 2d 831, 842–43 (E.D. Pa. 2011) (excluding evidence of the defendant's obligations under Canadian law on the ground that they did not have relevance its obligations under United States law).

## B. Any Relevance of Actions or Inactions Taken by Foreign Regulatory Agencies Is Confusing and Unfairly Prejudicial Should Be Excluded

Even if one accepts *arguendo* that the actions or inactions taken by foreign regulatory agencies would have some marginal relevance to the question whether Defendants violated Section 1 of the Sherman Act, such evidence is "inherently prejudicial and presents a substantial risk of jury confusion," and so should be excluded under Federal Rule of Evidence 403. *Id.* (collecting cases). The court, in *In re Seroquel Prod. Liab. Litig.*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009), explained why admitting such

evidence creates unfair prejudice and confusion and why, once created, such unfair prejudice and confusion cannot be effectively ameliorated:

> To admit evidence about the foreign regulators' actions regarding [the product at issue] without providing context concerning the regulatory schemes and decision-making processes involved would strip the jury of any framework within which to evaluate the meaning of that evidence. Absent such background and context, a jury might be more inclined to abdicate its responsibilities and defer to the negative decisions of three foreign regulators regarding [the product's] safety. Hence, precluding [the defendant] from offering such contextual evidence would unfairly prejudice the company. On the other hand, allowing [it] to introduce this evidence would result in a series of "mini-trials" regarding the grounds for the decisions and the regulatory schemes of the three foreign countries involved. This would confuse the jury and waste everyone's time.

*Id.* at 1318. Accordingly, courts routinely exclude evidence of actions and inactions of foreign regulators on Federal Rule of Evidence 403 grounds, even when they have determined that such evidence might be technically relevant. *See, e.g.*, *id.*; *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (collecting cases and barring expert testimony concerning foreign regulatory agency actions); *see also generally In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. 05-01699, 2008 WL 8140112, at *1 (N.D. Cal. Apr. 30, 2008) (granting, without discussion, motion *in limine* to exclude testimony concerning regulatory agency actions); *Monroe v. Griffin*, No. 14-00795, 2015 WL 5258115, at *3 (N.D. Cal. Sept. 9, 2015) (granting a motion *in limine* to exclude evidence of tangential matters to avoid the necessity of "mini-trials").

If each Defendant was allowed to introduce evidence of actions taken or not taken by some or all of these foreign regulatory agencies with regards to that Defendant's conduct, it is almost certain to result in jury confusion and undue prejudice to the Class. This would, in turn, necessitate a "series of 'mini-trials' regarding the grounds for the decisions [as to each Defendant] and the regulatory schemes of the [several] foreign countries involved." *Seroquel*, 601 F. Supp. 2d at 1318. "This would confuse the jury and waste everyone's time." *Id.* Thus, Defendants should be barred, under Federal Rule of Evidence 403, from introducing evidence of actions that foreign regulators did or did not take, and from making reference to such actions or inactions in argument.

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in limine* to exclude evidence or argument concerning foreign regulatory actions or inactions.

**RESPONSE TO DPP MOTION NO. 10**

Notwithstanding the title of DPPs' motion *in limine* No. 10 "to exclude evidence and argument concerning foreign regulatory actions or inactions," DPPs seek to exclude such evidence only to the extent it is not helpful to their case. Indeed, they intend to introduce evidence concerning "raids" by foreign regulators on certain Defendants' offices abroad, and the circumstances of Taitsu's submission of documents to one foreign regulator, while they simultaneously ask the Court to exclude evidence beneficial to Defendants, such as the declination by foreign regulators to pursue antitrust actions against certain Defendants.  DPPs' efforts to carve out exceptions to suit their preferred narrative should be denied.

Defendants agree with DPPs' stated premise that "[t]he foreign regulatory agencies and bodies operate under different regimes with different rules and procedures . . . . Thus, what foreign regulatory agencies did or did not do is irrelevant under Rule 402." *See* 2020-01-06 DPC Omnibus MIL Submission at 22 *and* Defs. Mot. *in Limine* No. 11, § A. Defendants also agree, as DPPs assert, that "even if such foreign regulatory actions or inactions had any marginal relevance, introducing evidence or argument concerning foreign regulatory actions or inactions would likely lead to jury confusion and unfair prejudice under Rule 403." *See* 2020-01-06 DPC Omnibus MIL Submission at 22 *and* Defs. Mot. *in Limine* No. 11, § B. Accordingly, Defendants likewise moved this Court to exclude evidence concerning foreign regulatory or enforcement actions. (*See* Defs. Mot. *in Limine* No. 11.)

In light of the parties' apparent alignment, Defendants sought a joint stipulation with DPPs to obviate the need for the Court to spend time on two motions seeking seemingly identical relief. Yet, instead of agreeing to Defendants' proposed stipulation, DPPs insisted that they must be allowed to introduce at least two categories of evidence that seemingly would be precluded by their motion: (i) evidence regarding "raids" that initiated certain foreign investigations into certain Defendants' sales of various types of capacitors; and (ii) evidence regarding the circumstances of Taitsu's submission of documents to China's National Development and Reform Commission (the "NDRC"). Really, all that DPPs seek to exclude is the fact that many regulators concluded their investigations because they yielded no factual evidence of conspiratorial conduct, while preserving the right to introduce other evidence of those investigations where convenient to their narrative of the case.

Both categories of evidence that DPPs seek to introduce must be excluded according to the language and rationale of DPPs' own motion *in limine*. DPPs' position that this particular subset of evidence concerning foreign regulatory actions—and **only** this particular subset—is relevant and not prejudicial is logically inconsistent and not supported by law or fact. To begin, the "raids" that DPPs seek to introduce to the jury are the means by which certain foreign regulators initiate antitrust investigations. If the substance or conclusion of those investigations is not relevant and is prejudicial, as DPPs admit, then the fact or method of the initiation of those investigations must also be irrelevant and prejudicial. Moreover, Defendants would need to be able to rebut the prejudicial inferences created by introducing evidence of the foreign "raids," resulting in the very same "mini-trials" that DPPs admit in their motion would "constitute a massive waste of time."

Likewise, if the course of those investigations does not bear on the issues before the jury, then the manner in which Taitsu cooperated in any such investigation has no relevance either. Nor is there any way to square DPPs' motion *in limine* with the position that DPPs have taken with respect to Taitsu's submission of documents to the NDRC.[24] Further, the risk of prejudice and jury confusion is especially high with respect to the issue of Taitsu's submission of altered documents to the NDRC because it is likely that the jury would infer from that conduct that Taitsu is "guilty" with respect to the Chinese investigation and similarly guilty with respect to the conduct alleged in this case. And this double inference, neither part of which is warranted or supported by the evidence, is impermissible character evidence under Rule 404(b).

The Court should not permit DPPs' selective—and self-serving—application of their argument that foreign regulatory actions or inactions are neither relevant nor prejudicial. Instead, the Court should grant Defendants' fairer and logical motion seeking to exclude **all** such evidence—without any

---

[24] The inconsistency of DPPs' position is further highlighted by their Motion *in Limine* No. 11, which seeks to exclude evidence and argument "concerning the closure of the United States Department of Justice's ('DOJ') film capacitor investigation." DPPs presumably seek to exclude this evidence because DOJ ended its investigation without taking any action in the film capacitor industry. Yet, this forces DPPs to take the contradictory and, indeed, nonsensical position that the mere fact of China's investigation of Taitsu—under Chinese law—is somehow probative of factual or legal issues relating to DPPs' claim brought under U.S. antitrust law, but that the ultimate conclusion of DOJ's investigation of Taitsu—under U.S. antitrust law—is not probative of those same factual or legal issues.

caveats and whether helpful or harmful to any particular party—under Rules 402, 403, and 802.

**MOTION IN LIMINE NO. 11:**

**MOTION TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING THE CLOSURE OF US DOJ'S FILM CAPACITOR INVESTIGATION**

The Class submits this motion *in limine* to exclude evidence or argument concerning the closure of the United States Department of Justice's ("DOJ") film capacitor investigation.

The Class anticipates that some or all Defendants will seek to introduce evidence that US DOJ closed its investigation into the film capacitor industry without bringing charges, or that any particular defendant did not face criminal charges as part of US DOJ's electrolytic investigation. That evidence is not admissible and should be excluded from the trial of this matter. Such evidence has been excluded in similar cases because it is irrelevant and because it would confuse the jury. *Static Random Access Memory (SRAM)*, 2010 WL 10086747, at *2 (excluding reference to closure of US DOJ's SRAM investigation).

The decision not to prosecute is highly discretionary and demonstrates nothing more than the opinion of the prosecutor. *Goldstein v. City of Long Beach*, 481 F.3d 1170, 1173 (9th Cir. 2007), reversed on other grounds, *Van de Kamp v. Goldstein,* 555 U.S. 335 (2009). "All that the decision not to prosecute can accurately show was that the case should not be prosecuted. This minimal probative value is outweighed by the possibility that jurors unfamiliar with the judicial process might be misled." *J.W. v. City of Oxnard,* No. 07-06191, 2008 WL 4810298, at * 22 (C.D. Cal. Oct. 27, 2008). For this reason, the closure of the Film investigation has no relevance because of, among other reasons, the differing legal standards between criminal and civil matters and the government's need to manage resources. Accordingly, the Class respectfully requests, pursuant to Federal Rules of Evidence 401, 402, and 403 and the Court's inherent authority, that the Court bar Defendants from introducing evidence of, or make argument concerning, the closure of US DOJ's Film investigation. *See Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir. 1988) ("[e]vidence of an acquittal is not generally admissible in a subsequent civil action"); *United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998) (affirming trial court decision to exclude evidence of criminal dismissal due to risk of confusing jury); *Williams v. Cambridge Mutual Fire Ins. Co.,* 230 F.2d 293, 294 (5th Cir. 1956) (evidence of non-prosecution inadmissible in civil case); *see also Am. Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321, 325 (3d Cir. 1985) (trial court committed reversible error in admitting evidence of non-prosecution).

**RESPONSE TO DPP MOTION NO. 11**

DPPs have made clear that in their arguments to the jury, they are going to rely heavily upon the DOJ investigations and prosecutions of various electrolytic capacitor manufacturers.  Defendants have a right to explain that those arguments do not apply to certain Defendants.

In their Motion in Limine No. 11, DPPs seek to exclude "evidence that US DOJ closed its investigation into the film capacitor industry without bringing charges, or that any particular defendant did not face criminal charges as part of US DOJ's electrolytic investigation."  Such exclusions, however, would mislead the jury to an unjust result:  Defendants—in particular Shinyei, Taitsu, AVX, UCC, Holy Stone Enterprise Co., Ltd., and Milestone Global Technology, Inc.—would be prohibited from proffering facts critical to their defenses, while DPPs would be left free to argue that the investigation and the plea agreements obtained in the electrolytic capacitor investigation are direct evidence that those Defendants participated in DPPs' alleged broader electrolytic capacitor *and film capacitor* conspiracy, and that sales of film capacitors should be included in any damages calculation.  DPPs would thus be able to create a spillover effect, prejudicing and misleading the jury to a degree no jury instruction could cure or mitigate.  That is exactly what Rule 403 was designed to avoid.  DPPs' motion must be denied.[25]

## ARGUMENT

DPPs have alleged a single conspiracy spanning over a decade "to fix and inflate the prices of aluminum, film, and tantalum capacitors."  ECF No. 1693.  As the Court is aware, the DOJ conducted an investigation into the electrolytic capacitor industry, prosecuting only certain Defendants and obtaining plea agreements that concern only certain electrolytic capacitors.  Yet, ***10 of the 15 remaining named Defendants were never targets of the DOJ's electrolytic capacitors investigation and never pled***

---

[25] Defendants' Motion in Limine No. 1 seeks to exclude documents and testimony created in the criminal proceedings.  *See* Defs.' Mot. in Limine No. 1.  Even if that motion is granted, this motion should still be decided to the extent DPPs seek to introduce evidence regarding the facts of the criminal investigations and final judgments.

*guilty*.[26]  While the DOJ conducted a separate investigation into the film capacitor industry that included Shinyei and Taitsu, ***the DOJ closed that investigation in January 2016 without taking any action against any Defendant***.[27]

DPPs, however, seek a ruling that would permit them to reference the DOJ's investigations, reference the guilty pleas in the electrolytic capacitor investigation, and then leave it to the jury to assume—*incorrectly*—that non-pleading Defendants such as Shinyei, Taitsu, AVX, UCC, and the Holy Stone entities were charged or faced charges in both of the investigations.  In fact, DPPs have already argued to the Court that the guilty pleas are direct evidence of DPPs' far broader alleged conspiracy involving film capacitors and other Defendants—such as those above—that were never part of the DOJ's electrolytic investigation.[28]

### A. Defendants Should be Permitted to Introduce Evidence that the DOJ Closed Its Investigation Into the Film Capacitors Industry

Evidence that the DOJ closed its separate investigation into the film capacitor industry is crucial given DPPs' effort to force under the umbrella of a single conspiracy two different DOJ investigations with two vastly different outcomes.  This distinguishes the instant case from *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07–md–01819 CW, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010), the only case DPPs cite that addressed the admissibility of evidence of a DOJ antitrust investigation.  In *SRAM*, the scope of both the alleged conspiracy and the single DOJ investigation in the cited motion in limine was alleged price fixing in the SRAM industry.  Under those circumstances, the court determined that "the SRAM investigation would not come in at all, neither its opening nor its

---

[26] These Defendants are the four Shinyei entities (Shinyei Kaisha, Shinyei Technology Co., Shinyei Capacitor Co., and Shinyei Corporation of America), the two Taitsu entities (Taitsu Corporation and Taitsu America, Inc.), AVX Corporation, the two Holy Stone entities (Holy Stone Enterprise Co. and Milestone Global Technology, Inc.), and United Chemi-Con, Inc.  Other Defendants who settled with DPPs and were never targets of the DOJ's electrolytic capacitor investigation are KEMET, Okaya Electric Industries Co., Okaya Electric America Inc., Nissei Electric Co., Nitsuko Electronics Corporation, Soshin Electric Co., Soshin Electronics of America, Inc., and Shizuki Electric Co.

[27] *See, e.g.*, ECF 1053 at 72:24-73:10 (transcript of hearing held on Jan. 13, 2016).

[28] For example, in opposing Shinyei and Taitsu's motion for summary judgment, DPPs argued that the guilty pleas are "direct evidence [that] establishes the conspiratorial core" and make it "more likely" that other information exchanges—including those relating only to film capacitors and to Defendants that manufacture and sell only film capacitors—"are part of the same conspiracy."  ECF 805 at 2-3.

closing," nor the fact of a party's ACPERA status or leniency application in that investigation.  *SRAM*, No. 07–md–01819 CW, ECF 1222 at 13, 62-63 (transcript of pretrial hearing held on Dec. 14, 2010).

By contrast, Defendants must be able to point to closure of the film capacitor investigation to rebut DPPs' inference that, because the DOJ charged certain Defendants and obtained guilty pleas in the *electrolytic* capacitor investigation, then the DOJ must also have taken similar action against Shinyei and Taitsu in the *film* capacitor investigation.  Excluding all references to the film capacitor investigation would not suffice, because DPPs allege a single conspiracy and suggest the guilty pleas demonstrate that a higher burden of proof—beyond a reasonable doubt—has already been met for showing a conspiracy existed as to *all* Defendants.

### B. Defendants Should be Permitted to Introduce Evidence Showing Defendants Did Not Face Criminal Charges in the DOJ's Electrolytic Capacitor Investigation

For similar reasons, evidence that a number of Defendants—including Shinyei, Taitsu, AVX, UCC, and the Holy Stone entities—were never targets of the DOJ's electrolytic capacitor investigation is critical.  Otherwise, the probative value of DPPs' evidence concerning the investigations and pleas, if any exists at all, would be substantially outweighed by the prejudice to such Defendants.  *See* Fed. R. Civ. P. 403.

None of DPPs' cases suggests otherwise.  In those cases, the excluded evidence related to an outcome that *followed* a criminal investigation of or action against a party—not the *absence* of a substantive investigation of that party in the first instance.[29]  Thus, issues of "prosecutorial discretion" do not apply here, and there is no risk that different standards would confuse the jury.  Simply put, DPPs have shown no basis for excluding evidence "that any particular defendant did not face criminal charges as part of US DOJ's electrolytic investigation," particularly when DPPs would lead the jury to believe that the *existence* of that investigation implicates *all* Defendants and that the plea agreements

---

[29] *See SRAM*, 2010 WL 10086747 (DOJ investigation); *J.W. v. City of Oxnard*, No. CV 07-06191 CAS, 2008 WL 4810298 (C.D. Cal. Oct. 27, 2008) (criminal investigation); *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988) (criminal trial); *United States v. Marrero-Ortiz*, 160 F.3d 768 (1st Cir. 1998) (arrest and charge); *Williams v. Cambridge Mutual Fire Ins. Co.*, 230 F.2d 293 (5th Cir. 1956) (criminal trial). The case of *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321 (3d Cir. 1985), concerned evidence of non-prosecution following an investigation by fire officials.  The case of *Goldstein v. City of Long Beach*, 481 F.3d 1170 (9th Cir. 2007), is inapposite, dealing with whether a district attorney had absolute immunity from suit.

demonstrate a higher burden of proof has already been met.

## CONCLUSION

For the foregoing reasons, DPPs' Motion in Limine No. 11 should be denied.

**MOTION IN LIMINE NO. 12:**

**MOTION TO EXCLUDE ARGUMENT THAT THE CLASS'S CLAIMS ARE BARRED BECAUSE THEY ARISE FROM OR INCLUDE FOREIGN COMMERCE**

The Class submits this motion *in limine* to exclude evidence or argument that the Class's claims are barred, in whole or in part, because they arise from or include foreign commerce under the Foreign Trade Antitrust Improvements Act of 1982.

The Class only seeks to recover damages for Defendants' unlawful overcharges for aluminum, tantalum and film capacitors "billed to" or "shipped to" entities in the United States. ECF No. 1302 at 5-8 (this Court holding that capacitors billed to or shipped to the United States fall into the FTAIA's import exception). The Class definition as certified by this Court only includes capacitors billed to or shipped to entities within the United States. ECF No. 2282. Further, the Class's expert only included aluminum, tantalum and film capacitors billed to or shipped to entities in the United States in his damages calculation and no Defendant has suggested otherwise. While much of the conduct occurred outside the United States, evidence of that conduct and evidence of its impact on the United States is admissible.

The Court should preclude Defendants from present evidence or argument that g the Class's claims arise from or include foreign commerce. Final Pretrial Scheduling Order at 4-5, *In re TFT-LCD Antitrust Litig.*, No. 07-01827 (N.D. Cal. May 4, 2012), ECF No. 5597 (granting motion *in limine* to "exclude argument that plaintiffs' claims are barred because they arise from foreign commerce"); Final Pretrial Scheduling Order at 4, *In re TFT-LCD Antitrust Litig.*, No. 12-04114 (N.D. Cal. July 11, 2013), ECF No. 206 (same); *see United States v. Hui Hsiung,* 778 F.3d 738, 754-55 (9th Cir. 2015) ("Although our circuit has not defined 'import trade' for purposes of the FTAIA, not much imagination is required to say that this phrase means precisely what it says.").

For the foregoing reasons, the Class respectfully requests that this Court grant their motion *in limine* to exclude evidence or argument that the Class's claims are barred, in whole or in part, because they arise from or include foreign commerce.

**RESPONSE TO DPP MOTION NO. 12**

Plaintiffs' Motion *in Limine* No. 12 seeks to exclude evidence or argument that the Class's claims were barred because they arise from or include foreign commerce under the FTAIA.  Defendants do not dispute that Plaintiffs limit their damages recovery, and their expert's damages calculation, to sales of capacitors that were "billed to" or "shipped to" entities in the United States.[30]  However, Plaintiffs' limitation on their scope of damages does not obviate their burden to prove the applicability of the FTAIA to this case.

The FTAIA provides that the Sherman Act does not apply to anticompetitive conduct involving trade or commerce (other than import trade or import commerce) with foreign nations, unless that conduct meets the requirements of the "domestic effects" exception. 15 U.S.C. § 6a.  To meet that narrow exception, Plaintiffs must prove that the alleged foreign anticompetitive conduct was intended to and did in fact produce a "direct, substantial, and reasonably foreseeable effect" on domestic commerce that gives rise to Plaintiffs' claims.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States"); *F. Hoffmann-LaRoche Ltd. v. Empagran, S.A.*, 542 U.S. 155, 160-62 (2004); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 987 (9th Cir. 2008) (finding that the "gives rise to" language in the FTAIA requires a showing of proximate cause).

Plaintiffs contend that the jury need not address whether the alleged anticompetitive conduct at issue meets the "domestic effects" exception because of the Court's finding, in the context of deciding the scope of relevant commerce under the FTAIA, that capacitors that were "billed to" or "shipped to" the United States are within the scope of import trade or commerce.  Plaintiffs are incorrect.  The Court's threshold finding regarding import trade or commerce under the FTAIA does not alleviate Plaintiffs of the burden to prove up each element of their claims.  In similar cases, courts have required that plaintiffs satisfy their burden to show that the alleged foreign anticompetitive conduct meet the FTAIA's "domestic effects" exception, even where conspirators were found to have engaged in import

---

[30] Should Plaintiffs later seek broader damages for capacitors that were not "billed to" or "shipped to" entities in the United States, Defendants reserve their right to argue and present evidence that those purchases exceed Plaintiffs' class definition and those claims are barred by the FTAIA.

commerce.  *See, e.g.*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 855 (7th Cir. 2012) ("As noted, the

Complaint before us alleges import transactions.  Thus, the only outstanding question is whether this

import trade has been substantially and intentionally affected by an anticompetitive arrangement.");

*United States v. Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (analyzing whether defendants' conduct of

"producing and selling LCD panels to customers in the United States" satisfied the FTAIA's domestic

effects provision, despite finding that "conspirators engaged in import commerce"); *In re Static Random

Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5477313, at *5-7 (N.D. Cal.

Dec. 31, 2010) (analyzing whether "SRAM [that] was billed to the United States" met the requirements

of the FTAIA's domestic effects exception); *In re Vitamin C Antitrust Litig.*, 904 F. Supp. 2d 310, 318

(E.D.N.Y. 2012) (finding that plaintiffs' "claims fall within the import trade or commerce exception" but

still analyzing whether the "claims would remain within the reach of the Sherman Act because of their

'direct, substantial, and foreseeable effect' on domestic commerce").

Moreover, even where courts in the Ninth Circuit have concluded that conduct constituted

import commerce, they have required the inclusion of "domestic effects" exception questions and

instructions in verdict forms and jury instructions, making clear that this is an issue for the jury.  *See, e.g.,

In re Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115-WHO, ECF Nos. 115, 906, 907 (N.D.

Cal. 2014) (holding that the conduct at issue involved import commerce but still including the following

question on the verdict form:  "Did Plaintiffs prove that the conspiracy was intended to have a substantial

effect in the United States, and that it did have such a substantial effect?" and the following jury

instruction titled "Substantial Effects Test":  "Where conduct primarily or wholly occurs outside of the

United States, United States antitrust laws only apply to that conduct where the conspiracy to fix the

prices was intended to have and had a substantial effect in the United States"); *Wholesale Corp. v. AU

Optronics Corp., Case No. 2:13-cv-01207-RAJ*, ECF Nos. 575, 622  (W.D. Wash. Sept. 22, 2014) (holding

that the alleged purchases constituted import commerce but including a jury instruction titled "Antitrust

– Impact on Domestic Commerce" stating that:  "A conspiracy is only responsible for acts of its members

that have an impact on domestic commerce," which could only be found if products were sold to a

customer in the U.S. or sold outside the U.S. that had a "direct, substantial, and reasonably foreseeable

effect on later sales to a customer in the United States").

The two orders cited by Plaintiffs in their motion support Defendants' position.  In both *In re TFT-LCD Antitrust Litigation* orders, the court precluded the defendants from presenting broad arguments that the plaintiffs' claims were barred because of their connection to foreign commerce, ***but*** held that "factual predicates must be established at trial re FTAIA issues [and] those will be submitted to the jury for determination."  *In re TFT-LCD Antitrust Litig.*, Case No. 3:07-md-01827-SI (N.D. Cal. May 4, 2012) ECF No. 5597 at 4-5; *In re TFT-LCD Antitrust Litig.*, Case No. 3:12-cv-04114-SI (N.D. Cal. July 11, 2013) ECF No. 206 at 4.  Defendants here seek exactly that—that the factual predicates of the FTAIA's domestic effects exception be established at trial and submitted to the jury for determination.

For purposes of the FTAIA summary judgment motion ***alone***, Defendants did not contest Plaintiffs' evidence attempting to show that the conspiracy focused on the U.S. market.  That motion was a purely legal determination of which categories of sales the FTAIA intended to exclude from the reach of the Sherman Act.  *See* Defendants' Reply In Support of Motion for Partial Summary Judgment, ECF No. 985 at n.1, n.14.  But Defendants have long maintained, as a key defense, that Plaintiffs have not shown and will not be able to prove that the alleged conspirators, who met exclusively in Asia and discussed primarily Asian customers and markets, targeted or intend to affect the U.S. capacitors market.  The Court should reject Plaintiffs' improper effort to preclude that critical defense at trial through this Motion.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 12 to the extent they seek to preclude Defendants from arguing and presenting evidence that Plaintiffs failed to satisfy their burden under the FTAIA to show that the alleged conspiracy was intended to and did in fact produce a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce that gave rise to Plaintiffs' claims.

Dated: January 21, 2020

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:      */s/ Joseph R. Saveri*
              Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Joshua P. Davis (State Bar No. 193254)
Anupama K. Reddy (State Bar No. 324873)
Gwendolyn R. Giblin (State Bar No. 181973)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Lead Counsel for Direct Purchaser Class Plaintiffs*