# Exhibit 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD |
| | Case No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO:<br>THE DIRECT PURCHASER CLASS ACTION | JOINT SET OF PROPOSED JURY<br>INSTRUCTIONS AND OBJECTIONS |
| | Date:       February 13, 2020<br>Time:       1:30 p.m.<br>Judge      Honorable James Donato<br>Courtroom:  11, 19th Floor |

## Table of Contents

STIPULATED PRELIMINARY INSTRUCTION NO. 1 RE DUTY OF THE JURY OFFERED BY DPPS..................................................................................1

STIPULATED PRELIMINARY INSTRUCTION NO. 2 RE CLASS ACTION .............. 2

DISPUTED PRELIMINARY INSTRUCTION NO. 3 RE IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES OFFERED BY DPPS...................... 3

DISPUTED PRELIMINARY INSTRUCTION NO. 3 RE IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES OFFERED BY DEFENDANTS ........ 4

DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 3: IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES .......... 6

DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 3 RE IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES .......... 8

STIPULATED PRELIMINARY INSTRUCTION NO. 4 RE OPENING INSTRUCTIONS ..................................................................................10

DISPUTED PRELIMINARY INSTRUCTION NO. 5 RE CORPORATE EQUALITY OFFERED BY DPPS................................................................. 12

DISPUTED PRELIMINARY INSTRUCTION NO. 5 RE CORPORATE EQUALITY OFFERED BY DEFENDANTS ................................................... 13

DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 5: CORPORATE EQUALITY ................................................................ 14

DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 5 RE CORPORATE EQUALITY ................................................................ 15

DISPUTED PRELIMINARY INSTRUCTION NO. 6 RE OUTLINE OF THE TRIAL OFFERED BY DPPS................................................................. 16

DISPUTED PRELIMINARY INSTRUCTION NO. 6 RE OUTLINE OF THE TRIAL OFFERED BY DEFENDANTS ................................................... 17

DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 6: OUTLINES OF THE TRIAL .............................................................18

DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 6 RE OUTLINE OF THE TRIAL .............................................................19

DISPUTED PRELIMINARY INSTRUCTION NO. 7 RE BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE OFFERED BY DPPS .................... 20

DISPUTED PRELIMINARY INSTRUCTION NO. 7 RE BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE OFFERED BY DEFENDANTS ....... 21

**DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 7: BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE** ...................................22

**DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 7 RE BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE** ...................23

**STIPULATED PRELIMINARY INSTRUCTION NO. 8 RE WHAT IS EVIDENCE** .......24

**STIPULATED PRELIMINARY INSTRUCTION NO. 9 RE DIRECT AND CIRCUMSTANTIAL EVIDENCE** ...............................................................25

**STIPULATED PRELIMINARY INSTRUCTION NO. 10 RE WHAT IS NOT EVIDENCE** ...............................................................................................26

**STIPULATED PRELIMINARY INSTRUCTION NO. 11 RE EVIDENCE FOR A LIMITED PURPOSE** ...........................................................................27

**STIPULATED PRELIMINARY INSTRUCTION NO. 12 RE RULING ON OBJECTIONS** .........................................................................................28

**STIPULATED PRELIMINARY INSTRUCTION NO. 13 RE DEPOSITION TESTIMONY** .............................................................................................29

**STIPULATED PRELIMINARY INSTRUCTION NO. 14 RE CREDIBILITY OF WITNESSES** ...................................................................................... 30

**STIPULATED PRELIMINARY INSTRUCTION NO. 15 RE EXPERT OPINION** .........32

**DISPUTED PRELIMINARY INSTRUCTION NO. 16 RE GUILTY PLEAS AND CONVICTIONS OFFERED BY DPPS** ....................................................33

**DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 16: GUILTY PLEAS AND CONVICTIONS** ............................................................35

**DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 16 RE GUILY PLEAS AND CONVICTIONS** ...............................................37

**DISPUTED PRELIMINARY INSTRUCTION NO. 17 RE GUILTY PLEAS OF CORPORATIONS—EMPLOYEE-WITNESSES OFFERED BY DPPS** .............39

**DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 17: CREDIBILITY OF EMPLOYEE WITNESSES OF CORPORATIONS WHO PLED GUILTY OFFERED BY DPPS** ....................................................... 41

**DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 17: GUILTY PLEAS OF CORPORATIONS—EMPLOYEE-WITNESSES BRIEFING** ...............................................................................................42

**STIPULATED PRELIMINARY INSTRUCTION NO. 18 RE FOREIGN LANGUAGE TESTIMONY OFFERED** .......................................................43

**DISPUTED PRELIMINARY INSTRUCTION NO. 19: TRANSLATIONS OF DOCUMENTS OFFERED BY DPPS** ........................................................44

**DISPUTED PRELIMINARY INSTRUCTION NO. 19 RE TRANSLATIONS OF DOCUMENTS OFFERED BY DEFENDANTS** .................................................45

**DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 19: TRANSLATION OF DOCUMENTS** ....................................................47

**DEFENDANTS' BRIEF ON DISPUTED PRELIMINARY INSTRUCTION NO. 19 RE TRANSLATIONS OF DOCUMENTS** ..........................................49

**STIPULATED PRELIMINARY INSTRUCTION NO. 20: NO TRANSCRIPT AVAILABLE TO JURY** ..........................................................50

**STIPULATED PRELIMINARY INSTRUCTION NO. 21: TAKING NOTES**.................51

**STIPULATED PRELIMINARY INSTRUCTION NO. 22: QUESTIONS TO WITNESSES BY JURORS**........................................................52

**STIPULATED PRELIMINARY INSTRUCTION NO. 23: CONDUCT OF THE JURY** ..53

**STIPULATED INSTRUCTION NO. 1 RE DUTY OF JURY** ........................................55

**DISPUTED INSTRUCTION NO. 2 RE BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE OFFERED BY DPPS** ........................................56

**DISPUTED INSTRUCTION NO. 2: BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE OFFERED BY DEFENDANTS** .............................57

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 2: BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE** ....................................58

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 2 RE BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE** .........................59

**STIPULATED INSTRUCTION NO. 3 RE CLASS ACTION**.......................................60

**DISPUTED INSTRUCTION NO. 3A RE COUNSEL COOPERATION OFFERED BY DEFENDANTS**..............................................................61

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 3A: COUNSEL COOPERATION OFFERED BY DEFENDANTS** .................................62

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 3A RE COUNSEL COOPERATION** ..............................................................63

**DISPUTED INSTRUCTION NO. 4: IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES OFFERED BY DPPS** ...........................64

**DISPUTED INSTRUCTION NO. 4 RE IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES OFFERED BY DEFENDANTS** .............67

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 4: IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES** ............................69

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 4: IDENTIFICATION OF THE PARTIES AND CLAIMS AND DEFENSES** ...............................................71

**DISPUTED INSTRUCTION NO. 5 RE CORPORATE EQUALITY OFFERED BY DPPS** ...................................................................................................73

**DISPUTED INSTRUCTION NO. 5 RE CORPORATE EQUALITY OFFERED BY DEFENDANTS** .................................................................................... 74

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 5: CORPORATE EQUALITY** ...........................................................................................75

**STIPULATED INSTRUCTION NO. 6 RE WHAT IS EVIDENCE** .................................77

**STIPULATED INSTRUCTION NO. 7 RE DIRECT AND CIRCUMSTANTIAL EVIDENCE** ..............................................................................................78

**STIPULATED INSTRUCTION NO. 8 RE WHAT IS NOT EVIDENCE** .........................79

**STIPULATED INSTRUCTION NO. 9 RE RULING ON OBJECTIONS** ...................... 80

**STIPULATED INSTRUCTION NO. 10 RE DEPOSITION TESTIMONY** .................. 81

**STIPULATED INSTRUCTION NO. 11 RE USE OF INTERROGATORIES** ................82

**STIPULATED INSTRUCTION NO. 12 RE CREDIBILITY OF WITNESSES** ..............83

**DISPUTED INSTRUCTION NO. 13 RE IMPEACHMENT EVIDENCE—WITNESS OFFERED BY DPPS** ........................................................................... 85

**DISPUTED INSTRUCTION NO. 13 RE IMPEACHMENT EVIDENCE—WITNESS OFFERED BY DEFENDANTS** ................................................................. 86

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 13 RE IMPEACHMENT EVIDENCE—WITNESS** ....................................................................... 87

**STIPULATED INSTRUCTION NO. 14 RE FOREIGN LANGUAGE TESTIMONY** ..... 89

**DISPUTED INSTRUCTION NO. 15 RE TRANSLATIONS OF DOCUMENTS OFFERED BY DPPS** ........................................................................... 90

**DISPUTED INSTRUCTION NO. 15 RE TRANSLATIONS OF DOCUMENTS OFFERED BY DEFENDANTS** ................................................................. 91

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 15: TRANSLATION OF DOCUMENTS** ....................................................................................92

**STIPULATED INSTRUCTION NO. 16 RE EXPERT OPINION** .................................95

**DISPUTED INSTRUCTION NO. 16A RE CONFLICTING EXPERT TESTIMONY OFFERED BY DEFENDANTS** .................................................................96

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 16A: CONFLICTING EXPERT TESTIMONY OFFERED BY DEFENDANTS** .................................97

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 16A: CONFLICTING EXPERT TESTIMONY** .......................................................................98

**STIPULATED INSTRUCTION NO. 17 RE CHARTS AND SUMMARIES** ..................99

**STIPULATED INSTRUCTION NO. 18 RE STIPULATIONS OF FACT** .....................100

**STIPULATED INSTRUCTION NO. 19 RE JUDICIAL NOTICE** ............................... 101

**DISPUTED INSTRUCTION NO. 20 RE FAILURE TO CALL AVAILABLE WITNESS OFFERED BY DPPS** ..................................................................................102

**DISPUTED  INSTRUCTION NO. 20: FAILURE TO CALL AVAILABLE WITNESS** ..103

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 20 RE FAILURE TO CALL AVAILABLE WITNESS** ............................................................................... 104

**DISPUTED INSTRUCTION NO. 21 RE OVERVIEW OF ANTITRUST CLAIMS OFFERED BY DPPS** ...................................................................................... 107

**DISPUTED INSTRUCTION NO. 21 RE OVERVIEW OF ANTITRUST CLAIMS OFFERED BY DEFENDANTS** ..................................................................... 108

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 21: OVERVIEW OF ANTITRUST CLAIMS** ................................................................................ 109

**DISPUTED INSTRUCTION NO. 22 RE CONSPIRACY, CONTRACT, OR COMBINATION OFFERED BY DPPS** ......................................................... 113

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 22: CONSPIRACY, CONTRACT, OR COMBINATION** ............................................................. 119

**DISPUTED INSTRUCTION NO. 22A RE SINGLE V. MULTIPLE CONSPIRACIES OFFERED BY DEFENDANTS** ..................................................................... 122

**DPP'S ARGUMENT RE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 22A: SINGLE V. MULTIPLE CONSPIRACIES** ..................................................... 123

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 22A RE SINGLE V. MULTIPLE CONSPIRACIES** ..................................................................... 125

**DISPUTED INSTRUCTION NO. 23 RE PARTICIPATION AND INTENT OFFERED BY DPPS** ......................................................................................................... 126

**DISPUTED INSTRUCTION NO. 23 RE PARTICIPATION AND INTENT OFFERED BY DEFENDANTS** ........................................................................................ 128

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 23: PARTICIPATION AND INTENT** ....................................................................................................... 130

**DISPUTED INSTRUCTION NO. 24 RE GOOD INTENT NOT A DEFENSE OFFERED BY DPPS** ................................................................................................... 134

**DISPUTED INSTRUCTION NO. 24 RE GOOD INTENT NOT A DEFENSE [DEFENDANTS OBJECT TO THIS INSTRUCTION IN ITS ENTIRETY.]** ...... 135

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 24: GOOD INTENT IS NOT A DEFENSE OFFERED BY DPPS** ............................................................ 136

**DISPUTED INSTRUCTION NO. 25 RE CORPORATIONS OR AGENCY OFFERED BY DPPS** ............................................................................................................ 139

**DISPUTED INSTRUCTION NO. 25 RE CORPORATIONS OR AGENCY OFFERED BY DEFENDANTS** ............................................................................................ 141

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 25: CORPORATIONS OR AGENCY** ........................................................................................................ 143

**DISPUTED INSTRUCTION NO. 26 RE SUBSIDIARY PURPOSE OFFERED BY DPPS** .............................................................................................................. 147

**DISPUTED INSTRUCTION NO. 26 RE AFFILIATED CORPORATE PARTIES OFFERED BY DEFENDANTS** ................................................................ 149

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 26: SUBSIDIARY PURPOSE/AFFILIATED CORPORATE PARTIES** ........................................ 150

**BRIEF ON DISPUTED INSTRUCTION NO. 26: AFFILIATED CORPORATE PARTIES** .......................................................................................................... 152

**DISPUTED INSTRUCTION NO. 27 RE EVIDENCE OF INFORMATION EXCHANGE OFFERED BY DPPS** ................................................................ 154

**DISPUTED INSTRUCTION NO. 27 RE EVIDENCE OF INFORMATION EXCHANGE OFFERED BY DEFENDANTS** ...................................................... 155

**DISPUTED INSTRUCTION NO. 28 RE EVIDENCE OF PRICES CHARGED OFFERED BY DPPS** ................................................................................ 160

**DISPUTED INSTRUCTION NO. 28 RE EVIDENCE OF PRICES CHARGED OFFERED BY DEFENDANTS** ...................................................................... 161

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 28: EVIDENCE OF PRICE CHARGED** .................................................................................................. 162

**DISPUTED INSTRUCTION NO. 29 RE EVIDENCE OF COMPETITION OFFERED BY DPPS** ................................................................................................ 164

**DISPUTED INSTRUCTION NO. 29 RE EVIDENCE OF COMPETITION OFFERED BY DEFENDANTS** ...................................................................... 165

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 29: EVIDENCE OF COMPETITION** ...................................................................................................... 166

**DISPUTED INSTRUCTION NO. 29A RE EVIDENCE OF SIMILARITY OFFERED BY DEFENDANTS** ............................................................................ 168

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 29A: EVIDENCE OF
SIMILARITY OFFERED BY DEFENDANTS ................................................. 169

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 29A RE EVIDENCE OF
SIMILARITY ...........................................................................................171

DISPUTED INSTRUCTION NO. 29B RE IMPORT COMMERCE – INTENT;
SUBSTANTIAL EFFECTS OFFERED BY DEFENDANT............................... 172

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 29B: IMPORT COMMERCE
– INTENT; SUBSTANTIAL EFFECT OFFERED BY DEFENDANTS ..............174

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 29B RE IMPORT
COMMERCE – INTENT; SUBSTANTIAL EFFECT ........................................175

DISPUTED INSTRUCTION NO. 30 RE TESTIMONY OF WITNESSES INVOLVING
SPECIAL CIRCUMSTANCE—LENIENCY OFFERED BY DPPS ...................177

DISPUTED INSTRUCTION NO. 30 RE TESTIMONY OF WITNESSES INVOLVING
SPECIAL CIRCUMSTANCE—LENIENCY OFFERED BY DEFENDANTS .... 178

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 30 RE TESTIMONY OF
WITNESSES INVOLVING SPECIAL CIRCUMSTANCE—LENIENCY ......... 179

DISPUTED INSTRUCTION NO. 31 RE GUILTY PLEAS AND CONVICTIONS
OFFERED BY DPPS.................................................................................. 181

DISPUTED INSTRUCTION NO. 31 RE PLEA AGREEMENTS AND CONVICTIONS
OFFERED BY DEFENDANTS ................................................................... 182

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 31: GUILTY PLEAS AND
CONVICTIONS ....................................................................................... 184

DISPUTED INSTRUCTION NO. 31A RE LIMITED PURPOSE OF GUILTY PLEAS IN
THIS CASE OFFERED BY DEFENDANTS ................................................. 187

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 31A: LIMITED PURPOSE
OF GUILTY PLEAS IN THIS CASE OFFERED BY DEFENDANTS.............. 189

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 31A RE LIMITED
PURPOSE OF GUILTY PLEAS IN THIS CASE ........................................... 191

DISPUTED INSTRUCTION NO. 32 RE CREDIBILITY OF EMPLOYEE WITNESSES
OF CORPORATIONS WHO PLED GUILTY OFFERED BY DPPS................. 193

DPPS' PROPOSED JURY INSTRUCTION NO. 32: GUILTY PLEAS OF
CORPORATIONS—EMPLOYEE-WITNESSES [DEFENDANTS OBJECT TO
THIS INSTRUCTION IN ITS ENTIRETY] ................................................. 194

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 32: CREDIBILITY OF
EMPLOYEE WITNESSES OF CORPORATIONS WHO PLED GUILTY
OFFERED BY DPPS.................................................................................. 195

**DISPUTED INSTRUCTION NO. 33 RE LACK OF INDICTMENT AND GUILTY PLEAS OF CERTAIN CO-CONSPIRATORS OFFERED BY DPPS**................ 198

**DISPUTED INSTRUCTION NO. 33 RE LACK OF INDICTMENT AND GUILTY PLEAS OF CERTAIN  CO-CONSPIRATORS OFFERED BY DEFENDANTS** . 199

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 33: LACK OF INDICTMENT AND GUILTY PLEAS OF CERTAIN CO-CONSPIRATORS** ..........................200

**DISPUTED INSTRUCTION NO. 34 RE FIFTH AMENDMENT ADVERSE INFERENCE OFFERED BY DPPS**.........................................................203

**DPPS' PROPOSED JURY INSTRUCTION NO. 34: FIFTH AMENDMENT ADVERSE INFERENCE**.........................................................................204

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 34: FIFTH AMENDMENT ADVERSE INFERENCE OFFERED BY DPPS**.............................................205

**DISPUTED INSTRUCTION NO. 35 RE CAUSATION AND INJURY OFFERED BY DPPS** ..........................................................................209

**DISPUTED INSTRUCTION NO. 35 RE CAUSATION AND INJURY OFFERED BY DEFENDANTS**                211

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 35: CAUSATION AND INJURY** ...................................................................... 213

**STIPULATED INSTRUCTION NO. 36 RE TRADE ASSOCIATIONS** ...................... 216

**DISPUTED INSTRUCTION NO. 37 RE STATUTE OF LIMITATIONS OFFERED BY DEFENDANTS**.................................................................... 218

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 37: STATUTE OF LIMITATIONS OFFERED BY DEFENDANTS** .............................................220

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 37 RE STATUTE OF LIMITATIONS**.................................................................... 221

**DISPUTED INSTRUCTION NO. 37A RE STATUTE OF LIMITATIONS—DISCOVERY RULE AND CONTINUING VIOLATIONS RULE OFFERED BY DPPS**.......... 223

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 37A RE STATUTE OF LIMITATIONS—DISCOVERY RULE AND CONTINUING VIOLATIONS RULE OFFERED BY DPPS**.................................................................. 224

**DISPUTED INSTRUCTION NO. 38 RE STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT OFFERED BY DPPS**........................................228

**DISPUTED INSTRUCTION NO. 38 RE STATUTE OF LIMITATIONS – FRAUDULENT CONCEALMENT  [DEFENDANTS OBJECT TO THIS INSTRUCTION IN ITS ENTIRETY.]** ...................................................................... 231

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 38 RE STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT OFFERED BY DPPS** ..... 232

STIPULATED INSTRUCTION NO. 39 RE DAMAGES—INTRODUCTION AND PURPOSE OFFERED BY DPPS ................................................................. 235

DISPUTED INSTRUCTION NO. 40 RE BASIS FOR CALCULATING DAMAGES OFFERED BY DPPS............................................................................... 236

DISPUTED INSTRUCTION NO. 40 RE CALCULATION OF DAMAGES OFFERED BY DEFENDANTS.......................................................................... 238

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 40: BASIS FOR CALCULATING DAMAGES ............................................................... 239

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION DISPUTED INSTRUCTION NO. 40:  BASIS FOR CALCULATING DAMAGES........................................ 240

STIPULATED INSTRUCTION NO. 41 RE NOMINAL DAMAGES .......................... 241

DISPUTED INSTRUCTION NO. 42 RE CALCULATION OF DAMAGES OFFERED BY DPPS ................................................................................... 242

DISPUTED INSTRUCTION NO. 42 RE CALCULATION OF DAMAGES OFFERED BY DEFENDANTS.......................................................................... 243

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 42: CALCULATION OF DAMAGES ....................................................................................... 244

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 42:CALCULATION OF DAMAGES ....................................................................................... 246

DISPUTED INSTRUCTION NO. 43 RE NO PASS-ON CONSIDERATION OFFERED BY DPPS................................................................................... 247

DISPUTED INSTRUCTION NO. 43 RE NO PASS-ON CONSIDERATION [DEFENDANTS OBJECT TO THIS INSTRUCTION IN ITS ENTIRETY] ...... 248

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 43: NO PASS-ON CONSIDERATION OFFERED BY DPPS ......................................... 249

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 43:NO PASS-ON CONSIDERATION ......................................................................... 251

DISPUTED INSTRUCTION NO. 43A RE JOINT AND SEVERAL LIABILITY OFFERED BY DEFENDANTS ................................................................. 252

DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 43A: JOINT AND SEVERAL LIABILITY OFFERED BY DEFENDANTS ................................................................. 254

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 43A: JOINT AND SEVERAL LIABILITY ....................................................................... 256

DISPUTED INSTRUCTION NO. 44 RE SETTLEMENT AGREEMENTS OF SETTLING DEFENDANTS OFFERED BY DPPS............................................ 257

**DISPUTED INSTRUCTION NO. 44 RE SETTLEMENT AGREEMENTS OF SETTLING DEFENDANTS  OFFERED BY DEFENDANTS** ........................... 258

**DPP'S ARGUMENT RE DISPUTED INSTRUCTION NO. 44 SETTLEMENT AGREEMENTS OF SETTLING DEFENDANTS** ............................................ 259

**DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION NO. 44: SETTLEMENT AGREEMENTS OF SETTLING DEFENDANTS** ............................................ 260

**STIPULATED INSTRUCTION NO. 45 RE DUTY TO DELIBERATE** ...................... 261

**STIPULATED INSTRUCTION NO. 46 RE CONSIDERATION OF THE EVIDENCE— CONDUCT OF THE JURY** ......................................................... 262

**STIPULATED INSTRUCTION NO. 47 RE TAKING NOTES** .................................... 264

**STIPULATED INSTRUCTION NO. 48 RE COMMUNICATION WITH COURT** ....... 265

**STIPULATED INSTRUCTION NO. 49 RE RETURN OF VERDICT** ......................... 266

**Stipulated Preliminary Instruction No. 1 Re Duty of the Jury**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law. These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.2 (2017) (modified).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                        _____

                                                          *District Court Judge*

**Stipulated Preliminary Instruction No. 2 Re Class Action**

This lawsuit has been brought as a class action. A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a larger group of people or businesses whom the class representatives allege are similarly situated. All of these people or businesses together are called a class. The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Nov. 13, 2018) (Doc. 791).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 3 Re Identification of the Parties and Claims and Defenses Offered by DPPs**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This trial involves a product called capacitors. Capacitors are electronic components used to temporarily store electrical energy. They are essential to ensure that electronic devices work. Everything that runs on electricity has at least one capacitor in it, and most devices have many more than one. Complex devices like cell phones typically have hundreds.

The Plaintiffs in the case are the Direct Purchaser Plaintiffs, who I will refer to as DPPs. DPPs are a certified class that purchased capacitors directly from one or more of the Defendants. The four named direct purchaser plaintiffs are Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc. All are United States companies.

The class includes all persons (including individuals, companies, or other entities) that purchased capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from January 1, 2002 to December 31, 2013 (the "Class Period") and such persons are: (a) inside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period (*i.e.*, where capacitors were "billed to" persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period, where such capacitors were imported into the United States by one or more Defendants (*i.e.*, where the capacitors were "billed to" persons outside the United States but "shipped to" persons within the United States).

1

2

### Disputed Preliminary Instruction No. 3 Re Identification of the Parties and Claims and Defenses Offered by Defendants

3

The DPPs consist of a class of purchasers. The class is defined as: "All persons . . . that

4

purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures)

5

directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from January

6

1, 2002 to December 31, 2013 (the 'Class Period'), and such persons are: (a) inside the United States

7

and were billed or invoiced for capacitors by one or more Defendants during the Class Period (i.e.,

8

where capacitors were 'billed to' persons within the United States); or (b) outside the United States and

9

were billed or invoiced for capacitors by one or more Defendants during the Class Period, where such

10

capacitors were imported into the United States by one or more Defendants (i.e., where the capacitors

11

were 'billed to' persons outside the United States but 'shipped to' persons within the United States)."

12

The representatives of this class are Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ

13

Energy, Inc., and Walker Component Group, Inc. The Court appointed these class representatives to

14

present the case on behalf of the class.  So although you will not hear from each individual class

15

member, you will hear the claims of individual class representatives, and any judgment — win or lose

16

— will be binding on the rest of the class members. When I refer to "Plaintiffs" or "DPPs" generally in

17

these instructions, I will be referring to both the named plaintiffs and each of the other class members.

18

The Defendants in this case are defined as follows: "AVX" refers to AVX Corp.; "ELNA" refers

19

to ELNA Co. Ltd. and ELNA America Inc.; "Holy Stone" refers to Holy Stone Enterprise Co., Ltd.;

20

"Matsuo" refers to Matsuo Electric Co., Ltd.; "Milestone" refers to Milestone Global Technology, Inc.;

21

"NCC" refers to Nippon Chemi-Con Corp.; "Shinyei" refers to Shinyei Kaisha, Shinyei Technology

22

Co., Ltd., Shinyei Capacitor Co., Ltd. and Shinyei Corp. of America; "Taitsu" refers to Taitsu Corp. and

23

Taitsu America, Inc.; "UCC" refers to United Chemi-Con Inc.; and "Vishay" refers to Vishay Polytech

24

Co., Ltd.  Defendants manufactured and sold one or more types of aluminum, tantalum, and/or film

25

capacitors.

26

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

27

28

The DPPs allege that Defendants "conspired by directly and indirectly communicating with each other to implement and effectuate an overarching scheme to control and set the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide" from January 1, 2002 until December 31, 2013. This is the conspiracy alleged by the DPPs in this case. The DPPs have the burden of proving this alleged conspiracy.

The Defendants deny the DPPs' claims.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.5 (2017); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 101:01 (6th ed. 2012); Third Amended Class Action Complaint, at para. 13.

**DPP's Argument re Disputed Preliminary Instruction No. 3: Identification of the Parties and Claims and Defenses**

DPPs' instruction adheres more closely to the purpose of jury instructions than Defendants' instruction, *see* 3 Fed. Jury Prac. & Instr. § 100:01 (6th ed. 2012) ("instructions help jurors focus on their duties and responsibilities, the parties' factual contentions., and the parties theories of the case."); *see also Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) ("Jury instructions are designed to clarify issues for the jury and to educate the jury about what factors are probative on those issues."), and tracks the instruction given in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) ECF No. 8543 at 3-4. This case involves the price fixing of a specific commodity, capacitors. The jury should be instructed about the product and its uses. Like the *TFT-LCD* instruction, DPPs' proposed instruction provides undisputed factual context to the jury. DPPs use plain English to describe capacitors, including what they are and how they are used.

In contrast, Defendants' proposed instruction introduces irrelevant legal technicalities specific to class action litigation—legal considerations that should not color the jury's judgment or increase the likelihood of confusion. For example, Defendants insert the language "any judgment— win or lose— will be binding on the rest of the class members." There is no substantive issue for the jury to consider relating to class certification. This is a pure legal consequence of the judgment in a class action. Defendants have identified no other case in which such an instruction was given. *See Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997) ("[A] judge should tell jurors what their practical tasks are under the law, rather than providing raw legal texts for jurors to digest."); *see also Fuller v. Phillips*, 67 F.3d 1137, 1144 (4th Cir. 1995), abrogated on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). ("Simple instructions are normally to be preferred, in order not to inject needless complexity and potential confusion where simplicity is far more appropriate.") (internal quotation marks and citation omitted). Also, jurors who may harbor reservations about the class device as a litigation tool may hear the language and it may influence their consideration of the case.

DPPs' proposed instruction describes the parties in simple, plain English and in logical sequence, grouping members of the same corporate family together. Defendants' proposed instruction,

on the other hand, notes that "Holy Stone" refers to Holy Stone Enterprise Co., Ltd., "Milestone" refers to Milestone Global Technology, Inc., and "Vishay" refers to Vishay Polytech Co. Ltd, sequenced apart from each other. They are part of the same corporate family. Milestone does business as Holy Stone International. Vishay Polytech was formerly known as Holy Stone Polytech. Defendants seek to cause needless complexity and confusion, obscuring the relationships between these entities. *See Arandell Corp. v. Centerpoint Energy Services, Inc.*, 900 F.3d 623, 631-32 (9th Cir. 2018) (wholly owned subsidiary engaging in coordinate activity with its parents and commonly owned affiliates deemed a single economic unit). Similarly, Defendants' proposed instruction separates out NCC and UCC in the list of corporate Defendants. This too could lead the jury to believe the two entities are not related, when they are two members of the same corporate family. They should be listed next to each other.

*"This is the conspiracy alleged by the DPPs in this case."* DPPs object to the second-to-last sentence in the last paragraph of Defendants' proposed instruction as it is argumentative and misstates the law as to what DPPs must prove. DPPs get to choose the case they are trying, not Defendants, and DPPs are not limited to the allegations they made in their complaint. Defendants' proposed language would improperly mislead the jury into believing the Class must prove the specific conspiracy—as the Defendants would prefer to define it—rather than just *a* conspiracy—as the Sherman Act requires. 15 U.S.C. § 1; *see* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1, Instr. 2 ("To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following: [¶] (1) the existence of *a* contract, combination, or conspiracy between or among at least two separate entities . . . ." (emphasis added)); *see also Klor's Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 210 (1959) ("Section 1 of the Sherman Act makes illegal *any* . . . conspiracy in restraint of trade" (emphasis added)). DPPs should be free to present its case how it chooses. It is the province of the jury to determine whether DPPs have proved any conspiracy, not the one the Defendants describe.

**Defendants' Brief On Disputed Preliminary Instruction No. 3 Re Identification of the Parties and Claims and Defenses**

Defendants do not believe any preliminary instruction on claims and defenses is necessary. Defendants understand that this Court's practice, like that of other courts, is to provide the jury with short, high-level preliminary instructions that are focused on basic legal concepts like the duty of the jury and the burden of proof.  *See Telesocial Inc. v. Orange S.A.*, et al., 14-cv-03985-JD, Dkt. No. 319 (N.D. Cal. July 7, 2017) (preliminary instructions adopted by the Court).  The purpose of preliminary instructions is not to characterize or preview evidence that may or may not be introduced at trial— before the parties have even given their opening statements—and the Court should decline to do so here.  However, if the Court is inclined to give a preliminary instruction on claims and defenses, it should adopt Defendants' proposal.

Furthermore, Plaintiffs' proposed instruction improperly applies generic references to certain groups of Defendants with the hope that the jury will impute the acts of one corporate actor to other corporate actors within the same group, regardless of the law and actual facts.  Because Defendants are separately incorporated, their independence must be presumed.  *See E. & J. Gallo Winery v. EnCana Energy Servs., Inc*., Civ. No. 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008). Such generic references disregard each Defendants' separate corporate existence and improperly sidestep Plaintiffs' burden to prove liability as to each separate Defendant.  Plaintiffs' proposed instruction is thus confusing to the jury and prejudicial to Defendants.

The purpose of this instruction is simply to identify for the jury the parties, claims and defenses, not to argue Plaintiffs' case.  However, Plaintiffs take two full paragraphs to state their "claims," while misstating key elements of antitrust law, describing their purported evidence, including immaterial details, and impermissibly suggesting that such evidence is sufficient to establish a conspiracy in violation of the Sherman Act.  Plaintiffs' proposed instruction is wildly argumentative and unduly prejudicial.  It is also redundant of other instructions, which correctly state the law.  Such an instruction about the claims and defenses will be particularly unnecessary following a five-week trial concerning those claims.

Plaintiffs cite no authority to support their long, argumentative, and tedious instruction. *See United States v. Assi*, 748 F.2d 62, 65 (2d Cir. 1984) (jury instructions should be "succinct" and "free of irrelevant and confusing digressions."). In contrast, Defendants' proposed instruction succinctly tracks the Ninth Circuit Manual of Model Civil Jury Instruction and jury instructions from a recent analogous antitrust case in this district, and correctly describes the parties' claims and defenses by directly quoting the description of Plaintiffs' alleged conspiracy from the Third Amended Complaint.

Finally, Defendants object to DPPs' sudden use of the phrase "aluminum, film, and tantalum capacitors," rather than "aluminum, tantalum, and film capacitors," as a transparent effort to confuse and mislead the jury on a key point in this case. The fact that film capacitors are different from electrolytic capacitors is a key issue in this case and Defendants object to DPP's attempt to list them in a new and confusing order. As DPPs are well aware, and as DPPs' own experts recognize, aluminum and tantalum capacitors are types of electrolytic capacitors, while film capacitors are not a type of electrolytic capacitor but are instead a separate type altogether. Reflecting this fact, throughout the *entire* litigation DPPs have consistently ordered the dielectrics to group aluminum and tantalum together, followed by film. Indeed, DPPs themselves used the order "aluminum, tantalum, and film" over 70 times in their Third Amended Complaint, and continued to use that order as recently as January 9, 2020 when the parties' exchanged draft portions of the Joint Pretrial Statement. Defendants are aware of no previous instance where DPPs ever used the ordering they now seek to use in their jury instructions.

**Stipulated Preliminary Instruction No. 4 Re Opening Instructions**

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you.

You will sometimes hear me refer to counsel. Counsel is another way of saying lawyer or attorney. I will sometimes refer to myself as the Court.

Your verdict will decide disputed issues of fact in this case. I will decide all questions of law that arise during the trial. Before you begin your deliberations at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or believability of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls or on the sidewalk near the courthouse and they do not speak to you, they are not being rude or unfriendly; they are simply following my instructions.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

*Authority:* 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 101:01 (6th ed. 2012); *In re Korean Ramen Antitrust Litig.,* No. 3:13-cv-04115-WHO (N.D. Cal. Nov. 13, 2018) (Doc. 791).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

District Court Judge

**Disputed Preliminary Instruction No. 5 Re Corporate Equality Offered by DPPs**

Plaintiffs and Defendants are corporations. A corporation is entitled to the same fair trial as a private individual. All persons, corporations, partnerships, and other organizations stand equal before the law, and in this Court.

Therefore, in examining the issues in this case, it does not matter that the parties are corporations. You should consider and decide this case as a dispute between those of equal standing.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Nov. 13, 2018) (Doc. 791); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 5 Re Corporate Equality Offered by Defendants**

Plaintiffs and Defendants are corporations. A corporation is entitled to the same fair trial as a private individual. All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal in this Court.

Therefore, in examining the issues in this case, it does not matter that the parties are corporations. You should consider and decide this case as a dispute between those of equal standing.

You should decide the case as to each Defendant separately, even though there are multiple Defendants and the parties may have presented some common evidence.

Unless otherwise stated, the instructions apply to all parties.


*Authority*: *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

**DPP's Argument re Disputed Preliminary Instruction No. 5: Corporate Equality**

Defendants would add the following language: "You should decide the case as to each Defendant separately, even though there are multiple Defendants and the parties may have presented some common evidence. Unless otherwise stated, the instructions apply to all parties." DPPs object to this insertion.

Defendants' proposed instruction requires that all elements of the Section 1 claim—including the existence of a conspiracy, a nexus to interstate or import commerce, injury, and damages, must be proven as to each particular Defendant for DPPs to prevail at all. DPPs do not need to re-prove the conspiracy again and again. DPPs need to prove *a* conspiracy to recover under Section 1 of the Sherman Act. 15 U.S.C. § 1; *see* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1, Instr. 2 ("To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following: [¶] (1) the existence of *a* contract, combination, or conspiracy between or among at least two separate entities . . . ." (emphasis added)); DPPs Argument re Disputed Instr. No. 22A Offered by Defs (Single v. Multiple Conspiracies). To be sure, for a defendant to be liable, DPPs must prove the "defendant in question knowingly joined in the unlawful plan" and DPPs have proposed an instruction to this effect. Disputed Proposed Instr. No. 23 offered by DPPs (Participation and Intent); *see also* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 4 (same). But neither the ABA's Model Jury Instructions nor any of Defendants' citations require that the *conspiracy* be proven repeatedly. Nor does the interstate or import commerce requirement vary by Defendant—Defendants' own instruction on this point, notwithstanding its questionable propriety in this case, would require proof only of "an express or tacit agreement intending to produce a substantial effect in the United States." Disputed Instr. No. 29B Offered by Defs (Import Commerce). Questions of causation and damages similarly do not vary by Defendant, as all Defendants who knowingly joined the conspiracy are jointly and severally liable. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 668 F.2d 1014, 1052–53 (9th Cir.1981) ("antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy."); *see also City of Atlanta v. Chattanooga Foundry & Pipeworks*, 127 F. 23, 26 (6th Cir. 1902), *aff'd*, 203 U.S. 340 (1906).

**Defendants' Brief On Disputed Preliminary Instruction No. 5 Re Corporate Equality**

Both disputed instructions are based on the instructions given in *In re Korean Ramen Antitrust In re Korean Ramen Antitrust Litig.,* No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018), Doc. 907 and *In re TFT-LCD Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal.), Doc. 8543.  Defendants' proposal hews more closely to the facts of this case.  Defendants propose including the language in the third and fourth paragraphs, "You should decide the case as to each Defendant separately, even though there are multiple Defendants and the parties may have presented some common evidence.  Unless otherwise stated, the instructions apply to apply to all parties," which is taken almost verbatim from the *TFT-LCD* instruction.  Because this case involves multiple defendants cooperating to present a defense at trial, this language is critical in explaining to the jury that liability must be decided individually as to each defendant.

**Disputed Preliminary Instruction No. 6 Re Outline of the Trial Offered by DPPs**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

DPPs will then present evidence, and counsel for Defendants may cross-examine the witnesses. Then the Defendants may present evidence, and counsel for the DPPs may cross-examine the witnesses. The Defendants are not required to introduce any evidence or to call any witnesses. If the Defendants introduce evidence, DPPs may then present rebuttal evidence.

After the evidence has been presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. I will instruct you on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

*Authority*: *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Nov. 13, 2018) (Doc. 791); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 101.02 (6th ed. 2012).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 6 Re Outline of the Trial Offered by Defendants**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict

*Authority:* Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.21 (2017).

**DPP's Argument re Disputed Preliminary Instruction No. 6: Outlines of the Trial**

DPPs proposed instruction closely tracks Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.21 (2017). DPPs insertions provide helpful context for the jury about the trial process. For example, DPPs propose adding "the witnesses" after "cross-examine." DPPs also correctly indicate that Defendants are not required to put on evidence as it is DPPs' burden to prove its claims, and if Defendants do put on evidence, then DPPs may put on rebuttal evidence. Lastly, DPPs insert language from O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions (2012 ed.) model instruction § 101.02 which tells jurors the lawyers will make closing arguments explaining what they believe the evidence has shown. DPPs additions are an improvement to the Ninth Circuit model and gives the jury additional context as to what to expect at trial.

**Defendants' Brief On Disputed Preliminary Instruction No. 6 Re Outline of the Trial**

Defendants' proposed instruction is taken verbatim from the Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.21 (2017).  The Court should decline to deviate from the Ninth Circuit Model.

DPPs' propose including, "The Defendants are not required to introduce any evidence or to call any witnesses. If the Defendants introduce evidence, DPPs may then present rebuttal evidence." Defendants oppose the addition of this language because it departs from the Ninth Circuit model, and because Defendants do intend to introduce evidence and call witnesses at trial, the language is unnecessary and will confuse the jury.

**Disputed Preliminary Instruction No. 7 Re Burden of Proof: Preponderance of the Evidence Offered by DPPs**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trials, such as this one, the party who is required to prove something need prove only that it is more likely to be true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017) (modified); CACI 200.

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 7 Re Burden of Proof: Preponderance of the Evidence Offered by Defendants**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**DPP's Argument re Disputed Preliminary Instruction No. 7: Burden of Proof: Preponderance of the Evidence**

DPPs have proposed including two additional sentences to the Ninth Circuit model instruction to prevent jury confusion about the burdens of proof in civil and criminal trials. This case is replete with Defendants, high-level employees, and co-conspirators who have pled guilty to criminal violations. Jurors often come into the courtroom having watched shows such as "Law and Order" and may be familiar with the burden of proof in criminal cases. DPPs do not need to prove their case beyond a reasonable doubt, and the jury should be so informed lest they apply the incorrect legal standard. The Ninth Circuit's model instructions may omit such a reference, but they are not designed for antitrust cases. In antitrust cases, concepts of guilt and criminal conspiracy compose the backdrop of the litigation—this civil case follows a related criminal case with multiple guilty pleas. Thus, the jury would benefit from some orientation and clarification.

The proposed additional sentences are drawn directly from the model California State jury instruction; they succinctly and simply explain the different burdens of proof in civil and criminal cases. *See* CACI 200. They explain that the burden of proof in civil trials is a "preponderance of the evidence" standard, which is different from the "beyond a reasonable doubt standard" employed in criminal trials. Other circuits instruct on these differing burdens of proof. The Third Circuit model civil jury instructions, for example, include a sentence distinguishing between the two standards and make clear that the "reasonable doubt" standard does not apply in civil cases. *See* Third Circuit Model Civil Jury Instructions, Inst. 1.10. The Court should give the jury DPPs' proposed additions as it will help the jury understand the differences between the burdens of proof in civil and criminal cases.

**Defendants' Brief On Disputed Preliminary Instruction No. 7 Re Burden of Proof:**
**Preponderance of the Evidence**

Defendants' proposed instruction is taken verbatim from the Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017).

By contrast, DPPs' proposed instruction begins with the Ninth Circuit Model but adds an entirely new paragraph on the burden of proof in criminal trials. This second paragraph proposed by DPPs – which introduces principles of criminal law – is unnecessary in a civil case and will confuse the jury about the relevant burden of proof.

Additionally, DPPs' proposed language comes from a California state law model relating to California Evidence Code Section 502, which has no bearing on this federal case. DPPs also cite another out-of-circuit model.

DPPs cite no antitrust case in which the jury was instructed with their proposed additional paragraph, and it was not given in the *TFT-LCD* case, despite parallel criminal proceedings and pleas in that case. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal.) (Doc. 6036), at 2.

The Court should decline to deviate from the Ninth Circuit Model.

**Stipulated Preliminary Instruction No. 8 Re What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

(1)   the sworn testimony of any witness;

(2)   the exhibits that are admitted into evidence;

(3)   any facts to which the lawyers have agreed; and

(4)   any facts that I may instruct you to accept as proved.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.9 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                          _____

*District Court Judge*

**Stipulated Preliminary Instruction No. 9 Re Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.12 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 10 Re What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3)  Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)  Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.10 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 11 Re Evidence for a Limited Purpose**

During trial, some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Inst. 1.11 (2017) (modified).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 12 Re Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.13 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

## Stipulated Preliminary Instruction No. 13 Re Deposition Testimony

Depositions are part of the discovery process. Discovery is the period during a case when the parties are permitted to learn information from each other. The questions and answers are recorded. Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions; Instr. 2.4 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 14 Re Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)  the opportunity and ability of the witness to see or hear or know the things testified to;

(2)  the witness's memory;

(3)  the witness's manner while testifying;

(4)  the witness's interest in the outcome of the case, if any;

(5)  the witness's bias or prejudice, if any;

(6)  whether other evidence contradicted the witness's testimony;

(7)  the reasonableness of the witness's testimony in light of all the evidence; and

(8)  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.14 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 15 Re Expert Opinion**

You will hear testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.13 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 16 Re Guilty Pleas and Convictions Offered by DPPs**

You will hear evidence that I have found as fact certain convictions for violating the antitrust laws by setting, fixing, raising, maintaining, or stabilizing the prices of electrolytic and/or film capacitors. The following defendants pled guilty to violating the United States' antitrust laws: ELNA, Matsuo, Holy Stone, NCC, Nichicon, NEC TOKIN, Rubycon, and Hitachi. In addition, the following individuals pled guilty to the same crime: Tokuo Tatai, who worked for ELNA, and Satoshi Okubo, who at different times worked for both ELNA and Matsuo.

As a result of these guilty pleas and convictions you shall conclude the following facts are established as to those companies and individuals:

1. There was a conspiracy that violated the Sherman Act, the United States' antitrust law;

2. Each of those companies or individuals knowingly became a member of the conspiracy; and

3. The conspiracy either (A) substantially affected interstate and U.S. import trade or commerce in aluminum and tantalum capacitors or occurred within the flow of interstate or U.S. import trade or commerce in aluminum and tantalum capacitors, or (B) had a direct, substantial and reasonably foreseeable effect on interstate or U.S. import trade or commerce in aluminum or tantalum capacitor-containing products.

You may use such convictions and findings of fact, without more, to resolve issues in this case. These guilty pleas establish the floor of Defendants' violations of the antitrust laws. DPPs are entitled to try to prove that Defendants' violations are broader than those described in the guilty pleas.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); 3 Kevin O'Malley, et al. Fed. Jury Prac. & Instr. § 150.72 (6th ed. 2012).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 16 Re Guilty Pleas and Convictions Offered by DPPs Offered by Defendants**

[Defendants object to this instruction in its entirety.]

**DPP's Argument re Disputed Preliminary Instruction No. 16: Guilty Pleas and Convictions**

DPPs' instruction on Defendants' guilty pleas and criminal convictions is adapted from pattern antitrust instructions, *see* 3 O'Malley et al., Fed. Jury Prac. & Instr. § 150.72 (6th ed.), and the instructions delivered by Judge Illston in the *TFT-LCD* opt-out trial. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.), ECF No. 8543 at 27. It properly summarizes the plea agreements as establishing—pursuant to 15 U.S.C. § 16a—the core facts admitted by the pleading Defendants: there was a conspiracy that violated the Sherman Act; each convicted Defendant knowingly participated in the conspiracy that violated the Sherman Act; and the conspiracy identified in the plea agreements had a substantial effect on U.S. import trade, involved sales directly in the United States, or involved acts in furtherance of the conspiracy which took place in the Northern District of California. DPPs' instruction further advises that the jury "may use such convictions and findings of fact, without more, to resolve issues in this case" and that the Defendants' guilty pleas "establish the floor" of those Defendants' liability. Further, these are subject to judicial notice under Federal Rule of Evidence 201. Similarly, a pattern Sherman Act instruction explains a conviction "is prima facie evidence that, during the period charged in the indictment, the defendants engaged in a conspiracy to violate the antitrust laws" and that "[p]rima facie evidence is evidence that in and of itself is sufficient to establish the facts alleged." 3 O'Malley et al., Fed. Jury Prac. & Instr. § 150.72 (6th ed.). Defendants would omit this explanatory language, substituting portions from each of their plea agreements. Yet those agreements will be entered into evidence and can be read by the jurors; it serves little purpose to repeat them. What will aid deliberations is instead for the Court to describe the agreements' uniform effect in this case. *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.), ECF No. 8543 at 27 ("The convictions are evidence, on their face, that during the periods specified in the pleas or charged in the indictment, [eight corporate families] engaged in the violations stated in each of their plea agreements or in the indictment."). Defendants' proposal also is overly suggestive in stating that "certain capacitor manufacturers—but not others—were convicted," rather than simply stating which Defendants were convicted, and in including self-serving references like "United Chemi-Con did not plead guilty."

The Court should adhere to the relevant models and deliver DPPs' proposed instruction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Brief on Disputed Preliminary Instruction No. 16 Re Guilty Pleas and Convictions**

DPPs' proposed instruction should not be given because it is not an appropriate preliminary instruction, and because it is contrary to law, highly misleading, and would be unduly prejudicial if given.

Defendants understand that this Court's practice, like that of other courts, is to provide the jury with short, high-level preliminary instructions focused on basic legal concepts like the duty of the jury and the burden of proof. *See Telesocial Inc. v. Orange S.A.*, et al., 14-cv-03985-JD, Dkt. No. 319 (N.D. Cal. July 7, 2017) (preliminary instructions adopted by the Court); *Kenu, Inc. v. Belkin International, Inc.*, 15-cv-01429-JD, Dkt. No 184 (N.D. Cal. June 8, 2018) (same); *Eberhard v. California Highway Patrol*, 14-cv-01910-JD, Dkt. No. 262 (N.D. Cal. Feb. 19, 2019) (same). The purpose of preliminary instructions is not to characterize or preview evidence that may or may not be introduced at trial—before the parties have even given their opening statements—and the Court should decline to do so here.

The "authority" DPPs cite is misleading in that it points to the **_final_** instructions in the *TFT-LCD* case, which involved criminal pleas and convictions of certain alleged co-conspirators. *See In re: TFT-LCD (Flat-Panel) Antitrust Litigation*, 07-md-1827-SI, Dkt. No. 8543 (N.D. Cal. Aug. 28, 2013) (final instructions). The **_preliminary_** instructions that Judge Illston delivered at the beginning of trial did not include any information about criminal pleas or convictions. *See id.*, Dkt. No. 8371 (N.D. Cal. July 26, 2013), Transcript of Trial held on July 23, 2013, at 203:8-216:18 (preliminary instructions). Nor is DPPs' proposed instruction based on—much less taken verbatim from—any model instructions. *Cf.* MDL Dkt. No. 1071 (ordering parties to submit preliminary instructions that "hew to the current Ninth Circuit (or ABA) model instructions to the fullest extent possible, without any variations or modifications").

Just as importantly, and as explained in Defendants' briefing on the final jury instructions (addressing a substantially identical final instruction proposed by DPPs), DPPs' proposed instruction is materially different than the final instruction given in the *TFT-LCD* case, is contrary to collateral

estoppel principles, is designed to mislead the jury about the scope of the plea agreements at issue, and seeks to usurp the role of the jury in deciding each element of this case.

For all of these reasons, the Court should decline to give DPPs' proposed instruction.

**Disputed Preliminary Instruction No. 17 Re Guilty Pleas of Corporations—Employee-Witnesses Offered by DPPs**

I have instructed you that I have found as fact the following corporate defendants have participated in an antitrust conspiracy that violated United States law: ELNA, Matsuo, Holy Stone, NCC, Nichicon, NEC TOKIN, Rubycon, and Hitachi. The guilty pleas are to crimes that are felonies. As a result, you can conclude testimony of employee-witnesses from those companies as less credible than it would be in the absence of the guilty pleas.

*Authority*: Fed. R. Evid. 609; *Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.*, No. 01 CIV. 3796(PKL), 2005 WL 1026515, at *8 (S.D. N.Y. May 2, 2005) (reasonable inference that CEO was "'directly connected to the underlying criminal act' discussed in the Information, and the conviction reflects on his credibility"); *Stone v. C.R. Bard, Inc.*, No. 02 CIV 3433 WHP, 2003 WL 22902564, at *2-4 (Rule 609 allows use of corporation's felony conviction to impeach corporation's vicarious testimony); *Hickson Corp. v. Norfolk Southern Ry. Co.*, 227 F. Supp. 2d 903, 907-08 (E.D. Tenn. 2002), *aff'd* 124 Fed.Appx 336 (6th Cir. 2005) (corporation can be a vicarious witness and Rule 609 allows the use of a corporation's felony conviction to impeach the corporation's vicarious testimony); *see also United States v. Trenton Potteries Co.*, 273 U.S. 392, 404-05 (1927).

**Disputed Preliminary Instruction No. 17 Re Guilty Pleas of Corporations—Employee-Witnesses Offered by Defendants**

[Defendants object to this instruction in its entirety.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPP's Argument re Disputed Preliminary Instruction No. 17: Credibility of Employee Witnesses of Corporations Who Pled Guilty Offered by DPPs**

DPPs' instruction would prevent confusion arising from the distinction between the Defendants and their testifying executives or employees. DPPs' instruction would ensure the jury understands that a corporation's guilty plea may bear on the credibility of its employees as witnesses. Otherwise, the jurors may not understand that an agent of a corporation speaks for the corporation and, consequently, that the credibility of an agent's testimony should be considered in the light of its employer's binding admissions of guilt.

Just as Ninth Circuit Model Instruction 4.2 states that a corporation "can only act through its employees, agents, directors, or officers," DPPs' instruction states that a corporation "speaks through its officers, employees and other agents." Further, DPPs' instruction appropriately clarifies that the jury may treat a *denial* of wrongdoing by an employee of a convicted company as less credible than the denial would be absent the conviction. *See* Fed. R. Evid. 609(a)(1)(A) (providing that a witness in a civil case may be impeached based on his past felony conviction).

Any prejudice to Defendants from this instruction is not unfair, as the confessed crimes involve the business conduct at issue in this trial. *See, e.g.*, *Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.*, No. 01 CIV. 3796 (PKL), 2005 WL 1026515, at *8 (S.D.N.Y. May 2, 2005) (recognizing reasonable inference that CEO was "'directly connected to the underlying criminal act' discussed in the Information, and the conviction reflects on his credibility.") (citation omitted); *Stone v. C.R. Bard, Inc.*, No. 02 CIV 3433 WHP, 2003 WL 22902564, at *2-4 (S.D.N.Y. Dec. 8, 2003) ("Any other result would permit [defendant], through its agent . . . , to put its credibility at issue through testimony about its alleged stellar reputation in the industry, without an opportunity for plaintiffs to impeach that credibility.").

The jury should receive DPPs' instruction because it will be helpful in an otherwise confusing area.

**Defendants' Brief On Disputed Preliminary Instruction No. 17: Guilty Pleas of Corporations— Employee-Witnesses**

DPPs' proposed instruction should not be given because it is not an appropriate preliminary instruction, and because it is unnecessary, unfairly prejudicial to Defendants, and runs counter to Federal Rule of Evidence 609.

Defendants understand that this Court's practice, like that of other courts, is to provide the jury with short, high-level preliminary instructions focused on basic legal concepts like the duty of the jury and the burden of proof. *See Telesocial Inc. v. Orange S.A.*, et al., 14-cv-03985-JD, Dkt. No. 319 (N.D. Cal. July 7, 2017) (preliminary instructions adopted by the Court); *Kenu, Inc. v. Belkin International, Inc.*, 15-cv-01429-JD, Dkt. No 184 (N.D. Cal. June 8, 2018) (same); *Eberhard v. California Highway Patrol*, 14-cv-01910-JD, Dkt. No. 262 (N.D. Cal. Feb. 19, 2019) (same).  Accordingly, the *TFT-LCD* case, which involved criminal pleas and convictions of certain alleged co-conspirators, the preliminary instructions that Judge Illston delivered at the beginning of trial did not include any information about criminal pleas or convictions, or the credibility of witnesses associated in some way with those pleas or convictions.  *See In re: TFT-LCD (Flat-Panel) Antitrust Litigation*, 07-md-1827-SI, Dkt. No. 8371 (N.D. Cal. July 26, 2013), Transcript of Trial held on July 23, 2013, at 203:8-216:18 (preliminary instructions).  That is because the purpose of preliminary instructions is not to characterize or preview evidence that may or may not be introduced at trial—before the parties have even given their opening statements—and the Court should decline to do so here.

Finally, and as explained in Defendants' briefing on the final instructions (addressing a substantially identical final instruction proposed by DPPs), the proposed instruction deviates materially from the Ninth Circuit Model, is overly broad, is inconsistent with Federal Rule of Evidence 609 and the relevant caselaw, and would mislead the jury and unfairly prejudice Defendants by preemptively undermining the credibility of witnesses to the benefit of DPPs.

For all of these reasons, the Court should decline to give DPPs' proposed instruction.

**Stipulated Preliminary Instruction No. 18 Re Foreign Language Testimony Offered**

You will hear testimony of witnesses who will be testifying in Japanese or Chinese. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know Japanese or Chinese, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning. You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.8 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Preliminary Instruction No. 19: Translations of Documents Offered by DPPs**

You will be presented with English translations of documents that were originally in Japanese or other languages.

For some documents, there may be only one translation. When only one English translation is provided, that English translation is the version of the document that is evidence in this case, and you should only consider that as evidence. You must accept the translation as provided and disregard any alternative translation of the Japanese or Chinese words. You may not question or reject the accuracy of the translation of a document when there is only one translation.

If alternative translations are for the same non-English document, then you must consider which translation is more credible based on all the evidence you have heard in the case. Which translation is more credible, whether in whole or in part, is for you to decide.

Although some of you may know Japanese, Chinese, or languages other than English, it is important that all jurors consider the same evidence. You must not rely in any way on any knowledge you may have of Japanese, Chinese, or other languages and your consideration of any translated documents must be based on the evidence in the case.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.6 & 2.7 (2017); *United States v. Franco*, 136 F.3d 622, 628 (9th Cir. 1998); *United States v. Fuentes-Montijo*, 68 F.3d 352, 353-355 (9th Cir. 1995) (approving instruction jurors are not free to reject accuracy of interpretation of recordings differently than that given by the certified court interpreter); *see also United States v. Nochez*, No. CR 08-0730 WHA, 2010 WL 807447 (N.D. Cal. Mar. 5, 2010).

**Disputed Preliminary Instruction No. 19 Re Translations of Documents Offered by Defendants**

You have been presented with English translations of documents admitted into evidence that were originally in Japanese, Chinese, or other languages.

For some documents, there may be only one translation. When only one English translation is provided, that English translation is the version of the document that is evidence in this case, and you should only consider that as evidence. Therefore, you must accept the translation as provided and disregard any alternative translation of the Japanese or Chinese words.

If alternative translations have been offered for the same non-English document, then you must consider which translation is more credible, considering the knowledge, training, and experiences of the translator, as well as the nature of the document and the reasonableness of the translation in light of all the evidence in the case.  Which translation is more credible, whether in whole or in part, is for you to decide.

Although some of you may know Japanese, Chinese, or languages other than English, it is important that all jurors consider the same evidence. You must not rely in any way on any knowledge you may have of Japanese, Chinese, or other languages and your consideration of any translated documents must be based on the evidence in the case.

*Authority:* Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.6 & 2.7 (2017); *United States v. Franco*, 136 F.3d 622, 628 (9th Cir. 1998); *United States v. Fuentes-Montijo,* 68 F.3d 352, 353-355 (9th Cir. 1995) (approving instruction jurors are not free to reject accuracy of interpretation of recordings differently than that given by the certified court interpreter); see also *United States v. Nochez*, No. CR 08-0730 WHA, 2010WL 807447 (N.D. Cal. Mar. 5, 2010) ("Whether a transcript is an accurate translation, in whole or in part, is then left for the jury to decide considering the knowledge, training and experience of the translator, the audibility of the recordings, as well as the

nature of the conversation and the reasonableness of the translation in light of all the evidence in the

case.").

**DPP's Argument re Disputed Preliminary Instruction No. 19: Translation of Documents**

Defendants' selective edits to DPPs' proposed instruction are not an improvement. First, Defendants suggest deleting "You may not question or reject the accuracy of the translation of a document when there is only one translation." But this language clarifies the matter for jurors who might otherwise be inclined to question the meaning of a foreign language document, even when there is only one certified translation into English, based on factors such as their knowledge of the foreign language. No other sentence in the instruction informs jurors that they are not permitted to second-guess an uncontested certified translation.

Second, Defendants propose inserting modified language from the Ninth Circuit model instruction concerning disputed *transcripts of recordings*. *See* Ninth Circuit Manual of Model Civil Jury Instructions, Instr. No. 2.7 (Dec. 2019 update). That model instruction contemplates a situation where a foreign language audio or video recording is played for the jury and translated in court into English by a foreign language speaker whom the jury can observe. Thus, the model instruction states that the jury "*may* consider the knowledge, training, and experience of the translator, the audibility of the recording," and other factors in assessing the accuracy of a disputed translation of a recording transcript. *Id.* (emphasis added). DPPs' instruction, however, omits this language because there are no foreign-language recordings that will be presented to the jury in this case. There is no dispute that the foreign language depositions were incorrectly translated. Instead, the language addresses written translations of foreign language documents like the emails and meeting minutes produced by Defendants. There will be no document translator at trial whose credibility the jury can assess. The translator is not a live trial witness. These documents were translated by certified translators and shown to witnesses at depositions long ago. As a result, it would only confuse jurors to tell them that they *must* assess disputed translations of such documents "considering the knowledge, training, and experiences of the translator." The jury would have no way to gauge the quality of a translator about whom they know nothing and whom they cannot observe. A more general instruction, directing the jury to consider "all the evidence in the case" in assessing competing translations, is instead appropriately tailored to the evidence in question and will avoid confusion.

For these reasons, the Court should give DPPs' proposed instruction on translated documents without Defendants' suggested modifications.

**Defendants' Brief On Disputed Preliminary Instruction No. 19 Re Translations of Documents**

Both sets of disputed instructions are adapted from the Ninth Circuit Manual of Model Civil Jury Instructions.  But Defendants' proposal tracks more closely the Ninth Circuit Model.

At the end of the second paragraph, DPPs propose including the sentence, "You may not question or reject the accuracy of the translation of a document when there is only one translation." Defendants oppose the addition of this sentence because it is not in the Ninth Circuit Model and is unnecessary given the other language in the same paragraph.

Next, in the first sentence of the third paragraph, which address the topic of alternative translations, Defendants propose including the phrase, "considering the knowledge, training, and experiences of the translator, as well as the nature of the document and the reasonableness of the translation in light of all the evidence in the case," instead of DPPs' proposed phrase, "based on all the evidence you have heard in the case."  Defendants' proposed phrase hews very closely to the Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.7 (2017) ("You may consider the knowledge, training, and experience of the translator, the audibility of the recording, as well as the nature of the conversation and the reasonableness of the translation in light of all the evidence in the case.").  There is no compelling reason to remove this language from the model.  Nor is there a compelling basis to exclude the instruction to the jury that it should consider the translator, the nature of the document, and the reasonableness of the translation when evaluating competing translations.

**Stipulated Preliminary Instruction No. 20: No Transcript Available to Jury**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.17 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 21: Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.18 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                         _____

                                                                            *District Court Judge*

**Stipulated Preliminary Instruction No. 22: Questions to Witnesses by Jurors**

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will rephrase from the wording submitted. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.19 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Preliminary Instruction No. 23: Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the

witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If you learn that any juror is exposed to any outside information, please notify the court immediately.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.15 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                          _____

*District Court Judge*

**Stipulated Instruction No. 1 Re Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.4 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                    _____

                                                                    *District Court Judge*

**Disputed Instruction No. 2 Re Burden of Proof: Preponderance of the Evidence Offered by DPPs**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trials, such as this one, the party who is required to prove something need prove only that it is more likely to be true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017); Third Circuit Model Civil Jury Instructions, Instr. 1.10; CACI 200.

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 2: Burden of Proof: Preponderance of the Evidence Offered by Defendants**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017); CACI 200.

**DPP's Argument re Disputed Instruction No. 2: Burden of Proof: Preponderance of the Evidence**

DPPs have proposed including two additional sentences to the Ninth Circuit model instruction to prevent jury confusion about the burdens of proof in civil and criminal trials. This case is replete with Defendants, high-level employees, and co-conspirators who have pled guilty to criminal violations. Jurors often come into the courtroom having watched shows such as "Law and Order" and may be familiar with the burden of proof in criminal cases. DPPs do not need to prove their case beyond a reasonable doubt, and the jury should be so informed lest they apply the incorrect legal standard. The Ninth Circuit's model instructions may omit such a reference, but they are not designed for antitrust cases. In antitrust cases, concepts of guilt and criminal conspiracy compose the backdrop of the litigation—this civil case follows a related criminal case with multiple guilty pleas. Thus, the jury would benefit from some orientation and clarification.

The proposed additional sentences are drawn directly from the model California State jury instruction; they succinctly and simply explain the different burdens of proof in civil and criminal cases. *See* CACI 200. They explain that the burden of proof in civil trials is a "preponderance of the evidence" standard, which is different from the "beyond a reasonable doubt standard" employed in criminal trials. Other circuits instruct on these differing burdens of proof. The Third Circuit model civil jury instructions, for example, include a sentence distinguishing between the two standards and make clear that the "reasonable doubt" standard does not apply in civil cases. *See* Third Circuit Model Civil Jury Instructions, Inst. 1.10. The Court should give the jury DPPs' proposed additions as it will help the jury understand the differences between the burdens of proof in civil and criminal cases.

**Defendants' Brief on Disputed Instruction No. 2 Re Burden of Proof: Preponderance of the Evidence**

Defendants' proposed instruction is taken verbatim from the Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017).

By contrast, DPPs' proposed instruction begins with the Ninth Circuit Model but adds an entirely new paragraph on the burden of proof in criminal trials. This second paragraph proposed by DPPs – which introduces principles of criminal law – is unnecessary in a civil case and will confuse the jury about the relevant burden of proof.

Additionally, DPPs' proposed language comes from a California state law model relating to California Evidence Code Section 502, which has no bearing on this federal case. DPPs also cite another out-of-circuit model.

DPPs cite no antitrust case in which the jury was instructed with their proposed additional paragraph, and it was not given in the *TFT-LCD* case, despite parallel criminal proceedings and pleas in that case. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal.) (Doc. 6036), at 2.

The Court should decline to deviate from the Ninth Circuit Model.

### Stipulated Instruction No. 3 Re Class Action

This lawsuit has been brought as a class action. A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a larger group of people or businesses whom the class representatives allege are similarly situated. All of these people or businesses together are called a class. The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Nov. 13, 2018) (Doc. 791).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 3A Re Counsel Cooperation Offered by Defendants**

You have noticed throughout the trial that counsel for the defendants have consulted with each other and have divided the work of the trial in an effort to facilitate their presentation and to avoid duplication.  The fact that defense counsel have consulted and cooperated with each other in the conduct of their defense is not to be considered by you as having any significance with respect to the issues in the case.

*Authority*: Leonard B. Sand, *Modern Federal Jury Instructions*, Instr. 2-10 (2011).

1

2

**DPP's Argument re Disputed Instruction No. 3A: Counsel Cooperation Offered by Defendants**

3

The jury will be instructed that the arguments and conduct of counsel are not evidence and may

4

not be considered in finding the facts. *See* Stipulated Instr. No. 8 (What Is Not Evidence). Defendants

5

nevertheless propose an additional instruction warning the jury against reading anything into their

6

counsel's collaboration as part of putting on the defense case. Defendants cite no case in which a court

7

gave such an instruction.

8

Defendants' proposed instruction is unnecessary and confusing because the jury will have

9

already been instructed to decide this case solely based on the evidence, without regard to what the

10

parties' lawyers say or do. To the extent Defendants are concerned about an impression that they

11

cooperated in fixing prices merely because their lawyers cooperate at trial, that concern is misplaced.

12

People know that lawyers have their own job to do and are distinct from their clients. Jurors are thus

13

not likely to read anything into attorney cooperation. Accordingly, the Court should reject Defendants'

14

proposed instruction on cooperation of counsel.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Brief on Disputed Instruction No. 3A Re Counsel Cooperation**

Defendants' proposed instruction comes from Leonard B. Sand, Modern Federal Jury Instructions, Instr. 2-10 (2011).  Given that DPPs have alleged a conspiracy among Defendants, it is entirely appropriate that the jury be instructed that basic cooperation at trial among counsel for those same Defendants has no legal significance and should not have any bearing on their determination of the issues in this case.

**Disputed Instruction No. 4: Identification of the Parties and Claims and Defenses Offered by DPPs**

This trial involves a product called capacitors. Capacitors are electronic components used to temporarily store electrical energy. They are essential to ensure that electronic devices work. Everything that runs on electricity has at least one capacitor in it, and most devices have many more than one. Complex devices like cell phones typically have hundreds.

The Plaintiffs in the case are the Direct Purchaser Plaintiffs, who I will refer to as DPPs. DPPs are a certified class that purchased capacitors directly from one or more of the Defendants. The four named direct purchaser plaintiffs are Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc. All are United States companies.

The class includes all persons (including individuals, companies, or other entities) that purchased capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from January 1, 2002 to December 31, 2013 (the "Class Period") and such persons are: (a) inside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period (*i.e.*, where capacitors were "billed to" persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period, where such capacitors were imported into the United States by one or more Defendants (*i.e.*, where the capacitors were "billed to" persons outside the United States but "shipped to" persons within the United States).

The Defendants in this case are Nippon Chemi-Con Corporation and United Chemi-Con Inc., referred to as "NCC"; AVX Corporation, referred to as "AVX"; ELNA Co. Ltd. and ELNA America Inc., referred to as "ELNA"; Matsuo Electric Co. Ltd., referred to as "Matsuo"; Holy Stone Enterprise Co. Ltd., Milestone Global Technology, Inc., and Holy Stone Polytech Co. Ltd., referred to as "Holy Stone"; Taitsu Corporation and Taitsu America Inc., referred to as "Taitsu"; and Shinyei Kaisha, Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., and Shinyei Corporation of America,

referred to as "Shinyei." Some Defendants manufactured and sold aluminum, film and tantalum capacitors, and some Defendants sold one type or another.

DPPs allege that the Defendants through words and conduct, reached an agreement, combination, or conspiracy to fix prices and suppress competition with respect to aluminum, film and tantalum capacitors. Many of these capacitors were billed to or shipped to the United States. A conspiracy is an agreement, understanding or common course of conduct between two or more entities to restrain trade in some manner. Such conduct violates the Sherman Act, the United States' primary antitrust law. DPPs allege that they were injured by this agreement, combination, or conspiracy as it caused the DPPs to pay more for aluminum, film and tantalum  capacitors than they otherwise would have in the absence of this contract, combination, or conspiracy. DPPs allege this conduct took place between January 1, 2002 and December 31, 2013. DPPs seek to recover overcharges they claim they paid as a result of the conduct during this time period.

DPPs allege this price fixing conspiracy occurred by the regular and systemized exchange of companies' confidential business information between each other, regularly scheduled meetings to discuss this confidential business information, raising, maintaining, and stabilizing prices for aluminum, film and tantalum capacitors at prices higher than those that would have been offered in the absence of the conspiracy, by limiting the production of capacitors, and by refusing to agree to requests from customers for price reductions.

DPPs have the burden of proving the claims they assert.


*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.5 (2017); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 101:01 (6th ed. 2012).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 4 Re Identification of the Parties and Claims and Defenses Offered by Defendants**

As I said at the outset of this case, the DPPs consist of a class of purchasers. The class is defined as: "All persons . . . that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from January 1, 2002 to December 31, 2013 (the 'Class Period'), and such persons are: (a) inside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period (i.e., where capacitors were 'billed to' persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period, where such capacitors were imported into the United States by one or more Defendants (i.e., where the capacitors were 'billed to' persons outside the United States but 'shipped to' persons within the United States)."

The representatives of this class are Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc. The Court appointed these class representatives to present the case on behalf of the class.  So although you did not hear from each individual class member, you did hear the claims of individual class representatives, and any judgment — win or lose — will be binding on the rest of the class members. When I refer to "Plaintiffs" or "DPPs" generally in these instructions, I will be referring to both the named plaintiffs and each of the other class members.

The Defendants in this case are defined as follows: "AVX" refers to AVX Corp.; "ELNA" refers to ELNA Co. Ltd. and ELNA America Inc.; "Holy Stone Enterprise" refers to Holy Stone Enterprise Co., Ltd.; "Holy Stone Polytech" or "HPC" refers to Holy Stone Polytech Co., Ltd.; "Matsuo" refers to Matsuo Electric Co., Ltd.; "Milestone" or "Holy Stone International" refers to Milestone Global Technology, Inc.; "NCC" refers to Nippon Chemi-Con Corp.; "Shinyei" refers to Shinyei Kaisha, Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd. and Shinyei Corp. of America; "Taitsu" refers to Taitsu Corp. and Taitsu America, Inc.; "UCC" refers to United Chemi-Con Inc.; and "Vishay" refers to Vishay Polytech Co., Ltd.  Defendants manufactured and sold one or more types of aluminum, tantalum, and/or film capacitors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The DPPs allege that Defendants "conspired by directly and indirectly communicating with each other to implement and effectuate an overarching scheme to control and set the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide" from January 1, 2002 until December 31, 2013.  This is the conspiracy alleged by the DPPs in this case. The DPPs have the burden of proving this alleged conspiracy.

The Defendants deny the DPPs' claims.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.5 (2017); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 101:01 (6th ed. 2012); Third Amended Class Action Complaint, at para. 13.

### DPP's Argument re Disputed Instruction No. 4: Identification of the Parties and Claims and Defenses

DPPs' instruction adheres more closely to the purpose of jury instructions than Defendants' instruction, *see* 3 Fed. Jury Prac. & Instr. § 100:01 (6th ed. 2012) ("instructions help jurors focus on their duties and responsibilities, the parties' factual contentions., and the parties theories of the case."); *see also Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) ("Jury instructions are designed to clarify issues for the jury and to educate the jury about what factors are probative on those issues."), and tracks the instruction given in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) ECF No. 8543 at 3-4. This case involves the price fixing of a specific commodity, capacitors. The jury should be instructed about the product and its uses. Like the *TFT-LCD* instruction, DPPs' proposed instruction provides undisputed factual context to the jury. DPPs use plain English to describe capacitors, including what they are and how they are used.

In contrast, Defendants' proposed instruction introduces irrelevant legal technicalities specific to class action litigation—legal considerations that should not color the jury's judgment or increase the likelihood of confusion. For example, Defendants insert the language "any judgment— win or lose— will be binding on the rest of the class members." There is no substantive issue for the jury to consider relating to class certification. This is a pure legal consequence of the judgment in a class action. Defendants have identified no other case in which such an instruction was given. *See Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997) ("[A] judge should tell jurors what their practical tasks are under the law, rather than providing raw legal texts for jurors to digest."); *see also Fuller v. Phillips*, 67 F.3d 1137, 1144 (4th Cir. 1995), abrogated on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). ("Simple instructions are normally to be preferred, in order not to inject needless complexity and potential confusion where simplicity is far more appropriate.") (internal quotation marks and citation omitted). Also, jurors who may harbor reservations about the class device as a litigation tool may hear the language and it may influence their consideration of the case.

DPPs' proposed instruction describes the parties in simple, plain English and in logical sequence, grouping members of the same corporate family together. Defendants' proposed instruction,

on the other hand, notes that "Holy Stone" refers to Holy Stone Enterprise Co., Ltd., "Milestone" refers to Milestone Global Technology, Inc., and "Vishay" refers to Vishay Polytech Co. Ltd, sequenced apart from each other. They are part of the same corporate family. Milestone does business as Holy Stone International. Vishay Polytech was formerly known as Holy Stone Polytech. Defendants seek to cause needless complexity and confusion, obscuring the relationships between these entities. *See Arandell Corp. v. Centerpoint Energy Services, Inc.*, 900 F.3d 623, 631-32 (9th Cir. 2018) (wholly owned subsidiary engaging in coordinate activity with its parents and commonly owned affiliates deemed a single economic unit). Similarly, Defendants' proposed instruction separates out NCC and UCC in the list of corporate Defendants. This too could lead the jury to believe the two entities are not related, when they are two members of the same corporate family. They should be listed next to each other.

*"This is the conspiracy alleged by the DPPs in this case."* DPPs object to the second-to-last sentence in the last paragraph of Defendants' proposed instruction as it is argumentative and misstates the law as to what DPPs must prove. DPPs get to choose the case they are trying, not Defendants, and DPPs are not limited to the allegations they made in their complaint. Defendants' proposed language would improperly mislead the jury into believing the Class must prove the specific conspiracy—as the Defendants would prefer to define it—rather than just *a* conspiracy—as the Sherman Act requires. 15 U.S.C. § 1; *see* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1, Instr. 2 ("To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following: [¶] (1) the existence of *a* contract, combination, or conspiracy between or among at least two separate entities . . . ." (emphasis added)); *see also Klor's Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 210 (1959) ("Section 1 of the Sherman Act makes illegal *any* . . . conspiracy in restraint of trade" (emphasis added)). DPPs should be free to present its case how it chooses. It is the province of the jury to determine whether DPPs have proved any conspiracy, not the one the Defendants describe.

**Defendants' Brief on Disputed Instruction No. 4: Identification of the Parties and Claims and Defenses**

Plaintiffs' proposed instruction improperly applies generic references to certain groups of Defendants with the hope that the jury will impute the acts of one corporate actor to other corporate actors within the same group, regardless of the law and actual facts.  Because Defendants are separately incorporated, their independence must be presumed.  *See E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, Civ. No. 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008).  Such generic references disregard each Defendants' separate corporate existence and improperly sidestep Plaintiffs' burden to prove liability as to each separate Defendant.  Plaintiffs' proposed instruction is thus confusing to the jury and prejudicial to Defendants.

The purpose of this instruction is simply to identify for the jury the parties, claims and defenses, not to argue Plaintiffs' case.  However, Plaintiffs take two full paragraphs to state their "claims," while misstating key elements of antitrust law, describing their purported evidence, including immaterial details, and impermissibly suggesting that such evidence is sufficient to establish a conspiracy in violation of the Sherman Act.  Plaintiffs' proposed instruction is wildly argumentative and unduly prejudicial.  It is also redundant of other instructions, which correctly state the law.  Such an instruction about the claims and defenses will be particularly unnecessary following a five-week trial concerning those claims.

Plaintiffs cite no authority to support their long, argumentative, and tedious instruction.  *See United States v. Assi*, 748 F.2d 62, 65 (2d Cir. 1984) (jury instructions should be "succinct" and "free of irrelevant and confusing digressions.").  In contrast, Defendants' Proposed Jury Instruction succinctly tracks the Ninth Circuit Manual of Model Civil Jury Instruction and jury instructions from a recent analogous antitrust case in this district, and correctly describes the parties' claims and defenses by directly quoting the description of Plaintiffs' alleged conspiracy from the Third Amended Complaint. Defendants object to DPPs' sudden use throughout their instructions of the phrase "aluminum, film, and tantalum capacitors," rather than "aluminum, tantalum, and film capacitors," as a transparent effort to confuse and mislead the jury on a key point in this case.  The fact that film capacitors are different from

electrolytic capacitors is a key issue in this case and Defendants object to DPPs' attempts throughout their instructions to list them in a new and confusing order.  As DPPs are well aware, and as DPPs' own experts recognize, aluminum and tantalum capacitors are both types of electrolytic capacitors, while film capacitors are not a type of electrolytic capacitor but are instead a separate capacitor type altogether.  Reflecting this fact, throughout the *entire* litigation DPPs have consistently ordered the dielectrics to group aluminum and tantalum together, followed by film.  Indeed, DPPs themselves used the order "aluminum, tantalum, and film" over 70 times in their Third Amended Complaint, and continued to use that order as recently as January 9, 2020 when the parties' exchanged draft portions of the Joint Pretrial Statement.  Defendants are aware of no previous instance in this case where DPPs ever used the ordering they now seek to use in their jury instructions.

**Disputed Instruction No. 5 Re Corporate Equality Offered by DPPs**

Plaintiffs and Defendants are corporations. A corporation is entitled to the same fair trial as a private individual. All persons, corporations, partnerships, and other organizations stand equal before the law, and in this Court.

Therefore, in examining the issues in this case, it does not matter that the parties are corporations. You should consider and decide this case as a dispute between those of equal standing.

*Authority*: *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 5 Re Corporate Equality Offered by Defendants**

Plaintiffs and Defendants are corporations. A corporation is entitled to the same fair trial as a private individual. All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal in this Court.

Therefore, in examining the issues in this case, it does not matter that the parties are corporations. You should consider and decide this case as a dispute between those of equal standing.

You should decide the case as to each Defendant separately, even though there are multiple Defendants and the parties may have presented some common evidence.

Unless otherwise stated, the instructions apply to all parties.

*Authority*: *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

**DPP's Argument re Disputed Instruction No. 5: Corporate Equality**

Defendants would add the following language: "You should decide the case as to each Defendant separately, even though there are multiple Defendants and the parties may have presented some common evidence. Unless otherwise stated, the instructions apply to all parties."
DPPs object to this insertion.

Defendants' proposed instruction requires that all elements of the Section 1 claim—including the existence of a conspiracy, a nexus to interstate or import commerce, injury, and damages, must be proven as to each particular Defendant for DPPs to prevail at all. DPPs do not need to re-prove the conspiracy again and again. DPPs need to prove *a* conspiracy to recover under Section 1 of the Sherman Act. 15 U.S.C. § 1; *see* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1, Instr. 2 ("To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following: [¶] (1) the existence of *a* contract, combination, or conspiracy between or among at least two separate entities . . . ." (emphasis added)); DPPs Argument re Disputed Instr. No. 22A Offered by Defs (Single v. Multiple Conspiracies). To be sure, for a defendant to be liable, DPPs must prove the "defendant in question knowingly joined in the unlawful plan" and DPPs have proposed an instruction to this effect. Disputed Proposed Instr. No. 23 offered by DPPs (Participation and Intent); *see also* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 4 (same). But neither the ABA's Model Jury Instructions nor any of Defendants' citations require that the *conspiracy* be proven repeatedly. Nor does the interstate or import commerce requirement vary by Defendant—Defendants' own instruction on this point, notwithstanding its questionable propriety in this case, would require proof only of "an express or tacit agreement intending to produce a substantial effect in the United States." Disputed Instr. No. 29B Offered by Defs (Import Commerce). Questions of causation and damages similarly do not vary by Defendant, as all Defendants who knowingly joined the conspiracy are jointly and severally liable. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 668 F.2d 1014, 1052–53 (9th Cir.1981) ("antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy."); *see also City of Atlanta v. Chattanooga Foundry & Pipeworks*, 127 F. 23, 26 (6th Cir. 1902), *aff'd*, 203 U.S. 340 (1906).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Brief on Disputed Instruction No. 5: Corporate Equality**

Both disputed instructions are based on the instructions given in *In re Korean Ramen Antitrust In re Korean Ramen Antitrust Litig.,* No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018), Doc. 907 and *In re TFT-LCD Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal.), Doc. 8543.  Defendants' proposal hews more closely to the facts of this case.  Defendants propose including the language in the third and fourth paragraphs, "You should decide the case as to each Defendant separately, even though there are multiple Defendants and the parties may have presented some common evidence.  Unless otherwise stated, the instructions apply to apply to all parties," which is taken almost verbatim from the *TFT-LCD* instruction.  Because this case involves multiple defendants cooperating to present a defense at trial, this language is critical in explaining to the jury that liability must be decided individually as to each defendant.

**Stipulated Instruction No. 6 Re What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

(1)     the sworn testimony of any witness;

(2)     the exhibits that are admitted into evidence;

(3)     any facts to which the lawyers have agreed; and

(4)      any facts that I may instruct you to accept as proved.


*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.9 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                                    _____

                                                                                        *District Court Judge*

**Stipulated Instruction No. 7 Re Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.12 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

### Stipulated Instruction No. 8 Re What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3)  Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)  Anything you may have seen or heard when court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.


*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.10 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                   _____

                                                             *District Court Judge*

**Stipulated Instruction No. 9 Re Ruling on Objections**

There are rules of evidence that control what was received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer objected. If I overruled the objection, the question was answered or the exhibit was received. If I sustained the objection, the question was not answered, or the exhibit was not be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.13 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Instruction No. 10 Re Deposition Testimony**

Depositions are part of the discovery process. Discovery is the period during a case when the parties are permitted to learn information from each other. The questions and answers are recorded.

Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions; Instr. 2.4 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                        _____

*District Court Judge*

### Stipulated Instruction No. 11 Re Use of Interrogatories

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.

You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.11 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

## Stipulated Instruction No. 12 Re Credibility of Witnesses

In deciding the facts in this case, you have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)  the opportunity and ability of the witness to see or hear or know the things testified to;

(2)  the witness's memory;

(3)  the witness's manner while testifying;

(4)  the witness's interest in the outcome of the case, if any;

(5)  the witness's bias or prejudice, if any;

(6)  whether other evidence contradicted the witness's testimony;

(7)  the reasonableness of the witness's testimony in light of all the evidence; and

(8)  any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.14 (2017).

1   ___ GIVEN

2   ___ GIVEN AS MODIFIED

3   ___ REFUSED

4   ___ WITHDRAWN               _____

5                                                  *District Court Judge*

**Disputed Instruction No. 13 Re Impeachment Evidence—Witness Offered by DPPs**

The evidence that a witness has been convicted of a crime, lied under oath on a prior occasion, etc., may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.9 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                    _____

*District Court Judge*

**Disputed Instruction No. 13 Re Impeachment Evidence—Witness Offered by Defendants**

The evidence that a witness has been convicted of a crime may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.9 (2017).

**DPP's Argument re Disputed Instruction No. 13 Re Impeachment Evidence—Witness**

Defendants' proposed instruction departs from the Ninth Circuit's Model Civil Instruction 2.9 by deleting "lied under oath on a prior occasion, etc." A witness can be impeached in a variety of ways. DPPs object because this may wrongly give the jury the impression that impeachment can be accomplished only through evidence of prior convictions. DPPs request the Court give their proposed instruction, which tracks the Ninth Circuit model instruction.

**Defendants' Brief on Disputed Instruction No. 13:**
**Impeachment Evidence—Witness**

DPPs' Proposed Jury Instruction No. 13 contains the unnecessary and prejudicial phrase "lied under oath on a prior occasion." As drafted, the instruction suggests to the jury that witnesses have previously lied and is broader than necessary to inform the jury about the permissible use of impeachment evidence.

To be clear, there is no evidence that any witness in this case ever lied under oath and DPPs do not identify any such instances of perjury. To instruct the jury that jurors may consider whether any witness has lied under oath incorrectly suggests that one or more witness may have done so. Because there is no evidence that Defendants have lied under oath, it is unnecessary to instruct the jury on how to consider such a statement. Instructing the jury on unspecified past perjury is particularly unnecessary because the parties have proposed a stipulated instruction regarding the credibility of witnesses, which comes directly from the Ninth Circuit Model on Civil Jury Instructions.

**Stipulated Instruction No. 14 Re Foreign Language Testimony**

You have heard testimony of witnesses who testified in Japanese and Chinese. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know Japanese or Chinese, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning. You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.8 (2017).

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 15 Re Translations of Documents Offered by DPPs**

You have been presented with English translations of documents admitted into evidence that were originally in Japanese, Chinese, or other languages.

For some documents, there may be only one translation. When only one English translation is provided, that English translation is the version of the document that is evidence in this case, and you should only consider that as evidence. Therefore, you must accept the translation as provided and disregard any alternative translation of the Japanese or Chinese words. You may not question or reject the accuracy of the translation of a document when there is only one translation.

If alternative translations have been offered for the same non-English document, then you must consider which translation is more credible based on all the evidence you have heard in the case. Which translation is more credible, whether in whole or in part, is for you to decide.

Although some of you may know Japanese, Chinese, or languages other than English, it is important that all jurors consider the same evidence. You must not rely in any way on any knowledge you may have of Japanese, Chinese, or other languages and your consideration of any translated documents must be based on the evidence in the case.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.6 & 2.7 (2017); *United States v. Franco*, 136 F.3d 622, 628 (9th Cir. 1998); *United States v. Fuentes-Montijo*, 68 F.3d 352, 353-355 (9th Cir. 1995) (approving instruction jurors are not free to reject accuracy of interpretation of recordings differently than that given by the certified court interpreter); *see also United States v. Nochez*, No. CR 08-0730 WHA, 2010WL 807447 (N.D. Cal. Mar. 5, 2010).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 15 Re Translations of Documents Offered by Defendants**

You have been presented with English translations of documents admitted into evidence that were originally in Japanese, Chinese, or other languages.

For some documents, there may be only one translation. When only one English translation is provided, that English translation is the version of the document that is evidence in this case, and you should only consider that as evidence. Therefore, you must accept the translation as provided and disregard any alternative translation of the Japanese or Chinese words.

If alternative translations have been offered for the same non-English document, then you must consider which translation is more credible, considering the knowledge, training, and experiences of the translator, as well as the nature of the document and the reasonableness of the translation in light of all the evidence in the case. Which translation is more credible, whether in whole or in part, is for you to decide.

Although some of you may know Japanese, Chinese, or languages other than English, it is important that all jurors consider the same evidence. You must not rely in any way on any knowledge you may have of Japanese, Chinese, or other languages and your consideration of any translated documents must be based on the evidence in the case.

*Authority:* Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.6 & 2.7 (2017); *United States v. Franco*, 136 F.3d 622, 628 (9th Cir. 1998); *United States v. Fuentes-Montijo*, 68 F.3d 352, 353-355 (9th Cir. 1995) (approving instruction jurors are not free to reject accuracy of interpretation of recordings differently than that given by the certified court interpreter); see also *United States v. Nochez*, No. CR 08-0730 WHA, 2010WL 807447 (N.D. Cal. Mar. 5, 2010) ("Whether a transcript is an accurate translation, in whole or in part, is then left for the jury to decide considering the knowledge, training and experience of the translator, the audibility of the recordings, as well as the nature of the conversation and the reasonableness of the translation in light of all the evidence in the case.").

**DPP's Argument re Disputed Instruction No. 15: Translation of Documents**

Defendants' selective edits to DPPs' proposed instruction are not an improvement. First, Defendants suggest deleting "You may not question or reject the accuracy of the translation of a document when there is only one translation." But this language clarifies the matter for jurors who might otherwise be inclined to question the meaning of a foreign language document, even when there is only one certified translation into English, based on factors such as their knowledge of the foreign language. No other sentence in the instruction informs jurors that they are not permitted to second-guess an uncontested certified translation.

Second, Defendants propose inserting modified language from the Ninth Circuit model instruction concerning disputed *transcripts of recordings*. *See* Ninth Circuit Manual of Model Civil Jury Instructions, Instr. No. 2.7 (Dec. 2019 update). That model instruction contemplates a situation where a foreign language audio or video recording is played for the jury and translated in court into English by a foreign language speaker whom the jury can observe. Thus, the model instruction states that the jury "*may* consider the knowledge, training, and experience of the translator, the audibility of the recording," and other factors in assessing the accuracy of a disputed translation of a recording transcript. *Id.* (emphasis added). DPPs' instruction, however, omits this language because there are no foreign-language recordings that will be presented to the jury in this case. There is no dispute that the foreign language depositions were incorrectly translated. Instead, the language addresses written translations of foreign language documents like the emails and meeting minutes produced by Defendants. There will be no document translator at trial whose credibility the jury can assess. The translator is not a live trial witness. These documents were translated by certified translators and shown to witnesses at depositions long ago. As a result, it would only confuse jurors to tell them that they *must* assess disputed translations of such documents "considering the knowledge, training, and experiences of the translator." The jury would have no way to gauge the quality of a translator about whom they know nothing and whom they cannot observe. A more general instruction, directing the jury to consider "all the evidence in the case" in assessing competing translations, is instead appropriately tailored to the evidence in question and will avoid confusion.

For these reasons, the Court should give DPPs' proposed instruction on translated documents without Defendants' suggested modifications.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Defendants' Brief on Disputed Instruction No. 15:
### Translations of Documents

Both sets of disputed instructions are adapted from the Ninth Circuit Manual of Model Civil Jury Instructions.  But Defendants' proposal tracks more closely the Ninth Circuit Model.

At the end of the second paragraph, DPPs propose including the sentence, "You may not question or reject the accuracy of the translation of a document when there is only one translation." Defendants oppose the addition of this sentence because it is not in the Ninth Circuit Model and is unnecessary given the other language in the same paragraph.

Next, in the first sentence of the third paragraph, which address the topic of alternative translations, Defendants propose including the phrase, "considering the knowledge, training, and experiences of the translator, as well as the nature of the document and the reasonableness of the translation in light of all the evidence in the case," instead of DPPs' proposed phrase, "based on all the evidence you have heard in the case."  Defendants' proposed phrase hews very closely to the Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.7 (2017) ("You may consider the knowledge, training, and experience of the translator, the audibility of the recording, as well as the nature of the conversation and the reasonableness of the translation in light of all the evidence in the case.").  There is no compelling reason to remove this language from the model.  Nor is there a compelling basis to exclude the instruction to the jury that it should consider the translator, the nature of the document, and the reasonableness of the translation when evaluating competing translations.

**Stipulated Instruction No. 16 Re Expert Opinion**

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.13 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 16A Re Conflicting Expert Testimony Offered by Defendants**

You have heard testimony of witnesses the parties refer to as experts who have been called by both sides to give their opinion about various issues.

The witnesses who testified in this case did so to assist you in reaching a decision on certain issues. It is your obligation to determine the expertise, if any of such witnesses and the credibility of such witnesses and the reliability of their opinions.

The testimony of these witnesses is in conflict. They disagree. You must remember that you are the sole trier of the facts and where their testimony relates to questions of fact—it is your job to resolve the disagreements.

The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness.  The determination of the facts in this case rests solely with you.

*Authority*: *In re TFT-LCD (Flat Panel) Antitrust Litigation,* Jury Instructions, 07-md-01827-SI, Dkt. 6036 (N.D. Cal. June 28, 2012); Leonard B. Sand, Modern Federal Jury Instructions, Instr. 76-10 (2011).

**DPP's Argument re Disputed Instruction No. 16A: Conflicting Expert Testimony Offered by Defendants**

DPPs acknowledge that Judge Illston used Defendants' proposed instruction on conflicting expert testimony in the *TFT-LCD* price-fixing litigation. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.), ECF Nos. 6036, 8543. However, DPPs do not know what compromises between the parties or other issues may have led to that instruction being given, and do not believe it is appropriate here. In this case, the parties have agreed to instructions regarding the credibility of witnesses and the opinions of expert witnesses. (*See* Stipulated Instr. No. 12: Credibility of Witnesses; Stipulated Instr. No. 16: Expert Opinion).

Defendants' proposed instruction, for example, would repeat portions of other instructions, unduly emphasizing expert witnesses as particularly deserving of skepticism. That is duplicative of Stipulated Instruction No. 16, which would likewise tell the jury that expert testimony should be "give[n] it as much weight as you think it deserves, considering . . . all the other evidence in the case." Defendants' proposed instruction also would advise the jury, in considering disputed expert testimony, to take into account "the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying." That is duplicative of Stipulated Instruction No. 12, which advises the jury in considering testimony to take into account "the witness's bias or prejudice, if any" and "whether other evidence contradicted the witness's testimony." Additionally, Defendants' proposed instruction states "The determination of the facts in this case rests solely with you." That is duplicative of Stipulated Instruction No. 7 (Direct and Circumstantial Evidence), which states: "It is for you to decide how much weight to give to any evidence."

There is no need to repeat principles in instructing the jury. And doing so in regard to expert proof could lead the jury to believe that expert witness should be treated as inherently suspect. Especially for this reason, this Court should refrain from using Defendants' duplicative instruction.

**Defendants' Brief on Disputed Instruction No. 16A: Conflicting Expert Testimony**

Defendants' proposed instruction provides important guidance with respect to conflicting expert testimony, which is particularly important in this case where each side will be calling a significant number of expert witnesses.  When experts differ, courts concur that it is for the jury to decide which of the experts was more credible, which used the more reliable data, and whose opinion—if any—the jury would accept." *Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir. 1986); *Lust v. Clark Equip. Co.*, 792 F.2d 436, 439 (4th Cir. 1986).  Further, this instruction is consistent with that given in other cases in the Northern District.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, 07-md-01827-SI, Dkt. No. 6036 (N.D. Cal. June 28, 2012).

This instruction is also recommended by the Model Federal Jury Instructions, which is cited favorably by the Ninth Circuit.  Leonard B. Sand, Modern Federal Jury Instructions, Instr. 76-101 (2011) (*cited in* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 14 (Dec. 2019)).  The American Bar Association Antitrust Section similarly proposes an instruction on expert testimony explaining that expert testimony "is to be considered like any other testimony" and "should receive such weight and credit as [the juror] deem it entitled to, when viewed in connection with all the other facts and circumstances," both of which are captured in Defendants' proposed language.  American Bar Association Antitrust Section, Model Jury Instructions in Civil Antitrust Cases, § 13 (2019) (*cited in* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 14 (Dec. 2019)).

**Stipulated Instruction No. 17 Re Charts and Summaries**

During trial, certain charts and summaries have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Some of those charts or summaries came into evidence, while others did not. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.14 and Instr. 2.15 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                    _____

*District Court Judge*

**Stipulated Instruction No. 18 Re Stipulations of Fact**

The parties have agreed to certain facts [to be placed in evidence as Exhibit ___] [that will be read to you]. You must therefore treat these facts as having been proved.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.2 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Instruction No. 19 Re Judicial Notice**

The court has accepted as proved the following facts: [state fact]. You must accept these facts as true.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.3 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 20 Re Failure to Call Available Witness Offered by DPPs**

If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.


*Authority*: *Singh v. Holder*, 638 F.3d 1264, 1272-73 (9th Cir. 2011) ("We ordinarily instruct juries that '[i]f a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not'"); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 658 (11th Cir. 1988) (approving instruction where "[t]he judge charged: 'If a party fails to call a person who possesses knowledge about the facts in issue and who is reasonably available to him and who is not equally available to the other party, then you may infer that the testimony of that witness is unfavorable to the party who could have called that witness and did not do so.'"); *Int'l Union United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. N.L.R.B.*, 459 F.2d 1329, 1336-38 (D.C. Cir. 1972); *see also Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939) ("The failure under the circumstances to call as witnesses those officers who did have authority to act for the distributors and who were in a position to know whether they had acted in pursuance of agreement is itself persuasive that their testimony, if given, would have been unfavorable to appellants."); *United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir. 1985) ("The district court has broad discretion in formulating the instructions").

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 20: Failure to Call Available Witness**

[Defendants object to this instruction in its entirety]

**DPP's Argument re Disputed Instruction No. 20 Re Failure to Call Available Witness**

DPPs will adduce evidence to justify their proposed "missing witness" jury instruction. It would be premature to reject the instruction before presentation of that evidence.

Further, DPPs' precise formulation was approved in *Jones v. Otis Elevator Co.*, 861 F.2d 655, 659 (11th Cir. 1988) and reproduced in O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 104:25 (6th ed., Aug. 2019 update). The Ninth Circuit has approved "missing witness" instructions, noting courts "ordinarily instruct juries that '[i]f a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not." *Singh v. Holder*, 638 F.3d 1264, 1272-73 (9th Cir. 2011). Courts have noted that "when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *Int'l Union United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. N.L.R.B.,* 459 F.2d 1329, 1336 (D.C. Cir. 1972). "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." *Interstate Circuit v. United States*, 306 U.S. 208, 226 (1939). "[T]he applicability of the rule in no way depends on the existence of a subpoena compelling production of the evidence in question." *UAW*, 459 F.2d at 1338. "If evidence within the party's control would in fact strengthen his case, he can be expected to introduce it even if it is not subpoenaed. Conversely, if such evidence is not introduced, it may be inferred that the evidence is unfavorable to the party suppressing it." *Id.* at 1338.

Defendants include Japanese and Taiwanese companies. The relevant witnesses—high-level executives who possess formal and practical authority over day-to-day operations of their corporations—are beyond the subpoena power, including in Japan. DPPs and the Court cannot compel their appearance. Defendants therefore can pick and choose the executives and managing agents under their control for trial. The jury should know the Defendants have done so. Many of the missing witnesses were direct participants in illegal meetings (as documented by Defendants' own records), had illicit contacts with other co-conspirators, and directed others to engage in illegal price fixing. Many

were indicted and remain fugitives. Others were high-level executives who retired the moment the conspiracy was brought to light. *Cf. In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991) ("[Employer's] argument that [former employee] is not in its control rings hollow" as the witnesses who refused to appear and those who appeared for the defendant are "indistinguishable one from the other."). Defendants should not be able to benefit by keeping some of their employees with managerial authority overseas, or by encouraging them to retire, hampering DPPs' in making their case. *See Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir. 1983) ("An employee-employer relationship is such that where an employee who could give important testimony relative to issues in litigation is not present and his absence is unaccounted for by his employer, who is a party to the action, the presumption arises that the testimony of such employee would be unfavorable to his employer.") (internal quotation marks omitted); *see also Gulf Oil/Cities Serv.*, 776 F. Supp. at 839 ("If he elects to absent himself during plaintiffs' case, he will not testify at all, and plaintiffs will be free to comment upon his absence."). The jury should be instructed about these witnesses' absence.

### Defendants' Brief on Disputed Instruction No. 20:
### Failure to Call Available Witness

DPPs' proposed "missing witness" instruction is not included in the Ninth Circuit's Model Civil Jury Instructions and DPPs do not identify a single civil case in this Circuit where it has been given. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 3536797, at *2 (N.D. Cal. Aug. 13, 2012) (noting "the parties have not cited, and the Court has not found, any Ninth Circuit authority governing the applicability of the uncalled-witness rule in civil trials").  Furthermore, from a practical standpoint, DPPs have not shown why such an instruction would apply to the circumstances in this case.

As a starting point, the Ninth Circuit Jury Instructions Committee notes the prejudice that ordinarily flows from a missing witness instruction and, even in criminal cases, "recommends ***against*** giving instructions on matters such as . . . a missing witness," which "are generally better left to argument of counsel as examples of circumstantial evidence from which the jury may find another fact."  Model Criminal Jury Instructions (2010 Ed.), at 63 (emphasis added).  The Committee "cautions that a missing witness instruction will be appropriate only in limited circumstances, such as when the government deports an alien witness knowing that the witness would testify favorably for the defense." *Id.* at 76 (citing *U.S. v. Leal-Del Carmen*, 697 F.3d 964, 975 (9th Cir. 2013)).

Those "limited circumstances" are not present here: DPPs have not identified a single witness whose absence from trial who would be the appropriate subject of a missing witness instruction.  In fact, as of the date of this filing, DPPs have not even identified its live witnesses.  The witness list it served on Defendants on January 6, 2020 listed *both* live witnesses *and* witnesses whose depositions will have designated testimony played to the jury.  Because DPPs still have not even identified the witnesses they intend to call, they cannot make a showing that a missing witness instruction would be appropriate as to any witness.

**Disputed Instruction No. 21 Re Overview of Antitrust Claims Offered by DPPs**

The DPPs allege that Defendants violated the antitrust laws by agreeing, conspiring, contracting, or combining to fix prices, rig bids, or otherwise suppress competition in the markets for aluminum, film and tantalum capacitors and that this conspiracy caused an increase in the prices of aluminum, film and tantalum capacitors that were billed to or shipped to the United States. DPPs assert that this increase in prices caused them injury.

To establish a violation of the antitrust laws, the DPPs must prove the following:

(1)  the existence of agreement, conspiracy, contract, or combination among at least two entities to set, fix, raise, maintain, or stabilize prices, rig bids, or otherwise suppress competition in the markets for aluminum, film and tantalum capacitors;

(2)  that each defendant purposefully or knowingly became part of that conspiracy, contract, or combination;

(3)  that the alleged conspiracy, contract, or combination occurred in or affected interstate or import commerce; and

(4)  the anticompetitive conduct was a substantial factor in causing the DPPs to pay more for aluminum, film and tantalum capacitors billed to or shipped to the United States than they otherwise would have.


*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1 Instr. 2 and Ch. 2 Instr. 1 (2016); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:20 (6th ed. 2012).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 21 Re Overview of Antitrust Claims Offered by Defendants**

The DPPs allege that Defendants violated the antitrust laws by joining the alleged conspiracy to control and fix the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide from January 1, 2002 until December 31, 2013 and that this conspiracy caused an increase in the prices of aluminum, tantalum, and/or film capacitors that were sold to United States purchasers.  DPPs assert that this increase in prices caused them injury.

To establish a violation of the antitrust laws, the DPPs must prove, as to each particular Defendant, each of the following elements by a preponderance of the evidence:

> (1)  that the alleged conspiracy among or between competitors to fix the prices of aluminum, tantalum, and film capacitors existed;

> (2)  that each Defendant knowingly—that is, voluntarily and intentionally—became part of that conspiracy;

> (3)  that the alleged conspiracy occurred in or affected interstate or import commerce; and

> (4)  that the alleged conspiracy caused all or nearly all DPPs to pay more for aluminum, tantalum, and/or film capacitors billed to or shipped to the United States than they otherwise would have.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that Defendant and against DPPs on DPPs' price-fixing claim. If you find that the evidence is sufficient to prove all four elements as to a particular Defendant, then you must find for DPPs and against that Defendant on DPPs' price-fixing claim.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1 Instr. 2 and Ch. 2 Instr. 1 (2016); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:20 (6th ed. 2012).

**DPP's Argument re Disputed Instruction No. 21: Overview of Antitrust Claims**

DPPs' proposed instruction more closely tracks ABA Model Civil Jury Instructions, Chapter 1, Instruction 2, based on the elements of a Section 1 claim under the Sherman Act, and Chapter 2, Instruction 1. DPPs' instruction explains the elements of a Section 1 claim in plain, simple English without extraneous language or duplication

*Description of the Alleged Conspiracy, Products Affected, and Anticompetitive Conduct.* As the ABA Model Instructions suggest, *see* Ch. 2 Instr. 1, DPPs' instruction identifies the conduct and trade restraints at issue. As discussed in the Pretrial Statement, DPPs intend to prove that Defendants agreed, conspired, and combined to fix prices, rig bids, and otherwise suppress competition in the markets for electrolytic and film capacitors in the United States, which caused an increase in prices for such capacitors that were billed or shipped to the United States. Defendants, however, would limit DPPs to the wording used in a complaint filed years ago, a complaint that put was intended not as the final word on DPPs' position, but, as required by Federal Rule of Civil Procedure 8, to put the Defendants on notice of the claims against them before they had completed their discovery. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). At this point, the descriptions in the final pretrial order control. *Rogers v. Raymark Indus.*, *Inc.*, 922 F.2d 1426, 1432 (9th Cir. 1991) ("a final pretrial order controls the subsequent course of action in a trial[.]").

*Proving All Elements as to "Each Particular Defendant."* As set forth in DPPs briefing as to Instruction No. 5, DPPs do not need to reprove their case as to "each particular defendant."

"*Conspiracy, contract, or combination*." Defendants would omit this phrase drawn directly from the Sherman Act. *See* 15 U.S.C. § 1 (outlawing "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade"). It is appropriate to charge the jury with the language of the statute and allow the jury to decide if Defendants violated it.

*Intent*. The Court should charge the jury that a conspirator can be held liable if it joined the conspiracy "purposefully or knowingly." DPPs' language accords with governing case law. *See*, *e.g.*, *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 634 (9th Cir. 2018).

1  "*Substantial factor.*" The jury should be instructed on the appropriate causation standard—that

2  Defendants' conduct need only be a "substantial factor" in causing DPPs' injuries. *Blanton v. Mobil Oil*

3  *Corp.*, 721 F.2d 1207, 1215 (9th Cir. 1983) (affirming jury instruction that conduct must be

4  "substantial factor" in causing plaintiff's injuries as "fully consistent" with requiring the wrongdoing to

5  be a "material cause"); *see also* DPPs Argument re Instruction No. 35 (causation).

6  "*All or nearly all*" Defendants cite neither case law nor a model jury instruction that directs a

7  jury to find injury to "all or nearly all" class members—for good reasons. *First*, "all or nearly all" is the

8  wrong test—DPPs need only show "class-wide impact." *In re Capacitors Antitrust Litig.*, No. 17-md-

9  02801-JD, 2018 WL 5980139, at *7 (N.D. Cal. Nov. 14, 2018) ("*Capacitors Class Op.*"). This Court

10  recognized the presence of "non-injured members" at most presents an issue as to damages. *See id.* at

11  *9 (*citing Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (holding certification is

12  inappropriate only if a large number of class members were uninjured). *Second*, the question of

13  predominance under Rule 23(b)(3) is for the Court to decide, not the jury. *See Brown v. Wal–Mart*

14  *Stores, Inc.*, 651 F. App'x 672, 674 (9th Cir. 2016) ("*the district court* did not abuse its discretion by

15  concluding that the proposed class met Rule 23(b)(3)'s predominance requirement.") (emphasis added).

16  Such tests, designed for a judge's analysis of pretrial procedural matters, are not for the jury. *See*, *e.g.*,

17  *City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 933 (9th Cir. 1995) (questioning whether

18  summary judgment tests are appropriate for charging the jury). This Court has found predominance.

19  *See Capacitors Class Op.* at *5-8; *see also Chip-Tech, Ltd. v. Taitsu Am.*, No. 18-80173 (9th Cir. Feb.

20  27, 2019) ECF No. 10 (declining to review class certification). Further, DPPs' experts have calculated

21  to the total aggregate overcharges, so that proof that any class members were uninjured would affect

22  only the allocation of damages, not the total amount of damages.

23  "*If you find . . .*" Finally, at the end of Defendants' proposal, they append an entire paragraph

24  (beginning "If you find") which is not in the ABA's model instructions. The wording is surplusage and

25  confusing. The instruction already lays out the elements that DPPs must meet.

26

27

28

### Defendants' Brief on Disputed Instruction No. 21:
### Overview of Antitrust Claims

Defendants' proposed instruction hews more closely with DPPs' Third Amended Complaint and with definitions provided by the ABA Model Jury Instructions in Civil Antitrust Cases. The Model Instructions provide that different terms are used to describe an arrangement among defendants, but that the specific terminology used in this instruction should be adjusted to fit the facts of a particular case. *See* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2 Instr. 1, Notes. To this end, Defendants propose removing lengthy language included by DPPs to make the instruction more straightforward and easier for a jury to understand while including allegations relevant to this particular case.

Defendants have added words to the effect that plaintiffs must prove harm "all (or nearly all)" members of the class. We have done so because the law is clear, antitrust injury to all (or nearly all) members of the class in order to prove a violation of Section 1 of the Sherman Act. *See*, In re *TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 311 (N.D. Cal. 2010) (where plaintiffs were required to establish that "all (or nearly all) members of the class suffered damage as a result of Defendants' alleged anti-competitive conduct"), abrogated on other grounds by *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012); *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. at 311 (quoting "all (or nearly all)" class-wide injury test from *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819-CW, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008)).

The requirement that plaintiffs prove antitrust injury for all or nearly all of its class members was recently reaffirmed in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, where the Court found that "5% to 6% constitutes the outer limits" of the number of "uninjured class members" that various courts have permitted in a class. 292 F. Supp. 3d 14, 137-38 (D.D.C. 2017). In the same opinion, the Court emphasized the need for a reliable metric to determine antitrust injury for large classes. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013). The requirement that plaintiffs prove injury to "all (or nearly all)" class members is not limited to the evaluation of a class for purposes of class certification. It is rather an accepted requirement for proving an antitrust violation.

*In re eBay Seller Antitrust Litig.*, No. C 07-01882-JF, 2010 WL 760433, at *14 (N.D. Cal. Mar. 4, 2014) (granting summary judgment where plaintiffs could not point to "any actual proof of antitrust injury . . . on an individual or classwide level"); *See, e.g.*, *In re New Motor Vehicles*, 632 F. Supp. 2d at 56 (granting summary judgment where plaintiffs failed to "show that every member of the putative class was in fact injured by paying a higher transaction price than he or she would have paid without the restraint").

**Disputed Instruction No. 22 Re Conspiracy, Contract, or Combination Offered by DPPs**

DPPs allege that Defendants conspired amongst themselves to restrain trade by fixing, raising, maintaining, and stabilizing the price of aluminum, film and tantalum capacitors. DPPs must prove both of the following elements by a preponderance of the evidence:

(1)  that an agreement or mutual understanding between two or more persons to set, fix, raise, maintain, or stabilize prices of aluminum, film and tantalum capacitors existed; and

(2)  that one or more Defendants knowingly participated in that conspiracy. To act knowingly means to participate voluntarily or intentionally, and not because of mistake or accident or other innocent reason.

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement or understanding itself may have been entirely tacit or unspoken.

A person can become a member without full knowledge of all of the details of the agreement or conspiracy, the identity of all of its members, or the parts such members played. The members need not have agreed on the details of the conspiracy, so long as they agreed on or mutually understood the essential nature of the plan. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement or understanding at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement or understanding. It is also not necessary that all of the means or methods claimed by DPPs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. This remains so

even if particular conspirators perform separate acts in furtherance of a conspiracy, belong to a subgroup, or have a subagreement, or do not know other conspirators, or if the conspiracy has different phases or locales or spheres of operation, or because different members played more or less important roles. A conspiracy to accomplish an unlawful objective does not cease simply because it continues over time, because a time gap exists in the proof, or because of a change in membership, or because some conspirators did not know about every detail of the conspiracy. It is the agreement to raise or stabilize the price of aluminum, film and tantalum capacitors that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

DPPs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy. Guilty pleas and convictions are direct evidence.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did, information exchanged, and the words they used.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

An agreement between competing firms to set, fix, raise, maintain, or stabilize prices violates the law even if there is not an agreement on the exact price to be charged.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:43 (6th ed. 2012); *United States v. Brown.*, 936 U.S. 1042, 1048 (9th Cir. 1991) (instructions defining "'knowingly' as 'voluntarily and intentionally,' and defin[ing] 'participating knowingly' as 'encouraging, advising or assisting for the purpose of furthering the conspiracy'" adequately reflect standard established in *United States v. Wise*, 370 U.S. 405 (1962)); *see also United States v. Container Corp.* 393 U.S. 333, 335 (1969) ("[W]hen a defendant requested and received price information it was affirming its

willingness to furnish such information"); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators"); *United States v. Montgomery*, 150 F.3d 983, 998 (9th Cir. 1998); *United States v. Zemek*, 634 F.2d 1159, 1167 (9th Cir. 1980) ("general test [for a single conspiracy] also comprehends the existence of subgroups or subagreements"); *Beltz Travel Serv. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991) (single conspiracy not converted into multiple merely because it may involve two or more spheres of operations so long as there is sufficient proof of mutual dependence and assistance); *United States v. Maldonado-Rivera*, 922  F.2d 934, 962-64 (2d Cir. 1990) (same); *Esco Corp. v. United States*, 340 F.2d 1000, 1007 (9th Cir. 1965) ("A knowing wink can mean more than words"); *Advanced Microtherm v. Norman Wright Mech. Equip. Corp.*, No. C 04-02266 JW, 2004 WL 2075445, at * 5 (N.D. Cal. Sept. 15, 2004) (same); *Todd v. Exxon Corp.*,275 F.3d 191, 198 (2d Cir. 2001) ( It is generally understood that "[i]nformation exchange is an example of a facilitating practice that can help support an inference of a price-fixing agreement." (Sotomayor, J.); *Am. Column & Lumber Co. v. U.S.*, 257 U.S. 377, 410 (1921) ("Genuine competitors do not make daily, weekly, and monthly reports of the minutest details of their business to their rivals . . . . This is not the conduct of competitors, but is so clearly that of men united in agreement, express or implied, to act together and pursue a common purpose[.]*")*.


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

### Disputed Instruction No. 22 Re Conspiracy, Contract, or Combination
### Offered by Defendants

DPPs allege that Defendants conspired amongst themselves to restrain trade by joining the alleged conspiracy to control and fix the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide from January 1, 2002 until December 31, 2013. DPPs must prove both of the following elements by a preponderance of the evidence:

(1)  that the alleged conspiracy existed; and

(2)  that Defendants knowingly participated in that conspiracy. To act knowingly means to participate voluntarily or intentionally, and not because of mistake or accident or other innocent reason.

An agreement between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. To prove the alleged conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement among themselves to accomplish a common purpose.

A person can become a member without full knowledge of all of the details of the agreement or conspiracy, the identity of all of its members, or the parts such members played. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove the conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by DPPs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement to raise or

stabilize the price of aluminum, tantalum and/or film capacitors that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

DPPs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.  If they acted similarly, but independently of one another, without any agreement among them, then there would not be a conspiracy. When relying solely on circumstantial evidence, the evidence must demonstrate than an inference of conspiracy is more probable than an inference of independent action.  Conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.

In determining whether an agreement between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:43 (6th ed. 2012); *City of Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 933 (9th Cir. 1995); *United States v. Brown.*, 936 U.S. 1042, 1048 (9th Cir. 1991) (instructions defining "'knowingly' as 'voluntarily and intentionally,' and defin[ing] 'participating knowingly' as 'encouraging, advising or assisting for the purpose of furthering the conspiracy'" adequately reflect standard established in *United States v. Wise*, 370 U.S. 405 (1962); *see also Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators"); *United States v. Montgomery*, 150

F.3d 983, 998 (9th Cir. 1998); *United States v. Zemek*, 634 F.2d 1159, 1167 (9th Cir. 1980) ("general test [for a single conspiracy] also comprehends the existence of subgroups or subagreements"); *Beltz Travel Serv. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991) (single conspiracy not converted into multiple merely because it may involve two or more spheres of operations so long as there is sufficient proof of mutual dependence and assistance); *United States v. Maldonado-Rivera*, 922  F.2d 934, 962-64 (2d Cir. 1990) (same); *Esco Corp. v. United States*, 340 F.2d 1000, 1007 (9th Cir. 1965) ("A knowing wink can mean more than words"); *Advanced Micotherm v. Norman Wright Mech. Equip. Corp.*, No. C 04-02266 JW, 2004 WL 2075445, at * 5 (N.D. Cal. Sept. 15, 2004) (same).

**DPP's Argument re Disputed Instruction No. 22: Conspiracy, Contract, or Combination**

*Description of conspiracy and products affected*. As briefed in connection with Instruction No. 21, the Court should use the descriptions proposed by DPPs.

"*One or more Defendant . . . participated in that conspiracy.*" Defendants would omit this language from the ABA's model instruction. DPPs need to prove only that at least one Defendant acted in furtherance of the conspiracy.

"*Agreement or understanding.*" DPPs would retain the phrase "agreement or understanding" throughout this instruction. That is the phrase used by the ABA to define a conspiracy. *See* ABA, Model Jury Instruction, Ch. 2, Instr. 1 ("The basis of a conspiracy is an agreement or understanding . . ."). The charge should consistently state the correct standard.

"*Tacit.*" DPPs again ask for the correct legal standard. *See United States v. Singer Mfg. Co.,* 374 U.S. 174, 193 (1963) (conspiracy may be "achieved by agreement [or] by tacit understanding"). Defendants elsewhere propose using the same word. *See* Def. Instr. No. 29B.

"*The members need not have agreed on all aspects of the conspiracy*, *so long as they agreed on or mutually understood the essential nature of the plan.*" The jury must be informed that "global" agreement was not required for the conspiracy to take effect. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) ("The coconspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan.").

"*Guilty pleas and convictions are direct evidence*." Guilty pleas are direct evidence of a conspiracy. ABA Model Jury Instr. Ch. 2, Instr. 1, n.4 ("direct evidence include[s] . . . guilty pleas[ ] and admissions by a defendant. . . . The court may tailor a jury instruction relating to direct evidence to the type of evidence the plaintiff purports to have presented.").

"*Information exchanged*." Information exchanges can be used to infer the scope of a conspiracy, as they often implement price fixing. See DPPs' Argument re Instr. No. 27.

*Conspirators May Perform Separate Acts or Belong to Subgroups.* The Ninth Circuit has held, "The general test [for a single conspiracy] also comprehends the existence of subgroups or subagreements." *United States v. Zemek*, 634 F.2d 1159, 1167 (9th Cir. 1980).

"*Phases or spheres of influence.*"  Likewise, "[a] single conspiracy […] may involve two or more phases or spheres of operation." *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991); *see also Maldonado-Rivera*, 922 F.2d at 963 (same).

      *A conspiracy can continue over time, in different locales, or through changes in membership.* Defendants would fail to instruct the jury of the many ways in which a conspiracy can occur. *See Maldonado-Rivera*, 922 F.2d at 962-64 (single conspiracy can be shown despite "lapses of time, changes in membership"); *Beltz Travel Serv., v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) ("participation by each conspirator in every detail in the execution of the conspiracy is unnecessary . . . , for each conspirator may be performing different tasks to bring about the desired result."); *Braverman v. United States*, 317 U.S. 49, 52 (1942). And a conspiracy can be shown despite "shifting emphases in the locale of operations." *Maldonado-Rivera*, 922 F.2d at 963.

      *Conspirators do not need to know about every detail of the conspiracy.* See *Blumenthal v. United States*, 332 U.S. 539, 557 (1947) (the law rightly " allow[s] the conviction of those discovered . . . without requiring evidence of knowledge of all its details or of the participation of others."); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators."); *United States v. Montgomery*, 150 F.3d 983, 998 (9th Cir. 1998).

      *No need to prove agreement on exact price.*  Lest the jury think otherwise, it should be instructed "An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-4572 SI, 2013 WL 6174683, at *5 (N.D. Cal. Nov. 20, 2013).

      "*Mere similarity of conduct . . .*" Defendants request an improper instruction concerning circumstantial evidence of parallel conduct. This is not a plus factors case. DPPs have put forward direct evidence of a conspiracy, including guilty pleas and admissions. The only issue is its scope. The jury need not rely, as Defendants' instruction reads, "solely on circumstantial evidence."

**Defendants' Brief on Disputed Instruction No. 22:**
**Conspiracy, Contract, or Combination**

Defendants' edits remove language that is not included in the Model Instructions and would only mislead jurors.  In the fourth paragraph, DPPs' instruction references scenarios including a "subgroup," and "subagreement" and where conspirators "don't know other conspirators" or a conspiracy has "different phases or locales or spheres of operation."  This language, which is not included in the Model Instructions, is unnecessary and would be confusing to the jury.  By contrast, Defendants' proposal for the fourth paragraph is based on the exact language used to describe the definition, existence, and evidence of a conspiracy in the Model Instructions.  *See* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2, Instruction 1.

**Disputed Instruction No. 22A Re Single v. Multiple Conspiracies Offered by Defendants**

When two or more people or entities join together to further one common or unlawful purpose, a single conspiracy exists.  Where the participants in separate agreements are not so joined, they are not members of a single, overarching conspiracy, even though the separate agreements may have participants in common and may have similar goals.  If the DPPs have not proven that a particular Defendant joined the alleged conspiracy, you may not find that Defendant liable based on such conspiracy.  Likewise, if you find that DPPs did not prove that a particular Defendant or other alleged co-conspirator joined a single conspiracy as alleged, you may not award damages based upon the market share or sales of that defendant or alleged co-conspirator.

*Authority*:  *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 5871243, at *7 (N.D. Cal. Oct. 7, 2016) (explaining that the jury must determine whether "there was a single conspiracy to fix the prices"); *In re Copper Antitrust Litig.*, 98 F. Supp. 2d 1039, 1055 (W.D. Wis. 2000) ("Whether a conspiracy is single or multiple is a question of fact appropriately determined by a jury."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 JG VVP, 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014), report and recommendation adopted, No. 06-MD-1775 JG VVP, 2015 WL 5093503 (E.D.N.Y. July 10, 2015*) (explaining that "[w]hether the plaintiffs' proof of [a global] conspiracy is more or less compelling than the defendants' alternative theory [of smaller conspiracies] is a question of fact for the jury"); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 193193, at *403-04, 407 (E.D. Mich. Apr. 13, 2016) ( explaining that the "scope of the agreement actually made always measures the conspiracy, and the fact that a Defendant engages in a conspiracy with others is as irrelevant to the scope of another Defendants' agreement as that it engages in any other crime," and that the "mere overlap of some of the defendants in some of the transactions is, on its own, insufficient to establish an overarching agreement" (citations omitted)); *United States* v. *Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) ("The existence of separate conspiracies is a question of fact, not of law, to be determined by the jury.").

**DPP's Argument re Defendants' Proposed Jury Instruction No. 22A: Single v. Multiple Conspiracies**

Defendants' proposed instruction applies in *criminal* cases. *Cf.* Ninth Circuit Model Criminal Instructions 8.22; Sixth Circuit Pattern Jury Instructions 3.09. This instruction, and those like it, are pertinent when the government charges a single *criminal* conspiracy but may prove only a smaller conspiracy:

> It is common practice, especially in drug cases, for the government (because of various procedural advantages that inhere) to charge a single large conspiracy. In turn, defendants often claim that, at worst, only smaller (often uncharged) conspiracies existed. Where requested, trial courts may then give a so-called multiple conspiracies charge, inviting the jury to consider the possibility that only smaller conspiracies have been shown.

*United States v. Oreto*, 37 F.3d 739, 748 (1st Cir. 1994) (citations omitted); *see also United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989) ("A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment."). In any event, DPPs have alleged and will prove a global price-fixing conspiracy to fix, raise and stabilize the price of capacitors, and the evidence at trial will show not many conspiracies but a single one. A multiple conspiracy instruction would be inappropriate here and would confuse the jury.

Defendants' proposed instruction is also misleading, confusing and duplicative. DPPs allege a conspiracy to fix capacitor prices. By inserting "multiple" into the title, Defendants invite jurors to erroneously compartmentalize the factual components of the conspiracy, as the Supreme Court warned. *Cont'l Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962) ("[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole, and in a case like the one before us, the duty of the jury was to look at the whole picture and not merely at the individual figures in it.") (internal quotation marks and citations omitted)).

Further, Defendants' proposed instruction is both redundant and confusing. The agreed upon language in Disputed Instruction No. 22 Re Conspiracy, Contract, or Combination highlights this. DPPs and Defendants agreed on the language "nor is it necessary that they [the conspirators] all possessed the same motive," yet Defendants wish to state in the jury in the very next instruction, "Where the participants in separate agreements are not so joined, they are not members of a single, overarching conspiracy, even though the separate agreements . . . may have similar goals." The instructions as Defendants want them would tell the jury a conspiracy does not require that all members possess the same "motive" but that non-conspirators may have similar "goals." This hair-splitting between motives and goals would be inscrutable to a lay juror. *See Motive*, Shorter Oxford English Dictionary Vol. 1 1840 (5th ed., 2002) (defining motive as "A factor or circumstance inducing a person to act in a certain way; an emotion, reason, or *goal*, etc., . . ." (emphasis added)).

Further, Defendants' proposed instruction has no support in the law. The cases they cite all involved issues to be decided by a judge—not by a jury. The jury weighs facts proven at trial. It should not be instructed based on the legal standards that govern motions to dismiss, *e.g.*, *In re Copper Antitrust Litig.*, 98 F.Supp.2d 1039 (W.D. Wis. 2000), to consolidate, *e.g., In re Auto. Parts Antitrust Litig.*, No. 12-cv-00203, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016), or to certify a class. *E.g., In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1175 JG VVP, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014).

**Defendants' Brief on Disputed Instruction No. 22A Re Single v. Multiple Conspiracies**

It is Plaintiffs' burden to prove both the existence of the conspiracy alleged in the Complaint and that individual defendants joined that particular conspiracy. *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 193193, at *403-04, 407 (E.D. Mich. Apr. 13, 2016) (explaining that the "mere overlap of some of the defendants in some of the transactions is, on its own, insufficient to establish an overarching agreement" (citations omitted)).  Because the Defendants dispute the existence of the single conspiracy charged in the Complaint—and because the DPPs intend to introduce evidence of various bilateral and trilateral agreements as evidence of a single overarching conspiracy— the jury should be instructed on the requirement that Plaintiffs prove both the existence of the specific conspiracy alleged and each individual defendant's participation in it.

Where an antitrust conspiracy is alleged, it is the role of the jury to determine that there was a single overarching conspiracy as opposed to multiple discrete events. *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 5871243, at *7 (N.D. Cal. Oct. 7, 2016) (explaining that the jury must determine whether "there was a single conspiracy to fix the prices"); *In re Copper Antitrust Litig.*, 98 F. Supp. 2d 1039, 1055 (W.D. Wis. 2000) ("Whether a conspiracy is single or multiple is a question of fact appropriately determined by a jury."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 JG VVP, 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014), report and recommendation adopted, No. 06-MD-1775 JG VVP, 2015 WL 5093503 (E.D.N.Y. July 10, 2015*)* (explaining that "[w]hether the plaintiffs' proof of [a global] conspiracy is more or less compelling than the defendants' alternative theory [of smaller conspiracies] is a question of fact for the jury"); *United States* v. *Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) ("The existence of separate conspiracies is a question of fact, not of law, to be determined by the jury.").  Because it is the jury's role to decide whether DPPs have proven a single overarching conspiracy, it is important to provide them proper instruction that would allow them to distinguish between a series of separate agreements and a single overarching conspiracy.

**Disputed Instruction No. 23 Re Participation and Intent Offered by DPPs**

Before you can find that a defendant was a member of the conspiracy alleged by plaintiffs, the evidence must show that that defendant in question knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

A company or a person that knowingly joins an existing conspiracy, or who participates in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if it had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular Defendants' statements and conduct, including any evidence of that Defendants' knowledge, understanding and participation in the events involved and any other evidence of that particular Defendants' participation in the conspiracy alleged. The fact that a defendant plays a minor role in the conspiracy does not preclude that Defendants' liability. You may find that a defendant or alleged co-conspirator participated in or joined a conspiracy if a preponderance of the evidence shows that the defendant or alleged co-conspirator knowingly made even a single statement or engaged in a single act that demonstrates an intent by that defendant to participate in the unlawful agreement. Once there is proof of a conspiracy, DPPs only need to show a Defendants' slight connection to the conspiracy to establish liability.

You may not find that a defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a defendant was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy. If you find a defendant was a part of the conspiracy, that defendant will be liable for all of the acts of all members of the conspiracy in furtherance of the conspiracy, regardless of whether that defendant engaged in all of those acts. Participation by each conspirator in every detail in the execution of the conspiracy is not necessary to establish liability.

Once you have found that a Defendant is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or that the person has withdrawn from the conspiracy.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993) ("Once there if proof of a conspiracy, 'evidence of only a slight connection to the conspiracy' is sufficient to convict for participation in the conspiracy."); *Beltz Travel Serv. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1366-67 (9th Cir. 1980); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 4; 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:43 (6th ed. 2012); *see also United States v. Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) (co-conspirator who joins pre-existing conspiracy bound by all that has gone on before in the conspiracy).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 23 Re Participation and Intent Offered by Defendants**

Before you can find that a defendant was a member of the conspiracy alleged by Plaintiffs, the evidence must show that that Defendant in question knowingly joined the alleged conspiracy to control and fix the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide from January 1, 2002 until December 31, 2013, either at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. So, if a Defendant, or any other person, with understanding of the unlawful character of a plan, intentionally encourages, advises, or assists, for the purpose of furthering the undertaking or scheme, the person thereby becomes a knowing participant—a conspirator.  On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, knowledge of the existence of a conspiracy without participation in the conspiracy is also insufficient to make a person a member of the conspiracy.

A company that knowingly joins an existing conspiracy, or who participates in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if it had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a Defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular Defendant's statements and conduct, including any evidence of that Defendant's knowledge, understanding and participation in the events involved and any other evidence of that particular Defendant's participation in the conspiracy alleged. Each Defendant must be analyzed individually, as even in a conspiracy case liability remains individual.

You may not find that a Defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a Defendant was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy. If you find that the alleged conspiracy existed, then the acts and statements of the conspirators made during and in furtherance of the conspiracy are binding on all of those whom you find were members of the conspiracy.

Once you have found that a Defendant is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that the person has withdrawn from the conspiracy.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *Beltz Travel Serv. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1366-67 (9th Cir. 1980); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 4; 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:43 (6th ed. 2012); Leonard B. Sand, *Modern Federal Jury Instructions*, Instr. 79-8 (2019); *see also United States v. Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) (co-conspirator who joins pre-existing conspiracy bound by all that has gone on before in the conspiracy); *Alexander v. Phoenix Bond & Indem. Co.*, 149 F. Supp. 2d 989, 1000 (N.D. Ill. 2001) ("We will analyze each defendant individually because, even in a conspiracy case, liability remains individual and is not a matter of mass application." (citing *Kotteakos v. United States*, 328 U.S. 750, 772 (1946)); *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 820-21 (N.D. Ill. 2017) (noting that in considering the evidence Plaintiffs brought to contest summary judgment that such "evidence is assessed individually against moving Defendants . . . to determine whether Plaintiffs have carried their burden as to the specific Defendants" where moving defendants were only defendants remaining after other defendants settled); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999) (discussing that a price-fixing case cannot proceed to trial unless the plaintiff shows evidence proving a conspiracy joined by each defendant).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPP's Argument re Disputed Instruction No. 23: Participation and Intent**

*Description of conspiracy and products affected*. DPPs' incorporate by reference their argument in Disputed Instruction No. 21 (Overview of Antitrust Claims).

*A company or person who knowingly . . . every part of it*. A company or person is liable for all conduct in furtherance of the conspiracy before it withdraws from it, even if the conduct predates its joining. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. Sept. 26, 2011)). "This liability continues until the objectives of the conspiracy are completed, or the defendant withdraws from the conspiracy." *Id.* at 1059. The jury should be charged with this language, taken from *ABA Model Jury Instructions in Civil Antitrust Cases* at B-13-14 (2d ed. 2005); *see also United States v. Henson*, 123 F.3d 1226, 1236 (9th Cir. 1997) ("A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."), *overruled on other grounds*, *United States v. Foster*, 165 F.3d 689 (9th Cir. 1999); *United States v. Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) (a conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy); *United States v. Fontenot,* 483 F.2d 315, 324 (5th Cir. 1973) (affirming jury instruction that "one who knowingly and willfully joins an existing conspiracy is charged with the same responsibility as if he had  been one of the original instigators of the plan.").[1]

*Participation Via Minor Role.* The jury should be instructed that a Defendant need not play a dominant role in the conspiracy to be liable. *See United States v. Hamilton*, 587 F.3d 1199, 1207 (10th Cir. 2009) ("Even a single overt act by the defendant can be sufficient to connect him to the conspiracy if that act leads to a reasonable inference of intent to participate"). Even if a defendant did not have full knowledge of all of the details of the conspiracy, it is still liable for all conspiratorial conduct. *United States v. Diaz*, 190 F.3d 1247, 1264 n.17 (11th Cir. 1999); *United States v. Magee*, 821 F.2d 234, 240

---

[1] Courts have held that "one who joins a conspiracy previously formed may be liable not only for acts done thereafter, but also for acts in furtherance of the conspiracy done before he joined." *Fortney v. Kuipers*, No. 98 C 5387, 2001 U.S. Dist. LEXIS 19806, at *14 (N.D. Ill. Nov. 30, 2001); *see also United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987) ("[A] conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight—or conduct—regardless of whether he is aware of just what it is composed."); DPPs' Argument re Defs' Instr. No. 43A (Joint and Several Liability).

(5th Cir. 1987); *Fontenot*, 483 F.2d at 323; Jury instructions, *In re High Pressure Laminates*, No. 00-md-1368 (S.D.N.Y. May 23, 2006), at 2318.

*Slight connection*. Similarly, even if a party has only a slight connection to the conspiracy, it is still fully liable for the conspiracy. *United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006) (quoting *United States v. Wright*, 215 F .3d 1020, 1028 (9th Cir. 2000) ("It is well-settled in this circuit that, once the existence of a conspiracy is established, a defendant may be convicted of knowing participation therein if the evidence establishes, "even a slight connection' between the defendants and the conspiracy."); *United States v. Reed*, 575 F.3d 900, 924 (9th Cir. 2009); *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001); *In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 15 n.28 (D.D.C. 2004) (noting the substantive legal standards for determining the scope of and participation in a conspiracy are the same in civil and criminal cases); *Apex Oil Co. v. DiMauro,* 822 F.2d 246, 257 (2d Cir. 1987) (reversing summary judgment based on evidence of slight connection to conspiracy).

> *Defense Addition: Knowledge without participation in the conspiracy insufficient.* Defendants' addition is unnecessary and redundant. DPPs' proposed language, taken directly from the ABA model, makes clear that the "Defendant in question knowingly joined . . . with the intent to advance or further . . . the conspiracy" and that liability cannot be found based "only on [a Defendants'] association with or knowledge of wrongdoing." *See Elem v. Ryan*, No. CV-09-00664, 2013 WL 5434579, at *12 (D. Ariz. Sept. 27, 2013) (rejecting instruction that "mere acquiescence or knowledge without agreement does not establish a conspiracy").

> *Defense Addition: "Each Defendant must be analyzed individually, as even in a conspiracy case liability remains individual.*" This proposed addition is redundant and not in the model ABA Instructions. The "Participation and Intent" instruction already focuses the jury on whether each Defendant joined the conspiracy and instruct them to "consider only evidence of that particular Defendants' statements and conduct." No more is required.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendants' Brief on Disputed Instruction No. 23:**
**Participation and Intent**

Defendants propose modifications to DPPs' Proposed Jury Instruction No. 23 so that it more closely aligns with the ABA Model Jury Instructions in Civil Antitrust Cases, case law, and jury instructions given by this Court in similar actions and reflects DPPs' allegations in this case. DPPs' proposal, by contrast, seeks to incorporate language that is absent from the model instructions and was never given as a jury instruction in any case that DPPs cite. The Court should reject DPPs' efforts.

With respect to the first paragraph of DPPs' proposed instruction, Defendants' proposed language modifies the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 4, to track the allegations in DPPs' Third Amended Complaint. DPPs thus have no basis for refusing to incorporate Defendants' proposed modifications.

As to the fourth paragraph of DPPs' proposed instruction, Defendants' proposed modification again reflects pertinent case law. *See, e.g.*, *Alexander v. Phoenix Bond & Indem. Co.*, 149 F. Supp. 2d 989, 1000 (N.D. Ill. 2001) ("We will analyze each defendant individually because, even in a conspiracy case, liability remains individual and is not a matter of mass application." (citing *Kotteakos v. United States*, 328 U.S. 750, 772 (1946)); *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 820-21 (N.D. Ill. 2017) (noting that in considering the evidence Plaintiffs brought to contest summary judgment that such "evidence is assessed individually against moving Defendants . . . to determine whether Plaintiffs have carried their burden as to the specific Defendants" where moving defendants were only defendants remaining after other defendants settled); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999) (discussing that a price-fixing case cannot proceed to trial unless the plaintiff shows evidence proving a conspiracy joined by each defendant).

By contrast, DPPs' proposed language in the second half of the fourth paragraph beginning with "The fact that a defendant . . ." is not in the ABA model jury instruction, misstates the case law, and was not included in any instruction given in any of the cases that DPPs cite. Accordingly, there is no basis for including this language, and Defendants have struck it in their modifications.

Finally, as to the sixth paragraph, Defendants' proposed modifications are consistent with the

1    above-referenced ABA model jury instruction and case law.  By contrast, DPPs' proposed language in

2    the second and third sentences again is not in the ABA model jury instruction, nor was it included in

3    any instruction given in any of the cases that DPPs cite.  Accordingly, there is no basis for including

4    this language, and Defendants have struck it in their modifications.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 24 Re Good Intent Not a Defense Offered by DPPs**

If you find that a defendant engaged in a price-fixing conspiracy, it is not a defense for that defendant that it acted with good motives or thought its conduct was legal, or that the conduct may have had some good results.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 3; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 24 Re Good Intent Not a Defense**

[Defendants object to this instruction in its entirety.]

**DPP's Argument re Disputed Instruction No. 24: Good Intent Is Not a Defense Offered by DPPs**

DPPs' proposed instruction is taken verbatim from the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2, Instr. 3—that it is not a defense for a price-fixer to have acted with good motives. As the official comments state, "This instruction is appropriate where the court determines that the alleged restraint, if proven is illegal per se." *See id.*, Notes. DPPs claim precisely such a per se violation here. Therefore, no such excuse is admissible at trial As the Supreme Court has held: "Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224-25 (1940); *White Motor Co. v. United States*, 372 U.S. 253, 260 (1963) ("Price-fixing arrangements . . . have . . . been held to be per se violations of the antitrust laws; and a trial to show their nature, extent, and degree is no longer necessary" (citations omitted)); *see also United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1208 (9th Cir. 1992) ("Price fixing is illegal regardless of pro-competitive justifications offered therefor: '[I]t is not our task to pass upon the social utility or political wisdom of price-fixing agreements . . . . Every such horizontal arrangement among competitors poses some threat to the free market.") (quoting *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 421-22, 434 (1990) (first alteration in original)). Because price fixing is condemned per se, any evidence tending to prove Defendants' conduct was justified or reasonable is irrelevant and inadmissible. *See*, *e.g.*, *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) ("Joyce's assertion that the district court erred by not allowing him to present evidence to the jury regarding the actual effect his conduct had on the market for foreclosed properties is misplaced. The per se rule eliminates the need to inquire into the specific effects of certain restraints of trade."); *United States v. Kahan & Lessin Co.*, 695 F.2d 1122, 1125 (9th Cir. 1982) (affirming district court's rejection of argument that "per se rule should not apply if the price fixing can be shown to have procompetitive justifications.").

Defendants, however, apparently plan to present evidence that the restraints were reasonable and efficient based on good motives or may have produced good results. *See*, *e.g.*, DPPs' Motion *in*

*Limine* No. 7. In meet and confer sessions, DPPs offered to withdraw this instruction if Defendants would agree not to make any such defense. Defendants have not accepted that proposal, so the need for this instruction remains: no such explanation or justification is allowed.

### Defendants' Brief on Disputed Jury Instruction No. 24:
### Good Intent Not a Defense

Defendants do not believe DPPs' proposed instruction is necessary or applicable to this case. No Defendant will argue at trial, or has ever argued in this litigation, that even if the jury finds that it engaged in the price-fixing conspiracy alleged by DPPs, it should not be held liable because it "acted with good motives or thought its conduct was legal, or that the conduct may have had some good results."

The "no good faith defense" instruction is not given in every price-fixing case.  It was not given in the *Korean Ramen* trial, the most recent analogous price-fixing trial in this district.  *See In re Korean Ramen Antitrust Litig.,* Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 914).  That is because good faith was not a defense raised by the defendants in that case.  The same is true here.

### Disputed Instruction No. 25 Re Corporations or Agency Offered by DPPs

Under the law, a corporation is a person, but it can only act through its agents. A corporation's agents include its directors, officers, employees, subsidiaries, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly-owned subsidiaries because they are treated as a single entity. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority. In particular, those who act with the apparent authority of the principal are held to be agents of that principal, and the conduct of those agents will be attributed to the principal in order to establish liability.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the conduct of the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, illegal or anticompetitive manner. A corporation can be held responsible for the actions of its agents acting with apparent authority, and a corporation cannot evade liability by claiming it lacked knowledge of the actions of its agents or never ratified, authorized or derived any benefit from the agent's actions.. It is not relevant whether the agent was acting for the benefit of the corporation or for the agent's own benefit.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *Am. Soc. Of Mech. Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 565-66, 572-74 (1982) (a principal "may be held liable [under the antitrust law] for the acts of [its] agents even though the organization never ratified, authorized or derived any benefit whatsoever from the fraudulent activity of the agent and even though the agent acted solely for his private employer's gain."); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 3; Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.1-4.5 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

### Disputed Instruction No. 25 Re Corporations or Agency Offered by Defendants

Under the law, a corporation is a person, but it can only act through its agents. A corporation's agents include its directors, officers, employees, subsidiaries, or others acting on its behalf.  A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner

 To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 3, *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *Am. Soc. Of Mech. Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 565-66, 572-74 (1982); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.1-4.5 (2017).

**DPP's Argument re Disputed Instruction No. 25: Corporations or Agency**

DPP's instruction tracks the ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction 3: Corporations, more closely than Defendants' instruction. Further, DPPs' modifications are based on the facts of this case.

DPPs add language instructing jurors on the proper framework for assessing such conduct. The concepts of corporate liability, agency and inherent authority—topics at the center of this instruction and crucial in this trial—are neither intuitive nor commonly understood. Accordingly, concrete guidance on these concepts should be given to the jury. For example, jurors should be informed of the well-established rule that a corporation need not ratify or have knowledge of an agent's actions to be held liable for the consequences of such actions. *See, e.g., Protectus Alpha Nav. Co. v. N. Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985) ("As we have already noted, most courts have rejected the corporate authorization or ratification standard.") (citing *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 n.14 (1982)). The jury should also be instructed of the well-established rule that it is not a defense for the corporation if an agent's actions are motivated by personal—as opposed to corporate—reasons. *See, e.g., Am. Soc. of Mech. Engineers*, 456 U.S. at 566 ("[A] principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority."). DPPs have proposed simple language to educate the jury, "A corporation can be held responsible for the actions of its agents acting with apparent authority, and a corporation cannot evade liability by claiming it lacked knowledge of the actions of its agents or never ratified, authorized or derived any benefit from the agent's actions. It is not relevant whether the agent was acting for the benefit of the corporation or for the agent's own benefit."

DPPs also propose a small but important addition to the Model Instruction's treatment of *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). *Copperweld* established that when a corporation and its subsidiaries engage in "coordinated activity," they are treated as a "single enterprise" and thus cannot, as a matter of law, be found to have conspired with each other. *Id.* at 771. The Model Instruction states the *Copperweld* rule, but does not provide important context or explanation. Such context and explanation must be given here as many Defendants or co-conspirators

are different entities within the same corporate family. Many of the subsidiaries in this case are wholly-owned by their co-Defendant corporate parents. As discussed in more detail below with respect to Instruction No. 25, that certain corporate families are treated as a "single enterprise" under the antitrust law is key to understanding the evidence in this case. Accordingly, DPPs propose to add the italicized language, as follows: "A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly-owned subsidiaries *because they are treated as a single entity*." This additional language elucidates this legal concept and will provide important context for Instruction No. 25, which addresses the relationship between parent and subsidiary corporations.

DPPs object to Defendants' insertion of the paragraph "To summarize . . ." as it is duplicative and confusing given the preceding paragraph explaining *apparent* authority. While that language comes from the Model Instruction, the Model omits that a corporation can also be held liable for acts an agent commits within the agent's *actual* authority. A paragraph purporting to be a summary yet omitting a critical concept will only serve to confuse the jury on the principles of agency.

DPPs object to Defendants' insertion of the last paragraph. It is duplicative with agreed-upon language in Disputed Instruction No. 5 (Corporate Equality). That instruction already instructs the jury that corporations are "entitled to the same fair trial as a private individual." That liability is only established in this case by a preponderance of the evidence is duplicative with Disputed Instruction No.2 (Burden of Proof). That corporations are "equal before the law" is again duplicative with agreed-upon language in Instruction 5.

1

2

### Defendants' Brief on Disputed Instruction No. 25:
### Corporations or Agency

3          Defendants' proposed instruction is taken verbatim from the ABA Model Jury Instructions in

4   Civil Antitrust Cases, Ch. 2(A) Instr. 3 Ninth Circuit Manual of Model Civil Jury Instructions, Instr.

5   1.6 (2017), whereas DPPs' proposed instruction deviates significantly from that model instruction and

6   should be rejected.

7          First, although DPPs cite to an ABA model for Civil Antitrust Cases (A-3), DPPs' proposal

8   departs from the model instruction without justification.  These departures introduce legal error.  For

9   example, DPPs' proposed instruction adds the clause "because they are treated as a single entity" to the

10  sentence from the model instruction that otherwise reads, "[a] corporation is not capable under the law

11  of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries."  This

12  addition is an incorrect statement of the law in that it suggests that a corporation and its agents,

13  unincorporated divisions, or wholly owned subsidiaries are treated as a single entity for all purposes.

14  The model instruction, by contrast, accurately reflects the law as articulated in *Copperweld Corp. v.*

15  *Independence Tube Corp.*, 467 U.S. 752, 771 (1984) (establishing that a corporation and its wholly

16  owned subsidiaries "are incapable of conspiring with each other for purposes of § 1 of the Sherman

17  Act"), and in *American Needle, Inc. v. NFL*, 560 U.S. 183, 191 (2010) (reiterating that whether conduct

18  is concerted, and thus within the purview of Section 1 does not turn on formal legal distinctions but

19  rather on a "functional consideration of how the parties involved in the alleged anticompetitive conduct

20  actually operate"), and therefore requires no modification.  Moreover, for the reasons explained in

21  Defendants' objections to DPPs' proposed instruction, there is no reason to include any references to

22  the "single entity" theory.  In any event, the reason a corporation is not capable of conspiring with its

23  own agents, unincorporated divisions, or wholly owned subsidiaries is irrelevant to the jury's charge.

24  Adding this language, then, will only cause juror confusion.

25          Second, DPPs' seek to add superfluous language to the third paragraph of the model instruction

26  that unnecessarily lengthens and complicates the model instruction. This duplicative language should be

27  stricken.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Finally, DPPs proposed instruction is incomplete because it fails to include the model instruction's summary paragraph and fails to cover the rights of a corporation.  Omission of the former would cause confusion, and omission of the latter would be prejudicial to Defendants.

Accordingly, DPPs' proposed instruction should be struck and ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 3 should be utilized instead.

### Disputed Instruction No. 26 Re Subsidiary Purpose Offered by DPPs

If a person is injured by purchasing goods from a subsidiary company of a parent company which took part in a conspiracy to set, fixed, raised, maintained, or stabilized prices, the law permits that person to recover from the parent.

A parent company and its wholly-owned subsidiary company always share a complete unity of purpose or common design. They share a common purpose and objectives whether or not the parent keeps a tight rein over the subsidiary or is aware of every act by the subsidiary. The coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise. Where there is substantial common ownership, individual firms function as an economic unit and are generally treated as a single entity. A subsidiary cannot innocently advance an anticompetitive scheme for a legitimate business purpose while its parent or its sister subsidiary companies advance the same scheme for an illegal, anticompetitive purpose.

Because a parent company and its subsidiaries share a unity of purpose, it is not necessary to find that the subsidiary knew of the existence of the conspiracy entered into by its parent and/or commonly owned affiliates if it sold a product whose price was fixed by its parent. A wholly owned subsidiary always acts for the benefit of the parent, which is its sole shareholder.

*Authority*: *Arandell Corp. v. Centerpoint Energy Services, Inc.*, 900 F.3d 623, 631-32 (9th Cir. 2018) ("*Copperweld* supports the following rule: A wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent *and/or* commonly owned affiliates is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which is it a part" (emphasis added)); *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 326 & n. 6 (9th Cir. 1980); *see also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984); *Lenox MacLaren Surgical Corp. v. Medtronic*, 847 F.3d 1221 (10th Cir. 2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 26 Re Affiliated Corporate Parties Offered by Defendants**

A subsidiary is a company that is owned or controlled by another company, often called a parent company. Because a parent company and its subsidiary (or subsidiaries) are separate entities, the mere fact of ownership does not make a parent company liable for the acts of its subsidiary or a subsidiary liable for the acts of its parent company. For this reason, you must evaluate the actions of each Defendant separately as you consider whether DPPs have met their burden of proof with respect to the conspiracy alleged.

*Authority*: Adapted from *United States* v. *Bestfoods*, 524 U.S. 51, 68 (2003) ("It is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries."); *Lenox MacLaren Surgical Corp. v. Medtronic*, 847 F.3d 1221, 1237 (10th Cir. 2017) ("nothing in our prior discussion should be read to suggest that a corporation can be held liable under § 2 for the anticompetitive conduct of one or more related entities, merely by virtue of its place in the same corporate family."); *Mitcheal v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999) (rejecting the claim that "a subsidiary and its parent, or a subsidiary and a sister subsidiary, can be considered one entity for all § 1 purposes, and either one can be liable for conspiring to restrain trade, even where there is no evidence that both were involved in the challenged conduct."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) ("[A] subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 570 F.Supp.2d 896, 904 (N.D. Cal. 2008) ("Plaintiffs will need to provide evidence of each Defendant's participation in any conspiracy."); *In re Capacitors Antitrust Litigation*, No. 14-cv-3264 (N.D. Cal. May 26, 2015), Doc. 710 at 19 (ruling that "a parent is not liable for the acts of its subsidiaries" *quoting In re Cal. Title Ins. Antitrust Litig.*,No. C 08-01341 JSW, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009)); *In re Capacitors Antitrust Litigation*, No. 14-cv-3264 (N.D. Cal. June 11, 2015), Doc. 738 ("The Court agrees with NCC that jurisdiction over it cannot be traced through UCC under an agency or alter ego theory, and the Court declines plaintiffs' arguments to the contrary.")*.*

**DPP's Argument re Disputed Instruction No. 26: Subsidiary Purpose/Affiliated Corporate**

**Parties**

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), held that when a corporation and its subsidiaries engage in "coordinated activity" they are treated as a "single enterprise." As such, a corporation and its wholly-owned subsidiaries cannot be held liable under the antitrust laws for agreements between them. *Id.* at 771. *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623 (9th Cir. 2018), recognized the corollary to *Copperweld*: "A wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which is it a part." *Id.* at 631-32. In other words, "Defendants cannot have the *Copperweld* doctrine both ways. It would be inconsistent to insist both (1) that two affiliates are incapable of conspiring with each other for purposes of Section 1 of the Sherman Act because they 'always' share 'unity of purpose,' and (2) that one affiliate may escape liability for its own conduct—conduct necessary to accomplish the illegal goals of the scheme—by disavowing the anticompetitive intent of the other, even where the two acted together." *Id.* at 630–31.

Nonetheless, Defendants seek to instruct the jury that "you must evaluate the actions of each Defendant separately as you consider whether DPPs have met their burden of proof with respect to the conspiracy alleged," while at the same time seeking the benefits of *Copperweld* to be treated as a "single entity." This is illogical and inconsistent. As held by the Ninth Circuit, Defendants cannot have it both ways. Their proposed instruction misstates the law.

What is more, Defendants' proposed instruction on this point fails to cite any Ninth Circuit authority and does not mention *Arandell*. Furthermore, the authority they do cite aligns with giving DPPs' instruction. Defendants cite to *Lenox MacLaren Surgical Corp. v. Medtronic*, 847 F.3d 1221, 1237 (10th Cir. 2017) to argue that it is it is contrary to *Arandell*. It is not; the two are consistent. *Arandell*, 900 F.3d at 631 ("The Tenth Circuit, so far the only Court of Appeals squarely to consider such an application of *Copperweld*, recently reached the *same conclusion* in" *Lenox*) (emphasis added)); *see also Lenox*, 847 F.3d at 1235 ("[W]e agree with Lenox that Defendants—three of which

(MSD Japan, PS Medical, and MSD, Inc.) are wholly owned subsidiaries of the fourth (Medtronic, Inc.)—should be treated as a single enterprise for purposes of the Sherman Act's conspiracy prohibitions.").

*Arandell* held that a wholly-owned subsidiary's sale of price-fixed goods at inflated prices constituted "coordinated activity" that was "critical" to the conspiracy, and the parent and subsidiary must be treated as a single entity under *Copperweld*. *Arandell*, 900 F.3d at 635.  Defendants' proposed Instruction No. 25 would mislead the jury into believing that there is never a circumstance in which related entities should be treated as a single entity, a position that is contrary to controlling law and plain error.

The better course is to follow DPPs' proposed instruction, which builds on the instruction on this issue given in *Ramen Noodles*, the only price-fixing case that has gone to trial in this District since *Arandell* was decided. *See In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907). DPPs' instruction conforms with controlling law in Ninth Circuit.

**Defendants' Brief on Disputed Instruction No. 26: Affiliated Corporate Parties**

Defendants object to DPPs' proposed instruction– which is aimed at imposing liability on Holy Stone Enterprise and United Chemi-Con for the alleged conduct of its Japanese affiliates – because it is unsupported by evidence and not an accurate description of the law.  DPPs cite *Arandell Corp. v. CenterPoint Energy Servs., Inc.*, 900 F.3d 623 (9th Cir. 2018), as a source of the proposed instruction. But *Arandell* is wholly inapplicable.  In *Arandell*, the Ninth Circuit endorsed a "single entity" theory based on uncontested evidence that "[t]he officers and directors of the Reliant **parent** orchestrated [the price-fixing] scheme," by directing one subsidiary to manipulate prices and instructing a second subsidiary to send its illegal profits back to the parent. *Id.* at 628 (emph. added).  Moreover, the parent company in *Arandell* could only sell gas into Wisconsin through a subsidiary and thus, the activities of the parent, the subsidiary, and the sister companies were necessarily completely interlocking and coordinated.  *Id*. at 627.

Capacitor sales require no such coordination, and no evidence akin to that present in *Arandell* exists here.  With respect to UCC, there is no evidence that it knew of the alleged conspiracy or that NCC instructed it to fix prices or funnel ill-gotten profits back to NCC.  Similarly, there is no evidence that Holy Stone Enterprise was aware of, "orchestrated," or directed its Japanese subsidiary to participate in the alleged conspiracy.  Nor is there evidence that Holy Stone Enterprise caused the Japanese subsidiary to pass "rigged and inflated prices" on to "buyers outside of the . . . economic unit."  There is also a lack of evidence that the Japanese entity "funneled" unlawful profits back to Holy Stone Enterprise.  The absence of this kind of evidence distinguishes *Arandell* and defeats DPPs' reliance on a "single entity" theory.

For these reasons, Defendants struck DPPs' proposed instruction and instead offered an instruction about corporate separateness, "a general principle of corporate law deeply ingrained in our legal system," *United States* v. *Bestfoods*, 524 U.S. 51, 68 (2003), and a principle already endorsed by this Court.  (ECF No. 710 at 19 (ruling that "a parent is not liable for the acts of its subsidiaries" *quoting In re Cal. Title Ins. Antitrust Litig.*,No. C 08-01341 JSW, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009)).  To the extent the Court believes an *Arandell* instruction is necessary, Defendants

object to DPPs' instruction because it does not accurately state the law.  Indeed, *Arandell* is explicit: "commonly-owned-but-legally-distinct entities are considered a 'single entity' for antitrust purposes ***[only] where they engage in 'coordinated activity***,'" not simply because one entity is wholly owned by another, as DPPs' proposed instruction wrongly states.  *Arandell*, 900 F.3d at 633 (emph. added); *see also id.* at 633 n.10 (explaining that "single entity" liability cannot be imposed "[i]n the absence of any ***specific evidence of coordinated activity***" (quoting *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999) (emph. added)).  Accordingly, if an *Arandell* instruction is given, Defendants propose:

> A subsidiary company, however, shares a unity of purpose with its parent company whenever the two engage in "coordinated activity."  Coordinated activity occurs where the parent and subsidiary act together in furtherance of the same price-fixing scheme.  For example, courts have found coordinated activity when officers and directors of the parent orchestrated the scheme by directing the subsidiary to manipulate prices and funnel the illegal profits back to the parent.

Defendants' proposed instruction is a restatement of the precise rule the Ninth Circuit said it was recognizing in *Arandell*, *see* 900 F.3d at 632 ("A wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which it is a part."), and provides an example of what has been found sufficient in order to help the jury.  *Id.* at 634.

**Disputed Instruction No. 27 Re Evidence of Information Exchange Offered by DPPs**

Evidence has been introduced concerning the exchange of proprietary, confidential information among Defendants and their competitors including about their prices, cost data, actual and planned production capacity and output, customers, bidding status and other confidential business information. DPPs have alleged that such exchanges were part of and made in furtherance of a conspiracy to fix prices.

If you find that confidential information was exchanged, you may consider whether it was being exchanged as part of an agreement to set, fix, raise, maintain, or stabilize prices, the information exchanged, along with all of the other evidence bearing on whether there was such an agreement.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 8 & notes; *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *Arizona v. Maricopa Cty. Medical Soc'y*, 457 U.S. 332, 351-52 (1982) (anticompetitive potential inherent in price-fixing agreements justifies their facial invalidity even if procompetitive justifications are offered); *see also United States v. Container Corp.*, 393 U.S. 333, 336-37 (1969) ("[W]hen a defendant requested and received price information it was affirming its willingness to furnish such information"); *In re Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445-50 (9th Cir. 1990); ABA Section of Antitrust Law, Proof of Conspiracy Under Federal Antitrust Laws at 83-87 (2010).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 27 Re Evidence of Information Exchange Offered by Defendants**

Evidence has been introduced concerning the exchange of proprietary, confidential information among Defendants and their competitors including about their prices, cost data, actual and planned production capacity and output, customers, bidding status and other confidential business information. DPPs have alleged that such exchanges were part of and made in furtherance of a conspiracy to fix prices.

The fact that Defendants exchanged price information by itself is not illegal and does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange pricing and other proprietary information, and the law recognizes that exchanges of pricing and other proprietary information may enhance competition and benefit consumers. On the other hand, if you find that confidential information was exchanged, and that Defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to set, fix, raise, maintain, or stabilize prices, along with all of the other evidence bearing on whether there was such an agreement.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 8 & notes; *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *Arizona v. Maricopa Cty. Medical Soc'y*, 457 U.S. 332, 351-52 (1982) (anticompetitive potential inherent in price-fixing agreements justifies their facial invalidity even if procompetitive justifications are offered); *see also United States v. Container Corp.*, 393 U.S. 333, 336-37 (1969) (informal agreement to exchange price information may under certain market conditions constitute evidence of agreement to stabilize prices); *In re Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445-50 (9th Cir. 1990); ABA Section of Antitrust Law, Proof of Conspiracy Under Federal Antitrust Laws at 83-87 (2010).

### DPP's Argument re Disputed Instruction No. 27: Evidence of Information Exchange

*The Price Exchanges Here Are Illegal. The Price Exchanges Here Are Illegal.* Defendants propose adding instructions that are inapplicable. They would charge the jury that "exchanged price information *by itself is not illegal*." The italicized language is not in the ABA Model Instructions. DPPs do not contend Defendants engaged in information exchange "by itself." They contend that Defendants did so in furtherance of price fixing. True, some information exchanges are not "illegal per se," but only in the "[a]bsen[ce of] an agreement to fix prices." ABA Model Instructions, Ch. 2, Instr. 8, Notes. Sharing information as part of a conspiracy is *per se* illegal. *Id*.; *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1144 (N.D. Cal. 2009) ("defendants routinely exchanged highly sensitive competitive information . . . to facilitate and monitor their alleged price fixing conspiracy.").

It is also true that sharing of competitively sensitive information can form the basis of a conspiracy under the antitrust laws. *See, e.g., U.S. v. Am. Linseed Oil Co.*, 262 U.S. 371, 380-81 (1923); *Am. Column & Lumber*, 257 U.S. at 394; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 212 (2d Cir. 2001); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902 (N.D. Cal. 2008) ("[T]he exchange of price information alone can be 'sufficient to establish the combination or conspiracy, the initial ingredient of a violation of [Section 1].'"). The reciprocity inherent in such exchanges is sufficient to establish a Defendants' willing participation in a conspiracy. *See United States v. Container Corp.*, 393 U.S. 333, 335 (1969) ("[W]hen a defendant requested and received price information it was affirming its willingness to furnish such information").

*No Legitimate Reasons Are Cognizable.* Defendants would also instruct the jury that there may be legitimate reasons for information exchanges. In meet and confer sessions over the jury instructions, DPPs asked—and Defendants failed to articulate—*any* legitimate or procompetitive justifications for such information exchanges, nor were they able to cite any factual testimony or documentation tending to support such a defense.

The allegation here is that Defendants engaged in a *per se* violation of the antitrust laws. The law prohibits any defense that such conduct might have had procompetitive benefits. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224-25, n.49 (1940) ("Whatever economic

justification . . . price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the . . . economy."); *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1208 (9th Cir. 1992) ("Price fixing is illegal regardless of pro-competitive justifications offered therefor"); *see also White Motor Co. v. United States*, 372 U.S. 253, 260 (1963) ("Price-fixing arrangements . . . have . . . been held to be per se violations of the antitrust laws; and a trial to show their nature, extent, and degree is no longer necessary" (citations omitted)).

  *Defendants' Proposal:* "*No reasonable explanation.*" For the above reasons, Defendants overstate the law by suggesting that only if there is "no reasonable" explanation can price and information exchanges be considered as evidence of a price fixing. Such exchanges can be circumstantial evidence of an antitrust conspiracy. *See Container Corp.*, 393 U.S. at 336-37.

**Defendants' Brief on Disputed Instruction No. 27:**
**Evidence of Information Exchange**

Both parties' proposed instructions are adapted from the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 8.  Defendants' proposal more closely hews to the model and the facts in this case.

Defendants propose including, and DPPs propose omitting, the following sentence at the beginning of the second paragraph: "The fact that Defendants exchanged price information by itself is not illegal and does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange pricing and other proprietary information, and the law recognizes that exchanges of pricing and other proprietary information may enhance competition and benefit consumers."  Additionally, in the subsequent sentence, Defendants propose including, and DPPs propose omitting, the underlined text as follows: "On the other hand, if you find that confidential information was exchanged, and that Defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to set, fix, raise, maintain, or stabilize prices, along with all of the other evidence bearing on whether there was such an agreement."  Defendants' proposal tracks the language of the ABA Model; DPPs' proposal does not.  *See* Ch. 2(B) Instr. 8.

Furthermore, as the Notes to the model explain, "Absent an agreement to fix prices, an exchange of price information is not illegal per se and is judged under the rule of reason.  Exchange of price information, however, can be a plus factor from which a jury could infer that there was an agreement among competitors to fix prices.  A number of courts have recognized that advance price announcements are 'perfectly lawful.'"  *Id.* (citations omitted).  Here, Defendants dispute the existence of the broadly-constructed conspiracy alleged by DPPs in the Third Amended Complaint.  In particular, Defendants will point out that the minutes from industry meetings show the exchange of limited price information and speak in generalities about market trends and demand, but they do not, on their face, speak to an overarching agreement to fix the price of all aluminum, tantalum, and film capacitors worldwide.  Nevertheless, DPPs will introduce these meeting minutes and ask the jury to infer an

overarching agreement from the mere exchange of price information.  Thus, the jury must be educated by the Court that price information exchanges, in and of themselves, are not illegal.  Without this instruction, the jury is likely to conclude that this exchange of information is illegal, which it is not unless done in furtherance of and in order to implement an actual agreement to fix prices.

The *TFT-LCD* case is instructive.  There, the court gave an "information exchange" instruction even though there was extensive evidence of "crystal meetings" at which the participants reached explicit "agreements … to fix the price of TFT-LCD to be sold in the United States and elsewhere."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal.) (Doc. 6036), at 14 (Horizontal Price Fixing – Evidence of Exchange of Price Information), 15 (Stipulation re: Guilty Pleas).  Given the fact that there is no such evidence of the overarching agreement alleged by the DPPs in this case, an information exchange instruction is even more necessary.  The Court should adopt Defendants' proposed instruction, which more closely tracks to the model.

**Disputed Instruction No. 28 Re Evidence of Prices Charged Offered by DPPs**

Evidence of the prices actually charged by Defendants for aluminum, film and tantalum capacitors has been admitted to assist you in deciding whether Defendants agreed to stabilize or raise prices, as claimed by DPPs. If you find that Defendants agreed or conspired to set, fix, raise, maintain, or stabilize prices, the fact that they did not stick to their agreement on every occasion or for every customer is not a defense. Whether or not the agreement or understanding was effective is irrelevant for determining whether there is a violation, provided that the Defendants reached an agreement or understanding and took an act in furtherance of the agreement or understanding.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5, 6, & notes; *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220-21 (1940) (the fact sales were "still governed by some competition is of no consequence," even if conspirators were "in no position to control the market, to the extent that they raised, lowered, or stabilized prices, they would be directly interfering with the free play of market forces").

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 28 Re Evidence of Prices Charged Offered by Defendants**

Evidence of the prices actually charged by Defendants for aluminum, tantalum, and film capacitors has been admitted to assist you in deciding whether Defendants agreed to fix prices, as claimed by DPPs. Such evidence may lead you to conclude that Defendants never entered into the conspiracy alleged by DPPs.  Or it may lead you to conclude that Defendants made an agreement but undercut one another, offered prices different from those agreed upon to certain customers, or at certain times failed to live up to the agreement.  If you find that Defendants agreed or conspired to fix prices, the fact that they did not stick to their agreement on every occasion or for every customer is not a defense.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5, 6, & notes; *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220-21 (1940) (the fact sales were "still governed by some competition is of no consequence," even if conspirators were "in no position to control the market, to the extent that they raised, lowered, or stabilized prices, they would be directly interfering with the free play of market forces").

### DPP's Argument re Disputed Instruction No. 28: Evidence of Price Charged

*Description of Conduct and Products Affected.* DPPs rely on their briefing regarding their proposed instruction on conduct and products affected by the conspiracy. DPPs' Argument re Instr. No. 21.

"*Whether or not the agreement or understanding was effective is irrelevant for determining whether there is a violation, provided that the Defendants reached an agreement or understanding and took an act in furtherance of the agreement or understanding.*" DPPs request this instruction, which comes directly from the notes to the ABA Model Instruction. *See* ABA Model Instructions, Ch. 2, Instr. 5, notes (collecting cases); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220-21 (1940) (the fact sales were "still governed by some competition is of no consequence," even if conspirators were "in no position to control the market, to the extent that they raised, lowered, or stabilized prices, they would be directly interfering with the free play of market forces"). Defendants' proposed language would invite legal error and confuse the jury. *See* Disputed Instr. No. 28 re Evidence of Prices Charges (Offered by Defendants) ("Such evidence may lead you to conclude that Defendants never entered into the conspiracy alleged by DPPs. Or it may lead you to conclude that Defendants made an agreement but undercut one another, offered prices different from those agreed upon to certain customers, or at certain times failed to live up to the agreement.").

1

2

**Defendants' Brief on Disputed Instruction No. 28:**
**Evidence of Prices Charged**

3

4

Both parties' proposed instructions are adapted from the ABA Model Jury Instructions in Civil

5

Antitrust Cases, Ch. 2(B) Instr. 6.  Defendants' proposal more closely hews to the model and the facts

in this case.

6

DPPs propose the phrases "stabilize or raise prices" and "set, fix, raise, maintain, or stabilize

7

prices," while Defendants propose using "fix prices" in both places.  Defendants' proposal is consistent

8

with the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 6.  DPPs' proposal

9

would unnecessarily confuse the jury.  The Court should decline to deviate from the model.

10

Also, Defendants propose including, and DPPs propose omitting, the following two sentences

11

immediately after the first sentence in the proposed instructions: "<u>Such evidence may lead you to</u>

12

<u>conclude that Defendants never entered into the conspiracy alleged by DPPs.  Or it may lead you to</u>

13

<u>conclude that Defendants made an agreement but undercut one another, offered prices different from</u>

14

<u>those agreed upon to certain customers, or at certain times failed to live up to the agreement.</u>"

15

Defendants' proposal is consistent with the ABA Model Jury Instructions in Civil Antitrust Cases, Ch.

2(B) Instr. 6.  DPPs' proposal is not.  The Court should decline to deviate from the model.

16

17

Finally, DPPs propose adding the last sentence in their proposed instruction: "<u>Whether or not</u>

18

<u>the agreement or understanding was effective is irrelevant for determining whether there is a violation,</u>

19

<u>provided that the Defendants reached an agreement or understanding and took an act in furtherance of</u>

20

<u>the agreement or understanding.</u>"  This sentence is not included in the ABA Model Jury Instructions in

21

Civil Antitrust Cases, Ch. 2(B) Instr. 6, the model instruction on which these proposed instructions are

22

based.  Nor does this sentence appear to have been given as an instruction in the *Korean Ramen* trial,

23

*see In re Korean Ramen Antitrust Litig.,* Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec.

24

13, 2018) (Doc. 914), or any other trial of which Defendants are aware.  The Court should decline to

25

deviate from the model instruction and adopt Defendants' proposal.

26

27

28

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD

163

**Disputed Instruction No. 29 Re Evidence of Competition Offered by DPPs**

If you find that such a conspiracy existed, it is no defense that Defendants actually competed with each other in some respects, or failed to eliminate all competition between themselves. Similarly, an agreement or understanding between competitors is unlawful even if it did not extend to all products sold by Defendants or did not affect all of their customers or transactions.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5.

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 29 Re Evidence of Competition Offered by Defendants**

Evidence that Defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into the conspiracy alleged by DPPs.  If you find that such a conspiracy existed, it is no defense that Defendants actually competed with each other in some respects, or failed to eliminate all competition between themselves. Similarly, a price-fixing conspiracy is unlawful even if it did not extend to all products sold by Defendants or did not affect all of their customers or transactions.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5.

### DPP's Argument re Disputed Instruction No. 29: Evidence of Competition

DPPs object to the first sentence proposed by Defendants because it is misleading. *First*, the sentence suggests that Defendants "actually engaged in price competition with each other[;]" however, that is for the jury to decide. *Second*, the sentence suggests that if competition occurred, then there would be no conspiracy; however, instances of price competition can occur despite a conspiracy, even one that successfully elevates prices. *See*, *e.g.*, *Unite States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220-21 (1940) ("[T]he fact that sales on the spot markets were still governed by some competition is of no consequence" even if conspirators "were in no position to control the market, to the extent that they raised, lowered, or stabilized prices they would be directly interfering with the free play of market forces"); *see also United States v. Serta Assocs*, 296 F. Supp. 1121, 1127 (N.D. Ill. 1968) ("The antitrust laws condemn all price regulating agreements, not only those which are effective.").

DPPs also object to Defendants' attempt to substitute the term "price-fixing conspiracy" for the broader language proposed by DPPs' Proposed Jury Instruction. As explained *supra*, it is inappropriate to limit the instruction in this manner as the conduct alleged by DPPs is broader than price-fixing.

**Defendants' Brief on Disputed Instruction No. 29: Evidence of Competition**

Defendants' proposed instruction is taken almost verbatim from the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5.  DPPs proposal would deviate from the model by omitting the first sentence: "<u>Evidence that Defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into the conspiracy alleged by DPPs</u>."  DPPs also propose deviating from the model by using in the last sentence the phrase "an agreement or understanding between competitors" rather than "a price-fixing conspiracy."  The Court should decline to deviate from the model.

### Disputed Instruction No. 29A Re Evidence of Similarity Offered by Defendants

Evidence that Defendants may have charged identical prices for the same goods, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices. Such practices may be consistent with lawful, ordinary, and proper competitive behavior in a free and open market.

The Sherman Act prohibits conspiracies between two or more competitors to fix prices. It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors; such behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions.  Thus, a Defendant may charge prices identical to those charged by its competitors without violating the Sherman Act. A Defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a Defendant does not violate the Sherman Act by taking some action in the hope or belief that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law.

You should consider all of the evidence as a whole in determining whether any similarity or identity of prices or conduct resulted from the independent business judgment of the individual Defendants freely competing in the open market, or whether it resulted from an agreement between two or more of them.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, B-33 (2016).

**DPP's Argument re Disputed Instruction No. 29A: Evidence of Similarity Offered by Defendants**

Defendants' proposed instruction is misleading, confusing and raises an irrelevant legal theory. DPPs have direct evidence of an agreement to fix prices—a *per se* violation of section 1 of the Sherman Act. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940) ("'Agreements for price maintenance of articles moving in interstate commerce are, without more, unreasonable restraints within the meaning of the Sherman Act'"). That evidence includes numerous guilty pleas. As a result, the jury need not infer the existence of a conspiracy. *See In re Baby Food Antitrust* Litig., 166 F.3d 112, 118 (3d Cir. 1999) ("[W]ith direct evidence 'the fact finder is not required to make inferences to establish facts'").

Beyond the guilty pleas, the ACPERA applicant admitted to a price-fixing conspiracy to the DOJ and Defendants and their high-level employees regularly met to expressly fix prices. These meetings were memorialized in minutes, correspondence, and other documents. This is not a plus factors case requiring inferences from circumstantial evidence. Instructing the jury about parallel conduct would only confuse the jury about DPPs' burden to prove a conspiracy. *See Socony-Vacuum*, 310 U.S. at 218 ("price fixing agreements are unlawful per se under the Sherman Act and [ ] no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense"); *see also In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012) ("Conscious parallelism *alone*, however, does not establish an antitrust violation" (emphasis added)).

Defendants' proposed instruction should also be rejected as duplicative. Both DPPs and Defendants propose that Disputed Instruction No. 28 re Evidence of Prices Charged should state, "Evidences of the prices actually charged by Defendants . . . has been admitted to assist you in deciding whether Defendants agreed to [stabilize or raise/fix] prices." This language accomplishes the same purpose as Defendants' proposed instruction without the insertion of an inapplicable legal theory into the jury's deliberations and otherwise sowing confusion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The jury can consider prices, but it does not need to rely on inferences to decide whether prices were set in parallel as a coincidence or whether they were caused by price fixing, because numerous conspirators have already admitted to price fixing and there is other direct evidence of price fixing.

### Defendants' Brief on Disputed Instruction No. 29A Re Evidence of Similarity

Defendants' proposed instruction is taken almost verbatim from the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5. The Notes to this model instruction, which cite three Supreme Court cases and numerous others, do not suggest that this instruction should only be given in certain cases.

DPPs stated during a meet-and-confer that they did not think this instruction was necessary because this is not a "plus factor case." But Defendants dispute the existence of the broadly-constructed conspiracy alleged by DPPs in the Third Amended Complaint, and are entitled to argue that mere similarity of prices is not the equivalent of an illegal price-fixing agreement. In particular, Defendants will point out that the minutes from industry meetings show the exchange of limited price information and speak in generalities about market trends and demand, but they do not, on their face, speak to an overarching agreement to fix the price of all aluminum, tantalum, and film capacitors worldwide. Nevertheless, DPPs will introduce evidence of the prices Defendants charged their customers and ask the jury to infer an overarching agreement from the mere similarity of prices. Thus, the jury must be educated by the Court that evidence of similarity of prices, in and of itself, is not illegal. Without this instruction, the jury is likely to conclude that the similarity of prices is illegal, which it is not.

The *TFT-LCD* case is instructive. There, the court gave an "evidence of similarity" instruction even though there was extensive  evidence of "crystal meetings" at which "agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal.) (Doc. 6036), at 11 (Horizontal Price Fixing – Evidence of Similarity), 15 (Stipulation re: Guilty Pleas). Given the fact that there is no such evidence of the overarching agreement alleged by the DPPs in this case, an evidence of similarity instruction is even more necessary. The Court should adopt Defendants' proposed instruction, which is taken almost verbatim from the ABA model.

**Disputed Instruction No. 29B Re Import Commerce – Intent; Substantial Effect**
**Offered by Defendants**

U.S. antitrust law applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.

To show that foreign conduct was meant to produce some substantial effect, the DPPs must establish by a preponderance of the evidence that Defendants knowingly entered into an express or tacit agreement intending to produce a substantial effect in the United States.

The DPPs must also meet their burden of proving that the alleged conspiracy between Defendants in fact produced a substantial effect on the U.S. market for the entire time period and for all capacitors alleged to have been impacted by the conspiracy. A substantial effect in the United States cannot simply be assumed. Nor can a substantial effect in the United States be assumed to continue because it once existed. The DPPs must prove that the substantial effect requirement is met at the relevant time.

*Authority*: *In re TFT-LCD (Flat Panel) Antitrust Litigation,* Jury Instructions, 07-md-01827-SI, (N.D. Cal. June 28, 2012) (Dkt. 6036); *Dee-K Enterprises, Inc. v. Heveafil SDN. BHD*., Jury Instructions, Civil Action No. 3:98-CV-10 MU (W.D.N.C.) ("A substantial effect in the United States cannot simply be assumed. Nor can a substantial effect in the United States be assumed to continue because it once existed. The Plaintiffs must prove that the substantial effect requirement is met at the relevant time."); *F. Hoffmann-La Roche Ltd. v. Empagran S.A.,* 542 U.S. 155, 162 (2004) (holding that FTAIA only brings activity involving nonimport foreign commerce "within the Sherman Act's reach provided that the conduct both (1) sufficiently affects American commerce, i.e., it has a direct, substantial, and reasonably foreseeable effect on American domestic, import, or (certain) export commerce, and (2) has an effect of a kind that antitrust law considers harmful . . . .") (internal quotations omitted); *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("it is well established by now that the Sherman Act applies to foreign conduct that was *meant to* produce and *did in fact* produce some substantial effect in the United States") (emphasis added); *Dee-K Enterprises, Inc. v. Heveafil SDN. BHD*., 299

F.3d 281, 292-93 (4th Cir. 2002) (noting that "courts have consistently required a showing of effect on United States commerce even in cases involving price fixing on imports" and rejecting plaintiff's "contention that Hartford Fire never applies when a conspiracy involves price-fixed goods sold directly into United States commerce."); *Eskofot A/S v. E. I. DuPont De Nemours & Co.*, 872 F.Supp. 81, 85 (S.D.N.Y. 1995) (finding subject matter jurisdiction after determining that "the challenged conduct has, or is intended to have, any anti-competitive effect upon United States commerce.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DPP's Argument re Disputed Instruction No. 29B: Import Commerce – Intent; Substantial Effect Offered by Defendants

Defendants' proposed instruction improperly invites the jury to resolve a legal issue already determined by the Court. DPPs seek to recover damages only for Defendants' overcharges for capacitors billed or shipped to the United States. DPPs' damages analysis takes only sales of those capacitors into account. The Court itself has determined that capacitors billed or shipped to the United States are within the import exception of the Foreign Trade Antitrust Improvements Act of 1982. The DPPs Class as certified by this Court includes only capacitors billed or shipped to the United States. Dkt. 2282. For that reason, the Court did not need to determine whether additional sales could satisfy the domestic effects exception. Dkt. 1302 at 8; *see United States v. Hsiung*, 778 F.3d 738, 754-55 (9th Cir. 2015) ("Although our circuit has not defined 'import trade' for purposes of the FTAIA, not much imagination is required to say that this phrase means precisely what it says."); *F. Hoffman-La Roche Ltd. V. Empagran S.A.*, 542 U.S. 155, 162 (2004) (FTAIA removes foreign conduct from Sherman Act's reach "*unless* those activities adversely affect . . . *imports* to the United States" (second emphasis added)).

The Court has already answered the pure question of law—this case involves import commerce. *See United States v. Estrada-Lucas*, 651 F.2d 1261, 1263-64 (9th Cir. 1980) ("A decision of law in a case, once made, becomes the 'law of the case,' and should not be changed absent clear error in the original ruling or a change in the relevant circumstances."). Defendants' instruction is an attempt to have the jury resolve a legal question that has been resolved here, and the instruction should be rejected.

**Defendants' Brief on Disputed Instruction No. 29B Re Import Commerce – Intent;
Substantial Effect**

Defendants' proposed instruction must be included as it is an affirmative element of Plaintiffs' Sherman Act claim.  Plaintiffs' limitation of their damages recovery, and their expert's damages calculation, to sales of capacitors that were "billed to" or "shipped to" entities in the United States does not obviate their burden to prove the applicability of the FTAIA to this case.  Moreover, the Court's previous threshold finding (in the context of examining the scope of relevant commerce under the FTAIA) that capacitors "billed to" or "shipped to" the United States were within the scope of import trade or commerce does not alleviate Plaintiffs of their burden to prove each element of their claims.

The FTAIA provides that the Sherman Act does not apply to anticompetitive conduct involving trade or commerce (other than import trade or import commerce) with foreign nations, unless that conduct meets the requirements of the "domestic effects" exception.  15 U.S.C. § 6a.  To meet that exception, Plaintiffs must prove that the alleged foreign anticompetitive conduct was intended to and did in fact produce a "direct, substantial, and reasonably foreseeable effect" on domestic commerce that gives rise to Plaintiffs' claims.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) ("the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States"); *F. Hoffmann-LaRoche Ltd. v. Empagran, S.A.*, 542 U.S. 155, 160-62 (2004).

In similar cases, courts have required that the plaintiffs satisfy their burden to show that the alleged foreign anticompetitive conduct meet the FTAIA's "domestic effects" exception, even where conspirators were found to have engaged in import commerce.  *See, e.g.*, *Dee-K Enterprises, Inc. v. Heveafil SDN. BHD.*, 299 F.3d 281, 292-93 (4th Cir. 2002) (noting that "courts have consistently required a showing of effect on United States commerce even in cases involving price fixing on imports" and rejecting plaintiff's "contention that *Hartford Fire* never applies when a conspiracy involves price-fixed goods sold directly into United States commerce").  Furthermore, even where courts in the Ninth Circuit have concluded that conduct constituted import commerce, they have required the inclusion of "domestic effects" exception jury instructions, making clear that this remains

an issue for the jury.  *See, e.g., In re Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115-WHO, ECF Nos. 115, 906, 907 (N.D. Cal. 2014) (holding that the conduct at issue involved import commerce but still including a jury instruction titled "Substantial Effects Test":  "Where conduct primarily or wholly occurs outside of the United States, United States antitrust laws only apply to that conduct where the conspiracy to fix the prices was intended to have and had a substantial effect in the United States.").

**Disputed Instruction No. 30 Re Testimony of Witnesses Involving Special Circumstance—**

**Leniency Offered by DPPs**

You have heard testimony from [name of witnesses], witnesses whose employer, Panasonic/SANYO, entered into a leniency agreement with the United States Department of Justice. This means that Panasonic/SANYO voluntarily reported its involvement in an illegal antitrust conspiracy to the government in exchange for lenient treatment in the government's prosecution of the conspiracy.

*Authority*: Adapted from Ninth Circuit Manual of Model Criminal Jury Instructions, Instr. 4.9 (2010).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 30 Re Testimony of Witnesses Involving Special Circumstance—**

**Leniency Offered by Defendants**

You have heard testimony from [name of witnesses], witnesses who, along with their employer, Panasonic/SANYO, received immunity from the United States Department of Justice.

For this reason, in evaluating the testimony of [name of witnesses], you should consider the extent to which or whether their testimony may have been influenced by this factor. In addition, you should examine the testimony of [name of witnesses] with greater caution than that of other witnesses.

*Authority*: Adapted from Ninth Circuit Manual of Model Criminal Jury Instructions, Instr. 4.9 (2010).

### DPP's Argument re Disputed Instruction No. 30 Re Testimony of Witnesses Involving Special Circumstance—Leniency

DPPs' proposed instruction accurately describes in plain English Panasonic/SANYO's status as the ACPERA applicant, including the predicate admission to the U.S. Department of Justice of participating in a price-fixing conspiracy in exchange for leniency.

Defendants' alternative inaccurately and misleadingly describes Panasonic/SANYO's status as the ACPERA applicant. ACPERA applicants do not receive immunity from DOJ, but rather leniency. *See* Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237 ("ACPERA"); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL2007. 2013 WL 4536569, at *4-5 (N.D. Cal. Aug. 26, 2013). Even after Panasonic/SANYO's ACPERA obligations are met in this case as determined by the Court, *see* ACPERA, § 213(b), Panasonic/SANYO would still not be immunized; it is only no longer jointly and severally liable and its damages would not be trebled. *See In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2014 WL 6461355, at *68 (N.D. Ohio Nov. 17, 2014). DPPs' use of leniency—as opposed to immunity—is more accurate than Defendants' proposed instruction.

Additionally, Defendants' proposed instruction is duplicative and redundant. Stipulated Instruction No. 12 (Credibility of Witnesses) informs the jury to take into account witnesses' "interest in the outcome of the case," "bias or prejudice" or "any other factors that bear on believability." These are all points Defendants can argue that the jury should consider, and the jury will be instructed without the excessive the second paragraph.

**Defendants' Brief on Disputed Instruction No. 30:**
**Testimony of Witnesses Involving Special Circumstance—Leniency**

Both parties' proposed instructions are adapted from the Ninth Circuit Manual of Model Criminal Jury Instructions, Instr. 4.9 (2010).  Defendants' proposal more closely hews to the model.

Consistent with the model, Defendants propose that the first sentence use the phrase "received immunity from" DOJ, and that the sentence make clear that both the witnesses and their employer, Panasonic/SANYO, were immunized from prosecution by DOJ.  Deviating from the model, DPPs propose changing "received immunity from" to "entered into an amnesty agreement with" DOJ, omitting the fact that the witnesses themselves were immunized, and adding the brand new sentence, "This means that Panasonic/SANYO voluntarily reported its involvement in an illegal antitrust conspiracy to the government in exchange for lenient treatment in the government's prosecution of the conspiracy."

DPPs stated at a meet-and-confer that the reason they would like to deviate from the model is that the jury needs greater explanation of the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") and the terms of the deal between Panasonic/SANYO and DOJ.  Defendants disagree. The complicated details of ACPERA are irrelevant to the credibility of these witnesses.  And DPPs' proposed instruction misleads the jury by omitting the significant fact that the witnesses themselves were immunized.  The Court should decline to deviate from the model and adopt Defendants' proposed instruction.

**Disputed Instruction No. 31 Re Guilty Pleas and Convictions Offered by DPPs**

You have heard evidence of certain convictions for violating the antitrust laws by setting, fixing, raising, maintaining, or stabilizing the prices of aluminum or tantalum capacitors. The following companies pled guilty to violating the United States' antitrust laws: ELNA, Matsuo, Holy Stone, NCC, Nichicon, NEC TOKIN, Rubycon, and Hitachi. In addition, the following individuals pled guilty to the same crime: Tokuo Tatai, who worked for ELNA, and Satoshi Okubo, who at different times worked for both ELNA and Matsuo during the relevant time period.

As a result of these guilty pleas and convictions you shall conclude the following facts are established as to those companies and individuals:

1.  There was a conspiracy that violated the Sherman Act, the United States' antitrust law;

2.  Each of those companies or individuals knowingly became a member of the conspiracy; and

3.  The conspiracy either (A) substantially affected interstate and U.S. import trade or commerce in aluminum and tantalum capacitors or occurred within the flow of interstate or U.S. import trade or commerce in aluminum and tantalum capacitors, or (B) had a direct, substantial and reasonably foreseeable effect on interstate or U.S. import trade or commerce in aluminum or tantalum capacitor-containing products.

You may use such convictions and findings of fact, without more, to resolve issues in this case. These guilty pleas establish the floor of Defendants' violations of the antitrust laws. DPPs are entitled to try to prove that Defendants' violations are broader than those described in the guilty pleas.

**Disputed Instruction No. 31 Re Plea Agreements and Convictions Offered by Defendants**

During the trial, I read to you an instruction agreed to by the DPPs and Defendants, describing for you the specific plea agreements/criminal convictions of Defendants ELNA Co., Ltd.,  Matsuo Electric Co., Ltd., Nippon Chemi-Con and Holy Stone Holdings Co. Ltd. on behalf of its former subsidiary, Holy Stone Polytech Co. Ltd.  I told you that along with these final instructions you would be provided with a copy of that instruction. I will not read it aloud again, but it is included here in these instructions.

[PROPOSED] STIPULATION RE: GUILTY PLEAS

The parties have stipulated that certain capacitor manufacturers—but not others—were convicted of violating the U.S. antitrust laws.  And, therefore, I instruct you that:

1.       Defendant ELNA Co., Ltd. pled guilty to "participat[ing] in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere."  ELNA Plea at ¶4(b) (ECF No. 40).  ELNA employee Tokuo Tatai and former employee Satoshi Okubo also pled guilty and were each sentenced to one year and one day in prison.

2.       Holy Stone Holdings, Co. Ltd, which is not a Defendant, pled guilty on behalf of its former subsidiary, Holy Stone Polytech Co., Ltd., for "participat[ing] in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere" from in or about April 2010 until in or about January 2014.

3.       Defendant Matsuo Electric Co., Ltd. pled guilty to "participat[ing] in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors manufactured outside of the United States and sold in the United States and elsewhere."  Matsuo Plea at ¶ 4(b).  Matsuo employee Satoshi Okubo also pled guilty and was sentenced to one year and one day in prison.

4.     Defendant Nippon Chemi-Con Corporation pled guilty to "participat[ing] in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors manufactured outside of the United States and sold in the United States and elsewhere."  Nippon Chemi-Con Corp. Plea at ¶4(b).  United Chemi-Con did not plead guilty.  In addition, Nippon Chemi-Con Corporation's plea explicitly carves out capacitors produced by its U.S. subsidiary, United Chemi-Con, Inc., at its U.S.-based factory in Lansing, North Carolina.

5.     Four other manufacturers of electrolytic capacitors who are not parties to this lawsuit also pled guilty.  They are Nichicon, Rubycon, NEC Tokin, and Hitachi.

6.     Neither Panasonic/SANYO nor any of its employees was indicted or convicted of violating the U.S. antitrust laws. In 2015, Panasonic applied for and was granted amnesty for itself and its employees under DOJ's Corporate Leniency Program. In doing so, Panasonic admitted to violating the U.S. antitrust laws and agreed to cooperation obligations with DOJ's investigation of the capacitors industry similar to those agreed to by the entities and persons who pled guilty.

7.     In providing this instruction to you, I did not preclude the parties from offering further evidence on these subjects.

*Authority*:  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. July 28, 2012) (Doc. 6036); *United States v. ELNA Co. Ltd.*, 16-cr-365 (N.D. Cal. Oct. 12, 2017) (Doc. 40); *United States v. Holy Stone Holdings,* 16-cr-00366 (N.D. Cal. Oct. 12, 2017) (Doc. 34); *United States v. Matsuo Elec. Co.*, No. 17-cr-73 (N.D. Cal.) (Doc. 12-2); *United States v. Nippon Chemi-Con Corporation*, 17-cr-540 (N.D. Cal. May 31, 2018) (Doc. 54-1).

**DPP's Argument re Disputed Instruction No. 31: Guilty Pleas and Convictions**

DPPs' instruction on Defendants' guilty pleas and criminal convictions is adapted from pattern antitrust instructions, *see* 3 O'Malley et al., Fed. Jury Prac. & Instr. § 150.72 (6th ed.), and the instructions delivered by Judge Illston in the *TFT-LCD* opt-out trial. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.), ECF No. 8543 at 27. It properly summarizes the plea agreements as establishing—pursuant to 15 U.S.C. § 16a—the core facts admitted by the pleading Defendants: there was a conspiracy that violated the Sherman Act; each convicted Defendant knowingly participated in the conspiracy that violated the Sherman Act; and the conspiracy identified in the plea agreements had a substantial effect on U.S. import trade, involved sales directly in the United States, or involved acts in furtherance of the conspiracy which took place in the Northern District of California. DPPs' instruction further advises that the jury "may use such convictions and findings of fact, without more, to resolve issues in this case" and that the Defendants' guilty pleas "establish the floor" of those Defendants' liability. Further, these are subject to judicial notice under Federal Rule of Evidence 201. Similarly, a pattern Sherman Act instruction explains a conviction "is prima facie evidence that, during the period charged in the indictment, the defendants engaged in a conspiracy to violate the antitrust laws" and that "[p]rima facie evidence is evidence that in and of itself is sufficient to establish the facts alleged." 3 O'Malley et al., Fed. Jury Prac. & Instr. § 150.72 (6th ed.). Defendants would omit this explanatory language, substituting portions from each of their plea agreements. Yet those agreements will be entered into evidence and can be read by the jurors; it serves little purpose to repeat them. What will aid deliberations is instead for the Court to describe the agreements' uniform effect in this case. *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.), ECF No. 8543 at 27 ("The convictions are evidence, on their face, that during the periods specified in the pleas or charged in the indictment, [eight corporate families] engaged in the violations stated in each of their plea agreements or in the indictment."). Defendants' proposal also is overly suggestive in stating that "certain capacitor manufacturers—but not others—were convicted," rather than simply stating which Defendants were convicted, and in including self-serving references like "United Chemi-Con did not plead guilty."

The Court should adhere to the relevant models and deliver DPPs' proposed instruction.

1

2

**Defendants' Brief on Disputed Instruction No. 31:  Guilty Pleas and Convictions**

3

4

Whether the guilty pleas and related evidence should be introduced at trial is the subject of two

5

motions in limine.  If this evidence is introduced, it is important that the jury understand which specific

6

entities and individuals pleaded guilty, the precise factual bases for those pleas, and the sentences that

7

resulted.  Defendants propose an instruction that refers back to, and provides the jury with the full text

8

of, a stipulation read into the record that describes with specificity the guilty pleas at issue in the case.

9

This proposal mirrors, in all substantive respects, an instruction given in *In re TFT-LCD (Flat Panel)*

10

*Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal.) (Doc. 6036), at 15 ("First *TFT-*

11

*LCD* Instruction").

12

DPPs propose an instruction that is misleading and contrary to law.  DPPs claim their

13

instruction is "adapted from" a later trial in the *TFT-LCD* case.  *See id.* Doc. 8543, at 27-28 ("Second

14

*TFT-LCD* Instruction").  But the Second *TFT-LCD* Instruction, which is unnecessary and does not

15

appear to be based on any model instruction, is materially different than what DPPs propose.  The

16

Second *TFT-LCD* instruction provides that certain convictions introduced at trial "are ***evidence***, on

17

their face, that … [the convicted entities] engaged in the violations ***stated in each of their plea***

18

***agreements*** …. You, therefore, ***may*** use such convictions and findings of fact that support them,

19

without more, to resolve issues in this case that are the same as the ones in the prior cases" (emphasis

20

added).  By contrast, DPPs' proposal cuts from whole cloth a collateral estoppel-type instruction that

21

states that "[a]s a result of these guilty pleas and convictions you ***shall conclude*** the following facts ***are***

22

***established***," then purports to itemize the "elements" of the pleaded-to offenses in a way that

23

misleadingly seeks to equate the narrow pleaded-to conspiracies with the broad conspiracy alleged by

24

DPPs, and to usurp the jury's role in deciding the elements here.

25

As explained in Defendants' opposition to DPPs' motion in limine No. 9, collateral estoppel

26

does not work as DPPs would like it to.  DPPs allege a broad conspiracy among manufacturers of

27

"aluminum, tantalum, ***and film***" capacitors to "set prices for ***all*** the capacitors they produce."[2]  No plea

28

---

[2] Third Am. Compl., 14-cv-3264, ECF No. 1831, at ¶¶ 7, 12-13.

agreement in this case describes a conspiracy that involves ***film*** or set prices for ***all*** (as opposed to ***certain electrolytic***) capacitors, and DOJ has been clear that the pleaded-to conduct's effect "was not as broad as all U.S. customers."[3] Thus, no Defendant admitted to DPPs' broadly-alleged conspiracy, and its existence has not been "actually litigated" or "necessarily decided." *Cf. Pool Water Products v. Olin Corp.*, 258 F. 3d 1024, 1031 (9th Cir. 2001) (FTC proceeding had no preclusive effect because although "both contend that [an acquisition] is illegal under the antitrust laws," "plaintiffs here must show they were actually injured" and the "'markets,' as defined by plaintiffs, are different from the markets in the FTC proceeding.").

The Second *TFT-LCD* instruction further states that the "defendants have offered evidence in this case to refute the plaintiffs' charges. If, after considering all of the evidence presented by both parties, you conclude that the plaintiffs have not proved all of the required elements of their claims, then you cannot find the defendants liable in this case." DPPs omit these crucial sentences. Instead, DPPs insert invented language that the "guilty pleas establish the floor of Defendants' violations of the antitrust laws. DPPs are entitled to try to prove that Defendants' violations are broader than those described in the guilty pleas." The Court should decline DPPs' attempt to invent new instructions that misapply collateral estoppel principles, mislead the jury about the scope of the plea agreements, and seek to usurp the role of the jury in deciding each element of this case

---

[3] *U.S. v. Elna*, 16-cr-365 (N.D. Cal.), Dkt. 65 (DOJ Restitution Memo), at 3.

## Disputed Instruction No. 31A Re Limited Purpose of Guilty Pleas In This Case Offered by Defendants

The guilty plea of one Defendant cannot be used against any other Defendant for any purpose whatsoever.

With respect to each of the Defendants that pled guilty, its plea agreement is evidence only of the facts specifically admitted in its plea agreement.  The plea agreement is not evidence that any particular price was agreed upon, that any particular price-fixing conspiracy was actually implemented or effective, that DPPs paid higher prices, that any particular price-fixing conspiracy covered specific products, or that a price-fixing conspiracy existed at any time not covered by the specific terms of the plea agreement.

You are the sole judges of whether the DPPs have proved by a preponderance of the evidence that they are entitled to a verdict in their favor. You must determine from all of the evidence in this case whether the Defendants engaged in the conduct alleged by the DPPs and whether the DPPs have proved all of the required elements of their claim.

The Defendants have offered evidence in this case to refute DPPs' allegations.  If, after consideration of the evidence presented by all parties, you conclude that the DPPs have not proved all of the required elements of their claims, then you may not find the Defendants liable in this case.

*Authority*: See *United States v. Halbert*, 640 F.2d 1000, 1006-1007 (9th Cir. 1981) (finding error where court failed to instruct the jury that evidence of co-conspirator's guilty plea "can be used only to assess credibility" of the witness, and for failing to tell the jury "in unequivocal language that the plea may not be considered as evidence of a Defendant's guilt."); *United States v. Harris*, 738 F.2d 1068, 1071-72 (9th Cir. 1984) (same); *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (approving limiting instruction that the conviction of one defendant "could not be used against any other defendant for any purpose whatever"); *United States v. Gullo*, 502 F.2d 759, 761 (3d Cir. 1974) (as a general rule, "evidence of a guilty plea by a co-conspirator is not admissible"); *United States v. Newman*, 490 F.2d 139, 143 (3d Cir. 1974) ("guilty pleas and convictions of codefendants are

not admissible to demonstrate the guilt of defendants"); *United States v. Werme*, 939 F.2d 108, 114 (3d Cir. 1991) ("Because evidence of a co-conspirator's guilty plea is extremely prejudicial to the defendant on trial absent [a limiting] instruction, compliance with the mandatory duty imposed by Rule 105 is particularly important."); *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (guilty pleas of coconspirators may only be admitted to assess the witnesses' credibility and must be accompanied by "a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witnesses' credibility"); *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951) (a prior judgment of conviction may be used as prima facie evidence in a subsequent civil suit against the defendant only with respect to matters of fact or law "necessarily decided by the conviction and the verdict on which it was based"); *United States v. Real Prop. Located at Section 18*, 976 F.2d 515, 518-19 (9th Cir. 1992) (guilty plea could not be used to establish issues that were not decided in the plea agreement); *Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 454 (1st Cir. 1963) (applying collateral estoppel rules to § 5 of the Clayton Act, and restricting its scope to questions "'distinctly put in issue and directly determined'"); *In re Homestore.com, Inc.*, CV 01-11115 RSWL (CWx), 2011 WL 291176, at *3 (C.D. Cal. Jan. 25, 2011) (the Defendant's criminal guilty plea for securities violations could not be used by plaintiff to establish the Defendant's civil liability for securities claims, because it did not meet "all of the criteria that must be satisfied to enable Plaintiff to utilize the collateral estoppel doctrine" where the plea agreement bore only on issue of liability, and "did not address all the required elements in Plaintiff's [civil] claim, such as reliance or economic loss"); Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), as amended in 1980; ABA Model Jury Instructions in Civil Antitrust Cases, G-24 (2005) (modified); Fed. R. Evid. 403 (excluding evidence, among other things, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . ."); Fed. R. Evid. 608 (limiting character evidence).

**DPP's Argument re Disputed Instruction No. 31A: Limited Purpose of Guilty Pleas in This Case Offered by Defendants**

Defendants attempt to artificially circumscribe the effect of their guilty pleas by asking the Court to instruct the jury, "The guilty plea of one Defendant cannot be used against any other Defendant *for any purpose whatsoever*." (Emphasis added). That is not the law. DPPs agree that the jury should be instructed that, in determining each Defendants' culpability, "you should consider only the evidence about that particular Defendants' statements and conduct." Disputed Instr. No. 23: Participation and Intent (Offered by DPPs). But that does not mean that a guilty plea by one Defendant cannot be used against another at trial for *any* purpose. Defendants' rigid construction of their pleas is both impractical and unrealistic.

Defendants' admissions of criminal price-fixing establish the existence of and their participation in a price-fixing conspiracy. Their guilty pleas are party admissions and probative of DPPs' allegation that there was a conspiracy that restrained U.S. trade in the relevant products. Telling the jury to view the pleas in strict isolation would impose an artificial constraint given the admissions of illegal conduct in furtherance of the same conspiracy. *See Cont'l Ore v. Union Carbide*, 370 U.S. 690, 698-99 (1962) ("[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.").

The pleas may be properly used against non-pleading and pleading Defendants, for instance to cross-examine a witness who asserts the market was competitive or that his company did not price fix based on an agreement or understanding with other companies. *See U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 891-93 (D.C. Cir. 2010) (admission of antitrust guilty plea in *qui tam* suit against other defendants who were not the co-conspirators noted in the plea and despite their contention that admitting the plea "would improperly impute" the pleading company's conduct to them). There will be no unfair prejudice if the Court instructs the jury to assess whether each Defendant is liable only by reference to the evidence of what that Defendant said and did. *See* DPPs' Disputed Instr. No. 23: Participation and Intent.

Defendants' proposed instruction depends on the flawed position that simply because one Defendants' guilty plea does not have estoppel effect as to another Defendants' civil liability, that plea

is usable at the civil trial only against the pleading Defendant. But each plea tends to make the conspiracy more probably and is relevant to DPPs' claims against all alleged co-conspirators and may be fairly used at trial. In *SEC v. Hilsenrath*, Judge Alsup held that a guilty plea in a criminal securities fraud case was admissible as evidence of violation in a parallel civil suit. Though the plea could not be given full preclusive effect because it covered a more limited time period, it was "still extremely probative as a party admission and evidence." No. C 03-03252, 2008 WL 2225709, at *4 (N.D. Cal. May 29, 2008). Another court noted that the guilty pleas of two executives "would likely have been probative on one or more issues relevant to" plaintiffs' claims under the federal securities laws, had the claims not been settled, even though the pleas were not to securities fraud. *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 504-05 (W.D. Pa. 2003). Estoppel effect, relevancy and probative value should not be conflated.

Defendants also cite a series of criminal cases in support of their proposed instruction, but those cases involve a constitutionally-based criminal rule that "safeguards the criminal Defendants' right to a fair trial by preventing the jury from 'infer[ring] that the defendant on trial is more likely to be guilty' simply because the Defendants' co-conspirator was convicted." *United States v. Sitzmann*, 893 F.3d 811, 830 (D.C. Cir. 2018) (citing *United States v. Johnson*, 26 F.3d 669, 677 (7th Cir. 1994)); *see also Bisaccia v. Attorney Gen. of State of N.J.*, 623 F.2d 307, 312 (3d Cir. 1980) ("We ground this conclusion on the concept of fundamental fairness inherently required in every criminal trial."). The trial here, of course, does not implicate Defendants' Sixth Amendment rights. The rule they rely on therefore does not apply.

DPPs do not object to the second-to-last paragraph of Defendants' proposed instruction, which, except for a single clause, is identical to a paragraph in DPPs' proposed instruction regarding Defendants' guilty pleas. (*See* Disputed Instr. No. 31.) DPPs do object, however, to the second and final paragraphs of Defendants' instruction, which contains language slanted in their favor—*e.g.*, the jury would be informed that the guilty pleas do not tend to show "a price-fixing agreement existed at any time not covered by the specific terms of the plea agreement," and "you may not find the Defendants liable in this case." More neutral language is more appropriate.

### Defendants' Brief on Disputed Instruction No. 31A Re Limited Purpose of Guilty Pleas In This Case

Whether the guilty pleas and related evidence should be introduced at trial is the subject of two motions in limine.  If this evidence is introduced, the law requires that the jury is told the limited purpose for which it may use this evidence.  Defendants' proposed instruction does this.

Indeed, the Ninth Circuit and other courts have long made clear that guilty pleas, if admitted at all, are only admissible for certain purposes—but not others—and that under the Federal Rules of Evidence, "[i]f the court admits evidence that is admissible against a party or for a purpose — but not against another party or for another purpose — the court, on timely request, *must* restrict the evidence to its proper scope and *instruct the jury accordingly*."  Fed. R. Evid. 105.  *See United States v. Halbert*, 640 F.2d 1000, 1006-07 (9th Cir. 1981) (finding error where court failed to instruct the jury that evidence of co-conspirator's guilty plea "can be used only to assess credibility" of the witness, and for failing to tell the jury "in unequivocal language that the plea may not be considered as evidence of a defendant's guilt."); *United States v. Harris*, 738 F.2d 1068, 1071-72 (9th Cir. 1984) (same); *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (approving limiting instruction that the conviction of one defendant "could not be used against any other defendant for any purpose whatever"); *United States v. Gullo*, 502 F.2d 759, 761 (3d Cir. 1974) (as a general rule, "evidence of a guilty plea by a co-conspirator is not admissible"); *United States v. Newman*, 490 F.2d 139, 143 (3d Cir. 1974) ("guilty pleas and convictions of codefendants are not admissible to demonstrate the guilt of defendants"); *United States v. Werme*, 939 F.2d 108, 114 (3d Cir. 1991) ("Because evidence of a co-conspirator's guilty plea is extremely prejudicial to the defendant on trial absent [a limiting] instruction, compliance with the mandatory duty imposed by Rule 105 is particularly important."); *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (guilty pleas of coconspirators may only be admitted to assess the witnesses' credibility and must be accompanied by "a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witnesses' credibility"); Fed. R. Evid. 403 (excluding evidence "if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury"); Fed. R. Evid. 608 (limiting character evidence).

DPPs do not propose any alternative instruction on this topic.  Because the law requires that the jury is told the limited purpose for which it may use evidence related to the guilty pleas, the Court should adopt Defendants' proposed instruction.

**Disputed Instruction No. 32 Re Credibility of Employee Witnesses of Corporations Who Pled**

**Guilty Offered by DPPs**

You have heard evidence the following corporations have pled guilty to violating the United States' antitrust laws: ELNA, Matsuo, Holy Stone, NCC, Nichicon, NEC TOKIN, Rubycon, and Hitachi. The guilty pleas are to crimes that are felonies. A corporation cannot itself be a witness and speaks through its officers, employees and other agents. As a result, you can treat denials of guilt by employee-witnesses from those companies as less credible than it would be in the absence of the guilty pleas.

*Authority*: Fed. R. Evid. 609; *Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.*, No. 01 CIV. 3796(PKL), 2005 WL 1026515, at *8 (S.D. N.Y. May 2, 2005) (reasonable inference that CEO was "'directly connected to the underlying criminal act' discussed in the Information, and the conviction reflects on his credibility"); *Stone v. C.R. Bard, Inc.*, No. 02 CIV 3433 WHP, 2003 WL 22902564, at *2-4 (Rule 609 allows use of corporation's felony conviction to impeach corporation's vicarious testimony); *Hickson Corp. v. Norfolk Southern Ry. Co.*, 227 F. Supp. 2d 903, 907-08 (E.D. Tenn. 2002), *aff'd* 124 Fed.Appx 336 (6th Cir. 2005) (corporation can be a vicarious witness and Rule 609 allows the use of a corporation's felony conviction to impeach the corporation's vicarious testimony); *see also United States v. Trenton Potteries Co.*, 273 U.S. 392, 404-05 (1927).

**DPPs' Proposed Jury Instruction No. 32: Guilty Pleas of Corporations—Employee-Witnesses**

[Defendants object to this instruction in its entirety]

**DPP's Argument re Disputed Instruction No. 32: Credibility of Employee Witnesses of Corporations Who Pled Guilty Offered by DPPs**

DPPs' instruction would prevent confusion arising from the distinction between the Defendants and their testifying executives or employees. DPPs' instruction would ensure the jury understands that a corporation's guilty plea may bear on the credibility of its employees as witnesses. Otherwise, the jurors may not understand that an agent of a corporation speaks for the corporation and, consequently, that the credibility of an agent's testimony should be considered in the light of its employer's binding admissions of guilt.

Just as Ninth Circuit Model Instruction 4.2 states that a corporation "can only act through its employees, agents, directors, or officers," DPPs' instruction states that a corporation "speaks through its officers, employees and other agents." Further, DPPs' instruction appropriately clarifies that the jury may treat a *denial* of wrongdoing by an employee of a convicted company as less credible than the denial would be absent the conviction. *See* Fed. R. Evid. 609(a)(1)(A) (providing that a witness in a civil case may be impeached based on his past felony conviction).

Any prejudice to Defendants from this instruction is not unfair, as the confessed crimes involve the business conduct at issue in this trial. *See, e.g.*, *Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.*, No. 01 CIV. 3796 (PKL), 2005 WL 1026515, at *8 (S.D.N.Y. May 2, 2005) (recognizing reasonable inference that CEO was "'directly connected to the underlying criminal act' discussed in the Information, and the conviction reflects on his credibility.") (citation omitted); *Stone v. C.R. Bard, Inc.*, No. 02 CIV 3433 WHP, 2003 WL 22902564, at *2-4 (S.D.N.Y. Dec. 8, 2003) ("Any other result would permit [defendant], through its agent . . . , to put its credibility at issue through testimony about its alleged stellar reputation in the industry, without an opportunity for plaintiffs to impeach that credibility.").

The jury should receive DPPs' instruction because it will be helpful in an otherwise confusing area.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Defendants' Brief on Disputed Instruction No. 32:
## Credibility of Employee Witnesses of Corporations Who Pled Guilty

Defendants oppose DPPs' proposed instruction, which would instruct the jury that it "can deem testimony of employee-witnesses from [Defendants that pled guilty] less credible than it would be in the absence of the guilty pleas," as unnecessary, unfairly prejudicial to Defendants, and counter to Federal Rule of Evidence 609.

First, DPPs' Proposed Jury Instructions Nos. 12 and 13, adapted from the Ninth Circuit's Model Civil Jury instructions and to which Defendants propose only a minor adjustment, suitably instruct the jury regarding the credibility of witnesses. Following the terms of Rule 609, Instruction No. 13 tells the jury it may consider evidence that a <u>witness</u> (not his or her employer) has been convicted of a crime in deciding whether to believe the witness and how much weight to give his or her testimony. Instruction No. 12 informs the jury that it may consider, among other things, "the witness's interest in the outcome of the case," "the witness's bias or prejudice," and "any other factors that bear on believability." These instructions adequately inform the jury of their right to draw inferences about the credibility of witnesses employed by a defendant that pled guilty, and does so without unnecessarily prejudicing the jury against all witnesses put forth by those defendants. There is no reason to deviate from these model instructions.

Second, DPPs' proposed instruction runs counter to the purpose of Rule 609 and would cause significant and unfair prejudice to Defendants. The "underlying rationale" behind Rule 609 is that "the truth-telling oath means less to someone who has committed a felony." *Cartwright v. City of Chicago*, 2013 WL 3984434, at *4 (N.D. Ill. Aug. 2, 2013); *see also U.S. v. Figueroa*, 2016 WL 126369, at *2 (D.N.J. Jan. 11, 2016) ("The evident rationale of Rule 609(a)(1)(B) is that commission of a felony-grade offense bespeaks a willingness to disregard social norms, and therefore bears on the likelihood that a defendant would testify truthfully."). This rationale does not apply to employees—like many of those who will testify at trial on behalf of Defendants that pled guilty—who played no role in the conduct for which those Defendants pled guilty and had no knowledge of that conduct until one or more governments began their investigations, if ever. For this reason, the Third Circuit rejected the

theory DPPs set forth in their proposed instruction, holding "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal act." *Walden v. Georgia-Pacific Cop.*, 126 F.3d 506, 24 (3rd Cir. 1997).

The unfair prejudice is amplified by DPPs' attempt to apply the instruction to witnesses that work for companies that <u>did not</u> plead guilty. For example, the instruction refers to "Holy Stone" as one of the corporate defendants that pled guilty. In fact, it was non-party Holy Stone Holdings that pled guilty, for conduct that parent company Holy Stone Enterprise Co. Ltd. and its U.S. subsidiary Milestone Global Technology, Inc. did not learn of until various regulatory agencies began their investigations. Indeed, Holy Stone Enterprise's and Milestone's lack of awareness of the alleged conduct is a major component of their defense in this action. DPPs' proposed instruction would not only eviscerate that defense by (falsely) telling the jury that these entities pled guilty, too, but would unduly trash the credibility of witnesses for those defendants.

None of DPPs' cited cases compel a different result. DPPs cite one Supreme Court case that predates the Federal Rules of Evidence and does not support DPPs' overly broad instruction. *U.S. v. Trenton Potteries Co.*, 273 U.S. 392, 404-05 (1927) (trial court may properly permit the question of whether a witness knew the corporation he worked for pled guilty "if … it was preliminary to showing his implication in the supposed offense, and thus affecting his credibility."). The others are out-of-circuit trial court decisions not binding on this Court. Of those, one was called into question by the reviewing appellate court. *See Hickson Corp. v. Norfolk Southern Ry. Co.*, 124 Fed. App'x 336, 343 (6th Cir. 2005) (refusing to decide whether the admission of a corporate conviction to impeach a corporate witness under Rule 609 was proper where the conviction was properly admitted under Rule 405). Another only admitted the conviction to impeach a witness where the witness was "directly connected to the underlying criminal act." *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2005 WL 1026515 at *8 (S.D.N.Y. May 20, 2005).

**Disputed Instruction No. 33 Re Lack of Indictment and Guilty Pleas of Certain Co-Conspirators**

**Offered by DPPs**

Certain alleged co-conspirators were not indicted by the Department of Justice. The fact that certain alleged co-conspirators were not criminally indicted is not proof that they did not engage in the alleged illegal conduct. There are many reasons why a co-conspirator may not be indicted, including limited resources and the prosecutorial discretion of the Department of Justice. You should decide whether a defendant is liable based on the evidence you have heard at trial and not speculate as to any reason or basis for the Government not indicting an alleged co-conspirator. The fact that certain co-conspirators were not criminally indicted does not necessarily mean that they did not engage in the alleged illegal conduct.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664-65 (7th Cir. 2002).

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 33 Re Lack of Indictment and Guilty Pleas of Certain
Co-Conspirators Offered by Defendants**

Certain Defendants were not indicted by the Department of Justice, and you may consider that fact in your deliberations. But the fact that certain Defendants were not criminally indicted does not necessarily mean that they did not engage in the alleged illegal conduct.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664-65 (7th Cir. 2002).

### DPP's Argument re Disputed Instruction No. 33: Lack of Indictment and Guilty Pleas of Certain Co-Conspirators

Defendants that did not plead guilty to criminal price fixing can be expected to point to the absence of a conviction or indictment to argue to the jury that they are different from the convicted companies and did nothing wrong. With DPPs' instruction, jurors will know that a government decision not to prosecute a company criminally does not establish the company acted lawfully. "Indeed, Sherman Act civil actions may be brought in cases in which criminal prosecution would not have been justified." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 607 (N.D. Cal. 2010) (quotation marks, citation, and alterations omitted).

Criminal price fixing carries a higher burden of proof then the claim here, and factors other than actual innocence may have influenced the Department of Justice not to charge an entity. Among other things, the DOJ exercises prosecutorial discretion in light of the higher burden of proof and other factors, and must allocate limited resources based on many competing priorities. Also relevant here is that DOJ passed up indicting certain alleged co-conspirators after having already committing significant resources to prosecuting this cartel. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664-65 (7th Cir. 2002) (rejecting defendants' argument that "because the Justice Department has not moved against the alleged HFCS price-fixing conspiracy, there must not have been one. The . . . Department has limited resources" and may have decided not to press charges based on the calculation that, with multiple executives imprisoned for fixing prices of a related product, "there was little to be gained, so far as securing greater compliance with the Sherman Act"); *see also In re Vitamins Antitrust Litig.*, No. MISC 99-197 (TFH), 2000 WL 1475705, at *18 (D.D.C. May 9, 2000) ("[T]he Court agrees with plaintiffs that the criminal guilty pleas do not establish boundaries for this civil litigation"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 YGR, 2014 WL 309192, at *14 (N.D. Cal. Jan. 21, 2014) ("The reasonable doubt standard faced by the government makes criminal guilty pleas in antitrust cases . . . at once a strong indicator of the existence of a conspiracy but a weak indicator of [its] scope").

"Thus, a civil action may succeed even if the government does not show that the violation constituted a criminal act." *TFT-LCD*, 267 F.R.D. at 607-08 (quotation marks, citation, and alterations omitted). For Defendants to suggest the opposite—that DPPs cannot succeed *because* the government

has not attempted a criminal prosecution—is misleading and necessitates a jury instruction. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.), ECF No. 8543 at 28. Defendants' anticipated argument also invites the jury to apply the wrong burden of proof—the jury may mistakenly believe that simply because a Defendant was not charged, then that Defendant must not have fixed prices. DPPs' proposed instruction builds on the one delivered in *TFT-LCD*, including by instructing the jury not to speculate about why a Defendant was not indicted and clarifying that the lack of an indictment is not proof that a Defendant did not engage in the misconduct alleged. DPPs' instruction will promote proper consideration of the evidence and should be given in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendants' Brief on Disputed Instruction No. 33:**
**Lack of Indictment and Guilty Pleas of Certain Co-Conspirators**

As written, DPPs' Proposed Jury Instruction No. 33 makes prejudicial suggestions to the jury regarding matters wholly unsubstantiated by the facts of this case.  Defendants propose certain line edits to streamline and simplify the instruction, making it consistent with instructions given in other civil antitrust cases in this Circuit, in particular, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013).

DPPs undermine their purported instruction "not to speculate as to any reason or basis for the government not indicting an alleged co-conspirator" by suggesting two such rationales (limited resources and prosecutorial discretion) right in the instruction itself.  The same basic instruction is better achieved through Defendants' suggested language, which merely reminds the jurors that "the fact that certain Defendants were not criminally indicted does not necessarily mean that they did not engage in the alleged illegal conduct."  Defendants' language has precedent in this Circuit and is appropriate as, unlike DPPs' language, Defendants' does not suggest the very types of speculation that it is purportedly discouraging the jury from doing.

### Disputed Instruction No. 34 Re Fifth Amendment Adverse Inference Offered by DPPs

The Fifth Amendment of the United States Constitution affords every person the right to decline to answer any questions if he or she believes that the answers may tend to incriminate them. In this case, during the discovery period, certain witnesses chose to assert the Fifth Amendment rather than answer questions that were asked of them. In these instances, you shall draw an inference that had the witness answered the question, it would have implicated him and his employer in conduct in violation of the antitrust laws, provided that you find that there is some other evidence that corroborates the inference.

Any inference you draw should be based upon all of the facts and circumstances in this case as you may find them.

*Authority*: *SEC v. Jasper*, No. 5:07-cv-06122-JW (N.D. Cal. Apr. 20, 2010), *aff'd* 678 F.3d 1116 (9th Cir. 2012); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7(B) Instr. 1 & 2 (2016); *see also Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910-11 (9th Cir. 2008); *Iantosca v. Benistar Admin. Services, Inc.*, 567 Fed.App'x 1, 6-7 (1st Cir. 2014) (approving adverse inference instructions where two corporate officers invoked the Fifth Amendment); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07-1827 SI, 2009 WL 4016124 at *1 (N.D. Cal. Nov. 9, 2009) ("Nothing in this Order impairs or forecloses plaintiffs' right to seek any relief otherwise permitted by law, including but not limited to an adverse inference instruction based on a deponent's assertion of his or her Fifth Amendment right against self-incrimination").

1

## DPPs' Proposed Jury Instruction No. 34: Fifth Amendment Adverse Inference

[Defendants object to this instruction in its entirety]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DPP's Argument re Disputed Instruction No. 34: Fifth Amendment Adverse Inference Offered by DPPs**

During the parties' meet and confer discussions, Defendants raised no objections to the language of DPPs' proposed jury instruction concerning the jury's ability to draw a negative inference from a witness asserting the Fifth Amendment privilege to refuse to respond to questions. Instead, Defendants objected that this instruction is unnecessary or impermissible *in toto*, asserting that DPPs have neither identified any admissible Fifth Amendment testimony nor have they provided a legal basis for an adverse inference instruction.[4] Both assertions are without merit.

Defendants' first assertion—about identifying admissible Fifth Amendment testimony—places the cart before the horse. It is only at trial that DPPs will offer specific Fifth Amendment testimony into evidence. The Court can then assess the admissibility of the proffered testimony based on the facts and circumstances before it, and upon the factual and legal arguments of the parties. Defendants may believe they will successfully oppose the introduction of all such testimony, but for present purposes, there is no a basis upon which the Court should refuse a proposed jury instruction for which Defendants raise no objections to the language itself.

Defendants' second assertion—that there is no legal basis for a Fifth Amendment adverse inference instruction—is wrong. The Supreme Court instructs that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). It is within the district court's discretion to allow the jury to draw such an adverse inference. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008). In exercising that discretion, the court should "analyz[e] each instance where the adverse inference was drawn, or not drawn, on a case-by-case basis under the microscope of the circumstances of that particular civil litigation . . . . In each particular circumstance, the competing interests of the party asserting the privilege, and the party against whom the privilege is invoked must be carefully balanced." *S.E.C. v. Jasper*, 678 F.3d 1116, 1125 (9th Cir.

---

[4] Should Defendants raise for the first time any objections to the language of this instruction in the current round of briefing—which will be exchanged just hours before it must be filed—DPPs respectfully request an opportunity to respond.

2012) (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)). An adverse inference may be drawn "when there is independent evidence of the fact about which the party refuses to testify." *Nationwide*, 541 F.3d at 912. Contrary to Defendants' assertion, the trial court should use its discretion whether to permit a jury to draw adverse inferences from Fifth Amendment testimony.

To the extent Defendants were asserting that DPPs have not provided a legal basis to draw an adverse inference from any specific Fifth Amendment testimony that DPPs may use as evidence, that too is placing the cart before the horse. The law governing Fifth Amendment adverse inferences instructs that the court should conduct a balancing test for the proffered testimony based on the circumstances of each case. That kind of analysis cannot be done prophylactically or ad hoc without regard to other evidence and issues in the case. Such an analysis should await trial when there is a record before the Court upon which it can carefully consider whether the jury may choose to draw an adverse inference from any specific instance of Fifth Amendment testimony.

The Court should give a Fifth Amendment adverse inference instruction for another reason. The individuals who asserted the Fifth Amendment at their depositions were high-level executives who wielded managerial power. They were officers, directors and managing agents of Defendants or their co-conspirators and their testimony is admissible. Fed. R. Civ. P. 32(a)(3). The jury should be instructed that it can draw adverse inferences from their Fifth Amendment testimony. *Iantosca v. Benistar Admin. Services, Inc.*, 567 Fed.App'x 1, 6-7 (1st Cir. 2014) (approving adverse inference instructions where corporate officers invoked the Fifth Amendment).

For the above reasons, and those discussed in DPPs' oppositions to Defendants' motions *in limine* (*see* MDL Dkt. Nos. 1043, 1069; DPPs' Opp. To Defs' MIL No. 3), Defendants' challenge to DPPs' proposed Instruction No. 34 should be rejected, particularly given that Defendants raised no objections to the language of the proposed instruction.

**Defendants' Brief on Disputed Jury Instruction No. 34:**
**Fifth Amendment Adverse Inference**

As explained in Defendants' Motion in Limine No. 3, no Fifth Amendment deposition testimony should be introduced at trial because this evidence is of low probative value, unfairly prejudicial, misleading, cumulative, and cannot be imputed to most or all Defendants.  *See In re 650 Fifth Ave. & Related Properties*, 2019 WL 3756033, at *16 (2d Cir. Aug. 9, 2019) (district court erred by admitting "parade of videotapes … strategically spread out across multiple days of trial" that were "substantially more prejudicial and redundant than probative").  And even if the Court decides that Fifth Amendment **testimony** is admissible, the Court need not—and should not—give an adverse inference instruction.  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000) (courts must "analyz[e] each instance where the adverse inference was drawn, or not drawn, on a case-by-case basis under the microscope of the circumstances of that particular civil litigation..").

The specific circumstances of this case weigh strongly against adverse inference instructions.  As an initial matter, the Fifth Amendment invocations cannot be imputed to most or all Defendants under the factors set forth in *LiButti v. U.S.*, 107 F.3d 110 (2d Cir. 1997); *see In re TFT-LCD Antitrust Litig.*, No. 07-md-1827 (N.D. Cal.) (Illston, J.), Dkt. 5597 (granting Toshiba's motion to exclude adverse inferences from Fifth Amendment deposition of its former employee).  And because DPPs asked overbroad questions at the depositions, the adverse inferences are untethered to any specific underlying facts in this case.  *See Ullman-Briggs, Inc. v. Salton/Maxim Housewares, Inc.*, 1996 WL 535083, at *17 (N.D. Ill. Sept. 17, 1996) (precluding adverse inference instruction where counsel asked "questions in such a way as to be able to create the most damaging testimony through negative inference, safe from any contradiction by the witness no matter what the actual facts").

If a Fifth Amendment instruction becomes necessary, Defendants object in full to DPPs' proposed instruction.  It badly misstates the law by broadly commanding that the jury "***shall*** draw an inference that had the witness answered the question, it ***would have implicated him and his employer in conduct in violation of the antitrust law***," whereas the Ninth Circuit case cited by DPPs affirmed the much more careful instruction that "in civil cases, you are ***permitted, but not required***, to draw the

inference that the withheld information ***would have been unfavorable*** for the defendant." *SEC v. Jasper*, 678 F. 3d 1116, 1125 (9th Cir. 2012) (emphasis added).[5]

Defendants reserve the right to challenge the admissibility Fifth Amendment testimony, and adverse inference instructions therefrom, on a question-by-question basis through the deposition designation and objection process. *See Jasper*, 678 F.3d at 1127-28 (affirming district court that "dealt with the evidence of invocation of the Fifth Amendment privilege at a high level of generality, and it instructed the jury to do the same" in part because Jasper did not bring question-by-question objections at the district court level). But if the Court is inclined to give an adverse inference instruction, Defendants request that it be the narrowly tailored instruction approved by the Ninth Circuit in *Jasper*: "in civil cases, you are permitted, but not required, to draw the inference that the withheld information would have been unfavorable for the defendant. Any inference you may draw should be based upon all of the facts and circumstances in this case as you find them." *Id.* at 1125.

---

[5] DPPs cite—but materially deviate from—the ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7(B) Instr. 1 & 2 (2016) ("you ***may*** decide whether ***or not*** to infer that this [testimony or answer] would have been ***unfavorable*** to the [party or witness identified with the party]" (emphasis changed; brackets in original)).

**Disputed Instruction No. 35 Re Causation and Injury Offered by DPPs**

If you find that Defendants have violated the antitrust laws, then you must decide if DPPs are entitled to recover damages from Defendants.

The three elements of injury and causation are:

(1)     DPPs were in fact injured as a result of Defendants' alleged violations of the antitrust laws;

(2)     Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury; and

(3)     DPPs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." Under the Sherman Act, a plaintiff suffers an injury in fact as of the time it pays an illegal overcharge. For DPPs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Defendants' alleged violations of the antitrust laws. That is, DPPs must only prove that that they paid more for an aluminum, film and tantalum capacitors because of Defendants' collusive conduct. Proving the fact of injury does not require DPPs to prove the dollar value of their injury. It requires only that DPPs prove that they were in fact injured by Defendants' alleged antitrust violations. If you find that DPPs have established that they were in fact injured, you may then consider the amount of DPPs' damages.

DPPs must also offer evidence that establishes by a preponderance of the evidence that Defendants' alleged illegal conduct was a material cause of DPPs' injury. That is, Defendants' antitrust violations were a substantial factor in causing DPPs' injury. This means that DPPs must have proved that some damage occurred to them as a result of Defendants' alleged antitrust violations, and not some other cause. DPPs are not required to prove that Defendants' alleged antitrust violations were the sole cause of their injury; nor need DPPs eliminate all other possible causes of injury. It is enough if DPPs have proved that the alleged antitrust violation was a material cause of their injury.

Finally, DPPs must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If DPPs' injuries were caused by paying higher prices, a reduction in competition, or acts that would lead to a reduction in competition, then DPPs' injuries are antitrust injuries. On the other hand, if DPPs' injuries were caused

by heightened competition or the competitive process itself, then DPPs' injuries are not antitrust injuries and DPPs may not recover damages for those injuries under the antitrust laws.

In summary, if DPPs can establish that they were in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of their injury, and that their injury was the type that the antitrust laws were intended to prevent, then DPPs are entitled to recover damages for the injury to their business or property.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 1 and 4; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114, n. 9 (1969) *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1215 (9th Cir. 1986) (approving instruction that antitrust violation was a "substantial factor" in causing plaintiffs' injury).

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 35 Re Causation and Injury Offered by Defendants**

If you find that Defendants have violated the antitrust laws, then you must decide if DPPs are entitled to recover damages from Defendants. To recover damages, DPPs bear the burden of proving, under Section 4 of the Clayton Act, that "all or nearly all" class members "suffer[ed] a cognizable injury."

DPPs are entitled to recover damages for an injury to its business or property if they can establish three elements of injury and causation:

(1)     All or nearly all DPPs were in fact injured as a result of Defendants' alleged violations of the antitrust laws;

(2)     Defendants' alleged illegal conduct was a material cause of all or nearly all DPPs' injury; and

(3)     DPPs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For DPPs to establish that they are entitled to recover damages, they must prove that all or nearly all DPPs were injured as a result of Defendants' alleged violations of the antitrust laws. That is, DPPs must prove that each purchaser within the class suffered at least some injury as the result of Defendants' alleged antitrust violation.  If you find that a member of the class did not pay higher prices due to the conspiracy or paid no overcharge, then that purchaser was not injured under the antitrust laws. Proving the fact of injury does not require DPPs to prove the dollar value of their injury. It requires only that DPPs prove that all or nearly all DPPs were in fact injured by Defendants' alleged antitrust violations. If you find that DPPs have established that all or nearly all DPPs were in fact injured, you may then consider the amount of DPPs' damages.

DPPs must also offer evidence that establishes by a preponderance of the evidence that Defendants' alleged illegal conduct was a material cause of DPPs' injury. This means that DPPs must have proved that some damage occurred to them as a result of Defendants' alleged antitrust violations, and not some other cause. DPPs are not required to prove that Defendants' alleged antitrust violations

were the sole cause of their injury; nor need DPPs eliminate all other possible causes of injury. It is enough if DPPs have proved that the alleged antitrust violation was a material cause of their injury.

Finally, DPPs must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If DPPs' injuries were caused by a reduction in competition, or acts that would otherwise harm consumers, then DPPs' injuries are antitrust injuries. On the other hand, if DPPs' injuries were caused by heightened competition or the competitive process itself, or by acts that would benefit consumers, then DPPs' injuries are not antitrust injuries and DPPs may not recover damages for those injuries under the antitrust laws.

In summary, if DPPs can establish that all or nearly all DPPs were in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of their injury, and that their injury was the type that the antitrust laws were intended to prevent, then DPPs are entitled to recover damages for the injury to their business or property.


*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 1 and 4; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114, n. 9 (1969).

1

**DPP's Argument re Disputed Instruction No. 35: Causation and Injury**

2   *Overcharge is injury.* DPPs are injured if they pay an illegal overcharge. Defendants would

3   leave the jury to speculate whether an overcharge is an injury to "business or property." The law does

4   not permit such speculation. Under the Clayton Act and Supreme Court precedent, direct purchasers are

5   injured when they pay "money wrongfully induced," and their "damages are established by the amount

6   of the overcharge." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972); *see also*

7   *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 491 (1968) ("the victim of an

8   overcharge is damaged within the meaning of § 4 to the extent of that overcharge"); *Chattanooga*

9   *Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906) ("person whose property is

10   diminished by a payment of money wrongfully induced is injured in his property"). The overcharge is

11   "measured by the difference between the price paid and what the market or fair price would have been"

12   absent violation. *Hanover Shoe*, 392 U.S. at 489. DPPs suffering overcharges on capacitors caused by

13   price fixing means that DPPs suffered injury, and DPPs are entitled to recover "the full amount of the

14   overcharge." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724 (1977).

15   *Injury Through Overcharges.* Overcharges as a result of an antitrust violation are sufficient to

16   establish the kind of injury the antitrust laws are designed to prevent. *Hanover Shoe*, 392 U.S. at 489;

17   *Illinois Brick*, 431 U.S. at 724. Defendants' suggestion, "reduction in competition," does not tell the

18   jury how to judge whether injury is tied to anticompetitive harm.

19   "*Substantial factor.*" Defendants' conduct need not be the sole cause of DPPs' injuries, but only

20   a "substantial factor." *Blanton v. Mobil Oil Corp.*, 721 F.2d at 1215.

21   *Defendants' Additions: "All or nearly all"* and *"Each purchaser must prove . . . some injury."*

22   Repeatedly throughout this instruction, Defendants add that DPPs must prove that "all or nearly all

23   class members" were injured, or "each purchaser" was injured. As DPPs have shown above,

24   Defendants cite neither case law nor a model jury instruction that directs a jury to find injury to "all or

25   nearly all" class members. *See* DPPs' Argument re Instr. 21.The Ninth Circuit has held that class

26   certification is appropriate so long as a class does not contain "large numbers of class members who

27   were never *exposed* to the challenged conduct to begin with" and "even a well-defined class may

28

inevitably contain some individuals who have suffered no harm as a result of a Defendants' unlawful conduct." *Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1136 (9th Cir. 2016). This Court noted that this, at most, presents an issue as to damages. *See Capacitors Class Op*. at *9. Further, in this case, as DPPs' experts measured damages on an aggregate basis, whether any class members were injured would affect only the allocation of damages, not the total liability of the conspirators.

*Second*, Defendants again try to shoehorn the issue of predominance into the findings of the jury. As DPPs have briefed, this is a procedural consideration for the Court—not for the jury. *See* DPPs' Argument re Instr. 21. The jury's task is to apply the facts to the law as given, and the jury should not be saddled with making an unnecessary legal determination.

None of the cases Defendants cite instructed a jury to find injury as to "all or nearly" all class members. Rather the cases all arose in other procedural contexts, such as summary judgment. *See*, *e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986) (summary judgment); *Rebel Oil*, 51 F.3d at 1435 (same); *In re eBay Seller Antitrust Litig*., No. C 07-01882, 2010 WL 760433, at *14 (N.D. Cal. Mar. 4, 2014) (granting summary judgment where plaintiffs failed to adduce "any actual proof of antitrust injury caused by eBay's alleged anticompetitive acts—on an individual or a classwide level."); *In re New Motor Vehicles Canadian Exp. Antitrust Litig., 632 F. Supp. 2d 42, 55 (D. Me. 2009) (summary judgment).[6] Defendants also cite class certification cases. *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig*., 267 F.R.D. 291, 311 (N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig*., No. C 07-01819-CW, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008).

---

[6] *New Motor Vehicles*, which in dicta suggested proof would be required as to *all* class members, conflicts with Ninth Circuit precedent and is no longer good law. *See Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 276 (2014) (permitting certification even where evidence may not support recovery as to some class members).

1

**Defendants' Brief on Disputed Instruction No. 35:**
**Causation and Injury**

2

3
      Defendants' proposed instruction on "Causation and Injury" should be adopted for the same

4
reasons set forth in the argument supporting Defendants' proposed instruction on the "Overview of

5
Antitrust Claims."

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Stipulated Instruction No. 36 Re Trade Associations

In this case, DPPs claim that capacitor manufacturers participated in industry meetings and used those meetings to conspire to fix prices, specifically to control and set the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide.

Businesses that are actual or potential competitors, such as some of the Defendants here, may lawfully form into trade, industry, or professional associations or similar organizations ("trade associations") to advance common interests, and may communicate or meet with one another in furtherance of lawful trade association activities.  The law does not prohibit persons who are otherwise competitors from joining together to carry out lawful and legitimate activities.   For example, trade associations may lawfully keep members informed and hold meetings among their members for topics such as new or changed services, technology, standard practices, or legislation and regulations in the industry.  But members of such organizations who compete with each other are not permitted to use membership in their organizations to restrain competition.

Mere membership in a trade association does not establish liability, even if that association is being used for an illegal purpose.  No inference that the charged conspiracy was formed or existed may be drawn from the mere fact that there is a trade association, that the Defendant was a member of a trade association, or that certain of Defendants' officers/employees attended meetings of the trade association.

Nevertheless, you may consider trade association membership, meetings, and discussions along with all the other evidence, in determining whether a defendant entered into the alleged conspiracy.

The issue you must decide is whether DPPs proved that Defendants used the industry meetings and its challenged practices to conspire to fix prices.

In deciding whether this was an antitrust violation, you are to follow the instructions I have given concerning whether the alleged conduct constituted an illegal conspiracy.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at 54; ABA Model Jury Instructions in Criminal Antitrust Cases (2009) at 103 (Specific Issue Instructions, Instruction 4, Trade Associations); Third Amended Class Action Complaint, at para. 13.

**Disputed Instruction No. 37 Re Statute of Limitations Offered by Defendants**

The statute of limitations for the antitrust laws does not permit recovery of damages for any injuries sustained by DPPs prior to July 18, 2010.

If you find that DPPs suffered injuries spanning both before and after July 18, 2010, then you must apportion the damages between the two periods and you may award damages only for the portion of the injuries suffered after July 18, 2010. When apportioning the damages between the two periods, you should be guided by the same principles I explained to you earlier. That is, you are permitted to make just and reasonable estimates in apportioning DPPs' damages. You are not required to apportion damages with absolute mathematical certainty or precision. However, the apportionment of damages must have a reasonable basis in the evidence. If you find that you cannot apportion damages between the two periods without relying on guesswork or speculation, then you may not award damages at all.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7 Instr. 1.; *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997) ("But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 (1968) (finding that even under the continuing violation theory, a plaintiff is only "entitled to damages for the entire period permitted by the applicable statute of limitations"); *Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986) (holding that a plaintiff's claims were not barred under a continuing violation theory, thus permitting the plaintiff to recover for violations "occurring within four years prior to its filing" the complaint); *LaSalvia v. United Dairymen of Arizona*, 804 D.2d 1113, 1119 (9th Cir. 1986) ("[W]hile plaintiffs may recover for damages they prove were caused by anticompetitive conduct begun before the four-year statutory period under the continuing harm doctrine, their recovery is limited to damages incurred within the four years preceding the filing of the complaint."); *Anzai v. Chevron Corp.*, 168 F. Supp. 2d 1180, (D. Haw. 2001) (reasoning that absent fraudulent concealment or other tolling of the statute of limitations, "there

apparently can be no recovery under federal law for damages over four years old (i.e., over four years prior to ... filing suit).”); *A.M.R. Enterprises v. City of Phoenix*, No. CIV-94-2007-PHX-ROS (BGS), 1997 WL 150104, at *8 (D. Ariz. 1997) (“The [continuing violation] theory saves a claim where the first act is outside the limitations period, but the plaintiff may reach back only as far as the beginning of the limitations period.”).

**DPP's Argument re Disputed Instruction No. 37: Statute of Limitations Offered by Defendants**

Defendants' proposed instruction is incomplete and does not instruct about fraudulent concealment, the discovery rule, or the continuing violations doctrine, all applicable doctrines that toll the statute of limitations. Should the Court instruct the jury on the statute of limitations for DPPs' claims, then the Court should also give Disputed Instructions No. 37A & 38 re the Discovery Rule and Continuing Violations and Fraudulent Concealment respectively. *See* ABA Model Jury Instructions in Civil Antitrust Cases at 331 (2016 ed.) and notes ("If there is an issue of fraudulent concealment, then the fraudulent concealment instruction, at part A.1 of this chapter, should be given"). To do otherwise would mislead the jury into thinking DPPs have no basis to recover on purchases before July 18, 2010.

**Defendants' Brief on Disputed Instruction No. 37 Re Statute of Limitations**

Defendants' proposed jury instruction on the applicable statute of limitations reflects the ABA Model Jury Instruction and the law.  Nonetheless, DPPs objected to the jury instruction in its entirety.  DPPs' objection is meritless, as this instruction is plainly applicable here.

In terms of the statute of limitations, Defendants do not dispute that DPPs timely filed this lawsuit, but Defendants do dispute that DPPs are permitted to seek damages for a twelve-year period preceding the filing of their complaint.  It is black letter law that a plaintiff is only "entitled to damages for the entire period permitted by the applicable statute of limitations."  *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 (1968); *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71 (9th Cir. 1979) ("AMF can recover only for damages caused by forbidden 'overt acts' of the conspirators within the limitations period."); *LaSalvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1119 (9th Cir. 1986) (plaintiffs' "recovery is limited to damage incurred within the four years preceding the filing of the complaint."); *In Beverage Distributors, Inc. v. Olympia Brewing Co.*, 440 F.2d 21, 27 n.8 (9th Cir. 1971) (approving a jury instruction stating that "Now, regardless of how this issue may be determined, a law called the Statute of Limitations limits the period for which plaintiff B.D.I. here can claim violation of the anti-trust law and recover damages therefor to the period of four years preceding the commencement of the present lawsuit."); *Western Shoe Gallery, Inc. v. Duty Free Shoppers*, Ltd. 593 F. Supp. 348, 351 (N.D. Cal 1984) (ruling that a plaintiff "may recover only for damages caused by forbidden 'overt acts' within the limitations period.").  And there is no question that antitrust actions are subject to a four-year statute of limitations. 15 U.S.C. § 15b; *Conmar Corp. v. Mistui & Co.*, 858 F.2d 499, 501 (9th Cir. 1988).  Thus, DPPs can only recover damages for the four-year period that predates the filing of their complaint.  Here, DPPs filed this action in July 2014, so they cannot recover damages prior to July 2010.  But because DPPs seek damages dating back to January 1, 2002, the jury must be properly instructed on the applicable statute of limitations.

During the meet-and-confer regarding jury instructions, DPPs took the position that the doctrine of "government action tolling" based on DOJ's investigation allow them to collect twelve years of damages.  But government action tolling does not extend damages periods beyond the four-year statute

of limitations and the doctrine is inapplicable in this case.  Section 16(i) provides that a government action tolls the statute of limitations for filing a related civil proceeding during the pendency of the government action, and for one year thereafter.  15 U.S.C. § 16(i).  Section 16(i) only extends the time within which an action can be filed and does not extend in any way the time within which DPPs can seek damages.  And government action tolling is not at issue here because Defendants do not dispute that DPPs timely filed their complaint in July 2014, within four years of the alleged harm (and just three months after the related government action began).

To be clear, the only limited exception to the general rule precluding the recovery of damages outside the four-year statute of limitations is fraudulent concealment.  Defendants address DPPs' deficient fraudulent concealment instruction, below.

Moreover, Defendants' proposed jury instruction mirrors exactly the ABA Model Jury Instructions, and reflects jury instructions given by courts in this District.  See ABA Model Jury Instructions in Civil Antitrust Cases, Chapter 7 Instruction 1; In re Korean Ramen Antitrust Litig., Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018).  Accordingly, Defendants' proposed jury instruction is necessary here, where the law limits DPPs' damages to the four-year period preceding the filing of their complaint.  The statute of limitations jury instruction should be given as Defendants propose.

### Disputed Instruction No. 37A Re Statute of Limitations—Discovery Rule and Continuing Violations Rule Offered by DPPs

There are exceptions which allow DPPs to recover for overcharges from before July 18, 2010. Even though generally, in the antitrust context, the four year limitation period starts to run when a Defendant commits an act that injures a plaintiff's business, a person may not discover their injury until after the purchase of a price-fixed good. Instead, the limitations period would not run until that person knows they have been injured by the price-fixing. Thus, this period does not run until DPPs have actually discovered or in the exercise of reasonable diligence should have discovered, that they have been injured and who caused the injury. This is referred to as the "discovery rule."

The limitations period is also restarted when Defendants or any of their coconspirators inflict continuing and accumulating injury. In price-fixing conspiracy cases that bring about a series of unlawful price-fixed sales over a period of years, each sale of a price-fixed good starts the statute of limitations over again, regardless of whether the purchaser knew about it. This is referred to as the "continuing violations" rule.

DPPs filed this lawsuit on July 18, 2014 and seek to recover for damages resulting from Defendants' and their co-conspirators' unlawful overcharges starting from January 1, 2002, before the four-year period of July 18, 2010. If, by applying the "discovery rule" or the "continuing violations" rule, you find that the statute of limitations was postponed, then DPPs may recover for damages from before July 18, 2010.

### DPP's Argument re Disputed Instruction No. 37A Re Statute of Limitations—Discovery Rule and Continuing Violations Rule Offered by DPPs

DPPs' proposed instruction is essential so the jury knows it can award damages extending earlier than July 18, 2010 should it find facts that establish an exception to the statute of limitations. Two such exceptions are the discovery rule and the continuing violations doctrine. The discovery rule does apply to cases where, as here, the claims are subject to 15 U.S.C. § 5b's four-year statute of limitations:

> Generally, an antitrust cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. As in other areas of the law, in the absence of a contrary directive from Congress this rule is qualified by the discovery rule, which postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured. This principle is based on the general rule that accrual occurs when the plaintiff discovers that he has been *injured* and who *caused* the injury.

*In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). The Ninth Circuit has also held that the discovery rule applies for other causes of action for which 15 U.S.C. § 15b's statute of limitations apply. *See Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001) (applying discovery rule for RICO claims which apply 15 U.S.C. 15(b)'s statute of limitations). It follows that the discovery rule should apply to DPPs' claims here.

DPPs' also request that the Court instruct the jury on the continuing violations doctrine, "which restarts the statute of limitations period each time the defendant commits an overt act." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017); *see Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987). "[E]ach time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act." *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014); *see also In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 291 (4th Cir. 2007) ("Thus, in cases like this one involving allegations of 'a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again.").

DPPs allege and will prove at trial a longstanding continuing conspiracy to fix the prices of capacitors. Those price fixed capacitors were bought by DPPs throughout the Class Period. Instructing the jury regarding the discovery rule and continuing violations doctrine will permit the jury to award damages for injuries incurred before July 18, 2010 based upon the jury's evaluation of the evidence. *See Pre-Filled Propane*, 860 F.3d at 1068 ("the rule prevents companies from agree[ing] to divide markets for the purpose of raising prices, wait[ing] four years to raise prices, then reap[ing] the profits of their illegal agreement with impunity because any antitrust claims would be time barred." (internal quotation marks and citation omitted)).

### Defendants' Brief on Disputed Instruction No. 37A
### Statute of Limitations—Discovery Rule and Continuing Violations

DPPs' proposed jury instruction on the "discovery rule" and "continuing violations" doctrine is not found in any model instruction. And it should not be given because it badly misstates the applicable law and is plainly irrelevant.

First, DPPs' assertion that the statute of limitations does "not run until that person knows they have been injured by the price-fixing" has been explicitly and repeatedly rejected by the Ninth Circuit. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("We do not require a plaintiff to actually discover its antitrust claims before the statute of limitations begins to run."); *see also In re Animation Works Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208–09 (N.D. Cal. 2015) ("Under controlling Supreme Court and Ninth Circuit authority, Plaintiffs' antitrust claims began to accrue at the time of injury."). The "injury rule," not the "discovery rule," applies to Sherman Act claims, such as those DPPs are bringing here. *See Hexcel Corp.*, 681 F.3d at 1060; *In re Animation Works Antitrust Litig.*, 87 F. Supp. 3d at 1208–09. Literally, there is no legal support – or justification – for DPPs' proposed discovery rule jury instruction.

Second, DPPs assert that the "continuing violations" rule allows them to recover damages incurred more than four years before DPPs filed their complaint. DPPs are wrong. Under the continuing violations rule, each overt act in furtherance of a conspiracy starts the running of the statute limitations anew; but the continuing violations rule ***does not*** extend the period within which DPPs may collect damages, meaning four years preceding the filing of the complaint. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 (1968) (finding that even under the continuing violations theory, a plaintiff is only "entitled to damages for the entire period permitted by the applicable statute of limitations"); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189–90 (1997) ("But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."); *LaSalvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1119 (9th Cir. 1986) ("while plaintiffs may recover for damages they prove were caused by anticompetitive conduct begun before the four-year statutory period under the continuing harm

doctrine, their recovery is limited to damage incurred within the four years preceding the filing of the complaint.").

Accordingly, DPPs' proposed instruction that, "[i]f, by applying the 'discovery rule' or the 'continuing violations' rule, you find that the statute of limitations was postponed, then DPPs may recover for damages from before July 18, 2010," is ***not a correct statement of the law***, and cannot be given to the jury.

Even if DPPs had applied the law appropriately, the proposed instruction is irrelevant in any event.  The continuing violations rule and the discovery rule only determine whether DPPs timely filed their claim; they do not relate whatsoever DPPs' claim for an extended damages period.  Here, Defendants do not dispute that DPPs timely filed their lawsuit within four years of the last alleged overt act.  Accordingly, neither rule is at issue here, and providing DPPs' proposed instruction would only serve to confuse and mislead the jury.

### Disputed Instruction No. 38 Re Statute of Limitations—Fraudulent Concealment Offered by DPPs

DPPs seek to recover for overcharges that occurred from January 1, 2002 to December 31, 2013. However, the statute of limitations bars any recovery by DPPs for injuries that occurred before July 18, 2010, which is four years prior to the date DPPs filed this lawsuit. One exception to this rule called fraudulent concealment. If DPPs proves that the price fixing conspiracy was fraudulently concealed, DPPs may recover for injuries that occurred before July 18, 2010.

To establish fraudulent concealment, DPPs must prove each of the following three elements by a preponderance of the evidence:

(1) Defendants or any member of the conspiracy actively concealed the price fixing that caused DPPs' injuries;

(2) DPPs did not discover the alleged conduct before July 18, 2010; and

(3) DPPs exercised reasonable diligence in the circumstances and still did not discover the alleged conduct.

To establish the first element of fraudulent concealment—active concealment—DPPs must show affirmative acts of concealment. Mere silence does not constitute fraudulent concealment. Rather, DPPs must prove that Defendants took affirmative steps to prevent DPPs from learning about the price-fixing conspiracy. DPPs allege that Defendants and their coconspirators, in order to conceal the price fixing conspiracy, held secret meetings at hotels; destroyed documents, notes and emails; instructed others to destroy emails after reading; announced price increases as a pretext rather than disclosing the conspiracy itself; informed others to not share contents of communications, and used codes to hide company identities, among other things.

1

2

3

4

Defendants are responsible for their own acts of concealment as well as any acts of concealment committed by coconspirators as long as the act of concealment occurred during the course and in furtherance of the conspiracy. DPPs need not establish concealment on a victim-by-victim basis; affirmative acts of concealment generally are considered to have an industry-wide effect.

5

6

7

8

9

10

11

12

In considering the third element of fraudulent concealment, if facts were reasonably available to DPPs that should have aroused suspicion that the price-fixing conspiracy had occurred, DPPs must have made a reasonable investigation to discover the price-fixing conspiracy. Parallel conduct or parallel pricing by itself does not give rise to the duty to investigate. If you conclude that a reasonable investigation would not have uncovered the price-fixing conspiracy, then you must find that the third element has been established. If, under all the circumstances of the case, no suspicious facts were reasonable available to DPPs, no investigation was required, and you must find that the third element has been established.

13

14

15

16

If you find that DPPs have proved all three elements of fraudulent concealment, then DPPs are entitled to recover for injuries that occurred before July 18, 2010. If you find that DPPs have failed to prove any one of the three elements, then DPPs may not recover for injuries that occurred before July 18, 2010.

17

18

19

20

21

22

23

24

25

26

27

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at 333-32; *see In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2016 WL 8669891, at \*9 (N.D. Cal. Aug. 22, 2016) ("[A]ttend[ing] secret meetings in hotels, record[ing] information on a blackboard instead of committing it to paper, instruct[ing] recipients of emails to destroy them after reading them, and us[ing] codes in correspondence" affirmative acts for fraudulent concealment purposes); *see also Carrier Corp.  v. Outokompu Oyj*, 673 F.3d 430, 447, n.8 (6th Cir. 2012) ("'[F]raudulent concealment . . . may be established through the acts of co-conspirators'"); *New York v. Hendrikson Bros., Inc.*, 840 F.2d 1065, 1085-84 ("[T]he trial court properly instructed the jury that if it found that the bid-rigging conspiracy continued in existence at the time of the . . . defendants' coverup activities, it could find that those activities were also attributable to the other members of the conspiracy."); *Hobson*

28

*v. Wilson*, 737 F.2d 1, 34-35 (D.C. Cir. 1984) ("The deception may be as simple as a single lie . . . so long as the defendants conceal 'not only their involvement, but the very conduct itself'"), overruled on other grounds by *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                         _____

                                                              *District Court Judge*

**Disputed Instruction No. 38 Re Statute of Limitations – Fraudulent Concealment**

[Defendants object to this instruction in its entirety.]

**DPP's Argument re Disputed Instruction No. 38 Re Statute of Limitations—Fraudulent Concealment Offered by DPPs**

DPPs' proposed instruction hews closely to the ABA Model Jury Instruction on fraudulent concealment. ABA Model Jury Instructions in Civil Antitrust Cases at 332 (2016). DPPs' proposed instruction has been "tailored to the specific facts of the case." *Id.* at 333, notes. DPPs have alleged and will prove fraudulent concealment that tolls the statute of limitations. Omitting the instruction, as Defendants propose, would prevent the jury from awarding damages on sales before July 18, 2010 even if DPPs establish fraudulent inducement.

DPPs' proposed instruction is consistent with Ninth Circuit law. DPPs will prove at trial that Defendants, their high-level executives, agents and co-conspirators took active steps to conceal the price-fixing conspiracy including holding secret meetings to exchange nonpublic information; instructing others to destroy illicit emails after reading them; and masking the identity of co-conspirator companies using codes. *See Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 505 (9th Cir. 1988) ("A plaintiff alleging fraudulent concealment must establish that its failure to have notice of its claim was the result of affirmative conduct by the defendant."); *see also Carrier Corp. v. Outokompu Oyj*, 673 F.3d 430, 447, n.8 (6th Cir. 2012) ("'[F]raudulent concealment . . . may be established through the acts of co-conspirators'"). "These are the types of affirmative acts that courts have found sufficient to establish fraudulent concealment," *In re Cathode Ray Tube (CRT)Antitrust Litig.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2016 WL 8669891, at *10 (N.D. Cal. Aug. 22, 2016) (identifying as affirmative acts for fraudulent concealment "attend[ing] secret meetings in hotels, record[ing] information on a blackboard instead of committing it to paper, instruct[ing] recipients of emails to destroy them after reading them, and us[ing] codes in correspondence"). Courts including those in this very district have given fraudulent concealment instructions in similar situations. *See*, *e.g.*, *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO, (N.D. Cal. Dec. 13, 2018) ECF No. 907 at 44-45.

1

2

### Defendants' Brief on Disputed Instruction No. 38:
### Statute of Limitations—Fraudulent Concealment

3

DPPs' proposed instruction on fraudulent concealment should not be given because there is no

4

evidence supporting the instruction, and it would therefore mislead and confuse the jury.  While the

5

Supreme Court has noted that the "fraudulent concealment doctrine is invoked fairly often" in antitrust

6

cases, the Court has never actually approved its use in private antitrust actions.  *Klehr v. A.O. Smith*

7

*Corp.*, 521 U.S. 179, 194 (1997).[7]  But assuming that the fraudulent concealment doctrine is available

8

in antitrust cases, which Defendants do not concede, DPPs must "do more than show that [they were]

9

ignorant of [their] cause of action."  *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th

10

Cir. 1988).  They must prove three elements: "(1) the defendant took affirmative acts to mislead the

11

plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its

12

claim' as a result of defendant's affirmative acts; and (3) the plaintiff acted diligently in trying to

13

uncover the facts giving rise to its claim."  *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d

14

1195, 1214 (N.D. Cal. 2015) (*quoting Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th

Cir. 2012)).

15

The first element requires evidence that Defendants took affirmative steps to mislead DPPs.

16

*Animation Workers*, 123 F. Supp. at 1196.  This "affirmatively misleading conduct must be 'above and

17

beyond' the alleged conspiracy itself," which can be "by nature self-concealing."  *Id.* (*quoting Guerrero*

18

*v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2003)).  Silence or passive concealment is insufficient.  *Volk*

19

*v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987).  Secret meetings and efforts to minimize

20

written records of the alleged conspiracy do not constitute fraudulent concealment, as these are not

21

22

---

[7] In recent years, the Supreme Court has repeatedly emphasized that courts do not have the power to

23

override legislative determinations regarding the timeliness of suit. *See China Agritech, Inc. v. Resh*,

24

138 S. Ct. 1800, 1808–09 (2018); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, 137 S. Ct. 954, 959 (2017). These decisions are grounded in the separation of powers. *See SCA*

25

*Hygiene*, 137 S. Ct. at 960 ("[A]pplying laches within a limitations period specified by Congress would give judges a 'legislation-overriding' role that is beyond the Judiciary's power."). Congress is well

26

aware that antitrust conspiracies are often difficult to identify. Yet it chose not to adopt a longer statute of limitations (or the discovery rule) for such claims. Applying fraudulent concealment to Sherman Act

27

claims would interfere with this policy judgment and transgress the separation of powers by substituting the Court's judgment for that of Congress regarding the applicable statute of limitations.

28

"above and beyond" the conspiracy.  *Animation Workers*, 87 F. Supp. 3d at 1215.  Further, "public, putatively false statements [are not] sufficient on their own to support an allegation of fraudulent concealment."  *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1079 (N.D. Cal. 2016).  Rather, fraudulent concealment only exists where "those misleading, pretextual statements" are coupled with "affirmative efforts taken to destroy evidence of the conspiracy or otherwise keep the conspiracies secret."  *Id*.  Moreover, in order to toll the statute of limitations as to ***all*** Defendants and alleged co-conspirators – as DPPs are seeking to do – DPPs must prove that ***all*** Defendants and alleged co-conspirators engaged in affirmatively misleading conduct because there is no "co-conspirator exception" to the elements of fraudulent concealment.  *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) ("Plaintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." (internal quotation marks omitted)).  DPPs have no evidence of the affirmatively misleading conduct required for fraudulent concealment, much less as to each Defendant and alleged co-conspirator.

The second element requires DPPs to prove that they were unaware of their claims "as a result of defendant's affirmative acts."  *Animation Workers*, 87 F. Supp. 3d at 1214.  In other words, DPPs must show that they detrimentally relied on Defendants' misleading or pretextual statements.  *Lyng v. Payne*, 476 U.S. 926, 935 (1986).  DPPs have no such evidence.

The third element requires DPPs to prove that they remained unaware of "facts giving rise to [their] claim ***despite [their] diligence in trying to uncover those facts***."  *Conmar*, 858 F.2d at 502 (9th Cir. 1988) (emphasis added); *Wood v. Carpenter*, 101 U.S. 135, 141 (1879).  There is no evidence that DPPs – many of which are sophisticated purchasers, have access to a wide range of information regarding competition, and have resources to conduct investigations and due diligence of suppliers – took any steps, let alone reasonably diligent steps, to uncover the facts supporting their claims.  Instead, certain direct purchasers testified that they did not make such inquiries.

To the extent a fraudulent concealment instruction is given, Defendants request that the Court utilize ABA Model Jury Instructions in Civil Antitrust Cases A-332, rather than DPPs' proposed instruction, which deviates from the model instruction.

**Stipulated Instruction No. 39 Re Damages—Introduction and Purpose Offered by DPPs**

If you find that Defendants violated the antitrust laws and that this violation caused injury to the DPPs, then you must determine the amount of damages, if any, DPPs are entitled to recover. The fact that I am giving you instructions concerning the issue of DPPs' damages does not mean that I believe DPPs should, or should not, prevail in this case. If you reach a verdict for Defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that DPPs should be fairly compensated for all overcharges that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer— what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to DPPs an amount for attorneys' fees or the costs of maintaining this lawsuit.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 1.

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 40 Re Basis for Calculating Damages Offered by DPPs**

You are permitted to make just and reasonable estimates in calculating DPPs' damages. You are not required to calculate damages with mathematical certainty or precision. Violations of the antitrust laws often create a situation in which it is hard to determine the precise amount of damages suffered by the victims. Once you have determined liability and antitrust injury, some degree of uncertainty is acceptable in your determination of damages. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. DPPs must prove the reasonableness of each of the assumptions upon which the damages calculation is based. The mere fact there is some uncertainty in proving the measure of damages should not affect your decision.

If you find that DPPs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that DPPs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 3; *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (jury may make a "just and reasonable estimate of the damage" as any other rule "would enable the wrongdoer to profit by his wrongdoing" and would induce similar wrongdoing "by rendering measure of damages uncertain"); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563-64 (1931) ("The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 40 Re Calculation of Damages Offered by Defendants**

You are permitted to make just and reasonable estimates in calculating DPPs' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. DPPs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that DPPs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that DPPs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 3; *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (jury may make a "just and reasonable estimate of the damage" as any other rule "would enable the wrongdoer to profit by his wrongdoing" and would induce similar wrongdoing "by rendering measure of damages uncertain"); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563-64 (1931) ("The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981).

### DPP's Argument re Disputed Instruction No. 40: Basis for Calculating Damages

*Uncertainty in Antitrust Damages / Guesswork and Speculation.* The Supreme Court has recognized that an antitrust defendant "whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 378 (1927); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981) (expressing "willingness to accept a degree of uncertainty" in antitrust damage proof given that the "vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of the Defendants' antitrust violation"); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ("[a]ny other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (reaffirming that antitrust damages "calculations need not be exact.") (citing *Story Parchment*, 282 U.S. at 563). The first precept the jury should hear concerning damages calculations is that they need not be exact.

Defendants' proposed instructions, in contrast, overemphasize the need to avoid speculation. Defs.' Proposed Instr. 40 Calculation of Damages ("Damages may not be based on guesswork or speculation."); Defs.' Proposed Instr. 42 Re Calculation of Damages ("You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages."). "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error." *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973).

If the Court is inclined to include the speculation instruction in both places, the jury should also be reminded each time that uncertainty in computing damages is allowed.

*Nominal Damages.* Nominal damages should be the subject of its own instruction, and not subsumed in this instruction.

### Defendants' Brief on Disputed Instruction Disputed Instruction No. 40:  Basis for Calculating Damages

DPPs' proposed jury instruction on calculation of damages is improper in that it omits important portions of the proposed language from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 5.  Defendants propose the DPPs use Instruction 5 in its entirety.  In addition, Defendants propose adding the "all (or nearly all)" standard required to establish antitrust injury, as previously explained in our argument in favor of Defendants' proposed instruction on "Overview of Antitrust Claims."

**Stipulated Instruction No. 41 Re Nominal Damages**

The law that applies to this case authorizes an award of nominal damages. If you find for DPPs but you find that DPPs have failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

*Authority*: *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 5.6 (2017); *see also U.S. Football League v. NFL*, 842 F.2d 1335, 1376-77 (2d Cir. 1988).

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 42 Re Calculation of Damages Offered by DPPs**

The proper way to calculate DPPs' damages is to determine the difference between the prices plaintiffs actually paid for aluminum, film and tantalum capacitors and the prices plaintiffs would have paid had there been no agreement to fix, raise, maintain, or stabilize prices. This is referred to as the overcharge. You should award to the class the total overcharges that the DPPs paid as a result of the conspiracy.

DPPs are seeking to recover damages on behalf of a class of purchasers. To award damages for the class, you do not need to determine the total overcharges paid by the class with mathematical certainty or precision. It is sufficient for you to estimate it, as long as the estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 5 and 7.

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 42 Re Calculation of Damages Offered by Defendants**

If you have determined that there was an unlawful conspiracy among competitors to fix prices that caused some injury to all or nearly all DPPs, you must now determine the amount of damages to award DPPs. The proper way to calculate DPPs' damages is to determine the difference between the prices DPPs actually paid for aluminum, tantalum, and/or film capacitors and the prices DPPs would have paid had there been no conspiracy to fix prices.  This is referred to as the overcharge.

DPPs are seeking to recover damages on behalf of a class of purchasers that includes all persons that purchased capacitors directly from any of the Defendants from January 1, 2002 to December 31, 2013 (the "Class Period"), where such persons are: (a) inside the United States and were billed or invoiced for capacitors by one or more Defendant Entities during the Class Period (i.e., where capacitors were "billed to" persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendant Entities during the Class Period, where such capacitors were imported into the United States by one or more Defendant Entities (i.e., where the capacitors were "billed to" persons outside the United States but "shipped to" persons within the United States). To award damages for the class, you do not need to determine the overcharge paid by the class with mathematical certainty or precision. It is sufficient for you to determine the average of the overcharge paid by the class or to estimate it, as long as the average or estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

*Authority*: Adapted from *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 5 and 7.

**DPP's Argument re Disputed Instruction No. 42: Calculation of Damages**

*Description of Conspiracy and Affected Products.* DPPs incorporate by reference their briefing on Instruction No. 21.

*"Reduce Output."* DPPs contend that the conspiracy reduced output as just one of the ways to fix the prices of capacitors. *See*, *e.g.*, Rebuttal Expert Report of Hal J. Singer, Ph.D. at ¶¶10-11 & n.31 (explaining that Defendants faced a downward-sloping demand curve allowing them to "charge supracompetitive prices by reducing output"). The instructions should reflect DPPs' theory of the case and the evidence DPPs will produce at trial.

*"Conspiracy."* Conspiracy is the proper way to describe the conduct here; calling it an "agreement" (as Defendants suggest) improperly suggests some innocuous formal undertaking, which the law does not require. *See* DPPs Argument to Instr. 22.

*It Is Sufficient for the Jury to Determine Class Members' "Total Overcharge."* DPPs need not calculate the precise overcharge sustained by each class member; proving the total overcharge suffices. *See also*, *e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1251 & n.3 (10th Cir. 2014); *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052, at *6 (N.D. Cal. Jan. 19, 2017); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 555090, at *4 (N.D. Cal. Feb. 21, 2012) (same); *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 560-61 (1931) ("The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.").

*Defendants' Addition: Incorrect Class Definition*. Defendants propose inserting an incorrect definition of the class. DPPs provided the exact class definition as certified by the Court (*see* ECF No. 493), albeit in the instruction describing the parties where it makes more logical sense (Instruction No. 4), and hence DPPs do not repeat it here. As the jury's finding will resolve the claims of all the class members, the wisest course is to use the precise definition of the certified class, the members of which received notice.

*Defendants' Addition: "All or Nearly All."* DPPs incorporate by reference their briefing on Instruction Nos. 21 and 35.

**Defendants' Brief on Disputed Instruction No. 42:Calculation of Damages**

DPPs' proposed jury instruction on calculation of damages is improper in that it omits important portions of the proposed language from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 5.  Defendants propose the DPPs use Instruction 5 in its entirety.  In addition, Defendants propose adding the "all (or nearly all)" standard required to establish antitrust injury, as previously explained in our argument in favor of Defendants' proposed instruction on "Overview of Antitrust Claims."

**Disputed Instruction No. 43 Re No Pass-On Consideration Offered by DPPs**

Under the antitrust laws, DPPs suffer injury when they pay an illegal overcharge. Whether or not DPPs passed on to their customers the higher prices they paid for aluminum, film and tantalum capacitors as a result of the alleged conspiracy is irrelevant to your calculation. You are not to consider whether DPPs passed on any overcharges to their customers when calculating damages.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 488-89 (1968); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

1

**Disputed Instruction No. 43 Re No Pass-On Consideration**

2

[Defendants object to this instruction in its entirety]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPP's Argument re Disputed Instruction No. 43: No Pass-On Consideration Offered by DPPs**

Black letter law prohibits any consideration of whether some or all of DPPs' overcharges were passed on to downstream customers. Even if direct purchasers passed on some or all of an antitrust overcharge, that does not vitiate a finding of injury or reduce damages. The Supreme Court has held that a "direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the *full amount* of the overcharge" and an antitrust defendant is "not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977). *See also Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494 (1968) (defendant "was not entitled to assert a passing on defense"); *Illinois Brick*, 431 U.S. 729-30; *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (Courts are not permitted to determine "what portion of [an] illegal overcharge was 'passed on' . . . and what part was absorbed by the middlemen" because such an analysis would "involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade."); *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008) ("[W]hen a seller overcharges a buyer . . . , the fact that the buyer raises the price for its own product, thereby passing on the overcharge to its customers and avoiding a loss in profit, has no bearing on the issue of whether the buyer has suffered an injury . . . . [D]amages are appropriate to the extent the buyer was overcharged, and must be measured accordingly."); *Apple iPod iTunes Antitrust Litig.*, No. C 05-00037, 2011 WL 5864036, at *4 (N.D. Cal. Nov. 22, 2011) (in antitrust action, rejecting Defendants' pass-on-overcharge defense on motion for class certification); *Braintree Labs. v. McKesson Corp.*, No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("a plaintiff's alleged benefit from a Defendants' anti-competitive behavior because the plaintiff 'passed on' any overcharge is not relevant to whether the plaintiff suffered a cognizable antitrust injury."). The Supreme Court reaffirmed the direct purchaser rule just last term. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1525 (2019).

The *Illinois Brick* rule was intended to reduce the complexity of direct purchaser actions by barring analysis of downstream effects. *See Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1212 (9th Cir. 1984). The law is indisputable and clear. Defendants do not argue otherwise.

Jurors are unlikely to know this basic rule, however, and must be instructed lest they improperly consider pass-on effects when considering DPPs' injuries. Thus, the instruction should be given to prevent legal error from contaminating jury deliberations (whether or not such a defense is overtly raised by Defendants). Courts have given such instructions in the past. *See*, *e.g.*, Jury Instructions at 24, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543) ("Whether or not the plaintiffs passed on any overcharges to its customers is irrelevant to your calculation of damages under federal law."); Reporter's Transcript of Proceedings at 188-89, *Safeway, Inc. v. Abbott Labs.*, Civ. A. No. 4:07-cv-05470-CW (N.D. Cal. Feb. 28, 2011) (Doc. 400, filed Dec. 5, 2011) ("Customer Plaintiffs allege that they were injured in their property because they paid higher prices for Norvir and Kaletra as a result of Abbott's alleged violations of the Sherman Act. Such overcharges resulting from higher prices caused by anticompetitive conduct may be found to be the type of injury the Sherman Act was intended to prevent. You are not to consider whether any customer plaintiff passed on any alleged overcharge to its own customers in determining whether and to what degree a Customer Plaintiff was injured."). This Court should do so as well.

**Defendants' Brief on Disputed Instruction No. 43:No Pass-On Consideration**

Defendants object in full to this instruction.  The instruction addresses a defense that has not been raised in this case, and therefore the instruction is unnecessary.

**Disputed Instruction No. 43A Re Joint and Several Liability Offered by Defendants**

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by that individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy but only if that conspirator enters the conspiracy with full knowledge of what has occurred before and with an intent to pursue the same unlawful objective.

If you find that DPPs have proven the existence of the alleged conspiracy, that Defendants participated in the conspiracy, and that DPPs are entitled to recover damages based on the other instructions in this case, then Defendants would be liable for all damages caused by the conspiracy, including any overcharges on purchases of the product.

Thus, in that event, Defendants would be liable for overcharges on all purchases of aluminum, tantalum, and/or film capacitors by DPPs from all members of the conspiracy, and not merely on purchases from a particular Defendant.

*Authority*: *In re Korean Ramen Antitrust Litig.*, Jury Instructions, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 17; *United States v. Lothian*, 976 F.2d 1257, 2162 (9th Cir. 1992) ("a defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from the conspiracy." (citing *Levine v. United States*, 383 U.S. 265, 266, 86 (1966)); *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049, 2010 WL 11463911, at *4 (C.D. Cal. Sept. 3, 2010) (a coconspirator is only liable for the overt acts committed after he joined the unlawful agreement."); *Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970) ("One who enters a conspiracy late, with knowledge of what has gone before, and with the intent to pursue the same objective, may be charged with the preceding acts in furtherance of the conspiracy."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2018 WL 659084, ay *9 (N.D. Cal. Feb. 1, 2018)

(ruling that defendants could be liable for actions taken before it joined the conspiracy "only if the plaintiff can show 'knowledge of what has gone before ... [and] the intent to pursue the same objective.'").

**DPP's Argument re Disputed Instruction No. 43A: Joint and Several Liability Offered by Defendants**

An instruction on joint and several liability is unnecessary. Joint and several liability goes to the apportionment of damages among defendants. The jury will determine liability and calculate the total amount of damages. They should not be encumbered by a further consideration of which Defendant was responsible for which portion of the damages. If the jury finds a Defendant is not liable, then it will be reflected in the verdict form and its award of damages. The jury can make the relevant findings without understanding the legal concept of joint and several liability.

*"but only if that conspirator enters the conspiracy with full knowledge of what has occurred before and with an intent to pursue the same unlawful objective."* Defendants seek to attach the above clause to the end of the instruction's third sentence. DPPs object to this addition as it is improper and misleading. No such language appears in either the ABA's Model Jury Instructions or the Ninth Circuit's Model Jury Instructions. *See* ABA Model Jury Instructions in Civil Antitrust Case, Ch. 6, Instr. 17; Ninth Circuit Model Civil Jury Instructions, ch. 5 (Damages). This is for good reason—*it is not the law*. Defendants' proposed addition runs contrary to established case law in the Ninth Circuit and elsewhere. *See, e.g., United States v. Henson*, 123 F.3d 1226, 1236 (9th Cir. 1997) ("A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."), *overruled on other grounds, United States v. Foster*, 165 F.3d 689 (9th Cir. 1999); *United States v. Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) (conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy); *United States v. Fontenot,* 483 F.2d 315, 324 (5th Cir. 1973) (affirming jury instruction that "one who knowingly and willfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the original instigators of the plan."). Courts have held that "one who joins a conspiracy previously formed may be liable not only for acts done thereafter, but also for acts in furtherance of the conspiracy done before he joined." *Fortney v. Kuipers*, No. 98 C 5387, 2001 U.S. Dist. LEXIS 19806, at *14 (N.D. Ill. Nov. 30, 2001); *see also United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987) ("[A] conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing

freight – or conduct – regardless of whether he is aware of just what it is composed."); *Scholes v. Moore*, 150 F.R.D. 133, 135-36 (N.D. Ill. 1993) (defendant is "liable for all damages caused by any acts in furtherance of the conspiracy, even those committed before he joined") (*citing In re Lower Lake Erie Iron Ore Antitrust Litig.*, 710 F. Supp. 152, 153-54 (E.D. Pa. 1989)).

Further, the additional language proposed by Defendants is misleading and does not comport with the few cases upon which Defendants rely. The term "full knowledge" is baffling and confusing. None of the cases reference any requirement of "full" knowledge. *Cf. Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2018 WL 659084, at *9. Such an abstract and categorical concept is not only nearly impossible to define in practice, but is likely to confuse and mislead the jurors. Defendants' proposed additional language should be rejected.

*"some or all," "the Defendants you find participated in the conspiracy," "participating Defendants"*

Defendants' language in the second two paragraphs of the instructions would obscure the law and mislead and confuse the jury. If the Court were to adopt Defendants' instruction, DPPs request the modification of the second to last paragraph as follows: "If you find that DPPs have proven the existence of the alleged conspiracy, that *some or all* Defendants' participated in the conspiracy, . . . then *the* Defendants *you find participated in the conspiracy* would be liable for all damages . . . ." DPPs also request modification of the first sentence of the last paragraph to read: "Thus, in that event, *participating* Defendants would be liable for overcharges on all purchases . . . ." This language would make clear that DPPs need not establish that *all* Defendants participated in the conspiracy for joint and several liability to apply. Such a requirement is inconsistent with the law, multiplies the confusion of the instruction, and the jurors should not be led to believe otherwise. DPPs' proposed language should therefore be used.

**Defendants' Brief on Disputed Instruction No. 43A: Joint and Several Liability**

Defendants propose including an instruction on the application of joint and several liability, a topic whose application the jury would not understand without some guidance from the Court.  DPPs' proposed jury instructions ignore joint and several liability altogether.  But without an instruction, the jury is almost certain to fail to grasp that each individual Defendant could ultimately be responsible for any damages found to have resulted from the entire conspiracy, including any such damages caused by other Defendants.  Defendants' proposed instruction is consistent with the ABA Model Jury Instructions in Civil Antitrust Cases and the instructions given in *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 13, 2018) (Doc. 907).

**Disputed Instruction No. 44 Re Settlement Agreements of Settling Defendants Offered by DPPs**

Certain capacitor manufacturers — who were formerly defendants in this matter — reached settlements with the DPPs prior to trial. The existence of these settlement agreements should not influence your consideration of this case.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Disputed Instruction No. 44 Re Settlement Agreements of Settling Defendants
Offered by Defendants**


Certain capacitor manufacturers — who were formerly defendants in this matter — reached settlements with the DPPs prior to trial. Some of these settlement agreements generally require the settling Defendants to cooperate with the DPPs in pursuing DPPs' claims as to the other Defendants. The fact that a party has settled does not establish its membership in the alleged conspiracy. The existence of these settlement agreements should not influence your consideration of this case, but you may consider the cooperation obligations in evaluating the bias and credibility of witnesses associated with the settling Defendants.


*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

**DPP's Argument re Disputed Instruction No. 44 Settlement Agreements of Settling Defendants**

DPPs' proposed instruction succinctly informs the jury that the existence of settlement agreements should not color their factfinding. Defendants' proposed instruction on the other hand is misleading and duplicative. The jurors will already be informed how to assess the credibility of witnesses in Stipulated Instruction No. 12 (Credibility of Witnesses). That instruction instructs the jury to consider "the witness's bias." And the catchall provision of that instruction adequately warns the jury to consider any other factors that may bear on a witnesses' credibility. *See id.* ("any other factors that bear on believability"). Defendants are free to test the credibility of witnesses affiliated with settled Defendants without pointing a spotlight on the existence of a few settlement agreements containing cooperation obligations.

Defendants' proposed instruction is overly broad and misleading. They paint with broad strokes without specificity that some of the settlement agreements require settling Defendants' cooperation. This may lead jurors to improperly speculate as to why certain settling Defendants were required to cooperate and why others were not. The Court should not invite such jury speculation. Parties may settle for many reasons, such as risk-aversion or actual culpability. Cooperation agreements are one of the considerations the parties make when settling, perhaps in lieu of higher monetary consideration. DPPs' proposed instruction cleanly instructs the jury that the mere fact that some parties have settled their claims should not influence the jury's factfinding.

Defendants' instruction should be rejected for another reason. DPPs are close to settling with the ACPERA applicant. Defendants' would instruct that "[t]he fact a party has settled does not establish its membership in the alleged conspiracy," but this sentence would become counterfactual should DPPs and the ACPERA applicant settle. Afterall, the ACPERA applicant admitted that a price-fixing conspiracy existed, and by definition, must have participated in that conspiracy. *See* Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237

**Defendants' Brief on Disputed Instruction No. 44: Settlement Agreements of Settling Defendants**

DPPs' proposed instruction would remove critical portions of the instructions given in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, Dkt. No. 8543 (N.D. Cal. Aug. 28, 2013).  Defendants merely propose reinserting language to bring the instructions back in line with those given in *In re TFT-LC (Flat Panel) Antitrust Litigation*.

Even more so in a conspiracy case, the relationships, or lack thereof, between the parties lies at the heart of the claims.  As such, it is vitally important that the jury understand that certain settlement agreements may have cooperation requirements, and that the testimony of a witness for the DPPs may result from such an agreement, rather than an endorsement of the DPPs' case theory.  Defendants' proposed language is consistent with the instructions given in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, Dkt. No. 8543 (N.D. Cal. Aug. 28, 2013) and should be adopted.

**Stipulated Instruction No. 45 Re Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your foreperson. The foreperson will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.1 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

**Stipulated Instruction No. 46 Re Consideration of the Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case

based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.2 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*

### Stipulated Instruction No. 47 Re Taking Notes

You may have taken notes to help you remember the evidence. If you did take notes, please keep them to yourself until you go to the jury room to decide the case. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.18 (2017).


___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN                                    _____

*District Court Judge*

**Stipulated Instruction No. 48 Re Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may

take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.3 (2017).

\_\_\_ GIVEN

\_\_\_ GIVEN AS MODIFIED

\_\_\_ REFUSED

\_\_\_ WITHDRAWN

_____

*District Court Judge*

**Stipulated Instruction No. 49 Re Return of Verdict**

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement as to each question on the form, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the Clerk that you are ready to return to the courtroom.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.5 (2017).

___ GIVEN

___ GIVEN AS MODIFIED

___ REFUSED

___ WITHDRAWN

_____

*District Court Judge*