# EXHIBIT I

# Exhibit A

JACKLIN CHOU LEM (CSBN 255293)
ALEXANDRA J. SHEPARD (CSBN 205143)
HOWARD J. PARKER (WSBN 07233)
ANDREW J. NICHOLSON-MEADE (CSBN 284070)
PARADI JAVANDEL (CSBN 295841)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
jacklin.lem@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. CR-16-0180-JD |
| | ) | |
| v. | ) | VIOLATION: 15 U.S.C. § 1 |
| | ) | Price Fixing |
| HITACHI CHEMICAL CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | **PLEA AGREEMENT** |
| | ) | |
| | ) | |
| | ) | |

The United States of America and Hitachi Chemical Co., Ltd. ("defendant"), a corporation organized and existing under the laws of Japan, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.      The defendant understands its rights:

(a)      to be represented by an attorney;

PLEA AGREEMENT (HITACHI CHEMICAL)      1

1        (b)    to be charged by Indictment;

2        (c)    as a corporation organized and existing under the laws of Japan, to decline

3  to accept service of the Summons in this case, and to contest the jurisdiction of the

4  United States to prosecute this case against it in the United States District Court for the

5  Northern District of California;

6        (d)    to plead not guilty to any criminal charge brought against it;

7        (e)    to have a trial by jury, at which it would be presumed not guilty of the

8  charge and the United States would have to prove every essential element of the charged

9  offense beyond a reasonable doubt for it to be found guilty;

10        (f)    to confront and cross-examine witnesses against it and to subpoena

11  witnesses in its defense at trial;

12        (g)    to appeal its conviction if it is found guilty; and

13        (h)    to appeal the imposition of sentence against it.

14  **AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS**

15      2.     The defendant knowingly and voluntarily waives the rights set out in Paragraph

16  1(b)-(g) above. The defendant also knowingly and voluntarily waives the right to file any

17  appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal

18  under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is

19  consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement,

20  regardless of how the sentence is determined by the Court. This agreement does not affect the

21  rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this

22  paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may

23  otherwise have on appeal or collateral attack respecting claims of ineffective assistance of

24  counsel or prosecutorial misconduct. The defendant agrees that there is currently no known

25  evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R.

26  Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to

27  be filed in the United States District Court for the Northern District of California. The

28  Information will charge the defendant with participating, from at least as early as August 2002

1    until at least as late as March 2010, in a conspiracy to suppress and eliminate competition by

2    fixing prices and rigging bids of certain electrolytic capacitors in the United States and

3    elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

4          3.      The defendant will plead guilty to the criminal charge described in Paragraph 2

5    above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to

6    the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

7          **FACTUAL BASIS FOR OFFENSE CHARGED**

8          4.      Had this case gone to trial, the United States would have presented evidence

9    sufficient to prove the following facts:

10         (a)      For purposes of this Plea Agreement, the "relevant period" is the period

11         beginning at least as early as August 2002 until at least as late as March 2010.  During

12         the relevant period, the defendant was a corporation organized and existing under the

13         laws of Japan.  The defendant had its principal place of business in Tokyo, Japan.  During

14         the relevant period, the defendant manufactured aluminum and tantalum electrolytic

15         capacitors and was engaged in the sale of aluminum and tantalum electrolytic capacitors

16         in the United States and elsewhere through certain current and former subsidiaries,

17         including entities known during the relevant time period as Hitachi AIC, Inc. (a

18         corporation organized and existing under the laws of Japan, with its principal place of

19         business in Tochigi Prefecture, Japan) and Hitachi Chemical Electronics Co. Ltd. (a

20         corporation organized and existing under the laws of Japan, with its principal place of

21         business in Ibaraki Prefecture, Japan).  The terms "current subsidiaries" and "former

22         subsidiaries" are further defined in Paragraph 13 of this Plea Agreement.  At a certain

23         point after the relevant period, defendant assumed responsibility for the sale of

24         electrolytic capacitors from subsidiary Hitachi AIC, Inc.  Electrolytic capacitors are a

25         major sub-category of capacitors, fundamental components of electrical circuits used

26         primarily to store and regulate electrical current.  Aluminum and tantalum capacitors are

27         types of electrolytic capacitors.

28

(b)     During the relevant period, the defendant, through officers and employees of certain current and former subsidiaries, including high-level personnel of those current and former subsidiaries, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere.  In furtherance of the conspiracy, the defendant, through officers and employees of certain current and former subsidiaries, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors.  During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

(c)     During the relevant period, the defendant and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States.  During the relevant period, one or more of the conspirator firms sold certain foreign-manufactured electrolytic capacitors outside the United States for incorporation into products that were sold in or for delivery to the United States.  During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

(d)     Acts in furtherance of this conspiracy were carried out within the Northern District of California.  Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

**ELEMENTS OF THE OFFENSE**

5.     The elements of the charged offense are that:

(a)     the conspiracy described in the Information existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy described in the Information either (1) substantially affected interstate and U.S. import trade or commerce in electrolytic capacitors or occurred within the flow of interstate or U.S. import trade or commerce in electrolytic

capacitors, or (2) had a direct, substantial, and reasonably foreseeable effect on interstate or U.S. import trade or commerce in certain electrolytic capacitor-containing products and that effect, in part, gives rise to the charge in the Information.

## POSSIBLE MAXIMUM SENTENCE

6.      The defendant understands that the statutory maximum penalty that may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)      $100 million (15 U.S.C. § 1);

(b)      twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)      twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.      In addition, the defendant understands that:

(a)      pursuant to §8D1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years; and if the defendant violates any condition of probation, the Court may, pursuant to 18 U.S.C. § 3565, (i) continue the defendant on probation, with or without extending the term or modifying or enlarging the conditions or (ii) revoke the sentence of probation and resentence the defendant;

(b)      pursuant to U.S.S.G. §8B1.1 or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)      pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.      The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater

1  punishment than the Manual in effect on the last date that the offense of conviction was

2  committed, in which case the Court must consider the Guidelines Manual in effect on the last

3  date that the offense of conviction was committed.  The parties agree there is no *ex post facto*

4  issue under the November 1, 2015 Guidelines Manual.  The Court must also consider the other

5  factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence.  The defendant

6  understands that the Guidelines determinations will be made by the Court by a preponderance-

7  of-the-evidence standard.  The defendant understands that although the Court is not ultimately

8  bound to impose a sentence within the applicable Guidelines range, its sentence must be

9  reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. §

10  3553(a).

## SENTENCING AGREEMENT

12  9.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and

13  continuing cooperation of the defendant and its current subsidiaries, as defined in Paragraph 13

14  of this Plea Agreement, the United States and the defendant agree that the appropriate disposition

15  of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the

16  defendant to pay to the United States a criminal fine of $3.8 million, payable in full before the

17  fifteenth (15th) day after the date of judgment, no order of restitution, and a three-year term of

18  probation ("the recommended sentence").  The parties agree that there exists no aggravating or

19  mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the

20  U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure

21  pursuant to U.S.S.G. §5K2.0.  The parties agree not to seek at the sentencing hearing any

22  sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not

23  set forth in this Plea Agreement.  The parties further agree that the recommended sentence set

24  forth in this Plea Agreement is reasonable.

25  (a)  The defendant understands that the Court will order it to pay a $400

26  special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine

27  imposed.

28

PLEA AGREEMENT (HITACHI CHEMICAL)      6

(b)     In light of the availability of civil cases filed against the defendant, including *In Re: Capacitors Antitrust Litigation* (14-CV-03264-JD), filed in the United States District Court, Northern District of California, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information.

(c)     The parties agree to recommend a three-year term of probation, which includes the following conditions:  (1) the development of a corporate compliance program consistent with U.S.S.G. §8B2.1, including antitrust compliance standards and procedures to be followed by all officers, directors, and employees of the defendant and its current subsidiaries who have any responsibility for the sale or marketing of electrolytic capacitors; (2) the implementation of the corporate compliance program, including (i) training on a periodic basis concerning the requirements of the antitrust laws and the above standards and procedures; and (ii) periodic communications by high-level personnel of the defendant and its current subsidiaries reinforcing the defendant's commitment to the corporate compliance program and adherence to the antitrust laws, and (3) the submission of annual written reports by the defendant to the Antitrust Division of the U.S. Department of Justice and the United States Probation Office on the defendant's progress in implementing the corporate compliance program.  In addition, pursuant to U.S.S.G. §8D1.3(a), defendant will not commit another federal, state, or local crime during the term of probation.  The parties agree that the term and conditions of probation imposed by the Court will not void this Plea Agreement.

(d)     The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 11, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and the defendant agree to request jointly that the Court accept the defendant's guilty plea

and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32-1(b) of the Criminal Local Rules.  The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

10.    The United States and the defendant agree that the applicable Guidelines fine range exceeds the fine contained in the recommended sentence set out in Paragraph 9 above. Subject to the full, truthful, and continuing cooperation of the defendant and its current subsidiaries, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a downward departure from the Guidelines fine range in this case and will request that the Court impose the fine contained in the recommended sentence set out in Paragraph 9 of this Plea Agreement because of the defendant's and its current subsidiaries' substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the electrolytic capacitors industry.

11.    Subject to the full, truthful, and continuing cooperation of the defendant and its current subsidiaries, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's and its current subsidiaries' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

12.    The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a)    If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 12(b) below, will be rendered void.

PLEA AGREEMENT (HITACHI CHEMICAL)    8

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 15 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.  The "date of signature of this Plea Agreement," as used in this Agreement, means the date that the United States signs this Agreement.

## DEFENDANT'S COOPERATION

13.     The defendant and its current subsidiaries, as defined below, will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of electrolytic capacitors, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding").  Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding.  The defendant's current subsidiaries for purposes of this Plea Agreement are entities in which the defendant had a greater than 50% direct or indirect ownership interest as of the date of signature of this Plea Agreement.  The defendant's former subsidiaries for purposes of this Plea Agreement are entities in which the defendant had a greater than 50% direct or

1    indirect ownership interest during the relevant period.  The full, truthful, and continuing

2    cooperation of the defendant and its current subsidiaries will include, but not be limited to:

3              (a)       producing to the United States all documents, information, and other

4         materials, wherever located, not protected under the attorney-client privilege or the work-

5         product doctrine (and with translations into English), in the possession, custody, or

6         control of the defendant or any of its current subsidiaries, that are requested by the United

7         States in connection with any Federal Proceeding; and

8              (b)       using its best efforts to secure the full, truthful, and continuing cooperation

9         of the current and former directors, officers, and employees of the defendant or any of its

10        current or former subsidiaries as may be requested by the United States, but excluding the

11        individuals listed in Paragraph 2 of Attachment A filed under seal.  Such efforts will

12        include, but not be limited to, making these persons available in the United States and at

13        other mutually agreed-upon locations, at the defendant's expense, for interviews and the

14        provision of testimony in grand jury, trial, and other judicial proceedings in connection

15        with any Federal Proceeding.  Current directors, officers, and employees are defined for

16        purposes of this Plea Agreement as individuals who are directors, officers, or employees

17        of the defendant or any of its current subsidiaries as of the date of signature of this Plea

18        Agreement.

19        14.    The full, truthful, and continuing cooperation of the current directors, officers,

20   and employees of the defendant or any of its current subsidiaries, and the individuals listed in

21   Paragraph 1 of Attachment A filed under seal, will be subject to the procedures and protections

22   of this paragraph and will include, but not be limited to:

23             (a)       producing in the United States and at other mutually agreed-upon

24        locations all documents, including claimed personal documents, and other materials,

25        wherever located, not protected under the attorney-client privilege or the work-product

26        doctrine (and with translations into English), that are requested by attorneys and agents of

27        the United States in connection with any Federal Proceeding;

28

1     (b)     making himself or herself available for interviews in the United States and

2     at other mutually agreed-upon locations, not at the expense of the United States, upon the

3     request of attorneys and agents of the United States in connection with any Federal

4     Proceeding;

5     (c)     responding fully and truthfully to all inquiries of the United States in

6     connection with any Federal Proceeding, without falsely implicating any person or

7     intentionally withholding any information, subject to the penalties of making a false

8     statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §

9     1503, *et seq.*), or conspiracy to commit such offenses;

10    (d)     otherwise voluntarily providing the United States with any material or

11    information not requested in (a) – (c) of this paragraph and not protected under the

12    attorney-client privilege or work-product doctrine that he or she may have that is related

13    to any Federal Proceeding;

14    (e)     when called upon to do so by the United States in connection with any

15    Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the

16    United States fully, truthfully, and under oath, subject to the penalties of perjury (18

17    U.S.C. § 1621), making a false statement or declaration in grand jury or court

18    proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of

19    justice (18 U.S.C. § 1503, *et seq.*); and

20    (f)     agreeing that, if the agreement not to prosecute him or her in this Plea

21    Agreement is rendered void under Paragraph 16(c), the statute of limitations period for

22    any Relevant Offense, as defined in Paragraph 16(a), will be tolled as to him or her for

23    the period between the date of signature of this Plea Agreement and six (6) months after

24    the date that the United States gave notice of its intent to void its obligations to that

25    person under this Plea Agreement.

26    This Paragraph 14 does not apply to the individuals listed in Paragraph 2 of Attachment A filed

27    under seal, regardless of their employment status, or to any former director, officer, or employee

28

PLEA AGREEMENT (HITACHI CHEMICAL)     11

1  of the defendant or its current or former subsidiaries, except those listed in Paragraph 1 of

2  Attachment A filed under seal.

3  **GOVERNMENT'S AGREEMENT**

4       15.    Subject to the full, truthful, and continuing cooperation of the defendant and its

5  current subsidiaries, as defined in Paragraph 13 of this Plea Agreement, and upon the Court's

6  acceptance of the guilty plea called for by this Plea Agreement and the imposition of the

7  recommended sentence, the United States agrees that it will not bring further criminal charges

8  against the defendant or any of its current subsidiaries for any act or offense committed before

9  the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust

10  conspiracy involving the manufacture or sale of electrolytic capacitors.  The nonprosecution

11  terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622),

12  making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*),

13  contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; (b) civil matters of

14  any kind; (c) any violation  of the federal tax or securities laws or conspiracy to commit such

15  offenses; or (d) any crime of violence.

16       16.    The United States agrees to the following:

17           (a)    Upon the Court's acceptance of the guilty plea called for by this Plea

18  Agreement and the imposition of the recommended sentence and subject to the

19  exceptions noted in Paragraph 16(c), the United States agrees that it will not bring

20  criminal charges against any current director, officer, or employee of the defendant or its

21  current subsidiaries, or any individual listed in Paragraph 1 of Attachment A filed under

22  seal, for any act or offense committed before the date of signature of this Plea Agreement

23  and while that person was acting as a director, officer, or employee of the defendant or its

24  current or former subsidiaries that was undertaken in furtherance of an antitrust

25  conspiracy involving the manufacture or sale of electrolytic capacitors("Relevant

26  Offense"), except that the protections granted in Paragraph 16 do not apply to the

27  individuals listed in Paragraph 2 of Attachment A filed under seal, regardless of their

28  employment status, or to any former director, officer, or employee of the defendant or its

current or former subsidiaries, except those listed in Paragraph 1 of Attachment A filed under seal;

(b)     Should the United States determine that any current director, officer, or employee of the defendant or its current subsidiaries, or any individual listed in Paragraph 1 of Attachment A filed under seal, may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 16(b) fails to comply fully with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person and the agreement not to prosecute that person granted in this Plea Agreement will be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to, any Relevant Offense;

(d)     Except as provided in Paragraph 16(e), information provided by a person described in Paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses;

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in Paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case will be rendered void;

(f)     The nonprosecution terms of this Paragraph 16 do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; and

(g)     Documents provided under Paragraphs 13(a) and 14(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its current subsidiaries.

17.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

18.     The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take.  However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant and its current subsidiaries as a matter for that agency to consider before determining what action, if any, to take.  The defendant nevertheless affirms that it wants to plead guilty regardless of any suspension or debarment consequences of its plea.

1

## REPRESENTATION BY COUNSEL

2      19.     The defendant has been represented by counsel and is fully satisfied that its

3  attorneys have provided competent legal representation.  The defendant has thoroughly reviewed

4  this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge,

5  any possible defenses to the charge, and the nature and range of possible sentences.

6

## VOLUNTARY PLEA

7      20.     The defendant's decision to enter into this Plea Agreement and to tender a plea of

8  guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises,

9  or representations other than the representations contained in this Plea Agreement and

10  Attachment A.  The United States has made no promises or representations to the defendant as to

11  whether the Court will accept or reject the recommendations contained within this Plea

12  Agreement.

13

## VIOLATION OF PLEA AGREEMENT

14      21.     The defendant agrees that, should the United States determine in good faith,

15  during the period that any Federal Proceeding is pending, that the defendant or any of its current

16  subsidiaries have failed to provide full, truthful, and continuing cooperation, as defined in

17  Paragraph 13 of this Plea Agreement, or have otherwise violated any provision of this Plea

18  Agreement, except for the conditions of probation, violations of which are subject to 18 U.S.C.

19  § 3565, the United States will notify counsel for the defendant in writing by personal or

20  overnight delivery, email, or facsimile transmission, and may also notify counsel by telephone,

21  of its intention to void any of its obligations under this Plea Agreement (except its obligations

22  under this paragraph), and the defendant and its current subsidiaries will be subject to

23  prosecution for any federal crime of which the United States has knowledge, including, but not

24  limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.

25  The defendant may seek Court review of any determination made by the United States under this

26  paragraph to void any of its obligations under this Plea Agreement.  The defendant agrees that, in

27  the event that the United States is released from its obligations under this Plea Agreement and

28  brings criminal charges against the defendant or its current subsidiaries for any offense referred

to in Paragraph 15 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.     The defendant understands and agrees that in any further prosecution of it or its current subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's or any of its current subsidiaries' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its current or former subsidiaries, or their current or former directors, officers, or employees, to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its current subsidiaries.  In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

///

PLEA AGREEMENT (HITACHI CHEMICAL)     16

1   Respectfully submitted,

2

3   BY: _Tsuyoshi Takahashi_        BY: _____

4       TSUYOSHI TAKAHASHI              JACKLIN CHOU LEM
        Manager, Legal Group           ALEXANDRA J. SHEPARD
5       Corporate Business Strategy Headquarters   HOWARD J. PARKER
        Hitachi Chemical Co., Ltd.     ANDREW J. NICHOLSON-MEADE
6                                      PARADI JAVANDEL

7   Dated: _April 26, 2016_

8                                      Trial Attorneys
                                       U.S. Department of Justice
9                                      Antitrust Division

10                                     Dated: _April 26, 2016_

11

12  BY: _____

13      MARK ROSMAN
        Wilson Sonsini Goodrich & Rosati
14      Counsel for Hitachi Chemical Co., Ltd.

15  Dated: _April 26, 2016_

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT (HITACHI CHEMICAL)    17

＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊

＊　　　日立化成株式会社第６７６回取締役会議事録　　　＊

＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊

２０１６年４月２５日

日立化成株式会社第６７６回取締役会議事録

　２０１６年４月２５日(月) 東京都千代田区丸の内一丁目９番２号　グラントウキョウサウス
タワーにおいて第６７６回取締役会を開催した。

取　締　役　総　数　　　　　９名
出　席　取　締　役　　　　　９名

　以上のとおり所定の定足数は充たされた。なお、本会議には、丸山執行役社長が陪席した。午後
３時４０分開会。
　取締役会長　田中　一行氏が議長席につき開会を宣した。
　続いて議事に入り、
　　　第１号議案　　米国司法省との司法取引契約締結の件
を附議した。

　宮内執行役から、今般、米国司法省から、別紙１に記載した内容の司法取引契約の提示を受け、
案件の早期解決のために、取締役会の承認を得たい旨説明し、出席取締役に対して審議を求めたと
ころ、慎重審議の後、全員一致をもって下記の事項を承認した。

　　　決　　　　議　　別紙１に記載された内容と実質的に同一の書式にて、米国司法省と当社との司
　　　　　　　　　　　法取引契約を締結し、交付し、履行すること。

　　　　　　　　　　　経営戦略本部　法務担当部長　高橋毅に会社を代表して、司法取引契約を締結し、
　　　　　　　　　　　交付する権限を授権すること。

　　　　　　　　　　　司法取引締結後に行われる、有罪答弁の際に、経営戦略本部　法務担当部長　高橋
　　　　　　　　　　　毅に会社を代表して、司法取引契約セクション２に規定する全ての権利を放棄し、
　　　　　　　　　　　当社を代表して、司法取引契約に基づいて有罪答弁を行う権限を授権すること。

　　　　　　　　　　　上記の決議事項を実行するために、経営戦略本部　法務担当部長　高橋毅に必要と
　　　　　　　　　　　され又は適切である全ての行為を行う権限を授権すること。

　以上で決議事項を終了し、議長は午後３時５０分閉会を宣した。

　以上議事経過の要領及びその結果を記載し、議長及び出席取締役が記名押印する。

２０１６年４月２５日

　　　　　　　　　　　　　　　日 立 化 成 株 式 会 社

　　　　議　　　　　長
　　　　取締役会長　　　　田　中　一　征　

　　　　取　　締　　役　　　　小　豆　畑　　茂　

　　　　取　　締　　役　　　　大　澤　佳　雄　

　　　　取　　締　　役　　　　大　戸　武　元　

　　　　取　　締　　役　　　　ジョージ・オルコット

　　　　取　　締　　役　　　　川　村　　隆

　　　　取　　締　　役　　　　松　田　　千恵子

　　　　取　　締　　役　　　　角　田　和　好

　　　　取　　締　　役
　　　　代表執行役　　　　野　村　好　弘　
　　　　執行役副社長

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Minutes of the 676th Meeting of the Board of Directors

of

Hitachi Chemical Co., Ltd.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

April 25, 2016

Minutes of the 676th Meeting of the Board of Directors of Hitachi Chemical Co., Ltd.

The 676th meeting of the Board of Directors of Hitachi Chemical Co., Ltd. (hereinafter the ("HCJ" or "Company") was held on Monday April 25, 2016 at GranTokyo South Tower, 1-9-2, Marunouchi, Chiyoda-ku, Tokyo, Japan.

> Total number of Directors:     9
> Number of Directors present:   9

A quorum being present, Mr. Kazuyuki Tanaka, the chairman of the Board, acting as the Chairman of the meeting, declared the meeting open for business at 3:40 pm (Japan time). Mr. Maruyama, Representative Executive Officer, President and Chief Executive Officer also attended the meeting.

The proceedings of the meeting were as follows:

Item of Business:

> Approval of Plea Agreement between Hitachi Chemical Co., Ltd. and the United States Department of Justice

Mr. Miyauchi, Executive Officer, explained that the United States Department of Justice had proposed the Plea Agreement between HCJ and the United States Department of Justice in substantially the form attached hereto as Exhibit 1, and recommended that approval of execution, delivery, and performance of the Plea Agreement is granted by the Board in order to resolve this matter promptly.   Mr. Miyauchi, Executive Officer, also explained the following item and requested the directors present to act upon these matters; whereupon, after full discussion it was unanimously:

> RESOLVED, that execution, delivery, and performance of Plea Agreement between HCJ and the United States Department of Justice, in substantially the form attached hereto as Exhibit 1, is hereby approved;

> RESOLVED, that Mr. Tsuyoshi Takahashi, Manager, Legal Group, Corporate Business Strategy Headquarters hereby is authorized, empowered and directed, for and on behalf of the Company, to execute and deliver the Plea Agreement; and

> RESOLVED, that Mr. Tsuyoshi Takahashi, Manager, Legal Group, Corporate Business Strategy Headquarters hereby is authorized to represent the Company at any hearing in order to waive any and all rights of the Company referred to under

section 2 of the Plea Agreement and to plead guilty at such hearing, for and on behalf of the Company, in accordance with the provisions of the Plea Agreement.

RESOLVED, that Mr. Tsuyoshi Takahashi, Manager, Legal Group, Corporate Business Strategy Headquarters hereby is, authorized to take individually any and all actions required or appropriate in order to carry out the intent and purpose of the preceding resolutions.

There being no further items of business to be considered, the Chairman declared the meeting closed at 3:50 pm (Japan time).

IN WITNESS WHEREOF, these minutes have been prepared, and the Chairman of the meeting, the directors present have affixed their signatures or seals hereunto.

April 25, 2016

Hitachi Chemical Co., Ltd.

Chairman of the meeting
Chairman of the Board                    Kazuyuki Tanaka


Outside Director                         Shigeru Azuhata


Outside Director                         Yoshio Osawa


Outside Director                         Takemoto Oto


Outside Director                         George Olcott


Outside Director                         Takashi Kawamura


Outside Director                         Chieko Matsuda

Director                                              Kazuyoshi Tsunoda

Director

Representative Executive Officer,          Yoshihiro Nomura

Executive Vice President and Executive Officer

# CERTIFICATE

I, Tsuyoshi Takahashi, Manager, Legal Group, Corporate Business Strategy Headquarters of Hitachi Chemical Co., Ltd., a company organized and existing under the laws of Japan and having its head office at GranTokyo South Tower, 9-2, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-6606, Japan, do hereby certify, as the person responsible for keeping minutes of the Board of Directors meeting, that the attached resolutions adopted by the Board of Directors of Hitachi Chemical Co., Ltd. at the Meeting of the Board of Directors held on April 25, 2016, are true, correct and complete, and that said resolutions have not been amended, modified or repealed, and remain in full force and effect, as of the date hereof.

Signed in Tokyo, this 26th day of April, 2016 by

*Tsuyoshi Takahashi*

Hitachi Chemical Co., Ltd.
Tsuyoshi Takahashi
Manager, Legal Group, Corporate Business Strategy Headquarters

# Attachment A to Plea Agreement

## Entire Attachment Sought to be Filed Under Seal