UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | MDL Case No. 17-md-02801-JD<br><br>Case No. 14-cv-03264-JD<br><br>**FINAL PRETRIAL ORDER FOR DIRECT PURCHASER PLAINTIFFS' TRIAL** |

As discussed at the final pretrial conference on February 27, 2020, the Court orders as follows for the jury trial of the direct purchaser plaintiffs' case on March 2, 2020:

1. <u>Trial time</u>: Each side will have **40 hours** of total trial time, exclusive of jury selection, opening arguments and closing arguments. Ms. Clark has the final word on time count.

2. <u>Holy Stone defendants</u>: The Holy Stone defendants are excused from the DPPs' trial in light of their joint request and signed settlement agreement with DPPs. Dkt. No. 1179. The parties will seek the Court's approval of the settlement as soon as possible.

3. <u>Jury notebooks</u>: The parties are reminded to bring 12 jury notebooks on the first day of trial. *See* Pretrial Order No. 1 (Dkt. No. 1071).

4. <u>Defendants' MIL No. 8</u>: For defendants' MIL No. 8 (re KEMET Corporation's sales evidence), Dkt. No. 1085, the motion is DENIED. Defendants request the exclusion of KEMET's sales evidence until DPPs have first proven that KEMET was a co-conspirator, but the fact that KEMET is no longer a party is an insufficient reason to stage the evidence in this way. All co-conspirators are jointly and severally liable, regardless of their party status. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). That KEMET "has always disputed its alleged participation in the conspiracy" is not enough either, as that is also true of every remaining defendant. The jury will be instructed that KEMET's sales should not be considered in assessing damages for the remaining defendants unless DPPs have proven there was a price-fixing conspiracy and KEMET participated in it.

5. <u>Preliminary jury instructions</u>:

    a. At DPPs' request, and with defendants' express agreement, the Court will add the bolded language to Instruction No. 3: "The DPPs allege that defendants **and others** conspired directly and indirectly with each other . . . ."

    b. The Court will remove all references to the Holy Stone defendants in light of their recent settlement and excusal from trial.

   c. The parties state they have no other objections to the Court's proposed preliminary jury instructions, Dkt. No. 1172. The Court will post the final set to be given to the jury.

6. <u>Final jury instructions and verdict form</u>: The final jury instructions and verdict form will be completed during the trial.

7. <u>Mini-openings</u>: As described in Pretrial Order No. 1, the parties will prepare non-argumentative "mini-openings" to be given to the venire as an introduction to the case on Monday morning. The parties are directed to exchange their drafts and to cooperatively work through any objections.

8. <u>Voir dire</u>: The Court denies two changes proposed by DPPs (re adding a question about the highest level of education reached, and removing the word "strong" in questions about "strong opinions" held by potential jurors), and DPPs withdraw a third (re experiences with antitrust law, etc.). The Court denies an additional question proposed by defendants (re tendency to post opinions and reviews on social media). The parties state they have no other objections to the Court's proposed questions, so they will be posed as stated in Dkt. No. 1130.

9. <u>Guilty pleas</u>: The parties failed to reach a stipulation of facts to be admitted from the relevant guilty pleas and plea agreements, as they were previously directed to do. *See* Pretrial Order No. 2 (Dkt. No. 1140) at 2. They are directed to try again on a stipulation.

10. <u>NCC's motion to allow witness Uchiyama to testify substantively and preclude evidence of his prior invocation of Fifth Amendment rights, Dkt. No. 1163</u>: DENIED. For the reasons stated on the record, DPPs will be permitted to offer Uchiyama's deposition testimony in which he invoked the Fifth Amendment, subject to the proffer for Fifth Amendment invocation evidence outlined in Pretrial Order No. 2 at 2.

11. <u>DPPs' proffer pursuant to Rule 801(d)(2)(E), Dkt. No. 1166, and defendants' motion to strike proffer, Dkt. No. 1173</u>: The DPPs' proffer is massively oversized and not consistent with the procedure outlined by the Court in Pretrial Order No. 2, and is terminated on that basis. DPPs will re-file their proffers on a witness-by-witness / trial-day-by-trial-day basis, following the Court's prior order. Defendants' motion to strike will also be terminated as moot.

12. <u>Defendants' motion to exclude plaintiffs' Rule 1006 charts, Dkt. No. 1171</u>: This issue is DEFERRED to trial. DPPs acknowledge that a chart may not be admitted into evidence unless all underlying documents summarized by the chart are independently admissible.

13. <u>UCC's motion for disclosure of grand jury testimony, Dkt. No. 1142</u>: DENIED, on the basis of the government's asserted prosecutorial interests and because any Fifth Amendment invocation testimony to be offered against UCC will be pre-screened via the proffer process. *See* Pretrial Order No. 2.

14. <u>Interpreters</u>: The Japanese/English interpreters may have access to a Realtime feed directly from the court reporter during the witnesses' testimony. The Court is also open to the interpreters setting up a small table subject to space constraints in the courtroom.

15. <u>DPPs -- rebuttal witnesses</u>: The DPPs may or may not be permitted to present rebuttal witnesses at the end of trial. The Court cannot rule on this issue in a vacuum and without the benefit of developments at trial.

16. <u>Scope of Dr. Stiroh's testimony</u>: This issue is also DEFERRED to trial.

17. <u>Defense expert -- possible medical issue</u>:  Defendants are directed to plan for the contingency that one of their experts may not be able to testify at trial due to a medical issue.  The parties will meet and confer, including on the possibility that one of the expert's colleagues will testify in his/her stead.

18. <u>Witnesses from Japan -- coronavirus travel restrictions</u>:  Certain witnesses may be restricted from travel due to coronavirus-related corporate restrictions.  The parties will continue to monitor the situation and promptly advise the Court of any scheduling issues.

19. <u>List of witnesses and attorneys for voir dire, Dkt. No. 1175</u>:  The parties will re-format the list so that all witnesses are listed alphabetically, with no corporate affiliations.  All counsel who will be present in the courtroom during the trial will also be listed alphabetically in a separate column.  The names of the law firms involved may also be included.  The parties will bring 15 copies of this revised list on the first day of trial, so they may be handed out to the potential jurors in the jury box during voir dire.

20. <u>Opening statement demonstratives</u>:  The parties will exchange their proposed demonstratives by 12 pm on Saturday, February 29, 2020.  Objections will be exchanged by no later than 4 pm on Sunday, March 1, 2020.

21. <u>Opening statement schedule</u>:  Opening statements to the jury will be made on Tuesday, March 3, 2020.  DPPs must be prepared to begin presenting witnesses that day.

22. <u>Reimbursements to DPPs' counsel for depositions of witnesses revoking their prior Fifth Amendment invocations</u>:  At the parties' agreement, defendants will reimburse DPPs' counsel for one day of preparation time per witness, in addition to counsel's time at the deposition.

23. <u>Jury selection issues</u>:  Each side will designate up to two attorneys to participate in the side bars for peremptory strikes and challenges for cause.

24. <u>UCC witness Fitzpatrick</u>:  Fitzpatrick was not included in UCC's initial disclosures and he was not disclosed as a witness until approximately a year after the prior witness's death.  The Court is not inclined to allow him to testify at trial but a final ruling is DEFERRED.

25. <u>Number of jurors</u>:  The Court will seat ten jurors for this trial.

26. <u>Objections during trial</u>:  An objection made by one defense attorney will be sufficient to preserve the objection for all defendants.  For each side, one attorney must be designated to make all objections during each witness examination to minimize jury distraction.

27. <u>No new filings</u>:  There will be no new filings of any motions between the final pretrial conference and the start of trial on March 2, 2020.  This does not apply to previously discussed and approved filings (*e.g.*, DPPs' witness-by-witness proffers).  The parties will be given time to confer with the Court outside of the jury's presence on Monday, March 2.

28. <u>Witness disclosures</u>:  The parties agree that witnesses will be disclosed to the other side 48 hours before the witness is to be called at trial.  This agreement amends the shorter time stated in Pretrial Order No. 1.

29. <u>Taitsu's discovery dispute letter, Dkt. No. 1176</u>:  The Court is not inclined to allow evidence relating to foreign regulatory investigations for any purpose.  This evidence was already excluded pursuant to DPPs' MIL No. 10 and defendants' MIL No. 11.  *See* Pretrial Order No. 2.

30. <u>Testimony by DAPs</u>:  DPPs object to any witness testimony by the DAPs.  The parties disagree whether DAP Arrow was deposed as a part of the DPPs' case.  The issue will be revisited on or after March 2, 2020.

31. <u>Trial exhibits</u>:  The parties will meet and confer on whether native electronic files are necessary in every instance including, *e.g.*, for transactional data files.

32. <u>Witness binders</u>:  For each witness, the parties will prepare a binder of exhibits that will be offered during that witness's testimony and which the party will move for admission into evidence.  The Court requires five copies of each witness binder, which should be handed to the Court prior to the start of each witness's testimony.

**IT IS SO ORDERED.**

Dated:  February 28, 2020

JAMES DONATO
United States District Judge