Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           swilliams@saverilawfirm.com
           jdavis@saverilawfirm.com
           jdallal@saverilawfirm.com
           areddy@saverilawfirm.com
           cyoung@saverilawfirm.com.com

*Counsel for Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO THE DIRECT PURCHASER CLASS ACTION | Master File No. 3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**PROFFER PURSUANT TO RULE 801(d)(2)(E)** |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.      OVERVIEW OF THE CONSPIRACY ................................................................... 3

II.     COCONSPIRATOR STATEMENTS SOUGHT TO BE ADMITTED ...................... 5

III.    THE DECLARANTS WERE COCONSPIRATORS ................................................. 6

IV.     THE STATEMENTS WERE MADE DURING THE COURSE OF AND IN
        FURTHERANCE OF THE CONSPIRACY ........................................................ 10

CONCLUSION ................................................................................................................. 12

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Am. Ad Mgmt, Inc. v. GTE Corp.*, 92 F.3d 781 (9th Cir. 1996) ................................................ 2

4

*Am. Column & Lumber Co. v. U.S.*, 257 U.S. 377 (1921) ...................................................... 9

5

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623 (9th Cir. 2018) .................................. 5

6

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360 (9th Cir. 1980) ................................ 6

7

*Bourjaily v. United States*, 483 U.S. 171 (1987) .......................................................... 1, 2, 8

8

*In re Capacitors Antitrust Litig.*, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ................................. 8, 9

9

*Esco Corp. v United States.*, 340 F.2d 1000 (9th Cir. 1965) ........................................................ 7

10

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939) ..................................................... 7

11

*Nye & Nissen v. United States*, 168 F.2d 846 (9th Cir. 1948), *aff'd*, 336 U.S. 613 (1949) ..................... 2

12

*Salinas v. United States*, 522 U.S. 52 (1997) ............................................................. 7

13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055 (N.D. Cal. Sept. 26, 2011) ....................................................................... 3

14

*United States v. Anderson*, 532 F.2d 1218 (9th Cir. 1976) ....................................................... 2

15

*United States v. AU Optronics Corp.*, 2012 WL 12036080 (N.D. Cal. Jan. 11, 2012) ....................... 6, 8

16

*United States v. Beckley*, 9 F.3d 1554 (9th Cir. 1993) ........................................................... 5

17

*United States v. Bowman*, 215 F.3d 951 (9th Cir. 2000) ......................................................... 1

18

*United States v. Calabrese*, 825 F.2d 1342 (9th Cir. 1987) ....................................................... 7

19

*United States v. Caro*, 965 F.2d 1548 (10th Cir. 1992) ......................................................... 11

20

*United States v. Cox*, 923 F.2d 519 (7th Cir. 1991) ........................................................... 10

21

*United States v. Crespo de Llano*, 830 F.2d 1532 (9th Cir. 1987) ................................................ 11

22

*United States v. De Gudino*, 722 F.2d 1351 (7th Cir. 1984) ...................................................... 5

23

*United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) ........................................................ 3

24

*United States v. Dixon*, 562 F.2d 1138 (9th Cir. 1977) .......................................................... 8

25

*United States v. Eaglin*, 571 F.2d 1069 (9th Cir. 1977) ........................................................ 10

26

*United States v. Eubanks*, 591 F.2d 413 (9th Cir. 1979) ..................................................... 1, 10

27

28

*United States v. Foster*, 165 F.3d 689 (9th Cir. 1999) ................................................................ 3

*United States v. Gil*, 58 F.3d 1414 (9th Cir. 1995) ...................................................................... 5

*United States v. Gomez*, 810 F.2d 947 (10th Cir. 1987) ............................................................ 11

*United States v. Henson*, 123 F.3d 1226 (9th Cir. 1997) ............................................................ 3

*United States v. Herrera*, 2016 WL 11637163 (N.D. Cal. August 4, 2016) ............................ 6, 8

*United States v. Herrera-Gonzalez*, 263 F.3d 1092 (9th Cir. 2001) ........................................... 7

*United States v. Inadi*, 475 U.S. 387 (1986) ............................................................................... 1

*United States v. Knight*, 416 F.2d 1181 (9th Cir. 1969) .............................................................. 3

*United States v. Ladum*, 141 F.3d 1328 (9th Cir. 1998) ............................................................. 7

*United States v. Lee*, 695 F.2d 515 (11th Cir. 1983) ................................................................... 6

*United States v. Lim*, 984 F.2d 331 (9th Cir. 1993) .................................................................... 11

*United States v. Loya-Chavez*, 3 F. App'x 628 (9th Cir. 2001) ................................................. 10

*United States v. Mason*, 658 F.2d 1263 (9th Cir. 1981) ............................................................ 11

*United States v. Occhipinti*, 998 F.2d 791 (10th Cir. 1993) ........................................................ 5

*United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006) ............................................................ 7

*United States v. Saavedra*, 684 F.2d 1293 (9th Cir. 1982) .......................................................... 5

*United States v. Schmit*, 881 F.2d 608 (9th Cir. 1989) ........................................................... 5, 10

*United States v. Segura-Gallegos*, 41 F.3d 1266 (9th Cir. 1994) ............................................... 2

*United States v. Sherman*, 576 F.2d 292 (10th Cir. 1978) .......................................................... 2

*United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988) .......................................................... 8

*United States v. Smith*, 893 F.2d 1573 (9th Cir. 1990) ............................................................... 5

*United States v. Tille*, 729 F.2d 615 (9th Cir. 1984) .................................................................. 11

*United States v. Torres*, 908 F.2d 1417 (9th Cir. 1990) .............................................................. 8

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948) ............................................................ 2

*United States v. Williams*, 989 F.2d 1522 (9th Cir. 1993) ........................................................ 10

*United States v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988) ................................................ 10, 11

*United States v. Zavala-Serra*, 853 F.2d 1512 (9th Cir. 1988) .................................................. 10

**Statutes**

Antitrust Criminal Penalty Enforcement and Reform Act ................................................... 8

**Rules**

Fed. R. Evid. 104(a) .................................................................................................. 2

Fed. R. Evid. 801 ........................................................................................... *passim*

Fed. R. Evid. 803(6) ................................................................................................ 2

1       Pursuant to the Court's Order of February 14, 2020, ECF No. 1140, the Direct Purchaser

2 Plaintiff Class ("DPPs") submits the following proffer supporting admission of coconspirator

3 statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.

### INTRODUCTION

5       In Pretrial Order No. 2 for Direct Purchaser Plaintiffs' Trial, the Court set forth the following

6 procedure with regard to coconspirator statements:

> For co-conspirator statements, DPPs must file a proffer by 4:00 p.m. two trial days before they intend to present them. For example, statements for Wednesday must be filed by 4:00 p.m. on Monday. . . . The proffer must specify: (1) who made the statement; (2) the substance of the statement; (3) the facts showing that the declarant was a co-conspirator; and (4) the facts showing that the statement was made during and in furtherance of the conspiracy.

ECF No. 1140 at 2 (citing F.R.E. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171 (1987)). DPPs

anticipate that the direct testimony of Mr. Norio Kasuga, a long-time senior executive at Former

Defendant Rubycon, will commence on Wednesday, March 4, 2020. DPPs accordingly submit the

following proffer supporting admission of coconspirator statements contained in Mr. Kasuga's

testimony and documents intended to be used as exhibits during his direct examination.

### LEGAL STANDARD

      Statements of a collaborator in an illegal venture have unique evidentiary value, rarely capable

of duplication in live testimony at trial. *United States v. Inadi*, 475 U.S. 387, 395-96 (1986). Rule

801(d)(2)(E) of the Federal Rules of Evidence provides that an out of court "statement" is not hearsay

if it "is offered against a party" and is "a statement by a coconspirator of a party during the course of

and in furtherance of the conspiracy." Regardless of a statement's independent reliability or the

declarant's availability, coconspirator statements are not hearsay and are admissible if it is established,

by a preponderance of evidence, that: (1) the charged conspiracy existed; (2) the defendants and the

declarants were members of that particular conspiracy; and (3) the statements were made during the

course of and in furtherance of the conspiracy. *Bourjaily*, 483 U.S. at 175; *United States v. Bowman*,

215 F.3d 951, 960-61 (9th Cir. 2000); *United States v. Eubanks*, 591 F.2d 413, 519 (9th Cir. 1979).[1]

---

[1] The statements of coconspirators set forth in this proffer should be admitted as non-hearsay under Rule 801(d)(2)(E). Additionally, many of these statements are admissible on alternative grounds

The standard for a district court's preliminary determination of admissibility under Rule 801(d)(2)(E) is a preponderance of the evidence. *Bourjaily*, 483 U.S. at 175-76. The preponderance of the evidence standard means merely "more likely than not." *Id*. at 175. In ruling on the admissibility of coconspirator statements, the Court is authorized under Federal Rule of Evidence 104(a) to consider any evidence whatsoever except privileged material, unhindered by consideration of admissibility. *Id*. at 178-79. Because of the nature of the evidence generally uncovered to prove conspiracies, "wide latitude is allowed [] in presenting evidence, and it is within the discretion of the trial court to admit evidence which even remotely tends to establish the conspiracy charged." *Nye & Nissen v. United States*, 168 F.2d 846, 857 (9th Cir. 1948), *aff'd*, 336 U.S. 613 (1949). Conclusive evidence is not required of a defendant's complicity. Plaintiffs need only come forward with evidence "[s]ustaining a rational inference of conspiracy" or "tend[ing] to exclude the possibility that the defendant acted independently." *Am. Ad Mgmt, Inc. v. GTE Corp.*, 92 F.3d 781, 789 (9th Cir. 1996); *see also United States v. Sherman*, 576 F.2d 292, 296 (10th Cir. 1978) ("In fact the evidence need not conclusively exclude any other reasonable hypothesis nor negate all possibilities except guilt.").

Once admitted pursuant to Rule 801(d)(2)(E), a statement of a coconspirator is admissible against all other conspirators, including those who joined the conspiracy after the statement was made. *See United States v. Segura-Gallegos*, 41 F.3d 1266, 1272 (9th Cir. 1994) ("Statements of his co-conspirators are not hearsay even if they were made before [the defendant] entered the conspiracy."); *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976) ("Statements of a co-conspirator are not hearsay even if made prior to the entry of the conspiracy by the party against whom it is used."). A company or person is liable for all conduct in furtherance of the conspiracy before it withdraws from it, even if the conduct predates its joining. *See United States v. U.S. Gypsum Co*., 333 U.S. 364, 393 (1948) ("With the conspiracy thus fully established, the declarations and acts of the various members,

_____

including: the defendants' own statements admissible pursuant to Rule 801(d)(2)(A); statements made by an agent of the defendant admissible pursuant to Rule 801(d)(2)(D); business records admissible pursuant to Rule 803(6); and false statements admissible pursuant to Rule 801(c) because they are not offered for the truth of the matter asserted. Accordingly, statements by coconspirators may be admitted against the defendants in many instances without establishing the factual predicate required by Rule 801(d)(2)(E).

even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy."). "This liability continues until the objectives of the conspiracy are completed, or the defendant withdraws from the conspiracy." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. Sept. 26, 2011); *see also United States v. Henson*, 123 F.3d 1226, 1236 (9th Cir. 1997) ("A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."), *overruled on other grounds*, *United States v. Foster*, 165 F.3d 689 (9th Cir. 1999); *United States v. DiCesare*, 765 F.2d 890, 900 (9th Cir. 1985) ("'[A] conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."); *United States v. Knight*, 416 F.2d 1181, 1184 (9th Cir. 1969) ("One may join a conspiracy already formed and in existence, and be bound by all that has gone on before in the conspiracy, even if unknown to him. The new member is as guilty as though he was an original coconspirator.").

## ARGUMENT

To assist the Court in its determination of the admissibility of coconspirator statements at trial, DPPs submit this proffer in connection with the direct testimony of Mr. Norio Kasuga. Section I of this proffer provides a brief overview of the conspiracy and the coconspirators. Section II describes the scope of Mr. Kasuga's anticipated testimony and lists in Appendix A the specific document(s), statement(s), and speaker for each particular coconspirator statement sought to be admitted. Section III outlines the law governing proof of conspiracy and the facts showing that there was a conspiracy and that the declarants were coconspirators. Section IV sets forth the law and facts establishing that the statements at issue were made during the course of and in furtherance of the conspiracy. The evidence set forth in this Proffer, though not exhaustive, proves, by a preponderance of evidence, that: (1) a conspiracy existed; (2) each of the declarants was a member of the conspiracy; and (3) that the statements of the coconspirators identified herein were made during the course of and in furtherance of the conspiracy. The evidence should therefore be deemed admissible against all coconspirators at trial.

## I.     Overview of the Conspiracy

The participants in the conspiracy included the following entities: (1) AVX; (2) Chemi-Con

(Nippon Chemi-Con and United Chemi-Con); (3) ELNA; (4) Fujitsu; (5) Hitachi; (6) Holy Stone; (7) KEMET; (8) Matsuo; (9) NEC TOKIN; (10) Nichicon; (11) Nissei; (12) Nitsuko; (13) Okaya; (14) Panasonic; (15) ROHM; (16) Rubycon; (17) Sanyo; (18) Shinyei; (19) Shizuki; (20) Soshin; (21) Taitsu; and (22) Toshin Kogyo. They were horizontal competitors. Each made aluminum, film or tantalum capacitors, or some combination of them, during the relevant period. The conspiracy sold over $5 billion in relevant capacitors billed or shipped to the United States during the relevant period.

The purpose and effect of the conspiracy was to raise, fix and stabilize the prices of aluminum, film and tantalum capacitors sold to purchasers in the United States and throughout the world. The conspiracy was in effect from no later than January 1, 2002 and continued until December 31, 2013. It did not end until after one of the participants turned the others in. The conspiracy was established, organized, implemented and concealed by and through executives, officers, directors and employees of these entities who were responsible for the sale, marketing and distribution of aluminum, film or tantalum capacitors. The conspiracy was effective, elevating prices of aluminum, film or tantalum capacitors to purchasers in the United States. The conspirators agreed with one another to elevate capacitor prices above competitive levels to their customers in the United States.

Their communications in furtherance of the conspiracy occurred by in-person meetings, telephone calls, and emails. They took place in the United States, Europe, Japan, Taiwan, Singapore, Hong Kong and many other locations around the world. They included regularly constituted meetings among dues-paying members. These meetings had various names, including the ECC, CUP, and ASEAN SM meetings. At these formalized meetings, the conspirators discussed their businesses, their customers, their prices, their negotiations, their production, and other competitively sensitive information. Frequently, the discussion progressed to intentions and consensus regarding future prices in the market generally, to particular types of customers, and to individual customers. After the meetings, the men in attendance often went to bars or nightclubs. These events facilitated discussion of particular customers, negotiations and the consensus reached. The exchanges at these meetings and parties included, for instance, confidential information from particular companies about their past, present and future output, costs, and prices. The information allowed conspirators to organize,

implement, effectuate, monitor and enforce the conspiracy. The exchanges were mutual, reciprocal and simultaneous and made with the expectation—and knowledge from years of participation—that information would result in all the conspirators elevating prices above competitive levels.

The conspirators used the information exchanged to make pricing decisions, to set prices, and to coordinate with competitors. With respect to sales to U.S. purchasers, pricing decisions were controlled, as a matter of process and practice, by managers and executives abroad who set price targets or minimum prices that included a built-in profit margin for sales to U.S. purchasers. *See Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 631-32 (9th Cir. 2018) ("A wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which is it a part[.]"). The conspirators also negotiated global prices with certain larger purchasers.

## II.    Coconspirator Statements Sought to Be Admitted

In connection with the direct testimony of Norio Kasuga, DPPs intend to offer testimony and documents as exhibits that were prepared during the course of and in furtherance of the conspiracy and that contain coconspirator statements.[2] With respect to testimony, Kasuga will testify that, as part of his job responsibilities at Rubycon, he attended meetings with competitors representing other co-conspirators where the attendees agreed to elevate prices for capacitors above competitive levels. Kasuga will testify that he made contemporaneous records of the meetings with co-conspirators and

---

[2] Coconspirator statements, admissible pursuant to Rule 801(d)(2)(E), include not only oral statements, but also documents prepared by coconspirators during the course of and in furtherance of a conspiracy. Fed. R. Evid. 801(a); *see United States v. Beckley*, 9 F.3d 1554, at *3 (9th Cir. 1993); *United States v. Saavedra*, 684 F.2d 1293, 1298 (9th Cir. 1982); *United States v. Occhipinti*, 998 F.2d 791, 801 (10th Cir. 1993); *United States v. De Gudino*, 722 F.2d 1351, 1356 (7th Cir. 1984). In deciding whether coconspirator statements in documents were made "during the course of and in furtherance of the conspiracy" under Rule 801(d)(2)(E), the court can consider circumstantial evidence, including the content of the documents, the location in which they were found, handwriting on the documents, and conformity of information in the documents with information otherwise in evidence. *See, e.g., United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995); *United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir. 1990); *United States v. Schmit*, 881 F.2d 608, 610 (9th Cir. 1989) (holding that circumstantial evidence was sufficient to show that a named coconspirator was the author of anonymous handwritten notes).

disseminated them to other executives at Rubycon. Kasuga will also testify that the he received contemporaneous meeting minutes and other records of meetings he did not attend from other executives at Rubycon who did.

Kasuga will also testify as to certain documents, all of which were produced by Former Defendant Rubycon from in this case. In **Appendix A**, DPPs list the specific documents which contain the coconspirator statements intended to be admitted. For each document, DPPs specify the author of the document, the individual(s) who made the statement(s), and the substance of each statement. *See* ECF No. 1140 at 2. The documents listed below are all contemporaneous reports of formal meetings between the coconspirators, in particular the ECC and CUP meetings, which were held in Japan, and the ASEAN SM meetings held in Singapore.

**III.     The Declarants Were Coconspirators**

In this case, there is abundant direct evidence of a conspiracy—including guilty pleas—as well as confirming circumstantial evidence that a conspiracy existed and that the declarants were members of that conspiracy. *See United States v. Herrera*, No. 15-cr-315 JGB, 2016 WL 11637163, at *7-8 (N.D. Cal. August 4, 2016) (direct evidence of conspiracy including guilty pleas sufficient to "preliminarily establish" concerted action for coconspirator statements under Fed. R. Evid. 801(d)(2)(E)); *United States v. AU Optronics Corp.*, No. CR 09–0110 SI, 2012 WL 12036080 *1, fn.1 (N.D. Cal. Jan. 11, 2012) ("This finding is also supported by independent evidence. The corporations that are not defendants . . . either pled guilty to participating in the conspiracy, or admitted to participating in the conspiracy in order to take advantage of the Antitrust Division's corporate leniency program.").

DPPs need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *See Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *United States v. Lee*, 695 F.2d 515, 518 (11th Cir. 1983). As the Supreme Court has said:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense . . . . The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other . . . If conspirators have a plan which calls for some conspirators to perpetrate the crime and others

to provide support, the supporters are as guilty as the perpetrators.

*Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (citations omitted). A plaintiff need not show "that each defendant or all defendants must have participated in each act or transaction. . . . [I]nvolvement in but two of ten allegedly conspiratorial situations does not absolve [a defendant] from participation in the entire conspiracy if its involvement in the two was unlawful and knowingly and purposefully performed." *Esco Corp. v United States.*, 340 F.2d 1000, 1006 (9th Cir. 1965). A defendant may be found to have participated in a conspiracy even if he joined or terminated his relationship with others at a different time than another coconspirator. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators"). Once a conspiracy is established, a slight connection suffices to link a defendant to the conspiracy. *United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006) (quoting *United States v. Wright*, 215 F .3d 1020, 1028 (9th Cir. 2000)) ("It is well-settled in this circuit that, once the existence of a conspiracy is established, a defendant may be convicted of knowing participation therein if the evidence establishes, 'even a slight connection' between the defendants and the conspiracy."). "The term 'connection' means that defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001).

Although the conspiracy must be proven by a preponderance of the evidence for the coconspirator hearsay exception to be available, it need not be proven by direct evidence. *See Goeke*, 15 F.3d 1091 (9th Cir. 1994) (affirming admission of coconspirator statements and noting "[a] conspiracy agreement need not be explicit,but may be inferred from circumstantial evidence"). The nature of the offense of conspiracy, with its attendant aspects of secrecy, often requires that elements of the crime be established by circumstantial evidence. *United States v. Ladum*, 141 F.3d 1328, 1341 (9th Cir. 1998) (citing *United States v. Castro*, 972 F.3d 1107, 1110 (9th Cir. 1992)) (noting "circumstantial evidence and the inferences drawn from that evidence will sustain a conspiracy conviction"); *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987) ("A defendant's knowledge and participation in a conspiracy may be inferred from circumstantial evidence."). A

district court may consider the proffered coconspirator statements themselves in determining the existence of a conspiracy, and a defendant's participation in it. *Bourjaily*, 483 U.S. at 180; *Goeke*, 15 F.3d 1091; *United States v. Torres*, 908 F.2d 1417, 1425 (9th Cir. 1990). However, most Circuits, including the Ninth Circuit, require some corroborating independent evidence apart from the coconspirator's statements before those statements may be used. *See United States v. Silverman*, 861 F.2d 571, 577-78 (9th Cir. 1988). Independent evidence may be sufficient even when it is not substantial. *United States v. Dixon*, 562 F.2d 1138, 1142 (9th Cir. 1977). Guilty pleas are considered to be sufficient independent evidence for these purposes. *See Herrera*, 2016 WL 11637163 at *7-8; *AU Optronics Corp.*, at *1, fn.1.

In this case, the existence of a capacitors price-fixing conspiracy is not disputed. Indeed, as this Court noted in its Order Granting DPPs' Motion for Class Certification:

> ***To a considerable degree, the fact of a conspiracy to fix prices has already been established by the criminal pleas.*** Eight corporations have pled guilty to conspiring, and accepted substantial criminal fines for their collusion. Two individuals have also pled guilty and been sentenced to time in a federal prison for their related conduct. In their plea agreements, defendants admitted they had 'participated in a conspiracy . . . the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere.'

*In re Capacitors Antitrust Litig.*, 2018 WL 5980139, at *5 (N.D. Cal. Nov. 14, 2018) (citations omitted) (emphasis added).  The coconspirators which pled guilty are ELNA, Hitachi, Holy Stone, Matsuo, NCC, Nichicon, and Rubycon. In addition, coconspirators Panasonic and Sanyo applied for, and received on a conditional basis, leniency from the United States government under the Antitrust Criminal Penalty Enforcement and Reform Act ("ACPERA"). The global Capacitors cartel has also led to investigations around the world, including by the European Union and antitrust regulators in Japan, Korea, Taiwan, Singapore, China, Canada, and Brazil. These regulators reached conclusions which provide further support for the existence of the conspiracy and the participation of the co-conspirators in it. The Competition and Consumer Commission of Singapore ("CCCS") found violations on the part of ELNA, Nichicon, Panasonic, Rubycon, and Singapore Chemi-Con (the Singapore affiliate of NCC). Competition Comm'n Sing., Jan. 5, 2018, CCS 700/002/13, Notice of Infringement Decision Issued by CCS (Sing.). In a January 5, 2018 Notice of Infringement Decision,

1   CCCS found that the five companies had engaged in a "single continuous infringement." On

2   September 14, 2018, the Korea Fair Trade Commission (KFTC), in a report entitled "Sanctions

3   Against Global Electronic Parts Price Fixing," found nine companies had violated Korea's competition

4   laws: two (NCC and Rubycon) for price fixing of aluminum capacitors, three (Matsuo, NEC TOKIN,

5   and Vishay Polytech f/k/a Holy Stone Polytech) for price fixing of tantalum capacitors, and four

6   (ELNA, Hitachi, Nichicon, and SANYO) for price fixing of both types. Press Release, Korea Fair

7   Trade Comm'n, Sanctions Against Global Electronic Parts (Capacitors) Price Fixing (Sept. 14, 2018).

8           The employers of each of the declarants above was either found guilty of violating competition

9   laws or admitted to such violations in exchange for leniency. This applies to coconspirators ELNA,

10  Hitachi, NCC, Nichicon, Panasonic-Matsushita, Rubycon, and Sanyo. In the case of Fujitsu, their

11  capacitors business was acquired by Nichicon during the relevant period. As this Court noted,

12  however, "the DPPs do not rely on the guilty pleas alone. They also present a substantial quantum of

13  emails, reports, and other evidence harvested in discovery." *Capacitors,* 2018 WL 5980139, at *55.

14  There is indeed a "panoply of emails, reports, meeting minutes and other documents produced by

15  defendants showing that defendants themselves acknowledged that their collusion had a wide impact

16  on the prices of capacitors." *Id* at *8. (quotations omitted). DPPs have such documentary evidence for

17  all of the coconspirators, including the employers of the declarants identified in Appendix A,

18  particularly the highlighted statements. The mountain of evidence reflects repeated multilateral and

19  bilateral exchanges of confidential nonpublic information amongst the conspirators, especially with

20  regards to pricing, output, and planning. As the Supreme Court recognized several decades ago,

21  "Genuine competitors do not make daily, weekly, and monthly reports of the minutest details of their

22  business to their rivals . . . . This is not the conduct of competitors, but is so clearly that of men united

23  in agreement, express or implied, to act together and pursue a common purpose[.]*" Am. Column &*

24  *Lumber Co. v. U.S.*, 257 U.S. 377, 409 (1921). To the extent the Court finds this evidence insufficient

25  in regard to some of the alleged coconspirators, DPPs respectfully request that they be permitted to

26  prove at trial that the participation of those alleged coconspirators for purposes of admitting the

27  statements in this Proffer against them.

28

1

IV.     **The Statements Were Made During the Course of and in Furtherance of the Conspiracy**

2          DPPs similarly establish by a preponderance of evidence that the statements about which Mr.

3  Kasuga will testify as well as those identified above were made during the course of and in furtherance

4  of the conspiracy. Once the existence of the conspiracy and membership in that conspiracy of both the

5  defendant and the declarant is established by a preponderance of the evidence, statements made

6  "during the course" and "in furtherance" of the conspiracy are admissible pursuant to Rule

7  801(d)(2)(E). As long as the declarant and the person against whom the statement is offered were

8  members of the conspiracy when the statement was made, "[i]t is not necessary that the statement be

9  made to another member of the conspiracy for it to come under rule 801(d)(2)(E)." *United States v.*

10  *Williams*, 989 F.2d 1522, 1535 (9th Cir. 1993). Statements are "in furtherance" of the conspiracy and

11  therefore admissible under the coconspirator exception if they "advance a common objective of the

12  conspiracy or set in motion a transaction that is an integral part of the conspiracy." *United States v.*

13  *Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988); *Eubanks*, 591 F.2d at 520. The statements do not have

14  to further the conspiracy in actual fact. It is enough that the statements are intended to promote the

15  conspiratorial objectives. *United States v. Schmit*, 881 F.2d 608, 612 (9th Cir. 1989). "In determining

16  whether a statement is made 'in furtherance' of a conspiracy, the court looks to the declarant's intent in

17  making the statement, not the actual effect of the statement." *Williams*, 989 at 1068. "It is not

18  necessary that the statement be made to another member of the conspiracy for it to come under rule

19  801(d)(2)(E)." *Id*.

20          Statements made by coconspirators to conduct the business of the conspiracy and to

21  accomplish its goals are "classic examples of statements made to conduct and further" a conspiracy.

22  *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991). Statements in this category found to be "in

23  furtherance" include: statements of future intent that set transactions to the conspiracy in motion and

24  maintain the information flow among coconspirators, *Eubanks*, 591 F.2d at 520; statements made to

25  prompt further action on the part of conspirators, *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir.

26  1977);  statements made to recruit potential members, *United States v. Zavala-Serra*, 853 F.2d 1512,

27  1516 (9th Cir. 1988); statements made by a coconspirator that identify a fellow conspirator, *United*

28

States v. Loya-Chavez, 3 F. App'x 628, 629 (9th Cir. 2001); and statements made to facilitate meetings, *United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992). Statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the in-furtherance requirement. *Yarbrough*, 852 F.2d at 1535-36; *see also United States v. Crespo de Llano*, 830 F.2d 1532, 1543 (9th Cir. 1987). "Statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." *United States v. Gomez*, 810 F.2d 947, 953 (10th Cir. 1987) (citation omitted); *see Yarbrough*, 852 F.2d at 1535-36; *United States v. Mason*, 658 F.2d 1263, 1270 (9th Cir. 1981). Finally, statements made to conceal the unlawful objectives of the conspiracy are made "in furtherance" of the conspiracy where, as here, ongoing concealment is one of its purposes. *See United States v. Lim*, 984 F.2d 331, 336 (9th Cir. 1993); *United States v. Tille*, 729 F.2d 615, 620 (9th Cir. 1984).

All of the proffered coconspirator statements outlined in Section II and about which Mr. Kasuga will testify were made between January 2002 and December 2013, the relevant period of the conspiracy. Further, each of the statements, particularly each highlighted one, falls into several widely recognized categories of statements that have been held to qualify as "in furtherance" of a conspiracy. They include statements made: (1) to execute or transact the business of the conspiracy, *see* Exs. 1019, 1356, 1871, 1872, 1873, 1883, 1999, 2179, 2181, 2183, 2185, 2187, 4714, 4715, 5254, 8499, 8511, 13498, 13500, 13501; (2) to keep coconspirators abreast of the conspiracy's activities, *see* Exs. 1019, 1356, 1871, 1872, 1873, 1883, 1999, 2179, 2181, 2183, 2185, 2187, 4714, 4715, 5254, 8499, 8511, 13498, 13500, 13501; (3) to reassure members of the conspiracy's continued existence, *see* Exs. 1019, 1356, 1871, 1872, 1873, 1883, 2179, 2181, 2183, 2185, 2187, 4714, 4715, 5254, 8511, 13498, 13500, 13501; (4) to communicate in a way that identifies other members of the conspiracy and their roles, *see* Exs. 1019, 1356, 1871, 1872, 1873, 1883, 2179, 2181, 2183, 2185, 2187, 4714, 4715, 5254, 8511, 13498, 13500, 13501; (5) to recruit potential coconspirators, *see,* Ex. 5254 ("Trade Committee Only has 4 companies now, and this will be pointless if Sanyo and Matsushita did not join. . . . Working-level conference of the Trade Committee (with Sanyo, Matsushita, and Fujitsu joining) will be held

next week to decide an urgent guideline for price responses to Foxconn and Intel[.]"); and (6) to conceal the activities of the conspiracy. *See* Ex. 1019 ("use care when handling this information"); *id.* ("Please discard this information after reading."); Ex. 5254 ("please delete this email after reading"); *id.* ("handle with care").

**CONCLUSION**

The evidence set forth in this Proffer establishes, by a preponderance, that a conspiracy existed and that certain statements were made during the course of and in furtherance of the conspiracy. The Court should rule that the evidence as outlined above and to be evinced further by Mr. Kasuga's testimony is admissible as evidence at trial against all coconspirators.

Dated: March 2, 2020

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:     */s/ Joseph R. Saveri*
          Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Counsel for Direct Purchaser Class*