Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Joshua P. Davis (State Bar No. 193254)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:    jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com
          jdallal@saverilawfirm.com
          jdavis@saverilawfirm.com
          areddy@saverilawfirm.com
          cyoung@saverilawfirm.com.com

*Lead Counsel for Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO THE DIRECT PURCHASER CLASS ACTION | Master File No. 3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**BRIEF RE: PLAINTIFFS' OPENING STATEMENT SLIDES**<br><br>Date:         March 2, 2020<br>Time:        9:00 a.m.<br>Courtroom:   11, 19th Floor<br>Judge:       Honorable James Donato |

Pursuant to the Court's request, the Class is submitting this brief to address certain foundational and evidentiary issues regarding four slides to be used in DPP's opening statement. They are attached to this filing for the Court's reference. The testimony at issue was taken over the last few weeks after witnesses revoked Fifth Amendment invocations. DPPs designated this testimony for trial and asked Defendants to provide objections. Those have not been received

1. **Slides 12, 13, and 14 (Deposition of Hiroyuki Imai)**

    a. **Background**

   These excerpts are from the deposition of Hiroyuki Imai. Imai was a long-time sales executive at ELNA. As a representative of ELNA, Imai regularly attended group  group meetings with competitors where the companies exchanged confidential business information and among other things discussed future pricing intentions with respect to the capacitor market globally as well as with respect to particular types of customers and particular customers. At each meeting, the participants made a report of confidential sales, revenue and other information. Frequently, costs and capacity were also disclosed. At these meetings, agreements regarding prices were discussed and frequently reached.

   Having been a regular participant in group meetings, Mr. Imai was familiar with the information exchanged. He was familiar with the uses of such information for the participants. He also has knowledge of agreements to fix, raise or stabilize prices at group meetings and in other communications with competitors. As he testified, he has reviewed many documents in connection with this case. *See* Imai Dep. (Vol. II) 210:7-9.

   Meetings like the MK meetings (MK in Japanese is an abbreviation for the Japanese word which means "Market Research") means "Market Research" meetings occurred every month. Pursuant to the agreement of the participants, one of the companies served as the organizing company, making arrangements for the meetings. Also, the organizing company coordinated the exchange of information in advance of the meetings. ELNA participated in the meetings for many. Also, as Imai testified, Imai served from time to time as the organizer of the meetings, performing the agreed upon administrative roles required. These meetings in Japan were attended by Japanese executives representing the capacitor manufacturers for whom they worked. Further, Imai testified that he served

as the organizer and that ELNA distributed the information to the rest of the participants. Imai had personal knowledge of this.

### Slide 12

Imai was asked to review notes of a group meeting attended by Chemi-Con (NCC), Nichicon, Matsushita, ELNA, Sanyo, Nitsuko, Rubycon. *See* Ex. 8316 (minutes of July 19, 2000 ECC Meeting). He was asked to review the portions of the document where the companies discussed "how to increase prices in the future." Imai Dep. (Vol. II) 210:10-24. Imai was asked if this was an example of an agreement to fix prices. Imai is knowledgeable about this because he participated in many such meetings on behalf of his own company, participated in such discussions and entered into such agreements himself. He answered this question based on his own knowledge and experience. He said yes. *Id.* at 210:24

Matsuo objected that this calls for speculation and is hearsay. It is not. Imai was asked based on his personal knowledge derived from decades of experience at Elan and specific experience at meetings with competitors. His opinion regarding the communication is not hearsay. It is admissible lay opinion testimony under FRE 701.

### Slide 13

Imai was asked about his conduct when he served as the organizing company. He confirmed that it was the job of the organizing company—and his own responsibility when he served in this role at ELNA—to make sure the information exchanged was given to the rest of the participants. Imai Dep. (Vol. I) 119:7-13.

This testimony is based on personal knowledge. It is not hearsay or speculation.

### Slide 14

Many meetings in Japan were attended by Japanese executives representing the capacitor manufacturers for whom they worked. AVX and KEMET, which are global companies, with operations throughout the world were headquartered in the United States who spoke English. AVX and KEMET did not attend monthly meetings of Japanese businessmen in Japan. However, AVX and KEMET were in regular contact with NEC TOKIN. KEMET worked closely with NEC TOKIN, and during the class

period acquired an ownership in NREC TOKIN. KEMET and AVX regularly communicated with NECV TOKIN exchanging confidential information. In particular, representatives of both companies met and exchanged confidential information with Tomohiro Date of NEC Tokin. As the Court is aware, NEC TOKIN has pled guilty. Date was indicted by the Department of Justice. Date, among other things, regularly attending MK and other group meetings. He also participated in many other one-on-one communications and meetings with other capacitor manufacturers and frequently reached explicit price-fixing agreements with them.

Imai was asked how it was that the confidential information of AVX and KEMET was reported at the meeting. Imai confirms it came from NEC TOKIN, and that was the regular practice. Imai Dep. (Vol. II) 299:23-300:10. This testimony confirms that it NEC TOKIN,[1] which has pled guilty to criminal price-fixing of conspiracy that provided information regarding AVX and KEMET. By review of the meeting minutes, indicating the attendance at the meeting, it appears that the NEC TOKIN attendee is Mr. Sato. *See* Ex. 112 (February 12, 2009 MK meeting minutes).

Imai's testimony is based on personal knowledge. The testimony is probative. Imai's testimony is not hearsay.

**Slide 15 (Deposition of Shin Kinoshita)**

Shin Kinoshita regularly attended monthly MK meetings. Kinoshita was a senior sale executive at ELNA, and among other things, negotiated prices with customers and had pricing authority. On the basis, he was knowledgeable about the structure of the meetings and the participants' practice with respect to the type of information exchanged. He also knew, because of his job and experience, the value of the information exchanged.

At his deposition, Kinsohita was asked about an email exchange between Tokuo Tatai of ELNA,[2] Inoue in which Tatai asked for information Inoue had recently received at the most recent MK meeting. *See* Ex. 2397. Inoue responded to the email, passing on the information he had obtained. This

---

[1] The reference in the document in Japanese is to NEC. Documents and other testimony confirm that NEC TOKIN, the company that manufactured capacitors and plead guilty, attended

[2] Tatai plead guilty to price-fixing, was sentenced, and was incarcerated for his crimes.

included information reported by NEC TOKIN at the meeting. Inoue reported that NEC TPOKIN reported regarding a certain standard ("A type) capacitor. NEC TOKIN reported that with respect to that type, prices were returning to the 24-dollar level, and "Everything is full until the price of the end of the year. If prices get to this level, then AVX will make a pass at it." *Id.*

During his deposition, Kinoshita was asked about this exchange and whether the information based on his experience would be helpful to the competitor companies receiving such information. He affirmed that it would. Kinoshita Dep. (Vol. II) 261:21-262:19, 262:21-23.

This testimony is relevant, not unduly prejudicial and admissible. He was a recipient of the email communication reporting the information exchanged at the meeting. It is based on his personal knowledge and his experience. The statements are admissions by ELNA. They are also coconspirator admissions. The information regarding AVX pricing is admissible because it shows that the information was valuable, and It is also admissible for nonhearsay purposes because it shows

Dated: March 2, 2020March 2, 2020

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By: */s/Joseph R. Saveri*
        Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:   (415) 500-6800
Facsimile:    (415) 395-9940
Email:         jsaveri@saverilawfirm.com
                    swilliams@saverilawfirm.com
                    jdallal@saverilawfirm.com
                    areddy@saverilawfirm.com
                    cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*