Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3830
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

Steven Kaufhold (SBN 157195)
KAUFHOLD GASKIN LLP
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 445-4621
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendant United Chemi-Con, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

**IN RE CAPACITORS ANTITRUST LITIGATION**

Case No. 3:14-cv-03264-JD

**DEFENDANT UNITED CHEMI-CON'S RESPONSE TO DPPS' PROFFER IN SUPPORT OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEPOSITION TESTIMONY OF ANTHONY OLITA**

Master Docket No.: 3:17-md-2801-JD

Hon. James Donato

Case No.: 3:14-cv-3264-JD

DPPs seek to play 60 Fifth Amendment invocations from the deposition of Anthony Olita, a now deceased UCC employee. DPPs have identified eight different categories of invocations. As described below, with respect to each category, DPPs have failed to identify independent evidence supporting the inference they seek, and/or to demonstrate that there is a substantial need for the information and no less burdensome way to obtain it. (Pretrial Order No. 2 (ECF 2559) at 2, citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).) For this reason, and for the added reason that they should be excluded under Rule 403, Mr. Olita's Fifth Amendment invocations should be excluded at trial.

## **Background**

Mr. Olita joined United Chemi-Con ("UCC") in 1995. Beginning in approximately 2006, and through the rest of the relevant time period, he served as UCC's Vice President. Mr. Olita was deposed in this matter on November 17, 2017, when DOJ's criminal investigation against UCC's parent company, Nippon Chemi-Con ("NCC"), was ongoing. At his deposition, following the advice of his personal counsel, Mr. Olita chose to assert his Fifth Amendment rights in response to DPPs' questions.

Mr. Olita, who was not charged criminally, died unexpectedly on May 25, 2018—just six days before NCC pled guilty—and never had the opportunity to withdraw his invocations and provide substantive testimony the way a number of other witnesses have.

## **Categories of Fifth Amendment Invocations DPPs Seek to Introduce**

**1.    Olita's testimony concerning his responsibility for the sales, marketing and distribution of capacitors for defendant United Chemi-Con ("UCC") during the relevant time period in the United States. (Olita Tr. at 16:3-19; 26:4-7)**

DPPs first seek adverse inferences regarding Mr. Olita's role at UCC, including his responsibilities and his reporting lines. DPPs have failed to show a substantial need for this information. The facts concerning Mr. Olita's responsibilities are not contested, and in fact can

be testified to by other UCC witnesses.  Indeed, if necessary, UCC is prepared to stipulate to the facts concerning (a) Mr. Olita's responsibility for the sale, marketing, and pricing of capacitors at UCC; (b) the geographic areas of his responsibility; and (c) his reporting lines.[1]

**2.     Olita's testimony that NCC, through its wholly owned United States subsidiary, UCC, sold capacitors that NCC manufactured outside the United States to customers located in the United States.  (Olita Tr. at 17:12-23)**

Next, DPPs seek to introduce Mr. Olita's Fifth Amendment invocations in response to two questions:  (a) "So during the class period UCC sold capacitors to customers in the United States, correct?"; and (b) "And during the class period UCC sold capacitors manufactured outside of the United States by NCC to customers located in the United States; correct?"  Again, DPPs do not have a substantial need for an inference regarding this information.  While DPPs claim that "[o]nly Olita had extensive, personal knowledge of UCC's sales to US customers and NCC's direction and control over them, as well as NCC's and UCC's sales relationship during the class period,"  DPPs' Proffer (ECF 1237) at 2 (emphasis added), that is clearly not the case. Mr. Kakizaki, who worked for both UCC and NCC, has extensive personal knowledge about this subject matter, yet DPPs chose not to ask these questions of him.  More importantly, each and all of the UCC witnesses who will testify in the defense case have personal knowledge regarding these matters and can answer the DPPs' questions, which are in any event included in the sales data produced to DPPs.  And again, in order to simplify things, UCC would be willing to stipulate that the answer to both of these questions is "yes."

---

[1]     At this time, UCC intends to call Steve Watlock, Biren Patel, and Larry Magoncia during the defense case.  Messrs. Watlock and Patel have worked at UCC for 25 years and 20 years, respectively, in sales roles.  Mr. Magoncia has been with  UCC for 16 years, and has been the Vice President of Finance and Administration for the last 12 years.  All three (or any one of them) can testify as to Mr. Olita's roles and responsibilities.

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

**3.      Olita's testimony about UCC's competitors with respect to sales of capacitors to customers located in the United States, and that they included Nichicon, SANYO and AVX.  (Olita Tr. at 17:24-18:3; 18:19-20; 19:10-12)**

DPPs third category of requested invocations concerns invocations made in response to questions about whether Nichicon, Sanyo, and AVX were competitors of UCC with respect to customers in the United States.  No inferences are needed in this category either.

With respect to Nichicon, UCC does not contest it was a competitor in this market.  All of UCC's witnesses have knowledge of competition between UCC and Nichicon and can testify about it.  NCC also intends to question Mr. Kakizaki regarding TX 15626, which reflects competition with Nichicon, and DPPs can of course examine him on the topic.  As to Sanyo and AVX, DPPs have failed to provide independent evidence that these companies competed with UCC for sales in the US.  *None* of the evidence cited with respect to SANYO (Watlock Dep. at 19:3-19:17, 67:21-67:23, attached as Ex. C to DPPs' Proffer) supports DPPs' assertion.  With respect to AVX, DPPs cite to TX 529, which, despite DPPs' characterization of the document, actually describes a meeting at which UCC and AVX discussed a possible private labeling agreement that was never consummated.  (*See* Ex. A, Millman Dep. 167:22-170:4; Ex. B, King Dep. 209:4-210:5.)[2]  But, again, and in any event, there is not a substantial need for an inference to be drawn in this regard, because DPPs can ask any of the UCC witnesses who will be called in the defense case and the relevant AVX witnesses, whose testimony we expect to be introduced, about UCC's competition with these companies.

---

[2]    TX 529 is discussed further with respect to DPPs' categories 4 and 8 below.

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

- 3 -

**4.     Olita's testimony about his pricing communications and information exchanges with competitors in the United States regarding capacitors.  (Olita Tr. at 20:18-21:13; 28:13-25; 29:1-23)**

DPP's fourth category of requested invocations concerns responses to questions regarding Mr. Olita's communications and agreements with competitors regarding capacitor prices and the capacitor business generally.  But DPPs have failed to provide independent evidence in support of the proposed inferences they seek.  In addition to TX 529, discussed above, DPPs cite only the deposition testimony of Russell Edwards, who was the President of Nichicon America, as well as two communications in which Mr. Edwards and Mr. Olita were involved (TX 2887 and 2864).  These do not provide the independent evidence required.

First, there has been no evidence that Nichicon America (as opposed to its parent company, Nichicon) participated in the alleged conspiracy.  Mr. Edwards was questioned at his deposition regarding TX 2887—and his contacts with Mr. Olita generally—and that testimony refutes DPPs' proposed adverse inference.  Regarding TX 2887, Mr. Edwards testified that "it was [an] attempt at humor."  (*See* Ex. C, Edwards Dep. 179:1, 327:1-327:3.)  Mr. Edwards further testified that he had no reason to believe that Mr. Olita would have cooperated in trying to increase prices in response to his email.  (*Id.* at 327:4-327:21.)

Mr. Edwards also testified that he interacted with Mr. Olita "[a]t social events sponsored by customers or distributors," and that they discussed airlines, travel, and social topics.  (*Id.* at 157:4-157:19.)  He testified that he and Mr. Olita discussed "just . . . general knowledge of the market . . . [u]sually related to information that was public knowledge."  (*Id.* at 63:4-63:9.)  This record does not support the inference DPPs seek.

DPPs also fail to show a substantial need for this information.  In choosing not to play any of Mr. Edwards's deposition testimony to the jury, DPPs have shown that they do not

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

- 4 -

actually believe that these subjects are central to the issues before the jury, and that what they really want is the invocation itself.  The failure to use this substantive testimony also undermines any claim that DPPs do not have a less burdensome way of obtaining this evidence, as is required by *Doe*, 232 F.3d at 1264.

**5.**   **Olita's testimony regarding price increase communications to U.S. customers after receiving confirmation from Chemi-Con in Japan (NCC) that competitors based in Japan had agreed to increase prices applicable to customers in the United States. (Olita Tr. at 21:14-21:25; 47:2-47:15; 47:21-48:21; 57:24-58:6; 58:24-59:8; 84:13-85:1; 86:14-87:9)**

In this category, DPPs seek to introduce Fifth Amendment invocations regarding what they refer to as "price increase communications."  The testimony relates almost entirely to three exhibits:  TX 2871, 2851, and 2857.  DPPs have failed to show a substantial need for this testimony.  All three of the exhibits at issue involve Mr. Kakizaki, and again, if testimony about these exhibits was truly central to the issues in this case, DPPs could have (and should have) asked Mr. Kakizaki about them.  Indeed, DPPs chose to question Mr. Kakizaki regarding *one* of these documents (TX 2857) at trial on March 12, 2020, but not the other two.  DPPs can also question Mr. Watlock, Mr. Magoncia, and Mr. Patel regarding TX 2857 and 2851, as they were all recipients of the emails.  Likewise, DPPs can question Mr. Magoncia regarding TX 2871.

DPPs cite to Mr. Kakizaki's deposition for the proposition that he admitted that TX 2851 reflected a desire to increase prices.  But, in fact, Mr. Kakizaki testified that "the idea I'm trying to convey here is that the customers for which this 5 percent increase would be directed at/targeted, would not be every one of them, but a subset of the customers."  (*See* Kakizaki Dep. 115:12-115:17, attached as Ex. J to DPPs' Proffer.)  Again, DPPs chose not to question Mr. Kakizaki about this exhibit at trial.

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

- 5 -

6.      Olita's testimony about his participation in Dell online auctions, and that he communicated with representatives of U.S. affiliates of co-conspirators to confirm and implement pricing agreements in the U.S. reached by NCC and its co-conspirators.  (Olita Tr. at 40:22-41:4; 42:2-43:2; 54:13-55:7; 55:12-56:12; 72:1-72:14; 72:16-72:23; 73:6-75:20)

7.      Olita's testimony concerning his contacts with Russell Edwards, a top executive of Nichicon America, about the raising, fixing and stabilizing of capacitor prices to purchasers of capacitors in the United States.  (Olita Tr. at 73:6-75:20)

In categories  6 and 7, DPPs seek to offer Fifth Amendment invocations in response to questions regarding Mr. Olita's participation in certain Dell auctions; his knowledge of competitors' price increases; and his communications with Mr. Edwards.  Because Category 7 is entirely a subset of what is contained in Category 6, we address them together.

In each case, *all* of the documents DPPs cite for these categories involve witnesses other than Mr. Olita.  *First*, TX 2864 and TX 2887 (which DPPs refer to, seemingly in error, as TX 2862), concern Mr. Olita's interactions with Mr. Edwards, whose deposition testimony is available but DPPs chose not to designate.  As explained above, Mr. Edwards testified regarding TX 2887 that "it was [an] attempt at humor," and that he had no reason to believe that Mr. Olita would have cooperated in trying to increase prices in response to his email.  (*See* Ex. C, Edwards Dep. 179:1, 327:1-327:21.)  Regarding the interaction at a supplier conference referenced in TX 2864, Mr. Edwards testified that he did not remember the conversation referenced in the email, but remembered that a customer was always present during the conference.  (*Id.* at 328:9-329:4.)  *Second*, both TX 2849 and TX 2856[3] involve Mr. Kakizaki, who DPPs chose not to ask about these documents.  *Third*, Mr. Patel and Mr. Watlock are both copied on the email chain in TX

---

[3]    Although Mr. Kakizaki is not copied on this email chain, the questions Mr. Olita was asked at his deposition about the exhibit relate to information he supposedly obtained from Mr. Kakizaki.

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

2863, and DPPs can question them when they testify during the defense case.  DPPs clearly have less burdensome means of obtaining information regarding these communications.  *Fourth*, TX 2871 involves Mr. Kakizaki and Mr. Magoncia, and DPPs can still question Mr. Magoncia about the document during the defense case to the extent they have a need for the information.

With respect to the communications involving Mr. Edwards, DPPs questioned Mr. Edwards extensively at his deposition regarding his contacts with Mr. Olita.  Instead of introducing the substantive testimony they elicited, they now seek to obtain adverse inferences on these topics.  While that may be strategically preferable for DPPs, it completely undermines any argument that there is not a less burdensome way to obtain the information, as well as any claim that the testimony on these topics is actually central to the issues in the case.

Finally, as stated above, there has been no evidence that Nichicon America (as opposed to Nichicon, its parent) participated in the alleged conspiracy.

**8.    Olita's testimony concerning a meeting he attended with other executives of NCC, UCC and ECC, and AVX, at which the two companies agreed not to compete with one another and to exchange information with each other in the future.  (Olita Tr. at 97:14-99:8)**

In this eighth and last category, DPPs seek to introduce Fifth Amendment invocations in response to questions regarding a particular exhibit, TX 529.

As explained above, TX 529 describes an April 2005 meeting between UCC and AVX. Although DPPs seek to characterize this meeting as one at which the companies "agreed not to compete with one another," the document—like every witness who has testified about it—describes a discussion regarding the possibility of a private labeling agreement between UCC and AVX.  (*See* Ex. A, Millman Dep. 167:22-170:4; Ex. B, King Dep. 209:4-210:5.)  DPPs thus have no independent evidence in support of their proposed inference.

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

DPPs have also failed to show substantial need.  DPPs included TX 529 on the list of documents that they planned to use with Mr. Kakizaki at trial, and we did not object.  DPPs nevertheless chose not to question Mr. Kakizaki about this document during their direct examination.  That decision shows that DPPs had a less burdensome way to obtain the information they seek, and undermines any claim that the information is central to the case.

### Rule 403

In addition to failing to meet the requirements to introduce Fifth Amendment invocations under *Doe*, 232 F.3d at 1264, DPPs' request for adverse inferences presents unique issues that are not raised by the other Fifth Amendment proffers in this matter.  Mr. Olita was deposed while DOJ's investigation was ongoing.  Mr. Olita passed away days before NCC pled guilty. Several of the witnesses in this case who initially invoked the Fifth Amendment later chose to testify substantively, after the criminal investigations against their employers had concluded. Here, there is reason to believe that Mr. Olita would have likewise provided substantive testimony once there was no longer a risk of criminal prosecution, and there is reason to believe that his testimony would not support the inferences that the DPPs seek.

In light of these considerations—coupled with the particularly weak showing DPPs have made with respect to independent evidence and substantial need—UCC respectfully submits that the probative value of Mr. Olita's Fifth Amendment testimony would be substantially outweighed by the danger of unfair prejudice to UCC, and should thus be excluded under Rule 403.

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

- 8 -

Dated:  March 15, 2020

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  /s/ Farrah R. Berse

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
esega@paulweiss.com

KAUFHOLD GASKIN LLP
Steven Kaufhold (SBN 157195)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 445-4621
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendant*
*United Chemi-Con, Inc.*

UCC'S RESPONSE TO PROFFER OF EVIDENCE IN SUPP. OF ADMISSIBILITY OF ADVERSE
INFERENCE REGARDING FIFTH AMENDMENT DEP. TESTIMONY OF ANTHONY OLITA
Case Nos. 3:14-CV-03264-JD; 3:17-MD-2801-JD

- 9 -