UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: THE DIRECT PURCHASER CLASS ACTION | Master File No. 3:17-md-02801-JD<br>Case No. 3:14-cv-03264-JD<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Date:   November 23, 2020<br>Time:  11:00 a.m.<br>Place: Zoomgov.com<br>Judge: The Honorable James Donato |

In advance of the pretrial status conference to be held on November 23, 2020 at 11:00 a.m., the Direct Purchaser Class (the "Class" or "Plaintiffs") and undersigned Defendants hereby submit this Joint Pretrial Conference Statement.

## I.    Defendants' Request for Adjournment of January 19, 2021 Trial Date Based on Current Surge in COVID-19 Cases

### a.    Defendants' Position

Defendants respectfully request that the Court adjourn the currently-scheduled January 19, 2021 trial date in light of the recent surge in COVID-19 cases and the resulting implications for trial preparation and trial itself.  Defendants propose a status conference in January to set a trial date based on information that will be available at the time.

The situation with COVID-19 is undoubtedly worsening across the country, and we believe it is increasingly clear that a trial in January will at a minimum create exceptional complications that make trial virtually impossible, and at worst present a significant and unnecessary risk to all of the trial participants and to the broader community.  Having already started and stopped trial once, we respectfully believe the prudent and proper course is to protect the parties and the court from the costs of another false start by adjourning the trial until a time, likely in the Spring or Summer of 2021, when trial can be held without the complications present at this time, and without risk to witnesses, lawyers, court personnel and jurors.

Not surprisingly given data emerging from the Center for Disease Control, and despite efforts to take precautions,[1] many courts around the country have in the last week alone decided to halt in-person

---

[1]    Although Courts around the country have tried to implement safety protocols that would allow for in-person court appearances, those safety protocols have proven less-than-fully effective, with a number of COVID cases being linked to courtroom appearances.  *See, e.g.,*, https://www.natlawreview.com/article/it-s-dangerous-out-there-covid-19-texas-court (multiple trial participants, including a juror and a lawyer, contract COVID-19 in federal court in Texas); https://kfdm.com/news/local/developing-juror-tests-positive-for-covid-in-first-in-person-jury-trial (juror tests positive resulting in a mistrial in Jefferson County, Texas); https://www.heraldonline.com/news/local/crime/article247245404.html (member of a jury pool in South Carolina diagnosed with COVID-19); https://www.azfamily.com/news/continuing_coverage/coronavirus_coverage/bailiff-who-tests-positive-for-covid-19-potentially-exposes-prospective-jurors/article_1df6dd42-255f-11eb-9994-034ea3c6af49.html (bailiff in Arizona tested positive and potentially exposed jurors to COVID-19).

jury trials.[2]  Each of California (where the trial will take place), and New York and the Washington D.C. area (where counsel for defendants reside) are currently seeing rising COVID infection rates.[3]

The Situation in California

As the Court is no doubt aware, COVID-19 is surging in California.  California passed the 1 million COVID-19 infection mark last week and the daily average as of November 17, 2020 is 8,783 – an increase of 102% from the average two weeks earlier.[4]  As a result, the Governor has imposed new restrictions, including moving San Francisco county from the "yellow tier" to the "red tier" within the last week, and banning indoor dining and reducing facility capacity to 25%.[5]  In addition, California is strongly urging all individuals arriving from out-of-state to quarantine for 14 days upon arrival, an obligation that would require multiple defense counsel to either ignore their obligations to quarantine or travel to California (and be away from home during particularly difficult times) far sooner than we otherwise would.[6]  California has issued Guidance for Private Gatherings that prohibit gatherings that include more than three households and recommends that indoor gatherings should be two hours or

---

[2]    *See, e.g.,* https://abc7ny.com/new-york-court-jury-service-covid-19-ny-coronavirus-in/7926957/ (no new jury trials in New York State courts as of Nov. 16, 2020); https://delawarestatenews.net/news/jury-trials-postponed-statewide-due-to-covid-19-concerns/ (same regarding Delaware); https://www.nj.com/coronavirus/2020/11/nj-suspends-jury-trials-in-person-grand-jury-sessions-as-covid-19-cases-climb.html (same regarding New Jersey); https://www.msn.com/en-us/news/crime/federal-court-suspends-in-person-jury-trials-naturalizations-due-to-covid-19-spread/ar-BB1aZV9f (U.S. District Court for the Southern District of Indiana halts jury trials at least through January 25, 2021).

[3]    The risks of COVID-19, as the Court is aware, are significant.  One central member of the defense counsel team is immunocompromised, putting that individual at an even higher risk of severe consequences, should that individual contract COVID-19.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html.  Another member of the defense counsel team is a caretaker for an immunocompromised individual.

[4]    https://www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html#:~:text=At%20least%2032%20new%20coronavirus,the%20average%20two%20weeks%20earlier

[5]    nbcbayarea.com/news/coronavirus/san-francisco-reverts-to-red-tier-due-to-covid-19-surge/2400456/

[6]    cnn.com/world/live-news/coronavirus-pandemic-11-16-20-intl/h_98b67d52d13512681a5096abcc5449fa?

less.[7]  Given these circumstances, and the repeated warnings from public health officials that these conditions are only likely to worsen after the Thanksgiving and Christmas holiday season,[8] it does not seem likely that a trial can be started in California, in mid-January, with a reasonable guarantee that it will not be interrupted by COVID-19 concerns.

The Situation in Other Relevant States

The majority of defense counsel reside in New York or in the Washington DC area.  While the situation in those states is slightly better than in California at the moment, it is worsening by the day. There are eight times the number of new COVID-cases in New York State every day as compared to just three months ago.[9]  As a result of the steadily increasing infection rate, New York City schools just announced this week that they will be closing for all in-person learning.[10]  There are also quarantine requirements for New York residents returning from out of state.  Virginia fares no better, with a positivity rate of 7.1% leading to new restrictions being imposed just this week.[11]

The Situation in Japan

As the Court is aware, a number of witnesses reside in Japan, a jurisdiction from which their testimony cannot lawfully be taken remotely.  That prohibition leaves only the options of the witnesses traveling to the United States to testify live or to travel to another Asian country to give testimony from there.  Both present COVID-related difficulties at this time.  As a starting point, USCIS has restricted the issuance of visa services and the US Embassy does not appear to be processing the type of visa

---

[7]     https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Guidance-for-the-Prevention-of-COVID-19-Transmission-for-Gatherings-November-2020.aspx

[8]     *See, e.g.*, https://www.usatoday.com/story/news/2020/11/10/covid-cases-rising-and-winter-worse-experts-say/6226184002/ ("Between the cold weather, lax behaviors and the holidays, December and January will be the worst months the United States has seen so far in the COVID-19 pandemic, public health experts said this week."); https://www.pbs.org/newshour/health/why-we-cant-have-a-normal-thanksgiving-this-year (quoting a physician at Brigham and Women's Hospital and Harvard Medical School as saying, "If we let everybody congregate all of a sudden in their homes for Thanksgiving or the holidays…you are going to fire that thing and it's going to get even worse quickly.").

[9]     https://projects.newsday.com/long-island/tracking-the-coronavirus-on-long-island/

[10]    https://www.nytimes.com/2020/11/18/nyregion/nyc-schools-covid.html.

[11]    https://www.nbc12.com/2020/11/18/over-new-covid-cases-confirmed-virginia-covid-related-deaths-reported/; https://www.wusa9.com/article/news/health/coronavirus/virginia-covid-19-restrictions-begin-monday-heres-what-you-need/65-c2785da2-b0cf-4ace-bcd9-374ab6d0de4d

necessary for one of Matsuo's witnesses to travel to the United States.[12]  We are also aware of significant delays for all visa appointments and processing services.  While Japan does have a "business track" to facilitate travel to Singapore, Korea, and Vietnam for certain urgent and necessary business activities, all travelers are required to quarantine for 14 days upon arrival, making a short trip to give testimony impossible.[13]  Moreover, there are testing and 14-day quarantine requirements when the witnesses return to Japan.[14]  The bilateral quarantine obligations would potentially impact trial witnesses for up to a month, curtailing their ability to handle their work and personal obligations.

*          *          *

In light of these risks—and the very real possibility of a vaccine that would alleviate these concerns—Defendants respectfully submit that the safest and wisest choice is to adjourn trial until later in 2021.  This is particularly so given that the parties have already had to bear the expense of preparing for and beginning a trial only to see it interrupted by COVID-19.

### b.    Plaintiffs' Position

Consistent with the Court's guidance as provided in the October 22, 2020 trial setting conference, the Class is confident that the Court and the Northern District of California has set up adequate safeguards to protect all trial participants at the upcoming trial. Further, trials across the nation—even in regions where COVID-19 outbreaks are even more severe than in the San Francisco Bay Area—have been successfully tried and progressed to jury verdict. *See*, *e.g.*, Pete Brush, LAW360, *MiMedx Execs Convicted in SDNY's 1st Virus-Era Fraud Trial* (12:03 PM EST Nov. 19, 2020); https://www.law360.com/whitecollar/articles/1329584 (jury verdict reached in trial "[h]eld in a Lower Manhattan courtroom refitted for virus safety" in case *United States v. Petit*, No. 19-cr-00850-JSR (S.D.N.Y.)); Jury Verdict, *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-00855 (E.D. Tx. Oct. 30, 2020), ECF No. 978. The Class is confident that the parties can draw on the collective wisdom and lessons learned from past COVID-era jury trials to implement procedures (e.g., remote testimony, social distancing, masks in the courtroom, limitations on the amount of in-person attendees in the courtroom, and other

---

[12]    https://jp.usembassy.gov/visas/
[13]    https://www.mofa.go.jp/ca/cp/page22e_000925.html#no4
[14]    *Id.*

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD

safeguards as recommended by health authorities) that ensure that the upcoming trial can be conducted safely and successfully. Indeed, trials are still commencing. *See, e.g.*, Gina Kim, *Trial in large civil case begins in San Bernardino despite virus worries*, DAILY JOURNAL, Nov. 11, 2020, at 2 (jury trial in multiparty civil case is underway in San Bernardino County Superior Court in *Freeman v. Bd. of Trustees of the Cal. State Univ.*). The Class note that the cases identified in Defendants' footnote 1 took place in states that, until recently, did not appear to take adequate protections against the virus, unlike conditions in the San Francisco Bay Area generally and within the Court itself.

To the extent any participants may be required to travel or quarantine, COVID-19 restrictions—and the adjustments individuals have made in response to it—are certainly disruptive but they are not new. People have been working remotely across the world for the better part of a year. Any disruption caused from working remotely while quarantining in order to facilitate testimony will be minimal. Indeed, based on the parties' discussions, most if not all witnesses at trial have already been working remotely, and will continue to do so for the foreseeable future. It makes little difference if the witness is working remotely in Japan or in another Asian country, that is deemed safe by the Japanese government, from which remote testimony is permissible. Finally, there is no reason that most or all of the testimony could not be prerecorded through remote means and presented to the jury in that manner.

## II.   Pretrial Schedule

Subject to the Court's approval, the parties have agreed to the following pretrial schedule. The parties do not anticipate significant changes to adopted or scheduled filings:

| Event | Date |
|---|---|
| Pretrial Meet-and-Confers | *November 6, 2020 and November 17, 2020 - Complete* |
| Deadline to submit joint pretrial statement | The parties propose relying on the prior joint pretrial statement previously filed with the Court. MDL ECF No. 1091. |
| Deadline to submit trial briefs | The parties propose relying on prior trial briefs previously filed with the Court. MDL ECF Nos. 1088, 1092. |
| Deadline to submit proposed jury instructions | The parties propose relying on the preliminary jury instructions used at the first trial and on the previously-submitted proposed final jury instructions, subject to appropriate modifications |

| | |
|---|---|
| | including any changes in relevant law. MDL ECF No. 1216 (Revised Final Preliminary Jury Instructions); *see also* MDL ECF No. 1123 (Joint Proposed Final Jury Instructions and Objections). |
| Deadline to file motions *in limine* | The parties propose adopting the Court's prior rulings on the motions *in limine* and treating those rulings as applicable to the current trial without waiving appeal rights. MDL ECF Nos. 1140, 1201. |
| Deadline to submit verdict forms | The parties propose submitting the prior proposed verdict forms, subject to necessary clerical modifications. *See* MDL ECF No. 1093-2 and 1186. |
| Deadline to exchange proposed witness lists | The Class's Proposal: December 7, 2020<br><br>Defendants' Proposal: December 15, 2020 |
| Deadline to exchange amended exhibit lists | December 15, 2020 |
| Deadline to exchange objections to additional exhibits | December 18, 2020 |
| Deadline to meet and confer regarding exhibits | December 22, 2020 |
| Deadline to exchange deposition designations | December 22, 2020 |
| Deadline to file final joint exhibit list | December 30, 2020 |
| Deadline to file joint proposed voir dire | December 30, 2020 |
| Deadline to file joint proposed witness list | December 30, 2020 |
| Deadline to exchange counter designations and objections to affirmative designations | January 4, 2021 |
| Deadline to exchange objections to counter designations | January 6, 2021 |
| Deadline to meet and confer regarding deposition designations | January 8, 2021 |
| Deadline to file final deposition designations | January 12, 2021 |
| Final Pretrial Conference | January 15, 2021 |
| Trial Start Date | January 19, 2021 at 9:00 a.m. |

In addition, the parties agree to exchange demonstrative exhibits two calendar days before their intended use. *See* MDL ECF No. 1047.

**a.**    **Defendants' Position regarding Witness and Exhibit Lists and Deposition Designations**

During the prior March 2020 trial, only 108 exhibits were offered and only 101 were admitted. For the retrial, Defendants propose that each side's exhibit list be limited to three hundred (300) exhibits from among those included on the prior exhibit lists, consistent with this Court's direction that the retrial should be more focused than the March trial.   Defendants likewise propose that the parties be limited to witnesses and deposition designations identified in their respective pretrial submissions prior to the first trial.

**b.**    **Plaintiffs' Position**

The Class agrees that the retrial will be more focused than the March trial. The Class, however, is still free to present its case as it chooses. The Class anticipates few additions to witnesses, exhibits, or deposition designations previously submitted. At the time of the parties' previous submissions of witness lists, exhibit lists, and deposition designations, there were many more defendants in the case, which necessarily requires different tactical considerations. *See Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."). Even during trial, an additional defendant (AVX) was present, requiring different considerations in which witnesses and what evidence to present. The case is now different and requires different tactical considerations which may involve different witnesses, exhibits, and deposition designations. The Class should be able to adjust its tactical choices and present exhibits, witnesses and deposition designations that tether more closely to the revised circumstances.

**III.    Trial Length**

The parties understand the Court's stated time allotment for trial is approximately two weeks beginning January 19, 2020, Monday to Friday from 9 a.m. to 5 p.m. The parties agree to divide the time equally, and respectfully reserve the right to request additional trial days if necessary.

**IV.    Pretrial Statements**

The parties propose adopting the prior joint pretrial statement filed with the Court. MDL ECF No. 1091; *see* Part I, *supra*.

## V.  Trial Briefs

The parties propose adopting the prior trial briefs filed with the Court. MDL ECF Nos. 1088, 1092; *see* Part I, *supra*.

## VI.  Jury Instructions

The parties propose relying on prior preliminary jury instructions and the parties' previously submitted proposed final jury instructions, subject to appropriate modifications including changes in relevant law. MDL ECF Nos. 1216 (Revised Final Preliminary Jury Instructions), 1123 (Joint Proposed Final Jury Instructions and Objections); *see* Part I, *supra*.

## VII.  Motions *in Limine*

The parties suggest that prior rulings made on motions *in limine* be deemed as made in this trial, without waiving any appeal rights the parties had at the time of those rulings for the March trial.  MDL ECF Nos. 1140, 1201; *see* Part I, *supra*.

## VIII.  Verdict Form

The parties propose submitting their respective prior proposed verdict forms, subject to clerical modifications and any change in relevant law. *See* MDL ECF No. 1093-2 and 1186; Part I, *supra*.

## IX.  Prior Trial Rulings

The parties agree that there is no need to re-litigate rulings made by the Court prior to and during the March 2020 trial, to the extent applicable based on the witnesses and exhibits offered during the upcoming trial. Consistent with the Court's guidance, the parties agree to be bound by the Court's prior rulings subject to the understanding that those rulings are deemed to have been made in this trial and no appeal rights the parties had at the time those rulings were initially issued are waived.

## X.  Remote Videoconference Testimony

### a.  Plaintiffs' Position

Due to the continued spread of COVID-19 in the United States, and consistent with the Court's guidance, the parties agree that foreign witnesses who are reluctant to travel to the United States should testify via remote videoconference technology. Fed. R. Civ. P. 43(a); *see In re RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 972-73 (D. Minn. 2020) (COVID-19 pandemic

constituted good cause and compelling circumstance to permit use of contemporaneous remote video testimony); *see also United States v. Donziger*, Nos. 19-CR-561 (LAP), 11-CV-691 (LAK), 2020 WL 6364652, at *1-3 (S.D.N.Y. Oct. 28, 2020) (permitting remote foreign testimony in lieu of in-person testimony in bench trial in light of COVID-19). The Class believes this testimony may be either pre-recorded before trial or live (either in-person or remotely).

Because Japanese law does not permit remote testimony, should videoconference testimony be unfeasible for witnesses in Japan, the Class believes that the parties should be responsible for arranging remote testimony of their Japanese witnesses to be given from countries or regions less affected by COVID-19 from which remote testimony is permitted. *See Panasonic Corp. v. Getac Tech. Corp.*, SA CV 19-01118-DOC (DFMx), 2020 WL 4728081, at *1 (C.D. Cal. Aug. 6, 2020) (suggesting Hawaii as a location for remote depositions of Japanese witnesses in light of COVID-19, "especially if the Japanese government includes Hawaii in a 'travel bubble'"); *see also* Ministry of Foreign Affairs of Japan, *Phased Measures for Resuming Cross-Border Travel*, https://www.mofa.go.jp/ca/cp/page22e_000925.html (last visited Nov. 17, 2020) (outlining procedures for travel of Japanese residents to certain southeast Asian countries deemed safe by the Japanese government).

### b.  Defendants' Position

Defendants intend to call certain witnesses to testify live or by videoconference if possible. Defendants note that travel restrictions and self-quarantine requirements, which are subject to change without notice based on fluctuating COVID-19 infection rates, will at a minimum require flexibility in decisions about whether witnesses are called live or remote.

## XI.  Lay Witnesses

The parties have met and conferred and have been unable to resolve an issue relating to the testimony of Tomohiko Miyata (Matsuo), a proposed defense witness.

### A.  Tomohiko Miyata

#### i.  Plaintiffs' Position

Miyata was first disclosed to the Class by Matsuo on the eve of the prior trial on January 2, 2020, a year-and-a-half after the close of fact discovery, as a live witness. Miyata was not previously

designated or disclosed, and the Class had no opportunity to depose him. Matsuo attempts to excuse its failure to disclose Miyata on the grounds that the Class obtained related testimony from a Matsuo "corporate designee" witness whose deposition was taken pursuant to Rule 30(b)(6). At the same time, Matsuo refuses to disclose the subject of Miyata's testimony or how it relates to the testimony of the Rule 30(b)(6) witness taken.

Matsuo's Rule 30(b)(6) designee was Hiyoruki Koga. Koga was deposed twice as Matsuo's 30(b)(6) designee. Matsuo has represented that Koga is unavailable for trial. Matsuo does not explain why Koga is unavailable and what steps, if any, Matsuo has taken to obtain his trial testimony. It appears that Matsuo intends to offer some of Koga's testimony through deposition testimony.

Matsuo has not explained why it wants to proffer live testimony from Miyata in lieu of the testimony of Koga. Matsuo has not explained why it cannot—or will not—offer testimony of a witness with personal knowledge. Matsuo has not disclosed the subjects of the intended testimony and has not explained why it did not disclose them during the discovery process.

It appears that Matsuo wishes to provide live testimony from Miyata, limned by the 30(b)(6) testimony of Koga. In so doing, Matsuo seeks to circumvent or ignore both basic Rules of Evidence as well as its pretrial discovery obligations. With respect to the Rules of Evidence, there is no "corporate designee" exception to Rule 602's personal knowledge requirement, other than expert testimony. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703."). To the extent Miyata does not possess personal knowledge, Matsuo cannot cure these deficiencies by bootstrapping the testimony of another "corporate designee" witness. Absent personal knowledge, Miyata cannot testify. Fed. R. Evid. 602. Limiting a witness to matters within her personal knowledge also clarifies permissible scope of cross-examination. Also, Miyata's 30(b)(6) testimony would be cumulative and duplicative of that of Koga's. *See* Wright & Miller, 8A Fed. Prac. And Proc. § 2147 (3d ed.) ("if a party's desire to substitute a deposition for live testimony is

accommodated, he or she may not cumulate evidence by both testifying at the trial and offering the deposition").

With respect to its discovery obligations, Matsuo failed to disclose Miyata either as a person with knowledge or in their Rule 26 disclosures as a witness. The Class has offered to provide Matsuo an opportunity to cure this failure by taking Miyata's deposition. Matsuo has thus far failed to produce him for deposition. At a minimum, and without waiving its substantive evidentiary objections, the Class is entitled to the deposition, subject to certain safeguards as outlined below.

Miyata has been the subject of numerous meet-and-confers, including in connection with the March 2020 trial. Recognizing the lack of authority for the use of 30(b)(6) testimony of other corporate designees as a substitute for pretrial discovery disclosure, Matsuo now indicates it intends to also offer Miyata to testify as a regular percipient trial witness, based on his own personal knowledge, and as such, Miyata should be precluded from testifying due to his late disclosure as explained above. Further, it is "well within [the Court's] discretion to deny [Matsuo] the right to substitute its 30(b)(6) witness on the eve of trial." *In re Benyamin*, No. 19-CV-1907 (RA), 2020 WL 2832815, at *8 (S.D.N.Y. June 1, 2020). The Court has already disfavored Defendants' attempt to offer other witnesses they failed to timely disclose. *See* MDL ECF No. 1201, ¶ 24. It is unfair for Matsuo to designate a new witness at this time, particularly when Matsuo already has a witness (Koga) who it may proffer to testify on the same topics. *See id*. Importantly, discovery in this case occurred years ago and the case has been prepared for trial. Further, the prior trial resulted in a mistrial and months have elapsed since then without any attempt by Matsuo to cure their discovery failures.

At a minimum, the Class should be allowed to take Miyata's deposition before he is proffered at trial. In addressing similar circumstances, courts have recognized that such late disclosed witnesses may testify, consistent with the personal knowledge requirement and the protections against trial by ambush embodied in the federal pretrial discovery rules. Courts have allowed a substitute witness testimony under strict limitations: (1) the adverse party is given the opportunity to depose the witness; (2) the witness is not allowed to repudiate the prior Rule 30(b)(6) testimony; (3) the testimony is limited to the same topics on which the prior Rule 30(b)(6) deponent was designated; and (4) the witness is limited to

testifying to information based on their own personal knowledge. *Green Payment Sols., LLC v. First Data Merchant Servs. Corp.*, CV 18-1463 DSF (ASx), 2019 WL 4221402, at *1 (C.D. Cal. July 2, 2019); *see also Ruzhinskaya v. Healthport Techs., LLC*, No. 14 Civ. 2921 (PAE), 2016 WL 7388371, at *7 (S.D.N.Y. Dec. 20, 2016) (similar conditions).

### i. Matsuo's Position

Matsuo previously designated Hiroyuki Koga as its Rule 30(b)(6) corporate representative. Mr. Koga was Matsuo's Sales Division Manager, as well as a Director and Executive Officer. Mr. Koga left Matsuo's employ and is unavailable to testify at trial.

Tomohiko Miyata succeeded Mr. Koga as Matsuo's Sales Division Manager, and also serves as a Director and Executive Officer. Matsuo intends to call Mr. Miyata as a replacement witness to testify as its corporate representative at trial. *See, e.g.*, *Coach, Inc. v. Visitors Flea Mkt., LLC*, No. 6:11-CV-1905-ORL-22, 2014 WL 2612036, at *2 (M.D. Fla. June 11, 2014) (allowing replacement corporate representative to testify at trial because "a corporation should not be prohibited from calling a designated representative as a witness simply because the person it thought was going to testify leaves its employ"); *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 16-CV-2946-WJM-NYW, 2018 WL 4901159, at *5 (D. Colo. Oct. 9, 2018) (same). Mr. Miyata will testify based on personal knowledge.

Matsuo disclosed to Plaintiffs its intent to call Mr. Miyata as a replacement corporate witness during pretrial exchanges for the March 2020 trial. Contrary to Plaintiffs' assertion, Matsuo explained that Mr. Koga is unavailable to testify at trial because he is no longer employed by Matsuo. Matsuo has been offering to make Mr. Miyata available for a deposition before trial since at least January 6, 2020. Plaintiffs have not accepted that offer to date.

Due to changing Covid circumstances and potential travel limitations, to the extent Mr. Miyata is unavailable to testify for trial, Matsuo plans to rely instead on Mr. Koga's prior videotaped deposition testimony.

## XII.   Expert Witnesses

### a.   Drs. Janusz Ordover and Mark Israel

The parties have met and conferred regarding the presentation of testimony by Dr. Janusz Ordover, NCC's expert witness. Dr. Ordover was properly designated, issued a report and his deposition was taken. Dr. Ordover was designated to testify at the March trial. Due to his health concerns at the time, NCC sought to substitute Dr. Mark Israel.  Dr. Israel also had his deposition taken. NCC has agreed to inform the Class as to its expert for trial by Thanksgiving. It is the Class's position that if Dr. Ordover is able to testify at the January 2021 trial, he should testify.

### b.   Dr. Hal Singer

#### i.   Defendants' Position

After Plaintiffs elicited Dr. Hal Singer's testimony during the March trial, the Court struck the use of certain testimony and requested briefing on whether some or all or of Dr. Singer's remaining testimony should also be stricken from the record.  In connection with that briefing, Class Counsel identified the specific "portions of Dr. Singer's testimony that the Class understands to have been deemed improper" and thus inadmissible at the March 2020 trial. (Dkt. 1244 at 4.)  Class Counsel filed with this Court a copy of Dr. Singer's trial testimony where they identified the specific testimony for exclusion.  (Id. at Ex. A.)

In order to anticipate and avoid similar issues at this retrial, Defendants have asked Class Counsel to identify the opinions and analyses they intend to offer at the retrial.  To date, Class Counsel has refused to provide any information about the scope of Dr. Singer's intended testimony beyond stating that they would not offer one slide from Dr. Singer's prior direct testimony.

During a November telephonic meet-and-confer, Class Counsel argued that they need not provide any information about the intended scope of Dr. Singer's testimony because this Court's prior Daubert Order regarding his testimony is clear and they will comply with it.  When Defendants explained that Class Counsel had made the same argument for the March trial but then violated that Order, Class Counsel agreed to consider Defendants' concerns and respond further.  To date, however,

they have refused to provide any information about the scope of testimony they intend to offer from Dr. Singer.

Accordingly, Defendants request that the Court order the Class to identify with specificity and with reference to Dr. Singer's prior testimony Dr. Singer's opinions and analyses that they intend to elicit at this trial, consistent with their prior representations to this Court about the improper portions of Dr. Singer's testimony.  (Dkt. 1244 at 4, Ex. A.)

### ii.     Plaintiffs' Position

The Class believes that the scope of Dr. Singer's testimony has been limited by the Court in its prior *Daubert* ruling. MDL ECF No. 1153. Should Defendants believe that Dr. Singer's testimony exceeds those bounds, then they should address it in the ordinary fashion—by expressing a contemporaneous objection at trial. Defendants are not entitled to a preview of Dr. Singer's testimony any more than the Class is entitled to a preview of the testimony of Defendants' experts whose permitted testimony is likewise bound.

## XIII.   Evidence Previously Admitted in the March Trial

### a.  Plaintiffs' Position

The Class proposes that, without any party waiving their appellate rights to objections raised at the time, that any exhibits previously stipulated by the parties to be admissible or were previously admitted into evidence in the March trial will be likewise admissible in the upcoming trial

### b.     Defendants' Position

Defendants propose that exhibits previously stipulated by the parties to be admissible or were previously admitted into evidence in the March trial will be likewise admissible in the upcoming trial in the same manner in which they were previously admitted, such as by stipulation (where applicable) or through knowledgeable witnesses who provide necessary foundation and establish admissibility.  Any such documents shall be admitted, as appropriate, during the ordinary course of trial after opening statements.

## XIV.   Recorded Testimony from the March Trial

### a.      Plaintiffs' Position

Due to the COVID-19 pandemic, travel restrictions and health concerns may make it difficult for certain witnesses located outside the United States who testified in-person at the time of the March trial to testify again in the upcoming trial. The testimony of these witnesses taken and recorded in connection with the March trial meets the same requisite criteria and has the same indicia of reliability of other recorded testimony of unavailable witnesses permitted for use at trial, e.g., videotaped deposition testimony, particularly in the face of a global health crisis. *See* Fed. R. Civ. P. 32(a)(4). Likewise, the prior trial testimony was given under oath during a prior trial in the same proceeding involving the same subject matter; and the parties had the opportunity and motive to fully develop that testimony through examination and cross-examination. *See* Fed. R. Evid. 804(b)(1). The Class therefore believes that the testimony given in the March trial can be used for any purpose. The Class further contends that, subject to the Court's approval, that the video testimony of the March trial recorded as a part of the Cameras in Court pilot program may also be used at the upcoming trial, just as pre-recorded video of depositions or other sworn testimony could be used even when a transcript is available, as the recorded testimony is just as reliable as other recorded testimony is. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2010 WL 1998166, at *4 (M.D. Ga. May 18, 2010) (permitting videotaping of in-person trial testimony of foreign witnesses "so that [the parties] will have an option to introduce that testimony in future trials rather than incur the cost, and subject the witnesses to the inconvenience, associated with multiple trial appearances" in MDL proceeding); *see also* Fed. R. Civ. P. 32(c) ("On any party's request, deposition testimony offered in a jury trial for any purpose other than impeachment must be presented in nontranscript form . . ."); *id.* advisory committee's note to 1993 amendment ("On request of any party in jury trial, deposition testimony offered other than for impeachment purposes is to be presented in a nonstenographic form if it is available").

### b.   Defendants' Position

Defendants do not agree that video recordings of testimony from the March trial may be used during any portion of the upcoming trial.  The parties were not informed of (and did not consent to) the use of video recordings at future proceedings.  To the contrary, the Cameras Pilot Guidelines for the Northern District of California state that that "[t]he digital recordings emanating from the pilot . . . *are not the official record of the proceedings, and should not be used as exhibits or part of any court filing*." Guidelines 6(f), https://cand.uscourts.gov/about/court-programs/cameras/guidelines/ (last visited Nov. 15, 2020) (emphasis added); *see also* N.D. Cal. General Order No. 65.  Moreover, allowing use of these recordings would unfairly disadvantage and prejudice Defendants to the extent that only Plaintiffs' case was presented at the first trial, thereby creating an asymmetry in the use of recordings for the upcoming trial.  The fact that the recordings occurred in the courtroom, which will be obvious to the jury in the upcoming trial, is likely to confuse the jury and exacerbate the prejudice of allowing recordings of only Plaintiffs' case to be used in the new trial.

## XV.   Pending Motions

There are currently no pending trial motions in relation to the Direct Purchaser Class case.

Several proffers were pending before the Court before termination of the prior trial. The Class anticipates presenting testimony from some or all of the witnesses proffered. For the Court's reference, the proffers are set forth below:

### A.   Co-Conspirator Proffers (*see* Fed. R. Evid. 801(d)(2)(E))

- Proffer of Evidence in Support of Admissibility of Shinichi Torii's Testimony about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1238, 1238-1.

- Proffer of Evidence in Support of Admissibility of Videotaped Deposition Testimony of Gordon Hoey about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1242, 1242-1.

- Proffer of Evidence in Support of Admissibility of Tadaaki Nishizaka's Testimony about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1245, 1245-1.

- Proffer of Evidence in Support of Admissibility of Shinobu Ishigami's Testimony about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1248, 1248-1.

**B.     Fifth Amendment Proffers**

- Proffer of Evidence in Support of Admissibility of Adverse Inference Regarding Fifth Amendment Deposition Testimony of Anthony Olita. MDL ECF Nos. 1237, 1237-1; *see also* MDL ECF Nos. 1250, 1250-1-3 (response).

- Proffer of Evidence in Support of Admissibility of Adverse Inference Regarding Fifth Amendment Deposition Testimony of Ikuo Uchiyama. MDL ECF Nos. 1243, 1243-1.

**XVI.  Opening Statements**

**a.     Defendants' Position**

Defendants propose that there be enforced time limits imposed on opening statements, and that each party's opening statement be limited to no more than 90 minutes.  Neither side will be permitted to exceed the 90 minutes allotted.

**b.     Plaintiffs' Position**

The Class requested Defendants' position on time limits on November 6, 2020. The Class has not seen Defendants' position until shortly before filing this pretrial conference statement. Notwithstanding, the Class agrees that a 90-minute limitation for each side's opening statements is reasonable.

Dated:  November 19, 2020

Respectfully Submitted,

By:      */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940

*Lead Counsel for the Direct Purchaser Class*

Dated:  November 19, 2020

MORRISON & FOERSTER LLP
Bonnie Lau
Margaret Webb
425 Market Street
San Francisco, CA 94105
blau@mofo.com
mwebb@mofo.com

David D. Cross
2000 Pennsylvania Ave., NW
Washington, D.C. 20006-1888
dcross@mofo.com

By:      */s/ Bonnie Lau*

Attorneys for Defendant
MATSUO ELECTRIC CO., LTD.

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD

19

JOINT PRETRIAL CONFERENCE STATEMENT

Dated:  November 19, 2020

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Charles F. Rule
Joseph J. Bial
2001 K Street, NW
Washington, DC 20006-1047
rrule@paulweiss.com
jbial@paulweiss.com

Roberto Finzi
Farrah R. Berse
1285 Avenue of the Americas
New York, NY 100196064
rfinzi@paulweiss.com
fberse@paulweiss.com

KAUFHOLD GASKIN LLP
Steven Shea Kaufhold
388 Market St, Suite 1300
San Francisco, CA 94111
skaufhold@kaufholdgaskin.com

By:        */s/ Joseph J. Bial*

Attorneys for Defendants
NIPPON CHEMI-CON CORPORATION and
UNITED CHEMI-CON, INC.

## ATTESTATION

Pursuant to Civil Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose

behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 19, 2020                     */s/ Joseph R. Saveri*
                                              Joseph R. Saveri