**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: THE DIRECT PURCHASER CLASS ACTION | Master File No. 3:17-md-02801-JD<br>Case No. 3:14-cv-03264-JD<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Date: November 18, 2021<br>Time: 12:00 p.m.<br>Place: Courtroom 11<br>Judge: The Honorable James Donato |
|---|---|

In advance of the pretrial status conference to be held on November 18, 2021 at 12:00 p.m., the Direct Purchaser Class (the "Class" or "Plaintiffs") and undersigned Defendants (together, "Parties") hereby submit this Joint Pretrial Conference Statement.

In particular, the Parties seek the Court's guidance on the following issues:

- Plaintiffs' request to revisit the Court's prior order prohibiting references to UCC and NCC having the same counsel, Part IX, *infra*;
- Plaintiffs' request to use videotaped testimony from the previous trial, Part X, *infra*;
- Plaintiffs' request to present Mr. Kakizaki's revoked Fifth Amendment invocations, Part XI, *infra*;
- Defendants' request to temporarily remove recordings of the previous trial from the court's public website, Part XII, *infra*;
- Plaintiffs' request for leave to file an additional motion *in limine*, Part XIII, *infra*; and
- Plaintiffs' request to pre-admit certain exhibits, Part XIV, *infra*.

## I. Pretrial Schedule

The Court entered the following pretrial schedule on October 22, 2021. MDL ECF No. 1553.

| Event | Date |
|---|---|
| Deadline to submit trial briefs | The Parties propose relying on prior trial briefs previously filed with the Court. MDL ECF Nos. 1088, 1092. |
| Deadline to submit proposed jury instructions | The Parties propose relying on the preliminary jury instructions used at the first trial and on the previously submitted proposed final jury instructions, subject to appropriate modifications including any changes in relevant law. MDL ECF No. 1216 (Revised Final Preliminary Jury Instructions); see also MDL ECF No. 1123 (Joint Proposed Final Jury Instructions and Objections). |
| Deadline to file motions *in limine* | The Parties propose adopting the Court's prior rulings on the motions in limine and treating those rulings as applicable to the current trial without waiving appeal rights. MDL ECF Nos. 1140, 1201. |
| Deadline to submit verdict forms | The parties propose submitting the prior proposed verdict forms, subject to necessary clerical modifications. See MDL ECF No. 1093-2 and 1186. |
| Deadline to exchange deposition designations | Previously exchanged on May 5, 2021 |
| Deadline to exchange proposed witness lists | Previously exchanged on May 5, 2021 |
| Deadline to exchange amended exhibit lists | November 2, 2021 |
| Deadline to exchange counter designations and objections to affirmative designations | November 2, 2021 |
| Deadline to exchange objections to additional exhibits | November 8, 2021 |
| Deadline to meet and confer regarding exhibits | November 9, 2021 |
| Deadline to exchange objections to counter designations | November 9, 2021 |
| Deadline to meet and confer regarding deposition designations | November 15, 2021 |
| Deadline to file joint proposed voir dire | November 12, 2021 |
| Deadline to file joint proposed witness list | November 12, 2021 |
| Deadline to file final joint exhibit list | November 15, 2021 |
| Deadline to file final deposition designations | November 16, 2021 |
| Final Pretrial Conference | November 18, 2021, at 12:00 p.m. in Courtroom 11 |
| Trial Start Date | November 29, 2021, at 9:00 a.m.in Courtroom 11 |

The parties agree to exchange demonstrative exhibits two calendar days before their intended use. *See* MDL ECF No. 1047.

## II. Trial Length and Opening Statements

Consistent with Pretrial Order No. 1, trial has been set for 20 hours per side, not including opening and closing statements; each side will have up to 45 minutes for opening statements and 90 minutes for closing statements. MDL ECF No. 1565, Part I. ¶¶ 4-6.

## III. Pretrial Statements

The Parties propose adopting the prior joint pretrial statement filed with the Court, except as no longer applicable, such as references to certain Defendants who have since settled this case. MDL ECF No. 1091; *see* Part I, *supra*.

## IV. Trial Briefs

The Parties propose adopting the prior trial briefs filed with the Court. MDL ECF Nos. 1088, 1092; *see* Part I, *supra*.

## V. Jury Instructions

Consistent with Pretrial Order No. 1, the Parties submitted updates to the preliminary instructions that were given at the March 2020 trial, MDL ECF No. 1216, and a revised set of proposed final instructions on November 12, 2021. The Parties do not waive any appellate rights to challenge the propriety of the model instructions. MDL ECF No. 1565, Part V., ¶ 2.

## VI. Motions *in Limine*

The Parties suggest that prior rulings made on motions *in limine* be deemed as made in this trial, without waiving any appeal rights the Parties had at the time of those rulings for the March 2020 trial. MDL ECF Nos. 1140, 1201; *see* Part I, *supra*.

## VII. Verdict Form

Consistent with Pretrial Order No. 1, the Parties jointly submitted updated verdict forms on November 12, 2021. MDL ECF No. 1565, Part V., ¶ 3.

## VIII. Voir Dire and Witness Lists

Consistent with the scheduling order set forth above, the Parties jointly submitted their proposed witness lists on November 12. The parties also filed separately submissions regarding voir dire on November 12.

## IX. Prior Trial Rulings

Consistent with the Court's guidance and except as set forth herein, the Parties agree to be bound by the Court's prior rulings subject to the understanding that those rulings are deemed to have been made in this trial and no appeal rights the Parties had at the time those rulings were initially issued are waived. The Parties generally agree that there is no need to re-litigate rulings made by the Court prior to and during the March 2020 trial.

### a. Plaintiffs' Position

Plaintiffs wish to revisit their prior agreement and the Court's resulting order that no reference may be made to the fact that the same law firm represents both NCC and UCC. This ruling was not the result of a motion *in limine* but instead an oral motion made during the pretrial conference held on February 13, 2020. Plaintiffs did not object to Defendants request at the time, saying they did not foresee it becoming an issue and the Court subsequently granted Defendants' request in Pretrial Order No. 2. MDL ECF No. 1140 at 6 ("DPPs may not make any statements to the jury about the fact that defendants NCC and UCC are represented by the same counsel."). Having seen it play out during the March 2020 trial, Plaintiffs believe that this order permits NCC and UCC to affirmatively mislead the jury in a way that is unfair and prejudicial to the Class. It is a fact that the same law firm represents both NCC and UCC. It is a fact that UCC is a wholly-owned subsidiary of NCC. *See*, *e.g.,* Previously Admitted TEX 1 (business card of Kanji Ohta with NCC and UCC listed on the same card); Joint Pretrial Statement, Dkt. 1091 (identifying undisputed facts including, "United Chemi-Con Inc. was during the Class Period and is a wholly-owned subsidiary of Nippon Chemi-Con Corp."). The primary defense in this case is the effort to portray UCC as an unknowing, uninvolved and independent actor who did not plead guilty. It would be unfair to permit UCC to present evidence and arguments to try to support this point (while NCC keeps its witnesses out of the courtroom) and then to prevent Class

Counsel from commenting during closing arguments that the defense they saw was orchestrated by NCC and UCC jointly through their common law firm.

The law in this Circuit is clear—when a wholly owned subsidiary like UCC "engages in coordinated activity in furtherance of the anticompetitive scheme of its parent . . . [it] is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which it is a part." *Arandell Corp v. Centerpoint Servs., Inc.*, 900 F.3d 623, 632 (9th Cir. 2018). This Court previously made a co-conspirator finding for UCC. *See* Transcript of Proceedings dated March 12, 2020 ("I have heard enough now with respect to both AVX and UCC to determine that they meet the conditions for co-conspirator statements under 801(d)(2)(E).") Defendants are entitled to put on their defense, but when the very issue of whether or not UCC is independent is a key issue in the case it would be inappropriate and prejudicial to assist UCC and NCC in creating a false sense of separateness because one lawyer from Paul Weiss represents himself as NCC's lawyer and another lawyer from the same firm represents himself or herself as UCC's lawyer. *See e.g.*, Transcript of Proceedings dated March 2, 2020, at 34 ("MR. FINZI: I can start, Your Honor. Good morning, everybody. My name is Roberto Finzi. I represent the defendant Nippon Chemi-Corp, which also goes by the name sometimes NCC."); *Id.* at 35 ("MR. BIAL: Good morning. I'm Joseph Bial. I'm here with my colleague Ms. Farrah Berse. We both represent United Chemi-Con Corporation, which also goes by UCC.") That is at least a misrepresentation by omission, given that all of them represent both NCC and UCC. *See id.* at 34 (In response to Mr. Finzi's appearance, the Court asked: "Any colleagues to introduce?" And NCC's counsel responded: "No, Your Honor. It's just me.") Preventing the DPPs from informing the jury about a statement of fact—that NCC and UCC are represented by the same lawyers— would permit Defendants to create a false impression of separateness which is inconsistent with the evidence and the law.

Defendants improperly characterize Plaintiffs' position as attempting to relitigate the issue. This does not comport with the prior history of the case, nor the law. The agreement was made during a pretrial conference, and not a binding trial decision. There was no briefing nor was there argument. This was not a carefully negotiated stipulation or motion *in limine*—it was a simple accommodation which appeared acceptable to the Class in light of the circumstances at the time of the March 2020 trial and

which now is not agreeable. Plaintiffs' have still not been heard fully on this issue. To claim that Plaintiffs are trying to relitigate an issue that has not been resolved is mischaracterizing the issue.

**b. Defendants' Position**

DPPs, as authors of the Complaint in this case, affirmatively opted to sue NCC and UCC as separate entities. Having made that choice, and having specifically agreed to what they are now objecting to, they should not be heard to complain about the two entities mounting separate defenses through separate legal teams from the same firm.

NCC and UCC are separate legal entities. Each has unique defenses to the claims brought against them, and each is entitled to present its defense without any undue prejudice that could result from a jury assuming that they are one and the same, or that they conspired with each other, merely from the fact that they share the same law firm. It is for these reasons that the Court already ordered that "DPPs may not make any statements to the jury about the fact that defendants NCC and UCC are represented by the same counsel." MDL ECF No. 2559 at 6.

The DPPs objection, coming as it does three weeks before trial and *18 months* after agreeing to the Court's order, represents the worst type of gamesmanship and should be overruled. (It is notable in this respect that DPPs—who are revisiting their position based on how the trial "play[ed] out" at trial in March 2020, and who had every opportunity to raise the issue over the last year and a half, have not sought to revisit the issue until now.).

The Court's prior ruling, which is now law of the case, is in any event correct and should not be disturbed. It is entirely consistent with blackletter law that separately incorporated entities deserve to be considered separately by the factfinder. *See E. & J. Gallo Winery*, 2008 WL 2220396, at *5. The principle of corporate separateness is "a general principle of corporate law deeply ingrained in our legal system," *United States* v. *Bestfoods*, 524 U.S. 51, 68 (2003), and a principle endorsed by this Court in this case. *In re Capacitors Litigation*, 14-cv-03264, ECF No. 710 at 19 (ruling that a parent "is not liable for the acts of its subsidiaries") (quoting *In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025,

at *7 (N.D. Cal. May 21, 2009)). DPPs have not pointed to anything that has changed since when that ruling was correctly made by the Court that would justify revisiting the Court's order.

**X. Prior Recorded Trial Testimony**

**a. Plaintiffs' Position**

Consistent with the Court's guidance given at the November 4, 2021 conference, DPPs anticipate that the videorecorded testimony of witnesses from the March 2020 trial will be shown to the jury during this trial to the extent any such witness is no longer available to testify. While it is true that the previous trial was not recorded for the purpose of playing the testimony in the future—no one could have anticipated the COVID-19 pandemic, and the extraordinary circumstances it has created for the case and the witnesses that previously testified. It is incontrovertible that the recording of the previous trial was made with full knowledge of the parties and was made while the witnesses were testifying under oath in a courtroom in full view of a jury representative of the community of the Northern District of California. The reading of deposition transcripts is a poor substitute for video of testimony. In numerous ways, recordings of the previous trial are more immediate, instructive and comprehensible than recorded deposition testimony—namely that it was given in the context of a jury trial as opposed to discovery. By viewing a video, the jury is able to see the witness's demeanor and judge his or her credibility. Jurors today are also more comfortable with videotaped testimony because television has become such a prevalent part of our society. Video will be more likely to keep the jury's attention, especially through the use of other techniques like showing exhibits while the video is played. As defendants note, deposition testimony may be read in when better—and more engaging testimony—like video testimony is *unavailable.* That is not the case here.

Further, due to COVID-19, certain witnesses who testified in the March 2020 trial will be unable to appear. These witnesses are individuals who participated in the conspiracy, admitted to their participation in the conspiracy in the courtroom, and are important to Plaintiffs' presentation of the case. Defendants are mistaken that their case was not equally presented. During the March 2020 trial—each witness was permitted to take the stand only once. Plaintiffs and Defendants had an equal opportunity to examine each witness, and the questions Defendants asked counted towards their case in chief. Due to the worldwide pandemic, some of the witnesses that appeared during the previous trial

simply cannot be present in the courtroom for this trial. That leaves two options, either reading the testimony aloud, which this court has already determined would not be ideal or play video of the prior testimony where both parties were able to fully examine the witness under oath. Transcript of Pretrial Conference dated November 4, 2021, 22:3-4. Plaintiffs believe it would be much more beneficial to the jury to watch a video in which they can exercise core functions like evaluating credibility and demeanor rather than listen to numerous hours of read testimony. Video testimony can also be edited to maximize efficiency and the use of limited time.

**b. Defendants' Position**

Defendants object to the use of videorecorded testimony from the March 2020 trial at this trial. At the November 4, 2021 conference with the Court, the possibility of playing the video of Mr. Hideako Sato's testimony from the first trial was suggested for the first time. At that time, Defendants did not object to the reading of that transcript to the jury but expressly reserved its right to brief for the Court whether the video should be played from the March 2020 trial.[1] For the reasons discussed below, Defendants object to the playing of video testimony for any witness from the March 2020 trial.

As a threshold matter, the parties were not informed of (and did not consent to) the possible use of the March 2020 video recordings at future proceedings. To the contrary, the Cameras Pilot Guidelines for the Northern District of California expressly state that the "[t]he digital recordings emanating from the pilot . . . *are not the official record of the proceedings, and should not be used as exhibits or part of any court filing*." Guidelines 6(f), https://cand.uscourts.gov/about/court-programs/cameras/guidelines/ (last visited Nov. 24, 2021); *see also* N.D. Cal. General Order No. 65. Indeed, and when Defendants raised the issue at a conference nearly a year ago, the Court agreed that "as an operating principle, we're not going to have trial testimony replayed," acknowledging that Defendants' concerns are "not trivial," and that there were issues surrounding the quality of the video recordings from the first trial. 11/23/20 Hr'g Tr. 7:17-8:9.

---

[1] At the last conference, the Court was uncertain as to whether the videos were even available or usable, and informed the parties it would look in to the issue. 11/4/21 Hr'g Tr. 22:12-20. The Court has not yet provided the Parties with an update as to the availability or usability of any such videos.

The use of these recordings would also unfairly disadvantage and prejudice Defendants to the extent that only DPPs' case was presented at the first trial, thereby creating asymmetry in the use of video recordings for the upcoming trial. The result would be that important parts of the DPPs' case are available by video while important parts of Defendants' case are not. And the mere fact that the recordings occurred in the courtroom, which would be obvious to the jury in the upcoming trial, is also likely to confuse the jury and exacerbate the prejudice of allowing recordings of only DPPs' case to be used in the new trial.

To the extent DPPs seek to rely on testimony from the first trial, there is no reason they cannot present that testimony by reading it into the record, as they would for deposition transcripts where no video is available. That solution allows DPPs access to the testimony they wish to present without undue prejudice to the defense.

## XI. Use of Mr. Kakizaki's Fifth Amendment Deposition

### a. Defendants' Position

On August 3, 2017, Mr. Kakizaki was deposed for the first time, and invoked his Fifth Amendment rights in response to substantive questions. Thereafter, Mr. Kakizaki decided that in light of the status of any potential criminal charges, he wanted to revoke that decision and provide substantive testimony at the March 2020 trial. The issue was litigated before this Court and the Court allowed Mr. Kakizaki to revoke that decision, so long as he provided substantive deposition testimony in advance. MDL ECF 1076 at 3. Mr. Kakizaki thereafter provided that deposition testimony over the course of two days and fourteen hours, providing substantive answers to every question asked. At the March 2020 trial, Mr. Kakizaki took the stand and answered DPPs' questions. Because the trial was interrupted between his direct and his cross, his trial testimony included all of the questions asked by the DPPs and no questions by the defense. In their November 12 brief submitted in support of disputed final instruction No. 34, DPPs, for the first time, mentioned that at the upcoming trial, they intend to play Mr. Kakizaki's Fifth Amendment deposition to the jury because Mr. Kakizaki is not available to

come to the upcoming trial. MDL ECF No. 1574-2 at 151. Defendants object to the use of this testimony for the following reasons.

First, Fifth Amendment invocations, particularly in the civil context, have minimal probative value and can be highly prejudicial as juries "may attach undue weight" or fail to understand the witness's decision to invoke his constitutional privilege. *Harrell* v. *DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465-65 (5th Cir. 1992) (finding that prejudicial effect of admission of prior invocation evidence outweighs probative value in light of later substantive deposition); *see also Allstate Ins. Co.* V. *James*, 845 F.2d 315, 320 (11th Cir. 1988) (finding little probative value when defendants chose to exercise their constitutional right against self-incrimination while reasonably believing they were under criminal investigation). That prejudice to NCC and UCC is particularly stark here given that Mr. Kakizaki's decision to invoke his Fifth Amendment rights was his decision (not NCC's or UCC's), yet the harm would inure to the detriment of NCC and UCC. Moreover, it is particularly prejudicial to allow DPPs to take advantage of Mr. Kakizaki's absence in light of the fact that Mr. Kakizaki has decided to not travel to the United States in light of the pandemic and documented issues with his health. (*See* MDL ECF No. 1505 at 8-9.)

Second, and consistent with the Court's prior ruling in not allowing DPPs to play Mr. Kakizaki's invocations, DPPs now have access to 14 hours of substantive testimony from Mr. Kakizaki they took at his deposition prior to the March 2020 trial. Notably, DPPs themselves have designated that testimony for use at trial. In these circumstances, where substantive testimony is available and has been offered by the DPPs, the probative value of the Fifth Amendment invocations is even further reduced. *See Harrell*, 951 F.2d at 1465 (explaining that invoking the privilege is an "ambiguous response" and that probative value is further reduced when a witness subsequently answers the questions).

DPPs' attempt to introduce Mr. Kakizaki's Fifth Amendment invocations now—when they have taken substantive testimony from Mr. Kakizaki and designated it for use at trial—does not serve the fact-finding purposes of this trial. *See* MDL ECF No. 1076 at 2 ("The ends of justice are best served by ensuring that the jury, as the trier of fact, gets as complete an understanding as is realistically possible before passing judgment on the DPPs' claims."). Instead, the introduction of Mr. Kakizaki's Fifth

Amendment invocations would serve only to confuse the jury and unduly prejudice Defendants. The Court should reject DPPs' attempt to do so.

**b. Plaintiffs' Position**

Previously, the Court permitted Mr. Kakizaki to revoke his Fifth Amendment invocation solely *because* of his willingness to appear in person and provide testimony at the March 2020 trial. Now, Mr. Kakizaki and NCC have decided that he no longer wants to come to testify in person. Mr. Kakizaki invoked the Fifth Amendment during discovery in the case. At the last minute, shortly before the March 2020 trial, Mr. Kakizaki had a change of heart and decided to revoke his Fifth Amendment invocations on the ground he would testify to the facts of the case in front of a jury. The Court granted that request on that condition—that he would come and testify at trial. In those extenuating circumstances—and a few days before the March 2020 trial, Plaintiffs were permitted to take a two-day trial deposition of Mr. Kakizaki days before the start of the March 2020 trial where NCC had every opportunity to ask Mr. Kakizaki questions. Instead, Defendants decided to not ask Mr. Kakizaki any questions at the deposition, and save their examination for trial. Indeed, Mr. Kakizaki did come to trial and testify in the courtroom where he was impeached on numerous instances for his changing stances on various incidents. *See* Transcript of Proceedings dated March 12, 2020, 1139-1146. Defendants now wish to keep his trial testimony from the jury—regardless of their ability to request their own witness, Mr. Kakizaki, to appear in person and testify again. Either NCC or Mr. Kakizaki, or both, have decided that his testimony should not be presented to the jury.

Contrary to Defendants' assertions, courts have recognized that Fifth Amendment testimony can prove highly probative and not unduly prejudicial. *See Planned Parenthood*, Case No. 16-cv-002336-WHO (N.D. Cal. Nov. 12, 2019), ECF No. 1006 at 31-32; *see also In re Tableware Antitrust Litig.*, Case No. C-04-3514 VRW, 2007 WL 781960, at *4-5 (N.D. Cal. Mar. 13, 2007) (denying defendants' motion *in limine* to exclude reference to witness' Fifth Amendment deposition testimony).

Allowing Plaintiffs to use Mr. Kakizaki's Fifth Amendment invocations would not be unduly prejudicial to Defendants. Despite Defendants' attempts to claim that the invocation would be unfairly prejudicial to NCC and UCC, the evidence is admissible against both companies. *See In re Polyurethane Foam Antitrust Litig.*, 152 F.Supp.3d 968, 993 (N.D. Ohio 2015) ("The same negative

inference can, in certain circumstances, be offered against an invoking witness's current or former employer") (citing *Coquina Inv. V. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir. 2014); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins.*, 819 F.2d 1471, 1481 (8th Cir. 1987)). It is, however, Plaintiffs who are prejudiced from the failure to produce Mr. Kakizaki to testify. Mr. Kakizaki had been allowed to revoke his Fifth Amendment invocations in order to present live testimony to a jury, but now that Defendants have observed that testimony in front of the jury, they choose to squirrel him away to keep his testimony away from the ears of the new jury. These tactics should not be countenanced.

Defendants' attempts to use the availability of Mr. Kakizaki when favorable to them to avoid Fifth Amendment testimony, and then to secret him away when the testimony supports Plaintiffs' is the worst type of gamesmanship. Mr. Kakizaki was only permitted to withdraw his Fifth Amendment invocations on condition that he appear at trial. He broke the agreement, and for that reason neither he nor his employer should get the benefit of the bargain.

**XII. Publicly Available Recordings of Previous Trial**

As the Court will recall, the first trial was part of the Cameras in the Courtroom Pilot Project ("Pilot Program") and, accordingly, was video-recorded. The first two days of the trial continue to be available online. *See https://www.uscourts.gov/cameras-courts/re-capacitors-antitrust-litigation*. Defendants respectfully request that these videos should temporarily be taken down until the end of the trial so that prospective jurors (who may go the Court's website for instructions relating to their service) cannot view them. To avoid that scenario, Defendants request that the Court temporarily remove the videos from the public website. Defendants do not object to the Court reinstating those video recordings after the present trial is completed.

Plaintiffs do not object to Defendants' request that the Court remove publicly available video recordings of the March 2020 trial. If the Court grants Defendants' request to remove the publicly available video recordings, Plaintiffs request that the Court reinstate those video recordings on the Court's website after the present trial. In the Ninth Circuit and, indeed, in courts across the United States, there is a general presumption in favor of public access to court proceedings and that access should only be limited for compelling interests—and for trials in particular. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980) ("public access to court proceedings is one of the numerous

'checks and balances' of our system'" and "open trials are indispensable to First Amendment political and religious freedoms"); *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1090 (9th Cir. 2014); *see also Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (2d Cir. 1983) ("Throughout our history, the open courtroom has been a fundamental feature of the American judicial system"). Recordings of court proceedings should be given no less deference. Plaintiffs do not oppose Defendants' request so long as the video is made public again at the conclusion of the present trial.

## XIII. Leave to File Motion *in Limine* to Exclude Evidence of Quantum or Amount of Defendants' Sales

### a. Plaintiffs' Position

Consistent with the Court's Pretrial Order No. 1, Plaintiffs seek leave to file an additional motion *in limine* to exclude evidence of the quantum or amount of any individual Defendants' sales. Such evidence would be confusing, duplicative, misleading and prejudicial to the jury. Plaintiffs have reason to believe that Defendants intend to introduce evidence that they only made limited sales of capacitors to the United States during some or all of the Class Period. Such evidence does not show or tend to show any dispute in the case. Defendants do not dispute that Plaintiffs' expert used incorrect sales figures. Indeed they want to present the same evidence in their case. The presentation of duplicative evidence is not in dispute. Such evidence could lead the jury to believe that a particular defendant should not be held liable for the entire conspiracy on account of their limited sales. That is not the law. Under principles of joint and several liability, once a conspirator joins the conspiracy they are liable for the *entire* conspiracy. *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1366-67 ("All conspirators are jointly liable for the acts of their co-conspirators"). Further, as the Ninth Circuit has repeatedly held, a coconspirator may be held liable for the conspiracy even if the connection was "slight." *United States v. Testa*, 548 F.2d 847, 854 (9th Cir. 1977). Evidence that a Defendant only made a small amount of sales into the United States when compared to the total amount of commerce involved risk the jurors weighing the quantum of sales in their determination, a result which is against well-established law. Indeed, Matsuo has pleaded guilty and its connection to the conspiracy is established. The Court will provide a preliminary instruction on this fact. The fact Matsuo made limited

sales into the United States is confusing and will only serve to mislead the jury on the correct law to apply regarding a conspirator's participation for liability.

In particular, Plaintiffs believe that Matsuo's witness Tomohiko Miyata intends to testify as to the amount of Matsuo's sales to the United States during the Class Period. Defendants confirmed during a meet and confer call on November 10, 2021, that Matsuo intends to use Mr. Miyata as the sponsoring witness to introduce two summary exhibits purporting to show Matsuo's United States sales during the Class Period. During his deposition testimony it was clear that Mr. Miyata cannot qualify as a sponsoring witness for these exhibits. Further, although Plaintiffs have asked, Matsuo has not said whether Mr. Miyata will be presented live or through deposition testimony. Plaintiffs object to introducing this evidence as it could be prejudicial and confusing to the jury. The amount of United States sales would confuse jurors into thinking that it correlates with the amount of damages the Class is entitled to under joint and several liability. Further, the Court has already excluded mitigation evidence. *See* MDL ECF No. 1140 (Feb. 14, 2020 Pretrial Order 2, Court's Order re DPPs' Motion *in Limine* No. 5). A conspirator only needs to participate in the conspiracy, no matter how slight, to be liable. Any attempt to bring in evidence on the scale of involvement would only result in misleading the jury that degree of involvement is the quintessential legal question. No party disputes the authenticity of the underlying transactional data. Plaintiffs further object to those two summary exhibits as Mr. Miyata is not a competent witness. He testified that he does not have any personal knowledge of the exhibits, he did not compile the information that comprises the exhibits, did not verify any of the purported numbers in the exhibits, and Matsuo is not permitted to present its own witness's prior deposition testimony at the trial of this action.

**b. Defendants' Position**

The DPPs' request to file an additional motion *in limine* at this late juncture should be denied. Pursuant to the Court's guidance, the parties agreed to adopt the Court's prior rulings on the motions *in limine* submitted in advance of the March 2020 trial. Joint Stipulation and Proposed Order Regarding Pre-Trial Schedule, MDL ECF 1547 at 2. The Court limited each side to twelve motions *in limine*. MDL ECF 1070 at 2. The Court has already ruled on 12 DPP motions *in limine*, MDL ECF 1140, and the DPPs should not be entitled to file any belated additional motions *in limine* now.

Moreover, the requested motion *in limine* would be futile. Contrary to DPPs' assertion, Defendants are entitled to introduce evidence about the amount of their sales in the United States, which is directly relevant to the alleged conspiracy here. The DPPs alleged—as they must under the Foreign Trade Antitrust Improvements ACT ("FTAIA"), 15 U.S.C. § 6a—a conspiracy that affected "prices in the United States for Capacitors." Consolidated Third Amended Complaint, 3:14-cv-03264-JD, ECF 1831, ¶ 125. Likewise, this Court has certified a class of purchasers of capacitors (1) inside the United States or (1) outside of the United States "where the capacitors were 'billed to' persons outside the United States but 'shipped to' persons within the United States." Order Re Direct Purchaser Plaintiffs' Class Certification Motion and Defendants' Daubert Motions to Exclude Expert Opinions, MDL ECF 385, at 18. Defendants are therefore entitled to introduce evidence that establishes the scope of potentially affected commerce, which is essential to the jury's ability to evaluate the damages calculations set forth by competing experts at trial.

The Rule 1006 summary exhibits that Matsuo intends to introduce at trial are likewise relevant and admissible. Matsuo intends to introduce one chart that summarizes Matsuo's total sales to United States customers during the class period, and a second chart that summarizes Matsuo's sales of customized tantalum capacitors to United States customers during the class period. The exhibits are admissible under Federal Rule of Evidence 1006, as they summarize the content of Matsuo's voluminous transaction data. Fed. R. Evid. 1006. There is no dispute as to whether the underlying transaction data is admissible. Indeed, the DPPs' own expert, James T. McClave, relies on Matsuo's transaction data in his damages analysis. *See* Expert Report of James T. McClave, Ph.D., November 30, 2018, at 3. Moreover, the summary charts are squarely relevant to the jury's analysis of damages in this case. It is essential for the jury to understand the scope of the conspiracy at issue *in this case*, and the summary exhibits will serve as a useful aid to the jury in evaluating each side's damages analysis. Further, Matsuo's summary charts will not be prejudicial or confusing to the jury, because the jury will be instructed that each participant in an unlawful conspiracy is jointly and severally liable for all of the damages resulting from the conspiracy. *See* Stipulated Proposed Final Jury Instruction No. 44, MDL ECF No. 1574-2. Finally, Rule 1006 charts may be admitted without a sponsoring witness. *See United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) (holding that Rule 1006 summary is

admissible if the proponent establishes "that the underlying materials upon which the summary is based (1) are admissible in evidence and (2) were made available to the opposing party for inspection"); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 60 F. App'x 87, 88 (9th Cir. 2003) (holding that Rule 1006 summary introduced by declaration was admissible because the underlying information used to compile the charts had been authenticated as business records by various representatives of the proponent). Nonetheless, the charts will be offered as Rule 1006 exhibits through Mr. Tomohiko Miyata, Matsuo's corporate representative, who is Sales Division Manager, Director and Executive Officer and competent to testify as a summary witness based on his review of the summary U.S. sales data charts. *See Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n,* 177 F. Supp. 2d 1011, 1032 (N.D. Cal. 2001) (holding that Rule 1006 exhibits had adequate foundation because "personal knowledge can be based on a review of documents"), *rev'd on other grounds,* 366 F.3d 692 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (June 2, 2004). Mr. Miyata will testify in person at trial.

Matsuo should therefore be allowed to introduce the proposed Rule 1006 summary charts at trial, and DPPs' request for leave to file an additional motion *in limine* to exclude this evidence should be denied.[2]

## XIV. Evidence Previously Admitted in the March Trial

### a. Plaintiffs' Position

The Class proposes that, without any party waiving their appellate rights to objections raised at the time, and consistent with the Court's guidance that the Parties should "pre-admit by stipulation as many exhibits as possible" (MDL ECF No. 1434), the following two categories of exhibits be pre-admitted:

[2] DPPs' contention that the exhibits are excluded by this Court's order regarding DPPs' Motion *in Limine* No. 5 is also inaccurate. DPPs have not explained how Matsuo's proposed charts constitute evidence that the DPPs failed to mitigate damages, so the Court's order regarding DPPs' Motion *in Limine* No. 5 is therefore entirely irrelevant.

(1) Exhibits stipulated to in relation to the March 2020 Trial. *See* MDL ECF No. 1125-1; and

(2) Exhibits whose admissibility had been stipulated to or determined during the course of the March 2020 Trial, attached hereto as **Exhibit A**.[3]

Notwithstanding the Class's efforts, the Parties have not come to agreement about which if any exhibits may be pre-admitted. The Court has routinely encouraged the parties to resolve disputes and agree to the admission of exhibits prior to trial to help streamline the issues at trial. The exhibits Plaintiffs are attempting to pre-admit are exhibits that were previously admitted in the trial, and there is no reason to believe that these exhibits will not be admitted again.

**b. Defendants' Position**

Defendants object to the wholesale pre-admission of exhibits without any accompanying testimony. At the prior trial, in order to save time, Defendants stipulated to the admissibility of many exhibits based on the understanding that these exhibits would be offered (and admitted) in the course of testimony of particular witnesses. Thus, for example, the Defense stipulated to the admissibility of certain exhibits that would be offered through a particular witness on the following day. In doing so, Defendants did not agree that these exhibits would be admitted whether or not the witness testified. The common practice of stipulating to the admissibility of exhibits that will be admitted through a sponsoring witness is consistent with applicable law. *See, e.g.*, *Berman* v. *Knife River Corp.*, No. 11-CV-03698-PSG, 2014 WL 12647750, at *4 (ND. Cal. Aug. 15, 2014) (barring introduction of exhibits without a sponsoring witness); *LG Display Co., Ltd.*, v. *AU Optronics Corp.*, 25 F.R.D. 189, 193 (D. Del. 2010) (withdrawing exhibits without a sponsoring witness consistent with the court's pretrial order requiring sponsoring witnesses); *United States* v. *Baker*, 538 F.3d 324, 332 (5th Cir. 2008) (holding it was error to admit exhibit without a competent sponsoring witness). Notably, because there will likely be fewer witnesses given the stricter time constraints, DPPs might not be able to present competent sponsoring witnesses for each of the exhibits they intend to pre-admit.

[3] This issue is particularly salient given that Mr. Okubo and Mr. Kakizaki's presence at the upcoming trial is in doubt. The Class at the least will seek the pre-admission of the documents previously admitted via their trial testimony in March 2020.

Agreements on the admissibility of these exhibits should proceed the way they did at the last trial and consistent with common practice. Prior to a party calling a witness, the parties will exchange lists of exhibits they intended to use with that witness. After that exchange, the parties will work in good faith to determine which, if any, of the exhibits they continue to object to, and which, if any, of the exhibits they would stipulate to admit. That standard practice was used in the prior trial, and there is no reason to depart from it now.

## XV. Pending Motions

There are currently no pending trial motions in relation to the Direct Purchaser Class case.

Several proffers were pending before the Court before termination of the March 2020 trial. The Class anticipates presenting testimony from some or all of the witnesses proffered. For the Court's reference, the proffers are set forth below:

### A. Co-Conspirator Proffers (*see* Fed. R. Evid. 801(d)(2)(E))

- Proffer of Evidence in Support of Admissibility of Shinichi Torii's Testimony about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1238, 1238-1.
- Proffer of Evidence in Support of Admissibility of Videotaped Deposition Testimony of Gordon Hoey about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1242, 1242-1.
- Proffer of Evidence in Support of Admissibility of Tadaaki Nishizaka's Testimony about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1245, 1245-1.
- Proffer of Evidence in Support of Admissibility of Shinobu Ishigami's Testimony about Coconspirator Statements Pursuant to Rule 801(d)(2)(E). MDL ECF Nos. 1248, 1248-1.

**B. Fifth Amendment Proffers**

- Proffer of Evidence in Support of Admissibility of Adverse Inference Regarding Fifth Amendment Deposition Testimony of Anthony Olita. MDL ECF Nos. 1237, 1237-1; *see also* MDL ECF Nos. 1250, 1250-1-3 (response).[4]
- Proffer of Evidence in Support of Admissibility of Adverse Inference Regarding Fifth Amendment Deposition Testimony of Ikuo Uchiyama. MDL ECF Nos. 1243, 1243-1.

Dated: November 15, 2021

Respectfully Submitted,

By: */s/ Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*Lead Counsel for the Direct Purchaser Class*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: *Joseph J. Bial*
Joseph J. Bial

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)

[4] Prior to the trial being interrupted in March 2020, Defendant UCC requested oral argument with respect to this proffer given the unusual posture in which this arises—following the unexpected and untimely death of Mr. Olita before he had the opportunity to revoke his invocation of his Fifth Amendment rights. The trial was interrupted before that argument took place 3/11/20 Trial Tr. 1042:20-1045:10. UCC requests that the Court allow UCC to provide brief argument with respect to this proffer in the days leading up to when DPPs wish to introduce this testimony.

2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com

Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

**KAUFHOLD GASKIN GALLAGHER LLP**
Steve Kaufhold
485 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 881-3189
Facsimile: (415) 480-6076
San Francisco, CA 94111
Telephone: (415) 445-4621
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con, Corp. and United Chemi-Con, Inc.*

**MORRISON & FOERSTER LLP**

By: */s/ Bonnie Lau*
Bonnie Lau

**MORRISON & FOERSTER LLP**
Bonnie Lau
Margaret Webb
425 Market Street
San Francisco, CA
blau@mofo.com
mwebb@mofo.com

David D. Cross
Mary G. Kaiser
2100 L Street, NW
Suite 900 Washington, DC 20037
dcross@mofo.com
mkaiser@mofo.com

*Counsel for Defendant*
*Matsuo Electric Co., LTD.*

**ATTESTATION**

Pursuant to Civil Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 15, 2021

*/s/ Joseph R. Saveri*
Joseph R. Saveri