Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Abraham Maggard (State Bar No. 339949)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            cyoung@saverilawfirm.com
            eabuchanan@saverilawfirm.com
            amaggard@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: THE DIRECT PURCHASER CLASS ACTION | Master File No.  3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER'S CLASS COUNSEL'S MOTION FOR ATTORNEY FEES, REIMBRSEMENT OF EXPENSES AND SERVICE AWARDS**<br><br>Date:          September 15, 2022<br>Time:          10:00 a.m.<br>Courtroom:  11, 19th Floor |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on September 15, 2022, at the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco California 94102, or as soon thereafter as the matter may be heard, the Direct Purchaser Class (the "Class") will and hereby do move, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, to grant Class Counsel: (1) attorneys' fees of $66,000,000 in accordance with Ninth Circuit precedent; (2) reimbursement for incurred expenses; and to grant (3) Class Counsel's request for service awards.

Specifically, the Class requests that the Court:

1. Grant Counsel's request for a payment of $66,000,000 of the additional $165,000,000 settlement fund ("Settlement Fund") established in connection with the Class's settlements with Defendants Matsuo Electric Co., Ltd., Nippon Chemi-Con Corp. and United Chemi-Con, Inc. (collectively "Settling Defendants), now pending before the Court for final approval.

2. Grant Counsel's request for a payment of $3,636,429.21 of the additional Settlement Fund) to reimburse incurred litigation costs and expenses.

3. Grant Counsel's request for service awards for the named plaintiffs of the additional Settlement Fund. Specifically, awards of $100,000 for Plaintiff Chip-Tech Ltd. ("Chip-Tech"); $100,000 for Plaintiff eIQ Energy, Inc. ("eIQ"); $75,000 for Plaintiff Dependable Component Supply Corp. ("Dependable"); and $50,000 for Plaintiff Walker Component Group, Inc. ("Walker").

The Class's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits thereto, the Declaration of Eugene Krzywinski, the Declaration of Barry Reed Lubman, the Declaration of Shawn Ryan, the Declaration of John Walker, the Court's files and records in this matter, argument of counsel, and such other and further matters as the Court may consider.

Dated: June 23, 2022

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, LLP

By: _____/s/ Joseph R. Saveri_____
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Christopher K.L. Young (State Bar No. 318371)
Elissa Buchanan (State Bar No. 249996)
Abraham A. Maggard (State Bar No.339949)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        cyoung@saverilawfirm.com
        eabuchanan@saverilawfirm.com
        amaggard@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1

    A.    The Pending Settlements....................................................................................1

    B.    The Prior Round One, Round Two, Round Three and Round Four Settlements............ 2

    C.    The Pending Requests for Attorneys' Fees and Reimbursement of Expenses.................. 3

II. LEGAL STANDARD .............................................................................................. 5

    A.    Attorneys' Fees............................................................................................... 5

    B.    Costs Reimbursement ..................................................................................... 5

III. THE COURT SHOULD AWARD THE CLASS'S COUNSEL $66,000,000—40 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DATE .... 5

    A.    The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here ............. 5

    B.    The *Vizcaino* Factors Warrant Granting Counsel's Fee Request ..................................... 6

            1.    Counsel Obtained an Exceptional Result for the Direct Purchaser Class with The Settlements. ...................................................................................... 7

            2.    Counsel Have Taken Significant Risks Prosecuting This Litigation. ................... 8

            3.    Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill. ............................................................... 9

            4.    Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award. ....................................................... 9

            5.    Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Class's Claims ........................................ 10

    C.    Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable. ...................................................................................................11

    D.    The Court Should Grant Attorneys' Fees Based on Work Counsel Has Performed on the Case as a Whole..................................................................................12

IV. THE COURT SHOULD GRANT CLASS COUNSEL $3,636,429.21 FOR THEIR COSTS ADVANCED FROM JANUARY 1, 2020, TO PRESENT .............................................12

V. THE COURT SHOULD GRANT SERVICE AWARDS TO THE NAMED PLAINTIFFS IN LIGHT OF THEIR SUBSTANTIAL CONTRIBUTIONS TO THE LITIGATION...............13

VI. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) ................................................................... 4, 12

*In re Am. Apparel, Inc. S'holder Litig.*, Case No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) ................................................................................. 5

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................................................ 6

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ............................ 9

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ........................... 6

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....................... 5

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................ 5

*Cameron v. Apple Inc.*, Case No. 4:19-cv-03074-YGR (N.D. Cal. June 10, 2022), ECF No. 491 ...................................................................................................................... 15

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ......................... 15

*Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998 (E.D. Cal. 2019) ............................ 6, 7

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............. 9

*Cook v. Niedert*, 142 F.3d 1004 (9th Cir. 1998) .......................................................... 14

*In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021) .......... 14

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) .................... 5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 6

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................ 13

*In re High-Tech Emp. Antitrust Litig.*, Case No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sep. 2, 2015) ............................................................................................ 15

In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362 (N.D. Cal. 1996) ...................... 13

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272 (N.D. Cal. 2018) ...................... 5

*In re Korean Air Lines Co. Antitrust Litig.*, No. CV 07-05107 SJO, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ......................................................................................... 6

*Lemus v. H & R Enters. LLC*, No. C 09-3179 SI, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) ........................................................................................................................ 15

*In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ................................................................................................................. 9

*In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2019 WL 4620695 (N.D. Cal. Sep. 20, 2018) .............................................................................................................. 7

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018) ......................................................................................... 6, 9

*Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) ........................ 12

*Marshall v. Northrop Grumman Corp.*, Case No. 16-CV-6794 AB, 2020 WL 5668935 (C.D. Cal. Sep. 18, 2020) ....................................................................................... 7, 8

*Mauss v. NuVasive, Inc.*, Case No. 13cv2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ............................................................................................................ 13

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)......................... 2

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)............................................................ 5

*Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) ............................................. 7

*In re Nat'l Collegiate Athl. Ass'n Athl. Grant-In-Aid Cap Antitrust Litig.*, 768 F. App'x 651 (9th Cir. 2019) .................................................................................................... 3

*Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ................................................................................................... 14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................. 7

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)................... 14, 15

*In re Packaged Seafood Prods. Antitrust Litig.*, Case No. 3:15-md-002670-DMS-MDD, 2022 WL 228823 (S.D. Cal. Jan. 26, 2022) ............................................................... 8

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir.1989) ......................... 9

*Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)........................................................................................................... 5

*In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 679 (W.D. Ohio 2015).............. 15

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)....................................................................5

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ...................5

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ...........................................11

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...........................................13

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ............................................................................................................12

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ..............................................................................................15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................14

*Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240 (9th Cir. 1982), *remanded on other grounds*, 461 U.S. 952(1983)...................................................................................13

*In re Transpac. Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634-CBR, 2019 WL 6327363 (N.D. Cal. Nov. 26, 2019)..........................................................................4

*Trosper v. Stryker Corp.*, No. 13-CV-00607-LHK, 2015 WL 5915360 (N.D. Cal. Oct. 9, 2015) ....................................................................................................13

*United States v. Matsuo Elec. Co. Ltd.*, 4:17-cr-00073-JD (N.D. Cal. filed on Feb. 8, 2017) ............8

*In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156 (D. Kan., July 29, 2016) ..................................................................................................8, 9

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .................................6, 12

*Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977)..........................................13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).........................................6, 10, 11, 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ..............................5

*Wolf v. Permanente Med. Grp., Inc.*, Case No. 3:17-cv-05345-VC, 2018 WL 5619801 (N.D. Cal. Sep. 14, 2018).....................................................................................14

**Statutes**

Crime Victims' Rights Act, 18 U.S.C. § 3771 ...........................................................8, 10

Sherman Act, 15 U.S.C. §1.................................................................................9

# I. INTRODUCTION

Counsel for the Direct Purchaser Class (the "Class") submit this motion for attorneys' fees and reimbursement of litigation expenses, seeking an award in the amounts of (1) $66,000,000 for fees accrued as of January 1, 2020; (2) $3,636,429.21 to fully reimburse incurred litigation costs and expenses incurred since January 1, 2020 (the "Motion") and (3) service awards for the named plaintiffs of the additional Settlement Fund in the amount of $100,000 for Plaintiff Chip-Tech Ltd.;$100,000 for Plaintiff eIQ Energy, Inc.; $75,000 for Plaintiff Dependable Component Supply Corp.; and $50,000 for Plaintiff Walker Component Group, Inc.

Pursuant to the Procedural Guidance for Class Action Settlements, the background history and facts are set forth in the Class's motion for Final Approval of Class Action Settlement with the Settling Defendants, MDL ECF No. 1713, ("Final Approval Motion") and will not be repeated here, except to summarize where relevant to this motion past settlements and their related awards of attorneys' fees reimbursement of expenses, and service awards. Having presided over the litigation from its inception, including two jury trials, the first of which commenced on March 2, 2020, before being suspended due to the commencement of the COVID-19 pandemic, and the second of which commenced on November 29, 2021 and concluded when Class Counsel settled with the remaining Defendants on the final day of trial, right before the case was to be handed to the jury, the Court is aware of the substantial work performed on behalf of the Class by Counsel to date.

## A. The Pending Settlements

The settlements with the Settling Defendants (the "Settlements") provide for cash payments totaling $165,000,000. Adding the $439,550,000 in settlements from the First, Second and Third Round Settlements, Class Counsel has recovered a total of $604,550,000 for the Class, which represents a recovery of 141.4% of the Class's single damages as calculated by the Class's expert. Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 13.

This case began in 2014. Since then, Class Counsel—all of whom work on a contingency basis—have devoted substantial time which has not been compensated and have advanced costs on behalf of the Class. The Settlements, if finally approved, provide Class Counsel the opportunity to be

compensated for their hard and successful work for the benefit of the Class, and to receive reimbursement for costs incurred in the litigation. On a cumulative basis, the total amount of attorneys' fees—the requested $66,000,000 added to the fee awards for the First, Second, Third, and Fourth Round Settlements—amounts to 31.01% of the common fund which Class Counsel has recovered for the benefit of the Class in this case.

The Motion is being publicly filed at-least thirty-five days before the deadline for objecting to the Settlements, as required by the Court's order granting preliminary approval of the present settlements, MDL ECF No. 1707, is consistent with the requirements set forth in the Northern District of California's *Procedural Guidance for Class Action Settlements*, and satisfies the requirements of *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 n.2 (9th Cir. 2010). Saveri Decl., ¶ 3.

### B. The Prior Round One, Round Two, Round Three and Round Four Settlements

On June 27, 2017, the Court granted final approval of the Class's first round of settlements with the NEC Tokin, Fujitsu, Nitsuko, Okaya, and ROHM defendants totaling $32.6 million (the "First Round Settlements"). ECF No. 1713. On June 28, 2018, the Court granted final approval of the Class's second round of settlements with the Hitachi Chemical and Soshin defendants totaling $66.9 million (the "Second Round Settlements"). MDL ECF No. 249. On February 21, 2020, the Court entered an order granting final approval of the Class's third round of settlements with the Nichicon and Rubycon defendants totaling $108 million plus up to an additional $12 million in contingent payments based on Rubycon's financial results through fiscal year 2019. MDL ECF No. 587 at 11. These settlements demonstrate that Class Counsel and the named class representatives have diligently and successfully represented the Class. On June 27, 2017, the Court awarded $8,150,000 (25% of the settlement fund) as partial payment of their fees accrued as of September 30, 2016, in connection with the First Round Settlements. ECF No. 1714, at 3. The Court also approved $3 million for partial reimbursement of Counsel's costs and expenses. *Id.* at 9-10.

For the Second Round Settlements, the Court granted $16,725,000 in attorneys' fees (25% of the settlement fund) as partial payment of their fees accrued as of December 31, 2017. MDL ECF No. 332 at 3. The Court also approved $6,690,000 in expenses (10% of the settlement fund). *Id.* at 10.

For the Third Round Settlements, The Court granted $27,000,000 in attorneys' fees (25% of the of the settlement fund) as partial payment of their fees accrued as of December 31, 2018. *Id.* The Court also approved $1,997,809.74 in expenses (approximately 1.85% of the settlement fund).[1] *Id.* On May 7, 2020, the Court granted the Class's Supplemental Motion for Reimbursement of Expenses and awarded $1,002,190.62 for unreimbursed expenses incurred by Class Counsel. MDL ECF No. 1295.

For the Fourth Round Settlements, Special Master Monica Ip conducted an audit of Class Counsel's request for fees and costs as documented in MDL ECF No. 1366 and issued a Report and Recommendation (MDL ECF No. 1397) that was approved and adopted in full by the Court. MDL ECF No. 1423. The Court granted $69,615,000 in attorney fees (approximately 30% of the settlement fund). *Id.* The Court further granted $9,548,764.41 for unreimbursed expenses incurred by Class Counsel. *Id.*

### C. The Pending Requests for Attorneys' Fees and Reimbursement of Expenses

Counsel's request for an award of attorneys' fees from the pending settlements in the amount of $66,000,000 is consistent with the Ninth Circuit's permitted fee awards calculated using the "percentage-of-the-fund" approach. *See In re Nat'l Collegiate Athl. Ass'n Athl. Grant-In-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019). Counsel have taken a significant risk, invested substantial amounts of their time and money on a contingent basis, and forgone other work opportunities to dedicate their professional efforts to this case.[2]

Lead Class Counsel submits declarations for its time and expenses, and expenses incurred by the Litigation Fund[3] (Saveri Decl., Exs. 1-3) together with declarations from Class Counsel that have worked under Lead Counsel's direction in this case. Saveri Decl., Exs. 4-17. Attached to each of these

---

[1] Special Master Monica Ip conducted an audit of Class Counsel's request for fees and costs as documented in MDL ECF Nos. 498, 594, and issued a Report and Recommendation (MDL ECF No. 1019) that was approved and adopted in full by the Court. MDL ECF No. 1036. The Court granted the Class's motion for attorneys' fees and reimbursement of expenses after adopting and approving in full the findings and recommendations as set forth in Special Master Monica Ip's Report and Recommendation. MDL ECF No. 1021.

[2] Indeed, Counsel overcame significant challenges in litigating this case. This case was tried twice, the first trial was interrupted by the COVID-19 pandemic after the Class had nearly completed presenting its case-in-chief. Counsel is unaware of any other case that was so interrupted.

[3] JSLF established a litigation fund to finance the joint prosecution of this case against the Defendants. The Litigation Fund has been used to pay necessary costs and expenses including expert and consulting fees, the costs of document hosting, certification of translations and trial expenses

declarations from Class Counsel are documents that summarize the time their respective firms have billed from January 1, 2020, to May 31, 2022, as reported by timekeeper. Ex. 1; Ex. A to each Counsel's declaration. Class Counsel have also attached a summary of the expenses they incurred in this case during the same period. Ex. 2; Ex. B to each Counsel's declaration. Lead Class Counsel has reviewed each of Class Counsel's daily time records. Duplicative, unnecessary, or unauthorized work has been removed and will not be compensated. *See id.*, ¶ 40.

Lead Class Counsel has also reviewed all costs submitted by Class Counsel for reimbursement to ensure their compliance with the instructions set forth in the Court's October 31, 2014, Order Appointing Interim Lead Class Counsel (ECF No. 319 at 4-5). *See id.* Expenses that were unauthorized or in excess of the Court's guidelines will not be compensated. *See id.* Consistent with the Court's guidance, the fees, and costs in connection with the present round of Settlements will be submitted to Special Master Ip in the first instance. MDL ECF No. 1708; Saveri Decl., ¶ 14. The Class's request for $3,636,429.21 is a request to reimburse Class Counsel for incurred litigation costs and expenses that have not yet been reimbursed. Saveri Decl., ¶ 20.

On a cumulative basis, the total amount of attorneys' fees—the requested $66,000,000 added to the fee awards for the First, Second, Third, and Fourth Round Settlements—is $187,490,000. *Id.*, ¶¶ 15-18. This represents attorneys' fees of 31.01% of the common fund which Class Counsel has recovered for the benefit of the Class in this case. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2012 WL 3138596, at *5 (E.D.N.Y. Aug. 2, 2012); *see also In re Transpac. Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634-CBR, 2019 WL 6327363, at *6 (N.D. Cal. Nov. 26, 2019). Including the $66,000,000 request, Class Counsels' cumulative fee amounts to 31.01% of the total settlements reached for the benefit of the Class.

The requested expenses of $3,636,429.21 added to the expenses and costs reimbursements for the First, Second Third, and Fourth Round Settlements brings the cumulative total expenses and costs to $25,875,194. Saveri Decl., ¶¶ 15-18, 45. The Class's request for $3,636,429.21 fully reimburses Class Counsel for their expenses incurred but unreimbursed to date. *Id.*, ¶ 22-23, and reimburses Class Counsel for Litigation Fund expenses incurred between July 24, 2020, to date.

## II. LEGAL STANDARD

### A. Attorneys' Fees

The Supreme Court has explained that "'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 284 (N.D. Cal. 2018) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). "The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general. . . . The underlying premise is the existence of *risk*—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original). In addition, attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those whose labors created the fund. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

### B. Costs Reimbursement

Counsel may obtain reimbursement for costs from a common fund settlement. *In re Am. Apparel, Inc. S'holder Litig.*, Case No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *28 (C.D. Cal. Jul. 28, 2014). "'The prevailing view is that expenses are awarded in addition to the fee percentage.'" *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) (citations omitted).

## III. THE COURT SHOULD AWARD THE CLASS'S COUNSEL $66,000,000—40 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DATE

### A. The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here

District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar" method in calculating fees in common fund settlements. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). Using either method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Where there is an easily quantifiable benefit to the class—namely, the cash recovery achieved through the settlement—the percentage of the fund approach is appropriate. *See In re Bluetooth Headset*

*Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co. Antitrust Litig.*, No. CV 07-05107 SJO (AGRx), 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015). Courts supervising antitrust cases in this District regularly apply the percentage of the fund approach. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). The Court should do so as well here.

"In the Ninth Circuit, the benchmark for percentage of recovery awards is 25 percent of the total settlement award, which may be adjusted up or down." *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1019 (E.D. Cal. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Selection of the benchmark or any other rate, however, must be supported by findings that account for all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The benchmark is subject to adjustment—upward or downward—based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. *See id.* at 1048-50. The complexity of this case, the significant benefits achieved for the Class and the excellent work performed support an upwards adjustment.

## B. The *Vizcaino* Factors Warrant Granting Counsel's Fee Request

Here, each of the *Vizcaino* factors weighs in favor of awarding the requested $66,000,000, which amounts to 40% of the Settlement Fund associated with the latest settlements, or, when accounting for the fee awards granted in the prior rounds of settlements, 31.01% of the cumulative settlements recovered for the benefit of the Class, a well-warranted upwards adjustment.

### 1. Counsel Obtained an Exceptional Result for the Direct Purchaser Class with The Settlements.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). The pending Settlements—the fifth round in the consolidated Direct Purchaser Class Action—provide the Class with significant and valuable monetary benefits.

The Settling Defendants' all-cash payments for the benefit of the Class together combined with the prior settlements achieved in this case will total $604,550,000, significantly exceeding single damages. This is a large amount of money relative to the Settling Defendants' individual and collective capacitor sales to Class members between 2002 and 2014 and is over 141.4% of the total overcharges ($427,530,613) as calculated by the Class's expert—an extraordinary result. Courts have approved equal or higher upward adjustments from the benchmark in cases where the settlement was a much lesser percentage of single damages. *See, e.g., Carlin*, 380 F. Supp. 3d at 1020 (33% fee award approved where settlement recovered 48% of experts' estimate damages); *Marshall v. Northrop Grumman Corp.*, Case No. 16-CV-6794 AB (JCx), 2020 WL 5668935, at *2-3 (C.D. Cal. Sep. 18, 2020) (recovery of 29% of claimed damages at trial justified fee award of one-third of settlement fund); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2019 WL 4620695, at *1-2 (N.D. Cal. Sep. 20, 2018) (approving 33% fee award in end-payor class action settlement recovering 46% of single damages estimate).[4]

The settlements represent an excellent, valuable, and significant recovery to the Class. The Class's $5,000,000 settlement with Matsuo represents a significant recovery given evidence of Matsuo's lack of resources, notwithstanding its participation in the price-fixing conspiracy. NCC and UCC's $160,000,000 settlement represents approximately 212% of NCC and UCC's overcharges during the class period (based on the Class's calculation of $75,447,114 in overcharges attributable to NCC and UCC) and nearly 17.6% of the total overcharges as calculated by the Class's experts. Additionally, NCC and UCC's settlement is the largest settlement among all defendant families in this

---

[4] *See also Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663, 664 (9th Cir. 2003) (33% fee award justified as "class counsel achieved exceptional results in this risky and complicated class action and despite Lifescan's vigorous opposition throughout the litigation").

case. These settlements are further evidence that the settlements pending approval are excellent and warrant the granting of attorney fees. *See, e.g., In re Packaged Seafood Prods. Antitrust Litig.*, Case No. 3:15-md-002670-DMS-MDD, 2022 WL 228823, at *23 (S.D. Cal. Jan. 26, 2022) (finding settlement totaling $20 million "compares favorably to other antitrust and class action settlements") (citation omitted); *Marshall*, 2020 WL 5668935, at *3 ("great effort on behalf of the Class" justifies "an award of one-third of the settlement fund in attorney fees"); *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *4 (D. Kan., July 29, 2016) ("This enormous success in a highly contingent case favors an award of a substantial percentage of the . . . settlement fund to the counsel who achieved that success for the class members"). In addition to financial consideration, the Class has also benefitted from the cooperation that Lead Class Counsel secured from previously settling defendants.

The Settlements' monetary component—all cash—greatly benefits the Class by providing and, in fact, accelerating the Class's chances for monetary recovery in this case through the claims administration process. Saveri Decl., ¶13. Here, a substantial amount of money stands to be distributed to the Direct Purchaser Class. *Id.*

### 2. Counsel Have Taken Significant Risks Prosecuting This Litigation.

Counsel assumed a significant risk in undertaking this litigation. *See* Saveri Decl., ¶¶ 30-31. By its nature, recovery is never guaranteed in contingency litigation. *Id.,* ¶ 30. Counsel committed their time, money, and energy to the prosecution of a multi-year, international price-fixing cartel case against 22 sprawling Defendant corporate families based almost entirely in Japan. *See id.*, ¶ 24. This cartel case is complex, and complex antitrust cases often take years to resolve through settlement, trial, or appeal— indeed, this litigation has now lasted over 7 years. *See id.* As the case has advanced, certain Defendants have claimed poor financial health that could ultimately impede or diminish recovery for the Class.[5] As set forth in Lead Class Counsel's declaration, Class Counsel have expended millions of dollars of their

---

[5] The Class has worked diligently to maximize compensation and restitution for those injured by Defendants. Lead Class Counsel retained experts and filed submissions under the Crime Victims' Rights Act, 18 U.S.C. § 3771, in connection with the Court's sentencing of Matsuo in *United States v. Matsuo Elec. Co. Ltd.*, 4:17-cr-00073-JD (N.D. Cal. filed on Feb. 8, 2017) In particular, Lead Class Counsel submitted briefing and a declaration from the Class's expert analyzing Matsuo's claimed inability to pay its criminal fine and suggesting appropriate restitution for those injured by Defendants' anticompetitive conduct. *See id.*, at ECF No. 58 & 58-1.

time and incurred millions of dollars in expenses, all on a purely contingent basis. Counsel have turned away other case opportunities over the last six years to dedicate the time and resources needed to prosecute the Class's claims. This entails substantial risk.[6] *Id.*, ¶¶ 30-34.

### 3. Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill.

The docket and the procedural history in this this case demonstrate Class Counsel's expertise and the Class's successes to date. *See, e.g.*, ECF No. 332, at pp. 5-8. Counsel have done much to prosecute the Class's claims effectively and efficiently. Counsels' success was hard won. Defendants have hired excellent antitrust defense counsel to defend them against the Class's Sherman Act claims. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."). Indeed, Class Counsel has litigated this case to a successful conclusion despite two rounds of summary judgment, motions to decertify the class, motions to disqualify experts and two trials due to the COVID-19 pandemic.

### 4. Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award.

The requested award of $66,000,000 matches and is in keeping with fee awards in similar cases, both in the Ninth Circuit and elsewhere. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). Class Counsel's request is comparable to percentages awarded plaintiffs' counsel in other similarly and arguably less complex antitrust cases in this District and elsewhere in the United States. *See, e.g., In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *7-9 (N.D. Cal. Apr. 24, 2019) (30% of $8,300,000 recovery); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018) (30% of $139,000,000 recovery); *see also, e.g., Urethane*, 2016 WL 4060156, at *6 (33.33% of $835,000,000 recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) (30% of $410,000,000 recovery).

---

[6] Class Counsel also incurred risk associated with having a parallel criminal proceeding, addressing the impact of the FTAIA, and evaluating massive amounts of electronic transactional data necessary to prove their case. Counsel also faced significant difficulty due to the unprecedented nature of the COVID-19 pandemic. Due to the pandemic, Counsel faced challenges including securing witness travel from Japan. Each of these risks weigh in favor of granting Class Counsel the requested fee award.

As these precedents demonstrate, Class Counsel's request is easily consistent with recognized "market rates," i.e., rates typically awarded in similar contingency fee cases in this District and across the United States, *see Vizcaino*, 290 F.3d at 1050, particularly in light of the posture of the litigation and the state of the Class's evidence here.

### 5. Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Class's Claims

Class Counsel have invested significant amounts of time, money, and resources in this case for over six years, as shown in their time and expense records. Lead Class Counsel's time submissions— $9,395,583.75 for 2021 and $43,604,109.00 total lodestar billed to date—illustrate the point. Saveri Decl., ¶ 45. This litigation has required a significant devotion of Lead Class Counsel's resources for the last six years. For example, Lead Class Counsel has performed the following tasks:

- **Discovery**: Lead Class Counsel undertook significant discovery efforts in this case. Discovery included drafting discovery responses, evaluating and analyzing defendants' discovery responses, including document productions, managing multiple foreign language document review projects, supervising all depositions, preparing for and taking key depositions, identifying and interviewing cooperating witnesses, and taking pre-trial depositions. Much of the document discovery involved the review and analysis of documents in Japanese and in Chinese. Many of the depositions were taken abroad and required translation from Japanese and Chinese.

- **Motion Practice**: Lead Class Counsel prepared, edited, and briefed various court filings, including several dispositive motions. Plaintiffs successfully moved for class certification. Defendants opposed the motion and sought appellate review of the Court's decision. Defendants sought to decertify the action on numerous occasions. This included appearances before the Judicial Panel on Multidistrict Litigation, briefing and arguing the motion for class certification, and briefing two rounds of motions for summary judgment. Lead Class Counsel also selected and prepared the Class's expert witnesses and reports, oversaw and coordinated the work of its experts, and responded to *Daubert* motions in relation to its experts. Additionally, Lead Class Counsel hired forensic accountants, and filed submissions pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771 in connection with the criminal cases against certain Defendants.

- **Case Management**: Lead Class counsel interfaced, communicated and negotiated with various entities during the course of this litigation, including, the United States Department of Justice, the indirect purchaser plaintiffs, and opt-out plaintiffs. In addition to conducting various settlement negotiations, Lead Class Counsel has diligently communicated with Class members, responded to inquiries concerning the status of the case and settlement and coordinated various notice and claims management issues. The high degree of class participation in the settlements to date evidences the success of those efforts.

- **Trial and Pre-Trial**: Most recently, Lead Class Counsel prepared, supervised, and presented two weeks of evidence at the jury trial in November 2021. Trial preparation

included the preparation of all pretrial filings and submissions, presentation of witnesses (including witnesses from Japan), attendance of pre-trial conferences, taking pre-trial depositions, defending trial depositions, and organizing pre-trial meet and confers. Trial preparation also included arranging for precautions and safety measures to address the risks of trying a case during the ongoing pandemic. Class Counsel had tried the case once before in March 2020 until the COVID-19 pandemic forced the suspension and eventual termination of that trial. Additionally, given Defendants' lack of U.S. assets, Class Counsel also assessed the risk associated with enforcing a treble-damage judgment in Japan should the jury return with a favorable verdict for the Class.

Saveri Decl., ¶ 25.

Lead Class Counsel have relied on Class Counsel to assist the prosecution of this case. Each of the firms have wide and deep experience in the field and has successfully resolved numerous cases, and the Class has benefitted from that experience here. *Id.*, ¶ 43. The Court has seen the quality of legal work on behalf of the Class. Under the active supervision of Lead Class Counsel, the firms have worked closely together as an efficient team. *See id.* ¶ 24. Assignments have been given based on the particular expertise and skill of individual lawyers. *See id.* Duplication of effort has been minimized, and as noted above, duplicative or unnecessary work has been excluded as a basis for the attorney fee award. *Id.* Class Counsel have set forth for the Court the details regarding their contributions in their declarations attached to the Saveri Declaration. *Id.*, Exs. 4-17 ¶ 3 in each declaration.

## C.     Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.

A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050. "[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)) (citation omitted).

On a cumulative basis, the total amount of attorneys' fees—the requested $66,000,000 added to the fee awards for the First, Second, Third Round, and Fourth Round Settlements—is $187,490,000.00 *Id.*, ¶¶ 15-18. Counsel's cumulative lodestar in the case as of today is $103,082,430.30. Saveri Decl., ¶ 45; *id.*, Exs. 1-17. Consistent with the Court's instructions, time was reported on a monthly basis and those historical rates are used as the basis for the fee request here. *Id.* ¶ 45-46, and Exs. 2, 4-17. In the

Ninth Circuit, a lodestar multiplier of around four has frequently been awarded in common fund cases such as this. *See Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held "within the range of multipliers applied in common fund cases"); *see also Van Vranken,* 901 F. Supp. 294 at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."). The lodestar cross-check thus confirms that Counsel's $66,000,000 fee request is reasonable and should be awarded.[7]

**D.     The Court Should Grant Attorneys' Fees Based on Work Counsel Has Performed on the Case as a Whole.**

Because the total work performed by counsel from inception of the case makes each settlement possible, courts typically base fee awards in subsequent settlements on all work performed in the case. *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *4 (E.D. Tenn. May 17, 2013). Indeed, when considering fee awards for subsequent settlements, courts typically calculate the lodestar multiplier by dividing all past and requested fee awards by all of counsel's time from inception of the case. *See, e.g., Se. Milk*, 2013 WL 2155387, at *4; *see also, e.g., Air Cargo*, 2012 WL 3138596, at *5. Class Counsel has devoted a tremendous amount of time to prosecuting the Class's claims from the case's inception—to the Class's great benefit. The Court should consider Class Counsel's total efforts and find Class Counsel's requested fee award appropriate and reasonable. *See Lobatz*, 222 F.3d at 1149-1150. (affirming that counsel should be awarded fees based on work on entire litigation.)

**IV.     THE COURT SHOULD GRANT CLASS COUNSEL $3,636,429.21 FOR THEIR COSTS ADVANCED FROM JANUARY 1, 2020, TO PRESENT**

Counsel requests the amount of $3,636,429.21 (approximately 2.20 % of the Settlement Fund) to reimburse incurred litigation costs and expenses that have not been reimbursed. Saveri Decl., ¶ 20.

---

[7] For the First Round, the lodestar incurred was $44,454,689.20, and the fees granted were $8,150,000. For the Second Round, the lodestar incurred was $26,307,241.50 and the fees granted were $16,725,000. For the Third Round, the lodestar incurred was $11,877,369 and the fees granted were $27,000,000. For the Fourth Round, the lodestar incurred was $6,794,035.75 and the fees granted were incurred was $69,615,000. On a cumulative basis, if the Court grants Counsel's fee request of $66,000,000, the lodestar multiplier would be 1.81.

It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," i.e., costs "incidental and necessary to the effective representation of the Class." *Trosper v. Stryker Corp.*, No. 13-CV-00607-LHK, 2015 WL 5915360, at *1 (N.D. Cal. Oct. 9, 2015) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Reasonable reimbursable litigation expenses include those for document production, experts and consultants, depositions, translation services, travel, mail, and postage costs.[8] Under the common fund doctrine, plaintiffs' counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See generally Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977).

Aside from the typical litigation-related costs necessarily incurred in a complex antitrust litigation like this one (e.g., travel and lodging, legal research, court reporters), Class Counsel have incurred many other expenses that warrant reimbursement. In the four prior rounds of Class settlements, Class Counsel had informed the Court of the extraordinary expenses entailed by this complex litigation, including the substantial costs in reviewing, translating, and analyzing 39 million Bates-numbered pages, mostly in Japanese, from over 100 document custodians, and significant expert fees and related expenses from submitting expert reports. ECF No. 1713; MDL ECF No. 249. Since the last round of settlements, the Class incurred significant expenses including those associated with preparing for and conducting the November 2021 trial. Saveri Decl., ¶¶ 20, 22.

## V.     THE COURT SHOULD GRANT SERVICE AWARDS TO THE NAMED PLAINTIFFS IN LIGHT OF THEIR SUBSTANTIAL CONTRIBUTIONS TO THE LITIGATION.

Class Counsel seeks service awards for the four named class representatives: $100,000 for Plaintiff Chip-Tech Ltd. ("Chip-Tech"); $100,000 for Plaintiff eIQ Energy, Inc. ("eIQ"); $75,000 for Plaintiff Dependable Component Supply Corp.; and $50,000 for Plaintiff Walker Component Group, Inc. Service awards are "fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. Service awards

---

[8] *See, e.g.*, *Media Vision*, 913 F. Supp. at 1366 (court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage, telephone/fax); *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), *remanded on other grounds*, 461 U.S. 952(1983); *Mauss v. NuVasive, Inc.*, Case No. 13cv2005 JM (JLB), 2018 WL 6421623, at *8-9 (S.D. Cal. Dec. 6, 2018) (online research, press release and newswires).

are particularly appropriate when the litigation is "complicated" and "took up quite a bit of the class representatives' time." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015); *accord In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633-34 (N.D. Cal. 2021). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (9th Cir. 1998); *accord Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).

The named Plaintiffs undertook significant action to protect the interests of the class. Each of the named Plaintiffs maintained close contact with Class Counsel throughout the case, produced thousands of documents during the course of this complex litigation, were subject to multiple depositions, and devoted dozens to hundreds of hours in assisting Class Counsel in this case, expending a great deal of time and effort. *See* Krzywinski Decl., ¶¶ 7-9; Lubman Decl., ¶¶ 5-16; Ryan Decl., ¶¶ 7-9; Walker Decl., ¶¶ 6-8. Plaintiffs Chip-Tech and eIQ in particular devoted significant time and effort on behalf of the Class as Barry Lubman of Chip-Tech and Gene Krzywinski of eIQ, in addition to providing significant discovery in this case, twice presented testimony before a jury, including at the prior trial that was interrupted by the onset of the COVID-19 pandemic. Krzywinski Decl., ¶ 8; Lubman Decl., ¶¶ 13-14. "[T]he Court knows firsthand from seeing plaintiff[s] [Lubman and Krzywinski] on the witness stand during the . . . trial[s] that [they] ha[ve] put time and effort into this case, likely more than is asked of the usual named class action representative." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021).

The requested total service awards are well within the fair and reasonable awards approved by courts in this Circuit and resulted in a significant benefit to the Class. *See Wolf v. Permanente Med. Grp., Inc.*, Case No. 3:17-cv-05345-VC, 2018 WL 5619801, at *1, ¶ 5 (N.D. Cal. Sep. 14, 2018); Saveri Decl., ¶ 35. The average recovery unnamed class members received for the first four rounds of settlement is $630,521.82. That is before accounting for the distribution of the pending settlements with Matsuo and Chemi-Con. *See Online DVD-Rental*, 779 F.3d at 947. The aggregate service awards requested by Class Counsel amounts to 51% of the average recovery for an unnamed class member, and courts have

approved *individual* service awards which are many times that ratio. *See In re High-Tech Emp. Antitrust Litig.*, Case No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sep. 2, 2015) (approving service awards of about 14 to 21 times average class member recovery); *Lemus v. H & R Enters. LLC*, No. C 09-3179 SI, 2012 WL 3638550, at *5-6 (N.D. Cal. Aug. 22, 2012) (approving $15,000 service awards where average class recovery about $1,200). This recovery was due, in no small part, to the work of the named Plaintiffs. Further, the requested service awards cumulatively make up a mere 0.06% of the total settlement fund of $604,550,000, which is fair and reasonable in light of the significant benefit to the Class resulting from Plaintiffs' efforts. *See, e.g., Online DVD-Rental*, 779 F.3d at 948 (approving service awards of $45,000 totaling 0.17% of the total settlement fund).[9] Indeed, courts have granted similar service awards even in cases which did not proceed to jury trial once, let alone twice. *See*, *e.g.*, *High-Tech*, 2015 WL 5158730, at *17-18 (approving service awards of $120,000 and $80,000); *see also Cameron v. Apple Inc.*, Case No. 4:19-cv-03074-YGR (N.D. Cal. June 10, 2022), ECF No. 491 at 15 (granting service awards in pre-summary judgment case).[10]

## VI. CONCLUSION

For the reasons set forth above, Counsel requests the Court grant its request for payment of $66,000,000 in attorneys' fees, $3,636,429.21 in reimbursable costs, and request for a total of $325,000 in service awards.

---

[9] *See also*, *e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 679, 694 (W.D. Ohio 2015) (approving $35,000 award to each plaintiff amounting to .00005% of total settlement of $433.1 million).

[10] *See also*, *e.g.*, *High-Tech* at *18 (collecting cases granting service awards in excess of $125,000); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-cv-83, 2014 WL 2946459, at *3-4 (E.D. Tenn. June 30, 2014) ($50,000 service award for each class representative); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-36 (E.D. Mich. 2003) (granting $75,000 service awards).

Dated: June 23, 2022

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, LLP

By:    /s/ Joseph R. Saveri
          Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Christopher K.L. Young (State Bar No. 318371)
Elissa Buchanan (State Bar No. 249996)
Abraham A. Maggard (State Bar No.339949)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:    jsaveri@saverilawfirm.com
              swilliams@saverilawfirm.com
              cyoung@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              amaggard@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*